## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ENERGY TRANSPORTATION GROUP, INC.,  )      Civil Action No. 05-422 (GMS)

                        Plaintiff,

        v.

SONIC INNOVATIONS, INC., *et al.*,

                      Defendants.

**COMPENDIUM OF UNPUBLISHED OPINIONS CITED IN THE OPENING BRIEF
OF DEFENDANT RESISTANCE TECHNOLOGY, INC. IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

    A.    *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, No. 03-612-KAJ, 2004 U.S. Dist. LEXIS 19760 (D.Del. Sept. 13, 2004)

    B.    *M&M Technologies, Inc. v. Gurtler Chemicals, Inc.*, No. 03-994 GMS, 2005 U.S. Dist. LEXIS 1726 (D.Del. Feb. 8, 2005)

    C.    *Mylan Pharmaceuticals, Inc. v. Kremers Urban Dev. Co.*, Civil Action No. 02-1628 GMS, 2003 U.S. Dist. LEXIS 5728 (D.Del. April 7, 2003)

    D.    *Venoco, Inc. v. Marquez*, C.A. No. 02-1685 GMS, 2003 U.S. Dist. LEXIS 7593 (D.Del. May 5, 2003)

Barry M. Klayman, Esquire (#3676)
Wolf, Block, Schorr and Solis-Cohen LLP
Wilmington Trust Center
1100 North Market Street
Suite 1001
Wilmington, DE 19801
Tel: (302) 777-0313

Attorneys for Defendant, Resistance Technology, Inc.

Of Counsel:
Jefffrey D. Shewchuk, Esquire (Pro hac vice)
Shewchuk IP Services, LLC
533 77th Street West
Eagan, MN 55121

A.     *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, No. 03-612-KAJ, 2004 U.S. Dist. LEXIS 19760 (D.Del. Sept. 13, 2004)

LEXSEE 2004 US DIST LEXIS 19760

eSPEED, INC.; CANTOR FITZGERALD, L.P.; CFPH, L.L.C., and eSPEED
GOVERNMENT SECURITIES, INC., Plaintiffs, v. BROKERTEC USA, L.L.C.;
BROKERTEC GLOBAL, L.L.C.; GARBAN, LLC; ICAP PLC; OM AB; and OM
TECHNOLOGY (U.S.), INC., Defendants.

Civil Action No. 03-612-KAJ

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 19760

September 13, 2004, Decided

**PRIOR HISTORY:** eSpeed, Inc. v. BrokerTec USA, L.L.C., 2004 U.S. Dist. LEXIS 20589 (D. Del., Sept. 9, 2004)

**DISPOSITION:** [*1] Motion of defendant ICAP Plc to dismiss for lack of personal jurisdiction granted. Plaintiffs' contingent cross motion to compel discovery denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** Jack B. Blumenfeld, Esquire and Julia Heaney, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, counsel for plaintiffs.

Of counsel: Gary A. Rosen, Esquire, Law Offices of Gary A. Rosen, P.C., Philadelphia, Pennsylvania; David J. Wolfsohn, Esquire, Alan C. Promer, Esquire, and Michele D. Hangley, Esquire, Hangley Aronchick Segal & Pudlin, Philadelphia, Pennsylvania.

Richard L. Horwitz, Esquire and David E. Moore, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, counsel for defendants.

Of counsel: James W. Dabney, Esquire, Peter L. Simmons, Esquire, and Henry C. Lebowitz, Esquire, Fried, Frank, Harris, Shriver & Jacobson LLP, New York, New York.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

**OPINION:**

**MEMORANDUM OPINION**

Wilmington, Delaware

**JORDAN, District Judge**

I. INTRODUCTION

This is a patent infringement case. Jurisdiction is proper under 28 U.S.C. § 1338. The plaintiffs filed their Complaint on June 30, 2004, naming [*2] BrokerTec USA L.L.C. ("BrokerTec"), BrokerTec Global, L.L.C., Garban, L.L.C. ("Garban"), OM Technology (U.S.), Inc., OM AB, and ICAP Plc ("ICAP") as defendants. (Docket Item ["D.I."] 1.) Presently before me is ICAP's Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (D.I. 161; the "Motion".) For the reasons that follow, ICAP's Motion will be granted.

II. BACKGROUND

A. The Parties

The plaintiffs are all corporate entities recognized under the laws of the State of Delaware and have their principal places of business in New York, New York. (D.I. 1, PP 2-4; see also D.I. 512.) Defendants BrokerTec, BrokerTec Global, L.L.C., and Garban are all limited liability companies organized under Delaware law and have their principal places of business in Jersey City, New Jersey. (Id., PP 5-7.) ICAP is a corporation organized and existing under the laws of the United Kingdom and has a principal place of business in the United States in Jersey City, New Jersey. (Id., P 8.)

B. Factual Background

Shortly after ICAP filed its Motion, the parties stipulated to and engaged in [*3] jurisdictional discovery.

2004 U.S. Dist. LEXIS 19760, *

(*See* D.I. 185.) Because the plaintiffs have the burden of proving that it is proper for me to exercise personal jurisdiction over ICAP in this District, *see Provident Nat'l Bank v. California Federal Sav. & Loan Asso.,* 819 F.2d 434, 437 (3d Cir. 1987), the following is taken largely from the plaintiffs' recitation of the facts (*see* D.I. 271 at 3-10), unless noted otherwise.

The plaintiffs allege that all of the defendants are willfully and intentionally infringing U.S. Patent No. 6,560,580 B1 (issued May 6, 2003), which is entitled "Automated Auction Protocol Processor". (*See* D.I. 1, Ex. A.) ICAP, one of the six named defendants, is a public limited company incorporated in England and listed on the London Stock Exchange. (D.I. 162 at 2; D.I. 271 at 3.) n1 ICAP claims that it is not registered to conduct business in Delaware and that it has no registered agent for service of process in Delaware or any other state within the United States. (*Id.*) ICAP also asserts that it does not transact business, perform any work or services, or engage in any persistent course of conduct in Delaware. (*Id.*) ICAP characterizes itself as a "holding [*4] company" that is the "ultimate parent of a group of companies whose principal business is that of a worldwide voice and electronic interdealer broker of a variety of financial instruments in the wholesale markets." (D.I. 162 at 2.)

n1 In support of its factual assertions pertaining to jurisdiction, ICAP cites the Declaration of Helen Broomfield, the Company Secretary of ICAP (attached to D.I. 162 as Ex. 1).

In its 2003 Annual Report, ICAP described itself as the "world's largest voice and electronic interdealer broker" with "more than 2,800 staff, operating from 21 offices worldwide." (D.I. 271 at 3-4.) Further, ICAP defines itself as the parent company of an array of entities that are members of the "ICAP Group" (hereinafter the "ICAP Group" or the "Group"). (*Id.* at 4.) ICAP owns 100% of the twelve American subsidiaries that are a part of the Group. n2 (*Id.* at 4.) The Group is managed, as a whole, by the ICAP Board of Directors (the "Board"). (*Id.*) The Board approves the ICAP Group's budget and makes [*5] regular internal audit visits to the Group's operating companies in the United States. (*Id.* at 5, 9.) ICAP earns about 35 percent of its profits from its operations in the United States. (*Id.* at 9.)

n2 BrokerTec and Garban are two of ICAP's subsidiaries. (D.I. 271 at 6.) Furthermore, the following members of the ICAP Group have filed certificates of amendment or correction in Delaware between 1999 and 2003: First Brokers Securities LLC, Garban Capital Markets LLC, Garban Corporates LLC, Garban Futures LLC, Garban Information Systems (Americas) LLC, Garban Securities LLC, Garban LLC, ICAP Services North America LLC, Wembley Asset Management LLC, and Wrightson ICAP LLC. (*Id.* at 8 (citing D.I. 275, Ex. 30).)

ICAP, together with its BrokerTec n3 and Garban subsidiaries, maintains two websites, namely, www.icap.com and www.brokertec.com. (*Id.* at 6.) These websites allow users to access and use the ICAP Group's accused electronic trading platforms n4 from anywhere in the world. (*Id.*)

n3 ICAP acquired BrokerTec, a Delaware company, on May 7, 2003. (*Id.* at 7.)

[*6]

n4 BrokerTec's Electronic Trading Network ("ETN") and Garban's Electronic Trading Community ("ETC"). (D.I. 271 at 6.)

III. STANDARD OF REVIEW

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a suit for lack of jurisdiction over the person. According to the United States Supreme Court,

before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987). This principle is traditionally described as a two-step analysis: First, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

Rule 4(e)(1) of the Federal Rules of Civil Procedure [\*7] states that service of a summons may be effected "pursuant to the law of the state in which the district court is located." The Delaware long-arm statute, 10 Del. C. § 3104(c), has been construed broadly to confer jurisdiction to the maximum extent possible under the due process clause. n5 *La Nuova D&B S.p.A. v. Bowe Co. Inc.,* 513 A.2d 764, 768 (Del. 1986). I must nevertheless determine whether the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendant's constitutional rights to due process. *Intel Corp. v. Silicon Storage Tech., Inc.,* 20 F. Supp. 2d 690, 694 (D. Del. 1998); *see generally, Int'l Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945).

n5 According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed. Cir. 1995). The Federal Circuit has instructed that, "in interpreting the meaning of state long-arm statutes, we defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc.,* 149 F.3d 1382, 1386 (Fed. Cir. 1998). The Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis, as some courts have done.

[\*8]

As noted previously, once a jurisdictional defense is raised, the burden is on the plaintiff to demonstrate with reasonable particularity that sufficient minimum contacts have occurred between the forum state and defendant to support jurisdiction. n6 *Provident Nat'l Bank,* 819 F.2d at 437; *see also Ace & Co., Inc. v. Balfour Beatty PLC,* 148 F. Supp. 2d 418, 422 (D. Del. 2001) (plaintiff must present facts that "establish with reasonable particularity" that the defendant is subject to personal jurisdiction). The plaintiff may demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities with the forum state. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.,* 1999 U.S. Dist. LEXIS 12455, 1999 WL 615175 (D. Del. Aug. 3, 1999). General jurisdiction does not require that the defendant's contacts be related to the particular cause of action, but that the

defendant has continuous or systematic contacts with the forum state. *Id.*

N6 In this case, the parties agreed to conduct jurisdictional discovery shortly after ICAP filed its Motion (*see supra* at p. 2). The plaintiffs have filed a Contingent Cross Motion to Compel Discovery on the Issue of Personal Jurisdiction (D.I. 272) asking me to order ICAP to more fully respond to certain of the plaintiffs' jurisdictional discovery requests. The parties had an ample opportunity to conduct jurisdictional discovery, and the plaintiffs have not persuaded me that ICAP improperly obstructed the course of that discovery. Furthermore, as discussed more fully *infra* at n.7, the discovery that the plaintiffs seek to compel is immaterial to the disposition of ICAP's Motion. Therefore, I will decide ICAP's Motion on the basis of the record currently before me, and the plaintiffs' Motion to Compel (D.I. 272) will be denied.

[\*9]

The Delaware long-arm statute provides that personal jurisdiction is proper over any nonresident who, in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply services or things in this State;
(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside of the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
(5) Has an interest in, uses or possesses real property in the State; or
(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c). The above provisions have been construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents [*10] a means of redress against those not subject to personal service within the State." *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1156-57 (Del. Super. 1997).

## IV. DISCUSSION

ICAP asserts that it is not subject to jurisdiction in Delaware under any section of the Delaware long-arm statute. (D.I. 162 at 4-5.) The plaintiffs say that ICAP is subject to specific jurisdiction, under 10 Del C. § 3104(c)(1), on the basis of its website activities and its subsidiaries' actions in Delaware. (D.I. 271 at 11-16, 20.) The plaintiffs also argue that ICAP is subject to general jurisdiction under 10 Del. C. § 3104(c)(4) because it has "made continuous and systematic filings in Delaware relating to the formation, operation and cancellation" of its subsidiaries in Delaware (*see supra* at n.2). (*Id.* at 19.)

First, I am unpersuaded that it is appropriate to exercise specific jurisdiction over ICAP in Delaware on the basis of its website activity alone. "Where the defendant is clearly doing business through its website in the forum state, and where the claim relates to or arises out of use of the website," it is proper to exercise [*11] specific jurisdiction over a defendant. *See Toys 'R' Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 452-54 (3d Cir. 2003) (specific jurisdiction exists if "the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts."). In this case, the plaintiffs have come forward with evidence showing that ICAP's websites are accessible to computer users anywhere in the world. Mere accessibility of a website, though, is not a matter of much moment. It is interactivity and the conducting of business over the Internet that carries jurisdictional consequences. *Toys 'R' Us,* 318 F.3d at 452 (exercise of personal jurisdiction proper where commercial website's interactivity reflected specifically intended interaction with residents of the forum state) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). There is no evidence here that ICAP has any customers in Delaware, let alone customers who accessed ICAP's websites, downloaded the [*12] BrokerTec ETN or the Garban ETC, and then conducted trades from Delaware. n7 (*See* D.I. 271 at 20, 23.) Not only have the plaintiffs failed to show that ICAP specifically intended to interact with Delaware residents through its website, they have failed to show that there were any ICAP customers in Delaware who were actually capable of conducting electronic trading via ICAP's websites. Therefore, the plaintiffs have

failed to prove that ICAP purposefully availed itself of conducting activity in Delaware by directly targeting its websites to Delaware or knowingly interacting with residents of Delaware through its websites, *see Toys 'R' Us,* 318 F.3d at 453, and I decline to exercise personal jurisdiction over ICAP on the basis of its website alone.

> n7 For that matter, there is no evidence that people in Delaware accessed ICAP's websites at all, *i.e.,* while surfing the Internet. I am aware of the plaintiffs' request to compel further discovery from ICAP pertaining to the "ICAP Website Report" compiled by a company called Webtrends (*see* D.I. 273 at 7); however, that information is immaterial, since the plaintiffs haven't even shown, in the first instance, that ICAP has customers in Delaware who are able to actually conduct business through any ICAP websites. For this reason, and for the reasons stated *supra* at n.6, the plaintiffs' request to compel further discovery pertaining to Webtrends will be denied.

[*13]

I am also unpersuaded by the plaintiffs' second argument that the actions of ICAP's subsidiaries may be attributed to ICAP for the purpose of establishing specific jurisdiction. (*Id.* at 16.) As ICAP points out, "under the agency theory only precise conduct known to be instigated by the parent is attributed to the parent" for jurisdictional purposes. (D.I. 296 at 4-5 (citing *C.R. Bard v. Guidant Corp.,* 997 F. Supp. 556, 558-59 (D. Del. 1998)).) The record shows that ICAP owns twelve American subsidiaries that are a part of the ICAP Group, and that ICAP's Board manages the ICAP Group as a whole. However, there is no evidence that ICAP's Board exerted some particular control over BrokerTec, Garban, or other American subsidiaries, such that the conduct of those subsidiaries in Delaware would be attributed to ICAP. n8 Thus, the plaintiffs have failed to meet their burden of proving with reasonable particularity that exercising specific jurisdiction over ICAP is appropriate in this case.

> n8 To the extent that the plaintiffs are attempting to assert jurisdiction over ICAP under an alter ego theory, that theory is applicable only when "the party asserting jurisdiction [has established] some fraud, injustice, or inequity in the use of the corporate form." *Ace & Co., Inc. v. Balfour Beatty PLC,* 148 F. Supp. 2d 418, 425 (D. Del. 2001) (quoting *C.R Bard,* 997 F. Supp. at 559). The plaintiffs have not come forward

with any evidence to establish those things in this case.

[*14]

In order for me to exercise general jurisdiction over ICAP, the plaintiffs must prove that ICAP has continuous or systematic contacts with Delaware. *American Bio Medica Corp.,* 1999 U.S. Dist. LEXIS 12455, 1999 WL 615175 at *2. The plaintiffs say that ICAP "regularly transacts business within Delaware through the repeated formation, purchase, and operation of business entities" in Delaware. (D.I. 271 at 7.) The plaintiffs also argue that the ICAP Group has "merged and amended the articles and certificates for Delaware companies on numerous occasions." (*Id.* at 7-8.)

I am unpersuaded by the plaintiffs' argument that, because ICAP bought BrokerTec and the ICAP Group filed amended certificates for certain subsidiaries in Delaware, ICAP has continuous or systematic contacts with Delaware. First, when ICAP bought BrokerTec, BrokerTec was already an established Delaware corporation. ICAP did not take any steps to form or incorporate BrokerTec in Delaware. Second, there is no evidence on the record before me that ICAP, through its Board or otherwise, has done anything to disregard the separate corporate status and management that its subsidiaries have. There is evidence on the record that members [*15] of the Board occasionally travel to the United States on business; however, there is no evidence that they travel to Delaware. Furthermore, the fact that certain subsidiaries filed certificates of amendment in Delaware does not mean that ICAP filed those certificates, or even knew that they were being filed. The plaintiffs have not set forth any reason why the activities, in Delaware, of ICAP's subsidiaries should be imputed to ICAP itself. Because I find that the plaintiffs have not demonstrated with reasonably particularity that ICAP has continuous or systematic contacts with Delaware, I will not exercise general jurisdiction over ICAP.

Finally, the plaintiffs ask that I exercise jurisdiction over ICAP pursuant to Federal Rule of Civil Procedure 4(k)(2), on the basis that ICAP has sufficient minimum contacts with the United States as a whole. (D.I. 271 at 29.) Personal jurisdiction pursuant to Rule 4(k)(2) may be exercised if (1) ultimately, the plaintiff's claim arises under federal law, (2) the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, and (3) the federal court's exercise of personal jurisdiction [*16] over the defendant does not offend the Constitution or other federal law. *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.,* 229 F.3d 254, 258 (3d Cir. 2000).

In this case, the plaintiffs' patent infringement claims arise under federal law. However, ICAP asserts that it would properly be subject to jurisdiction in New Jersey, because that is where BrokerTec and Garban are headquartered. (D.I. 296 at 20.) Because ICAP is admittedly within the jurisdictional reach of New Jersey, I decline to exercise jurisdiction over ICAP under Rule 4(k)(2). *See ISI Int'l, Inc. v. Borden Ladner Gervais LLP,* 256 F.3d 548, 552 (7th Cir. 2001) ("A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed.")

V. CONCLUSION

For these reasons, ICAP's Motion (D.I. 161) will be granted and the plaintiffs' Contingent Cross Motion to Compel Discovery (D.I. 272) will be denied. An appropriate order will follow.

**ORDER**

For the reasons set forth in the Memorandum Opinion issued today, it is hereby ORDERED that defendant ICAP Plc's Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 161) is GRANTED and [*17] the plaintiffs' Contingent Cross Motion to Compel Discovery (D.I. 272) is DENIED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

September 13, 2004
Wilmington, Delaware

      B.     *M&M Technologies, Inc. v. Gurtler Chemicals, Inc.*, No. 03-994 GMS, 2005 U.S. Dist. LEXIS 1726 (D.Del. Feb. 8, 2005)

LEXSEE 2005 US DIST LEXIS 1726

**M&M TECHNOLOGIES, INC., Plaintiff, v. GURTLER CHEMICALS, INC., Defendant/Third-Party Plaintiff, v. BURLINGTON CHEMICAL CO., INC., Third-Party Defendant.**

Civil Action No. 03-994 GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2005 U.S. Dist. LEXIS 1726

February 8, 2005, Decided

**DISPOSITION:** Motion to dismiss for lack of personal jurisdiction was granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For M&M TECHNOLOGIES INC, Plaintiff: George Pazuniak, Gerard M. O'Rourke, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

For GURTLER CHEMICALS INC., Defendant: William J. Wade, Steven J. Fineman, Richards, Layton & Finger, Wilmington, DE; Rex A. Donnelly, IV, Ratner & Prestia, Wilmington, DE; Kevin W. Goldstein, Stradley Ronon Stevens & Young, LLP, Malvern, PA.

For GURTLER CHEMICALS INC., Counter-Claimant: William J. Wade, Steven J. Fineman, Richards, Layton & Finger, Wilmington, DE; Rex A. Donnelly, IV, Ratner & Prestia, Wilmington, DE.

For M&M TECHNOLOGIES INC, Counter-Defendant: George Pazuniak, Gerard M. O'Rourke, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

For BURLINGTON CHEMICAL, Defendant: Rex A. Donnelly, IV, Ratner & Prestia, Wilmington, DE.

For GURTLER CHEMICALS INC., Third-Party Plaintiff: William J. Wade, Steven J. Fineman, Richards, Layton & Finger, Wilmington, DE; Rex A. Donnelly, IV, Ratner & Prestia, Wilmington, DE; Kevin W. Goldstein, Stradley Ronon Stevens & Young, LLP, Malvern, PA.

For GURTLER CHEMICALS INC., Counter-Claimant: William J. Wade, Steven J. Fineman, Richards, Layton & Finger, Wilmington, DE; Rex A. Donnelly, IV, Ratner & [*2] Prestia, Wilmington, DE; Kevin W. Goldstein, Stradley Ronon Stevens & Young, LLP, Malvern, PA.

For M&M TECHNOLOGIES INC, Counter-Defendant: George Pazuniak, Gerard M. O'Rourke, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM**

**I. INTRODUCTION**

On October 30, 2003, the plaintiff, M&M Technologies, Inc. ("M&M"), filed this patent infringement action against Gurtler Chemicals, Inc. ("Gurtler"). Presently before the court is a motion to dismiss for lack of personal jurisdiction filed by third-party defendant Burlington Chemical Company, Inc. ("Burlington"). For the following reasons, the court will grant the motion.

**II. BACKGROUND**

The patent-in-suit, U.S. Patent No. 6,159,548 (the "'548 patent"), allegedly is owned by M&M. The patented invention is a method for oilproofing and waterproofing previously manufactured fabric with an aerosol spray containing a diluted fluoroacrylate emulsion. The complaint alleges that Gurtler has infringed, induced infringement of, or contributorily infringed the method claims of the '548 patent.

On July 12, 2004, Gurtler filed a motion [*3] to file a second amended answer, counterclaim, and third-party complaint. The court granted Gurtler's motion on September 22, 2004. Gurtler named Burlington as a third-party defendant and brought claims against Burlington for negligent misrepresentation and violation of the Uni-

Case 1:05-cv-00422-GMS     Document 57-3     Filed 08/22/2005     Page 10 of 22

Page 2
2005 U.S. Dist. LEXIS 1726, *

form Commercial Code, Section 2-312, *i.e.* breach of warranty. The third-party complaint alleges in Count I that: (1) Gurtler makes its allegedly infringing product merely by adding water to Burcopel CAT, a product sold to it by Burlington; (2) at the time Burlington began selling Burcopel CAT to Gurtler, Burlington orally represented and warranted that Gurtler's use of the product would not infringe, induce infringement of, or contributorily infringe the '548 patent; and (3) Burlington breached its warranty against infringement. Count II alleges that: (1) Burlington's representation that Burcopel CAT was not infringing was a false representation of fact; (2) Burlington made the false representation because of its lack of reasonable care in ascertaining the facts; (3) Burlington made the false representation with an intention to induce Gurtler to act; (4) Gurtler justifiably relied on the false representation; [*4] and (5) Burlington's actions caused Gurtler to incur damages.

Burlington is a North Carolina corporation, with no place of business in Delaware. It neither owns nor leases any property in Delaware. Burlington is not registered with the Secretary of State to do business in Delaware. It maintains no office, local telephone listing, or bank accounts in Delaware, and similarly, has no employees in Delaware. It has not paid taxes or franchise fees in Delaware. Burlington has never commenced any legal action or proceeding in the State of Delaware and has never been named as defendant in any action in Delaware, except in the current litigation.

Burlington entered into an agreement with Gurtler for the sale of Burcopel CAT, a chemical that adheres to fabric causing it to become water resistant. Pursuant to the terms of the Memorandum of Sale, the product was shipped collect to Gurtler in South Holland, Illinois. n1 After receiving the Burcopel CAT, Gurtler dilutes it with water, and distributes and sells the product to its United States and international customers under its "Pulse Shield" trademark.

n1 Gurtler is an Illinois Corporation with an established place of business in Sought Holland, Illinois.

[*5]

Burlington does not sell Burcopel CAT to any customers in Delaware. Burlington's sales of products to Delaware customers in 2001, 2002, and 2003 were less than $ 1,000.00 each year, and comprised approximately 0.0007% of Burlington's annual sales revenues. In 2004, Burlington directly sold products to three customers in Delaware. Burlington had sales of $ 4,000.00 to one Delaware customer, $ 70.00 to a second Delaware customer, and $ 16,000.00 to a Delaware distributor. These sales comprised approximately 0.14% of Burlington's 2004 sales revenues.

## III. STANDARD OF REVIEW

Burlington moves to dismiss the third-party complaint for lack of personal jurisdiction over the defendant. "Rule 12(b)(2) of the Federal Rules of Civil Procedure requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant[]." *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates,* 197 F.R.D. 112, 119 (D. Del. 2000). In determining whether personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm statute of the state in which the court sits. *Transportes Aeros de Angola v. Ronair, Inc.,* 544 F. Supp. 858, 864-65 (D. Del. 1982). [*6] If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Id.* (noting, however, "intent of the legislature to exercise jurisdiction over non-residents whenever feasible"); *Compaq Computer Corp. v. Packard Bell Elecs.,* 948 F. Supp. 338, 342 (D. Del. 1996) (citation omitted). To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154(1945) (citation omitted). Specifically, Gurtler must show that Burlington "purposefully availed itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)); *see also Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 108-09, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987). Unless the [*7] contacts are continuous and systematic, they must be related to the present cause of action. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414-15 (1984).

In determining the jurisdictional question, the court must accept as true the allegations in the complaint, *Altech Indus., Inc. v. Al Tech Specialty Steel Corp.,* 542 F. Supp. 53, 55 (D. Del. 1982), but Gurtler bears the burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction over Burlington. *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.,* 147 F. Supp. 2d 268, 270-71 (D. Del. 2001). To meet this burden, Gurtler must adduce facts which 'establish with reasonable particularity' that jurisdiction over the movant exists. *Id.* (quoting *Joint Stock Soc'y v. Heublein, Inc.,* 936 F. Supp. 177, 193 (D. Del. 1996)).

## IV. DISCUSSION

### A. Delaware's Long-Arm Statute

The first step in the court's analysis is to determine whether any of the provisions of Delaware's long-arm statute, Del. Code Ann. tit. 10 § 3104, warrant the exercise of jurisdiction over Burlington. Burlington contends that the [*8] court has no basis to assert jurisdiction, while Gurtler maintains that the conduct of Burlington satisfies the requirements of subsections (c)(1) and (c)(4) of the long-arm statute. The court will address each of these sections below.

#### 1. Delaware Long-Arm Statute § 3104(c)(1)

Under subsection (c)(1), the court may exercise jurisdiction over a nonresident who transacts any business or performs any character of work or service in the State. DEL. CODE ANN. tit. 10 § 3104(c)(1). Gurtler asserts that Burlington has acted in consort with Gurtler to place Burcopel CAT into a nationwide distribution network and, as a result, Burcopel CAT may have found its way to Delaware. Thus, Burlington has availed itself of the benefits of the State of Delaware. The court disagrees.

Delaware courts construe the long-arm statute broadly to confer jurisdiction to the maximum extent possible so as to "provide residents a means of redress against those not subject to personal service within the state." *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1156-57 (Del. Super. 1997). The Delaware Supreme Court has interpreted subsection (c)(1) as a specific jurisdiction provision that requires a "nexus" [*9] between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *See LaNuova D&B, S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del. 1986). In order to meet the requirements of subsection (c)(1), Burlington's actions must be directed at residents of Delaware and the protection of Delaware laws. *Thorn EMI N. Am. v. Micron Technology,* 821 F. Supp. 272, 274 (D. Del. 1993). However, when a manufacturer passes title to goods to a third party outside of Delaware, it has not performed an act in Delaware. *Boone,* 724 A.2d at 1156. In the present case, Burlington did not pass title to Gurtler in Delaware. Rather, Burlington passed title to the Burcopel CAT in South Holland, Illinois. (D.I. 52 P 4). In addition, Burlington's sales of products in Delaware are unrelated to Gurtler's claims and, therefore, cannot give rise to specific jurisdiction. *See ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.,* 147 F. Supp. 2d 268 (D. Del. 2001).

Gurtler maintains that Burlington's actions were directed at Delaware because it engaged Gurtler as a nationwide distributor of [*10] Burcopel CAT. Gurtler further asserts that where a party contracts to have its product distributed by another throughout the United States, it contracts to have its product distributed to each state as an individual forum. *See Boone,* 724 A.2d at 1160. The court agrees that a party who contracts to have its product distributed throughout the United States is subject to jurisdiction in any state. There is no evidence in the record, however, that Gurtler was acting as Burlington's distributor of Burcopel CAT. Indeed, Gurtler purchased Burcopel CAT from Burlington, diluted it with water and sold it under Gurtler's "Pulse Shield" trademark. Moreover, the Burcopel CAT does not maintain a separate identity in Gurtler's product and Burlington is not identified to the end user. As such, subsection (c)(1) is not a basis for the exercise of jurisdiction over Burlington.

#### 2. Delaware Long-Arm Statute § 3104(c)(4)

Additionally, Gurtler asserts that Burlington has, within the meaning of subsection (c)(4), availed itself of the general jurisdiction of Delaware. Under subsection (c)(4), the court may exercise personal jurisdiction over anyone who "causes tortious injury in the State [*11] or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State. DEL. CODE ANN. tit. 10 § 3104(c)(1). Gurtler contends that jurisdiction is proper under subsection (c)(4) because Burlington's actions with respect Burcopel CAT have caused tortious injury in Delaware, Burlington maintains significant contacts with the District of Delaware, and Burlington receives substantial revenue from the sale of Burcopel CAT to Gurtler.

Delaware courts have interpreted § 3104(c)(4) as a general jurisdiction provision. *See Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.,* 295 F. Supp. 2d 400, 405 (D. Del. 2002); *Boone,* 724 A.2d at 1155 (citing *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.,* 685 A.2d 724, 727-28 (Del. Super. 1996)). This general jurisdiction provision allows the court to exercise jurisdiction when the defendant's contacts with the forum state are unrelated to the cause of action. *Bell Helicopter,* 295 F. Supp. 2d at 405. [*12]

First, the court must determine if the alleged acts set forth in the third-party complaint constitute a tortious injury for the purposes of jurisdiction. A tortious act under § 3104(c)(4) is an act "which involves a breach of duty to another and makes the one committing the act liable in damages." *Magid v. Marcal Paper Mills, Inc.,* 517 F. Supp. 1125, 1130 (D. Del. 1981). Applying Delaware law, the court finds that the alleged breach of warranty and negligent misrepresentation by Burlington each constitute a breach of duty owed to Gurtler.

Next, the court must determine if Burlington regularly does or solicits business in Delaware. The court concludes that Burlington does not regularly do business in Delaware. As previously discussed, Burlington is a North Carolina corporation, with no office or place of business in Delaware. (D.I. 52 P 2). Burlington has not appointed any agent for service of process in Delaware and is not registered to do business in Delaware. (*Id.*) It has no local telephone listing, bank accounts, real estate or employees in Delaware. (*Id.*) It has not paid any taxes or franchise fees in Delaware. (*Id.*). It has never commenced [*13] any legal action or proceeding in the State of Delaware and has never been named as plaintiff in any action in Delaware, except for the current litigation. (*Id.*) The court also concludes that Burlington does not regularly solicit business or advertise in Delaware. Further, while Burlington does maintain an Internet website that it can use to solicit business from Delaware, the mere existence of its website does not rise to the level of regularly soliciting business in Delaware. *See Motorola Inc. v. PC-Tel,* 58 F. Supp. 2d 349, 352 (D. Del. 1999) (discussing extensive advertising by the defendant, both nationwide and in Delaware through newspapers, magazines, and catalogs). Thus, the court concludes that Burlington does not regularly do or solicit business in Delaware.

Lastly, the court must determine whether Burlington derives substantial revenue from services or things used or consumed in Delaware. Delaware courts have broadly construed the term "substantial revenue" to mean that two to three percent of total revenue is sufficient to confer jurisdiction. *See United States v. Consolidated Rail Corp.,* 674 F. Supp. 138, 144 (D. Del. 1987). However, [*14] when a defendant's sales to customers in Delaware constitute less than one percent of total revenue, it is not substantial enough to warrant an exercise of jurisdiction. *Bell Helicopter,* 295 F. Supp. 2d at 405. In the present case, Burlington's sales of products to customers in Delaware in 2001, 2002, and 2003 were about $ 1,000.00 each year, representing 0.0007% of Burlington's annual sales revenues. (D.I. 53, at 2-3). In 2004, Burlington had sales to three customers in Delaware that totaled approximately $ 20,070.00. (*Id.* at 3). While Burlington's sales of products to Delaware customers grew in 2004, its Delaware revenue only comprised approximately 0.14% of its total annual sales. (*Id.*) Because Burlington's Delaware revenue was less than 1% of its total annual revenue, it is not substantial enough to warrant an exercise of general jurisdiction. The court, therefore, finds that even though the acts alleged in the third-party complaint, if proved, might constitute a breach of duty owed by Burlington, Gurtler has not made a *prima facie* showing of personal jurisdiction over Burlington under § 3104(c)(4) of the Delaware long-arm statute.

**B. Due Process** [*15]

The second step in the court's analysis is to determine whether exercising jurisdiction comports with the requirements of the Due Process Clause. The Due Process Clause requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of justice and fair play.'" *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945). In order to give non-residents "fair warning" that a particular activity may subject them to litigation within the forum, these "minimum contacts" must be purposeful. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985). In other words, the defendant's contact must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). n2 Finally, "even if the requisite minimum contacts have been found through an application of the stream [*16] of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1568 (Fed. Cir. 1994).

n2 The United States Supreme Court has explained that:

the "substantial connection" . . . between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. . . . The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum

State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.

*ICT Pharms.,* 147 F. Supp. 2d at 272 (quoting *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987)).

[*17]

Gurtler first asserts that the court should exercise jurisdiction over Burlington because Burlington has purposeful minimum contacts with the State of Delaware of the quantity and type to cause it to reasonably foresee that it would be "haled before a court" located in Delaware. Jurisdiction is proper, according to Gurtler, because it informed Burlington that it diluted Burcopel CAT with water to produce Pulse Shield, which, in turn, it placed into a distribution chain that consisted of laundering facilities across the United States. (D.I. 56, at 4). Burlington, therefore, knew that its Burcopel CAT was shipped nationally as the sole compositional ingredient in Pulse Shield. (*Id.*) Thus, Burlington has minimum contacts to satisfy due process requirements by contracting for the sale of Burcopel CAT to Gurtler, thereby directing its product into the stream of commerce of the United States and Delaware. Gurtler further asserts that, at the time this litigation was brought, Gurtler and Burlington were involved in significant business negotiations involving Burcopel CAT, which included a proposal by Gurtler that Burlington dilute the Burcopel CAT, affix Gurtler's labeling, and ship [*18] it directly to Gurtler's clients. (*Id.* at 5). However, as Gurtler points out, a final contract was never entered. Gurtler contends that these negotiations put Burlington on notice that by providing Burcopel CAT to Gurtler, Burlington would be submitting to the jurisdiction of the districts to which the Gurtler product was shipped. Gurtler relies on *Boone* and *Motorola* to support its stream of commerce theory. Gurtler argues that, as in *Boone* and *Motorola,* the defendant seeking to be dismissed, *i.e.* Burlington, engaged a distributor, *i.e.* Gurtler, who shipped the defendant's product across the country. Thus, not only did Burlington anticipate the fact that its product would be distributed in all states including Delaware, it took affirmative steps to

direct its product to Delaware by and through its agreement with Gurtler. (D.I. 56, at 5).

After reviewing the record, the court finds that Gurtler's reliance on *Boone* and *Motorola* is misplaced because both cases are distinguishable from the present case. First, there is no evidence in the record that Burlington engaged Gurtler to be its exclusive distributor of Burcopel CAT in the United States, which [*19] was a critical factor in *Boone.* The court in *Boone* found that the defendant had exhibited an intent to serve the Delaware market because it engaged a resident company as the exclusive distributor of its product in the United States and directly benefitted from the distribution. *Boone,* 724 A.2d at 1160. As previously discussed, Gurtler purchased Burcopel CAT from Burlington, diluted it with water and sold it as Pulse Shield. These actions are not consistent with a distributor/distributee relationship. In addition, the record shows that Burlington does not benefit directly from Gurtler's "distribution." Gurtler asserts that Burlington has received approximately $ 66,770.00 for purchases of Burcopel CAT. However, Gurtler does not assert that the money was a direct benefit from its distribution of Pulse Shield. Rather, it was money that Burlington received from the sale of Burcopel CAT to Gurtler alone. This situation is distinguishable from *Boone,* where the defendant earned $ 270,000 from sales of its product by its distributor in Delaware. *See id.* at 1158.

Likewise, *Motorola* is distinguishable. First, the *Motorola* defendant's product [*20] was integrated into a variety of consumer products manufactured by well-known multi-national corporations. n3 The goods produced by the corporations were then placed for sale in well-known retail stores, including Caldor and Circuit City, which all had outlets in Delaware. Further, the products were advertised extensively, both nationwide and in Delaware through newspapers, magazines, and catalogs. *Motorola,* 58 F. Supp. 2d at 352. While Burcopel CAT is integrated into Gurtler's Pulse Shield, there is no evidence in the record that Gurtler places the Pulse Shield for sale in well-known retail stores with outlets in Delaware. The record is also devoid of evidence that Gurtler advertises the Pulse Shield, either nationwide or in Delaware.

n3 The *Motorola* defendant's product was a softmodem that was integrated into Compaq, Phillips, Samsung, Sharp, and Sony consumer electronic products.

More important, the *Motorola* court found that the licensing fees and royalties from which the defendant [*21] derived its revenues "appeared to be based upon

the sale to *end users* of products containing its soft-modems." *Id.* Indeed, the court noted that the "End User distribution channel" of the defendant's licensing agreement "contemplated sale to retail consumers including consumers in Delaware of 'Shipped End User Product[s]' through retail outlets." *Id.* In the present case, Gurtler does not assert that Burlington derives revenue based on the sale of the Pulse Shield to end users. Conversely, Gurtler asserts that Burlington derives revenue based on its sale of Burcopel CAT to Gurtler.

Another important distinction between *Motorola* and the present case is that the *Motorola* defendant maintained an interactive website from which end users could download modem control commands to their computers to enable them to perform certain functions with the defendant's softmodems. In addition, the customers could order products to test their softmodems and obtain customer support directly from the defendant by telephone and Internet. The record also indicated that Delaware customers had utilized the features of the defendant's support network. *Id.* In the present case, Burlington [*22] does not offer the same type of customer support network. According to Gurtler, Burlington maintains an Internet website that allows potential clients in Delaware to access certain advertisements. The website also provides a toll free phone number for client communication and order solicitation. Burlington's website offerings are not nearly as extensive as those offered by the defendant in *Motorola*. Moreover, Gurtler has not asserted that end users of its Pulse Shield can obtain customer support from Burlington's website or toll free number.

Finally, Gurtler asserts that Burlington has admitted that it transacts certain business in Delaware and, therefore, has not only availed itself to Delaware by implicitly soliciting business in the state, but also it has derived substantial revenue from Delaware. The court disagrees.

As previously discussed, Burlington's Delaware revenue for the years 2001 through 2004 was less than 1% of its total annual revenue for each year and, therefore, not substantial enough to warrant an exercise of jurisdiction. Thus, Burlington does not have sufficient contacts with this forum to compel its appearance here without offending the Due Process Clause. [*23] n4

n4 The court need not address whether jurisdiction in Delaware comports with the "'minimum requirements inherent in the concept of 'fair play and substantial justice'" because Burlington's contacts with Delaware are insufficient to cause it to reasonably foresee being haled before a Delaware court.

Dated: February 8, 2005

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

**ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. Burlington Chemical Company's Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 51) is GRANTED.

Dated: February 8, 2005

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

C.    *Mylan Pharmaceuticals, Inc. v. Kremers Urban Dev. Co.*,  Civil Action No. 02-1628 GMS, 2003 U.S. Dist. LEXIS 5728 (D.Del. April 7, 2003)

LEXSEE 2003 U.S. DIST. LEXIS 5728

**MYLAN PHARMACEUTICALS, INC., and ESTEVE QUIMICA, S.A., Plaintiffs v. KREMERS URBAN DEVELOPMENT COMPANY, SCHWARZ PHARMA, INC., SCHWARZ PHARMA AG, SCHWARZ PHARMA MANUFACTURING, INC., and SCHWARZ PHARMA-GROUP USA, Defendants.**

Civil Action No. 02-1628 GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 5728

April 7, 2003, Decided

**SUBSEQUENT HISTORY:** Motion granted by Mylan Pharms. v. Kremers Urban Dev., 2003 U.S. Dist. LEXIS 20665 (D. Del., Nov. 14, 2003)

**DISPOSITION:** [*1] Motion to dismiss granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Mylan Pharmaceuticals Inc, Esteve Quimica, SA, PLAINTIFFS: John W Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

For Kremers Urban Development Company, Schwarz Pharma Inc, Schwarz Pharma AG, Schwarz Pharma Manufacturing, Inc, Schwarz Pharma-Group USA, DEFENDANTS: Philip A Rovner, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

For Kremers Urban Development Company, Schwarz Pharma Inc, Schwarz Pharma Manufacturing, Inc, Schwarz Pharma-Group USA, COUNTER-CLAIMANTS: Philip A Rovner, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

For Mylan Pharmaceuticals Inc, Esteve Quimica, SA, COUNTER-DEFENDANTS: John W Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

## I. INTRODUCTION

The plaintiff, Mylan Pharmaceuticals, Inc. ("Mylan"), filed the above-captioned suit against multiple defendants, alleging infringement of U.S. Patent No. 5,626,875 ("the '875 patent"). The alleged patent owner, Esteve Quimica, S.A. ("Esteve"), was added as a plaintiff [*2] on January 22, 2003. Presently before the court is a motion by the defendant Schwarz Pharma AG ("SPAG") to dismiss the Amended Complaint for lack of personal jurisdiction (D.I. 22). For the reasons that follow, the court will grant the motion.

## II. BACKGROUND

The patent-in-suit allegedly is owned by Esteve and exclusively licensed to Mylan. The patented invention is a formulation of the drug omeprazole, sold by Astra-Zeneca under the brand name Prilosec. It is alleged that the defendants' manufacture and sale of a generic formulation of omeprazole constitutes patent infringement. The defendant SPAG is accused of inducing its agents in the United States, namely, the four co-defendants, to infringe the '875 patent. The complaint also alleges tortious interference with a prospective business advantage.

There are five defendants in this action: SPAG; Schwarz Pharma, Inc. ("SPI"); Schwarz Pharma Manufacturing ("SP Manufacturing"); Schwarz Pharma Group USA, incorporated under the name Schwarz Pharma USA Holdings, Inc. ("SP Holdings"); and Kremers Urban Development Co. ("KUDCo"). SPAG is a German corporation which produces and distributes pharmaceutical drugs. SP Holdings is a [*3] wholly-owned subsidiary of SPAG. In turn, SPI and SP Manufacturing are wholly-owned subsidiaries of SP Holdings. KUDCo is a wholly-owned subsidiary of SPI. KUDCo, SPI, and SP Holdings are Delaware corporations. SP Manufacturing is an Indiana corporation.

KUDCo filed Abbreviated New Drug Applications ("ANDA's") with the United States Food and Drug Administration ("FDA") in July of 1998 and July of 1999, seeking approval to market and sell a generic formulation of omeprazole. At some point, SPI also filed an ANDA for the same purpose. SPAG paid for certain of the clinical studies related to KUDCo's applications to the FDA, and made payments to the inventors of KUDCo's omeprazole formulation. This funding ended by December of 1999. Otherwise, KUDCo and SPI assumed all of the costs and responsibility for preparing, filing, and proceeding with the ANDA's, as well as all clinical studies occurring after December, 1999.

KUDCo's ANDA for omeprazole was approved on November 1, 2002. Thereafter, SP Manufacturing began producing the drug. On December 9, 2002, KUDCo's affiliate, Kremers Urban, Inc. ("KUI"), a wholly-owned subsidiary of SP Holdings and a non-party to the present suit, began to [*4] market and sell KUDCo's omeprazole product throughout the United States. SP Manufacturing has borne all manufacturing costs associated with the product, and KUI has paid for all distribution and sales costs. KUI receives all of the revenue derived from the U.S. sales of its omeprazole product. KUI keeps a portion of this revenue, and distributes the remainder to SP Manufacturing and KUDCo. KUDCo keeps a portion of this revenue, and also uses it to provide loans and dividends to SPI. No revenue from the sale of omeprazole is directly provided to SPAG or SP Holdings. Nevertheless, SP Holdings receives a dividend from the general revenue pool of SPI, SP Manufacturing, KUI, and KUDCo. In turn, SP Holdings may then pay a dividend to SPAG. Apparently, exact figures for any such dividends are unavailable at this time.

## III. STANDARD OF REVIEW

SPAG moves to dismiss the Amended Complaint for lack of personal jurisdiction over the defendant. "Rule 12(b)(2) of the Federal Rules of Civil Procedure requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant[]." *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates,* 197 F.R.D. 112, 119 (D. Del. 2000). [*5] In determining whether personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long arm statute of the state in which the court sits. *Transportes Aeros de Angola v. Ronair, Inc.,* 544 F. Supp. 858, 864-65 (D. Del. 1982). If jurisdiction is proper per the long arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Id.* (noting, however, "intent of the legislature to exercise jurisdiction over non-residents whenever feasible"); *Compaq Com-*

*puter Corp. v. Packard Bell Elecs.,* 948 F. Supp. 338, 342 (D. Del. 1996) (citation omitted). To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945) (citation omitted). Specifically, the plaintiffs must show that SPAG "purposefully [*6] availed itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)); *see also Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 108-09, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987). Unless the contacts are continuous and systematic, they must be related to the present cause of action. *Helicopteros Nacionales de Colombia, S. A. v. Hall,* 466 U.S. 408, 414-15, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984).

In determining the jurisdictional question, the court must accept as true the allegations in the complaint, *Altech Industries, Inc. v. Al Tech Specialty Steel Corp.,* 542 F. Supp. 53, 55 (D. Del. 1982), but the plaintiffs bear the burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction over SPAG. *ICT Pharmaceuticals, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 147 F. Supp. 2d 268, 270-71 (D. Del. 2001). To meet this burden, the plaintiffs must adduce [*7] facts which 'establish with reasonable particularity' that jurisdiction over the movant exists. *Id.* (quoting *Joint Stock Soc'y v. Heublein, Inc.,* 936 F. Supp. 177, 193 (D. Del. 1996)).

## IV. DISCUSSION

The plaintiffs argue that jurisdiction is proper on three grounds. First, the plaintiffs maintain that specific jurisdiction is appropriate pursuant to the long arm statute because of the activities of SPAG's agents in Delaware. Second, they argue that general jurisdiction exists pursuant to the long arm statute based on the alter ego doctrine. Third, the plaintiffs contend that jurisdiction over SPAG is appropriate pursuant to Federal Rule of Civil Procedure 4(k)(2). The court need not definitively decide these issues, however, as compliance with the Constitution is required in each of these contexts, and the court concludes that the exercise of jurisdiction over SPAG would offend the Due Process Clause.

As stated above, to satisfy the constitutional requirements of due process, the court must determine whether the defendant has "minimum contacts" with the state of Delaware such that the exercise of jurisdiction over it would be fair and just. Minimum [*8] contacts

2003 U.S. Dist. LEXIS 5728, *

are not determined according to a fixed formula. *Transportes Aeros de Angola,* 544 F. Supp. at 865. Nevertheless, as previously stated, minimum contacts usually are found where the defendant has purposefully availed itself of the privileges of the forum state such that it would be reasonably foreseeable that the defendant might be "haled before a court" in the forum as a result of its conduct. *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of California,* 480 U.S. 102, 109, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987). Furthermore, the defendant's contacts with the forum state must create a 'substantial connection' with the forum, *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985) (quoting *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957)), and the claims must arise out of or relate to those contacts. *HollyAnne Corp. v. TFT, Inc.,* 199 F.3d 1304, 1307-08 (Fed. Cir. 1999).

The plaintiffs argue that SPAG, through its agents, including the four co-defendants, has sold and offered for sale the allegedly infringing [*9] product in Delaware. They have produced no evidence to support this theory, however. Indeed, according to state-by-state sales data for omeprazole, as of February of 2003, KUDCo had not sold any omeprazole in Delaware, nor shipped any of the product to this state. SPAG's Reply Brief at 2. The court recognizes, and SPAG concedes, that "presumably KUDCo's generic omeprazole product is available for purchase in Delaware." *Id.* In the absence of any affirmative evidence to that effect, however, such a presumption is insufficient to establish a *prima facie* case for jurisdiction over SPAG. The plaintiffs have not adduced any evidence that SPAG, or any of its alleged agents, have availed themselves of the benefits or privileges of Delaware in any way, much less created a 'substantial connection' with the state.

In support of the court's conclusion that the exercise of jurisdiction over SPAG, on the present record, would not comport with due process requirements, the court notes the following additional facts:

1) SPAG does not have any employees, sales representatives, distributors, brokers, or wholesalers in the United States;
2) does not own or lease any real or personal [*10] property in the United States;
3) does not maintain any inventory of products in the United States;
4) does not conduct any research or development in the United States;
5) does not maintain any bank accounts in the United States;
6) has not paid taxes or franchise fees in the United States;
7) does not maintain any office or telephone listing in the United States; and
8) has never designated anyone in the United States to accept legal service of process on its behalf.

Thus, although it is conceivable that SPAG, through its agents, is doing business in the United States generally, there is no evidence that SPAG or its agents have done so in Delaware. In the absence of such evidence, the court cannot find that the exercise of jurisdiction over SPAG, a German corporation with its principal place of business in that country, would be fair and just. Therefore, the court must grant the defendant's motion to dismiss.

## V. CONCLUSION

For the aforementioned reasons,

IT IS HEREBY ORDERED that:

1. Schwarz Pharma AG's Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 22) is GRANTED.

Dated: April 7, 2003

Gregory M. Sleet

UNITED STATES DISTRICT [*11] JUDGE

     D.     *Venoco, Inc. v. Marquez*, C.A. No. 02-1685 GMS, 2003 U.S. Dist. LEXIS 7593 (D.Del. May 5, 2003)

LEXSEE 2003 US DIST LEXIS 7593

**VENOCO, INC., a Delaware corporation, Plaintiff v. TIMOTHY M. MARQUEZ, Defendant.**

**C.A. No. 02-1685 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2003 U.S. Dist. LEXIS 7593**

**May 5, 2003, Decided**

**DISPOSITION:** [*1] Motion to dismiss granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For VENOCO, INC., plaintiff: Donald J. Wolfe, Jr., Potter Anderson & Corroon, LLP, Wilmington, DE.

For TIMOTHY MARQUEZ, defendant: Martin S. Lessner, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

#### I. INTRODUCTION

On November 19, 2002, Venoco, Inc. ("Venoco"), a Delaware corporation, filed a complaint for declaratory relief against Timothy M. Marquez ("Marquez"), a director and shareholder of Venoco, in the Court of Chancery of the State of Delaware, New Castle County. On November 20, 2002, Marquez filed a shareholder derivative action in the United States District Court for the Central District of California seeking, [*2] on behalf of Venoco, to recover damages caused by the payment of a cash dividend. On December 18, 2002, Marquez timely removed the declaratory relief action to this court.

Presently before the court is Marquez's motion to dismiss, or alternatively, to transfer this case to the Central District of California, or to stay this case pending the outcome of the derivative shareholder litigation (D.I. 4).

For the reasons that follow, the court grant Marquez's motion to dismiss.

#### II. BACKGROUND

Founded in 1992, Venoco is an oil and gas company, incorporated in Delaware, with its principal place of business in California. Pl.'s Compl. P 2. Marquez, a Colorado resident, is a stockholder and Director of Venoco and was the Chief Executive Officer (CEO) of the company from 1992 until he was terminated in June of 2002. Id. P 3. Venoco has two preferred stockholders, Joint Energy Development Investments II Limited Partnership ("JEDI II"), and ECTMI Trutta Holdings LP ("Trutta"), both of which are affiliates of Enron Corporation ("Enron"). Collectively, JEDI II and Trutta own 8192.90 shares, or all of Venoco's outstanding Series A preferred stock. Id. PP 5,6. Venoco had certain [*3] dividend obligations on the preferred stock, which it failed to meet in full. Id. PP 10-15. On June 30, 2002, Venoco's Board of Directors ("Board") met to consider its preferred dividend obligations, and decided by vote to pay a cash dividend of $ 2,048,000 to the Enron affiliates. Id. P 15. Marquez voted against payment of the dividend and subsequently, after the dividend was paid, made a demand regarding the dividend. Pl.'s Compl. P16-17. Marquez asserted that "'no Director of Venoco in the proper exercise of his/her reasonable business judgment could have believed that the cash dividend was in the best interest of the corporation.'" Id. P 17. Additionally, Marquez demanded that Venoco "'take all steps necessary, including an action against the holders of the Series A, to obtain the return of the cash dividend, including but not limited to an action against those Directors who, in breach of their fiduciary duties to Venoco, approved the cash dividend.'" Id. P17.

On November 14, 2002, the Board met and formed a committee to consider Marquez's demand and make a recommendation to the entire Board. Id. P 18. On November 18, 2002, after investigating and meeting, [*4]

2003 U.S. Dist. LEXIS 7593, *

the committee unanimously determined and recommended that the full Board reject Marquez's demand. The full Venoco Board met and subsequently rejected Marquez's demand. *Id.* P18-20. On November 19, 2002, Venoco filed its complaint in the Court of Chancery of the State of Delaware, New Castle County, seeking declaratory judgments that the Board's decision rejecting the demand is valid and protected by the business judgment rule and that any Venoco shareholder be precluded from pursuing a derivative claim relating to the dividend. *Id.* P 1. On November 20, 2002, Marquez filed a shareholder derivative action on behalf of Venoco in the Central District of California. On December 18, 2002, Marquez removed the above captioned case from the Chancery Court to this court. On January 7, 2003, Marquez filed the present motion to dismiss, or alternatively, to stay or transfer the action to the Central District of California.

## III. STANDARD OF REVIEW

Marquez moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b) for lack of jurisdiction over the defendant. In determining the presence or absence of personal jurisdiction, courts engage in a two step analysis. First, the [*5] court must decide whether the long-arm statute of the state in which the court sits authorizes jurisdiction. *Transportes Aeros de Angola v. Ronair, Inc.,* 544 F. Supp. 864-65 (D. Del. 1982). If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Id.* (noting, however, "intent of the legislature to exercise jurisdiction over non-residents whenever feasible"); *Compaq Computer Corp. v. Packard Bell Elecs.,* 948 F. Supp. 338, 342 (D. Del. 1996) (citation omitted). To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945) (citation omitted). Specifically, the plaintiff must show that the defendant "purposefully availed itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985) [*6] (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)); *see also Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 108-09, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987). Unless the contacts are continuous and systematic, they must be related to the plaintiff's cause of action. *Helicopteros Nacionales de Colombia, S. A. v. Hall,* 466 U.S. 408, 414-15, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984). In determining the jurisdictional question,

the court must accept as true the allegations in the complaint. *Altech Industries, Inc. v. Al Tech Specialty Steel Corp.,* 542 F. Supp. 53, 55 (D. Del. 1982).

## IV. DISCUSSION

Because Marquez has challenged the propriety of personal jurisdiction, it is Venoco's initial burden to demonstrate that Marquez's activities fall within the ambit of the long-arm statute. *Jeffreys v. Exten,* 784 F. Supp. 146, 151 (D. Del. 1992). According to the statute, a non-resident person or corporation is deemed to submit to the jurisdiction of the Delaware courts by committing any one of several acts. DEL. CODE ANN. tit. 10, § 3104(b). These acts [*7] are: (1) transacting any business or performing any character of work within the state; (2) contracting to supply services or things in Delaware; (3) causing tortious injury in Delaware through an act committed in Delaware; (4) causing tortious injury in Delaware through an act committed outside Delaware if the person solicits business in Delaware, engages in regular conduct in Delaware or derives substantial revenue from Delaware contacts; (5) having an interest in, using, or possessing real property in Delaware; or (6) contracting to act as a surety for a contract or other such obligation located, executed, or to be performed within Delaware at the time the contract is made. *Id.* z§ 3104(c)(1)-(6).

The plaintiff urges that § 3104 (c)(1) applies to the defendant. Venoco contends that Marquez has transacted business in this state by his position as a director and stockholder of Venoco, a Delaware corporation, and through his previous litigation in a Delaware state court. n1 Even when construed in the light most favorable to Venoco, however, the court cannot conclude that these acts constitute "transacting business" within the state.

n1 *See* Pl.'s Ans. Br. at 10 (citing *Venoco, Inc. v. Eson,* 2002 Del. Ch. LEXIS 65, 2002 WL 12288703 (Del. Ch. 2002)).

[*8]

First, the mere ownership of stock in a Delaware corporation does not constitute "transacting business" in the state as contemplated by the long arm statute. The plaintiff has presented no support for this contention, and the court has found none. In any case, it is well-established that ownership of stock is not sufficient to establish personal jurisdiction consistent with due process. *See In re DaimlerChrysler AG Securities Litigation,* 197 F. Supp. 2d 86, 98 (D. Del. 2002) ("Stock ownership has not been found to be sufficient to support the exercise of personal jurisdiction.") (citing *Shaffer v. Heitner,* 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977));

*see also Hana Ranch, Inc. v. Lent,* 424 A.2d 28, 31 (Del. Ch. 1980) ("a valid cause of action against a non-resident defendant for acts within the scope of a directorship was a *sine qua non* to a successful assertion of a claim against such a non-resident in his capacity as stockholder").

Neither is the mere holding of a directorship sufficient to establish jurisdiction over Marquez via the long-arm statute. *See, e.g., Pestolite, Inc. v. Cordura Corp.,* 449 A.2d 263, 267 (Del. Super. 1982) [*9] ("the mere status as director of a Delaware corporation, standing alone, is not a significant basis for the individual Defendants to reasonably anticipate being haled into this Court"). Again, the plaintiff has cited no caselaw, and the court has found none, to suggest that the mere holding of a directorship constitutes "transacting business" or "performing work" for purposes of the statute. Furthermore, as in *Hana Ranch,* Venoco has not filed an action against Marquez for acts within the scope of his directorship, but has filed an action against Marquez as a common shareholder.

Finally, Marquez's involvement in prior litigation in Delaware is not sufficient to bring him within the ambit of the long-arm statute. *See, e.g., Hartford Cas. Ins. Co. v. Petrolon Mgmt., Inc.,* 1995 U.S. Dist. LEXIS 22086 (D. Del. 1995) (defendant's participation as third-party defendant in a previous suit in Delaware not sufficient to confer personal jurisdiction over it via long-arm statute). The previous litigation in Delaware was initiated by Venoco. Marquez, though stating he had a personal interest in remaining CEO of the company, testified as a witness only in his capacity as a [*10] director and CEO of Venoco. The court declines to hold that testifying as a witness in an official capacity constitutes transacting business or performing work in the state sufficient to confer personal jurisdiction pursuant to the long-arm statute.

Venoco has offered no other grounds for finding that Marquez falls within the ambit of the long-arm statute, and it appears that no other such basis exists. It appears the defendant has no other contact with Delaware beyond those alleged connections already discussed. He has no office or property in Delaware, conducts no business in the state, and is not registered to do business in Delaware. There is no suggestion that the defendant has committed any tortious act in Delaware, or otherwise caused any injury in the state. In short, there is no asserted connection to Delaware as required by § 3104. As such, the long-arm statute does not authorize the exercise of jurisdiction over Marquez.

Because the court has found that personal jurisdiction over Marquez is not authorized by the Delaware long-arm statute, it need not address the constitutional dimension of the jurisdictional question. *See, e.g., Intel Corp. v. Silicon Storage Tech.,* 20 F. Supp. 2d 690, 699 (D. Del. 1998) [*11] ("The Delaware long-arm statute [does not] authorize this court to exercise jurisdiction over [the defendant]. Therefore, the court need not analyze whether exercising such jurisdiction would comport with the Due Process Clause."). In addition, the court need not address Marquez's motion to dismiss on other grounds, or his motion to transfer or stay the case. Finally, the plaintiff's motions to remand to the Chancery Court (D.I. 7) and to expedite the proceedings (D.I. 15) are deemed moot.

## V. CONCLUSION

For the aforementioned reasons,

IT IS HEREBY ORDERED that:

1. The defendant's Motion to Dismiss Action for Lack of Personal Jurisdiction; Dismiss or Stay Action in Favor of Parallel Action; or Transfer Venue of Action to California (D.I. 4) is GRANTED;

2. This action is DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction over the defendant;

3. The plaintiff's Motion to Remand to the Court of Chancery of the State of Delaware (D.I. 7) is DENIED as moot;

4. The plaintiff's Motion to Expedite Proceedings (D.I. 15) is DENIED as moot;

5. The Clerk of the Court is directed to close the case.

Dated: May 5, 2003

Gregory M. [*12] Sleet

UNITED STATES DISTRICT JUDGE