UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| ENERGY TRANSPORTATION GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> SONIC INNOVATIONS, INC., et al., <br><br> Defendants. | Civil Action No. 05-422 (GMS) |

**DEFENDANT RESISTANCE TECHNOLOGY, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND ITS ANSWER IN OPPOSITION TO ENERGY TRANSPORTATION GROUP, INC.'S MOTION FOR JURISDICTIONAL DISCOVERY**

Barry M. Klayman, Esquire (#3676)
WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP
Wilmington Trust Center
1100 North Market Street
Suite 1001
Wilmington, DE 19801
(302) 777-0313

Jeffrey D. Shewchuk, Esquire
Shewchuk IP Services, LLC
533 77th Street West
Eagan, MN 55121
(651) 331-9558

Attorneys for Defendant, Resistance Technology, Inc.

WIL:54186.1/res068-230363

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ..................... 1

SUMMARY OF ARGUMENT ..................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 2

ARGUMENT ................................................................................................................................... 6

    A.    Establishing Jurisdiction Requires a Showing under BOTH the State Long Arm Statute and Due Process. ......................................................................................... 6

    B.    ETG Has Failed To Adduce Facts Which Establish That General Personal Jurisdiction Over RTI Exists. .................................................................................. 7

    C.    ETG Has Failed To Adduce Facts Which "Establish With Reasonable Particularity" That Specific Personal Jurisdiction Over RTI Exists. ................... 9

    D.    ETG's Jurisdictional Discovery Motion Is Merely An Unguided Fishing Expedition and Should Be Denied. .......................................................................11

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

## CASES

*Base Metal Trading Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*,
   47 Fed.Appx. 73 (3d Cir. 2002) .................................................................................. 12

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), *cert. dismissed*, 512 U.S. 1273 .................................................................................. 11

*Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*,
   395 F.3d 1315 (Fed. Cir. 2005) ....................................................................... 6, 11, 12, 14

*Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318 (Fed. Cir. 1990) .................... 12

*Motorola, Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349 (D. Del. 1999) ..................................... 6

*Toys "R" Us, Inc., v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) .................................. 12

*Transportes Aereos de Angola v. Ronair, Inc.*, 544 F. Supp. 858 (D. Del. 1982) ............... 6

*Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 73
   U.S.P.Q.2d 1587 (Fed. Cir. 2005) ................................................................................. 9

*Truswal Systems Corp. v. Hydro-Air Engineering Inc.*, 813 F.2d 1207
   (Fed. Cir. 1987) ............................................................................................................ 11

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ................................... 7

## STATUTES

10 Del. C. § 3104 .................................................................................................................. 6

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This is a patent infringement action. Plaintiff Energy Transportation Group, Inc. ("ETG") alleges in its First Amended Complaint [D.I. 38] that each of the seventeen defendants has infringed or induced the infringement of two patents, one directed at a particular type of hearing aid, the other directed at a host controller for a hearing aid. ETG's Complaint [D.I. 1] was filed June 23, 2005, and ETG's First Amended Complaint [D.I. 38] was filed August 4, 2005. Currently pending before the Court are:

(a) Defendant Resistance Technology, Inc.'s ("RTI's") Motion to Dismiss For Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2), filed August 22, 2005 [D.I. 56, 57] ("RTI's 12(b)(2) Motion"); and

(b) Plaintiff ETG's Motion For Expedited Jurisdictional Discovery and Extension of Time to Respond to RTI's Motion to Dismiss For Lack of Personal Jurisdiction, filed August 31, 2005, corrected September 9, 2005 [D.I. 63, 72] ("ETG's Jurisdictional Discovery Motion").

The present submission represents both RTI's Reply in support of RTI's 12(b)(2) Motion and RTI's Answer in Opposition to ETG's Jurisdictional Discovery Motion.

## SUMMARY OF ARGUMENT

General personal jurisdiction is assessed without regard to the specific issues being litigated. ETG has failed to adduce any specific facts suggesting that RTI is subject to general personal jurisdiction in this Court, either under the Delaware long-arm statute or comporting with due process. Specific personal jurisdiction can be assessed only with regard to the specific conduct which gives rise to the action. In the instant action, the Complaint and First Amended Complaint give no indication of what product ETG

accuses of infringing ETG's patents, and ETG's briefing does not fill the specificity void. ETG has made no "reasonably specific" allegation which would allow the Court (or RTI) to assess any basis of specific personal jurisdiction over RTI. ETG has failed to present any factual information that RTI purposefully availed itself of the Delaware market. Accordingly, RTI is not subject to the personal jurisdiction of this Court, and RTI's 12(b)(2) Motion should be granted.

ETG's request for jurisdictional discovery should not be assessed in a vacuum, but rather in light of its Complaint and in light of ETG's response to RTI's 12(b)(2) Motion. ETG has made no factual presentation of any legitimate possibility of general personal jurisdiction over RTI. Similar to the Complaint, ETG's argument for specific personal jurisdiction fails to specify with reasonable particularity which product or service of RTI, Sonic Innovations, Inc. ("Sonic") or Starkey Laboratories, Inc. ("Starkey") allegedly infringes ETG's patents. ETG's requested discovery is not tied to any reasonably particular possibility of jurisdiction over RTI, but rather is an unguided fishing expedition. Accordingly, ETG's Jurisidictional Discovery Motion should be denied.

## STATEMENT OF FACTS

This is a patent infringement action involving two patents. No prefiling notice was given to RTI, or apparently to any of the other defendants, as to the existence of ETG's patents or which particular product or service ETG believes infringes its patents. U.S. Patent No. 4,731,850 ("'850 hearing aid patent") includes some 15 claims directed at "a hearing aid comprising at least one input microphone, an output receiver, a signal transmission channel interposed between said microphone and said receiver…". The

other four claims of the '850 hearing aid patent (claims 13-16) are directed at a method requiring the same combination. U.S. Patent No. 4,879,749 ("'749 host controller patent") includes six claims, each directed at a "host controller".

In the instant Complaint (both in original, First Amended and Second Amended forms), there is no specific conduct complained of. Instead, the Complaint is directed at all defendants equally, and speaks in broadest possible terms to "products, services, methods or processes that infringe directly and/or indirectly, which employ systems, components and/or steps that make use of other systems or processes that infringe directly and/or indirectly or which are made according to a patented process". [*See* D.I. 1, pars. 25, 31; D.I. 38, pars. 28, 34; D.I. 65, pars. 30, 36].

Following RTI's filing of its 12(b)(2) Motion, lead counsel for RTI and ETG spoke with regard to whether RTI would agree to limited jurisdictional discovery and thereby avoid bringing jurisdictional discovery issues before the Court. RTI agreed, provided the discovery was reasonable in scope and subject to appropriate confidentiality restrictions. Though the Complaint was entirely vague, RTI believed that the discovery which ETG would be seeking would be closely tied to the specific product(s) of RTI that ETG believed infringed its '850 hearing aid and '749 host controller patents. Instead, ETG set out some 32 document requests, **none** of which were specific to any particular product or service of RTI. (See ETG's August 26, 2005 letter, attached hereto as Exhibit A). None of ETG's document requests were specific to "hearing aids". None of ETG's documents requests were specific to "host controllers". None of ETG's document requests were specific to any type of product manufactured by RTI, much less specific to a particular product by model name or number.

In response to ETG's requested discovery, RTI explained to ETG that, as ETG had not yet given any basis for an analysis for specific personal jurisdiction, RTI would only agree to discovery which was reasonably directed at general personal jurisdiction over RTI. In particular, RTI stated to ETG:

> It must be noted that the relevance of jurisdictional discovery must be adjudged relative to the allegations in the Complaint, and must be adjudged as of the time of filing of the Complaint (not, for instance, as of five years ago). The First Amended Complaint does not identify any product of RTI alleged to be infringing, does not identify whether the infringement allegation is one of direct infringement, contributory infringement or inducement to infringe, does not identify which claims or even which of the two patents are alleged to be infringed, and indeed, is not clearly tied to RTI's products at all (as opposed to 'services, methods or processes', see First Amended Complaint, paras. 28 and 34). … Thus, there is currently no basis for analysis of any specific personal jurisdiction, and the only relevant inquiry at this time is whether general personal jurisdiction exists. RTI would reassess what jurisdictional discovery is 'reasonable' should the Complaint be amended to provide more specificity or ETG otherwise come forward with the evidentiary basis that it believes supports the allegation of general or specific personal jurisdiction. As it stands, reasonable jurisdictional discovery is much more limited than that sought in your letter.

See RTI's August 30, 2005 letter, attached hereto as Exhibit B.

ETG was not interested in amending its Complaint to include more specificity, not interested in telling RTI and the Court what specific product or service was believed to infringe its '850 hearing aid and '749 host controller patents, and not interested in providing RTI and the Court with any basis to analyze specific personal jurisdiction. Instead of providing any further information to RTI by responding to RTI's August 30, 2005 letter, ETG filed its Jurisdictional Discovery Motion [D.I. 63]. Shortly thereafter, ETG filed its Motion For Leave For Entry of Second Amended Complaint [D.I. 65], foregoing the opportunity to add more specificity in the Complaint to its infringement allegation. ETG has since also filed its brief in response to RTI's 12(b)(2) Motion [D.I. 77] ("ETG's 12(b)(2) Response Brief").

ETG's Jurisdictional Discovery Motion and 12(b)(2) Response Brief have brought out the following facts:

1. RTI is a manufacturer of a wide variety of miniaturized electronic components, including "hearing device components and systems, molded plastics, thermistors, capacitors, and other high technology products". (Buroker Decl., Ex. A3 [D.I. 72]). RTI's hearing device components include volume controls, trimmers, programmable hearing systems, custom and application specific integrated circuits, hybrids and faceplates. In fact, RTI has advertised itself as the world's largest manufacturer of "custom hearing aid volume controls, trimmers, and switches." (Buroker Decl., Ex. A9 [D.I. 72])

2. RTI sells product to Sonic, a major manufacturer of hearing aids. (Buroker Decl., Ex. A1, p. 32 [D.I. 72]). Sonic is headquartered in Utah, and apparently has no facilities in Delaware. (First Amended Complaint, par. 8 [D.I. 38]; Buroker Decl., Ex. A2 [D.I. 72]). Sonic has a single source for its proprietary, patented digital signal processing chips. (Buroker Decl., Ex. A4, p. 14 [D.I. 72]). Sonic is subject to the personal jurisdiction of this Court.

3. RTI sells product to Starkey, a major manufacturer of hearing aids. (Buroker Decl., Ex. A6 [D.I. 72]). Starkey is headquartered in Minnesota, and apparently has no facilities in Delaware. (First Amended Complaint, par. 19 [D.I. 38]; Buroker Decl., Ex. A7 [D.I. 72]). Starkey is subject to the personal jurisdiction of this Court.

ETG's Jurisdictional Discovery Motion and 12(b)(2) Response Brief in no way fill the specificity void in the Complaint as to which specific product or service of the Defendant(s) are alleged to infringe either the '850 hearing aid patent or the '749 host

controller patent. None of ETG's document requests from its Jurisdictional Discovery Motion are specific to "hearing aids", much less to a particular hearing aid by model number or name. None of ETG's document requests from its Jurisdictional Discovery Motion are specific to "host controllers", much less to a particular host controller by model number or name. ETG is silent as to identifying which hearing aid model number or name of either Sonic or Starkey allegedly infringes either the '850 hearing aid patent or the '749 host controller patent. Nor does ETG identify with reasonable particularity any component of RTI which causes infringement of either the '850 hearing aid patent or the '749 host controller patent.

## ARGUMENT

A. **Establishing Jurisdiction Requires a Showing under BOTH the State Long Arm Statute and Due Process.**

ETG argues, without case law support, that no showing is required under Delaware's long arm statute, and ETG's 12(b)(2) Response Brief does not even attempt an analysis under Delaware's long arm statute, 10 Del. C. § 3104. To the contrary, in order to establish personal jurisdiction in a patent infringement case over a non-resident defendant, a plaintiff must show **both** that the state long arm statute applies and that the requirements of due process are satisfied. *Transportes Aereos de Angola v. Ronair, Inc.*, 544 F. Supp. 858, 864-65 (D. Del. 1982); *Motorola, Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349, 352 (D. Del. 1999); *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005). With ETG having failed to even make an argument that the exercise of personal jurisdiction over RTI satisfies one or more prongs of Delaware's long arm statute, RTI's 12(b)(2) Motion should be granted.

**B.    ETG Has Failed To Adduce Facts Which Establish That General Personal Jurisdiction Over RTI Exists.**

ETG has adduced facts showing that RTI is or was the world's largest manufacturer of "custom hearing aid volume controls, trimmers, and switches."[1] (Buroker Decl., Ex. A9 [D.I. 72]). The fact remains, however, that none of these volume controls, trimmers and switches (or any of RTI's other products) are sold by RTI into Delaware. (Gorder Aff., par. 8 [D.I. 57]). Hearing aid volume controls, trimmers and switches are components of hearing aids which are purchased by hearing aid manufacturers, not by the general public. ETG has not identified any hearing aid manufacturer located in Delaware. ETG has not provided any evidence that any volume control, trimmer or switch manufactured by RTI entered the state of Delaware. Even if a volume control, trimmer or switch manufactured by RTI found its way into Delaware in a hearing aid manufactured by a third party, ETG has provided no evidence that any consumer in Delaware would be able to identify the RTI component as separate from the hearing aid. ETG has provided no case law suggesting that that the world's largest manufacturer of any particular type of item is subject to general jurisdiction in every jurisdiction in the world, regardless of whether that manufacturer is making sales into every jurisdiction. "[W]e have never accepted the proposition that state lines are irrelevant for jurisdictional purposes, nor could we, and remain faithful to the principles of interstate federalism embodied in the Constitution." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980). RTI's statement that it is the "world's largest

---

[1] ETG's papers interchange "custom hearing aid volume controls, trimmers, and switches" for "hearing aid chips", perhaps under the misguided impression that volume controls, trimmers, and switches are "chips", and that all "chips" are "custom". In fact, the exact opposite is true. Hearing aid volume controls, trimmers and switches are not provided on chips. Accordingly, RTI's statement that it is the world's largest manufacturer of "custom hearing aid volume controls, trimmers and switches" has no bearing on how many hearing aid chips RTI produces, custom or otherwise.

manufacturer of custom hearing aid volume controls, trimmers, and switches" is not a sufficient basis for exercising personal jurisdiction over RTI in the state of Delaware, either under Delaware's long arm statute or under due process.

ETG has adduced facts showing that RTI sells to Sonic, located in Utah, and sells to Starkey, located in Minnesota. ETG has not provided any evidence that either Sonic or Starkey have facilities in Delaware. Sales into Utah and into Minnesota are not a sufficient basis for exercising personal jurisdiction over RTI in the state of Delaware, either under Delaware's long arm statute or under due process.

ETG argues that, because discovery has not begun, it has satisfied its burden on jurisdiction merely due to its allegation "that each Defendant has 'committed acts within this judicial district giving rise to this action and does business in this district, including sales, and providing service and/or support to their respective customers in this district." (ETG's 12(b)(2) Response Brief, p. 4). However ETG's jurisdictional allegation is a statement of law, not a factual allegation which would support the exercise of jurisdiction once a defendant challenges jurisdiction. If mere pleading of a jurisdictional statement of law satisfied a plaintiff's burden responsive to a Rule 12(b)(2) motion, no case would ever be dismissed prior to discovery for lack of personal jurisdiction. Moreover, RTI has directly controverted ETG's entire jurisdictional allegation. RTI has no sales in Delaware (Gorder Aff., par. 8 [D.I. 57]), and therefore RTI has no "respective customers [of RTI] in this district" to which it could possibly provide "service and/or support".

ETG has failed to meet its burden of adducing facts that establish with reasonable particularity that general personal jurisdiction over RTI exists, either under either under Delaware's long arm statute or under due process. Accordingly, RTI's 12(b)(2) Motion

should be granted.

C.  **ETG Has Failed To Adduce Facts Which "Establish With Reasonable Particularity" That Specific Personal Jurisdiction Over RTI Exists.**

"There are two kinds of personal jurisdiction -- specific and general. 'Specific jurisdiction "arises out of" or "relates to" the cause of action even if those contacts are "isolated and sporadic." . . . General jurisdiction arises when a defendant maintains "continuous and systematic" contacts with the forum state even when the cause of action has no relation to those contacts.'" *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1279, 73 U.S.P.Q.2d 1587 (Fed. Cir. 2005). In assessing specific personal jurisdiction, the first inquiry necessarily requires identification of the "cause of action". In the context of the present patent infringement case, this involves a reasonably specific identification of which product or service is accused of infringing ETG's patents. Even if ETG had proven that some hearing aid component of RTI had through a stream of commerce entered Delaware, such proof is irrelevant to a specific personal jurisdiction inquiry unless the hearing aid component which entered Delaware was the component accused of infringing ETG's patent.

The instant Complaint is directed at all defendants equally, and speaks in broadest possible terms to "products, services, methods or processes that infringe directly and/or indirectly, which employ systems, components and/or steps that make use of other systems or processes that infringe directly and/or indirectly or which are made according to a patented process". [*See* D.I. 1, pars. 25, 31; D.I. 38, pars. 28, 34; D.I. 65, pars. 30, 36]. Nowhere in the Complaint does ETG identify which product (if any) of RTI is accused of infringing ETG's patents, which product (if any) of Sonic is accused of

infringing ETG's patents, or which product (if any) of Starkey is accused of infringing ETG's patents.

Nor does ETG's 12(b)(2) Response Brief or ETG's Jurisdictional Discovery Motion rectify the lack of specificity of ETG's Complaint. ETG's 12(b)(2) Response Brief points to RTI's statement of being the world's largest manufacturer of "custom volume controls, trimmers and switches". Does ETG contend that any or all of the custom volume controls, trimmers and switches made by RTI infringe either or both of ETG's hearing aid '850 patent and ETG's host controller '749 patent? The record provides no "reasonable particularity" as to which, if any, custom volume control, trimmer or switch product of RTI is accused of infringing ETG's patents. ETG's 12(b)(2) Response Brief points to the fact that RTI manufactures digital signal processing chips. Does ETG contend that any or all of the digital signal processing chips made by RTI infringe either or both of ETG's hearing aid '850 patent and ETG's host controller '749 patent? The record provides no "reasonable particularity" as to which, if any, digital signal processing chip product of RTI is accused of infringing ETG's patents. ETG's 12(b)(2) Response Brief points to the fact that RTI sells products to Sonic[2] and Starkey. Does ETG contend that all hearing aids of Starkey or all hearing aids of Sonic infringe either or both of ETG's hearing aid '850 patent and ETG's host controller '749 patent? The record provides no "reasonable particularity" as to which, if any, hearing aid of Sonic or Starkey is accused of infringing its patents.

---

[2]Ignoring the fact that Sonic's Annual Report characterizes its digital signal processing chips as being patented by Sonic and proprietary to Sonic, ETG mistakenly asserts that RTI is Sonic's sole supplier of digital signal processing chips. To the contrary, no chips manufactured by RTI (either analog or digital) have been incorporated into Sonic's hearing aids; RTI is not the "sole supplier" referred to in Sonic's Annual Report. Affidavit of M. Geraci, attached hereto as Exhibit C.

The discovery requests in ETG's Jurisdictional Discovery Motion are likewise silent in identifying with reasonable particularity the accused product of RTI, Sonic or Starkey. Absent an identification of the accused product with reasonable particularity, there is no starting point from which to analyze specific personal jurisdiction, either under Delaware's long arm statute or under due process.

Further, ETG's failure to specifically identify the accused products of RTI, Sonic or Starkey is not merely an unintentional effect of notice pleading, but rather a deliberate litigation strategy. In RTI's letter of August 30, 2005, RTI advised ETG that it had not sufficiently identified the accused product(s) to permit an analysis of specific personal jurisdiction. Nonetheless, ETG persisted in its refusal to identify the accused product in its jurisdictional discovery motion of August 31, 2005, in its Motion for Leave to Amend its Complaint of September 1, 2005, and in its 12(b)(2) Response Brief filed September 12, 2005. Having adopted the deliberate litigation strategy of refusing to identify the specific accused product, ETG should not be heard now to complain of the results of that strategy. Accordingly, RTI's 12(b)(2) motion should be granted.

**D.    ETG's Jurisdictional Discovery Motion Is Merely An Unguided Fishing Expedition and Should Be Denied.**

"In determining the relevance of a request for jurisdictional discovery, we apply Federal Circuit law." *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005), *citing Truswal Systems Corp. v. Hydro-Air Engineering Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987)(holding that Federal Circuit law governs the relevance of discovery requests in patent cases when substantive patent law is implicated) *and Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994), *cert. dismissed,* 512 U.S. 1273 (Federal Circuit law governs

determination of personal jurisdiction in patent actions because jurisdiction is intimately involved in the substance of enforcement of the patent right."). Under both Federal Circuit and Third Circuit law, a request for jurisdictional discovery should be granted when the plaintiff has made factual allegations which suggest the possible existence of requisite contacts between the defendant and the forum state with "reasonable particularity". *Commissariat A L'Energie Atomique,* 395 F.3d 1315 at 1323; *Toys "R" Us, Inc., v. Step Two, S.A.,* 318 F.3d 446, 452-454 (3d Cir. 2003)(reversing a denial of jurisdictional discovery when the plaintiff's discovery request was "specific, non-frivolous, and a logical follow-up based on the information known…"). The converse also holds true, however; a request for jurisdictional discovery should be denied, when no showing of the possible existence of requisite contacts has been made with "reasonable particularity". Further, "the discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim." *Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1327 (Fed. Cir. 1990). *See Base Metal Trading Ltd. v. OJSC "Novokuznetsky Aluminum Factory",* 47 Fed.Appx. 73, 77 (3d Cir. 2002)("And where, as here, the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction, we see no reason to overturn the district court's exercise of discretion [denying jurisdictional discovery]."). The decision of whether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the district court. *Base Metal Trading.,* 47 Fed.Appx. 73 at 77.

In the instant case, a review of the discovery sought by ETG shows that ETG is seeking to engage in a fishing expedition hoping to find some basis for jurisdiction rather

than follow-up on information known. None of ETG's document requests from its Jurisdictional Discovery Motion are specific to "hearing aids", much less to a particular hearing aid by model number or name. None of ETG's document requests from its Jurisdictional Discovery Motion are specific to "host controllers", much less to a particular host controller by model number or name. ETG is silent as to identifying which hearing aid model number or name of Sonic allegedly infringes either the '850 hearing aid patent or the '749 host controller patent. ETG is silent as to identifying which hearing aid model number or name of Starkey allegedly infringes either the '850 hearing aid patent or the '749 host controller patent. None of ETG's document requests mention Sonic, and only one specifically mentions Starkey, without relating in any way to the '850 hearing aid patent or the '749 host controller patent. Nor does ETG identify with reasonable particularity any component of RTI which causes infringement of either the '850 hearing aid patent or the '749 host controller patent. None of ETG's document requests are specific to "volume controls", "trimmers", "switches" or "digital signal processing chips," much less to a particular model name or number sold by RTI.

Similar to the vague allegations in its Complaint, ETG's Jurisdictional Discovery motion did not so much as allege any connection between the business that RTI does with either Sonic or Starkey and either the '850 hearing aid or the '749 host controller patents. While RTI is a manufacturer of custom hearing aid volume controls, trimmers and switches, as well as digital signal processing chips, ETG in no way relates any of these well known hearing aid components to either the '850 hearing aid patent or the '749 host controller patent. Whatever the specific accused product is, ETG has made no threshold showing that the specific accused product (in contrast to Sonic and Starkey hearing aids

of any type) has been sold in Delaware. *See Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1318 (Fed. Cir. 2005)("Our cases make clear that the tortuous injury caused by patent infringement occurs within the state where the allegedly infringing sales are made.").

ETG should not be permitted to engage in an onerous, overly broad fishing expedition against any party, much less against a party not subject to the jurisdiction of this Court and over which ETG has alleged no reasonably specific factual basis for jurisdiction. The fact that RTI sells hearing aid components to both Sonic and Starkey is not a basis for specific personal jurisdiction when there is no reasonably specific allegation that either the specific hearing aid components sold nor the specific hearing aids which use those components infringe ETG's patents. Having failed to provide reasonable particularity to its infringement allegation to assess specific personal jurisdiction, ETG should not be granted specific personal jurisdiction discovery. In no event should ETG be permitted to undertake the broad, irrelevant fishing expedition of discovery it seeks over RTI, a party not subject to the personal jurisdiction of this Court. ETG's Jurisdictional Discovery Motion should be denied.

## CONCLUSION

RTI is not subject to the personal jurisdiction of this Court. The fact that RTI sells products to Sonic of Utah and to Starkey of Minnesota does not make RTI subject to personal jurisdiction in Delaware. The fact that RTI makes custom volume controls, trimmers and switches and digital signal processing chips has no relation to the jurisdictional inquiry, when these are just well-known general classes of products and ETG has not alleged that any specific product of RTI infringes either ETG's '850 hearing

aid patent or ETG's 749 host controller patent. Therefore, RTI's 12(b)(2) Motion should be granted.

ETG's Jurisdictional Discovery Motion is an unguided fishing expedition which is not reasonably tied to any accused product of either RTI, Sonic or Starkey, or otherwise reasonably tied to a specific possible basis of personal jurisdiction. Therefore, ETG's Jurisdictional Discovery Motion should be denied.

Respectfully submitted,

WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP

Dated: September 14, 2005

/s/ Barry Klayman
Barry M. Klayman, Esquire (#3676)
Wilmington Trust Center
1100 North Market Street
Suite 1001
Wilmington, DE 19801
(302) 777-0313

Jeffrey D. Shewchuk, Esq.
Shewchuk IP Services, LLC
533 77th Street West
Eagan, MN 55121
(651) 331-9558

Attorneys for Defendant, Resistance Technology, Inc.