**EXHIBIT B**



**SHEWCHUK IP SERVICES** LLC

Intellectual Property for Growing Business

Patent, Trademark, Copyright and Unfair Competition Law

533 77th Street West
Eagan, Minnesota 55121

JEFFREY D. SHEWCHUK, ESQ
Registered Patent Attorney

651-785-6007
Direct: 651-331-9558
Fax: 651-688-3348
jdshewchuk@comcast.net
www.shewchukip.com

August 30, 2005

VIA E-MAIL and U.S. MAIL

Brian M. Buroker
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109

Re:   ETG v. Sonic Innovations et al.
      Our File R120.17-2

Dear Mr. Buroker:

This is in response to your letter of August 26, 2005. As we discussed when you called, the purpose of your call was to see whether RTI would agree to limited jurisdictional discovery without the need of involving the Court to determine whether any jurisdictional discovery would be permitted and without the need of involving the Court to determine an appropriate scope of jurisdictional discovery. During our telephone discussion, I agreed that, if it would resolve your motion to the Court for jurisdictional discovery, RTI would voluntarily agree to such discovery under the conditions that it was (a) subject to appropriate confidentiality restrictions; and (b) reasonable in scope. Your letter addressed the timing of such discovery, confidentiality and the scope of discovery you are seeking, but did so under the guise of discovery you were "initially" seeking. To the contrary, RTI is offering to agree to certain voluntary jurisdictional discovery, but only if RTI's agreement results in ETG's agreement to waive any requests for further jurisdictional discovery beyond the scope agreed to. That is, the purpose of RTI's agreement is to avoid bringing the discovery issues before the Court, not to result in a subsequent request or motion by ETG for additional jurisdictional discovery. Please let me know if ETG is willing to come to such an agreement.

With regard to the scope of jurisdictional discovery which is "reasonable", we agreed during our discussion that a customer list would be a reasonable discovery request, and did not resolve if and what further discovery would be reasonable. You have now set forth some 31 document requests which go far beyond the scope we discussed, and go far beyond what is reasonable in this situation. It must be noted that the relevance of jurisdictional discovery must be adjudged relative to the allegations in the Complaint, and must be adjudged as of the time of filing of the Complaint (not, for instance, as of

Case 1:05-cv-00422-GMS    Document 80-3    Filed 09/14/2005    Page 3 of 8

Brian M. Buroker
August 30, 2005
Page 2 of 7

five years ago). The First Amended Complaint does not identify any product of RTI alleged to be infringing, does not identify whether the infringement allegation is one of direct infringement, contributory infringement or inducement to infringe, does not identify which claims or even which of the two patents are alleged to be infringed, and indeed, is not clearly tied to RTI's products at all (as opposed to "services, methods or processes", see First Amended Complaint, paras. 28 and 34). Further, the jurisdictional allegation of the First Amended Complaint (which, of course, required a Rule 11 prefiling investigation) tersely states that RTI has "established minimum contacts with the forum such that the exercise of jurisdiction over each [RTI] would not offend traditional notions of fair play and substantial justice". Thus, there is currently no basis for analysis of any specific personal jurisdiction, and the only relevant inquiry at this time is whether general personal jurisdiction exists. RTI would reassess what jurisdictional discovery is "reasonable" should the Complaint be amended to provide more specificity or ETG otherwise come forward with the evidentiary basis that it believes supports the allegation of general or specific personal jurisdiction. As it stands, reasonable jurisdictional discovery is much more limited than that sought in your letter.

Provided such ETG agrees that it will seek no jurisdictional discovery from RTI outside the following scope nor request further opportunity for jurisdictional discovery from RTI as part of responding to RTI's motion to dismiss for lack of jurisdiction, RTI will agree to ETG's jurisdictional discovery requests modified as follows:

DOCUMENT REQUESTS

1. ~~All~~ documents sufficient to identify all of RTI's <u>U.S.</u> customers <u>during the time period of July 1, 2004 through June 24, 2005</u>, including all customers for hearing aid related products;

2. ~~All~~ documents sufficient to identify the volume, frequency, and duration of sales to those customers <u>located in Delaware during the time period of July 1, 2004 through June 24, 2005</u>;

3. All documents identifying the locations to which shipments to those customers were shipped <u>into Delaware during the time period of July 1, 2004 through June 24, 2005</u>;

4. ~~All documents possessed by RTI regarding those customers (including but not limited to correspondence with same) and sales and shipments to same;~~

5. ~~All documents pertaining to any entities in the chain of distribution, known to RTI, of RTI products and/or products that contain RTI products, including but not limited to correspondence with such entities;~~

6. All documents and information pertaining to any license or indemnity agreements between RTI and any entities in the channels of distribution <u>known to RTI to reference</u>

Brian M. Buroker
August 30, 2005
Page 3 of 7

the state of Delaware, covering any part of the time period of July 1, 2004 through June 24, 2005;

7. ~~All documents reflecting knowledge by RTI as to any geographic location where RTI was aware any of its products were distributed or to be distributed, whether to an ultimate consumer or during any stage of the distribution channels;~~

8. All documents of RTI ~~containing~~ written during the time period of July 1, 2004 through June 24, 2005 which RTI is aware make reference to Delaware ~~and/or any geographic area (including but not limited to the World, U.S., and/or Mid-Atlantic region) which is an area which includes the State of Delaware[2]~~, including but not limited to correspondence (from or to RTI; including e-mails) shipping manifests, marketing proposals, market analysis reports advertisements, etc.;

9. All manuals, warranties, and other literature either delivered with RTI's products by RTI into Delaware during the time period of July 1, 2004 through June 24, 2005 to its customers ~~or pertaining to such products~~;

10. All information pertaining to strategic alliances established to cover any part of the time period of July 1, 2004 through June 24, 2005 with any companies who ~~conduct business~~ are located in Delaware ~~the U.S., including but not limited to Clarity LLC, Medtronic, Inc, Microelectronics Center, Starkey and all information known to RTI regarding those companies~~;

11. ~~All information known by and all documents possessed by RTI regarding the companies referenced in the preceding item (including but not limited to correspondence with same);~~

12. ~~Listing of all States to which RTI is aware that its products have been distributed to entities who directly provide the products to end users (persons wearing hearing aids), regardless whether those products were contained within another entity's product at that time;~~

13. All documents establishing The relationship during the time period of July 1, 2004 through June 24, 2005 between the RTI and all entities in the chain of distribution, known to RTI to be located in the state of Delaware (e.g., whether a parent-subsidiary or similar relationship exists, whether similar owners, directors, officers, etc. are common to the companies, the length of the relationship between the companies, the extent of contacts between the companies, the existence, and substance, of any written agreements between the companies);

14. ~~The knowledge by RTI as to the nature and extent of the channel of distribution of its products (considering that RTI states it only has facilities in Minnesota, yet claims in its~~

Brian M. Buroker
August 30, 2005
Page 4 of 7

~~website that it is "the world[']s largest manufacturer" of its type products, it is a "world producer," and that it has "worldwide customers," it would appear likely that RTI is aware that its products are being distributed in geographic regions outside of Minnesota — as well as the fact that one would expect a $40 million dollar business ["the world[']s largest manufacture"] to have obtained information as to where its products are ultimately being distributed [not only for marketing purposes, but for purposes of languages into which to publish its literature, website, etc.]);~~

15. All information and documents pertaining to RTI's advertisement and/or promotion of/for its products and/or company, <u>other than any website advertisements, known by RTI to have been circulated in Delaware during the time period of July 1, 2004 through June 24, 2005</u>;

16. ~~All information and documents pertaining to RTI's contribution, financially or otherwise, to any advertisement and/or promotion of/for: any products containing any RTI products, any company whose products include any RTI products, and/or any entity in the RTI products distribution channels;~~

17. ~~All documents pertaining to RTI's contribution, financially or otherwise, to any advertisement and/or promotion which relates to any business engaged in by RTI, including but not limited to advertisements for the hearing aid industry generally;~~

18. All information and documents pertaining to sales efforts toward Delaware <u>during the time period of July 1, 2004 through June 24, 2005</u> ~~and/or any geographic area that would include Delaware (including but not limited to "Mid-Atlantic States")~~, including but not limited to sales solicitations <u>in Delaware</u>, sales presentations <u>in Delaware</u>, trade shows <u>in Delaware</u>, and trips to Delaware by employees;

19. All documents pertaining to the designation by RTI of geographic regions, including but not limited to marketing regions, sales regions, distribution regions, etc.;

20. All documents sufficient to identify the identity and title of any <u>2004 or 2005</u> RTI employee whose title and/or duties include reference to <u>Delaware or any location within Delaware</u> ~~a geographic region other than Minnesota or a geographic region located entirely within Minnesota~~;

21. All documents sufficient to identify all personal and/or real property in Delaware that is/was owned by RTI <u>during the time period of July 1, 2004 through June 24, 2005 and</u> at the time such property was located in Delaware;

22. All documents sufficient to identify any employees (in their capacity as an RTI employee; i.e., not on their personal time), offices, facilities, or equipment of RTI who/that is, or has been, maintained in Delaware <u>during the time period of July 1, 2004 through June 24, 2005</u> or ~~ever~~ entered, or has entered <u>during the time period of July 1,</u>

Brian M. Buroker
August 30, 2005
Page 5 of 7

2004 through June 24, 2005, Delaware — and the purpose of such maintenance and/or entrance.

23. All customer service correspondence during the time period of July 1, 2004 through June 24, 2005 from or to RTI from or to any individual or entity who was (at the time of the communication) located in Delaware, including but not limited to communication provided as part of any customer service effort by RTI;

24. All telephone records of RTI related to telephone numbers beginning with a (302) area code recorded in any tangible form by RTI during the relevant time frame of July 1, 2004 through June 24, 2005;

25. All documents sufficient to identify any sales agents or distributors of RTI assigned to cover an area which includes Delaware during the time period of July 1, 2004 through June 24, 2005, whether such sales agent is an employee or not;

26. All documents sufficient to identify the identity and job titles and duties of employees of RTI whose job duties include selling, advertising, marketing, and/or promoting any product of RTI or product containing any RTI product into Delaware during the time period of July 1, 2004 through June 24, 2005;

27. All documents sufficient to identify the identity and job title(s) of the person(s) who determined administrated the content of RTI's website during the time period of July 1, 2004 through June 24, 2005 with regards to the statements that RTI is "the world['s] largest manufacturer" of its type products, RTI is a "world producer," and that RTI has "worldwide customers;" all documents upon which were relied in determining the content of these referenced statements; and the information known by such person(s) which said person(s) considered when determining the content of these statements;

28. All communications during the time period of July 1, 2004 through June 24, 2005 between RTI and any health care providers (including those providers who render care for hearing loss or other hearing difficulty) located in Delaware;

29. All customer service communications during the time period of July 1, 2004 through June 24, 2005 between RTI and any individual located in Delaware;

30. All document sufficient to identify any identifying marks on any RTI hearing aid-related products (regardless of size) which are externally viewable to a purchaser of a hearing aid during the time period of July 1, 2004 through June 24, 2005, including but not limited to company or product name, company or product symbol, serial number;

31. All documents sufficient to identify any brand names registered by RTI in Delaware covering the time period of July 1, 2004 through June 24, 2005;

Brian M. Buroker
August 30, 2005
Page 6 of 7

32. A printout of the results from an electronic search of all email <u>records of Mark S. Gorder during the time period of July 1, 2004 through June 24, 2005</u> ~~servers of and other computer systems of RTI~~ for the term "Delaware" ~~or "DE" (which might be from an address)~~; and

DEPOSITIONS

33.    A <u>single</u> deposition <u>of Mark S. Gorder not to exceed 3 hours, taken at an agreed time and location within 30 miles of Arden Hills, Minnesota</u> to cover (a) information, including that not reflected in a document, on each of the topics identified above, (b) the contents of documents produced related to each category, and (c) efforts done to locate documents related to any of the above.

INTERROGATORIES

ETG will ask no interrogatories as part of jurisdictional discovery.

REQUESTS FOR ADMISSION

ETG will request no admissions as part of jurisdictional discovery.

CONFIDENTIALITY

RTI will agree to the confidentiality as generally proposed in your letter (except no disclosure to experts), but would like the Court's approval of a Jurisdictional Discovery Protective Order setting forth the parties' agreement prior to production of any documents or any deposition. The material terms of the Jurisdictional Discovery Protective Order are:

1. ETG would agree that any documents or other information provided by RTI will be treated as outside attorneys' eyes only and to be used only for purposes of the opposition to the jurisdictional discovery motion, unless the Court finds jurisdiction over RTI, in which case, the terms of any subsequently entered Protective Order governing the use of information produced would govern use of the material. Under no circumstances would confidential information learned as the result of RTI's responses be used to sue RTI in any other jurisdiction.

2. In addition, ETG agrees that it would not disclose such information to any other party absent RTI's written consent or an order of a court or other similar authority (such as the provisions of a Protective Order entered in this case) and in such an event, will not do so without providing RTI advanced written notice of a motion to enable RTI to object to the disclosure.

Brian M. Buroker
August 30, 2005
Page 7 of 7

    3. ETG will file any confidential documentary evidence or depositional transcript it desires to support its opposition to RTI's motion under seal, but ETG's brief and any oral argument will be public.

TIMING

    RTI will agree to the timing as generally proposed in your letter, namely, provided the Court approves the parties Jurisdictional Discovery Protective Order prior to any production. RTI shall provide documents responsive to the agreed upon requests within 18 days after filing the stipulation as to jurisdictional discovery/response timing with the Court. Within two weeks after the deposition of Mark S. Gorder, ETG shall file any opposition to RTI's motion with the Court. This schedule will be memorialized as part of a Stipulation filed with the Court requesting an extension of time for ETG's opposition to RTI's Motion.

    We too hope that we can work out ETG's asserted need for jurisdictional discovery without the need for Court involvement, and accordingly look forward to your response. If you have any questions or comments, please let me know.

                                                          Very Truly Yours,

                                                          Jeffrey D. Shewchuk