**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ENERGY TRANSPORTATION GROUP, )
INC. )
       ) C.A. NO. 05-422 (GMS)
         Plaintiff, )
       )
         v. )
       )
SONIC INNOVATIONS, INC, ) JURY TRIAL DEMANDED
PHONAK HOLDING AG, )
PHONAK INC., )
UNITRON HEARING, INC., )
WILLIAM DEMANT HOLDING A/S, )
OTICON A/S, )
OTICON INC., )
WIDEX A/S, )
WIDEX HEARING AID CO. INC, )
GN RESOUND A/S, )
GN RESOUND CORPORATION, )
STARKEY LABORATORIES, INC., )
GENNUM CORPORATION, )
RESISTANCE TECHNOLOGY INC., )
BERNAFON AG, )
WDH, INC., AND )
BERNAFON, LLC, )
       )
         Defendants. )

**PLAINTIFF'S REPLY TO DEFENDANT RESISTANCE TECHNOLOGY, INC.'S**
**ANSWER IN OPPOSITION TO ENERGY TRANSPORTATION GROUP, INC.'S**
**MOTION FOR JURISDICTIONAL DISCOVERY**

THE BAYARD FIRM

September 21, 2005

Edmond D. Johnson (No. 2257)
Thomas H. Kovach (No. 3964)
222 Delaware Ave.; Suite 900
Wilmington, DE 19801
ejohnson@bayardfirm.com
tkovach@bayardfirm.com
(302) 655-5000
Attorneys for Energy Transportation Group, Inc.

TABLE OF CONTENTS

Page

I.      PRELIMINARY STATEMENT ................................................................................1

II.     ARGUMENT ........................................................................................................1

        A.      RTI has Failed to Directly Controvert the Alleged Jurisdictional Facts and those
                Allegations Establish a Prima Facie Case of Personal Jurisdiction .........................1

        B.      The Types of Products upon which Personal Jurisdiction are Founded Have Been
                Identified by Plaintiff such that this Court may Determine the Issue of Personal
                Jurisdiction ..........................................................................................................4

        C.      A Prima Facie Case of Personal Jurisdiction has been Established under both the
                Delaware Long-Arm Statute, as well as the Due Process Clause Sufficient To
                Justify the Discovery Sought ................................................................................4

        D.      A Prima Facie Case of Personal Jurisdiction Having Been Established,
                Jurisdictional Discovery Should Be Granted .........................................................9

        E.      Plaintiff's Requested Discovery is Reaso8nable Given the Facts Already In
                Evidence ...............................................................................................................9

III.    CONCLUSION .....................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alltech Indus., Inc. v. Al Tech Specialty Steel Corp.,*
  *542 F. Supp. 53 (D. Del. 1982)* ................................................................................. 3

*Applied Biosystems, Inc. v. Cruachem, Ltd.,*
  *772 F. Supp. 1458 (D. Del. 1991)* ........................................................................... 1, 3

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
  *21 F.3d 1558 (Fed. Cir. 1994)* ........................................................................... 2, 5, 6, 8

*Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.,*
  *395 F.3d 1315 (Fed. Cir. 2005)* ........................................................................... 3, 5, 9

*E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.,*
  *197 F.R.D. 112 (D. Del. 2000)* ................................................................................. 2

*Hansen v. Neumueller GmbH,*
  *163 F.R.D. 471 (D. Del. 1995)* ................................................................................. 4

*In re Elonex Phase II Power Management Litigation,*
  *2003 WL 21026758 (D. Del. 2003)* ...................................................................... 7, 8, 10

*Joint Stock Soc'y v. Heublein, Inc.,*
  *936 F. Supp. 177 (D. Del. 1996)* ............................................................................ 2, 3

*Motorola, Inc. v. PC-Tel, Inc.,*
  *58 F. Supp.2d 349 (D. Del. 1999)* ....................................................................... 6, 7, 10

*Philips Electronics North America Corp. v. Contec Corp.,*
  *Civ. Act. 02-123-KAJ (D. Del. March 11, 2004)* ........................................................ 1, 2, 8

*Thorn EMI North America, Inc. v. Micron Technology, Inc.,*
  *821 F. Supp. 272 (D. Del. 1993)* ............................................................................ 3, 6

**Statutes**

*10 Del.C. §3104(c)(1) and §3104(c)(3)* .......................................................................... 6

**Other Authorities**

*5A Charles A. Wright & Arthur R. Miller,*
  *Federal Practice & Procedure § 1363* ..................................................................... 4

602226v1

## I.    PRELIMINARY STATEMENT

Courts have typically only denied jurisdictional discovery when a contention of personal jurisdiction is frivolous.  This is hardly a frivolous case.  In a strikingly similar case, the Federal Circuit reversed this court's denial of a request for jurisdictional discovery.  When, as here, many of Plaintiff's jurisdictional allegations regarding infringing activities in this jurisdiction have been uncontroverted (likely because RTI cannot do so truthfully), they are taken as true and sufficient at this stage of the lawsuit (*i.e.*, prior to discovery).  Evidence that RTI, a world producer of hearing aid components, regularly sells its digital signal processing chips to Starkey, the world's largest hearing aid manufacturer, which maintains one of its only nine U.S. facilities just outside Delaware and directs persons, via its website, to locations in Delaware where its hearing aids may be acquired has also been uncontroverted by RTI.  Thus, RTI cannot credibly claim it had no inkling that some of its hearing aid chips would make their way into Delaware via well-established distribution channels.

While Plaintiff maintains that these facts alone satisfy both the Delaware long-arm statute and the U.S. Due Process Clause, they certainly provide a basis for jurisdictional discovery under the Federal Circuit's authority on this issue.

## II.    ARGUMENT

### A.    RTI has Failed to Directly Controvert the Alleged Jurisdictional Facts and those Allegations Establish a Prima Facie Case of Personal Jurisdiction

"When personal jurisdiction is contested and no evidentiary hearing is held, the plaintiff need only establish a prima facie case with the record viewed <u>in the light most favorable to the plaintiff</u>." *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F. Supp. 1458, 1462 (D. Del. 1991) (emphasis added); *see also Philips Electronics North America Corp. v. Contec Corp.*, Civ. Act. 02-123-KAJ, 2004 WL 503602 at * 3 (D. Del. March 11, 2004) (Attached hereto as Exhibit A);

*E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 119-120 (D. Del. 2000), *aff'd on other grounds*, 269 F.3d 187 (3d Cir. 2001); *Joint Stock Soc'y v. Heublein, Inc.,* 936 F. Supp. 177, 192 (D. Del. 1996).

"Prior to the beginning of discovery, the nonmoving party may rely on the good faith factual allegations of its complaint, cross claims, or counterclaims if such allegations establish sufficient contacts between the moving party and Delaware." *Id.*   If "factual allegations are not <u>directly</u> controverted [emphasis added], they are taken as true for purposes of determining jurisdiction in this court." *Philips Electronics,* 2004 WL 503602 at *3 (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1563 (Fed. Cir. 1994)).

In the present case, Plaintiff has alleged throughout its First Amended Complaint and Jury Demand that the Defendants have each infringed upon Plaintiff's patents.  Additionally, Plaintiff has alleged that each Defendant has "[1] committed acts within this judicial district giving rise to this action <u>and</u> [2] does business in this district, including [3] [i] sales, and [ii] providing service and/or support to their respective customers in this district."[1] (emphasis added). These factual allegations are sufficient to establish a prima facie case of personal jurisdiction over RTI.

Although Defendant has denied any ***sales*** in Delaware, it has not directly controverted that it has infringed upon Plaintiff's (a Delaware corporation) patents, committed acts in Delaware giving rise to this action, does business in this district, or provided service and/or support to its customers in Delaware.  In its Reply Memorandum RTI only alleges that "RTI has no sales in Delaware (Gorder Aff., par. 8 [D.I. 57]), and therefore RTI has no 'respective

---

[1] Plaintiff's First Amended Complaint and Jury Demand, page 5, paragraph 26.

602226v1

customers [of RTI] in this district.' to which it could possibly provide 'service and/or support.'"

This is not even a direct denial because obviously a sale can be made outside of Delaware but the

customer reside or receive service or support in Delaware -- particularly considering that, as

noted by the evidence previously cited by Plaintiff, Defendant sells its products to Starkey --

which has one of its only nine U.S. facilities in Mount Laurel, NJ, just 45 minutes from this

Courthouse from which it directs sales in the eastern United States, including Delaware.[2]

"Viewed in the light most favorable to the plaintiff," *see, e.g., Applied Biosystems, Inc.,* 772 F.

Supp. at 1462 (D. Del. 1991), RTI has failed to directly controvert this third jurisdictional

allegation - that RTI provides services or support to customers in Delaware.

     RTI's attempt to sidestep these allegations by mischaracterizing them as purely legal

issues fails to appreciate the law. *See, e.g., Alltech Indus., Inc. v. Al Tech Specialty Steel Corp.,*

542 F. Supp. 53, 54, 55-56 (D. Del. 1982) (finding allegations of "direction and control" and

"concert and affiliation" to be factual allegations); *Joint Stock,* 936 F. Supp. at 194 (finding

allegations of acts being attributable to a co-conspirator to be factual allegations); *Commissariat*

*A L'Energie Atomique v. Chi Mei Optoelectronics Corp.,* 395 F.3d 1315, 1317-1320 (Fed. Cir.

2005) (finding allegation that the defendant derived substantial revenue from customers' sales in

Delaware to be a factual allegation).

---

[2] Additionally, a company need not engage in *sales* in order to place its product into a State or to direct its marketing activities toward a State. For example, in *Thorn EMI North America, Inc. v. Micron Technology, Inc.,* 821 F. Supp. 272, 275 (D. Del. 1993), among the facts the court found pertinent to its denial of the motion to dismiss was that the defendant has provided *free* samples of its computer chips in Delaware, stating: "Micron Semi's shipment of free samples nonetheless would suffice to allow Delaware's long-arm to extend to Micron Semi." This case highlights the importance of requiring *direct* controversion of alleged jurisdictional facts. RTI does not refute that it supports customers in Delaware - it only refutes direct sales there.

**B.    The Types of Products upon which Personal Jurisdiction are Founded Have Been Identified by Plaintiff such that this Court may Determine the Issue of Personal Jurisdiction**

RTI's argument that jurisdictional allegations must be plead in the Complaint is contrary to the law. It is well established that personal jurisdiction is not required to be plead by a plaintiff but instead, being an affirmative defense, is a pleading requirement of the defendant. *See, e.g., Hansen v. Neumueller GmbH,* 163 F.R.D. 471, 474-475 (D. Del. 1995) ('[t]here is no requirement that personal jurisdiction be alleged in the pleadings) (quoting, among others, "5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1363).

Here, in addition to the First Amended Complaint which identifies the accused products as those that are primarily used or primarily adapted for use of or in a programmable digital hearing aid device, "Plaintiff's Opposition to Resistance Technology, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction," at page 1, advises: "RTI manufactures digital signal processing chips that are sold to hearing aid manufacturers. RTI's chips are incorporated into the accused programmable hearing aids." It is those chips that RTI places in the stream of commerce with a reasonable expectation that those products will end up in Delaware sufficient to support this request for jurisdictional discovery.

**C.    A Prima Facie Case of Personal Jurisdiction has been Established under both the Delaware Long-Arm Statute, as well as the Due Process Clause Sufficient To Justify the Discovery Sought**

RTI, in its Reply Memorandum, asserts that "ETG's 12(b)(2) Response Brief does not even attempt an analysis under Delaware's long arm statute," and that ETG "failed to even make an argument that the exercise of personal jurisdiction over RTI satisfies one or more prongs of Delaware's long arm statute[.]" To correct this misrepresentation to the Court, ETG respectfully directs this honorable court's attention to pages 6-8 of "Plaintiff's Opposition to Resistance

602226v1

4

Technology, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction," wherein ETG sets forth both argument and evidence thereto. Additionally, many of the cases cited elsewhere in both Plaintiff's and RTI's briefs hold that under situations similar to the present case the Delaware long-arm statute authorizes the exercise of personal jurisdiction.

For instance, in *Commissariat*, 395 F.3d 1315, discussed at length in each of Plaintiff's earlier submissions on this issue, the defendant was a manufacturer of electronic components that were incorporated into electronic products that were distributed via a stream of commerce into Delaware although the defendant itself neither made any sales in Delaware, nor sold directly to any retailers. The court found the stream of commerce theory relevant to analysis under the Delaware long-arm statute. *Id.* The court did not address whether the exercise of personal jurisdiction was proper, since the court ruled instead that jurisdictional discovery should be allowed. *Id.* at 1322-1324.

In *Commissariat*, the Court, in indicating that the stream of commerce theory could support the exercise of personal jurisdiction under the Delaware long-arm statute, cited to *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558 (Fed. Cir. 1994). *Beverly Hills Fan Co.* addressed the stream of commerce theory under analysis of the Virginia long-arm statute which, as quoted by the court, is nearly identical to the Delaware long-arm statute. *Id.* at 1569. Specifically, the portion of the Virginia long-arm statute addressed by the court authorized the exercise of personal jurisdiction over a defendant "[c]ausing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he … derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." *Id.* at 1569.

Similar to the evidence in *Commissariat A L'Energie Atomique* and in the present case, in

602226v1

5

*Beverly Hills Fan Co.* the defendant presented evidence that it did not sell the products in the

judicial district. *Id.* at 1560. However, the court concluded that the long-arm statute was

satisfied because "infringing activity directly impacts on the interests of the patentee, here the

place of the infringing sales in Virginia" and the "defendants purposefully shipped the accused

fan into Virginia through an established distribution channel." *Id.* at 1571.

In *Thorn EMI North America,* 821 F. Supp. 272, the court applied a stream of commerce

analysis to a determination under the Delaware long-arm statute. In *Thorn*, the defendant did not

directly sell to Delaware customers, *id.* at 273, but "knew or should have know that its allegedly

infringing products were being distributed in Delaware," *id.* at 275. The court concluded that

Delaware's long-arm statute reached the defendant under both 10 Del. C. § §3104(c)(1) and

3104(c)(3). *Id.* at 275. Additionally, the court noted that the defendant's shipment of six free

samples alone would invoke the authority of the long-arm statute. *Id.* at 272-73, 275.

In *Motorola, Inc. v. PC-Tel, Inc.,* 58 F. Supp.2d 349, 353 (D. Del. 1999), the defendant

never sold its products into Delaware. However, the court noted:

> AltoCom and its licensees (and their sublicensees) *consorted* by acting in concurrence or
> harmony. Specifically, AltoCom's softmodem product is manufactured for integration by
> another manufacturer into an end user consumable. This product is, in turn, placed into a
> distribution chain which at its end consist of a variety of retail outlets that sell these
> products directly to purchasers of electronic goods, *i.e.,* retail consumers. Many, if not
> all, of these outlets have a national presence. Indeed, AltoCom's softmodems are
> distributed internationally. In this respect, AltoCom "act[ed] in consort" with its
> licensees to place its softmodems in the stream of commerce.
> …
>
> Thus, by contracting with entities that have a market presence both nationally and world-
> wide, AltoCom can hardly be heard to complain that it did not know the likely destination
> of some of its products would include this forum. Indeed, the company, acting in concert
> with its licensees, sells its products expressly for integration into end user products with
> full knowledge that these goods will then be placed into established distribution channels
> that service the State of Delaware.

602226v1

*Id.* at 355. The court concluded that the stream of commerce distribution properly invoked the Delaware long-arm statute. *Id.* at 356-57.

In *In re Elonex Phase II Power Management Litigation*, Civ. Act. No. 01-082-GMS, 2003 WL 21026758 at *1 (D. Del. May 6, 2003) (Attached as Exhibit B), the defendant sold monitors to two United States monitor companies with nationwide retail distribution networks which included retailers such as Best Buy, Office Depot, and Circuit City, including in Delaware. The court noted:

> Jean has, for many years, been the first link in precisely the kind of indirect distribution chain that the Federal Circuit found sufficient to establish personal jurisdiction. Specifically, Jean sells it[s] monitors to ViewSonic and eMachines, who in turn distribute Jean's monitors to retailers with Delaware operations. Given ViewSonic's and eMachines' extensive re-seller networks in Delaware and on the Internet, Jean cannot credibly claim it had no inkling that some of its monitors would make their way into Delaware via well-established distribution channels.

*Id.* at *2.

Similar to Best Buy, Office Depot, and Circuit City -- Starkey, RTI's customer, is a large company which "is the world's largest manufacturer of custom hearing instruments."[3] Starkey has only nine US facilities, one of which is located a mere 45 minutes from this Courthouse in Mount Laurel, NJ.[4] The Mount Laurel facility (called "Starkey East" on Starkey's website) is represented to be responsible for sales in the eastern United States, including Delaware. In its website, Starkey directs persons to locations where it can obtain its products in and near Delaware. Thus, RTI "cannot credibly claim it had no inkling that some of its [hearing aid chips]

---

[3] See Buroker Decl. Exh. A7 (Starkey website search for locations near Wilmington, DE from http://www.starkey.com/pages/nextsteps/dealer_list.jsp?ZIP=19810).

[4] See Buroker Decl. at A8 (listing Starkey East in Mount Laurel, NJ).

would make their way into Delaware via well-established distribution channels."

Though between its motion, brief in support, and reply memorandum RTI has filed over sixty (60) pages of argument, affidavits, and other evidence -- RTI has utterly failed to address this evidence -- apparently in the hope that this court will overlook this prima facie evidence.

Regarding the Delaware long-arm statute, the *In re Elonex* court stated:

> As discussed above in Section III A, Jean has intentionally sold monitors using nationwide distribution channels. This knowing and purposeful shipment of monitors satisfies the act requirement of Section 3104(c)(4). *See Beverly Hills Fan,* 21 F.3d at 1571. Because Jean undeniably derives substantial revenue from these activities, it is subject to jurisdiction under Delaware's long-arm statute. *See* Chang Decl. at ¶ ¶ 3-7 (discussing Jean's revenue from sales to ViewSonic and eMachines).

*Id.* at *2. Likewise, in *Philips Electronics,* the defendant component manufacturer, though never having sold its products in Delaware, availed itself of a distribution network which resulted in the products being delivered to Delaware. 2004 WL 503602 at *1, *4. The court held that such was sufficient to invoke the authority of the Delaware long-arm statute. *Id.* at *5.

As addressed extensively in Plaintiff's previously filed "Plaintiff's Opposition to Resistance Technology, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction" and as further supported by the cases cited above (which also found Due Process was satisfied by the exercise of personal jurisdiction), the evidence establishes a prima facie case that the exercise of personal jurisdiction over RTI satisfies the requirements of the Due Process Clause. RTI -- a world producer of hearing aid components, which regularly sells its digital signal processing chips to Starkey, the world's largest hearing aid manufacturer, which maintains one of its only nine U.S. facilities just outside Delaware and directs persons, via its website, to locations in Delaware where its hearing aids may be acquired -- cannot credibly claim it had no inkling that some of its hearing aid chips would make their way into Delaware via well-established

602226v1

distribution channels.

**D.    A Prima Facie Case of Personal Jurisdiction Having Been Established, Jurisdictional Discovery Should Be Granted**

Since a prima facie case of personal jurisdiction has been established at this pre-discovery stage of the proceedings, jurisdictional discovery should be granted to permit discovery pertinent to the jurisdictional issues raised by RTI in order to allow Plaintiff to respond to those issues at such evidentiary or pre-trial hearing that may later be set on the jurisdictional issue upon RTI's reassertion, if any, of such complaint. *See generally, Commissariat,* 395 F.3d 1315.

**E.    Plaintiff's Requested Discovery is Reasonable Given the Facts Already In Evidence**

Plaintiff's proposed discovery is tailored appropriately according to the issues and evidence that are relevant to whether this Court may exercise personal jurisdiction over RTI.  In contrast, RTI's counter-proposed discovery is a clear attempt to limit discovery to only those facts RTI has assured itself will not reveal its true knowledge of its chain of distribution into Delaware.[5]

For instance, Plaintiff's proposed document request number 5 seeks:

> 5. All documents pertaining to any entities in the chain of distribution, known to RTI, of RTI products and/or products that contain RTI products, including but not limited to correspondence with such entities[.]

Clearly the identify of the entities in the chain of distribution are relevant to the both the nature of the chain of distribution and RTI's knowledge of that chain.  Without the identity of

---

[5] Plaintiff's proposed discovery has been attached as Exhibit A to "Defendant Resistance Technology, Inc.'s Reply Memorandum in Support of Its Motion to Dismiss for Lack of Personal Jurisdiction and Its Answer in Opposition to Energy Transportation Group, Inc.'s Motion for Jurisdictional Discovery" and RTI's counter-proposed discovery is attached as Exhibit B to said reply memorandum.  Plaintiff's proposed discovery is also set forth within "Plaintiff's Motion For Expedited Jurisdictional Discovery and Extension of Time to Respond to Resistance Technology, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction" previously filed with this Court.
602226v1

those entities, Plaintiff cannot investigate whether those entities have retail stores in Delaware or otherwise distribute into Delaware, whether the chain of distribution was a well-established one, the relationship of those entities with RTI, and whether RTI should have known, from those entities' business practices, that RTI's products were likely to end up in Delaware. These are questions this Court has found important to assessing jurisdiction. *See, e.g., In re Elonex*, 2003 WL 21026758 at *1 (relying on the retail distribution networks of defendants' customers in finding jurisdiction); *Motorola,* 58 F. Supp. 2d at 352 (examining the multi-national nature of defendant's customers and world-wide distribution networks of those customers in finding jurisdiction). Thus, the identity of the entities in the chain of distribution (stream of commerce) is clearly appropriate to the issue of personal jurisdiction. RTI has refused to produce documents on this clearly relevant point.

In another example, Plaintiff's proposed document request number 7 seeks:

7. All documents reflecting knowledge by RTI as to any geographic location where RTI was aware any of its products were distributed or to be distributed, whether to an ultimate consumer or during any stage of the distribution channels[.]

Obviously, the State of Delaware is a geographic location that would be pertinent to the personal jurisdiction dispute. Likewise, if RTI were aware that its products were being distributed -- particularly if distributed to distributors rather than retailers -- to some, or even more so if all, of the States that are contiguous to Delaware, that could be a proper basis for inference that some the products were ultimately being delivered to Delaware. Likewise, as noted in *In re Elonex*, and *Motorola* a known national distribution network would tend to show that RTI has an "inkling that some of its [hearing aid chips] would make their way into Delaware via well-established distribution channels." *See In re Elonex*, 2003 WL 21026758 at *2 Again, RTI refused to provide discovery on that clearly relevant subject. Plaintiff's proposed

602226v1

10

jurisdictional discovery requests each seek information that tends to show whether RTI is susceptible to jurisdiction in Delaware, either as a result of its specific activities related to the products at issue or due to a systematic effort to perform

## III.    CONCLUSION

Plaintiff has presented a prima facie showing that Defendant RTI availed itself of a chain of distribution, through the world's largest custom hearing aid manufacturer, directed toward Delaware, including the directing of Delaware customers to Delaware retailers. The exercise of personal jurisdiction, at this stage, is proper at least to the extent necessary to require jurisdictional discovery from RTI in the form and scope sought by Plaintiff.


THE BAYARD FIRM


Edmond D. Johnson (No. 2257)
Thomas H. Kovach (No. 3964)
222 Delaware Ave.
Suite 900
Wilmington, DE 19801
ejohnson@bayardfirm.com
tkovach@bayardfirm.com
(302) 655-5000
Attorneys for Energy Transportation Group, Inc.


OF COUNSEL:

Thomas J. Scott, Jr.
Brian M. Buroker
Christopher C. Campbell
Hunton & Williams LLP
1900 K Street, N.W.; Suite 1200
Washington, DC 20006
(T) (202) 955-1500

602226v1602226v1

11

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on September 21, 2005, he electronically filed the

foregoing document with the Clerk of the Court using CM/ECF, which will send automatic

notification of the filing to the following:

Richard W. Horwitz, Esquire
Potter Anderson & Corroon LLP
1313 N. Market St., 6th Fl.
Wilmington, DE 19801

N. Richard Powers, Esquire
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Richard K. Herrmann, Esquire
Morris James Hitchens & Williams
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801

Barry M. Klayman, Esquire
Wolf, Block, Schorr and Solis-Cohen LLP
Wilmington Trust Center
1100 North Market Street, Suite 1001
Wilmington, DE 19801

Mary B. Graham, Esquire
Maryellen Noereika, Esquire
Donald E. Reid, Esquire
Thomas C. Grimm
Leslie A. Polizoti
Morris Nichols Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801

                                                Edmond D. Johnson (ej2257)