Not Reported in F.Supp.2d
1999 WL 805284 (D.Del.)
**(Cite as: 1999 WL 805284 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
CORDIS CORPORATION, Plaintiff,
v.
ADVANCED CARDIOVASCULAR SYSTEMS, INC. and
Guidant Corporation Defendants.
**No. Civ.A. 97-635-SLR.**

Sept. 17, 1999.

Steven J. Balick, and John S. Grimm, of Ashby & Geddes, Wilmington, Delaware, Fred H. Bartlit, Jr., David Berten, and Mary S. Moore, of Bartlit Beck Herman Palenchar & Scott, Chicago, Illinois, and Henry W. Collins, of Johnson & Johnson, Miami Lakes, Florida, for plaintiff, of counsel.

Frederick L. Cottrell, III, and Jeffrey L. Moyer, of Richards, Layton & Finger, Wilmington, Delaware, Charles E. Lipsey, J. Michael Jakes, and Howard A. Kwon, of Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., Washington, D.C., and Aldo A. Badini, and Jack Kaufmann, of Dewey Balantine LLP, New York, New York, for defendants, of counsel.

MEMORANDUM OPINION
ROBINSON, J.

I. INTRODUCTION

*1 Presently pending before the court is a motion to dismiss submitted by defendant Guidant Corporation ("Guidant"). Guidant, along with its wholly-owned subsidiary Advanced Cardiovascular Systems, Inc. ("ACS"), has been sued for patent infringement by Cordis Corporation ("Cordis"), pursuant to 35 U.S.C. § 271. (D.I.1) [FN1] In its motion, Guidant contends that the court lacks personal jurisdiction over it, requiring dismissal pursuant to Fed.R.Civ.P. 12(b)(2).

For the reasons that follow, Guidant's motion shall be granted.

II. FACTS

The record assembled in connection with this motion demonstrates the following: Guidant is a holding company incorporated in Indiana, with its principal place of business in Indianapolis, Indiana. Guidant has a number of wholly-owned subsidiaries, including ACS. ACS is a California corporation having its principal place of business in Santa Clara, California.

At issue in this patent infringement action is the "ACS RX ROCKET Coronary Dilatation Catheter" ("ACS RX ROCKET") accused of infringing several of Cordis' patents that pertain to balloons used in coronary angioplasty procedures. While ACS disputes infringement, it claims to have designed, manufactured, marketed, and distributed the ACS RX ROCKET. Specifically, ACS concedes that the RX ROCKET has been sold in Delaware. ACS has submitted to this court's jurisdiction.

Guidant contests personal jurisdiction based on the following averments:

. Guidant has no offices, manufacturing plants, warehouses or other facilities or telephone listing anywhere in the State of Delaware and has no employees, agents or distributors in Delaware. Guidant has never had a regular and established place of business in Delaware and has never been registered to do business in Delaware. Guidant does not hold any bank accounts in Delaware and does not hold any interest in real or personal property in Delaware.

(D.I.16) The above assertion is not disputed.

. Guidant and each of its subsidiaries maintain separate books and accounting records, and all of the accounting between Guidant and its subsidiaries is kept precisely to ensure strict traceability of the subsidiary.

(D.I.16) The above assertion is not disputed.

. ACS has its own employees who manage the day to day operations of ACS.

. Guidant is not actively involved in determining who is employed at ACS, what products ACS makes or sells, what prices ACS sets for its products, or what press releases are issued by ACS, even if they bear Guidant's corporate name.

. It is Guidant's corporate policy that all of its subsidiaries

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 805284 (D.Del.)
**(Cite as: 1999 WL 805284 (D.Del.))**

should use the Guidant name on all letterhead, product literature and press releases to help establish the corporate identification of Guidant. In all cases, however, each individual subsidiary is responsible for its own communications with its customers.

. Guidant transacts only business related to its role as a holding company. Guidant does not design, manufacture, sell or otherwise distribute any products, including any balloons for use in coronary angioplasty procedures.

*2 (D.I.16) The record does contain contrary, or at a minimum, inconsistent evidence. For instance, according to Guidant's discovery responses, at least the following individuals are employed currently by both Guidant and ACS: [FN2]

| Name | ACS Title |
| --- | --- |
| Guidant Title | |

Ginger L. Howard        President and CEO
Vice President and President,
Vascular Intervention Group
Bruce J. Barclay    General Counsel and
Deputy General Counsel
                  Secretary
Cynthia L. Lucchese  Treasurer
Treasurer
Thomas R. Peterson    Assistant Secretary
Senior Counsel and Assistant
Secretary

(D.I.41, Ex. 6) Moreover, all three (3) members of the ACS board of directors--Ronald W. Dollens, Keith E. Braver, and Ginger L. Howard--are Guidant officers. In this regard, Guidant has explained that

ACS' board of directors normally acts through consent resolutions. Accordingly, the members of ACS' board of directors [had] not formally met [as of February 1998] since January 1, 1994 with the exception of a meeting held on or about June 8, 1994, via telephone.

(D.I.41, Ex. 6)

According to the record, the 800 number listed for Customer Service regarding the ACS RX ROCKET elicits an operator who answers the phone: "Guidant Customer Service." (D.I.41, ¶ 8) This representation is consistent with the literature of record, which instructs potential customers to "[t]alk to your Guidant Vascular Intervention representative for more information on the full line of ACS Rapid Exchange products." (D.I.41, Ex. 7)

Some of the promotional literature of record concerning the ACS RX ROCKET characterize ACS as follows:

Guidant Vascular Intervention Headquarters
ACS DVI
3200 Lakeside Drive
Santa Clara, CA 95054, USA
Guidant Vascular Intervention Manufacturing Facility
ACS DVI
26531 Ynez Road
Temecula, CA 92591 USA

(D.I.41, Ex. 7) At best, aside from identifying the product at issue as the "ASC RX ROCKET Coronary Dilatation Catheter," ACS is identified in the following manner:

GUIDANT
Advanced Cardiovascular Systems, Inc.
26531 Ynez Road
Temecula, California 92591-4628 U.S.A.
800-227-9902 FAX 800-601-8874
OR
GUIDANT
Advanced Cardiovascular Systems, Inc.
3200 Lakeside Drive
Santa Clara, CA 95052-8167, U.S.A.
(408) 235-3000
ACS Manufacturing Facility
26531 Ynez Road
Temecula, CA 92591-4618, U.S.A.
CUSTOMER SERVICE:
800-227-9902 FAX 800-601-8874

(D.I.41, Exs.1, 2) In none of the literature of record is ACS specifically identified as the corporate entity solely responsible for designing, manufacturing, marketing, or selling the product at issue.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 3
1999 WL 805284 (D.Del.)
**(Cite as: 1999 WL 805284 (D.Del.))**

Finally, on November 7, 1997, Guidant issued a press release under its own name announcing FDA approval of the ACS RX ROCKET. Here follow some highlights of the press release:

```
GUIDANT
About Guidant
                  Cardiac  Rhythm
Minimally         Vascular
                  Management    Invasive
Systems  Intervention
```

Guidant Receives FDA Approval to Market New Rapid Exchange Catheter

*3 Indianapolis, IN--November 7, 1997--Guidant Corporation (N.Y.SE and PCX: GDT), a world leader in the treatment of coronary artery disease, today announced that it has received U.S. Food and Drug Administration approval to market the ACS RX ROCKET TM Coronary Dilatation Catheter....

The ACS RX ROCKET Coronary Dilatation Catheter is Guidant's first dilatation catheter to feature XCELON TM Nylon Balloon Material HYDROCOAT TM Hydrophilic Coating.

...

* * *

"The ACS RX ROCKET Coronary Dilatation Catheter marks a new era in rapid exchange technology," commented Ginger L. Howard, president of the Guidant Vascular Intervention Group....

* * *

A leader in the medical device industry, Guidant provides innovative, cost-effective products and services to the global cardiology and minimally invasive surgery marketplaces.

© 1997 Guidant Corporation. All Rights Reserved. Do not duplicate or distribute in any form.

(D.I.41, Ex. 3) According to Guidant's discovery responses, ACS sought FDA approval for the ACS RX ROCKET under the name "Guidant/ACS." (D.I.41, Ex. 6) Following issuance of the press release, the instant suit was commenced.

## III. STANDARD OF REVIEW

Cordis, as plaintiff, bears the burden of establishing, through sworn affidavits or other competent evidence, that this court may exercise personal jurisdiction over defendant Guidant. *Patterson v. FBI,* 893 F.2d 595, 603- 04 (3d Cir.1990). When personal jurisdiction is contested without the benefit of an evidentiary hearing, however, the record is viewed in the light most favorable to the plaintiff. *See Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1462 (D.Del.1991); *Computer People, Inc. v. Best Int'l Group, Inc.,* No. Civ. A. 16648, 1999 WL 288119, at *4 & n.5 (Del. Ch. Apr. 27, 1999). According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed.Cir.1995).

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a suit for "lack of jurisdiction over the person." According to the United States Supreme Court,

before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987). The principle announced above is traditionally described in this court as a two-step analysis. The court will determine, first, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

*4 Rule 4(e)(1) of the Federal Rules of Civil Procedure states that service of a summons may be effected "pursuant to the law of the state in which the district court is located." The Delaware long-arm statute, 10 Del. C. § 3104(c), has been construed "broadly ... to confer jurisdiction to the maximum extent possible under the due process clause." *LaNuova D & B S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986). As noted by this court in *Intel Corp. v. Silicon*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                        Page 4
1999 WL 805284 (D.Del.)
(Cite as: 1999 WL 805284 (D.Del.))

*Storage Tech., Inc.,* 20 F.Supp.2d 690, 694 (D.Del.1998), however, "[t]he Delaware Supreme Court has not determined that § 3104(c) is coextensive with federal due process, nor does it substitute federal due process analysis for state long-arm analysis." *Accord Hercules, Inc. v. Leu Trust & Banking (Bahamas) Ltd.,* 611 A.2d 476, 480-81 (Del.1992); *Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Prods. Inc.,* Civ. A. No. 12036, 1991 WL 129174, at *3 (Del. Ch. July 10, 1991); *Ramada Inns v. Drinkhall,* No. Civ. A. 83C-AU-56, 1984 WL 247023, at *2 (Del.Super. May 17, 1984). Therefore, the court must determine whether the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendant's constitutional right to due process. [FN3]

Delaware's long-arm statute provides in relevant part:
  (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-resident, or a personal representative, who in person or through an agent:
  (1) Transacts any business or performs any character of work or service in the State....
10 Del. C. § 3104(c)(1) (emphasis added).

As explained by the Delaware Supreme Court in *LaNuova,*
  [t]he conduct embraced in subsections (1) and (2), the transaction of business or performance of work and contracting to supply services or things in the State, may supply the jurisdictional basis for suit only with respect to claims which have a nexus to the designated conduct. Where personal jurisdiction is asserted on a transactional basis, even a single transaction is sufficient if the claim has its origin in the asserted transaction.
*LaNuova,* 513 A.2d at 768. Therefore, in order to establish transactional or specific jurisdiction, plaintiff must demonstrate not only that an act or acts occurred in Delaware but also that its causes of action arise from the act or acts. According to relevant caselaw, plaintiff also must demonstrate that the act or acts occurring in Delaware actually constitute "transacting business" in Delaware, i.e., that defendant "purposefully avail[ed itself] of the privileges and benefits of Delaware law." *Computer People, Inc.,* 1999

WL 288119, at *8; *see also Thorn EMI N. Am. v. Micron Tech., Inc.,* 821 F.Supp. 272, 274 (D.Del.1993) (stating that the designated conduct "must be directed at residents of the State of Delaware and the protection of its laws"). With this requirement in mind, courts have concluded that "[m]ere solicitation does not arise to transacting business, nor does the isolated shipment of goods into Delaware." *Id.* (citing *Moore v. Little Giant Indus., Inc.,* 513 F.Supp. 1043, 1047 (D.Del.1981); *Waters v. Deutz Corp.,* 460 A.2d 1332, 1335 (Del.Super.1983)). The distinction between isolated business activities and those giving rise to personal jurisdiction has been explained on the basis of whether the conduct is "part of a general business plan ... to solicit business in Delaware and deliver products to customers in Delaware." *Thorn EMI,* 821 F.Supp. at 274.

*5 The court must further determine whether the exercise of personal jurisdiction over Guidant comports with federal due process considerations. The Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945), held that
  due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."
*Id.* at 316 (citation omitted). The Court in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985), added the requirement that the minimum contacts be "purposeful" contacts, noting that "even a single act can support jurisdiction" so long as it creates a "substantial connection" with the forum, in contrast to an "attenuated affiliation." *Id.* at 475 n.18. Therefore, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477. In *Luker,* the Federal Circuit suggested a three-prong jurisdictional analysis: 1) has the defendant purposefully directed its activities at residents of the forum?; 2) do the claims arise out of or relate to those activities?; 3) is the assertion of personal jurisdiction reasonable and fair? *See Luker,* 45 F.3d at 1545-46.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 805284 (D.Del.)
**(Cite as: 1999 WL 805284 (D.Del.))**

Page 5

## IV. DISCUSSION

Based on evidence presented in a related case, [FN4] Cordis maintains that Guidant and ACS "share" key employees. Cordis refers to the product and advertising literature of record in support of its assertion that "Guidant is regularly involved in the daily affairs of ACS, particularly as it relates to the marketing of the [ACS RX ROCKET]." (D.I. 76 at 5) Cordis concludes: "It is precisely this type of 'close connection' between a corporation and the cause of action that supports a finding of jurisdiction under the 'agency theory' in Delaware." (D.I. 76 at 5) [FN5]

As explained by this court in *Applied Biosystems,* the agency theory

> examines the degree of control which the parent exercises over the subsidiary.... The factors relevant to this determination include the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business. No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant....
> If any agency relationship is found to exist, courts will not ignore the separate corporate identities of parent and subsidiary, but will consider the parent corporation responsible for specific jurisdictional acts of the subsidiary.

772 F.Supp. at 1463. An agency relationship alone, however, is not sufficient to confer jurisdiction.

> *6 Rather, the result of finding such an agency relationship is simply that we may attribute certain of [ACS'] acts to [Guidant] in assessing whether the requirements of the Delaware long-arm statute have been satisfied.

*Id.* at 1464.

With respect to whether Cordis has demonstrated that an agency relationship exists between Guidant and ACS, the court finds that Cordis has carried its burden of proof in this regard. Although Guidant and ACS may honor corporate formalities and maintain separate corporate finances, there is evidence that, at least in the case of the ACS RX ROCKET, Guidant has controlled and directed the marketing campaign of record. Indeed, but for Mr. Peterson's averments, one could not readily discern from the promotional literature itself which corporation designed, manufactured, marketed or sold the RX ROCKET. The court finds, therefore, that a limited agency relationship exists between Guidant and ACS as to the marketing of the ACS RX ROCKET.

The existence of an agency relationship is not enough, however, to confer personal jurisdiction over Guidant. Rather, Cordis must establish that the activities directed or controlled by Guidant are the jurisdictional acts of ACS. Cordis has failed in this regard. While ACS' sales activities in Delaware [FN6] may well be related to the marketing efforts directed by Guidant, the court declines to make this intellectual leap without an evidentiary basis in fact. Therefore, the court concludes that the exercise of personal jurisdiction over Guidant pursuant to 10 Del. C. § 3104(c)(1) is not warranted. [FN7]

Even if Guidant's relationship with ACS passed muster under the Delaware long-arm statute, the court finds that the exercise of personal jurisdiction over Guidant under these circumstances would not comport with " 'traditional notions of fair play and substantial justice." ' *International Shoe Co., 326 U.S. at 316* (citation omitted).

> The constitutionality of an exercise of specific jurisdiction turns on whether the defendant has "purposefully directed" its activity toward the forum state. If so, and if the litigation arises out of those activities, the defendant may have established the requisite minimum contacts with the forum despite the lack of any physical contacts.

*Applied Biosystems, Inc. v. Cruachem, Ltd., 772 F.Supp. at 1470.*

In the product liability suit of *Waters v. Deutz Corp., 460 A .2d 1332, 1337-38 (Del.Super.1983),* the Delaware Superior Court exercised personal jurisdiction over a German tractor manufacturer pursuant to 10 Del. C. § 3104(c)(1). The manufacturer, which had no direct contacts with the State, had developed an agency relationship with its exclusive United States distributor which, in turn, imported the manufacturer's tractors through the Port of Wilmington, sold at least five tractors in Delaware, maintained a district manager in Delaware, and actively solicited Delaware

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                Page 6
1999 WL 805284 (D.Del.)
**(Cite as: 1999 WL 805284 (D.Del.))**

business.

The extent and nature of the Delaware contacts in the present case are imprecisely described. ACS has sold the RX ROCKET in Delaware, but there is no description of record of defendants' solicitation efforts or how such efforts affected, it at all, ACS' sales activities. The court is not inclined to find that Guidant purposefully directed its activity toward Delaware based on such a record.

## V. CONCLUSION

**\*7** For the reasons stated, Guidant's motion to dismiss shall be granted. An appropriate order shall issue.

> FN1. Plaintiff alleges in the complaint that defendants ACS and Guidant "manufacture and sell a medical device ... that infringes...." (D.I.1, ¶ 10)

> FN2. In related litigation, even certain ACS employees were uncertain as to the identity of their employer. (See C.A. No. 97-550, D.I. 346, 347)

> FN3. The Federal Circuit has instructed that, "in interpreting the meaning of state long-arm statutes, we ... defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." _Graphic Controls Corp. v. Utah Med. Prods., Inc.,_ 149 F.3d 1382, 1386 (Fed.Cir.1998). Thus, in _Luker,_ the Federal Circuit's analysis followed that of the Sixth Circuit's holding in _R.L. Lipton Distrib. Co. v. Dribeck Importers, Inc.,_ 811 F.2d 967 (6th Cir.1987): " 'This Ohio [long-arm] statute has been construed to extend to the outer limits of due process, and thus an Ohio personal jurisdiction analysis becomes an examination of constitutional limitations." ' _Luker,_ 45 F.3d at 1544 (quoting _Dribeck,_ 811 F.2d at 969). By contrast, as noted above, the Delaware state courts do not collapse the long-arm inquiry into the due process inquiry and neither shall this court.

> FN4. The court, in _Cordis Corp. v. Advanced Cardiovascular Systems, Inc., et al.,_ C.A. No. 97-550-SLR, concluded that the exercise of personal jurisdiction over Guidant was appropriate where Guidant "share[d] personnel ..., financial management ..., and research and marketing responsibilities...." (D.I.76, Ex. 1) Since that order issued, and in support of its motion for reargument, Guidant has submitted affidavits recanting earlier deposition testimony. See, e.g., C.A. No. 97-550, D.I. 346:
> At my deposition, I stated that I was Vice-President of Global Marketing for "vascular intervention" and I reported to Ginger Howard. Ms. Howard is President of ACS and, in this regard, my activities at Global Marketing are undertaken on behalf of ACS.
> At the time of my testimony, I was treating ACS as a division of Guidant when I stated that I was employed by Guidant. I have been informed by counsel for ACS that ACS is a separate legal entity.
> See also D.I. 347:
> At my deposition, I was asked about my employer and I stated that I was employed by Guidant Corporation. I also noted that I was the Director of Research and Development for the "stent business unit." Although I was not asked, it is my understanding that the "stent business unit" is a portion of Advanced Cardiovascular Systems ("ACS"), an independent subsidiary of Guidant Corporation. In light of this fact, and upon a further review of my records, I have confirmed that I am an employee of ACS, not Guidant.

> FN5. To the extent asserted by Cordis, the court finds that the record does not support exercising personal jurisdiction over Guidant based on its own conduct in Delaware or based on an alter ego theory.

> FN6. The sales activities themselves are not specifically described in the record.

> FN7. The court reaches this conclusion somewhat reluctantly, as it does not seem appropriate that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

1999 WL 805284 (D.Del.)
**(Cite as: 1999 WL 805284 (D.Del.))**

      Guidant, for business reasons, be permitted to hold itself out to the public as the corporate entity responsible for the ACS RX ROCKET only to disclaim legal responsibility for the same product based on corporate formalities.

1999 WL 805284 (D.Del.)

    **Motions, Pleadings and Filings (Back to top)**

• 1:97cv00635 (Docket) (Dec. 02, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.