1999 Del. Super. LEXIS 219

Republic Environmental Systems, Inc. v. RESI Acquisition (Delaware) Corp. and Philip Services Corp.

C.A. No. 99C-02-194 WTQ

SUPERIOR COURT OF DELAWARE, NEW CASTLE

1999 Del. Super. LEXIS 219

May 24, 1999, Date Submitted
May 28, 1999, Date Decided

**SUBSEQUENT HISTORY:** [*1] Released for Publication by the Court July 1, 1999.

**DISPOSITION-1:** Letter Opinion and Order on: 1. Defendant Philip Services' Motion to Dismiss -- MOTION DENIED. 2. Defendants' Motion to Amend their Answer -- MOTION GRANTED. 3. Plaintiff's Motion for Final Judgment on the Pleadings as to the Notes and Guaranty -- MOTION GRANTED.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff creditor moved for a judgment on the pleadings in an action against defendants, debtor and surety, to collect on promissory notes that were used as consideration for the sale of corporate entities. Defendants moved to dismiss claims for lack of personal jurisdiction and moved to amend their answer to include additional counterclaims.

**OVERVIEW:** Plaintiff creditor was engaged in the waste management business. Plaintiff sold corporate entities to defendant debtor. Promissory notes were executed and guaranteed by the defendant surety. The notes specifically stated that they were made under state laws, and they also contained a set-off clause. Plaintiff filed a debt collection action. Defendants admitted to defaulting on the notes, but they disputed the amount. Plaintiff filed a motion for judgment on the pleadings, and defendants moved to dismiss for lack of personal jurisdiction and to amend answer their answer to include counterclaims. The court granted plaintiff's motion because defendants admitted they were in default. Defendants' motion to amend was granted because there was no prejudice to plaintiff. Defendants' motion to dismiss was denied because they were subject to personal jurisdiction based on the permissive guaranty clause and a long arm statute.

**OUTCOME:** The court granted plaintiff's motion for judgment on the pleadings in an action to collect on promissory notes based on defendants admitting to default and granted defendants' motion to amend answer but denied defendants' motion to dismiss claims since they were subject to personal jurisdiction.

**CORE TERMS:** counterclaim, final judgment, off-set, forum selection clause, mandatory, long-arm, subsidiary, set-off, permissive, personal jurisdiction, amend, undisputed, surety, Civil Rule, environmental, default, distinguishable, litigate, offend, interstate, contested, venue, notions of fair play, entering judgment, entry of judgment, express language, choice of forum, choice of law, fair warning, giving rise

**LexisNexis(TM) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

[HN1]When personal jurisdiction is challenged by a motion to dismiss, the plaintiff bears the burden of showing a basis for the court's jurisdiction over a non-resident defendant. To obtain jurisdiction over a party, a court must satisfy the requirements of its long-arm statute and due process.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

[HN2]Delaware's long-arm statute, Del. Code Ann. tit. 10, § 3104(c), provides that a Delaware court may exercise personal jurisdiction over a nonresident if the person: Transacts any business or performs any character of work or service in the State such as contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the state at the time the contract is made, unless the parties otherwise provide in writing. Ownership of a Delaware corporation, without more, can not create general jurisdiction in the state. The foreign

party must have some additional tie to the state, although a single tie may suffice.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***

[HN3]Delaware's long-arm statute, Del. Code Ann. tit. 10, § 3104(c)(6), provides jurisdiction for any person who acts as a surety for any person located within the state, unless the parties provide otherwise in writing. A person includes a corporation, which by virtue of being incorporated in Delaware is present in Delaware for the purposes of jurisdiction. When the subject matter is the payment of a note, a general debt obligation, it seems especially appropriate to go to the forum of the debtor's domicile as one of the prime options.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***

[HN4]A permissive forum selection clause does not preclude the application of the long-arm statute, Del. Code Ann. tit. 10, § 3104(c)(6).

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits***

[HN5]Due process requires that in order to subject a defendant to personal jurisdiction, the person must have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. This test requires that parties have fair warning that a particular activity may subject it to jurisdiction in a given locale. Fair warning can be satisfied where a defendant has purposely directed its activities to the residents of the forum state.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits***

[HN6]A foreign corporation can not use the laws of a state to govern the operations of its subsidiary and then, in a suit relating to the operation of the subsidiary, claim that jurisdiction in the state offends traditional notions of fair play. Where individuals purposely derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other states for consequences that arise proximately from such activities. The Due Process Clause, U. S. Const. amend. XIV, may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. Modern transportation and communications have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***

[HN7]In the analysis regarding jurisdiction, the court may consider the burden on the defendant, the plaintiff's interest in obtaining convenient and effective relief and the interstate judicial system's interest in obtaining the most efficient resolution of controversies. These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.

***Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings***

[HN8]A party may amend a pleading with leave of court, and such leave shall be freely given, as justice requires.

***Civil Procedure > Early Pretrial Judgments > Judgment on the Pleadings***

[HN9]When one or more claims for relief are sought in an action, whether claims or counterclaims, the court may direct the entry of final judgment on fewer than all claims if there is no just reason for delay of such entry.

**COUNSEL:** John L. Reed, Esquire, Blank Rome Comisky & McCauley, Wilmington, DE.

Laura S. Clare, Esquire, Skadden Arps Slate Meagher & Flom, Wilmington, DE.

**JUDGES:** WILLIAM T. QUILLEN, JUDGE.

**OPINIONBY:** WILLIAM T. QUILLEN

**OPINION:** This is the Court's Opinion on Plaintiff's Motion for Judgment on the Pleadings, Defendants' Motion to Amend their Answer and Defendant Philip Services' Motion to Dismiss. For the reasons stated herein, the Motion to Dismiss is DENIED, the Motion to Amend the Answer is

GRANTED and the Motion for Judgment on the Pleadings is GRANTED.

## I. FACTS

This case arises from the execution of promissory notes in favor of the Plaintiff and against the Delaware subsidiary of a Canadian corporation. The primary issues involve whether this Court has jurisdiction over the Canadian Defendant and whether a potential off-set precludes a final judgment on the pleadings as [*2] to the claims of the Complaint.

The Plaintiff, Republic Environmental Systems, Inc. ("Republic"), owned various operations engaged in the waste management business. In June 1997, via a Share Purchase Agreement, Republic sold certain corporate entities to Co-Defendant, RESI Acquisitions, Inc. ("RESI"), for $ 17 million. As consideration for the transaction, RESI paid $ 8 million in cash and executed two promissory notes (the "Notes") in favor of Republic in a combined amount of $ 9 million. The first Note, for $ 8 million, was payable on July 23, 1998. The second Note, for $ 1 million, was payable on July 23, 1999. Both Notes specifically state that they "shall be deemed to be made under and in accordance with and governed by the laws of the State of Delaware." n1 Both Notes also contained a "set-off clause" allowing RESI to set-off any liability arising under Section 9.2 of the Share Purchase Agreement. n2 Philip Services Corporation ("Philip Services"), the parent of RESI, signed the Notes as unconditional guarantor and also signed a separate Guaranty Agreement ("the Guaranty"). The same person signed both Notes and the Guaranty for both Defendants.

------------- Footnotes -------
--------

n1 Complaint, Exhibit A (Dkt. No. 1).

[*3]

n2 Section 9.2 of the Share Purchase Agreement stated that Republic would indemnify RESI for certain environmental liability in excess of an "Indemnification Threshold" arising from the clean-up of two facilities (one located in Hatfield, Pennsylvania and one located in Clayton, New Jersey). The Section, however, was limited to the clean-up of only a certain exhaustive list of contaminants.

----------- End Footnotes------
--------

RESI, a Delaware corporation, was a subsidiary of Co-Defendant Philip Services. Philip Services' Guaranty stated that Pennsylvania law would govern and that all disputes may be litigated in Pennsylvania. n3 Philip Services is a Canadian corporation with its corporate offices in Ontario, Canada. It is not registered to do business in Delaware and has no physical plants in Delaware. n4

-------------- Footnotes -------
--------

n3 Complaint, Exhibit E, at PP10 and 14 (Dkt. No. 1).

n4 Affidavit of Stephen Brook, Esquire, at P5 (Dkt. No. 13). These facts can be assumed since the Complaint makes no allegations to the contrary.

------------ End Footnotes------
--------

[*4]

The 1997 Share Purchase Agreement was negotiated in Canada, Pennsylvania and Bermuda. The Share Purchase Agreement and Notes were executed in Ontario, Canada. The corporations purchased under this Agreement own facilities in Pennsylvania, New Jersey and Ohio. n5 These corporations were incorporated in New Jersey, Pennsylvania and Ohio. The Guaranty was negotiated in Canada and executed in Pennsylvania. n6

-------------- Footnotes -------
--------

n5 Whether or not jurisdiction could be obtained over RESI in Pennsylvania is disputed by the parties. Defendants contend that jurisdiction can be obtained because certain negotiations occurred in Pennsylvania and because certain facilities owned by the purchased corporations are located in Pennsylvania. Plaintiff asserts that RESI does not directly own these facilities in Pennsylvania, it only owns corporations which in turn own facilities in Pennsylvania, and that ownership of a Pennsylvania corporation, by itself, does not give rise to jurisdiction in Pennsylvania. On the current record, this Court simply notes that jurisdiction

over RESI in Pennsylvania is contested.

n6 Supplemental Affidavit of Stephen Brooke, Esquire (Dkt. No. 17). The Complaint makes no allegations that negotiations took place in Delaware.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*5]

After the Notes were executed, the parties made several modifications to the payment schedule, allowing RESI extra time to fulfill its obligation. Although RESI repaid a portion of the first $ 8 million Note, it eventually defaulted. A condition of the second $ 1 million Note stated that a default on the $ 8 million Note also constituted a default on the $ 1 million Note. Republic brought this action in Delaware against both RESI and Philip Services to collect on the Notes. Defendants admitted to defaulting on the Notes and do not dispute the amount unpaid. n7 Defendants do raise the affirmative defenses of lack of personal jurisdiction and off-set, and have filed counterclaims alleging damages arising from the 1997 Share Purchase Agreement.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - -

n7 Answer, at P15 (Dkt. No. 7).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Plaintiff now brings a Motion for Judgment on the Pleadings, stating that Defendants admit to defaulting on the Notes. Defendants now bring a Motion to Dismiss all claims against Philip Services for lack of personal jurisdiction and a Motion [*6] to Amend their Answer to include additional counterclaims. These counterclaims contain allegations related to certain environmental issues, although none specifically mention Section 9.2 of the Share Purchase Agreement.

## II. DEFENDANT PHILIP SERVICES' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

[HN1]When personal jurisdiction is challenged by a Motion to Dismiss, the Plaintiff bears the burden of showing a basis for the Court's jurisdiction over the nonresident Defendant. *Plummer & Co. Realtors v. Crisafi*, Del. Super., 533 A.2d 1242, 1244 (1987). To obtain jurisdiction over a party, a Court must satisfy the requirements of its long-arm statute and due process. *Outokumpu Engineering Enterprises v. KEPI*, Del. Super., 685 A.2d 724, 727 (1996)(citing *LaNuova D&B, S.p.A. v. Bowe Co.*, Del. Supr., 513 A.2d 764, 768-769 (1986)). In this case, the bare facts necessary for final decision on jurisdiction are established.

### A. [HN2]Delaware's Long-Arm Statute

Delaware's long-arm statute provides that a Delaware Court may exercise personal jurisdiction over a nonresident if the person:

> (1) Transacts any business or performs any character [*7] of work or service in the State;
>
> * * *
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 *Del. C.* § 3104(c).

Ownership of a Delaware corporation, without more, cannot create general jurisdiction in this State. *Outokumpu*, 685 A.2d at 728 n.1 (citing *Sears, Roebuck & Co., v. Sears, plc*, D. Del., 744 F. Supp. 1297, 1306 (1990)). The foreign party must have some additional tie to this State, although a single tie may suffice.

[HN3]Section (c)(6) of Delaware's long-arm statute provides jurisdiction for any person who "acts as a surety for . . . any person . . . located . . . within the State, *unless the parties otherwise provide in writing.*" (Emphasis supplied). A person includes a corporation, and the debtor here, which by virtue of being incorporated in Delaware, is "present" in Delaware for the purposes of jurisdiction. 10 *Del. C.* § 3104(a); 8 *Del. C.* § 321. When the subject matter is the payment of a Note, a general debt obligation, [*8] it seems especially appropriate to go to the forum of the debtor's domicile as one of the prime options.

RESI is a Delaware corporation and therefore present in Delaware. Philip Services, a foreign corporation, acted as a surety for the Notes executed by RESI. In fact, Philip Services actually endorsed the Notes contemporaneously. Philip Services therefore acted as a surety for a person with a presence within the State, an action giving

rise to specific jurisdiction under Section (c)(6). This Section, however, is qualified in that it does not apply if "the parties otherwise provide." 10 Del. C. § 3104(c)(6). Here, the Notes contained a choice of law provision choosing Delaware law (there is no choice of forum clause). The choice of law adds an additional factor as to the propriety of jurisdiction. The Guaranty provides that all parties submit to jurisdiction in Pennsylvania, but does not state that all actions *must* be litigated in Pennsylvania. In other words, the forum selection clause was permissive, not mandatory. Had the choice of forum clause been mandatory in nature, meaning the parties would be *required* to litigate in Pennsylvania, the contract may have fallen [*9] outside the reach of Delaware's long-arm statute, as provided by the qualifier in Section (c)(6). n8 The clause in the present case, however, is permissive in nature, meaning the parties have the *option* of litigating in Pennsylvania, but are not required to do so. Indeed, there is an express, albeit general, provision preserving all other rights cumulative to those in the Guaranty.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n8 The Court uses the word "may" here because the Notes themselves could arguably be viewed as being the governing instrument without reference to the Guaranty.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The purpose of the qualifying language of Section (c)(6) is to allow the parties to "contract around" this Section by preselecting a forum in which to litigate disputes. This process adds certainty and predictability to the contract. Here, however, the parties only selected a "possible" forum, they did not conclusively select a "mandatory" forum. Under the terms of the forum selection clause in the Guaranty, the Plaintiff could sue Philip Services in Pennsylvania or any [*10] other forum with personal jurisdiction. This permissive language does not provide the certainty of a mandatory forum clause, and therefore does not show an intent to contract around Section (c)(6). Accordingly, [HN4]a permissive forum selection clause does not preclude the application of Section (c)(6) and Philip Services is subject to jurisdiction under Delaware's long-arm statute on the limited issue of the Notes and the Guaranty.

Philip Services relies heavily upon *Outokumpu Engineering Enterprises v. KEPI*, Del. Super., 685 A.2d 724 (1996). That excellent decision is distinguishable on several dispositive bases:

1. In *Outokumpu*, the guarantor was not a parent guaranteeing the obligations of its wholly-owned subsidiary, but was a foreign *sister* company. 685 A.2d at 725-726.

2. In *Outokumpu*, the underlying agreement that was being guaranteed was governed by Norwegian law and had an exclusive forum selection clause providing venue in Oslo, Norway. *Id.* Here, the Notes are governed by Delaware law and there is no forum selection clause in the Notes.

3. The guarantee in *Outokumpu* was governed by Swedish law and contained a mandatory [*11] forum selection clause providing that venue "shall" be in Sweden. n9 *Id. at 733.* The Guaranty in the present case is governed by Pennsylvania law as opposed to the laws of a foreign country and venue therein is permissive, not exclusive.

4. In *Outokumpu*, the dispute involved the failure to complete the construction of a power plant in Canada. 685 A.2d at 727. In this case, the dispute is simply over the failure of a Delaware corporation to pay its debt.

5. In *Outokumpu*, the Court did not address jurisdiction as provided by 10 Del. C. § 3104(c)(6), because the forum selection clause mandated jurisdiction elsewhere, as expressly permitted by subsection (6) of Section 3104. Thus, the expectations and burdens of the parties in *Outokumpu* were very different from those in this case. Indeed, *Outokumpu* really involved litigation between two Scandinavian corporate enterprises over construction of a facility in Canada, where none of the agreements were governed by Delaware, or even American law. n10

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n9 The actual language of the provision stated that "Goteborg *shall be the* proper venue for any dispute concerning any claim or dispute relating to this Guarantee." Outokumpu, 685 A.2d at 726 (emphasis supplied). The Court reads this language as mandatory.

[*12]

n10 Republic also has contended that Philip Services waived the right to object to jurisdiction by filing a Counterclaim in this Court. Because the Court finds that there is jurisdiction over Philip Services for the reasons set forth herein, it is not necessary to reach that issue. *But see* Superior Court Civil Rule 8(e).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

This Court holds that Philip Services actions, in guaranteeing the obligations of a Delaware corporation, in the absence of a mandatory forum selection clause, creates specific jurisdiction under Delaware's long-arm statute for actions arising under the Notes and Guaranty. To obtain jurisdiction, however, this Court must also satisfy the requirements of Due Process.

### B. Due Process

[HN5]Due Process requires that in order to subject a Defendant to personal jurisdiction, the person must "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)). [*13] This test requires that parties have fair warning that a particular activity may subject it to jurisdiction in a given locale, here Delaware. Outokumpu, 685 A.2d at 731 (citing Shaffer v. Heitner, 433 U.S. 186, 218, 97 S. Ct. 2569, 2587, 53 L. Ed. 2d 683 (1977). Fair warning can be satisfied where a Defendant has purposely directed its activities to the residents of the forum State. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985).

"[[HN6]A] foreign corporation cannot use the laws of this State to govern the operations of its subsidiary and then, in a suit relating to the operation of the subsidiary, claim that jurisdiction in Delaware offends traditional notions of fair play." Sears, 744 F. Supp. at 1303. As United States Supreme Court Justice Brennan stated in Burger King:

> Where individuals purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations [*14] that have been voluntarily assumed. And because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity. [471 U.S.] at 473-74, [105 S. Ct. at] 2183 (citations omitted).

Philip Services created a Delaware subsidiary and availed itself of Delaware law in doing so. Philip Services had such fair warning that it may be haled into a Delaware Court because it: (a) guaranteed the financial obligations of a Delaware corporation which it wholly-owned; (b) induced, by virtue of the express language in the Guaranty, the Delaware corporate Plaintiff to engage in the transactions at issue; and (c) derived a "substantial and direct benefit" according to the express language of the Guaranty from these transactions of its Delaware subsidiary. It cannot be said that Philip Services' connection to Delaware is a result of "random," "fortuitous," or "attenuated" contacts. 471 U.S. at 476, 105 S. Ct. at 2183.

[HN7]In this analysis, the Court may also consider the burden on the Defendant, the Plaintiff's interest [*15] in obtaining convenient and effective relief and the interstate judicial system's interest in obtaining the most efficient resolution of controversies. Burger King, 471 U.S. at 477, 105 S. Ct. at 2184. "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." Id. Jurisdiction in Delaware would serve Republic's entitlement to convenient and effective relief.

Moreover, there is no apparent burden on Philip Services to litigate in Wilmington, Delaware, as opposed to Philadelphia, Pennsylvania.

This Court finds that Philip Services is subject to personal jurisdiction in this Court for claims arising under the Notes and Guaranty under Delaware's long-arm statute. This Court further finds that such jurisdiction does not offend Due Process. Accordingly, Defendant Philip Services' Motion to Dismiss is DENIED.

### III. DEFENDANTS' MOTION TO AMEND THE ANSWER

Superior Court Civil Rule 15(a) states that [HN8]a party may amend a pleading with leave of Court, and such leave shall be freely given as justice requires. In this situation, the Defendants wish to amend their Answer [*16] to include counterclaims arising from the 1997 sale. Similar counterclaims were brought in the original Answer and the case is not yet three months old. The Court sees no prejudice to the Plaintiff in allowing the requested amendments. At oral argument, Plaintiffs offered no opposition. Accordingly, Defendants' Motion to Amend their Answer is GRANTED.

### VI. PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff has moved for Final Judgment on the Pleadings regarding liability on the Notes and Guaranty. Defendants oppose Republic's Motion on the basis that they have pending counterclaims which may entitle them to a set-off against Republic. They also assert that some counterclaims fit within the "set-off clause" of the Notes as claims arising under Section 9.2 of the Share Purchase Agreement. Plaintiff contends that none of the counterclaims fall within the scope of Section 9.2.

Section 9.2 of the Share Purchase Agreement carves out a narrow indemnification scenario. It states that Republic would indemnify RESI for environmental liability arising from damages related to excessive concentrations of certain specified contaminants in either the soil or groundwater of two particular [*17] facilities. The Notes allow RESI to off-set this liability, minus an "indemnification threshold," directly against the Notes. The Amended Answer makes many environmental counterclaims, some even relating to one of the facilities mentioned in Section 9.2. n11 None of these counterclaims, however, even when read broadly, make any allegations relating to costs associated with excessive contamination of the chemicals listed in Section 9.2. The list of chemicals is rather specific, and none are even mentioned in the counterclaims. As such, even read liberally, the counterclaims do not give rise to the type of off-set expressly provided in the Notes. Although Defendants may have general off-sets against Republic, these off-sets fall outside the scope of the Notes. The only remaining question is whether this Court should enter *final* judgment on the Notes and Guaranty while certain general off-sets remain pending. n12

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n11 *See, e.g.,* Amended Answer, at P62 (Dkt. No. 12) (alleging damages arising from a ruptured membrane of the Hatfield, Pennsylvania facility).

n12 This is not to say that even if the counterclaims fell within Section 9.2 that this Court could not grant final judgment on the Notes. See *Olympia Hotels Corp v. Johnson Wax Dev. Corp.,* 7th Cir., 908 F.2d 1363 (1990).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*18]

Superior Court Civil Rule 54(b), modeled after its Federal counterpart, provides that [HN9]when one or more claims for relief are sought in an action, whether claims or counterclaims, the Court may direct the entry of final judgment on fewer than all claims if there is no just reason for delay of such entry. Because the Delaware and Federal Rule are similar, this Court finds Federal authority on the subject persuasive.

In *Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 100 S. Ct. 1460, 64 L. Ed. 2d 1 (1980),* Curtiss-Wright brought an action against General Electric seeking damages and reformation with regard to 21 contracts. The Complaint asserted claims based on alleged fraud, misrepresentation, and breach of contract by General Electric. It also sought $ 19 million from General Electric on the outstanding balance due on the contracts already performed. General Electric counterclaimed for $ 1.9 million in costs allegedly incurred as the result of efforts provided to Curtiss-Wright during performance of the contracts which enabled Curtiss-Wright to avoid a contract default. General Electric also counterclaimed to recover $ 52 million by which Curtiss-Wright was allegedly unjustly [*19]

enriched as a result of these efforts. The facts underlying most of these claims and counterclaims were in dispute. As to Curtiss-Wright's claims for the $ 19 million balance due, however, the facts were largely undisputed and the claim hinged on a single legal question.

When Curtiss-Wright moved for final judgment on the $ 19 million balance due, General Electric contended that so long as Curtiss-Wright's other claims remained pending, the potential set-off constituted a bar to recovery of the undisputed balance. The United States Supreme Court disagreed, and held that Rule 54(b) permitted the District Court, in its discretion, to enter final judgment on the claim before resolving the remaining claims. 446 U.S. at 10, 100 S. Ct. at 1465. The Court stated that while there is a general judicial policy against piecemeal litigation, in certain situations, the entry of judgment in less than all claims is appropriate. 446 U.S. at 9, 100 S. Ct. at 1465. The overriding concern is that of judicial, and more specifically, appellate economy. That is, trial Courts should refrain from issuing final judgments on less than all issues if it creates the possibility of making an appellate Court review [*20] the facts and issues of a case more than once. In this case, the U.S. Supreme Court noted that an appeal of the pending counterclaims would not force an appellate Court to revisit issues decided in an appeal of the undisputed contractual claims. Id. The U.S. Supreme Court held that the central inquiry should be "whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined were such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." 446 U.S. at 8, 100 S. Ct. at 1465.

Defendants cite Aluminum Co. of America v. Toba Adjustments Inc., 1998 U.S. Dist. LEXIS 3224, S.D.N.Y., No. 96 Civ. 9536, 1998 WL 120355, Leisure, J. (Mar. 18, 1998), First Federal Savings Bank v. CPM Energy Systems Corp., 1988 Del. Super. LEXIS 400, Del. Super., C.A. No. 88C-05-249, Taylor, J. (Oct. 25, 1988) and Ning Shing (U.S.A.), Inc. v. Howard Berger Co., 1998 U.S. Dist. LEXIS 11142, D.N.J., 1998 WL 684244 (Mar. 16, 1998) to support their contention that a counterclaim and potential off-set preclude entering judgment on the Notes. Toba Adjustments is distinguishable because the Plaintiff's claim for conversion [*21] was "disputed," and could not be determined as a matter of law, therefore foreclosing any summary judgment. The case even contrasts this very distinction with Curtiss-Wright. The case of First Federal is also distinguishable in that the affirmative defense of "fraudulent inducement" dealt with the very loan giving rise to the Plaintiff's claim. In Ning Shing, the Federal District Court did not grant final judgment when the Defendant had a possible set-off against the Plaintiff. Although this case is factually comparable to the present case, this Court does not read Ning Shing so broadly as to foreclose a Court, in the exercise of its discretion, from entering judgment under Rule 54(b) when a possible off-set exists.

In this case, the issue on Republic's claims is whether Defendants failed to make payment under the Notes and Guaranty as alleged in the Complaint. Defendants admit they did not make these payments. Defendants' counterclaims, while certainly raising an off-set issue, do not in any way relate to the defaults on the Notes. The Court finds this situation analogous to the one in Curtiss-Wright, that is an undisputed civil claim in the midst of other hotly [*22] contested claims and counterclaims. The Court also notes that Republic does not display any signs of imminent insolvency, and would be capable of paying a judgment in the future. Philip Services, on the other hand, appears to be experiencing financial difficulties, and potential insolvency may be a concern. n13 These factors weigh in favor of granting final judgment on the Notes and Guaranty before deciding the factually intensive counterclaims. Another factor is judicial (and appellate) economy. The issues concerning the Notes and Guaranty, while arising from the 1997 Share Purchase Agreement, are simply severable from the issues addressed in the counterclaims. Therefore, the granting of final judgment on the Notes and Guaranty will not in any event obligate our Supreme Court to pour over the facts and issues of this entire case more than once. Accordingly, Plaintiff's Motion for Final Judgment on the Pleadings with respect to the Notes and Guaranty is GRANTED.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n13 There were assertions on the record at argument that Defendants are experiencing financial difficulties and may seek the protections of the Bankruptcy Courts. These assertions were not denied by Defendants. If true, this is an additional factor weighing in favor of certification of a final judgment

on Republic's claims. See *Curtiss-Wright,* 446 U.S. at 12 ("Nor is General Electric's solvency a dispositive factor; if its financial position were such that a delay in entry of judgment on Curtiss-Wright's claims would impair Curtiss-Wright's ability to collect on the judgment, that would weigh in favor of certification").

------------ End Footnotes- - - - - - - - - - - - -

[*23]

Notwithstanding that Republic is entitled to a final judgment without further delay, the Court is not unmindful of the fact that the Defendants may have to pay the sums demanded by Republic in the face of their counterclaims. Accordingly, I propose to enter judgment along the following lines:

### PROPOSED JUDGMENT

*AND NOW, TO WIT, this ___ day of June, 1999, IT IS HEREBY ORDERED that judgment be entered against Defendant RESI Acquisition (Delaware) Corporation, and in favor of the Plaintiff, in the amount of $ 4,528,875.90, with interest at the legal rate from the date hereof;*

*IT IS FURTHER ORDERED that judgment be entered against Defendant Philip Services Corp., and in favor of the Plaintiff, in the amount of $ 4,578,100.23, with interest at the legal rate from the date hereof;* n14

*IT IS EXPRESSLY DETERMINED that there is no just reason for delay and accordingly, under Superior Court Civil Rule 54(b), IT IS ORDERED that this judgment is final; and*

*IT IS FURTHER ORDERED that all sums paid or collected pursuant to this Order shall be deposited with the Court pending disposition of Defendants' counterclaims and further Order of this Court.* n15

[*24]

--------------- Footnotes - - - - - - - -

n14 I do not believe the numbers were contested but the figures might need adjustment for time.

n15 Counsel for Defendants have argued that this portion of the judgment is unique and somehow improper. It may possibly be, but it certainly makes common sense to have this Court-ordered "lien" imposed for the benefit of the Defendants. If the Defendants do not desire to make payment into Court, this provision could be stricken from the Order. The Court notes that it could be argued that this portion of the judgment affects finality, but the Court is prepared to live with that argument possibly looming.

------------ End Footnotes- - - - - -

In order to give counsel an opportunity to comment on the Order, I ask that they confer and that Mr. Reed present, as soon as possible, an order on notice, hopefully stipulated to by Ms. Clare as to amounts and form.

William T. Quillen