IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ENERGY TRANSPORTATION GROUP, )
INC.,                        )
                             )    C.A. NO. 05-422 (GMS)
            Plaintiff,       )
                             )
      v.                     )
                             )
SONIC INNOVATIONS, INC, et al.,  )    JURY TRIAL DEMANDED
                             )
            Defendants.      )


**PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY AS TO WILLIAM DEMANT HOLDING A/S AND OPPOSITION TO WILLIAM DEMANT HOLDING A/S'S MOTION TO DISMISS WILLIAM DEMANT HOLDING A/S FOR LACK OF PERSONAL JURISDICTION**

Edmond D. Johnson (No. 2257)
Thomas H. Kovach (No. 3964)
THE BAYARD FIRM
222 Delaware Ave.; Suite 900
Wilmington, DE 19801
ejohnson@bayardfirm.com
tkovach@bayardfirm.com
(302) 655-5000
Attorneys for Energy Transportation Group, Inc.

OF COUNSEL:

Thomas J. Scott, Jr.
Brian M. Buroker
Christopher C. Campbell
Hunton & Williams LLP
1900 K Street, N.W.; Suite 1200
Washington, DC 20006
(T) (202) 955-1500

Dated: November 15, 2005

## TABLE OF CONTENTS

Page

I.  PRELIMINARY STATEMENT.................................................................................1

II. ARGUMENT ........................................................................................................2

    A.  Legal Standards................................................................................................2

        1.  Motion to Dismiss Standard .......................................................................2

        2.  Standard for Request for Jurisdictional Discovery ......................................3

    B.  A *Prima Facie* Case of Personal Jurisdiction Has Been Established .....................3

        1.  WDH A/S's Actions Satisfy the Delaware Long-Arm Statute ....................3

            a.  Stream of commerce satisfies the Delaware Long Arm Statute.........4

            b.  Inducing infringement by a subsidiary that makes sales into Delaware meets the stream of commerce test ....................................4

            c.  WDH A/S induces infringement by its subsidiaries through concerted and orchestrated sales efforts directed throughout the United States, including Delaware ......................................................6

        2.  WDH A/S's Actions Satisfy the Due Process Clause...............................18

    C.  Jurisdictional Discovery Should Be Granted ..........................................................19

    D.  Plaintiff's Requested Discovery is Reasonable Given the Facts Already In Evidence............................................................................................................19

III. CONCLUSION...................................................................................................20

## TABLE OF AUTHORITIES

Page(s)

Cases

*Applied Biosystems, Inc. v. Cruachem, Ltd.,*
  772 F. Supp. 1458 (D. Del. 1991) ................................................................................ 2

*C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.,*
  911 F.2d 670 (Fed. Cir. 1990) ................................................................................... 7

*Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.,*
  395 F.3d 1315 (Fed. Cir. 2005) ........................................................................... 3, 19

*E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.,*
  197 F.R.D. 112 (D. Del. 2000), aff'd on other grounds, 269 F.3d 187 (3d Cir. 2001) ............. 3

*Fromberg, Inc. v. Thornhill,*
  315 F.2d 407 (5th Cir. 1963) ................................................................................... 8

*Hansen v. Neumueller GmbH,*
  163 F.R.D. 471 (D. Del. 1995) ................................................................................. 3

*In re Elonex Phase II Power Management Litigation,*
  Civ. Act. No. 01-082(GMS), 2003 WL 21026758 (D. Del. 2003) ........................................ 4, 17

*Johns Hopkins University v. CellPro,*
  894 F. Supp. 819 (D. Del. 1995) ............................................................................... 8

*Joint Stock Soc'y v. Heublein, Inc.,*
  936 F. Supp. 177 (D. Del. 1996) ............................................................................... 3

*Motorola, Inc. v. PC-Telegraph, Inc.,*
  58 F. Supp.2d 349 (D. Del. 1999) ........................................................................... 4, 18

*Oakley, Inc. v. Jofa AB,*
  287 F. Supp.2d 1111 (C.D. Cal. 2003) ..................................................................... 5, 18

*Philips Electronics North America Corp. v. Contec Corp.,*
  Civ. Act. 02-123-KAJ, 2004 WL 503602 (D. Del. March 11, 2004) ................................ passim

*Ronald A. Katz Technology Licensing, L.P. v. Verizon Communications, Inc.,*
  Civ. Act. No. 01-5627, 2002 WL 31356302 (E.D. Pa. Oct 16, 2002) ...................................... 19

*Sandvik AB v. Advent Int'l Corp.,*
  83 F.Supp. 442 (D. Del. 1999) ................................................................................. 3

*Sears, Roebuck & Co. v. Sears PLC,*
  744 F. Supp. 1297 (D. Del. 1990) ............................................................................. 8

*Sears, Roebuck and Co. v. Sears PLC,*
  752 F. Supp. 1223 (D. Del. 1990) ............................................................................. 8

*Sony Electronics, Inc. v. Soundview Technologies, Inc.,*
   *157 F. Supp.2d 190 (D. Conn. 2001)* ........................................................................ 8

*Tegal Corp. v. Tokyo Electron Co., Ltd.,*
   *248 F.3d 1376 (Fed. Cir. 2001)* ............................................................................... 8

*Telcordia Technologies, Inc. v. Alcatel S.A.,*
   *Civ. Act. 04-874(GMS), 2005 WL 1268061 (D. Del. May 27, 2005)* ......................... 3

*Thorn EMI North America, Inc. v. Micron Technology, Inc.,*
   *821 F. Supp. 272 (D. Del. 1993)* ..................................................................... 4, 5, 17

*United States v. Bestfoods,*
   *524 U.S. 51 (1998)* ................................................................................................. 7

**Statutes**

*35 U.S.C. §271(b)* .......................................................................................................... 7

*Del. Code Ann. tit. 10, §3104* ......................................................................................... 3

**Other Authorities**

*Encyclopedia Britannica Online* ..................................................................................... 7

*Merriam-Webster Online Dictionary* ............................................................................... 7

*Online Webster Dictionary* ............................................................................................. 7

*Wikipedia* ...................................................................................................................... 7

I.    **PRELIMINARY STATEMENT**

This is a patent infringement case.  Plaintiff Energy Transportation Group ("ETG") has

asserted claims against the defendants, including William Demant Holding A/S (WDH A/S"), for

infringement and/or inducement of infringement of two patents pertaining to the field of

programmable hearing aids.  WDH A/S wholly owns co-defendants Oticon A/S, Oticon, Inc.,

Bernafon AG, and Bernafon LLC and further owns 49% of American Hearing Aid Associates,

Inc. ("AHAA")[1] and 47% of AVADA, an American hearing aid distribution network.[2]  Oticon

A/S designs and manufactures infringing products,[3] Bernafon AG designs infringing products,[4]

Oticon, Inc. and Bernafon LLC sell infringing products in the United States,[5] AHAA is an

American hearing health care network which directs customers to providers who dispense the

infringing products,[6] and AVADA distributes hearing aids in the U.S., including the infringing

products.[7]  WDH A/S has moved for dismissal of the claims against WDH A/S on the asserted

basis that this court lacks personal jurisdiction over WDH A/S.  Plaintiff opposes this motion and

---

[1] First Declaration of Niels Jacobsen ("Jacobsen Decl.") (attached to Defendant William Demant Holding A/S's Brief in Support of its Motion to Dismiss William Demant Holding A/S for Lack of Personal Jurisdiction as Exhibit 1), ¶¶7, 8.

[2] Declaration of Brian M. Buroker ("Buroker Decl.") attached hereto as Exhibit A, ¶3 and Exhibit A1 thereto (screen shot of http://www.demant.com/eprise/main/Demant/_Announcements/General/00-11-22_GB.pdf, William Demant Holding A/S Announcement No. 2000-13 To the Copenhagen Stock Exchange, November 22, 2000, at ¶¶1, 8).

[3] Defendant William Demant Holding A/S's Brief in Support of its Motion to Dismiss William Demant Holding A/S for Lack of Personal Jurisdiction ("WDH A/S Br.") at 2, ¶¶2, 3.

[4] *Id.*

[5] *Id.*

[6] Buroker Decl., ¶4, 5 and Exhibits A2 and A3 thereto (screen shots of http://www.ahaanet.com/about_ahaa.asp and http://ahaa.via.infonow.net/locator/jsp/index.jsp).

[7] Buroker Decl., ¶3 and Exhibit A1 thereto (William Demant Holding A/S Announcement No. 2000-13 To the Copenhagen Stock Exchange, November 22, 2000 [http://www.demant.com/eprise/main/Demant/_Announcements/General/00-11-22_GB.pdf], at ¶¶1-4).

requests the opportunity for jurisdictional discovery.

Jurisdictional discovery, when timely sought, should be denied only when a contention of personal jurisdiction is clearly frivolous. This is hardly a frivolous case. Rather, the facts demonstrate a *prima facie* case of personal jurisdiction.

For example, contrary to WDH A/S'S attempt to imply that it only purchases other corporations and then simply sits back and financially benefits from the decisions and activities of those corporations – there is ample evidence that, in order to maximize its financial returns, WDH A/S actively induced those corporations toward certain activities, including the infringement of the patents in suit by sales of the infringing products in the United States, including Delaware. Thus, WDH A/S cannot credibly claim it had no inkling that some of its hearing aids would make their way into Delaware via well-established distribution channels (that it owned and controlled). These facts, as detailed below, satisfy both the Delaware long-arm statute and the U.S. Due Process Clause. Further, under the Federal Circuit's guidance, they certainly provide a basis for requiring jurisdictional discovery.

## II.    ARGUMENT

### A.    Legal Standards

#### 1.    Motion to Dismiss Standard

"When personal jurisdiction is contested and no evidentiary hearing is held, the plaintiff need only establish a prima facie case with the record viewed in the light most favorable to the plaintiff." *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F. Supp. 1458, 1462 (D. Del. 1991); *see also Philips Electronics North America Corp. v. Contec Corp.*, Civ. Act. 02-123-KAJ, 2004 WL 503602 at * 3 (D. Del. March 11, 2004) (attached hereto as Exhibit B); *E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 119-120 (D. Del.

2000), *aff'd on other grounds*, 269 F.3d 187 (3d Cir. 2001); *Joint Stock Soc'y v. Heublein, Inc.,* 936 F. Supp. 177, 192 (D. Del. 1996).

### 2.    Standard for Request for Jurisdictional Discovery

Jurisdictional discovery is to be denied only when a contention of personal jurisdiction is clearly frivolous. *See, e.g., Telcordia Technologies, Inc. v. Alcatel S.A.*, Civ. Act. 04-874(GMS), 2005 WL 1268061 at *9 (D. Del. May 27, 2005) (attached as Exhibit E); *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474-5 (D. Del. 1995); *Sandvik AB v. Advent Int'l Corp.*, 83 F.Supp. 442, 447 (D. Del. 1999); *accord Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1322-24 (Fed. Cir. 2005).

"[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim [of personal jurisdiction] is 'clearly frivolous.' [Citation omitted]" *Telcordia*, 2005 WL 1268061 at *9. As stated in *Hansen v. Neumueller GmbH*:

> [W]here, as here, the defendant seeks to prevent a plaintiff from obtaining discovery on the grounds that the court lacks personal jurisdiction, a plaintiff may be caught in the position of being unable to establish personal jurisdiction because the defendant refuses to respond to his discovery requests. In this circumstance, plaintiff must merely provide *some* [emphasis added] showing of personal jurisdiction to proceed with limited discovery on that narrow issue. [Citation omitted].

163 F.R.D. at 475.

### B.    A *Prima Facie* Case of Personal Jurisdiction Has Been Established

### 1.    WDH A/S's Actions Satisfy the Delaware Long-Arm Statute

Section 3104 of Title 10 of the Delaware Code establishes the parameters of personal jurisdiction over nonresidents. Section 3104 provides in relevant part:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in

person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
>
> …
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State; … .

### a.    Stream of commerce satisfies the Delaware Long Arm Statute

When a defendant purposefully avails itself of a stream of a commerce that delivers products into Delaware, Delaware courts have held the exercise of personal jurisdiction proper under 1304(c)(1), *see Philips,* 2004 WL 503602 at *3-4, under 1304(c)(3), *see Thorn EMI North America, Inc. v. Micron Technology, Inc.*, 821 F. Supp. 272, 275 (D. Del. 1993), and under 1304(c)(4), *see In re Elonex Phase II Power Management Litigation*, Civ. Act. No. 01-082(GMS), 2003 WL 21026758 at *3 (D. Del. 2003) (attached hereto as Exhibit C); *Motorola, Inc. v. PC-Telegraph, Inc.*, 58 F. Supp.2d 349, 356-7 (D. Del. 1999).

As these cases hold, whether a company is subject to personal jurisdiction under the Delaware Long Arm Statute and Due Process is not determined by whether the company labels itself a "holding" company but is rather determined by the company's activities. In the present case, WDH A/S not only availed itself of streams of commerce by encouraging its subsidiaries to utilize them (from which WDH A/S profited), but in fact WDH A/S owned and controlled many of the streams of commerce/chains of distribution directed toward the U.S. and Delaware.

### b.    Inducing infringement by a subsidiary that makes sales into Delaware meets the stream of commerce test

As *Philips* and *Thorn EMI* highlight, one party can place its goods into the stream of

commerce by inducing others to make the direct sales. *See Philips,* 2004 WL 503602 at *3-4;

*Thorn EMI*, 821 F. Supp. at 275. Here, ETG is alleging that WDH A/S, as the "holding

company" is inducing its subsidiaries to make direct sales that occur in Delaware. Other courts

facing this issue have found that acts of inducing infringement were sufficient to establish that a

"holding company" caused goods to be placed into the stream of commerce such that exercise of

personal jurisdiction was proper. In *Oakley, Inc. v. Jofa AB*, 287 F. Supp.2d 1111 (C.D. Cal.

2003), the Central District of California held that inducing infringement by subsidiaries would

subject the parent company to the exercise of personal jurisdiction. *Id.* at 1116-7. The court

noted:

> The Hockey Company [the alleged "holding company"] also argues that
> even if Oakley could assert a claim against it for inducing infringement by
> its subsidiaries and even if its subsidiaries are subject to personal
> jurisdiction in California, it does not follow that it is subject to personal
> jurisdiction in California because due process still mandates certain
> minimum contacts on its behalf before it can be haled into a court in
> California.
>
> The Court is not persuaded. …
>
> Here, when viewed in the light of the allegations and the assertions in the
> declarations, Oakley has stated all of the necessary ingredients for an
> exercise of jurisdiction consonant with due process: The Hockey
> Company acted in consort with other Defendants to place the accused
> visor in the stream of commerce, The Hockey Company knew that the
> accused visor was being sold in California, and their conduct and
> connections with the forum state were such that they should reasonably
> have anticipated being brought into court here. *In fact, the fact situation
> is more compelling here than in Beverly Hills Fan Co. given the
> peculiar relationship between The Hockey Company and the other
> Defendants, which are its subsidiaries.*

*Id.* at 116-7 (emphasis added).

Similarly, in *Sonoco Products Co. v. Inteplast Corp.*, 867 F. Supp. 352 (D. S.C. 1994),

the South Carolina district court held that the holding company accused of inducing

infringement, which appointed distributors for its infringing subsidiary's product distribution, was subject to the exercise of personal jurisdiction under a stream of commerce type of theory. *Id.* at 355. Accordingly, to establish a *prima facie* jurisdictional basis under the stream of commerce theory, ETG needs only to present a *prima facie* case of induced infringement by WDH A/S of one or more of its subsidiaries that place goods into the stream of commerce that leads to Delaware.

        c.        **WDH A/S induces infringement by its subsidiaries through concerted and orchestrated sales efforts directed throughout the United States, including Delaware**

In the present case, WDH A/S owns the following interests in entities who have engaged in the following infringing activities:

| Defendant | WDH A/S's Ownership | Defendant's Infringing Activities |
|---|---|---|
| Oticon A/S | 100% | Designs and manufactures infringing products. |
| Oticon, Inc. | 100% | Sells infringing products in the U.S. |
| Bernafon AG | 100% | Designs infringing products. |
| Bernafon LLC | 100% | Sells infringing products in the U.S. |
| AHAA | 49% | Directs customers to U.S. providers who distribute infringing products. |
| AVADA | 47% | Distributes infringing products in the U.S. |

Oticon A/S, Oticon, Inc., Bernafon AG, and Bernafon LLC do not contest this Court's jurisdiction over them.[8]  AHAA and AVADA are not presently defendants in this action.[9]

Throughout its motion to dismiss, WDH A/S describes itself as a holding company – a term commonly defined as a company that owns enough stock in another company to be able to *control* that other company.[10]  WDH A/S also describes itself as a parent company[11] – a term that WDH A/S itself notes in its brief has been described by the U.S. Supreme Court to denote a company that has "*control* [emphasis added] through ownership of another corporation's stock."[12]  Thus, it is undisputed that WDH A/S has control over its subsidiaries.

For inducement of infringement, the question becomes whether that control was exercised such to cause, urge, or encourage its subsidiaries to make, use, offer to sell, or sell within the U.S. or import into the U.S. any of the infringing products.[13]  In its motion to dismiss, WDH A/S discusses the theories of alter ego and agency – theories which allow one company to be

---

[8] WDH A/S Br. at 1.

[9] Moreover, a patentee can choose to only sue the party accused of inducing infringement without naming the direct infringer in the suit. *See generally C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*, 911 F.2d 670 (Fed. Cir. 1990) (permitting suit against party accused of induced infringement without naming direct infringers); 35 U.S.C. §271(b).  Here, ETG has chosen to sue WDH A/S as the inducing infringer without naming AHAA or its member entities.

[10] *See, e.g.,* Wikipedia [Online Encyclopedia] (http://en.wikipedia.org/wiki/Holding_company); Encyclopedia Britannica Online (http://www.britannica.com/ebc/article-9367217?query=holding%20company&ct=); Merriam-Webster Online Dictionary (http://www.m-w.com/cgi-bin/dictionary?book=Dictionary&va=holding+company); Online Webster Dictionary [Online] (http://www.webster-dictionary.net/definition/holding%20company).

[11] WDH A/S Br. at 3.

[12] WDH A/S Br. at 11 (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)).

[13] Moreover, WDH A/S must have known of the patents-in-suit, which ETG has pled in its First Amended Complaint.  On information and belief, WDH A/S, as a member of the Hearing Implementation Manufacturers Patent Partnership (HIMPP), became aware of the patents-in-suit many years ago.  One of the areas sought in jurisdictional discovery relates to WDH A/S's involvement in HIMPP and knowledge of the patents-in-suit through HIMPP.

responsible for the acts of another company. Plaintiff is not attempting to hold WDH A/S

responsible solely for its subsidiaries' acts of direct infringement – rather, Plaintiff seeks to hold

WDH A/S responsible for *its own acts of inducing infringement*.[14]

Acts of inducing infringement include causing, urging, encouraging, or aiding another's

direct infringement. *Tegal Corp. v. Tokyo Electron Co., Ltd.*, 248 F.3d 1376, 1378-9 (Fed. Cir.

2001). Inducing infringement "is as broad as the range of actions by which one in fact causes, or

urges, or encourages, or aids another to infringe a patent." *Id.* at 1378-9; *Fromberg, Inc. v.

Thornhill*, 315 F.2d 407, 411 (5th Cir. 1963); *Baut v. Pethick Const. Co.*, 262 F. Supp. 350, 362

(M.D. Pa. 1966); *Sony Electronics, Inc. v. Soundview Technologies, Inc.*, 157 F. Supp.2d 190,

201 (D. Conn. 2001).

Unlike the parent company in *Tegal*, WDH A/S is not a company which simply invests in

multiple companies involving diverse industries and passively allows those subsidiaries to direct

their own activities and product distribution without urging, encouragement, or aid by WDH A/S.

WDH A/S is not a corporation which, upon the filing of this lawsuit, learned to its surprise that

its subsidiaries have been distributing products into the U.S., including Delaware. Rather, WDH

A/S has purchased companies which primarily operate in a singular industry (hearing aids),

which are complementary businesses (*i.e.*, are able to function together in a complementary

manner), and which, under its direction, operate with related purpose, strategy, and activities.

---

[14] While alter ego and agency are theories separate and apart from the cause of action of inducing
infringement, limited agency theory (as opposed to general agency) examines whether the parent
company directed and controlled its subsidiary in the accomplishment of a single act (*Sears, Roebuck and
Co. v. Sears PLC*, 752 F. Supp. 1223, 1225-26 (D. Del. 1990); *Sears, Roebuck & Co. v. Sears PLC*, 744
F. Supp. 1297, 1306 (D. Del. 1990)); however, inducing infringement is broader than controlling and
directing and includes causing, urging, and encouraging another's direct infringement. *Johns Hopkins
University v. CellPro*, 894 F. Supp. 819, 835 (D. Del. 1995).

WDH A/S has urged, encouraged, and aided its subsidiaries in the sale within the U.S. and importation into the U.S., including Delaware, of the infringing products.

The declaration of Niels Jacobsen that "William Demant Holding A/S does not control the *day to day activities* [emphasis added] of its subsidiaries, including Oticon A/S, Oticon, Inc., Bernafon AG, and Bernafon LLC" implicitly admits that WDH A/S does ***control*** activities of its subsidiaries other than those activities which Mr. Jacobsen considers day to day activities, whatever that may be in his mind.[15]

On its website, WDH A/S repeatedly refers to "The William Demant Holding Group." The website describes the activities of the "William Demant Holding Group" as development, manufacture, and sales of products and equipment designed to aid the hearing and communication of individuals and illustrates the "Group" and its shared functions with the following image that includes William Demant Holding A/S:[16]



_____

[15] Jacobsen Decl., ¶29.  Plaintiff objects to paragraph 29 of Mr. Jacobsen's declaration as conclusory, not setting forth a factual matter, vague, ambiguous, and lacking specificity sufficient to support a charge of perjury.  What "day to day activity" may mean in Mr. Jacobsen's mind is unknown.  Perhaps weekly decisions or decisions made every few days are outside of the "day to day activity" referenced by Mr. Jacobsen.

[16] Buroker Decl., ¶6 and Exhibit A4 thereto (screen shot of http://www.demant.com/eprise/main/Demant/com/SEC_AboutUs/CNT01_AboutUs).

In short, WDH A/S and its subsidiaries are not simply unrelated companies which have no concern for the activities of the others without any determination of a course of action from WDH A/S. Rather, they act as a group which shares related purpose, strategy, and activities. It is clear that WDH A/S considers itself to be the controlling and an active member of that Group and represents its own activities to be activities of the Group and vice versa.

Although it was William Demant Holding A/S that was founded in 1904,[17] the company states in its website that the "Group" was founded in 1904.[18] Similarly, Defendant's website states, "[I]n January [1995] the *Group* acquired Bernafon… ."[19] However, it was Defendant *WDH A/S* (William Demant Holding A/S) that acquired Bernafon.[20] The website also proclaims, "[i]n 2000, the William Demant Holding *Group* acquired four major companies that have *strengthened the distribution of hearing aids manufactured by both Oticon and Bernafon*."[21] In fact in 2000, *WDH A/S* (William Demant Holding A/S) acquired AVADA,[22] an American hearing aid distribution network which WDH A/S boasted strengthened distribution in

---

[17]  Buroker Decl., ¶7 and Exhibit A5-1 thereto (screen shot of http://www.demant.com/eprise/main/Demant/com/SEC_AboutUs/CNT01_Foundation (stating, in the screenshot, "When Hans Demant founded Oticon in 1904, …"); and ¶7 and Exhibit A5-2 thereto (screen shot of http://www.demant.com/eprise/main/Demant/com/SEC_AboutUs/CNT01_FAQ).

[18]  Buroker Decl., ¶8 and Exhibit A6 thereto (screen shot of http://www.demant.com/eprise/main/Demant/com/SEC_AboutUs/CNT01_History).

[19]  *Id.* (emphasis added).

[20]  *See, e.g.*, Jacobsen Decl., ¶¶7, 8.

[21]  Buroker Decl., ¶8 and Exhibit A6 thereto (screen shot of http://www.demant.com/eprise/main/Demant/com/SEC_AboutUs/CNT01_History) (emphasis added).

[22]  Buroker Decl., ¶9 and Exhibit A7 thereto (screen shot of http://www.demant.com/eprise/main/Demant/com/SEC_Investor/050817InvestorPresentation.pdf, William Demant Holding A/S Investor Presentation, August 2005, wherein at p.10 it is stated, "AVADA and AHAA acquired in Nov 2000 and Aug 2001, respectively.").

North America.[23]  WDH A/S describes itself as the "Group:"[24]

> "When did William Demant Holding change to its current name from
> Oticon Holding A/S?
> At the annual general meeting in May, 1997 it was decided to change the
> name of the parent company from Oticon Holding A/S to **William
> Demant Holding A/S**, due to the fact that it was considered
> disadvantageous to use the same name, both for **the Group**, and for one of
> its businesses [Oticon].  The name - William Demant Holding A/S -
> represents a return to the company's origins:  …"

The shared purpose of the Group is reflected by its statement of purpose:

> The William Demant Holding Group develops, manufactures and sells
> products and equipment designed to aid the hearing and communication of
> individuals.[25]

That nearly singular, shared focus is reflected by the fact that 89% of the Group's net

revenue is generated by hearing aids (with related fields of diagnostics instruments and personal

communication comprising 11%).[26]  As WDH A/S boasts, "Group undertakings collaborate in

many areas and to a wide extent also share resources and technologies."[27]

Although WDH A/S has stated that it does not sell nor offer for sale any goods or

---

[23] Buroker Decl., ¶3 and Exhibit A1 thereto (screen shot of
http://www.demant.com/eprise/main/Demant/_Announcements/General/00-11-22_GB.pdf, William
Demant Holding A/S Announcement No. 2000-13 To the Copenhagen Stock Exchange, November 22,
2000, at ¶¶1, 8).

[24] Buroker Decl., ¶7 and Exhibit A5 thereto (screen shot of
http://www.demant.com/eprise/main/Demant/com/SEC_AboutUs/CNT01_FAQ) (emphasis added).

[25] Buroker Decl., ¶6 and Exhibit A4 thereto (screen shot of
http://www.demant.com/eprise/main/Demant/com/SEC_AboutUs/CNT01_AboutUs).

[26] Buroker Decl., ¶9 and Exhibit A7 thereto (screen shot of
http://www.demant.com/eprise/main/Demant/com/SEC_Investor/050817InvestorPresentation.pdf,
William Demant Holding A/S Investor Presentation, August 2005, at p.5).

[27] Buroker Decl., ¶6 and Exhibit A4 thereto (screen shot of
http://www.demant.com/eprise/main/Demant/com/SEC_AboutUs/CNT01_AboutUs).

services,[28] its 2003 annual report, 2004 annual report, and 2005 first half year report reflect that

WDH A/S stated it had spent, over the past two and half years, over $600 million dollars for

research and development and distribution.[29] This highlights the fact that WDH A/S does not

distinguish its subsidiaries' activities from its own and vice versa because WDH A/S actively

urges, encourages, and aids its subsidiaries in their business activities.

Thus, it is clear that WDH A/S by its ownership interests has the power to urge,

encourage, and aid its subsidiaries in their activities and that WDH A/S considers itself part of

the Group that: "develops, manufactures and sells products and equipment designed to aid the

hearing and communication of individuals," [30] "collaborate in many areas and to a wide extent

also share resources and technologies,"[31] and that have "shared functions" of "operational

activities" and "distribution activities." [32]

---

[28] Jacobsen Decl., ¶5.

[29] Buroker Decl., ¶9 and Exhibit A7 thereto (screen shot of
http://www.demant.com/eprise/main/Demant/com/SEC_Investor/050817InvestorPresentation.pdf,
William Demant Holding A/S Investor Presentation, August 2005, pp. 7, 8),  ¶10 and Exhibit A8 thereto
(screen shot of

http://www.demant.com/eprise/main/Demant/com/SEC_Investor/050307InvestorPresentation.pdf,
Annual Report 2004, William Demant Holding A/S Investor Presentation, March 2005, at p.7), and ¶11
and Exhibit A9 thereto (screen shot of

http://www.williamdemant.com/eprise/main/Demant/com/SEC_Investor/2004_03_InvestorPresentation.p
df, Annual Report 2003, William Demant Holding A/S Investor Presentation, March/April 2004 at page
7). DKK Denmark Kroner converted to USD United States Dollars using conversion rate of 1 DKK =
0.157321 USD of November 10, 2005;  conversions calculated with currency converter at
http://www.xe.com/.

[30] Buroker Decl., ¶6 and Exhibit A4 thereto (screen shot of
http://www.demant.com/eprise/main/Demant/com/SEC_AboutUs/CNT01_AboutUs).

[31] *Id.*

[32] *Id.*

As noted previously herein, WDH A/S repeatedly refers to itself as part of the "The William Demant Holding Group." Its website boasts that the "Group" "sells products," "collaborate in many areas" and "to a wide extent also share resources and technologies" and provides the following descriptive image which notes that the Group "shares functions" of "[o]perational activities" and "[d]istribution activities:"[33]



As WDH A/S's website proclaims, "In 2000, the William Demant Holding Group acquired four major companies that have *strengthened the distribution of hearing aids manufactured by both Oticon and Bernafon*."[34] In 2000, *WDH A/S* (not the "Group," not a subsidiary) acquired AVADA,[35] a "group of independent American hearing aid dispensers" (distribution network) which WDH A/S boasted strengthened distribution in North America.[36]

---

[33] *Id.*

[34] Buroker Decl., ¶8 and Exhibit A6 thereto (screen shot of http://www.demant.com/eprise/main/Demant/com/SEC_AboutUs/CNT01_History) (emphasis added).

[35] Buroker Decl., ¶9 and Exhibit A7 thereto (screen shot of http://www.demant.com/eprise/main/Demant/com/SEC_Investor/050817InvestorPresentation.pdf, William Demant Holding A/S Investor Presentation, August 2005, wherein at p.10 it is stated, "AVADA and AHAA acquired in Nov 2000 and Aug 2001, respectively.").

[36] Buroker Decl., ¶3 and Exhibit A1 thereto (screen shot of http://www.demant.com/eprise/main/Demant/_Announcements/General/00-11-22_GB.pdf, William Demant Holding A/S Announcement No. 2000-13 To the Copenhagen Stock Exchange, November 22, 2000, at ¶¶1, 8).

At the time of the acquisition in November 2000, AVADA had 163 clinics.[37]  ***WDH A/S***

acquired 47% ownership of the joint venture.[38]  The agreement required that the clinics "mainly

sell OEM[39]-products from the William Demant companies."[40]  The agreement also "infused"

AVADA with "liquid capital in the amount of USD 10-13 million ***for acquiring additional***

***clinics*** under the AVADA brand."[41]  WDH A/S noted that[42] "the cooperation with the AVADA

Group will strengthen the position of ***William Demant Holding A/S*** on the ***North American***

***market***, and the newly established joint venture is expected to be a good basis for future growth."

(Emphasis added).

       Thus, by purchasing an American group of hearing aid dispensing clinics, infusing that

group with $10-13 million to acquire additional clinics, and requiring that those clinics primarily

sell "William Demant companies[']" hearing aids, WDH A/S – by this transaction alone – urged,

encouraged, and aided the sell and offer to sell of the infringing products in the U.S.

---

[37] *Id.* at ¶2.

[38] *Id.* at ¶4.

[39] Original Equipment Manufacturer.

[40] Buroker Decl., ¶3 and Exhibit A1 thereto (screen shot of
http://www.demant.com/eprise/main/Demant/_Announcements/General/00-11-22_GB.pdf, William
Demant Holding A/S Announcement No. 2000-13 To the Copenhagen Stock Exchange, November 22,
2000, at ¶3).

[41] Id.; Buroker Decl., ¶12 and Exhibit A10 thereto (screen shot of
http://www.audiologyonline.com/interview/displayarchives.asp?interview_id=31, Beck, Interview with
Steve Barlow Management Team Member, AVADA LLC, Audiology Online, Feb. 2, 2001) (emphasis
added).

[42] *Id.* at ¶8.

In 2001, WDH A/S purchased 49% of American Hearing Aid Associates, Inc.

("AHAA").[43]  AHAA is a "US wholesale distributor" of hearing aids.[44]  At the time of the

purchase, over 1,300 practitioners, representing over 1,800 sites, were affiliated with AHAA.[45]

WDH A/S made the purchase in order "[t]o improve distribution on the North American

market[.]"[46]  At the time of the purchase, WDH A/S noted, "Today the sale of William Demant

products to AHAA's members is moderate, but sales are expected to increase in the years to

come."[47]  To further ensure that AHAA would be following its direction (or urging,

encouragement, or aid), WDH A/S placed its CEO and president, Niels Jacobson,[48] on AHAA's

board of directors,[49] just as WDH A/S has done with several of its subsidiaries[50] despite WDH

---

[43] Buroker Decl., ¶13 and Exhibit A11 thereto (screen shot of
http://www.reports.demant.com/Investor/report_01/directors_report.htm, William Demant Holding A/S
2001 Directors' Report, p.2);  Defendant William Demant Holding A/S's Motion to Dismiss William
Demant Holding A/S for Lack of Personal Jurisdiction, p. 4, n. 5.

[44] Buroker Decl., ¶13 and Exhibit A11 thereto (screen shot of
http://www.reports.demant.com/Investor/report_01/directors_report.htm, William Demant Holding A/S
2001 Directors' Report, p.2).

[45] Buroker Decl., ¶14 and Exhibit A12 thereto (screen shot of
http://www.audiologyonline.com/news/displaynews.asp?news_id=275, *American Hearing Aid
Associates, Inc. and William Demant Holding Group Announce Investment Agreement*, Audiology
Online, August 24, 2001).

[46] Buroker Decl., ¶13 and Exhibit A11 thereto (screen shot of
http://www.reports.demant.com/Investor/report_01/directors_report.htm, William Demant Holding A/S
2001 Directors' Report, p.2).

[47] *Id.*

[48] Jacobsen Decl., ¶1.

[49] Buroker Decl., ¶21 and Exhibit A19 thereto (report from Lexis' state corporate records).  Plaintiff also
requests that the Court take judicial notice of such fact since the fact is capable of accurate and ready
determination by resort to sources whose accuracy cannot reasonably be questioned (Lexis and the
Connecticut Secretary of State).

[50] Jacobsen Decl., ¶¶22, 23.

A/S's attempt to imply that it passively owns these subsidiaries without active participation. In 2004, WDH A/S explained that its position on growth included "strong focus on developing distribution power through … strategic acquisitions" and that it's "[m]ost important acquisitions" for "[e]xpansion of distribution" included "AVADA" and "AHAA."[51]

WDH A/S's substantial efforts to increase sales in the U.S. were successful. In 2002, WDH A/S reported, "Revenue in North America grew 21% (local currencies) – combination of … and acquisition of AHAA in August 2001"[52] and, "Satisfactory development in the AHAA joint venture – healthy inflow of new associated hearing care professionals."[53] The following year (2003) North American hearing aid sales increased an additional 11%.[54] In 2004, North American sales continued to increase significantly – with increased hearing aid sales of 20%.[55] In 2005, North American hearing aid sales increased another 5%.[56]

It is disingenuous for WDH A/S to purchase two extensive U.S. networks of hearing aid

---

[51] Buroker Decl., ¶15 and Exhibit A13 thereto (screen shot of
http://www.demant.com/eprise/main/Demant/com/SEC_Investor/2004_04_InvestorPresentation.pdf,
William Demant Holding A/S, Handelsbanken Tech Lunch, 20 April 2004m at p.18).

[52] Buroker Decl., ¶16 and Exhibit A14 thereto (screen shot of
http://www.williamdemant.com/eprise/main/Demant/com/SEC_Investor/030301AnnualReport.pdf,
Annual Report 2002, William Demant Holding A/S, March 2003, at p.4).

[53] *Id.* at p.6.

[54] Buroker Decl., ¶11 and Exhibit A9 thereto (screen shot of
http://www.williamdemant.com/eprise/main/Demant/com/SEC_Investor/2004_03_InvestorPresentation.p
df, Annual Report 2003, William Demant Holding A/S Investor Presentation, March/April 2004 at page
7).

[55] Buroker Decl., ¶10 and Exhibit A8 thereto (screen shot of
http://www.demant.com/eprise/main/Demant/com/SEC_Investor/050307InvestorPresentation.pdf,
Annual Report 2004, William Demant Holding A/S Investor Presentation, March 2005, at p.7).

[56] Buroker Decl., ¶9 and Exhibit A7 thereto (screen shot of
http://www.demant.com/eprise/main/Demant/com/SEC_Investor/050817InvestorPresentation.pdf,
William Demant Holding A/S Investor Presentation, August 2005, at page 6).

distributors, contractually require the sale in the U.S. of Oticon and Bernafon products, expend at least $10-15 million dollars for the acquisition of additional U.S. clinics, boast that its efforts will increase its U.S. sales (which it did) – and then claim in the present suit that it has not even encouraged Oticon/Bernafon sales in the U.S.[57]

Further, this intentional expansion of sales in the U.S. foreseeably resulted in sales in Delaware. As noted previously, two expansive U.S networks of distributors were purchased – with the intent and funding for expansion. AHAA's website directs citizens to three (3) Delaware providers,[58] one of which advertises that he distributes Oticon hearing aids[59] and another of which (Bayside Health Association) is represented by Oticon A/S to be an Oticon hearing aid distributor.[60] Accordingly, since AHAA sells and offers for sale the infringing hearing aid products, WDH A/S's encouragement of AHAA to distribute the infringing products forseeably resulted in sales in Delaware.

WDH A/S, having induced infringement by its subsidiaries, thus placed infringing products in the stream of commerce leading to Delaware and thus should have reasonably anticipated being subject to personal jurisdiction under the Delaware Long Arm Statute. *see Philips,* 2004 WL 503602 at *3-4, *Thorn EMI,* 821 F. Supp. at 275; *In re Elonex Phase II Power*

---

[57] ETG's contention that WDH A/S in fact uses that power to urge, encourage, or aid its subsidiaries to make, use, sell, offer to sell, or import any of the infringing products in/into the U.S. is certainly nonfrivolous at this point, deserving of jurisdictional discovery.

[58] Buroker Decl., ¶17 and Exhibit A15 thereto (screen shot of search results for providers near Dover, Delaware from http://ahaa.via.infonow.net/locator/jsp/index.jsp).

[59] Buroker Decl., ¶18 and Exhibit A16 thereto (screen shot of http://www.delawarehearingconsultants.com/skillsexpertise/).

[60] Buroker Decl., ¶19 and Exhibit A17 thereto (screen shot of http://hcl.oticon.us/(ro2dys55z50mom550l551o45)/form.aspx and ¶20 and Exhibit A18 thereto http://hcl.oticon.us/(ro2dys55z50mom550l551o45)/viewMap.aspx (Bayside Health Association).

*Management Litigation*, 2003 WL 21026758 at *3; and *Motorola*, 58 F. Supp.2d at 356-7.

### 2.    WDH A/S's Actions Satisfy the Due Process Clause

When a defendant purposefully avails itself of a stream of a commerce that delivers products into Delaware, the exercise of personal jurisdiction is consistent with Due Process. *See, e.g., Philips*, 2004 WL 503602 at *3.

Moreover, the "holding" company cannot avoid the jurisdictional consequences of its activities directed toward a State simply because the company holds ownership interest in the directly infringing company or the chains of distribution. *Oakley*, 287 F. Supp.2d at 1114; *Sonoco Products*, 867 F. Supp. at 355 (D. S.C. 1994). The exercise of personal jurisdiction over WDH A/S, which purchased and controlled distribution of its subsidiaries' chains of distribution that lead to Delaware, is consistent with the requirements of Due Process.

WDH A/S's argument that it would be unduly burdensome for it, a company with just nine employees all of whom reside outside the U.S., to defend this action in Delaware is without merit. As stated in *Oakley*:

> The burden on The Hockey Company [the holding company[ is not particularly significant. The Hockey Company is incorporated in Delaware and has its principal place of business in Canada. Thus, The Hockey Company will have to travel far to California to defend itself. However, it is recognized that "'progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome.'" *Id.* at 1569 (citing *World-Wide Volkswagen*, 444 U.S. at 294, 100 S.Ct. at 565). Also, The Hockey Company shares with the other defendants in suit many of its witnesses and other sources of proof [including that the officers for The Hockey Company are also officers for one of the subsidiaries/co-defendants]. Since these witnesses will have to come to California anyway, is it not unreasonable to require them to present themselves to represent The Hockey Company. Accordingly, the Court concludes that the burden on The Hockey Company is not sufficiently compelling to outweigh Plaintiff's and California's interests.

*See Oakley,* 287 F. Supp.2d at 1114. Here, WDH A/S admits in its motion to dismiss: "And, as a

manufacturer, seller, and/or designer, these defendants [its subsidiaries] can provide any potentially relevant documents or witnesses in this action." Thus, since its subsidiaries will already be providing most relevant witnesses, any burden due to witness production should be minimal to WDH A/S. Additionally, as reflected by the WDH A/S's annual reports attached hereto, WDH A/S obtains net profits of several hundred million dollars annually; thus, any monetary burden, particularly in light of the minimal witness production burden, upon WDH A/S in defending this action in Delaware will not be particularly burdensome to this defendant.

C.    **Jurisdictional Discovery Should Be Granted**

Since the claim of personal jurisdiction over WDH A/S is not clearly frivolous (in fact, a *prima facie* case has been established) at this pre-discovery stage of the proceedings, jurisdictional discovery should be granted to permit discovery pertinent to the jurisdictional issues raised by WDH A/S in order to allow Plaintiff to respond to those issues at such evidentiary or pre-trial hearing that may later be set on the jurisdictional issue upon WDH A/S's reassertion, if any, of such complaint. *See, e.g., Commissariat,* 395 F.3d at 1315; *cf. Ronald A. Katz Technology Licensing, L.P. v. Verizon Communications, Inc.*, Civ. Act. No. 01-5627, 2002 WL 31356302 at *2-3 (E.D. Pa. Oct 16, 2002) (attached hereto as Exhibit D) (permitting discovery on the issue of inducing infringement of the holding company's subsidiaries even though there was no evidence of alter ego and agency theory of infringement).

D.    **Plaintiff's Requested Discovery is Reasonable Given the Facts Already In Evidence**

Plaintiff's proposed discovery is tailored appropriately according to the issues and evidence that are relevant to whether this Court may exercise personal jurisdiction over WDH A/S. A copy a letter dated November 8, 2005 to WDH A/S's attorney – setting forth the desired discovery – is attached hereto as Exhibit A20. WDH A/S's response, declining to permit any

discovery, is also attached hereto as Exhibit A21.

## III.    CONCLUSION

Courts are to deny jurisdictional discovery only when a contention of personal jurisdiction is clearly frivolous. This is hardly a frivolous case; rather a *prima facie* case has been made. WDH A/S cannot credibly claim it had no inkling that some of its hearing aids would make their way into Delaware via well-established distribution channels (that it owned and controlled). WDH A/S purchased two extensive U.S. networks of hearing aid distributors, contractually required the sale in the U.S. of Oticon and Bernafon products, expended least $10-15 million dollars for the acquisition of additional U.S. clinics, and boasted that its efforts will increase its U.S. sales (which it did). One of those U.S networks of distributors directs citizens to three (3) Delaware providers, one of which advertises that he distributes Oticon hearing aids and another of which is represented by Oticon A/S to be an Oticon hearing aid distributor.

In light of Oticon A/S's and AHAA's direction of customers to Delaware distributors, WDH A/S's substantial efforts and investments toward U.S. distribution and expansion of distribution – including its network's direct referral of customers to Delaware hearing aid distributors – was likely to lead to the sales of the infringing products in Delaware and, thus, WDH A/S should not be surprised to be haled into court in Delaware.

THE BAYARD FIRM

Edmond D. Johnson (No. 2257)
Thomas H. Kovach (No. 3964)
222 Delaware Ave.
Suite 900
Wilmington, DE 19801

ejohnson@bayardfirm.com
tkovach@bayardfirm.com
(302) 655-5000
Attorneys for Energy Transportation Group, Inc.

OF COUNSEL:

Thomas J. Scott, Jr.
Brian M. Buroker
Christopher C. Campbell
Hunton & Williams LLP
1900 K Street, N.W.; Suite 1200
Washington, DC 20006
(T) (202) 955-1500

Dated:  November 15, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of November, 2005, I caused a copy of the foregoing PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY AS TO WILLIAM DEMANT HOLDING A/S AND OPPOSITION TO WILLIAM DEMANT HOLDING A/S'S MOTION TO DISMISS WILLIAM DEMANT HOLDING A/S FOR LACK OF PERSONAL JURISDICTION to be served via electronic service through the Court system upon the following counsel of record:

Richard W. Horwitz, Esquire
Potter Anderson & Corroon LLP
1313 N. Market St., 6th Fl.
Wilmington, DE 19801

N. Richard Powers, Esquire
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Richard K. Herrmann, Esquire
Morris James Hitchens & Williams
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801

Barry M. Klayman, Esquire
Wolf, Block, Schorr and Solis-Cohen LLP
Wilmington Trust Center
1100 North Market Street, Suite 1001
Wilmington, DE 19801

Mary B. Graham, Esquire
Maryellen Noereika, Esquire
Donald E. Reid, Esquire
Thomas C. Grimm
Leslie A. Polizoti
Morris Nichols Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801

Edmond D. Johnson (ej2257)

608850v1