# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d
2003 WL 21026758 (D.Del.)
(Cite as: 2003 WL 21026758 (D.Del.))

Page 1

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
In re: ELONEX PHASE II POWER
MANAGEMENT LITIGATION
**Nos. 01-082 GMS, 01-083 GMS, 01-084 GMS, 01-
085 GMS, 01-086 GMS, 01-087 GMS,
01-088 GMS, 01-089 GMS, 01-104 GMS.**

May 6, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On February 13, 2001, the plaintiffs, Elonex I.P.
Holdings, Ltd. and EIP Licensing, B.V. (collectively
"Elonex"), filed this action against certain companies
that manufacture and sell computer systems or
computer monitors. [FN1] The complaint alleges
infringement of U.S. Patent Numbers 5,389,952 ("the
'952 patent"), 5,648,799 ("the '799 patent"), and
5,649,719 ("the '719 patent"). The lawsuit relates to
technology that concerns power management in
computer monitors.

> FN1. In December 1998, Elonex I.P.
> Holdings Ltd. and Elonex plc filed a related
> lawsuit against another group of defendants
> on substantially the same grounds ("Elonex
> Phase I litigation").

On May 21, 2001, Elonex requested entry of default
against the defendant Jean Co., Ltd. ("Jean"). The
Clerk of the Court entered default against Jean on
June 18, 2001. On January 31, 2003, Elonex then
moved for entry of default judgment against Jean. On
February 20, 2002, counsel entered an appearance on
behalf of Jean.

Presently before the court is Jean's motion to dismiss
for lack of personal jurisdiction. For the following
reasons, the court will deny this motion.

II. BACKGROUND

Jean is an international monitor and electronics
manufacturer, with its principle place of business in
Taipei, Taiwan. In 2001, Jean had more than $316
million in worldwide sales.

From March 1995 until April 1996, Elonex alleges
that Jean shipped 404,855 monitors to the United
States. Since 1998, ViewSonic Corporation and
eMachines, Inc.--two United States monitor
companies with nationwide re-seller networks-- have
been among Jean's biggest customers. According to
Jean's 1999 Annual Report, ViewSonic alone
accounted for 22.91% of Jean's worldwide monitor
sales in 1998. In 1999, ViewSonic purchased 30.4%
of Jean's total 1999 monitor sales. In 2001,
ViewSonic purchased 39.7% of Jean's total monitor
sales. Likewise, in 1999, eMachines purchased
12.94% of Jean's worldwide monitor sales.

Additionally, both ViewSonic and eMachines have
well-established retail distribution networks.
ViewSonic monitors are available from retailers such
as Best Buy, Office Depot, and CompUSA. Likewise,
eMachines monitors are sold in Delaware at Best
Buy, Office Depot, and Circuit City. Both ViewSonic
and eMachines also sell monitors directly to
consumers via their own internet websites. Thus, the
Jean monitors sold to ViewSonic and eMachines are
resold in Delaware and throughout the United States.

Furthermore, Delaware purchasers of Jean monitors
can download monitor software and obtain customer
service via Jean's website. Visitors to the website can
also download drivers for Jean monitors and obtain
technical support via e-mail. Finally, Jean's website
lists an "East Coast" service facility located in New
Jersey.

III. DISCUSSION

A. Due Process

The Due Process Clause requires that, in order to
subject a defendant who is "not present within the
territory of the forum" to personal jurisdiction, the
court must first make sure that the party "ha[s] certain
minimum contacts with [the forum] state such that
the maintenance of the suit does not offend
'traditional notions of fair play and substantial
justice." ' *International Shoe* 326 U.S. at 316 (quoting

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
2003 WL 21026758 (D.Del.)
**(Cite as: 2003 WL 21026758 (D.Del.))**

_Milliken v. Meyer,_ 311 U.S. 457, 463 (1940)). In order to give non-residents "fair warning" that a particular activity may subject them to litigation within the forum, these "minimum contacts" must be purposeful. _See Burger King Corp. v. Rudzewicz,_ 471 U.S. 462, 472 (1985). In other words, the defendant's contacts must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. _See World-Wide Volkswagen Corp. v. Woodson,_ 444 U.S. 286, 297 (1980). Finally, "even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." _Beverly Hills Fan Co. v. Royal Sovereign Corp.,_ 21 F.3d 1558, 1568 (Fed.Cir.1994).

**\*2** In _Beverly Hills Fan,_ the Federal Circuit addressed the question of whether Ultec, a People's Republic of China corporation with a manufacturing facility in Taiwan, was subject to personal jurisdiction in Virginia. 21 F.3d at 1560. Ultec claimed that it was not subject to personal jurisdiction in Virginia because it did not have any Virginia assets, employees, or a license to do business in that state. _Id._ Acknowledging that Ultec's sole contact with the forum resulted from indirect shipments through the stream of commerce, the Federal Circuit held that Ultec "purposefully shipped the accused fans into Virginia through an established distribution channel The cause of action for patent infringement is alleged to rise out of these activities. No more is usually required to establish specific jurisdiction." _Id._ at 1560, 1564-65.

The court's decision in _Motorola Inc. v. PC-Tel, Inc._ is likewise instructive in resolving the present issue. 58 F.Supp.2d 349 (D.Del.1999). In that case, the court described the accused infringer's sales activities as follows:
> Altocom does not (and, it seems, cannot) contest the fact that its softmodems are integrated into a variety of consumer electronic products which are manufactured by well-known multi-national corporations like Compaq, Phillips, Samsung, Sharp, Song, and the like. These goods are then put into the world-wide distribution networks which place them for sale in equally well-known retail stores such as Caldor, Circuit City, CompUSA, Office-Max, Sears, Service Merchandise, and others--all of which have outlets in Delaware.
58 F.Supp.2d at 352. Relying on _Beverly Hills Fan,_

the court rejected AltoCom's arguments and held that exercising personal jurisdiction comported with due process. _See id._ at 355-56.

In the present case, as in _Beverly Hills Fan,_ Jean's president states in his declaration that Jean makes no direct sales to the United States. He further states that Jean has no United States offices or subsidiaries. However, the court concludes that Jean has, for many years, been the first link in precisely the kind of indirect distribution chain that the Federal Circuit found sufficient to establish personal jurisdiction. Specifically, Jean sells it monitors to ViewSonic and eMachines, who in turn distribute Jean's monitors to retailers with Delaware operations. Given ViewSonic's and eMachines' extensive re-seller networks in Delaware and on the Internet, Jean cannot credibly claim it had no inkling that some of its monitors would make their way into Delaware via well-established distribution channels.

Jean further maintains an interactive website through which customers in Delaware, and elsewhere, can download driver software, as well as obtain customer support. On its website, it also lists "Global Service Centers," including an "East Coast" service facility in New Jersey. These facts further support the court's conclusion that Jean's undeniably substantial and regular monitor sales into ViewSonic's and eMachines' national distribution networks constitute "purposeful minimum contacts" with Delaware.

**\*3** Notwithstanding the existence of Jean's purposeful minimum contacts with this forum, the court must consider whether the "minimum requirements inherent in the concept of 'fair play and substantial justice ...' defeat the reasonableness of [the assertion of] jurisdiction, even [if] the defendant has purposefully engaged in forum activities." _Asahi Metal Indust. Co. v. Superior Court,_ 480 U.S. 102, 116 (1987). This question will only be answered affirmatively if the state's and the plaintiff's interest in having the dispute adjudicated in the forum are so minimal as to be outweighed by the burden imposed by subjecting the defendants to litigation within the forum. _See Beverly Hills Fan,_ 21 F.3d at 1568.

In the present case, Delaware clearly has a substantial interest in discouraging injuries in the state, including patent infringement injury. It has also been the sole forum for the Elonex Power Management Litigation for several years. Finally, and as the _Beverly HIlls Fan_ court noted, "progress in communications and transportation" have made "the defense of a lawsuit in a foreign tribunal less

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 3
2003 WL 21026758 (D.Del.)
**(Cite as: 2003 WL 21026758 (D.Del.))**

burdensome." 21 F.3d at 1569 (internal quotation and citation omitted). Thus, the court concludes that any burden on Jean "is not sufficiently compelling to outweigh" Elonex's and Delaware's interests. *Id.*

B. Delaware's Long-Arm Statute

The second step in the court's analysis into the propriety of subjecting Jean to personal jurisdiction in this forum is the determination of whether any of the provisions of Delaware's long-arm statute apply. *See* Del.Code. Ann. tit. 10 § 3104. While Jean contends that it does not fall within the grasp of any of Section 3104's provisions, Elonex contends that at least two of the provisions apply here. For purposes of this order, the court need only discuss one.

Under subsection (c)(4), the court may exercise personal jurisdiction over anyone who causes injury either inside or outside of this State "by an act or omission outside of the State" if that individual "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services or things used or consumed in the State." Del.Code. Ann. tit. 10, § 3104(c) (2001). [FN2] The court will interpret this language broadly, as reaching the "maximum parameters of the due process clause." *See Jeffreys v. Exten,* 784 F.Supp. 146, 151 (D.Del.1992).

> FN2. This subsection provides general jurisdiction over the nonresident defendant. *See Mendelson v. Delaware River and Bay Auth.,* 56 F.Supp.2d 436, 439 (D.Del.1999). Accordingly, it is immaterial whether the jurisdictional contact is related to the claim. *See id.*

As discussed above in Section III A, Jean has intentionally sold monitors using nationwide distribution channels. This knowing and purposeful shipment of monitors satisfies the act requirement of Section 3104(c)(4). *See Beverly Hills Fan,* 21 F.3d at 1571. Because Jean undeniably derives substantial revenue from these activities, it is subject to jurisdiction under Delaware's long-arm statute. *See* Chang Decl. at ¶ ¶ 3-7 (discussing Jean's revenue from sales to ViewSonic and eMachines).

C. Venue

**\*4** Jean finally asserts that, pursuant to 28 U.S.C. § 1391(c), venue is improper in this district. Jean's argument is meritless, however, because "[t]he venue issue is subsumed in the personal jurisdiction issue.

Venue lies ipso facto if ... the district court has personal jurisdiction over [the defendant]." *North American Philips Corp. v. American Vending Sales, Inc.,* 35 F.3d 1576, 1577 n. 1 (Fed.Cir.1994); *see also* 28 U.S.C. § 1391(b)(1) & (c) (stating that venue is proper in a judicial district where the defendant corporation is subject to personal jurisdiction at the time the action is commenced). As the court has already found that the exercise of personal jurisdiction is proper and complies with both due process and the Delaware long-arm statute, venue in this district is also proper.

IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Jean's Motion to Dismiss (D.I.856) is DENIED.

2003 WL 21026758 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

- 1:01CV00088 _____ (Docket) (Feb. 13, 2001)

- 1:01CV00089 _____ (Docket) (Feb. 13, 2001)

- 1:01CV00083 _____ (Docket) (Feb. 13, 2001)

- 1:01CV00082 _____ (Docket) (Feb. 13, 2001)

- 1:01CV00086 _____ (Docket) (Feb. 13, 2001)

- 1:01CV00085 _____ (Docket) (Feb. 13, 2001)

- 1:01CV00087 _____ (Docket) (Feb. 13, 2001)

- 1:01CV00084 _____ (Docket) (Feb. 13, 2001)

- 1:01CV00104 _____ (Docket) (Feb. 13, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.