**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ENERGY TRANSPORTATION GROUP, INC. | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 05-CV-422-GMS |
| v. | § | |
| SONIC INNOVATIONS, INC., et al. | § | |
| | § | |
| Defendants. | § | |

**REPLY BRIEF OF DEFENDANT WILLIAM DEMANT HOLDING A/S IN FURTHER SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IN OPPOSITION TO PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY**

N. Richard Powers #494
CONNOLLY BOVE LODGE & HUTZ, LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19801
Phone: 302-658-9141
Fax: 302-658-5614

ATTORNEYS FOR DEFENDANT WILLIAM DEMANT HOLDING A/S

Of Counsel for
William Demant Holding A/S:
John M. Romary, Esq.
C. Gregory Gramenopoulos, Esq.
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C. 20001
Phone: 202-408-4000
Fax: 202-408-4400

Dated: November 22, 2005

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................... ii

I. PRELIMINARY STATEMENT .................... 1

II. ARGUMENT .................... 2

A. ETG's "Induced Infringement" Theory of Jurisdiction Fails Because ETG Has Not Made A *Prima Facie* Showing That WDH A/S Engaged in Any Alleged Act of Induced Infringement .................... 4

B. WDH A/S's Continued Ownership Stake of AHAA and AVADA Does Not Support an Allegation of Inducing Infringement .................... 9

C. WDH A/S's Mere Status as Parent Corporation Does Not Support an Inference That It Induced the Subsidiary's Alleged Infringement .................... 11

D. Since ETG's Allegation of Jurisdiction Is Clearly Frivolous, Jurisdictional Discovery Is Not Warranted .................... 13

III. CONCLUSION .................... 14

# TABLE OF AUTHORITIES

**Page**

*CASES*

*A. Stucki Co. v. Worthington Industries, Inc.*, 849 F.2d 593 (Fed. Cir. 1988) ........ 10

*Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458 (D. Del. 1991) ........ 9

*Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987) ........ 8

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) ........ 7

*C.R. Bard Inc. v. Guidiant Corp.*, 997 F. Supp. 556 (D. Del. 1998) ........ 14

*Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925) ........ 2

*Clinical Dynamics Corp. v. Dynatech Nevada, Inc.*, 30 USPQ2d 1969 (D. Mass. 1994) ........ 12

*Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315 (Fed. Cir. 2005) ........ 14

*Cortelyou v. Charles Eneu Johnson & Co.*, 207 U.S. 196 (1907) ........ 4

*eSpeed, Inc. v. Brokertec USA*, No. Civ. A. 03-612-KAJ, 2004 WL 2346137 (D. Del. Sept. 13, 2004) ........ 4

*In re Elonex Phase II Power Management Litigation*, 2003 WL 21026758 (D. Del. May 6, 2003) ........ 13

*Insituform Technologies, Inc. v. CAT Contracting, Inc.*, 161 F.3d 688 (Fed. Cir. 1998), *vacated on other grounds and remanded*, 535 U.S. 1108 (2002), *appeal after remand*, 385 F.3d 1360 (Fed. Cir. 2004) ........ 5

*L.A. Gear, Inc. v. E.S. Originals, Inc.*, 859 F. Supp. 1294 (C.D. Cal, 1994) ........ 6, 7

*Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990) ........ 4

*MercExchange, L.L.C. v. eBay, Inc.*, 401 F.3d 1323 (Fed. Cir. 2005) ........ 10

*Motorola Inc. v. PC-Tel, Inc.*,
58 F. Supp. 2d 349 (D. Del. 1999) ..... 13

*National Presto Indus., Inc. v. West Bend Co.*,
76 F.3d 1185, 1196 (Fed. Cir. 1996) ..... 6

*Oakley, Inc. v. Jofa AB*,
287 F. Supp. 2d 1111 (C.D. Cal. 2003) ..... 13

*Philips Electronics North America Corp. v. Contec Corp.*,
No. Civ. A 02-123-KAJ, 2004 WL 503602 (D. Del. Mar. 11, 2004) ..... 13

*Ronald A. Katz Tech. Licensing LP v. Verizon Communications, Inc.*,
66 USPQ2d 1045, 1049 (E.D. Pa. 2002), *appeal dismissed*,
107 Fed. Appx. 224 (Fed. Cir. Aug. 6, 2004) ..... 8, 10, 11

*Tegal Corp. v. Tokyo Electron Co.*,
248 F.3d 1376 (Fed. Cir. 2001) ..... 10

*Telcordia Technologies, Inc. v. Alcatel S.A.*,
No. Civ. A. 04-874 GMS, 2005 WL 1268061 (D. Del. May 27, 2005) ..... 8, 9, 14

*Thorn EMI North America, Inc. v. Micron Technology Inc.*,
821 F. Supp. 272 (D. Del. 1993) ..... 13

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61 (3d Cir. 1984) ..... 5

*Toys "R" Us, Inc. v. Step Two, S.A.*,
318 F.3d 446 (3d Cir. 2003) ..... 13

*Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*,
395 F.3d 1275 (Fed. Cir. 2005) ..... 13

*Virgin Wireless, Inc. v. Virgin Enterprises Ltd.*,
201 F. Supp. 2d 294 (D. Del. 2002) ..... 12

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ..... 8

## I. PRELIMINARY STATEMENT

This is a patent infringement action. Plaintiff Energy Transportation Group, Inc. ("ETG") filed a Complaint [D.I. 1] on June 23, 2005, alleging that unspecified programmable digital hearing aid devices of fourteen (14) defendants infringed two patents. The number of defendants was increased to seventeen (17) by a First Amended Complaint [D.I. 38] filed on August 4, 2005. A September 1, 2005 Motion to enter a Second Amended Complaint [D.I. 65], which increases the number of defendants to nineteen (19), stands unopposed by the defendants, but is as yet unentered by the Court. The issues presented by the current Motion to Dismiss by defendant William Demant Holding A/S ("WDH A/S") for Lack of Personal Jurisdiction [D.I. 87] are not affected by the Second Amended Complaint.

ETG's Opposition [D.I. 89] to WDH A/S's Motion to Dismiss was filed on November 15, 2005, along with a Request for Jurisdictional Discovery. The Opposition did not contest that WDH A/S is a holding company with only nine (9) total employees, that does not design, manufacture, sell, or distribute any products, much less any products that may possibly be accused of infringement.[1] Instead, ETG argues that there is sufficient evidence of record to make a *prima facie* showing that WDH A/S has, by acts that occurred outside of Delaware, induced its co-defendant subsidiaries[2] and others to infringe the patents-in-suit in Delaware,

---

[1] ETG in its Complaint and Opposition has not identified any specific products as being accused of infringement, but rather generally asserts that the patents-in-suit cover devices and methods related to "programmable digital hearing aid device[s]." Second Amended Complaint, ¶ 3 [D.I. 65]. There is a long list of "Products in Question" in attached Exhibit A-20, page 3, but there is no indication in the Opposition which, if any, of these products are the basis of the alleged induced infringement by WDH A/S.

[2] The co-defendant direct and indirect subsidiaries of WDH A/S, who manufacture and sell the unidentified accused products, have not contested personal jurisdiction. Hence, this is not a case of a corporate family seeking to use a jurisdictional ploy to run from infringement allegations.

thereby subjecting WDH A/S to the jurisdiction of this Court using a "stream-of-commerce" theory.

WDH A/S contends, however, that there is no *prima facie* showing of induced infringement and, thus, no basis for assuming any jurisdictional contact with Delaware sufficient to justify personal jurisdiction over WDH A/S or the undertaking of jurisdictional discovery in the hopes of finding such a basis.

## II. ARGUMENT

In opposing WDH A/S's Motion to Dismiss, ETG does not contest, or even attempt to challenge, the showing by WDH A/S that WDH A/S does not design, develop, manufacture, use, sell, offer to sell, trade, or import into the United States any goods, let alone the unidentified accused products at issue in this suit. Nor does ETG contest, or even attempt to contest, WDH A/S's showing that WDH A/S does not have continuous and systematic contacts with Delaware that would permit this Court to exercise general jurisdiction over WDH A/S. Hence, it is uncontroverted that there is no basis for this Court to exercise general jurisdiction over WDH A/S based on any alleged acts of direct infringement by WDH A/S.

Similarly, Plaintiff does not contest, or even attempt to contest, WDH A/S's showing that the jurisdictional contacts of WDH A/S's subsidiaries, who are co-defendants in this action, cannot be imputed to WDH A/S under an alter-ego or agency theory.[3] Implicitly conceding that

---

[3] *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336-37 (1925) (affirming dismissal of parent for lack of personal jurisdiction and ruling that the fact a court could exercise personal jurisdiction over wholly owned subsidiary did not mean that it could exercise jurisdiction over parent corporation, where parent did not transact business in the forum, even though parent and subsidiary had same corporate officers, where both corporations maintained the formal distinctions between the two).

these theories do not apply here, ETG states, "Plaintiff is not attempting to hold WDH A/S responsible solely for its subsidiaries' acts of direct infringement -- rather, Plaintiff seeks to hold WDH A/S responsible for its own acts of inducing infringement." (Opp'n Br. at 8) (emphasis omitted).

Specifically, ETG asserts that it can establish a *prima facie* case of personal jurisdiction based on a stream of commerce theory by presenting "a *prima facie* case of induced infringement by WDH A/S of one or more of its subsidiaries that place goods into the stream of commerce that leads to Delaware." (Opp'n Br. at 6.) For the reasons stated below, ETG has not and cannot prove a case of induced infringement by WDH A/S based on the facts it alleges, and its argument to support jurisdiction on this basis is clearly frivolous.

ETG effectively asserts two acts by WDH A/S that ETG alleges amount to acts of inducement. First, there is the alleged November 21, 2000 act of purchasing a 47% ownership interest in AVADA and, at the same time, both "infusing" capital to allow AVADA to purchase additional clinics under the AVADA name and entering into an OEM supply agreement with AVADA.[4] And, second, there is the alleged August 22, 2001 act of purchasing a 49% ownership interest in AHAA.[5] The only other "act" asserted by ETG is the general and continuous role of

---

[4] This act may be assumed for purposes of this Motion. In fact, however, the WDH A/S subsidiary and co-defendant Oticon, Inc. acquired 47% of the AVADA shares on November 21, 2000, with WDH A/S acting as guarantor. (Second Declaration of Neils Jacobsen ("2nd Jacobsen Decl.") ¶ 4 filed herewith as Exhibit 7). The referenced OEM agreement was in fact between Oticon, Inc. and AVADA, not WDH A/S, as might be expected, since WDH A/S does not manufacture any products. (*Id.* ¶ 5). The cash "infusion" in fact came from Oticon Inc., not WDH A/S. (*Id.*).

[5] This act may be assumed for purposes of this Motion. In fact, however, the WDH A/S subsidiary and co-defendant Oticon, Inc. acquired the indicated 49% of the AHAA shares on August 22, 2001. Ownership of these shares by WDH A/S is indirect. (2nd Jacobson Decl. ¶ 3) (Exhibit 7).

WDH A/S as the public voice of the subsidiary companies whose stock WDH A/S owns directly or indirectly.[6] But, as a matter of law, acting as the voice of a group of companies is not a basis for assuming control sufficient to vest personal jurisdiction. *eSpeed, Inc. v. Brokertec USA*, No. Civ. A. 03-612-KAJ, 2004 WL 2346137, at *1, *4 (D. Del. Sept. 13, 2004) (Exhibit 8) (A patent infringement action in which this Court refused to exercise personal jurisdiction over parent-holding company owning a group of twelve subsidiaries, even though parent holding company, in annual reports and Web sites, acted as spokesperson for the entire group.).

### A. ETG's "Induced Infringement" Theory of Jurisdiction Fails Because ETG Has Not Made A *Prima Facie* Showing That WDH A/S Engaged in Any Alleged Act of Induced Infringement

To induce infringement, there must be an act of direct infringement and the alleged inducer must have "specific intent to encourage" that act of direct infringement. *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990). As a matter of law, the requisite specific intent cannot exist if the alleged inducer does not have knowledge of the patent when it undertook the acts alleged to have induced the infringement. Thus, in *Manville*, the Federal Circuit held that the district court had erred as a matter of law in holding corporate executives liable for inducing infringement in view of the district court's finding that the executives did not know of the patents at the time they engaged in the acts alleged to have induced infringement. *Id.* at 553-54. *See also Cortelyou v. Charles Eneu Johnson & Co.*, 207 U.S. 196, 200 (1907) (affirming dismissal of inducing infringement claim, where defendant had no knowledge of asserted patent rights at time it performed alleged inducing act); *Insituform*

---

[6] In fact, due to requirements of the Copenhagen Stock Exchange, which lists the stock of WDH A/S, WDH A/S is required to report the activities of its subsidiaries through annual reports and other public announcements. (2nd Jacobsen Decl. ¶7) (Exhibit 7).

*Techs., Inc. v. CAT Contracting, Inc.*, 161 F.3d 688, 695 (Fed. Cir. 1998), *vacated on other grounds and remanded*, 535 U.S. 1108 (2002), *appeal after remand*, 385 F.3d 1360, 1378 (Fed. Cir. 2004) ("A crucial element of induced infringement is that the inducer must have actual or constructive knowledge of the patent.").

WDH A/S had no knowledge of the asserted patents until ETG served its Complaint. (2nd Jacobsen Decl. ¶¶ 8 and 9) (Exhibit 7). Thus, WDH A/S had no knowledge of the patents when the ownership interests in AHAA or AVADA were acquired. Without such knowledge, WDH A/S's acts of acquiring ownership interests, directly or indirectly, in AHAA and AVADA cannot possibly be a basis for finding induced infringement or supporting a personal jurisdictional contact under ETG's theory.

ETG offers no *proof* to show that WDH A/S had knowledge of the patents at anytime before being served with the Complaint. Instead, ETG relies on attorney speculation that WDH A/S "must have known" of the patents because of WDH A/S's purported involvement in the Hearing Implementation Manufacturers Patent Partnership (HIMPP).[7] (Opp'n Br. at 7, n13). There is no indication of how, or when, or by whom this alleged knowledge of the patents by HIMPP and/or by WDH A/S occurred. Instead, there is only a mere conclusory allegation of knowledge that does not meet ETG's burden to prove a *prima facie* case of personal jurisdiction substantiated with "actual proof." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63, 66 n.9 (3d Cir. 1984) ("[P]laintiff must respond with actual proofs, not mere allegations.").

There is also no showing by ETG that WDH A/S had any intent to have specific products

---

[7] In fact, while one subsidiary of WDH A/S is a member of HIMPP, WDH A/S is not a manufacturer of products and, accordingly, is not a member of HIMPP, but rather is a minority shareholder in a general partnership that is a member. (2nd Jacobsen Decl ¶ 6) (Exhibit 7).

pass though the AHAA and AVADA distribution channels, much less the specific products ETG will hopefully one day identify for this Court and the remaining defendants as infringing the patents-in-suit. According to ETG, the alleged acts of induced infringement occurred on November 21, 2000 and August 22, 2001. But there is no evidence of record showing that any allegedly infringing products were even in existence as of those dates. In fact, ETG has yet to identify as infringing a single specific product. Hence, the Court is left with sheer speculation as to the existence of those products, and as to WDH A/S' knowledge of those products, as of November 21, 2000 and August 22, 2001.

The later and independent development of an accused product by a subsidiary cannot suddenly elevate an earlier innocent act of acquisition to an act of induced infringement without some showing of a link of specific intent between that earlier act and that later development of the specific product accused of infringement. *See National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996) ("The principle of liability for 'aiding and abetting' the wrongful acts of others is not imposed retrospectively, to make illegal an act that was not illegal when it was done. That is, if the thing that was abetted was not illegal at the time of abetment, but depended on some future event that might not occur (such as issuance of the patent) liability can not be retroactively imposed."). For example, in *L.A. Gear, Inc. v. E.S. Originals, Inc.*, 859 F. Supp. 1294 (C.D. Cal, 1994), the court granted a summary judgment, finding that licensing a trademark for use on shoes, while assisting in the sales of shoes in general, did not induce patent infringement where, as here, there was no showing that the accused induced infringer had known of the patent at the time of the license or acted to control the later introduction of the accused product:

> At oral argument, LAG maintained in the alternative that even if Voit did not have knowledge of the patent prior to being sued, Voit is nevertheless liable for infringing acts occurring after that point because "patent infringement is a continuing tort." This argument also misses the mark, however, because LAG can not demonstrate that, once Voit became aware of the patent-in-suit, Voit "acted" to induce another's infringement. . . . [T]he 1989, 1991 and 1993 Agreements were all negotiated and signed before Voit was notified of LAG's patent. Once these agreements went into effect, Voit's involvement with the accused shoes was limited to receiving its royalty payments. Furthermore, even if the Court assumes *arguendo* that Voit had the right to terminate this passive "activity" by unilaterally cancelling its agreements with ESO, Voit's failure to do so is at best an omission, not an action.

859 F. Supp at 1302 n.9 (citation omitted).

Likewise here there is no evidence of any "act" by WDH A/S after the 2000 and 2001 stock purchases other than WDH A/S acting as a passive indirect shareholder of AVADA and AHAA stock.[8]

ETG would, thus, have this Court find that a 2000 or 2001 investment in a company having a general hearing aid device distribution channel is evidence of the requisite showing of specific intent to infringe specific patents based on specific products presumably later-introduced by others into that channel. By ETG's reasoning, WDH A/S, simply by reason of having a direct or indirect shareholding position, could be hauled into a Delaware court based on the passage of some product it had no role in designing or manufacturing, though a distribution channel of a company purchased, provided WDH A/S knew that the channel was for hearing aid devices. This is not and cannot be the law. *See Ronald A. Katz Tech. Licensing LP v. Verizon*

---

[8] The Federal Circuit agrees that an omission cannot be the basis for finding induced infringement. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1569 (Fed. Cir. 1994) ("But [personal] jurisdiction here cannot be based on a tortious *omission*, since active inducement of infringement requires the *commission* of an affirmative act." -- emphasis in original).

*Communications, Inc.*, 66 USPQ2d 1045, 1049 (E.D. Pa. 2002), *appeal dismissed*, 107 Fed. Appx. 224 (Fed. Cir. Aug. 6, 2004) (To show induced infringement, "[t]here would have to be some evidence that [the holding company] actually intended its subsidiaries to provide that specific type of automated customer service that infringes on" the patents-in-suit.). And here, there is no evidence whatsoever that WDH A/S had any influence over either AHAA or ADAVA, or any of its subsidiaries as to any specific products to justify a finding of induced infringement.

Due process does not permit hauling WDH A/S into court in Delaware to answer a charge of inducing infringement based on two separate investments in non-Delaware entities with national distribution systems that occurred outside Delaware, made at times when WDH A/S had no knowledge of any patent rights of ETG that could potentially be infringed by unspecified products that might be distributed through the network. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there."); *Telcordia Techs., Inc. v. Alcatel S.A.*, No. Civ. A. 04-874 GMS, 2005 WL 1268061, at *6 (D. Del. May 27, 2005) (Exhibit 2 to Opening WDH Brief) ("[T]he defendant's contact must be of the nature that would cause it to reasonably foresee that it might be 'hauled before a court' in the forum as a result of its conduct."). *Cf. Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano County*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have

significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").

Since WDH A/S had no knowledge of the patents-in-suit, much less any basis to believe that the then-current or future products to pass through the AHAA and/or AVADA distribution systems would infringe either patent, WDH A/S had no reasonable basis to anticipate that it would, four years later, be hauled into a Delaware court on charges of induced infringement.

### B. WDH A/S's Continued Ownership Stake of AHAA and AVADA Does Not Support an Allegation of Inducing Infringement

ETG offers no proof to show that after the stock acquisitions of AHAA and AVADA and related agreements, it did anything other than act as a passive indirect owner. Since WDH A/S does not manage or control the day-to-day operations of its subsidiaries,[9] it did not control what specific products or the characteristics of those products that its manufacturing subsidiaries placed into the distribution network or how those distribution networks distributed the products. (*See* 1st Jacobsen Decl. ¶ 8 (Exhibit 1 of Opening WDH A/S Brief) and 2nd Jacobsen Decl. ¶¶ 2 and 4.) (Exhibit 7). Mere ownership of a subsidiary by a parent corporation, and even serving on that subsidiary's board of directors, without affirmative acts by the parent controlling the specific infringing actions of the subsidiary, does not support a claim that the parent induced a subsidiary's direct infringement. *MercExchange, L.L.C. v. eBay, Inc.*, 401 F.3d 1323, 1332

---

[9] ETG's objection to the First Jacobsen Declaration on the basis that the phrase "day-to-day management" is ambiguous is itself specious. The phrase is well understood and commonly used in jurisprudence. This Court itself used the phrase "day-to-day management" in its opinions regarding personal jurisdictional issues. *E.g.*, *Telcordia*, 2005 WL 1268061, at *2 (Exhibit 2 of Opening WDH A/S Brief) (instructing that a factor relevant to the court's examination was "the division of responsibility for day-to-day management") (quoting *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991)); *id.* at *4 (using phrase "day-to-day management" and "day-to-day activities").

(Fed. Cir. 2005) (reversing jury verdict finding induced infringement because "the testimony regarding eBay's investment in ReturnBuy's business and its presence on ReturnBuy's board of directors does not demonstrate an intent to induce infringement, or even show that eBay had knowledge of any acts of infringement by ReturnBuy. Rather, investment and board presence merely indicate that there was a business relationship between the two companies and that eBay had a financial interest in ReturnBuy's business."); *see also A. Stucki Co. v. Worthington Indus., Inc.*, 849 F.2d 593, 597 (Fed. Cir. 1988) (patentee failed to prove grandparent corporation induced the direct infringement of subsidiary based on its purchase of the parent of the subsidiary, where patentee only offered speculation that grandparent corporation must have advised the subsidiary to continue its infringing conduct); *Katz*, 66 USPQ2d at 1048-49 (no induced infringement where parent "generally manages" its subsidiaries who directly infringed). *Cf. Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1380 (Fed. Cir. 2001) (reversing contempt sanction based on inducing subsidiary's infringement since there was no evidence that sibling and/or parent corporation "formulates, directs, or controls [the subsidiary]'s operations or that it is in control of the management, polices, and operation of [the subsidiary].").

Moreover, even if WDH A/S did more than act as a passive owner, ETG has failed to show that WDH A/S undertook any act effecting a particular accused product with knowledge of the asserted patents, and therefore, as a matter of law, WDH A/S could not have had a specific intent to induce infringement by any alleged management of its subsidiaries. Thus, ETG's jurisdictional theory fails.

### C. WDH A/S's Mere Status as Parent Corporation Does Not Support an Inference That It Induced the Subsidiary's Alleged Infringement

ETG's general contention that WDH A/S, by its control as parent of its subsidiaries, induced the alleged infringement by its subsidiaries and, therefore, is subject to specific personal jurisdiction, has no legal support and is based on factual misrepresentations.[10] Despite the First Jacobsen Declaration averring that WDH A/S does not manage the day-to-day activities of its subsidiaries,[11] ETG attempts to attribute all the acts of the subsidiaries as being controlled by WDH A/S in a manner that supports an inducing claim. Fatally absent from ETG's showing is any actual proof that WDH A/S did anything other than generally manage the subsidiaries in a manner that courts have found does not rise to the level of inducing the subsidiary's infringement.

ETG's allegations of inducement are strikingly similar to the allegations the district court rejected in *Katz*, 66 USPQ2d at 1048-49. In that case, the parent corporation, a corporation having only twelve employees overseeing a large number of subsidiaries,[12] made strategic policy and pricing decisions for its subsidiaries, maintained control over acquisitions and dispositions, did not delineate between the subsidiaries and the parent company in advertising and other public statements, and included information about its subsidiaries in forms it submitted to the Securities

---

[10] For example, ETG's assertion that WDH A/S spent over 600 million dollars for research and development in the years 2003 through 2005 is a misrepresentation of the public information. That figure refers to a consolidated reporting of what the subsidiaries in total spent on research and development. WDH A/S spent no money on research and development during that period since WDH A/S does not develop any products. (2nd Jacobsen Decl. ¶ 10.)

[11] 1st Jacobsen Decl. ¶21.

[12] WDH A/S has only five corporate employees and four secretaries for approximately 45 subsidiary companies. (1st Jacobsen Decl. ¶¶ 3 and 7) (Exhibit 1).

and Exchange Commission.[13] *Katz*, 66 USPQ2d at 1046. But, the parent, like WDH A/S, did "not manage the day-to-day activities of its subsidiaries." *Id.*

ETG has not made, nor could it make in good faith, a single allegation that WDH A/S controlled the day-to-day activities of its subsidiaries. Indeed, it is illogical to assume that five corporate employees, overseeing at least forty-five subsidiaries, would have the time to do so. Further, ETG's contention that because WDH A/S's Web site notes that the WDH *Group* develops hearing aides, that WDH A/S should itself be considered to have developed the accused hearing aides provides no proof that WDH A/S designed or developed the accused hearing aid devices. *See Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d 294, 299 (D. Del. 2002) (press release insufficient to support personal jurisdiction over parent holding company, where it referred to acts done by members of a "group" of subsidiary companies owned by the parent but did not refer to acts actually done by the parent). Thus, ETG's conclusory accusations that WDH A/S must have controlled the design, development, and distribution of the accused products does not support a *prima facie* case of induced infringement sufficient to sustain ETG's jurisdiction theory. *See Clinical Dynamics Corp. v. Dynatech Nev., Inc.*, 30 USPQ2d 1969, 1971 (D. Mass. 1994) (granting summary judgment of no induced infringement because patentee failed to provide evidence that the defendant corporation had taken any affirmative actions toward its subsidiary corporation that would constitute inducement and noting: "Clinical Dynamics, rather than offering evidence of specific acts by Dynatech that connect it to the

---

[13] Due to requirements of the Copenhagen Stock Exchange, which lists the stock of WDH A/S, WDH A/S is required to report the activities of its subsidiaries through annual reports and other public announcements. (2d Jacobsen Decl. ¶ 7) (Exhibit 7).

CuffLink, hypothesizes about Dynatech's involvement with the product development of its many subsidiaries. Such a general allegation, rooted in conjecture, is not evidence of inducement.").

That WDH A/S did not design, develop, manufacture, offer for sale, sell, or import the accused hearing aides easily distinguishes WDH A/S from the companies in the cases ETG cites to support its theory of personal jurisdiction. In those cases, the defendant manufactured or developed the accused product. *E.g., Oakley, Inc. v. Jofa AB*, 287 F. Supp. 2d 1111, 1115 (C.D. Cal. 2003) (parent holding company "designed and developed the infringing product."); *Philips Elec. N. Am. Corp. v. Contec Corp.*, No. Civ. A 02-123-KAJ, 2004 WL 503602, at *2 (D. Del. Mar. 11, 2004) (Exhibit 10) (parent manufactured the accused product); *In re Elonex Phase II Power Mgmt. Litig.*, 2003 WL 21026758, at *1 (D. Del. May 6, 2003) (Exhibit 9) (defendant manufactured accused product); *Motorola Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349, 351 (D. Del. 1999) (defendant developed accused software); *Thorn EMI N. Am., Inc. v. Micron Tech. Inc.*, 821 F. Supp. 272, 272 (D. Del. 1993) (defendant subsidiary seeking to avoid personal jurisdiction manufactured the accused product).

### D. Since ETG's Allegation of Jurisdiction Is Clearly Frivolous, Jurisdictional Discovery Is Not Warranted

In order to be entitled to jurisdictional discovery, ETG must demonstrate that it can support its jurisdictional allegations with discovery. *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005). In this case, ETG's allegations of personal jurisdiction over WDH A/S are "clearly frivolous." There is no factual basis to support its induced infringement theory of jurisdiction. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'"). *Cf. Commissariat a L'Energie Atomique v.*

*Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323-24 (Fed. Cir. 2005) (jurisdictional discovery proper, where patentee showed foreign accused infringer involved in manufacturing and marketing of accused product--something ETG has failed to do--and discovery might show purposeful efforts to market the accused product in the forum). Thus, the Court should not permit any jurisdictional discovery, much less the incredibly burdensome discovery proffered in Mr. Buroker's letter of November 8, 2005.[14] In this case, jurisdictional discovery, even if of truly limited scope, impermissibly "would amount to allowing [ETG] to conduct a fishing expedition" into the affairs of a foreign corporation. *Telcordia*, 2005 WL 1268061, at *9. (Exhibit 2). *See also C.R. Bard Inc. v. Guidiant Corp.*, 997 F. Supp. 556 (D. Del. 1998) (Exhibit 2 of Opening WDH A/S Brief) (granting motion to dismiss parent holding company without jurisdictional discovery).

## III. CONCLUSION

Plaintiff has asserted a frivolous case of personal jurisdiction based on nonexistent factual evidence. There were the 2000 and 2001 acquisitions of stock in pre-existing corporations with distribution systems to be used in general by WDH A/S subsidiaries. There is, however, no evidence that WDH A/S had knowledge of the patents-in-suit at those times and there is no evidence that the unspecified accused products were even in existence at those times or that WDH A/S had any direct role in the introduction of those products. Thus, there is no basis at all for WDH A/S to have reasonably anticipated having to defend a charge of induced infringement in Delaware based on it's role in those 2000 and 2001 stock acquisitions. Neither does its role as

[14] Opp'n Br. at Exhibit A-20.

spokesperson for a group of its subsidiaries justify a finding of personal jurisdiction in Delaware based on any acts of its subsidiaries. Accordingly, WDH A/S should be dismissed from this action, and ETG's request for jurisdictional discovery should be denied.

Respectfully submitted,

November 22, 2005

By: /s/ N. Richard Powers

N. Richard Powers #494
CONNOLLY BOVE LODGE & HUTZ, LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19801
Phone: 302-658-9141
Fax: 302-658-5614

ATTORNEYS FOR DEFENDANT
WILLIAM DEMANT HOLDING A/S

Of Counsel for
William Demant Holding A/S:

John M. Romary, Esq.
C. Gregory Gramenopoulos, Esq.
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C. 20001
Phone: 202-408-4000
Fax: 202-408-4400

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of November, 2005 I electronically filed a copy of the foregoing with the Clerk of the Court using CM/ECF and served the following individuals in the manner indicated:

**VIA HAND DELIVERY**
Richard K. Herrmann, Esquire
Morris James Hitchens
& Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801

**VIA HAND DELIVERY**
Richard W. Horwitz, Esquire
Potter Anderson & Corroon LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801

**VIA HAND DELIVERY**
Edmond D. Johnson, Esquire
The Bayard Firm
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE 19899

**VIA HAND DELIVERY**
Barry M. Klayman, Esquire
Wolf, Block, Schorr and Solis-Cohen LLP
Wilmington Trust Center
1100 North Market Street
Suite 1001
Wilmington, DE 19801

**VIA HAND DELIVERY**
Mary B. Graham, Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801

/s/ N. Richard Powers
N. Richard Powers (#494)