## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENERGY TRANSPORTATION GROUP, INC. | ) |
| | ) |
| | )  C.A. NO. 05-422 (GMS) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SONIC INNOVATIONS, INC, ET AL. | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPENDIUM OF UNREPORTED CASES IN SUPPORT OF MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE INITIAL DISCOVERY

THE BAYARD FIRM
Edmond D. Johnson (No. 2257)
Katherine V. Jackson (No. 4800)
222 Delaware Ave.
Suite 900
Wilmington, DE 19801
(302) 655-5000

Attorneys for Energy Transportation Group, Inc.

OF COUNSEL:

Thomas J. Scott, Jr.
Brian M. Buroker
Christopher C. Campbell
Hunton & Williams LLP
1900 K Street, N.W.; Suite 1200
Washington, DC 20006
(T) (202) 955-1500
(F) (202) 778-2201

Dated: August 24, 2006

## COMPENDIUM INDEX

| CASE | TAB |
|------|-----|
| ENTM'T TECH. CORP. V. WALT DISNEY IMAGINEERING | A |
| SPECIAL SITUATIONS CAYMAN FUND, L.P. V. DOT COM ENTM'T GROUP, INC. | B |
| BETTER PACKAGES, INC. V. ZHENG, | C |
| STATE DEPARTMENT HAGUE CONVENTION | D |

# TAB A

LEXSEE

**ENTERTAINMENT TECHNOLOGY CORPORATION v. WALT DISNEY IMAGINEERING, et al.**

**CIVIL ACTION NO. 03-3546**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*2003 U.S. Dist. LEXIS 19832*

**October 2, 2003, Decided**

**DISPOSITION:** [*1] Plaintiff's Motion for Leave to Conduct Limited Discovery on Expedited Basis DENIED; Plaintiff's Motion to Shorten Time to Respond to Motion DENIED AS MOOT.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In an action based on a contract dispute, plaintiff moved for leave to conduct limited discovery on an expedited basis and to shorten the time to respond to the motion. Defendants opposed the motion.

**OVERVIEW:** Plaintiff sought leave to conduct expedited discovery of documents concerning safety tests performed on an amusement ride, as necessary to protect the public interest and its contractual rights. The court agreed with plaintiffs that the circumstances of the case were distinguishable from the Notaro v. Koch case and that the motion was subject to review under a reasonableness analysis. Defendants were not in need of protection and the strict preliminary injunction test was not applicable. Weighing in favor of the motion was the fact that the discovery request was not made too far in advance of the start of formal discovery. However, a number of factors weighed against the motion. There was no pending preliminary injunction hearing for which the parties needed to prepare; the court was unconvinced by plaintiff's arguments that expedited discovery was necessary so that it could protect the public by reviewing defendant's testing data; and, most importantly, the court was unwilling to grant plaintiff under the motion for expedited discovery what could have amounted to specific performance of part of the contested contract.

**OUTCOME:** The court denied plaintiff's motion for leave to conduct expedited discovery; the court denied plaintiff's motion to shorten the response time as moot.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Protective Orders*
[HN1] *Fed. R. Civ. P. 26(d)* requires that a party may not seek discovery from any source before the parties have conferred as required by *Fed. R. Civ. P. 26(f). Fed. R. Civ. P. 26(d)* expressly provides for departure from the "meet and confer" process of *Fed. R. Civ. P. 26(f)* if the parties agree to expedited discovery or if a court so authorizes. Unlike other discovery provisions of the Federal Rules, *Fed. R. Civ. P. 26(d)* does not provide a standard under which a court should decide expedited discovery motions.

*Civil Procedure > Discovery > Methods > Oral Depositions*
*Civil Procedure > Remedies > Injunctions > Elements > General Overview*
*Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions*
[HN2] In Notaro v. Koch, the court set forth four factors for analyzing motions for expedited discovery under *Fed. R. Civ. P. 30(a)*, used for depositions. A moving party must demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted. The four factors defined are akin to the factors used to weigh a motion for prelimi-

2003 U.S. Dist. LEXIS 19832, *

nary injunction because such stringent factors are appropriate to protect defendants at early stages of litigation.

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions*
[HN3] Under a "reasonableness" inquiry, a district court should decide a motion for expedited discovery on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances, unless the circumstances are such that the Notaro factors apply. Whether or not a preliminary injunction hearing is pending, then, has become one factor to be evaluated among many, rather than an outcome determinative fact.

**COUNSEL:** For ENTERTAINMENT TECHNOLOGY CORPORATION, Plaintiff: PAUL G. NOFER, LEAD ATTORNEY, ATTORNEY TO BE NOTICED, KLEHR HARRISON HARVEY BRANZBURG & ELLERS, LLP, PHILA, PA. IRA A. ROSENAU, ATTORNEY TO BE NOTICED, KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP, PHILADELPHIA, PA.

For WALT DISNEY IMAGINEERING, WALT DISNEY IMAGINEERING RESEARCH & DEVELOPMENT, INC., THE WALT DISNEY COMPANY, WALT DISNEY WORLD CO., Defendants: JAMES D. HOLLYDAY, LEAD ATTORNEY, ATTORNEY TO BE NOTICED, PEPPER HAMILTON LLP, PHILADELPHIA, PA. LAURENCE Z. SHIEKMAN, LEAD ATTORNEY, ATTORNEY TO BE NOTICED, PEPPER HAMILTON LLP, PHILADELPHIA, PA. STEVEN K. WINNIE, LEAD ATTORNEY, ATTORNEY TO BE NOTICED, PEPPER HAMILTON LLP, PHILADELPHIA, PA.

For ENTERTAINMENT TECHNOLOGY CORPORATION, Counter Defendant: IRA A. ROSENAU, ATTORNEY TO BE NOTICED, KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP, PHILADELPHIA, PA.

**JUDGES:** HERBERT J. HUTTON, S.J.

**OPINIONBY:** HERBERT J. HUTTON

**OPINION:**

**MEMORANDUM AND ORDER**

HUTTON, S.J.

October 2, 2003

Currently before the Court [*2] are Plaintiff's Motion for Leave to Conduct Limited Discovery on an Expedited Basis and to Shorten Time to Respond to Motion (Docket No. 12), Defendants' Reply in Opposition thereto (Docket No. 20), and Plaintiff's Reply Memorandum in Further Support of its Motion (Docket No. 21).

**I. ISSUE PRESENTED**

Plaintiff Entertainment Technology Corporation ("ETC") seeks leave to conduct expedited discovery of documents concerning safety tests performed on "Mission: Space," a new ride at Walt Disney World's Epcot theme park. Plaintiff asserts expedited discovery of these documents is necessary to protect the public interest and ETC's contractual rights. Defendants Walt Disney Imagineering, Walt Disney Imagineering Research and Development, Walt Disney World Co., and Walt Disney Company (collectively referred to for purposes of this motion as "WDI") oppose the motion.

**II. FACTUAL BACKGROUND**

In January 2000 ETC and WDI entered into a contract involving the creation of Mission: Space, a new ride at the Epcot theme park in Florida. The parties' relationship dates back to at least August 1998. The Mission: Space ride is a space flight simulator that uses a multiple-arm centrifuge [*3] system to simulate the g-force load of space launch and re-entry. The ride was opened to the public on August 15, 2003. Beyond those facts, the parties characterize both the contract and their relationship very differently. ETC claims the contract gave it the responsibility to design and build the ride and to perform safety tests on the ride. WDI describes the contract as the "Material Procurement Contract," an agreement under which ETC was to provide certain goods and services for the ride.

At some point, the relationship soured and the original contract was altered by a series of changes. The one pertinent to this litigation is Change Order No. 22. The parties disagree how Change Order No. 22 affected the January 2000 contract. The basic dispute is over which party retained ultimate responsibility to complete the ride after the Change Order. WDI claims Change Order No. 22 gave Disney final say; ETC claims it retained final control.

In the present motion, Plaintiff ETC motions for leave to conduct expedited discovery of, among other requests, the following documents:

> All documents concerning the testing or analysis of the safety, functioning or performance of the Ride, including [*4] all components of the Ride, whether or not

such testing or analysis was performed by Disney or another person or entity.

See Plf's Document Request No. 1, Ex. D. to Plf's Motion for Leave to Conduct Limited Discovery. The document request then lists the various categories of test data Plaintiff would like to discovery. Defendants oppose the motion, claiming expedition is not warranted and, in any event, the documents are proprietary.

A discovery request would not usually warrant the extended discussion of a full memorandum and order. However, much of the debate between the parties focuses on which legal standard should be applied to decide a motion for expedited discovery. The area of law is indeed very unclear. Plaintiff argues for an inquiry into the reasonableness of the discovery request, while Defendant argues the request must be analyzed under factors akin to those used to decide preliminary injunction motions. The Court agrees with Plaintiffs and will analyze the Plaintiff's motion according to the factors discussed below. Ultimately, Plaintiff's motion for expedited discovery is denied.

## III. LEGAL STANDARD

[HN1] *Federal Rule of Civil Procedure 26(d)* [*5] requires that "a party may not seek discovery from any source before the parties have conferred as required by *Rule 26(f).*" *Rule 26(d)* expressly provides for departure from the "meet and confer" process of *Rule 26(f)* if the parties agree to expedited discovery or if the Court so authorizes. Unlike other discovery provisions of the Federal Rules, *Rule 26(d)* does not provide a standard under which a court should decide expedited discovery motions. See, e.g., *Fed. R. Civ. P. 26(c)* (providing that a party show "good cause" to get a protective order); *Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994)* (setting forth "good cause" test).

A survey of applicable case law, which until recently was scant, reveals that district courts in this circuit have used one of two standards to evaluate motions for expedited discovery. One standard analyzes expedited discovery requests as if they were actually requests for injunctive relief or for specific performance. This standard is understandably difficult to meet for the moving party. The other standard requires that the expedited discovery request is reasonable [*6] in light of all circumstances. Whether a request is reasonable, of course, changes depending on the circumstances of the case and timing of the motion. Both standards are discussed below, followed by an evaluation of which should be used in the present case.

### A. Standard One: The Notaro Factors

[HN2] In *Notaro v. Koch* the Court set forth four factors for analyzing motions for expedited discovery under *Rule 30(a)*, used for depositions. *95 F.R.D. 403 (S.D.N.Y. 1982).* The moving party must demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Notaro, 95 F.R.D. at 405.* The four factors defined are akin to the factors used to weigh a motion for preliminary injunction because, under the circumstances of the Notaro case, Plaintiffs had requested simultaneously a preliminary injunction and an expedited deposition of then-Mayor of New York Edward [*7] Koch. The Court reasoned these stringent factors are appropriate to protect the defendants at such an early stage of litigation. See *Notaro, 95 F.R.D. at 405* (citing 4A Moore's Federal Practice, para. 30.54 (1982)).

A magistrate judge in the United States District Court for the District of New Jersey was first in the Third Circuit to apply the Notaro analysis to a motion for expedited discovery. In Gucci America, Inc. v. Daffy's, Inc., the court applied Notaro because the discovery request, although procedural in name, had a substantive element to it, similar to a request for equitable relief. See *2000 U.S. Dist. LEXIS 16714 (D.N.J. Nov 14, 2000).* In the case, Gucci sued Daffy's, a chain of retail clothing stores specializing in selling well-known brands at discounted prices, claiming that Daffy's sold counterfeit Gucci handbags. Gucci requested expedited discovery of the names of the alleged Gucci distributors who were selling Gucci products to Daffy's. Analyzing the motion, the Court looked behind the pleadings, implying that the entire litigation was a sham in order for Gucci to learn the identity of, and then to punish, these distributors. [*8] See *Gucci, 2000 U.S. Dist. LEXIS 16714 at *18-19.* Once in possession of the distributors' names, said the Court, "Gucci will be able to act . . . without the aid of the Court." *2000 U.S. Dist. LEXIS 16714 at *17.* The Court found the preliminary inunction factors of Notaro to be appropriate because of the Court's "darker suspicion" that Gucci was using the discovery motion and the overall litigation process to root out certain Gucci distributors. See *2000 U.S. Dist. LEXIS 16714 at *18.* Ultimately, Gucci could not meet the preliminary injunction requirements and its expedited discovery motion was denied.

### B. Standard Two: Reasonableness Inquiry

Other courts have analyzed expedited discovery motions using more liberal standards than the Notaro factors. While no one case provides a comprehensive stan-

2003 U.S. Dist. LEXIS 19832, *

dard as does Notaro, a review of the case law reveals an emerging reasonableness inquiry based on many different factors, including some preliminary injunction factors.

Many of the cases involve expedited discovery that is necessary to gather evidence for a pending preliminary injunction hearing. n1 In Philadelphia Newspaper, Inc. v. Gannett Satellite Information Network, Inc., a court in the Eastern District [*9] of Pennsylvania noted that "expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *1998 U.S. Dist. LEXIS 10511, at *4 (E.D. Pa. July 15, 1998)* (quoting *Ellsworth Associates, Inc. v. United States, 917 F. Supp. 841, 844 (D.D.C. 1996)*). The court expressly rejected the Notaro factors as inappropriate under such circumstances. See *1998 U.S. Dist. LEXIS 10511 at *5 n.1.* In attempting to develop a standard, the court focused on the circumstances of the case: the pending preliminary injunction hearing, the need for discovery, and the breadth of the moving party's discovery requests. If narrowly tailored to fit the needs of the hearing, leave to conduct expedited discovery would be granted. Where the requests are overly broad, as they were in Philadelphia Newspapers, leave is denied.

> n1 See, e.g., *RDS Group Ltd. v. Davison, 2003 U.S. Dist. LEXIS 1337, No. 02-8168 (E.D. Pa. Jan. 17, 2003)* (granting expedited discovery for pending preliminary injunction hearing); *Educational Commission for Foreign School Medical Graduates v. Repik, No. 99-1381, 1999 U.S. Dist. LEXIS 7185 (E.D. Pa. May 14, 1999)*; *BABN Technologies Corp. v. Bruno, No. 98-3409, 1998 U.S. Dist. LEXIS 14802 (E.D. Pa. July 24, 1998)* (same); *Philadelphia Newspaper, Inc. v. Gannett Satellite Information Network, Inc., No. 98-2782, 1998 U.S. Dist. LEXIS 10511 (E.D. Pa. July 15, 1998)* (same); *Energetics Sys. Corp. v. Advanced Cerametrics, No. 95-7956, 1996 U.S. Dist. LEXIS 2830 (E.D. Pa. Mar. 5, 1996)* (same); see also *Gucci, 2000 U.S. Dist. LEXIS 16714 at *17* (rejecting a lower standard because Gucci's discovery motion was not in aid of an impending preliminary injunction hearing).

[*10]

The United States District Court for the Northern District of Illinois added to the standard set forth in Philadelphia Newspapers. In Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor, the court commented that "it makes sense to examine the discovery request, as we have done, on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances, similar to what was done in Philadelphia Newspapers." *194 F.R.D. 618, 624 (N.D. Ill. 2000).* The court examined the appropriateness of expedited discovery by weighing the need for discovery at that point in the litigation with the breadth of the discovery requests, ultimately denying the requests as too broad for such an early stage of litigation.

A similar approach was employed by the United States District Court for the Northern District of California, even though no preliminary injunction hearing was pending. In Semitool, Inc. v. Tokyo Electron America, Inc., the court developed a "good cause" standard akin to the inquiries made in Merrill Lynch and Philadelphia Newspapers. n2 See *208 F.R.D. 273, 275 (N.D. Cal. 2002)* (expressly [*11] rejecting Notaro under the circumstances, citing the "reasonableness" inquiries of Merrill Lynch and Philadelphia Newspapers); see also *Qwest Communication International, Inc. v. Worldquest Networks, Inc., 213 F.R.D. 418 (D. Colo. 2003)* (combining factors discussed in many cases to make "good cause" inquiry). The court used a balancing test, stating that "good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id. at 276.* The circumstances looked at by the court included how far in advance of the start of formal discovery was the motion made, how narrowly tailored are the discovery requests, what is the purpose of the plaintiff in requesting early discovery, do the requests burden the defendants, and whether the defendants are able to respond to the requests in an expedited manner. See *id. at 276-78.* The court concluded that the plaintiff's discovery was appropriate as to the requests made to the defendants, but inappropriate as to the requests made to third parties.

> n2 The "good cause" standard discussed in Semitool should not be confused with the Third Circuit's "good cause" standard used to decide motions for protective orders under *Fed. R. Civ. P. 26(c).* See *Glenmede Trust Co. v. Thompson, 56 F.3d 476 (3d Cir. 1995)*; *Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994).* Because of the possibility of confusion, the Court will refer to the expedited discovery standard as a "reasonableness" inquiry, rather than a "good cause" inquiry.

[*12]

Using the progression of reasoning developed in *Philadelphia Newspapers*, *Merrill Lynch*, and *Semitool*, [HN3] the "reasonableness" inquiry emerges: a district

court should decide a motion for expedited discovery "on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances," unless the circumstances are such that the Notaro factors apply. See *Merrill Lynch, 194 F.R.D. at 624.* Whether or not a preliminary injunction hearing is pending, then, has become one factor to be evaluated among many, rather than an outcome determinative fact.

## C. Applicable Standard

Defendants WDI argues that Plaintiff ETC's motion for expedited discovery should be analyzed under the Notaro factors because the discovery request is essentially the same relief asked for in Part IV of Plaintiff's complaint. Plaintiffs argue that the circumstances of this case are distinguishable from Notaro and that the motion for expedited discovery should be reviewed under a reasonableness analysis. As was stated above, the Court agrees with Plaintiffs as to which standard should apply.

The reasoning behind the [*13] *Notaro* and *Gucci* decisions was that the defendant non-moving party needed protection of the court from the plaintiff's extraordinary discovery requests made extraordinarily early in the litigation process. The need for protecting the defendants from "unwarily incriminating themselves before they have a chance to review the facts of the case and to retain counsel," coupled with the substantive elements of plaintiffs' discovery requests, resulted in the appropriateness of the preliminary injunction-like factors. See *Notaro, 95 F.R.D. at 405.*

In this case, Defendants are not in need of protection. Plaintiff filed the complaint on June 9, 2003, and the pending motion on August 18, 2003. Defendants have retained counsel and are themselves sophisticated corporations. The parties have enjoyed a long contractual relationship under the "Mission: Space" agreements. Parties have filed a complaint and an answer; Defendants have had time to review the facts of the case. Further, the Court can discern no Gucci-like circumstances indicating that Plaintiff ETC is using the litigation as a shell game for the sole purpose of discovering the requested documents. Therefore, [*14] the strict preliminary injunction test should not apply to this case.

The Defendant is correct to point out that the discovery requests do have an element of ultimate relief to them. Given the totality of the circumstances, however, that fact is better weighed against granting the Plaintiff's motion within the rubrik of an overall reasonableness test, rather than used to trigger the strictures of the Notaro test.

### IV. DISCUSSION

When viewed in light of the totality of the circumstances, Plaintiff's expedited discovery request is not reasonable at this time and, accordingly, Plaintiff is denied leave to conduct early discovery.

Weighing in favor of Plaintiff's motion is the fact that the discovery request has not been made too far in advance of the start of formal discovery. The parties have already received their status forms and the case should be calendared relatively soon. Further, the discovery requests are not as overbroad as the requests deemed overbroad in the Philadelphia Newspapers case. See *Philadelphia Newspapers1998 U.S. Dist. LEXIS 10511 at *7-8* (denying expedited discovery because requests for five depositions, a set of interrogatories, and requests for production of documents [*15] were "wholly overboard" and burdensome to defendant). Plaintiff ETC seeks only the production of documents "concerning any testing and analysis of the safety, functioning or performance of the ride, including all components of the Ride." Plf.'s Expedited Document Request No. 1. To the extent that Plaintiff seeks documents from third parties at his early stage, the requests may be overbroad; see *Semitool, 208 F.R.D. at 277-78* (granting expedited discovery as to requests made of opposing party, denying discovery as to requests pertaining to documents held by third parties); but they are not so overbroad that the Court can dismiss the motion based on that factor alone.

Further weighing in favor of granting the Plaintiff's motion is ETC's contention that it will suffer harm to its reputation if the discovery is not expedited. Irreparable harm is one factor to consider in deciding this motion. Weighing against the Plaintiff, however, is the fact that the harm to ETC's reputation that may result from this ruling is the same harm that may result from the contract action in its entirety. This underscores the point raised by Defendant WDI that what Plaintiff seeks in this [*16] expedited discovery motion is close to part of the ultimate relief sought by Plaintiff in its complaint.

There are a number of factors that weigh against, and ultimately lead the Court to deny, Plaintiff's motion. First, there is no pending preliminary injunction hearing for which the parties need to prepare, rendering the need to expedite discovery less urgent. Second, the Court is unconvinced by ETC's arguments that expedited discovery is necessary so that ETC can protect the public by reviewing WDI's testing data.

Third, and most importantly, the Court is unwilling to grant Plaintiff under this motion for expedited discovery what may amount to specific performance of part of the contested contract. Defendant points out that Plaintiff's request for relief in Count IV, paragraph 78(c) is very similar to the document requests made in this mo-

tion. n3 But the fact that Plaintiff may have inserted what amounts to a valid request for discoverable documents in its complaint is of little consequence to this analysis. What is of consequence is how Plaintiff plans to use the testing data if discovered. In its memorandum of law at page two, in support of expedited discovery, ETC states: [*17]

> ETC needs to review the safety testing and analysis data as soon as possible to ensure that the public is not riding an unsafe entertainment ride. If ETC in fact discovers a problem in the safety testing data, it can quickly consult with Disney to try to correct any safety problems before more persons are exposed to danger.

Thus, ETC wants the test data so it can participate in the safety evaluation of the Mission: Space attraction. That is precisely the specific performance ETC requests in its Complaint at Count IV, paragraph 78(a) and (b). The expedited discovery request at issue, then, goes to what may be ultimate issues in this case. That is, whether ETC has a contractual right to perform the testing and whether WDI is qualified to perform the testing without ETC's expertise.

> n3 In its Complaint, Plaintiff requests specific performance in the form of "an order directing Disney immediately to provide ETC with access to any safety or testing data relating to the Ride in Disney's possession, custody or control." Plf's Complaint, Count IV, para. 78 c.

[*18]

For these reasons, the factors against Plaintiff's motion weigh more heavily than those in favor of it. The Court is unconvinced that it should depart from the formal discovery process. Accordingly, Plaintiff's Motion for Leave to Conduct Limited Discovery on an Expedited Basis is denied.

Plaintiff's Motion to Shorten Time to Respond to Motion is denied as moot.

An appropriate Order follows.

**ORDER**

AND NOW, this 2nd day of October, 2003, upon consideration of Plaintiff's Motion for Leave to Conduct Limited Discovery on an Expedited Basis and to Shorten Time to Respond to Motion (Docket No. 12), and for the reasons set forth in the accompanying Memorandum, IT IS HEREBY ORDERED that:

(1) Plaintiff's Motion for Leave to Conduct Limited Discovery on an Expedited Basis is **DENIED**;

(2) Plaintiff's Motion to Shorten Time to Respond to Motion is **DENIED AS MOOT.**

BY THE COURT:

HERBERT J. HUTTON, S.J.

# TAB B

2003 U.S. Dist. LEXIS 25083, *

LEXSEE 2003 U.S. DIST. LEXIS 25083

**SPECIAL SITUATIONS CAYMAN FUND, L.P., SPECIAL SITUATIONS FUND III, L.P. and SPECIAL SITUATIONS TECHNOLOGY FUND, L.P., Plaintiffs, -vs- DOT COM ENTERTAINMENT GROUP, INC., SCOTT F. WHITE, PERRY N. MALONE and TONY DE WERTH, Defendants.**

**03-CV-0811E(F)**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK**

*2003 U.S. Dist. LEXIS 25083*

**December 5, 2003, Decided**

**DISPOSITION:** [*1] Plaintiffs' motion for expedited discovery denied. Plaintiffs' motion for preliminary injunction denied without prejudice.

**COUNSEL:** For Perry N. Malone, Defendant: Frank V. Balon, Webster Szanyi, LLP, Buffalo, NY. Kevin A. Szanyi, Webster Szanyi, LLP, Buffalo, NY.

For Dot Com Entertainment Group, Inc., Defendant: Kevin M. Kearney, Hodgson, Russ, Andrews, Woods & Goodyear, LLP, Buffalo, NY. Robert J. Lane, Jr., Hodgson Russ LLP, Buffalo, NY. Kathleen M. Sellers, Hodgson Russ LLP, Buffalo, NY.

For Special Situations Cayman Fund L.P., Plaintiff: Stephen Michael O'Neill, Damon & Morey LLP, Buffalo, NY. Thomas E. Redburn, Jr., Lowenstein Sandler PC, Roseland, NJ. Gavin J. Rooney, Lowenstein Sandler PC, Roseland, NJ. William F. Savino, Damon & Morey, Buffalo, NY.

**JUDGES:** JOHN T. ELFVIN, S.U.S.D.J.

**OPINIONBY:** JOHN T. ELFVIN

**OPINION:**

MEMORANDUM and ORDER n1

n1 This decision may be cited in whole or in any part.

Plaintiffs, various minority shareholders of Dot Com Entertainment Group ("DCEG"), n2 filed suit on October 31, 2003 seeking [*2] to prevent an allegedly illegal takeover of DCEG by the individual defendants in viola-tion of *sections 13(d) and 14(a)* of the Securities Exchange Act of 1934 ("the 1934 Act"), Florida law and DCEG's By-Laws. Plaintiffs filed a motion on November 19 seeking expedited discovery and a preliminary injunction hearing no later than December 31, 2003. n3 Plaintiffs' request for expedited discovery was argued and submitted on November 28. For the reasons set forth below, plaintiffs' motion for expedited discovery will be denied and their motion for a preliminary injunction will be denied without prejudice.

n2 DCEG develops and supports software for internet gaming operations. It is organized under the laws of Florida.

n3 Plaintiffs seek a preliminary injunction: (1) enjoining the imminent de-registration of DCEG's publicly traded securities; (2) ordering DCEG to convene a shareholders' meeting for the purpose of electing a new board of directors; (3) ordering the individual defendants to immediately file complete and accurate Schedule 13D's; (4) invalidating and disqualifying any proxies obtained by the individual defendants to date and disqualifying the individual defendants from using or relying upon such proxies; (5) enjoining the individual defendants and persons acting in concert with them from soliciting or attempting to solicit proxies from DCEG shareholders until they comply with *sections 13(d) and 14(a)* of the 1934 Act; (6) enjoining the individual defendants from voting their shares at the shareholders' meeting to elect a new board of directors; and (7) enjoining the individual defendants and persons acting in concert with them from further violations of the 1934 Act and regulations thereunder

2003 U.S. Dist. LEXIS 25083, *

[*3]

Plaintiffs ultimately seek to prevent the de-registration of DCEG's shares, which will purportedly become effective January 12, 2004. n4 Plaintiffs contend that the individual defendants failed to file Schedule 13D's as required by *section 13(d) of the 1934 Act* -- thus masking their intent to oust certain outside directors ("the Outside Directors") and to have DCEG's stock de-listed from the Over the Counter Bulletin Board ("OTCBB"). Plaintiffs also contend that the individual defendants violated *section 14(a) of the 1934 Act* when they solicited more than ten shareholders to support their plan to remove the Outside Directors n5 without making the requisite public filings. Finally, plaintiffs contend that the individual defendants violated Florida law and DCEG's By-Laws by improperly removing the Outside Directors. n6 In an Order dated November 20, 2003 this Court scheduled a hearing on December 18 on the issue of whether this Court should schedule a preliminary injunction hearing before December 31.

> n4 Plaintiffs claim that de-listing of DCEG stock would irreparably harm them and that they have been deprived of the right to participate in corporate governance.

[*4]

> n5 Plaintiffs allege that the individual defendants informed the Outside Directors that they had sufficient shareholder support to remove them, but first gave them the option of resigning. The Outside Directors all resigned.

> n6 As DCEG noted at oral argument, the Complaint makes claims against the individual defendants, but not against it.

This Court will assume *arguendo* that the "good cause" standard for obtaining expedited discovery is applicable n7 If this Court were to apply the *Notaro* standard, plaintiffs would have to demonstrate, *inter alia,* that they will suffer irreparable injury. n8 On the other hand, if this Court were to apply the "good cause" standard, plaintiffs would nonetheless ultimately have to demonstrate that they will suffer irreparable injury inasmuch as they are seeking expedited discovery in aid of a preliminary injunction hearing. As discussed below, however, this Court finds no irreparable injury, and thus no good cause exists for expedited discovery in preparation for a preliminary injunction hearing. n9 Moreover, plaintiffs have not articulated anything [*5] sought through discovery that would assist them in articulating

what irreparable harm they may suffer. Consequently, plaintiffs' request for expedited discovery will be denied regardless of the standard applied.

> n7 Courts are split as to whether a party seeking expedited discovery must satisfy a "good cause" or "reasonableness" standard or the more stringent standard set forth in *Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y. 1982),* which largely tracks the standard required for obtaining a preliminary injunction. *Compare Qwest Communications Int'l, Inc. v. Worldquest Networks, Inc., 213 F.R.D. 418, 419-420 (D. Colo. 2003)* (discussing the split over the continuing vitality of *Notaro* and adopting the "good cause" standard) *and Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 275-276 (N.D. Cal. 2002)* (rejecting *Notaro* as having been based on a superseded version of the *FRCvP*) *and Merrill Lynch v. O'Connor, 194 F.R.D. 618, 623-624 (N.D. Ill. 2000)* (noting that *Notaro* involved a requested *permanent* injunction and holding that *Notaro* is inapplicable for a request for expedited discovery in preparation for a *preliminary* injunction hearing) *and Philadelphia Newspapers, Inc. v. Gannett Satellite Info. Network, Inc., 1998 U.S. Dist. LEXIS 10511, 1998 WL 404820, at *2 (E.D. Pa 1998)* (adopting "good cause" standard) *with Irish Lesbian & Gay Org. v. Giuliani, 918 F. Supp. 728, (S.D.N.Y. 1996)* (applying *Notaro* where expedited discovery was sought in preparation for a preliminary injunction hearing) *and Cecere v. Cty. of Nassau, 258 F. Supp. 2d 184, 186 (E.D.N.Y. 2003)* (applying *Notaro* standard in case involving constitutional challenge to legislative redistricting); *Gucci Am., Inc. v. Daffy's, Inc., 2000 U.S. Dist. LEXIS 16714, 2000 WL 1720738, at *5-6 (D.N.J. 2000)* (applying *Notaro* in infringement action); *see also Ellsworth Assocs., Inc. v. United States, 917 F. Supp 841, 844 (D.D.C. 1996)* (holding that good cause for expedited discovery may exist where a party seeks a preliminary injunction). One court has amalgamated these standards into one test. *Entertainment Tech Corp v. Walt Disney Imagineering, 2003 U.S. Dist. LEXIS 19832, 2003 WL 22519440, at *2-4 (E.D. Pa 2003)* (adopting a "reasonableness" inquiry "unless the circumstances are such that the *Notaro* factors apply"). In light of this Court's ensuing discussion, there is no need to select the appropriate standard to be applied to a request for expedited discovery because plaintiffs' request fails under either standard.

[*6]

n8 *Notaro, supra note 7, at 405* (requiring party seeking expedited discovery to demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater the injury that the defendant will suffer if the expedited relief is granted")

n9 Indeed, if there is no irreparable harm, then a preliminary injunction would be inappropriate and, if no preliminary injunction hearing is necessary, there is then no need for expedited discovery

Plaintiffs have failed to demonstrate that they will suffer irreparable harm if this Court does not grant their request for expedited discovery (and ultimately their request for a preliminary injunction). In *Justin Indus. v. Choctaw Sec. L.P., 747 F. Supp. 1218, 1219 (N.D. Tex.), aff'd, 920 F.2d 262, 268-269 (5th Cir. 1990)*, Choctaw Securities ("Choctaw"), a minority shareholder of Justin Industries, made a tender [*7] offer that was rejected by Justin Industries' board of directors. The board brought suit against Choctaw alleging violation of section *13(d)* of the 1934 Act. *Ibid.* Choctaw made various counterclaims, including a request for preliminary and permanent injunctive relief requiring Justin Industries to hold a new election for directors. *Id. at 1220-1221.* Choctaw's purpose in electing a new board of directors was the elimination of certain defensive measures such as a "poison pill" adopted by the board of directors. *Id. at 1221.* The district court held that Choctaw had failed to demonstrate irreparable harm because it had failed to exhaust its legal remedies by calling a special shareholders' meeting pursuant to Justin Industries' by-laws. *Ibid.* Indeed, the court noted that it was "troubled by the fact that the precise relief that Sutherland [-- one of Choctaw's principals --] seeks, a new election of directors, is within Choctaw's powers and privileges as a 10% shareholder." *Ibid.* n10 The court also noted that the minority shareholder could "achieve the same remedy and the same result that a court-ordered injunction would accomplish." *Ibid.* [*8] n11 The district court was affirmed on appeal by the Fifth Circuit Court of Appeals on the same grounds. *Justin Indus. v. Choctaw Sec. L.P., 920 F.2d 262, 268-269 (5th Cir. 1990)* n12

n10 Like DCEG's By-Laws, Justin Industries' By-Laws permitted a 10% shareholder to call a special shareholders' meeting. *Justin Indus., at 1221.*

n11 The District court further noted that:

"By virtue of the bylaws, Sutherland, himself, can call for a special election of directors and can run his own slate of candidates for office. To date he has not done so. Should he choose to exercise this option and should he be successful, Sutherland and his handpicked Board can undo all of the 'entrenchment devices' allegedly put in place by the current Board. *** Thus, until such time as Sutherland has exhausted his legal remedies and can show irreparable harm, this Court will not intervene in the affairs of the corporation and no injunction will issue." *Justin Indus., at 1221.*

n12 The Court of Appeals held that Sutherland's "self-help remedy means that [he] has not necessarily suffered an injury that is incapable of repair without judicial intervention." *Justin Indus. v. Choctaw Sec. L.P., 920 F.2d 262, 269 (5th Cir. 1990).* The court nonetheless noted that the minority shareholders' self-help remedy was inferior to the remedy being sought from the court because the self-help remedy involved a more burdensome voting standard. In the present case, however, the rules governing the election of directors are the same for both the annual and special shareholders' meetings pursuant to Art. 2, § 15 of DCEG's By-Laws.

[*9]

The analysis of *Justin Indus.* is applicable here. Article 2, section 3 of DCEG's By-Laws provides that:

"Special meetings of the shareholders shall be held when called by the Board of Directors, or when requested in writing by the holders of not less than ten percent (10%) of all shares entitled to vote at the meeting." DCEG By-Laws, art. 2, § 3.

2003 U.S. Dist. LEXIS 25083, *

Plaintiffs hold in excess of ten percent of DCEG's shares. They are thus able to call a special shareholders' meeting wherein they can (1) discuss the alleged failure to file certain regulatory disclosures and (2) present a slate of directors including the Outside Directors for a shareholder vote n13 Consequently, plaintiffs have the opportunity to have elected a slate of directors that would reverse the actions taken by DCEG to de-list itself from the OTCBB. Plaintiffs thus fail to demonstrate that they will be irreparably harmed because they have recourse to a self-help remedy that is the same as the remedy sought from this Court. *Justin Indus., at 1221.*

> n13 DCEG's counsel conceded in its parting volley at oral argument that plaintiffs could call a new election of directors at a special meeting convened pursuant to art. 2, § 3 of the DCEG By-Laws.

[*10]

The Second Circuit Court of Appeals has held that a preliminary injunction requires "a showing of irreparable harm, the absence of an adequate remedy at law, which is the *sine qua non* for the grant of such equitable relief." n14 Plaintiffs failed to demonstrate the requisite irreparable harm for several reasons. First, like the minority shareholder in *Justin Indus.*, plaintiffs have an adequate legal remedy in Article 2, section 3 of DCEG's By-Laws *Justin Indus. v. Choctaw Sec. L.P., 920 F.2d 262, 269 (5th Cir. 1990).* n15 Second, to the extent that plaintiffs' ultimate complaint about DCEG's pending de-listing is the illiquidity of its shares -- and the consequent devaluation of plaintiffs' holdings -- plaintiffs may seek money damages for any loss in value. n16 Third, defendants' alleged violation of *section 13(d) of the 1934 Act* does not establish irreparable harm because plaintiffs have the ability to call a special shareholders' meeting to inform other shareholders about plaintiffs' allegations. n17 Finally, inasmuch as there was no tender offer or other proposal to be voted upon by the DCEG shareholders, the alleged violations of *sections 13(d) and* [*11] *14(a)* of the 1934 Act do not constitute irreparable harm. n18 Accordingly, plaintiffs' motion seeking expedited discovery and a preliminary injunction will be denied. n19

> n14 *Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981); see also Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995) (quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, 596 F.2d 70, 72 (2d Cir. 1979)* for the proposition that "irreparable harm means injury for which a monetary award cannot be adequate compensation").

> n15 Although the denial of a minority's right to participate in corporate management may constitute irreparable harm -- *see Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co. Ltd., 339 F.3d 101, 115 (2d Cir. 2003)* (citing cases) --, plaintiffs' ability to call a special shareholder meeting indicates that they have not been denied such a right. Moreover, inasmuch as DCEG stock has been illiquid for some time -- as disclosed in DCEG's 10KSB's for 2000 and 2002 --, this case is distinguishable from *Norlin Corp. v. Rooney, Pace, Inc., 744 F.2d 255 (2d Cir. 1984).* *Norlin* is also distinguishable by the fact that it involved NYSE de-listing -- as opposed to DCEG's pending OTCBB de-listing. This Court declines to interpret *Norlin* as holding that de-listing of any stock from any exchange constitutes irreparable harm under any circumstances. The parties have not briefed whether the *Norlin* rationale nonetheless applies here and plaintiffs may present such argument in the event that they renew their motion.

[*12]

> n16 *See Steiner v. Gordon Jewelry Corp., 675 F. Supp. 90, 92 (E.D.N.Y. 1987)* (noting that shareholder's preliminary injunction request failed because, *inter alia,* he failed to demonstrate irreparable harm where the stockholders could seek damages for any decrease in value of their shares due to de-listing of the company) Indeed, plaintiffs submitted an affidavit of an investment adviser, David M. Greenhouse, which stated that if DCEG were de-listed, its "small shareholders (including Special Situations) will likely be forced to sell their positions in the [DCEG] stock." Greenhouse Aff. P10. This further demonstrates that plaintiffs' ultimate harm would be a loss in stock value, which may be adequately remedied by money damages.

> n17 *Cf. ICN Pharmaceuticals v. Khan, 2 F.3d 484, 489 (2d Cir. 1993)* ("An injunction will issue for a violation of § 13(d) only on a showing of irreparable harm to the interests which that section seeks to protect. Those interests are fully satisfied when the shareholders receive the information required to be filed.") (citations omitted and quoting *Treadway Cos. v. Care Corp., 638 F.2d 357 (2d Cir. 1980)); Int'l Banknote Co., Inc. v. Muller, 713 F. Supp. 612, 621 (S.D.N.Y. 1989)* (holding that violation of *section 13(d) of the 1934 Act* did not establish irreparable harm because an adequate legal remedy existed that

2003 U.S. Dist. LEXIS 25083, *

would rectify the harm that had occurred -- to wit, a curative disclosure); *see also Pantry Pride, Inc. v. Rooney, 598 F. Supp. 891, 899 (S.D.N.Y. 1984)* (holding that irreparable harm did not exist where the court had the power to, *inter alia*, set aside the subject election if the defendants' proxies were "ultimately found to be in violation of the securities laws")

[*13]

n18 *See Onbancorp, Inc. v. Holtzman, 956 F. Supp. 250, 256 (N.D.N.Y. 1997)* (citing *Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 64-65, 45 L. Ed. 2d 12, 95 S. Ct. 2069 (1975)* for the proposition that "*Mills* [v. *Elec. Auto-Lite Co., 396 U.S. 375, 382-383, n 5, 24 L. Ed. 2d 593, 90 S. Ct. 616 (1970)]* did not stand for the proposition that mere violation of the *Exchange Act* establishes irreparable harm"); *Int'l Banknote, supra note 17, 713 F. Supp. at 620* (noting that the purpose of *section 13(d)* is to ensure that shareholders are not forced to respond to tender offers

without adequate information); *id. at 622* (noting that the purpose of *section 14(a)* is to ensure adequate disclosure of information and holding that irreparable harm is not established where a curative disclosure will remedy material omissions or misstatements).

n19 Inasmuch as plaintiffs have access to an intra-corporate remedy, this Court declines to set aside DCEG's democratic structures.

Accordingly, it is hereby ORDERED that plaintiffs' motion for expedited discovery is denied, that plaintiffs' [*14] motion for preliminary injunction is denied without prejudice and that the hearing scheduled for December 18, 2003 is canceled.

DATED: Buffalo, N.Y.

December 5, 2003

JOHN T. ELFVIN

S.U.S.D.J.

TAB C

2006 U.S. Dist. LEXIS 30119, *

LEXSEE 2006 U.S. DIST. LEXIS 30119

**BETTER PACKAGES, INC., Plaintiff, v. ALAN Y. ZHENG, et al.,**

**Civil Action No. 05-4477 (SRC)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2006 U.S. Dist. LEXIS 30119*

**May 17, 2006, Filed**

**COUNSEL:** [*1] For BETTER PACKAGES, INC., a Delaware Corporation, Plaintiff: PAUL F. CAMPANO, DILLON, BITAR & LUTHER, LLC, MORRISTOWN, NJ; ROBERT W. DELVENTHAL, MORRISTOWN, NJ; PETER E. MORAN, DILLON, BITAR & LUTHER, LLC, MORRISTOWN, NJ.

For SINACOM CHINA CO., LTD, a Hong Kong company, SINACOM (NORTH AMERICA), INC., a Pennsylvania corporation also known as SINACOM also known as SINOCOM, INC., SHANGHAI OPEC OFFICE PACKING EQUIPMENT CO, a Hong Kong Company, Defendants: STEVEN M. RICHMAN, DUANE MORRIS LLP, HAMILTON, NJ.

For MCDONALD COMPANY MACHINES, a Pennsylvania corporation, MCDONALD COMPANY, INC., a New Jersey or Pennsylvania corporation, SHIPPING SYSTEMS & SUPPLIES, INC., a Pennsylvania corporation, JOHN F. MCDONALD, individually, MARY MCDONALD, individually, BRIAN MCDONALD, individually, JOHN E. DUROSE, utilizing the trade name BP SALES & SERVICE, RONALD GOLDSMITH, individually doing business as CENTRAL PARKS doing business as R.G. PACKAGING, Defendants: PAUL J. MASELLI, MASELLI, WARREN, P.C., PRINCETON, NJ.

For MCDONALD COMPANY MACHINES, a Pennsylvania corporation, MCDONALD COMPANY, INC., a New Jersey or Pennsylvania corporation, SHIPPING SYSTEMS & SUPPLIES, [*2] INC., a Pennsylvania corporation, JOHN F. MCDONALD, individually, MARY MCDONALD, individually, BRIAN MCDONALD, individually, JOHN E. DUROSE, utilizing the trade name BP SALES & SERVICE, RONALD GOLDSMITH, individually, Counter Claimants: PAUL J. MASELLI, MASELLI, WARREN, P.C., PRINCETON, NJ.

For BETTER PACKAGES, INC., a Delaware Corporation, Counter Defendant: PETER E. MORAN, DILLON, BITAR & LUTHER, LLC, MORRISTOWN, NJ.

**JUDGES:** HONORABLE TONIANNE J. BONGIOVANNI, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** TONIANNE J. BONGIOVANNI

**OPINION:**

**OPINION AND ORDER**

**BONGIOVANNI, United States Magistrate Judge**

This matter comes before the Court upon a Motion by Plaintiff, Better Packages, Inc. (hereinafter "Plaintiff") for Expedited Discovery, Docket Entry # 20. Defendants, McDonald Company Machines, McDonald Company, Inc., Shipping System & Supplies, Inc., John F. McDonald, Mary McDonald, Brian McDonald, John E. DuRose (individually and under the trade name BP Sales and Service) and Ronald Goldsmith (individually and doing business as Central Parts or R.G. Packaging) (hereinafter "Defendants"), oppose the Motion. For the reasons stated below, Plaintiff's Motion is DENIED.

[*3] **I. Procedural History**

Plaintiff commenced this action by Complaint filed on September 7, 2005. Plaintiff's Complaint alleges: Count I - Infringement of Plaintiff's trademarks in violation of *15 U.S.C.A. § 1114* and violations of the Court's prior Orders and the stipulations of the parties; Count II - appropriation of Plaintiff's name, reputation and goodwill and a violation of *N.J.S.A. 56:4-1*; Count III - false representations in violation of *15 U.S.C.A. § 1125(a)* and dilution of Plaintiff's trademark in violation of *15 U.S.C.A § 1125(c)* and *N.J.S.A. 56:3-13.20*; violation of the New Jersey Consumer Fraud Act, *N.J.S.A. 56:8-1*,

*et seq.*; violation of the New Jersey Trafficking or Attempting to Traffic in Counterfeit Marks Law, *N.J.S.A. 56.3-13.16*; interference with Plaintiff's economic advantage with its existing customers and users; unprivileged imitation and passing off; and civil conspiracy. Defendants filed their Answer to Plaintiff's Complaint with Counterclaim on October 25, 2005.

On February 17, 2006, Plaintiff [*4] filed a Motion for Expedited Discovery in anticipation of filing a Motion for Preliminary Injunction. Plaintiff filed the Motion for Preliminary Injunction on February 21, 2006.

## II. Factual Background

The parties have a long and contemptuous history. Prior to the commencement of this present action, Plaintiff obtained a Temporary Restraining Order on October 17, 1994 enjoining John F. McDonald Company and other parties, including Defendant Zheng, from manufacturing, soliciting, advertising, promoting, merchandising, selling, distributing, servicing or otherwise imitating or passing off Durapak models 9500 or 9300, the model machine allegedly in violation of Plaintiff's trademark. A Preliminary Injunction Order was entered by this Court on November 9, 1994. The preliminary injunction enjoined McDonald from removing any equipment from any warehouse or storage facility. On April 22, 1998, as part of Defendant McDonald's bankruptcy proceedings, John F. McDonald Company and Shipping System and Supplies Inc. stipulated to be bound by the prior preliminary injunction and a permanent injunction entered against Defendant Zheng on April 24, 1995.

Plaintiff alleges that Defendants [*5] began manufacturing and arranging for the production of a new line of equipment under the "Phoenix" model name in 1995. Plaintiff admits that at the time the Phoenix models did not appear similar to any of Plaintiff's machines. However, in May 2004, Plaintiff discovered that Defendants, Sinacom China and/or Sinacom North America, allegedly began to manufacture a Better Packages' model machine under a Phoenix model name for McDonald. Sinacom's production of the Phoenix model is the basis for this present action.

Plaintiff is seeking leave to conduct expedited discovery in preparation for a hearing on its Motion for Preliminary Injunction. Plaintiff argues that the requested discovery is narrowly tailored to address only those issues likely to be raised in a hearing on the preliminary injunction and the requested discovery is necessary in order for Plaintiff to adequately prepare for a preliminary injunction hearing. Defendants oppose Plaintiff's Motion and argue that the requested discovery is overly broad and extends beyond any information that may be required for a preliminary injunction hearing.

## III. Legal Standard

*Federal Rule of Civil Procedure 26* [*6] provides the courts with very broad discretion in the management of the discovery process. See *Fed. R. Civ. P. 26*. A party may not seek discovery from any source before the parties have conferred as required by *Rule 26(f). Fed. R. Civ. P. 26(f)*. However, the court, upon motion, for the convenience of the parties and witnesses and in the interest of justice, may grant leave to conduct discovery prior to a conference amongst the parties. *Fed. R. Civ. P. 26(d)*.

Unlike most other discovery provisions within the Federal Rules, these provisions contain little guidance regarding the granting of expedited discovery. Courts have generally employed one of two standards for determining the appropriateness of expedited discovery. The first is the more formal analysis outlined in *Notaro v. Koch, 95 F.R.D. 403 (S.D.N.Y. 1982)*. The Notaro standard is very similar to a preliminary injunction analysis and looks more closely at the merits of the requests. The second is the reasonableness standard, which requires the party seeking the discovery to prove that [*7] the requests are reasonable under the circumstances. *Entertainment Technology, Corp. v. Walt Disney Imagineering, 2003 U.S. Dist. LEXIS 19832, No. 03-3546, 2003 WL 22519440 at *3 (E.D.Pa. October 2, 2003)*; *Gucci America, Inc. v. Daffy's, Inc., 2000 U.S. Dist. LEXIS 16714, No. 00-4463, WL 1720738 (D.N.J. Nov. 14, 2000)*; *Philadelphia Newspaper Corp. v. Gannett Satellite Information Network, Inc., 1998 U.S. Dist. LEXIS 10511, No. 98-CV-27821, WL 404820 (E.D.Pa. July 15, 1998)*.

### A. *Notaro* Standard

Under the Notaro standard the moving party must demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Notaro, 95 F.R.D. at 405*. The court reasoned that such stringent standards are appropriate to protect defendants at such an early stage of the litigation. Id. In *Gucci America, Inc. v. Daffy's Inc., 2000 U.S. Dist. LEXIS 16714, 2000 WL 1720738*, the Court applied the Notaro standard in denying a request for expedited discovery [*8] because the request had a substantive element to it. *2000 U.S. Dist. LEXIS 16714, [WL] at *6*. The Court believed that Gucci intended to use the information sought through discovery to root out certain Gucci distributors improperly selling their handbags or "knock-off" handbags to defendant at discounted prices

2006 U.S. Dist. LEXIS 30119, *

*2000 U.S. Dist. LEXIS 16714, [WL] at *5-6.* The Court also noted that being forced to reveal their distributor would greatly harm Daffy's interest and give Gucci the information they desired as the ultimate goal of the litigation. The heightened standard was appropriate because of Gucci's questionable motives. *2000 U.S. Dist. LEXIS 16714, [WL] at *6.*

### B. Reasonableness Standard

The reasonableness standard is considerably more liberal than the Notaro standard and has evolved considerably recently. Application of this standard depends on the actual circumstances of each case, as well as consideration of certain factors such as a pending preliminary injunction hearing, the need for the discovery and the breadth of the requests. *Entertainment Tech., Corp., 2003 U.S. Dist. LEXIS 19832, 2003 WL 22519440 at *3.* The Eastern District of Pennsylvania Court has noted that "expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief [*9] because of the expedited nature of injunctive proceedings." *Philadelphia Newspaper Corp., 1998 U.S. Dist. LEXIS 10511, 1998 WL 404820 at *2* (quoting *Ellsworth Associates, Inc. v. United States, 917 F.Supp. 841, 844 (D.D.C. 1996)).* "Expedited discovery has been ordered where it would 'better enable the Court to judge the parties' interests and respective chances for success on the merits' at a preliminary injunction hearing." *Philadelphia Newspaper Corp., 1998 U.S. Dist. LEXIS 10511, 1998 WL 404820 at *2*(quoting *Edudata Corp. v. Scientific Computers, Inc., 599 F.Supp. 1084, 1088 (D.Minn. 1984), aff'd in part, rev'd in part on other grounds 746 F.2d 429 (8th Cir. 1985)).* If narrowly tailored to fit the needs of a preliminary injunction hearing, leave to conduct expedited discovery should be granted. *Entertainment Tech., Corp., 2003 U.S. Dist. LEXIS 19832, 2003 WL 22519440 at *3.* Where the requests are overly broad and extend beyond the needs of the preliminary injunction, leave should be denied. *Id.*

The court should examine the appropriateness of a request for expedited discovery by weighing the need for the discovery at that point in the litigation with the breadth [*10] of the discovery requests. *Id.* (citing *Merrill Lynch, Pierce Fenner & Smith, Inc. v. O'Connor, 194 F.R.D. 618 (N.D.Ill. 2000)).* A number of courts have applied a "good cause" test similar to the inquiry made in Merrill Lynch and Philadelphia Newspaper. See *Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 275(N.D.Cal. 2002);* see *Merrill Lynch, Pierce Fenner & Smith, Inc., 194 F.R.D. at 624,* and *Philadelphia Newspaper, 1998 U.S. Dist. LEXIS 10511, 1998 WL 404820 at *2.* This test weighs the need for expedited discovery by considering the overall administration of justice against the prejudice to the responding party. *Semitool, Inc., 208 F.R.D. at 276.* The factors considered include how far in advance of the formal start of discovery the request is made, whether the discovery are requests narrowly tailored, the purpose of the requested early discovery, whether the discovery burdens the defendants, and whether the defendants are able to respond to the requests in an expedited manner. *Id. at 276-78.*

Building upon this precedent, in deciding a motion for expedited discovery, this Court should [*11] look at "'the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances,' unless the circumstances are such that the Notaro factors apply." *Entertainment Tech. Corp., 2003 U.S. Dist. LEXIS 19832, 2003 WL 22819440 at *4* (quoting *Merrill Lynch, 194 F.R.D. at 624*)

### IV. Applicable Standard

Leave to conduct expedited discovery in this case is governed by the reasonableness standard. A large part of the reasoning behind the court's heightened standard for expedited discovery in Notaro and the reason for the court's application of Notaro to Gucci was that the non-moving party in both cases needed protection from the plaintiff's extraordinary discovery requests at such an early stage of the litigation. *Notaro, 95 F.R.D. at 405; Gucci, 2000 U.S. Dist. LEXIS 16714, 2000 WL 1720738 at *6.* The protection of the court provided defendants with the time necessary to investigate the facts and circumstances surrounding the litigation without fear of incriminating themselves by turning over discovery at such an early stage of litigation. See *Notaro, 95 F.R.D. at 405.* Also, neither matter [*12] involved a pending preliminary injunction hearing.

In the instant case, defendants are not in need of the court's protection. First, Defendants have retained counsel and had more than four months from the date of service of the Complaint to the filing of this motion to review the facts of the case. See *Entertainment Tech. Corp., 2003 U.S. Dist. LEXIS 19832, 2003 WL 22819440 at *4.* Second, and more important, the parties have a long-standing relationship. Plaintiff has received a temporary restraining order, a preliminary injunction and one permanent injunction for trademark infringement against similar entities associated with Defendant John F. McDonald. Further, a representative of Plaintiff was involved in Defendants' bankruptcy reorganization hearing, where Defendants entered into a stipulation extending all prior injunctions. The extensive knowledge obtained through these prior dealings by both parties negates any need for protection from the court. Absent the need for heightened scrutiny and the Court's protection, the reasonableness standard should apply.

### V. Discussion

2006 U.S. Dist. LEXIS 30119, *

Plaintiff's request for leave is denied because Plaintiff's expedited discovery request is not reasonable [*13] at this time.

While Defendants' conduct, in light of the numerous steps taken by Plaintiff to insure the sanctity of its trademark and trade dress, is potentially egregious, the intimate knowledge that the parties have with one another weighs heavily against the granting of expedited discovery. The parties have dealt with one another for nearly ten years. Plaintiff has obtained a temporary restraining order, a preliminary injunction and a permanent injunction against entities allegedly owned, controlled or operated by Defendant McDonald for actions similar to those alleged in the pending Motion for Preliminary Injunction. The record to date extends well beyond the record established thus far in this case to the point where much of the information requested may already be in Plaintiffs' or a prior counsel's possession.

Further, the Court is reluctant to burden Defendant with expedited discovery that may be nothing more than superfluous or secondary evidence in proving the elements necessary to obtain the preliminary injunction. n1 Many of the requests to produce, interrogatories and depositions are overly broad and extend well beyond those issues likely to arise in a preliminary injunction [*14] hearing. Plaintiff requests the deposition of Messrs. Zheng, McDonald, DuRose and Goldsmith, as well as the primary internet service providers and/or website hosts and possibly a representative from a search engine company. The court does not dispute the potential relevance of these depositions to the merits of the overall case. However, Plaintiff has not limited the scope of the questioning of these individuals to those matters specifically related to the determination of the preliminary injunction. Moreover, to the extent that Plaintiff seeks discovery from third parties at this early stage, the requests are overbroad. See *Entertaiment Tech. Corp, 2003 U.S.*

*Dist. LEXIS 19832, 2003 WL 22819440 at *5* (citing *Semitool, Inc., 208 F.R.D. at 277-78*))

> n1 While not commenting in anyway on the merits of Plaintiffs' right to a preliminary injunction, Plaintiffs' primary basis for the right to the preliminary objection is Defendants alleged violation of prior injunctions.

Many of the discovery requests also go directly [*15] to the merits of Plaintiff's claims against Defendants. Plaintiff's supporting factual basis for its preliminary injunction is nearly identical to those allegations contained in its Complaint. The scope of the requested discovery and Defendants likely discovery in response would lead to the parties conducting nearly all discovery in an expedited fashion under the premise of preparing for a preliminary injunction hearing, which is not the purpose of expedited discovery. Finally, there is no pending preliminary injunction hearing for which the parties need to prepare that would make expedited discovery necessary.

Given the overly broad scope of the requested depositions and written discovery, the knowledge the parties have of the other's prior actions and the lack of a pending preliminary injunction hearing, the request for leave must be denied.

## VI. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Plaintiff's Motion for Expedited Discovery is DENIED.

**HONORABLE TONIANNE J. BONGIOVANNI**

**UNITED STATES MAGISTRATE JUDGE**

# TAB D

Wednesday August 23, 2006

Assistance (Civil and Commercial), International Law Institute, (1995 supp.), Appendix C, A-50 *ff.*

**PURPOSE** : The Hague Evidence Convention codifies the taking of depositions on notice and commission before consuls and court appointed commissioners, providing minimum standards with which contracting states agree to comply. The Convention's primary purpose is to reconcile different, often conflictive, discovery procedures in civil and common law countries. The Convention also streamlines procedures for compulsion of evidence, utilizing a form "letter of request" which can be sent directly by the court in the U.S. to a foreign central authority, eliminating the cumbersome "diplomatic channel". (See International Soc"y for Krishna Consciousness, Inc. v. Lee, 105 F.R.D. 435, 442-443 (S.D.N.Y. 1984) and Philadelphia Gear Corp. v. American Pfauter Corp., 100 F.R.D. 58, 59 (E.D. Pa. 1983). The foreign central authorities are listed below. (Note: Rule 28(b) F.R.Cv.P. provides for depositions to be taken abroad pursuant to "any applicable treaty or convention.") For a general discussion of the Convention, see, Restatement (Third) Foreign Relations Law of the United States Sec. 473 (2) (1987); Ristau, International Judicial Assistance (Civil and Commercial), International Law Institute, Sec. 5-1-1 - 5-3-4, pp. 159-237, (1995 Supp.); Epstein & Snyder, International Litigation: A Guide to Litigation, Practice & Strategy, 2nd, Prentice Hall Law & Business, Sec. 10.10 - pp. 10-17 - 10-33 (1994 Supp.); Moore's Federal Practice, 3rd, Sec. 28.11, p. 28-9 - 28-22 (March 1997); Digest of United States Practice in International Law, U.S. Department of State, Office of the Legal Adviser, 1973, p. 210-213; 1976, p. 309; 1977, p. 490-492; 1978, p. 870-878, 1709; 1979, 891; 1980, 504-505; 1981-1988 Cumulative Digest, 1409, 1419, 1425-1426, 1509, 1510-1516. 1550, 1557, 1564.

**DECLARATIONS AND RESERVATIONS:** Each country had the opportunity of making reservations and declarations regarding the applicability of each article of the Convention. This makes the Convention different for each country, so it is important to review our country-specific judicial assistance flyers.

**EXCLUSIVITY:** The nonexclusivity of the Hague Evidence Convention procedures was at issue in **Societe Nationale Industrielle Aerospatiale v. U.S. District Court, 482 U.S. 522, 96 L.Ed.2d 461, 107 S.Ct. 2542 (1987)** , where the U.S. Supreme Court held that the Convention did not bar a district court, pursuant to the Federal Rules of Civil Procedure, from ordering a foreign litigant over which that court exercised personal jurisdiction to produce evidence located within the foreign litigant's own territory. **But see** , "Selected Cases" below. For a discussion of the *Aerospatiale* case and the nonexclusivity of the Convention, see Cumulative Digest of United States Practice in International Law, 1981-1988,

U.S. Department of State, Office of the Legal Adviser, Vol. 2, p. 1516-1524 (1994) and Vol. 3, p. 3704-3707 (1995), Ristau, Sec. 5-2-7, pp. 229-231.5 (1995 Supp.), Born & Westin, 319,334; Epstein & Snyder, Sec. 10.11 - 10.12, pp. 10-20, 10-27; Wright, Miller & Marcus, Federal Practice and Procedure, Civil, Sec. 2005.1, p. 68-76 (1994) and 1996 pocket part; Moore's Federal Practice, Sec. 28.11[3], p. 28-11- 28-12, and other treatises on the subject, some of which are noted under "Selected References" below.

**SCOPE OF THE CONVENTION:** Article 1 of the Convention provides that assistance is to be provided in "civil and commercial" matters. The term "civil and commercial" is not defined. See Ristau, Sec. 5-1-4, p. 162-168, (1995 Supp.), Born & Westin 310,312; and the Reports of the Special Commissions on the operation of the Convention noted below.

**U.S. CENTRAL AUTHORITY:** Office of International Judicial Assistance, Civil Division, Department of Justice, 1100 L St., N.W., Room 11006, Washington, D.C. 20530, tel: (202) 307-0983; fax: (202) 514-6584.

**TAKING DEPOSITIONS OF WILLING WITNESSES:** Each country party to the Convention made specific reservations and declarations when they deposited their instruments of accession to the Convention. Some countries allow the taking of depositions of willing witnesses only under certain

specific conditions. For example, some countries require case-by-case permission from the foreign central authority before a voluntary deposition can be taken. See our country-specific flyers for details. The declarations and reservations made by countries party to the Convention can be found in the Martindale-Hubbell Law Directory, Selected International Conventions (via the Internet, Martindale-Hubbell website: **http://www.martindale.com/products/intl law dir.html**) and in the Practical Handbook on the Operation of the Hague Convention on the Taking of Evidence Abroad. See Ristau, Sec. 5-3-1- 5-2-4, pp. 232-238.4, (1995 Supp.) and Born & Westin, 315-317; Epstein & Snyder, Sec. 10.10[4], pp. 10.18 -10-20. Consult our country-specific flyers; see "Additional Information" below.

**DEPOSITIONS TAKEN BY COURT APPOINTED COMMISSIONERS OTHER THAN CONSULAR OFFICERS:** Article 17 provides for the possibility of court appointed commissioners to take depositions under restrictions similar to those confronting consular officers. To date, only Finland and the United States have given broad permission for court appointed commissioners to take depositions. The United Kingdom approves such depositions on a reciprocal basis. But see our country specific flyers for additional details. Some countries, such as Denmark and Portugal, made specific declarations prohibiting such activities by court appointed commissioners. In other countries, specific permission must be sought from the foreign central authority for a commissioner other than a consular officer to conduct depositions. See Ristau, Sec. 5-3-3, pp. 236-238, (1995 Supp.); Born & Westin 316.

**ARRANGING CONSULAR DEPOSITIONS:** When a U.S. consular officer is needed to preside at the taking of a voluntary deposition at an American embassy or consulate scheduling depositions is done directly by our embassies and consulates at a time and date mutually convenience to the participants and the consular officer. The U.S. consular officer generally administers the oaths to the witnesses, court reporter and interpreter and withdraws, subject to recall. The actual questions are posed by the attorneys. (See 22 C.F.R. 92.56, consular officers will comply with special instructions which accompany the request for deposition on notice or commission.) Requesting counsel must make arrangements with the witness to insure his or her appearance for the deposition (travel fees, witness fees, etc.) The U.S. Embassy/Consulate may be able to provide information concerning interpreters, translators and audio/video operators. Private counsel must make their own arrangements to retain the services of interpreters, translators and audio/video operators. Note: not all foreign countries have court reporters, interpreters and translators. American embassies and consulates do not have staff personnel available to perform such functions. It may be necessary to bring your own experts in these fields from the United States. Consult the U.S. embassy or consulate or the embassy or consulate of the foreign country regarding foreign Customs restrictions concerning bringing video and other equipment into a the foreign country. Consult our general information flyer "Obtaining Evidence Abroad" for detailed information about arranging consular depositions, telephone depositions, depositions on written questions, videotaping depositions, etc. See Ristau, Sec. 5-3-2, pp. 234-236 (1995 Supp.) for a discussion of consular depositions.

**U.S. FEDERAL, STATE OR LOCAL GOVERNMENT PARTICIPANTS:** . U.S. federal, state and local government officials interested in obtaining evidence abroad should contact the Office of American Citizens Services (ACS) at (202) 647-5226. ACS assists these officials in making the necessary arrangements for testimony of foreign officials, host country clearance and can assist them in retaining the services of stenographers, interpreters and video operators, where available. A copy of the host country clearance questionnaire will be faxed to you. It will also be available via our Internet Home Page and Autofax Service.

**PRE-TRIAL DISCOVERY OF DOCUMENTS** : Most countries party to the Convention, with the exception of the Czech Republic, Israel, the Slovak Republic and the United States, made specific declarations objecting to the Article 23 provision on pre-trial discovery of documents. See Ristau, Sec. 5-2-5, p. 205-223 (1995 Supp.); Born & Westin, 313, 315.

**COMPULSION OF EVIDENCE:** Testimony and documentary or physical evidence may be compelled using the "Model Letter of Request" provided in the Hague Evidence Convention. The court in the U.S. transmits the request with appropriate translations directly to the foreign central authority. See Moore's Federal Practice, 3d, Section 28.12[8].

**MODEL REQUEST FORM:** Article 3 provides mandatory provisions concerning the content of the letter of request. See Ristau, Sec. 5-2-1(1), p. 173-175 (1995 Supp.). See Martindale-Hubbell Law Directory, Selected International Conventions; Ristau, Appendix C, DS-64 through DS-65 (1995 Supp.) for the model letter of request form to compel evidence. For a sample application to a U.S. court for issuance of a letter of request under the Convention, see Ristau, Sec. 5-2-1(3) p. 177-178 (1995 Supp.). For a sample completed letter of request using the recommended form see Ristau, Sec. 5-2-1(4), p. 179-184 (1995 Supp.) The request should include any specific procedures desired by the requesting court, such as verbatim transcripts or participation in the proceedings before the foreign court by American counsel or local counsel representing the American firm. See also Born & Westin, 317; Moore's Federal Practice, 3d, Sec. 28.12[4] and 28.12[9].

**NUMBER OF COPIES:** The Evidence Convention, unlike the Service Convention, does not require that a letter of request be submitted in duplicate. In practice, however, countries prefer that the request be prepared in duplicate (one English text bearing the seal of the court, one photocopy of the English text; two copies of a translation of the request an any accompanying documents.) If testimony is desired of two or more witnesses, separate letters of request should be issued for each witness. See Ristau, Sec. 5-2-1, p. 185, (1995 Supp.).

**TRANSLATIONS** : Articles 4 and 33 of the Convention concern translations. The Convention requires a letter of request in the language of the receiving state, but English or French is acceptable unless the receiving state has expressly stated to the contrary. See Moore's Federal Practice, Sec. 28.12[3], p. 28-15. See also S&S Screw Mach. Co. v. Cosa Corp., 647 F. Supp. 600, 613 n.23 (M.D. Tenn. 1986). Consult the declarations and reservations made by each country. See the Martindale-Hubbell Law Directory, Selected International Conventions, Law Digest Volume or the Practical Handbook on the Operation of the Hague Convention on the Taking of Evidence Abroad. See also, Ristau, Sec. 5-2-1(8), p. 185-187 (1995 Supp.), or Epstein, International Litigation, a Guide to Jurisdiction, Practice and Strategy, Section 10.10; Moore's Federal Practice, 3d, Sec. 28.12[3] (1997). Translations should be a notarized certification by the translator. See Ristau, Sec. 5-2-1, p. 187 (1995 Supp.).

**TRANSMITTING REQUEST:** The requesting court in the United States transmits the model letter of request and accompanying documents and appropriate translations, in duplicate, directly to the central authority. See Ristau, Sec. 5-1-5(2), p. 168-171, (1995 Supp); Moore's Federal Practice, 3d, Sec. 28.12[2] (1997).

**EXECUTION OF THE REQUEST:** Article 9 provides that letters of request will be executed in accordance with local foreign law. See Ristau, Sec. 5-2-2, p. 188-200 (1995 Supp.); Born & Westin 317-318, and Moore's Federal Practice, 3d, Sec. 28.12[7] for a discussion on how requests are executed in civil and common law countries.

**TIME:** Article 9 provides that requests be executed "expeditiously." Requests under the Hague Evidence Convention are executed somewhat faster than letters rogatory. This is due in part to the direct channel from the U.S. court to the foreign central authority. However, the general estimate of 6 months to a year to execute the request is still used. See Ristau, Sec. 5-2-2(3), p. 192 (1995, Supp.); Born & Westin, 312 and Moore's Federal Practice, 3d, Sec. 28.12[7].

**COSTS:** Articles 14, 26 and 28(f) govern costs and fees for execution of letters of request. Generally speaking, there is no fee. However, if the executing country incurs expense for fees paid to "experts and interpreters" reimbursement can be sought in accordance with paragraph 2 of Article 14. For a

discussion of fees, see Ristau, Sec. 5-2-4, p. 201-204 (1995 Supp.).

**RETURN OF EXECUTED REQUEST:** Article 13(1) provides that the executed request shall be returned to the issuing authority (requesting court) by the foreign central authority. See Ristau, Sec. 5-1-5(4), p. 171, (1995 Supp.).

## FOREIGN CENTRAL AUTHORITIES

## COUNTRY AND CENTRAL AUTHORITY

*ANGUILLA*
Governor of Anguilla

*ARGENTINA*
Ministry of Foreign Relations and Culture (Ministerio de Relaciones Exteriores y Culto)
Recoquista 1088, Buenos Aires, Argentina

*ARUBA*
Convention Extended by the Netherlands. Central Authority Unknown. Consult Local Counsel.

*AUSTRALIA*
Secretary of the Attorney General's Department
Commonwealth of Australia
Canberra, ACT, Australia

*BARBADOS*
Registrar of the Supreme Court of Barbados
Law Courts
Bridgetown, Barbados
tel: 809-427-5537

*BULGARIA*
**Central Authority:** Ministry of Justice and European Legal Integration

*CAYMAN ISLANDS*
His Excellency the Governor
Cayman Islands

*CHINA*
Bureau of International Judicial Assistance
Ministry of Justice of the People's Republic of China
10 Chaoyangmen Nandajie, Chaoyang District
Beijing 100020
China

*CYPRUS*
Ministry of Justice

*CZECH REPUBLIC*
Ministerstvo Spravedlnosti Ceske republicky
The Ministry of Justice of the Czech Republic
128 Praha 2, Vysehradska 16
Prague, Czech Republic

*DENMARK*
Justitsministeriet
Ministry of Justice

Slotsholmsgade 10
1216 Kobenhavn K.
Copenhagen, Denmark
tel: 120906; telex: 15530

### ESTONIA
Ministry of Justice
Suur Karja #19
Tallinn, Estonia EE0001
tel: (6) 28-2648

### FALKLAND ISLANDS
The Governor
Stanley, Falkland Islands

### FINLAND
Ministry of Justice
10 Etelaesplanadi
Helsinki 13, Finland
tel: 358-0-1601

### FRANCE
Ministere de la Justice
Ministry of Justice
Service Civil de L"Entraide Judiciaire Internationale
13, Place Vendome
75042 Paris Cedex 01, France
tel: 261-80-22; telex: 211802

### GERMANY

**For Baden-Wurttemberg**
Justizministerium Baden-Wurttemberg
Justice Ministry
Schillerplatz 4
70173 Stuttgart, Germany
tel: 21931

**For Bavaria**
Das Bayerisches Staasministerium der Justiz
Justizpalast
Prielmayerstrasse 7
80335 Munchen
Munich, Germany
tel: 55971

**For Berlin**
Senatsverwaltung fur Justiz von Berlin
Salzburger Strasse 21-25
10825 Berlin, Germany
tel: 7831

**For Brandenburg**
Das Ministerium der Justiz
des Landes Brandenburg

Heinrich-Mann-Allee 107
14460 Potsdam, Germany

*For Bremen*
Der Prasident des Landgerichts Bremen
Domsheide 16
28195 Bremen, Germany
tel: 3614204

*For Hamburg*
Der Prasident des Amtsgerichtes Hamburg
Sievekingplatz 1
20335 Hamburg, Germany
tel: 34971

*For Hesse*
Der Hessische Minister der Justiz
Luisenstrasse 13
65185 Wiesbaden, Germany
tel: 321<<P> *For Lower Saxony*
Der Niedersachsisher Minister der Justiz
Am Waterlooplatz 1
30169 Hannover, Germany
tel: 1901

*For Mecklenburg-Western Pomerania*
Der Minister fur Justiz
Bundes- und Europaangelegenheiten
des Landes Mecklenburg-Vorpommern
Demmlerplatz 14
19053 Schwerin, Germany

*For Northrhine-Westphalia*
Prasident des Oberlandesgerichts
Dusseldorf
Cecilienallee 3
40474 Dusseldorf, Germany
tel: 87921

*For Rhineland-Palatinate*
Das Ministerium der Justiz
Ernst-Ludwig-Strasse 3
55116 Mainz, Germany
tel: 161

*For Saarland*
Ministerium der Justiz des Saarlandes
Zahringerstrasse 12
66119 Saarbrucken, Germany
tel: 5051

*For Saxony*
Das Sachsische Stattsministerium
der Justiz
Archivstrasse 1

66119 Dresden, Germany

*For Saxony-Anhalt*
Das Ministerium der Justiz
des Landes Sachsen-Anhalt
Wilhelm-Hopfner-Ring 6
39116 Magdeburg, Germany

*For Schleswig-Holstein*
Der Justizminister des Landes Schleswig-Holstein
Lorentzendamm 35
34103 Kiel, Germany
tel: 51371

*For Thuringia*
Das Justizministerium Thuringen
Alfred-Hess-Strasse 8
99094 Erfurt, Germany

*Gibraltar*
The Deputy Governor
Gibraltar

*Guernsey*
Bailiff, Deputy Bailiff, any Jurat of the Royal Court
of Guernsey, the Chairman or a Jurat of the Court
of Alderney and the Seneschal (or deputy) of the
Court of the Seneschal of Sark
Guernsey, United Kingdom

*Hong Kong SAR*
Chief Secretary of Hong Kong
Central Government Offices
Lower Albert Road
Hong Kong; tel: (011) (852) 8102954

*Isle of Man*
1. See United Kingdom.
2. Her Majesty's First Deemster and Clerk of the
Rolls is designated as an additional authority to receive letters of request for execution in the Isle of
Man

*Israel*
Director of the Courts
19 Jaffa Road
Jerusalem

*Italy*
Ministerio degliAffari Esteri
Rome, Italy

*Jersey*
Royal Court of Jersey

*Latvia*
Ministry of Justice

Brivibas Boulevard 34
LV - 1536 Riga, Latvia

*Luxembourg*
Parquet General Pres La Cour Superieure de Justice
12 Cote d"Eich
Luxembourg-Ville, Luxembourg
tel: 475981 or 26767 or 41464

*Macau SAR*
On December 16, 1999, the Government of the People's Republic of China declared: "In accordance
with the Joint Declaration of the Governemnt of the People's Republic of China and the Government
of the Republic of Portugal on the Question of Macau signed on 13 April 1987, the Government of
the People's Republic of China will resume the exercise of sovereignty over Macau with effect from
20 December 1999. **Central Authority:** Procurator of the Procuratorate of Macau SAR, Alameda
Dr. Carlos D"Assumpcao, NAPE, Edificio Comercial Tai Fung, 13, Regiao Administrativa Especial
de Macau; tel: 853-797-8271, fax: 853-727-621. The official languages in Macau SAR are Chinese
and Portugese. Foreign judical assistance requests pursuant to the Convention written in English will
be accepted and processed, though the preference is for a copy to be submitted in one of the two
official languages - Chinese or Portugese.

*Mexico*
Secretaria de Relaciones Exteriores
Dirreccion General de Asuntos Juridicos
Ricardo Flores Magon No. 1
Mexico City, Mexico
tel: 782-34-40
telex: 01762090

*Monaco*
Directorate of Judicial Services
MC 98025
Monaco Cedex, Monaco

*Netherlands*
De Officier van Justitie bij de Arrondissementsrechtbank te 's
Gravenhage
The Public Prosecutor With the District Court of the Hague
Juliana van Stolberglaan 2-4
The Hague, the Netherlands tel: 82-40-41

*Norway*
The Royal Ministry of Justice and Police
Toks 8005
Oslo Dep
Oslo 1, Norway

*Poland*
Ministry of Justice
Department of International Cooperation and European Law
Al. Ujazdowskie 11
Warsaw, Poland 00-950
tel: (48)(22) 628-4431
fax: (48)(22) 628-0949

*Portugal*
Direccao-Geral dos Servicas Judiciarios
Ministerio da Justica
The Director-General of the Judiciary Deparment
Ministry of Justice
Prace do Comercio
1194 Lisboa Codex
Lisbon, Portugal
tel: 360786

*Singapore*
The Registrar of the Supreme Court
St. Andrews Road
Singapore 0617, Singapore
tel: 65-3324021; fax: 65-3379450

*Slovak Republic*
Ministerstvo spravodlivosti Slovenskej republicky
The Ministry of Justice of the Slovak Republic
Zupne namestie 13,
813 11 Brtislava, Slovak Republic
Fax: 00427-531035

*Sovereign Base Areas of Akrotiri & Dhekelia*
Senior Registrar of the Judge's Court of the Sovereign Base Areas

*Spain*
The Ministry of Justice (El Ministerio Justicia)
La Direccion General de Codificacion y Cooperacion Juridica Internacional
Ministerio de Justicia e Interior
Technical Secretariat General (Secretaria General Tecnica)
Calle San Bernardo 62
28071 Madrid, Spain

*Sweden*
Ministry of Justice
Division for Criminal and International Judicial Cooperation
Central Authority
SE-103 33 Stockholm, Sweden
tel: (46)(8) 405-5048
fax: (46)(8) 405-4676

*Switzerland*
Federal Justice and Police Department
Federal Office for Police Matters
International Judicial and Extrajudicial Assistance
Bundesrain 20
3003 Bern, Switzerland
Fax: 011-41-31-322-5380

The Swiss Federal Justice and Police Department will forward the requests to the Central Authority
in the appropriate canton. Requests for evidence may also be sent directly to the Central Authority
for the appropriate Canton, as noted below.

## Authorized Swiss Central Authorities for each Canton

*Language: (G=German); (F=French); (I-Italian)*

**Canton: Appenzell Ausserhoden (G)**
Kantonsgerich Appenzell A. Rh., 9043 Trogen, Switzerland
tel: 011-41-71-94-24-61

**Canton: Aargau (G)**
Obergericht des Kantons Aargau, 5000 Aargau, Switzerland
tel: 011-41-64-21-19-40

**Canton: Basel-Landschaft (G)**
Obergericht des Kantons Basel-Landschaft, 4410 Liestal, Switzerland
tel: 011-41-61-925-51-11

**Canton: Basel-Stadt (G)**
Apellationsgericht Basel-Stadt, 4054 Basel, Switerzland
tel: 011-41-61-267-81-81

**Canton: Bern (G/F)**
Justizdirektion des Kantons Bern, 3011 Bern, Switzerland
tel: 011-41-31-633-76-76

**Canton: Fribourg (F/G)**
Tribunal cantonal, 1700 Fribourg, Switzerland
tel: 011-41-37-25-39-10

**Canton: Geneve (F)**
Parquet du Procureur general, 1211 Geneve 3, Switzerland
tel: 011-41-22-319-21-11

**Canton: Glarus (G)**
Obergericht des Kantons Glarus, 8750 Glarus, Switzerland
tel: 011-41-58-61-15-32

**Canton: Graubuenden (G)**
Justiz-, Polizei- und Sanitaets- departement, Graubunden, 7001 Chur, Switzerland
tel: 011-41-81-21-21-21

**Canton: Jura (F)**
Department de la Justice, 2800 Delemont, Jura, Switzerland
tel: 011-41-66-21-51-11

**Canton: Luzern (G)**
Obergericht des Kantons Luzern, 6002 Luzern, Switzerland
tel: 011-41-41-24-51-11

**Canton: Neuchatel (F)**
Departement de Justice, 2001 Neuchatel, Switzerland
tel: 011-41-38-22-31-11

**Canton: Nidwalden (G)**
Kantonsgericht Nidwalden, 6370 Stans, Switzerland
tel: 011-41-41-63-79-50

**Canton: Obwalden (G)**
Kantonsgericht des Kantons, Obwalden, 6060 Sarnen, Switzerland

tel: 011-41-41-66-92-22

***Canton: St. Gallen (G)***
Kantonsgericht St. Gallen, 9001 St. Gallen, Switzerland
tel: 011-41-71-21-31-11

***Canton: Schaffhausen (G)***
Obergericht des Kantons, Schaffhausen, 8201 Schaffhausen, Switzerland
tel: 011-41-53-82-74-22

***Canton: Schwyz (G)***
Kantonsgericht Schwyz, 6430 Schwyz; Switzerland
tel: 011-41-43-24-11-24

***Canton: Solothurn (G)***
Obergericht des Kantons Solothurn, 4500 Solothurn, Switzerland
tel: 011-41-65-21-73-11

***Canton: Tessin (I)***
Tribunale di appello, 6901 Lugano, Switzerland
tel: 011-41-91-21-51-11

*Canton: Thurgau (G)*
Obergericht des Kantons Thurgau, 8500 Frauenfeld, Switzerland
tel: 011-41-54-22-31-21

***Canton: Uri (G)***
Gerichtskanzlei Uri, 6460 Altdorf, Switzerland
tel: 011-41-44-4-22-44

***Canton: Valais (F/G)***
Tribunal cantonal, 1950 Sion, Switzerland
tel: 011-41-27-22-93-93

***Canton: Vaud (F)***
Tribunal cantonal, 1014 Lausanne, Switzerland
tel: 011-41- 21-313-15-11

***Canton: Zug (G)***
Obergericht des Kantons Zug, Rechtshilfe, 6300 Zug, Switzerland
tel: 011-41-42-25-33-11

***Canton: Zurich (G)***
Obergericht des Kantons Zurich, Rechtshilfe, 8023 Zurich, Switzerland
tel: 011-41-1-257-91-91

***United Kingdom***
The Foreign and Commonwealth Office
London SW1A 2AL, United Kingdom

***For England and Wales***
The Senior Master of the Supreme Court of Judicature (Queen's Bench Division)
Royal Courts of Justice Strand
London WC2A 2LL, United Kingdom

***For Scotland***
The Crown Agent for Scotland

Lord Advocate's Department
Crown Office
5/7 Regent Road
Edinburgh EH7 5BL, Scotland

*For Northern Ireland*
Registrar of the Supreme Court of Northern Ireland

-or-

Master (Queens's Bench and Appeals)
Royal Courts of Justice
Belfast 1, Northern Ireland

*Venezuela*
el Ministerio Relaciones Exteriores the Ministry of External Relations

**SEE ALSO** :

- "Checklist for the Discussions of the Special Commission of April 1989 on the Operation of the Hague Convention on the Taking of Evidence Abroad", Hague Conference on Private International Law, Preliminary Document No. 1 of March 1989, 28 I.L.M. 1556 (1989).

- "Report of the Second Meeting of the Special Commission on the Operation of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, July 1985", 24 I.L.M. 1668 (1985).

- Practical Handbook on the Operation of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil Or Commercial Matters, Hague Conference on Private International Law, Maarten Kluwer's Internationale Uitgeversonderneming, Antwerp, 1984. U.S. Distributor: Butterworth Publishers Inc., 10 Tower Office Park, Woburn, Boston, Massachusetts 01801. Contact the U.S. Central Authority for addresses of other distributors.

- "Report on the Work of the Special Commission on the Operation of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters Prepared by the United States Delegation", 17 I.L.M. 1417 (1978).

- "Report on the Work of the Special Commission on the Operation of the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters June 12-15, 1978 Prepared by the Permanent Bureau", 17 I.L.M. 1425 (1978).

- "Message from the President of the United States Transmitting the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters", S. Exec. Doc. No. A 92d Cong., 2d Sess. (1972), 12 I.L.M. 323 (1973).

- "Letter of Submittal from Secretary of State William P. Rogers to the President Regarding the Evidence Convention", S. Exec. Doc. No. A, 1, 92d Cong., 2d Sess. (1972), 12 I.L.M. 324 (1973).

-"Report of the U.S. Delegation on the Taking of Evidence Abroad in Civil and Commercial Matters", 8 I.L.M. 785, 804 (1969).

**BUT SEE** :

Societe Nationale Industrielle Aerospatiale, et al., v. United States District Court for the Southern District of Iowa, 1987 U.S. LEXIS 2615; 96 Law. Ed. 2d 461; 107 Sup. Ct. 2542; 55 U.S. Law Week 4842; 7 Federal Rules of Service 3d 1105; 482 U.S. (page unassigned) (1987), 26 I.L.M. 1021 (1987).

Supreme Court Proceedings in Societe Nationale Industrielle Aerospatiale, et al., v. United States District Court for the Southern District of Iowa (Hague Evidence Convention; Extraterritorial Discovery in the U.S. Courts.) 25 I.L.M. 1475 (1986).

In re Anschuetz and Company, 838 F. 2d 1362, 7 March 1988.

Anschuetz & Co. v. Mississippi River Bridge Authority, et al.; Messerschmitt Bolkow Blohm v. Virginia Walker, et al., Brief for United States as Amicus Curiae and Petitioner's Response. 25 I.L.M. 803 (1986).

Club Mediterranee v. Dorin, 469 U.S. 1019 (1984), 23 I.L.M. 1332 (1984). Brief for United States as Amicus Curiae. (Appeal Dismissed.)

Volkswagenwerk v. Falzon, 464 U.S. 811 (1983), 23 I.L.M. 412 (1984). Brief for United States as Amicus Curiae. (Appeal Dismissed).

Hudson v. Hermann Pfauter GmbH & Co., 117 F.R.D. 33, 9 September 1987.

In re Benton Graphics v. Uddeholm Corp., 118 F.R.D. 386, D.N.J. 30 November 1987.

Sandsend Financial Consultants v. Wood, 743 SW2d 364, Tex. Civ. App., 1st Dist. Houston, 7 January 1988.

Scarminach v. Goldwell GmbH, 531 N.Y.S. 2d 188, Sup., Monroe County, 22 June 1988.

Cf. Rich v. KIS California, Inc., 121 F.R.D. 254, M.D.N.C., 22 June 1988.

John Jenco v. Martech International, Inc., 1988 U.S. Dist. LEXIS 4727, E.D. La., 20 May 1988, reversing 1988 U.S. Dist. LEXIS 3991.

"Hague Evidence Convention in the U.S. Courts", Laker Airways Ltd. v. Pan American World Airways, et al., U.S. District Court for the District of Columbia;

Graco v. Kremlin, Inc., U.S. District Court for the Northern District of Illinois (Eastern Division), 23 I.L.M. 748-781 (1984).

Laker Airways, Ltd. v. Sabena, Belgian World Airlines, 731 F. 2d 909, 937 (D.C. Cir. 1984).

In re Westinghouse Litigation, 563 F. 2d 992 (10th Cir. 1977).

In re Marc Rich & Co., A.G., 707 F. 2d 663, 667 (2d Cir.), cert. denied, 463 U.S. 1215 (1983). Marc Rich & Co., A.G. v. United States, 736 F. 2d 864 (2d Cir. 1984).

In re Grand Jury Proceedings: The Bank of Nova Scotia, 740 F. 2d 817 (11th Cir. 1984), cert. denied, U.S. , 105 S. Ct. 788 (1985).

**SEE ALSO** :

Alley, E.R., New Developments under the Hague Evidence and Service Conventions: 1989 Special Commission, International Business Lawyer, 380 (1989).

Amram, Explanatory Report on the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Message from the President of the United States", Sen. Exec. A., 92nd Cong., 2d Sess. (Feb. 1, 1972).

Amram, The Proposed Convention on the Taking of Evidence Abroad, 55 A.B.A. J. 651 (1969).

Amram, Report on the Eleventh Session of the Hague Conference on Private International Law, 63 Am. J. Int"l Law 521 (1969).

Amram, United States Ratification of the Hague Convention on the Taking of Evidence Abroad, 67 Am. J. Int"l Law 104 (1973).

Augustine, Obtaining International Judicial Assistance Under the Federal Rules and the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters: An Exposition of the Procedures and a Practical Example: In re Westinghouse Uranium Contract Litigation, 10 Ga. J. Int"l & Comp. L. 101 (1980).

Bailey, Stephen R., "Depositions and Discovery - Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters", 54 Journal of Air Law and Commerce, 381 (1988).

Bermann, The Hague Evidence Convention in the Supreme Court: A critique of the Aerospatiale Decision, 63 Tul. L. Rev. 525 (1989).

Bishop, Significant Issues in the Construction of The Hague Evidence Convention, 1 Int"l Litigation Q. 2, 38 (1985).

Black, United States Transnational Discovery: The Rise and Fall of the Hague Evidence Convention, 40 Int"l and Comparative L.Q. 901-906 (1991).

Born, The Hague Evidence Convention Revisited: Reflections on Its Role in U.S. Civil Procedure, 57 Law & Contemp. Probs. 77, 90-96 (1994).

Boyd, Contemporary Practice of the United States Relating to International Law - The Hague Evidence Convention, 72 Am. J. Int"l Law 133 (1978).

Comment, The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters: The Exclusive and Mandatory Procedures for Discovery Abroad, 132 U. Pa. L. Rev. 1461 (1984)

Edwards, Taking of Evidence Abroad in Civil or Commercial Matters, 18 Int"l. and Comp. L. Q. 646 (1969)

Gerber, International Discovery after Aerospatiale: the Quest for an Analytical Framework, 82 Am, J. Int"l L. 521, 555 (1988).

Griffin & Bravin, Beyond Aerospatiale: A Commentary on Foreign Discovery Provisions, 25 Int"l Law. No. 2, 315 (1991).

Guzman, Rick, Interplay between the Discovery Provisions of the Hague Evidence Convention and the Federal Rules of Civil Procedure: Societe Nationale Industrielle Aerospatiale, 9 Hous. J. Int"l. L., 333 (1987).

Hayne, Hague Convention and the Federal Rules of Civil Procedure, 9 Hous. J. Int"l L. 333 (1987).

Heck, U.S. Misinterpretation of the Hague Evidence Convention, 24 Colum. J. Transnat"l. L. 231 (1986).

McLean, The Hague Evidence Convention: Its Impact on American Civil Procedure, 9 Loy. L.A. Int"l & Comp. J.J. 17, 62 (1986).

McLean & McLachlan, The Hague Convention on the Taking of Evidence Abroad. Explanatory Documentation prepared for Commonwealth Jurisdictions, Commonwealth Secretariat, (September 1985).

Maier, Extraterritorial Discovery: Cooperation, Coercion, and the Hague Evidence Convention, 19 Vand. J. Transnat"l L. 239, 252-255 (1986).

Martens, D.H., German Civil Procedure and the Implementation of the Hague Evidence Convention,1 International Litigation Quarterly, No. 2, 115 (September 1985).

Matthews, The Role of the Hague Convention for Gathering Evidence Abroad: Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa, Stanford J. Int"l. L. 309 (1987).

Minch, U.S. Obligations Under the Hague Evidence Convention, 22 Int"l Law. 511, 528 (1988).

Nadelmann, The United States Joins the Hague Conference on Private International Law: A "History" with Comments, 30 Law & Contemp. Probs 291 (1965).

Noonan, Lori A., Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa: The Supreme Court of the United States Adopts a Case-by-Case Standard in Applying the Hague Convention on the Taking of Evidence Abroad, 1 The Transnational Lawyer, No. 1, 367, (1988).

Note, Gathering Evidence Abroad: The Hague Evidence Convention Revisited, 16 L. & Pol"y in Int"l. Bus. 963 (1984).

Note, Hague Evidence Convention: A Practical Guide to the Convention, United States Case Law, Convention-Sponsored Review Commission (1978 & 1985), and Responses of Other Signatory Nations: With Digest of Cases and Bibliography, 16 Ga. J. Int"l & Comp. L. 73, 99, App. A (1986).

Note, The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters: The Exclusive and Mandatory Procedures for Discovery Abroad, 132 U. Pa. L. Rev. 1461-1485 (1984).

Note, The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters: The Exclusive and Mandatory Procedures for Discovery Abroad, 132 U. Pa. L. Rev. 1461-1485 (1984).

Note, Obtaining International Judicial Assistance Under the Federal Rules and the Hague Convention on the Taking of Evidence Abroad: An Exposition of the Procedures and a Practical Example -- In Re Westinghouse Uranium Contract Litigation, 10 Ga. J. Int"l & Comp. L. (1980).

Note, The Securities Acts and International Discovery: The Hague Evidence Convention After Anschuetz and Messerschmitt Bolkow Blohm, 12 Syracuse J. Int"l L. and Com. 600 (1986).

Note, United States Ratification of the Hague Convention on the Taking of Evidence Abroad, 67 Am J. Int"l L. 104.

Notes & Comments, United States Ratification of the Hague Convention on the Taking of Evidence Abroad, 67 Am. J. Int"l Law 104, 105 (1973).

Oxman, The Choice Between Direct Discovery and Other Means of Obtaining Evidence Abroad: The Impact of the Hague Evidence Convention, 37 U. Miami L. Rev. 733 (1983).

Plaster, The Hague Evidence Convention: The Need for Guidance on Procedures and Resolution of Conflicts in International Discovery, Vand. J. Trans. L., Vol. 27, No. 1, pp. 185-217 (1994).

Prescott & Alley, Effective Evidence-Taking Under the Hague Convention, 22 The Int"l Law. 939 (Winter 1988).

Radvan, The Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters: Several Notes Concerning its Scope, Methods and Compulsion, 16 N.Y.U. J. Int"l L. & Pol. 1031 (1984).

Rogers, On the Exclusivity of the Hague Evidence Convention, 37 U. Miami L. Rev. 733 (1983).

Sadoff, The Hague Evidence Convention: Problems at Home of Obtaining Foreign Evidence, 20 Int"l Law. 659 (1986).

Shemanski, Obtaining Evidence in the Federal Republic of Germany: The Impact of the Hague Evidence Convention on German-American Judicial Co-operation, 17 Int"l Law. 465 (1983).

Weis, The Federal Rules and the Hague Conventions: Concerns of Conformity and Comity, 50 U. Pittsburgh L.R., 903 (1989).

Wotman, The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters - A Comparison with Federal Rules Procedures, 7 Brooklyn J. of Intl. L. 365 (1981).

**ADDITIONAL INFORMATION:** The Office of American Citizens Services has available general information flyers on international judicial assistance many of which are available via our Internet Consular Affairs home page. These topics include country-specific information about service of process and obtaining evidence abroad.

**Using the Internet:** Many of our judicial assistance flyers are also available on the Internet via the Department of State, Bureau of Consular Affairs home page under Judicial Assistance . See also, the Department of State, Office of the Legal Adviser for Private International Law home page for information regarding private international law unification. See also the home pages for many of our embassies . See also the Authentications Office home page .

## TREATY DATABASES ON THE INTERNET:

United States Department of State, Office of the Legal Adviser, Treaty Affairs, List of Treaties and Other International Agreements of the United States In Force

**United Nations (UN):** Databases/Treaties

Council of Europe **(COE)** under Texts/Treaties

Organization of American States **(OAS):** under Documents/Treaties and Conventions.

**QUESTIONS:** Additional questions may be addressed to the appropriate geographic division of the U.S. Department of State, Bureau of Consular Affairs, Office of American Citizens Services at (202) 647-5225 or 202-647-5226. Questions regarding the operation of the Hague Evidence Convention may also be addressed to the U.S. Central Authority, the Office of International Judicial Assistance, Civil Division, Department of Justice, 1100 L St., N.W., Room 11006, Washington, D.C. 20530, tel: 202) 307-0983; fax: (202) 514-6584.

Return to Judicial Assistance Page

---

 This site is managed by the Bureau of Consular Affairs, U.S. Department of State External links to other Internet sites should not be construed as an endorsement of the views contained therein  Copyright Information  Disclaimers