UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

---

ENERGY TRANSPORTATION GROUP, INC., )
                                                              )
                  Plaintiff,               )
                                               )
        v.                             )
                                               )
SONIC INNOVATIONS, INC., <u>et al.</u>,  )
                                               )
                 Defendants.      )

Civil Action No. 05-422 (GMS)

**REDACTED
PUBLIC VERSION**

**REDACTED
PUBLIC VERSION**

**REPLY BRIEF IN SUPPORT OF DEFENDANT RESISTANCE TECHNOLOGY INC.'S
RENEWED MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
PURSUANT TO RULE 12(b)(2)**

                              Barry M. Klayman, Esq. (#3676)
                              WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP
                              Wilmington Trust Center
                              1100 North Market Street
                              Suite 1001
                              Wilmington, DE 19801
                              (302) 777-0313

                              Jeffrey D. Shewchuk, Esq.
                              Shewchuk IP Services, LLC
                              533 77th Street West
                              Eagan, MN 55121
                              (651) 331-9558

                              Attorneys for Defendant, Resistance Technology, Inc.

Dated: July 2, 2007

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

SUMMARY OF ARGUMENT ...................................................................................... 1

ARGUMENT ................................................................................................................... 2

    A.    There Is No Evidence Of An Accused Product Entering Delaware, And Specific Jurisdiction Over RTI Under Long Arm Statute Subsection (c)(1) Does Not Exist ........... 2

    B.    General Jurisdiction Over RTI Under Subsection (c)(4) Does Not Exist Because RTI Derives ZERO Revenue From Services Or Things Used Or Consumed In Delaware ........ 4

    C.    Exercise Of Jurisdiction Over RTI Does Not Comport With Due Process As Interpreted In Stream Of Commerce Case Law ........... 8

CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400
  (D. Del. 2002) ..........................................................................................................4

*Boone v. Oy Partek AB*, 724 A.2d 1150 (Del. Super. 1997)......................................................4

*Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 293 F.Supp.2d 423
  (D.Del. 2003), *vacated and remanded*, 395 F.3d 1315 (Fed. Cir. 2005).........................7, 9

*Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315
  (Fed. Cir. 2005)..................................................................................................8, 9, 10

*Devlyn Manufacturing Co. v. H&M Auto Parts*, 414 F.Supp.2d 523 (E.D. Pa. 2005)...............9, 10

*ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268
  (D. Del. 2001) ..........................................................................................................2

*In re Elonex Phase II Power Management Litigation*, 2003 U.S. Dist. LEXIS 7715
  (D. Del. 2003) ......................................................................................................7, 10

*M&M Technologies, Inc. v. Gurtler Chemicals, Inc.*, No. 03-994 GMS, 2005 U.S. Dist. LEXIS
  1726 (D. Del. Feb. 8, 2005) ...........................................................................2, 4, 6, 7

*Motorola Inc. v. PC-Tel, Inc.*, 58 F.Supp.2d 349 (D.Del. 1999) .........................................7, 10

*Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.*, 685 A.2d 724
  (Del. Super. 1996)..................................................................................................4

*United States v. Consolidated Rail Corp.*, 674 F. Supp. 138, 144 (D. Del. 1987) ...................5

**Statutes**

10 Del. C. § 3104(c)(1)..........................................................................................................1, 2

10 Del. C. § 3104(c)(4)..........................................................................................................1, 4

## SUMMARY OF ARGUMENT

In response to Resistance Technology Inc.'s ("RTI") Renewed Jurisdictional Motion, Energy Transportation Group, Inc. ("ETG") failed to submit any evidence which would support jurisdiction over RTI. ETG argues that jurisdiction is proper under 10 Del. C. § 3104(c)(1), but RTI has not transacted any business or performed any work or service within Delaware. ETG argues that jurisdiction is proper under 10 Del. C. § 3104(c)(4), but RTI has obtained no revenue from services or things used or consumed in Delaware. ETG submitted no evidence that any product of RTI ever entered into Delaware, much less an accused product. While RTI has sold other products and/or services to Starkey Laboratories, Inc. ("Starkey") and other defendants in this lawsuit, ETG's argument that RTI sold accused product to Starkey is directly contrary to the evidence. Phone calls from RTI's parent corporation to the cell phone or home telephone of a Philadelphia-based financial consultant do not support jurisdiction over RTI; nor do a few random calls to other Delaware phone numbers of unidentified recipients. Although ETG argues for "stream of commerce" jurisdiction over RTI, the law does not expand the stream of commerce theory into general jurisdiction based upon a mere inference from market share statistics that some hearing aids which use RTI components may have entered Delaware.

RTI has not committed any act reached by Delaware's Long-Arm Statute, and it would violate traditional notions of fair play and substantial justice to hold RTI amenable to the jurisdiction of this Court. This Court should dismiss this action against RTI for lack of personal jurisdiction.

1

## ARGUMENT

A. **There Is No Evidence Of An Accused Product Entering Delaware, And Specific Jurisdiction Over RTI Under Long Arm Statute Subsection (c)(1) Does Not Exist.**

ETG argues that RTI transacts business in Delaware and therefore jurisdiction is proper under 10 Del. C. § 3104(c)(1).

> The Delaware Supreme Court has interpreted subsection (c)(1) as a specific jurisdiction provision that requires a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. In order to meet the requirements of subsection (c)(1), [defendant] Burlington's actions must be directed at residents of Delaware and the protection of Delaware laws.

*M&M Technologies, Inc. v. Gurtler Chemicals, Inc.*, No. 03-994 GMS, 2005 U.S. Dist. LEXIS 1726 at *8-*9 (D. Del. Feb. 8, 2005)(citations omitted)(D.I. 57-2-B).

In the instant case, the only allegations made by ETG having a "nexus" to the patent infringement cause of action involve RTI's Clari-D amplifier. RTI's sales of other, non-accused components to Starkey or to other hearing aid manufacturers – none of which are located in Delaware - cannot support specific jurisdiction even if hearing aids incorporating such components did find their way into Delaware.[1] *M&M Technologies*, 2005 U.S. Dist. LEXIS 1726 at *9 ("Burlington's sales of products in Delaware are unrelated to Gurtler's claims and, therefore, cannot give rise to specific jurisdiction"), citing *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268 (D. Del. 2001).

ETG repeatedly and erroneously argues that RTI sells Clari-D amplifiers to Starkey Laboratories, Inc. ("Starkey"). ETG's argument is not supported by, and is directly contradicted

---

[1] Significantly, ETG does not even establish that any such hearing aids incorporating components manufactured by RTI actually found their way into Delaware. Instead ETG relies on inference and supposition based on (1) global market share information and (2) general rates of hearing loss among the U.S. population. ETG's Ans. Br., pp. 4-5 (D.I. 277).

2

by, the evidence. Mark Gorder, RTI's President, testified to the exact opposite, as follows:

> Q. What about the Clari-D amplifier, are you aware of any Starkey products that incorporate that?
>
> A. During the time period of?
>
> Q. 2002 to 2005.
>
> A. No.
>
> REDACTED
>
> REDACTED
>
> REDACTED
>
> REDACTED
>
> REDACTED
>
> REDACTED
>
> REDACTED
>
> REDACTED
>
> Q. So is it your understanding that no Starkey product has ever incorporated the Clari-D amplifier?
>
> A. I don't believe so, no.

Gorder Dep. 55:3 – 56:12, App. A28-29 (emphasis added).

RTI's discussions with Starkey in Minnesota involving Clari-D amplifiers, even if such discussions occurred prior to the filing of the instant complaint, cannot support jurisdiction over RTI. REDACTED

3

REDACTED

REDACTED

Even if RTI had sold Clari-D amplifiers to Starkey, which it did not, such sales would have occurred in Minnesota, not Delaware. "[W]hen a manufacturer passes title to goods to a third party outside of Delaware, it has not performed an act in Delaware." *M&M Technologies*, 2005 U.S. Dist. LEXIS 1726 at *9, citing *Boone v. Oy Partek AB*, 724 A.2d 1150, 1156 (Del. Super. 1997).

There is no evidence that any Clari-D amplifier was ever used in a Starkey hearing aid, and no evidence that any Clari-D amplifier ever found its way into Delaware. There is no basis for jurisdiction over RTI under 10 Del. C. § 3104(c)(1).

### B. General Jurisdiction Over RTI Under Subsection (c)(4) Does Not Exist Because RTI Derives ZERO Revenue From Services Or Things Used Or Consumed In Delaware.

The Delaware long arm statute provides for jurisdiction over a party which derives substantial revenue from services or things used or consumed in Delaware. 10 Del. C. § 3104(c)(4). Delaware courts have interpreted § 3104(c)(4) as a *general* jurisdiction provision. See *Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 405 (D. Del. 2002); *Boone v. Oy Partek AB*, 724 A.2d 1150, 1155 (Del. Super. 1997); *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.*, 685 A.2d 724, 727-28 (Del. Super. 1996). As noted by this Court in *M&M Technologies*, "Delaware courts have broadly construed the term 'substantial revenue' to mean that two to three percent of total revenue is sufficient to confer jurisdiction. However, when a defendant's sales to customers in Delaware constitute less than one percent of total revenue, it is not substantial enough to warrant an exercise of jurisdiction." *M&M Technologies*, 2005 U.S. Dist. LEXIS 1726 at *13, citing *United States v.*

4

*Consolidated Rail Corp.*, 674 F. Supp. 138, 144 (D. Del. 1987). In the instant case, RTI's sales to customers in Delaware constitute even less than the 0.0007% and 0.14% of annual revenue found insubstantial in *M&M Technologies*, because RTI made NO sales to Delaware customers and derived ZERO revenue from Delaware. Zero percent of total revenue is certainly not substantial enough to warrant general jurisdiction over RTI.

ETG has counted 82 telephone calls made from telephones in RTI's Minnesota facility to Delaware phone numbers over a period of six and a half years (an average of only about 1 call per month). (ETG's Ans. Br. 4, D.I. 277). Of these 82 phone calls, some 53 have been identified by ETG as having been made to Philip Seamon, an outside consultant performing services for RTI's parent corporation (IntriCon/Selas).[2] (ETG's Ans. Br. 3n.5, D.I. 277). ETG makes no argument that acts of IntriCon/Selas should be attributed to RTI (nor can they). Subtracting these 53 calls on behalf of IntriCon/Selas to Mr. Seamon leaves only 29 telephone calls to Delaware telephone numbers[3] by RTI, its employees and visitors, over a six and one-half year time period, an average of about 1 call every 3 months. ETG fails to identify the recipients of any of the other 29 calls, which could be, for instance, a wrong number, or an employee

---

[2] Significantly ETG does not identify who made the calls to Mr. Seamon, only that calls were made from RTI's facility to Mr. Seamon at his home in Delaware or to his cell phone number with a "302" area code. The testimony from both Mr. Gorder and Mr. Seamon shows that these calls could only have involved the business of RTI's parent company, IntriCon/Selas, who had engaged Mr. Seamon's company to provide financial consulting services to the parent company. (RTI's Op. Br., p. 5). Moreover, many of the calls to Mr. Seamon's cell phone likely occurred while he was traveling outside the state of Delaware. The Court may take judicial notice of the fact that a call to a cell phone with a Delaware area code does not necessarily mean that the call was made to a Delaware location.

[3] Of course, a telephone call to a 302-area code does not necessarily mean that the calls were made to Delaware. As noted in the preceding footnote, calls to a cell phone with a 302- area code may not be to a location in Delaware at all.

5

calling a Delaware phone number to address a credit card, insurance or similar personal issue. RTI's telephone records simply cannot and do not support general jurisdiction over RTI.

ETG argues that RTI "targeted" Delaware companies for sales. (ETG's Ans. Br. at 10.) To the contrary, Mr. Gorder testified that an RTI employee identified potential "targets" in Delaware and elsewhere, but RTI never contacted the potential targets. Specifically, Mr. Gorder testified as follows:

> A. We had a -- hired a sales manager for a medical business and we gave him the task of coming up with a plan to expand our medical business. And he came up with a list of target accounts, **but it was never executed.** We terminated him when we had to cut back on our staff back in 2004.
> Q. So were these targets for you to make sales to?
> A. **They were targets to be contacted for potential sales, but to my knowledge they were never contacted.**

Gorder Dep. 19:13-23, App. A12 (emphasis added). Identifying two "target" companies in Delaware which were never contacted cannot conceivably be found to be a "contact" with Delaware for jurisdictional purposes.

With no evidence of any contacts or sales of RTI's components into Delaware, ETG argues that some of RTI's customers sell hearing aids into Delaware. (ETG Ans. Br., p. 5). But ETG fails to specifically identify *any* hearing aid which was sold in Delaware which contained an RTI component, instead making the inference that it is likely based upon RTI's global market share that some hearing aid sold to a Delaware resident likely contained an RTI component. Similar to the chemical discussed in *M&M Technologies* (which was diluted with water and therefore just a component of the aerosol sold by Gurtler in Delaware), RTI does not sell directly

6

accused hearing aids but rather sells indirectly accused hearing aid components.[4] Some of RTI's components, such as faceplates, are partially sacrificed[5] by RTI's customers in manufacturing hearing aids. Others of RTI's components are buried within the electronics inside the shell of the hearing aid. In any event, RTI's products are used by original equipment manufacturers ("OEMs"), not by members of the general public who use completed hearing aids rather than individual components. Similar to the *M&M Technologies* case, RTI is not identified to the end user who uses the hearing aid. *M&M Technologies*, 2005 U.S. Dist. LEXIS 1726 at *10. Contrast *Motorola Inc. v. PC-Tel, Inc.*, 58 F.Supp.2d 349, 354 (D.Del. 1999)("[Defendant] AltoCom's products maintain their own identity. When an end user enters an appropriate command, the AltoCom softmodem causes a legend to be displayed on the consumer product screen identifying the modem as an 'AltoCom software modem.' These modems are also capable of being serviced apart from the end user products into which they have been integrated.")

---

[4] In particular, ETG's patents-in-suit are directed at "hearing aids" and "host controllers" for hearing aids, not amplifiers. ETG's infringement allegation against RTI's Clari-D amplifier is not that it directly meets all the limitations of any patent claim, but rather that RTI has indirectly induced third party hearing aid manufacturers to infringe ETG's patents by making and selling a hearing aid which includes the Clari-D amplifier therein. Contrast this allegation of indirect infringement to the direct infringement allegations in *Commissariat* (allegation of direct infringement of U.S. Pat. Nos. 4,701,028 and 4,889,412 directed at LCDs sold by defendant) and *Elonex* (allegation of direct infringement of U.S. Pat. Nos. 5,389,952, 5,648,799 and 5,880,719 directed at monitors sold by defendant). In other words, even accepting ETG's allegations, infringement of ETG's patents does not occur until an OEM customer manufactures a complete hearing aid which uses RTI's Clari-D amplifier as a component.

[5] A faceplate is a plastic component used as a fixturing substrate in assembly of the electrical components of a hearing aid, which is then mostly cut away when attaching the housing over the assembled electrical components and remaining portion of the faceplate. See http://www.rti-corp.com/Hearing/RTIFaceplate.html.

The fact that some of RTI's customers sell hearing aids into Delaware, with no proof that any such hearing aids include any RTI component, let alone a component accused of indirectly infringing the patents-at-issue, is not a basis to assert jurisdiction over RTI. RTI has sold nothing into Delaware, derives no revenue from Delaware, and conducts no business in Delaware. Even if one were to conjecture that a hearing aid containing a component manufactured by RTI found its way into Delaware, there is still no showing that RTI "purposefully directed" its activities toward Delaware. There is no basis under the Delaware Long-Arm Statute for this Court to assert jurisdiction over RTI in the state of Delaware. RTI's renewed motion to dismiss for lack of personal jurisdiction should be granted.

### C. Exercise Of Jurisdiction Over RTI Does Not Comport With Due Process As Interpreted In Stream Of Commerce Case Law.

Not only does the Delaware Long-Arm Statute fail to provide for jurisdiction over RTI, but jurisdiction over RTI does not comport with Due Process case law as well. ETG's only argument is under a stream of commerce theory, in which the primary case cited by ETG is *Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315 (Fed. Cir. 2005). *Commissariat*, however, merely dealt with the question of whether jurisdictional discovery should have been permitted, and did not resolve the larger question of whether jurisdiction was proper. In the instant case, ETG has already been afforded jurisdictional discovery, so *Commissariat* in no longer apposite. Further, *Commissariat* involved a case wherein the defendant's product was accused of direct infringement, not a component product indirectly accused of inducing infringement after further manufacturing and assembly by third parties. In *Commissariat*, the defendant's accused product (as opposed to other products of the defendant) was shown to have entered Delaware through the stream of commerce to arguably

8

support specific jurisdiction. Here ETG has made no showing of any component of RTI entering Delaware, much less the component accused of indirect infringement. Even with the specific accused product sold in the forum state, the Federal Circuit in *Commissariat* "declined to adopt a position as to whether mere placement of a product in the stream of commerce and awareness of its potential destination will subject a defendant to jurisdiction in a forum state". *Devlyn Manufacturing Co. v. H&M Auto Parts*, 414 F.Supp.2d 523, 530 (E.D. Pa. 2005); *Commissariat*, 395 F.3d at 1322, n. 7.

The *Devlyn* case provides an instructive discussion of Supreme Court and Federal Circuit law as applied to the issue of specific jurisdiction associated with mere placement of a component product into the stream of commerce. In *Devlyn*, a Texas defendant placed oven gaskets and clips in the stream of commerce via a nationwide distributor (Frigidaire) of home appliances, including the distributor's sale of ovens and replacement gaskets in Pennsylvania. Clip gaskets "of the exact style, materials, and other characteristics as the Accused Product" were proven to have been sold in Frigidaire ovens in Pennsylvania. *Id.* at 529. Despite this evidence of the directly accused product being sold in the forum state, the *Devlyn* court declined to exercise jurisdiction, stating:

> Accordingly, we find that a defendant does not 'purposefully direct' his activities at a forum state merely by selling a component part to a nationwide distributor of home appliances with the awareness that appliances containing the defendant's product may ultimately be sold in the forum state. In keeping with the stream of commerce theory proposed by Justice O'Connor in *Asahi*, there must be some additional evidence of the defendant's purpose and intent to serve the forum state, such as state-specific marketing or design, the provision of customer support services, or an exclusive contractual relationship with a distributor in the forum state. The Supreme Court has held that 'foreseeability alone' is not a sufficient benchmark for personal jurisdiction under the *Due Process Clause*, and we believe that adoption of the broad

9

>   minimum contacts test enunciated by Justice Brennan in *Asahi* would run afoul of this prescription.

*Devlyn*, 414 F.Supp.2d at 531. Even if ETG had produced some evidence that a hearing aid containing a Clari-D amplifier had made its way into Delaware, that would still not be sufficient evidence to support the exercise of personal jurisdiction over RTI.

The only other cases to which ETG cites are *Motorola Inc. v. PC-Tel, Inc.*, 58 F.Supp.2d 349 (D.Del. 1999), and *In re Elonex Phase II Power Management Litigation*, 2003 U.S. Dist. LEXIS 7715 (D. Del. 2003). Both of these cases are readily distinguished on the same bases discussed in the District Court's opinion in *Commissariat*:

> In both *Motorola* and *Elonex*, Delaware residents and purchasers accessed defendants' websites to either purchase defendants' products or download software related to defendants' products. *Motorola, 58 F.Supp. 2d at 352, Elonex, 2003 U.S. Dist. LEXIS 7715 at \*5.* In both of these cases, the Court considered defendants' websites a 'purposeful minimum contact' as part of the jurisdictional analysis. *Id.* Given that [Plaintiff] CEA does not dispute that [Defendant] CMO's products cannot be purchased through its website, the Court finds that the facts of *Motorola* and *Elonex* are inapposite.

*Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 293 F.Supp.2d 423, (D.Del. 2003), *vacated and remanded*, 395 F.3d 1315 (Fed. Cir. 2005). In the instant case, Plaintiff ETG does not dispute that RTI's products cannot be purchased through RTI's website. RTI's website is entirely passive. The record does not reflect any commercial relationship between RTI and any Delaware entity.

In the instant case, ETG has not made any showing that any hearing aid containing the Clari-D amplifier accused of indirect infringement ever entered the state of Delaware. Sales of other, non-accused components to Starkey in Minnesota do not support a finding of either general or specific jurisdiction over RTI in Delaware. Calls made by RTI's parent corporation to

10

the home and cell phones of a Philadelphia-based consultant do not support a finding of either general or specific jurisdiction over RTI in Delaware. RTI's identification of potential sales targets from Delaware that were never contacted does not support a finding of either general or specific jurisdiction over RTI in Delaware. RTI simply has no purposeful conduct directed toward Delaware which would support personal jurisdiction under stream of commerce or any other theory. With ETG having been afforded a full opportunity for jurisdictional discovery, RTI's renewed motion to dismiss for lack of personal jurisdiction should now be granted.

### CONCLUSION

There is no basis, either under the Delaware Long-Arm statute, or under the Due Process Clause of the Constitution, which can serve to justify the exercise by this Court of personal jurisdiction over RTI. Accordingly, RTI's renewed motion to dismiss for lack of personal jurisdiction should be granted.

Dated: July 2, 2007

Respectfully submitted,

/s/ Barry Klayman
Barry M. Klayman, Esquire (#3676)
WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP
Wilmington Trust Center
1100 North Market Street
Suite 1001
Wilmington, DE 19801
Tel: (302) 777-0313
Facsimile: (302) 778-7813

Jeffrey D. Shewchuk, Esq.
Shewchuk IP Services, LLC
533 77th Street West
Eagan, MN 55121
Tel: (651) 331-9558
Facsimile: (651) 688-3348

Attorneys for Defendant, Resistance Technology, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date, he caused true and correct copies of the Reply Brief in Support of Defendant Resistance Technology, Inc.'s Renewed Motion to Dismiss for Lack of Personal Jurisdiction (Redacted Public Version) to be served on the following counsel of record by CM/ECF notification and e-mail to their respective addresses as follows:

| | |
|---|---|
| REPRESENTING ENERGY TRANSPORTATION GROUP, INC. | Edmond D. Johnson<br>PEPPER HAMILTON LLP<br>johnsone@pepperlaw.com<br><br>Thomas H. Kovach<br>PEPPER HAMILTON LLP<br>kovacht@pepperlaw.com<br><br>Brian M. Buroker<br>HUNTON & WILLIAMS LLP<br>bburoker@hunton.com |
| REPRESENTING GN RESOUND A/S AND GN HEARING CARE CORPORATION | Jack B. Blumenfeld<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>jblumenfeld@mnat.com<br><br>Maryellen E. Noreika<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>mnoreika@mnat.com<br><br>Kenneth B. Herman<br>ROPES & GRAY LLP<br>kenneth.herman@ropesgray.com<br><br>William J. McCabe<br>ROPES & GRAY LLP<br>william.mccabe@ropesgray.com<br><br>Jeffrey D. Mullen<br>ROPES & GRAY LLP<br>jeffrey.mullen@ropesgray.com |
| REPRESENTING PHONAK AG, PHONAK INC., PHONAK, LLC, UNITRON HEARING, INC. | Thomas C. Grimm<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>tgrimm@mnat.com |

|                                        |                                                                                          |
|----------------------------------------|------------------------------------------------------------------------------------------|
|                                        | James R. Sobieraj<br>BRINKS HOFER GILSON & LIONE<br>jsobieraj@usebrinks.com              |
|                                        | David H. Bluestone<br>BRINKS HOFER GILSON & LIONE<br>dbluestone@usebrinks.com            |
| REPRESENTING SONIC<br>INNOVATIONS, INC. | Richard L. Horwitz<br>David E. Moore<br>POTTER ANDERSON & CORROON LLP<br>sonicnet@potteranderson.com |
|                                        | Brett L. Foster<br>HOLLAND AND HART LLP<br>bfoster@hollandhart.com                       |
|                                        | L. Grant Foster<br>HOLLAND AND HART LLP<br>gfoster@hollandhart.com                       |
|                                        | Donald Degnan<br>HOLLAND AND HART LLP<br>ddegnan@hollandhart.com                         |
|                                        | Bryan K. Hanks<br>HOLLAND AND HART LLP<br>bkhanks@hollandhart.com                        |
| REPRESENTING STARKEY<br>LABORATORIES, INC. | Mary B. Matterer<br>MORRIS, JAMES, HITCHENS & WILLIAMS<br>mmatterer@morrisjames.com    |
|                                        | Amy A. Quinlan<br>MORRIS, JAMES, HITCHENS & WILLIAMS<br>aquinlan@morrisjames.com         |
|                                        | Steven L. Reitenour<br>BOWMAN AND BROOKE LLP<br>steve.reitenour@bowmanandbrooke.com      |
|                                        | Richard G. Morgan<br>BOWMAN AND BROOKE LLP<br>richard.morgan@bowmanandbrooke.com         |

| | |
|---|---|
| REPRESENTING WILLIAM DEMANT HOLDING A/S, WDH, INC., OTICON A/S, OTICON INC., BERNAFON AG, AND BERNAFON, LLC | James D. Heisman<br>CONNOLLY BOVE LODGE & HUTZ LLP<br>jhjeisman@cblh.com<br><br>N. Richards Powers<br>CONNOLLY BOVE LODGE & HUTZ LLP<br>rpowers@cblh.com<br><br>John M. Romary<br>FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER<br>john.romary@finnegan.com<br><br>C. Gregory Gramenopoulos<br>FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER<br>c.gregory.gramenopoulos@finnegan.com |
| REPRESENTING WIDEX A/S | Donald E. Reid<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>dreid@mnat.com<br><br>William H. Mandir<br>SUGHRUE MION PLC<br>wmandir@sughrue.com<br><br>David J. Cushing<br>SUGHRUE MION PLC<br>dcushing@sughrue.com<br><br>Carl J. Pellegrini<br>SUGHRUE MION PLC<br>cpellegrini@sughrue.com |

*/s/ Barry M. Klayman*
Barry M. Klayman

Dated: July 2, 2007