# United States Patent [19]

## Weinrich

[11] Patent Number: 5,033,090

[45] Date of Patent: Jul. 16, 1991

[54] HEARING AID, ESPECIALLY OF THE IN-THE-EAR TYPE

[75] Inventor: Søren Weinrich, Espergaerde, Denmark

[73] Assignee: Oticon A/S, Denmark

[21] Appl. No.: 577,069

[22] Filed: Sep. 4, 1990

### Related U.S. Application Data

[63] Continuation of Ser. No. 322,387, Mar. 13, 1989, abandoned.

[30] Foreign Application Priority Data

Mar. 18, 1988 [DK] Denmark ............... 1479/88

[51] Int. Cl.$^5$ ............................... H04R 25/00
[52] U.S. Cl. .................. 381/68.4; 381/68.6; 381/93
[58] Field of Search ............... 381/68, 68.4, 68.6, 381/69, 83, 93, 94

[56] References Cited

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,763,333 | 9/1981 | Lichowsky | 381/68 |
| 4,291,203 | 10/1973 | Bellafiore | 381/68 |
| 4,455,675 | 6/1984 | Bose et al. | 381/74 |
| 4,456,795 | 6/1984 | Saito | 381/68 |
| 4,731,850 | 3/1988 | Levitt et al. | 381/68.4 |
| 4,837,829 | 6/1989 | Lobb | 381/33 |

#### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2854912 | 6/1979 | Fed. Rep. of Germany . | |
| 2808516 | 9/1979 | Fed. Rep. of Germany . | |
| 3526591 | 1/1987 | Fed. Rep. of Germany . | |
| 0387718 | 3/1980 | Japan | 381/93 |

Primary Examiner—Forester W. Isen
Assistant Examiner—M. Nelson McGeary, III
Attorney, Agent, or Firm—Larson & Taylor

[57] ABSTRACT

In a hearing aid with a microphone, an amplifier and a receiver supplying amplified sound to the user, a second signal path is provided comprising a second, feedback-suppressing microphone, placed at a location to receive feedback-causing sound from the receiver. The output of second provided microphone is suitably attenuated and delayed by an amount Δt corresponding to the effective acoustical distance a+b between the second microphone and the main microphone and supplied to a difference amplifier in opposition to the signal from the main microphone. Thus, the component of the signal from the main microphone likely to cause positive feedback or "howling" is substantially cancelled out. In another embodiment, the feedback-suppressing signal path is an acoustical path comprising a tube leading to a rear cavity in a microphone of the directional or differential type.

11 Claims, 2 Drawing Sheets



DEM 518919


EXHIBIT
34

PTO-103A
v. 11-86)

~ FILING RECEIPT



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | GRP ART UNIT | FIL FEE REC'D | ATTORNEY DOCKET NO. | DRWGS | TOT CL | IND CL |
|---|---|---|---|---|---|---|---|
| 07/322,387 | 03/13/89 | 261 | $ 490.00 | VII | 2 | 8 | 1 |

ROSS F. HUNT, JR.
LARSON & TAYLOR
727 23RD STREET SOUTH
ARLINGTON, VA 22202

Receipt is acknowledged of the patent application identified herein.  It will be considered in its order and you will be notified as to the examination thereof.  Be sure to give the U.S. SERIAL NUMBER, DATE OF FILING, NAME OF APPLICANT, and TITLE OF INVENTION when inquiring about this application. Fees transmitted by check or draft are subject to collection.  Please verify the accuracy of this data presented on this transmittal.

Applicant(s)     SOREN WEINRICH, ESPERGAERDE, DENMARK.

FOREIGN/PCT APPLICATIONS-DENMARK            1479/88        03/18/88

TITLE
HEARING AID, ESPECIALLY OF THE IN-THE-EAR TYPE

PRELIMINARY CLASS: 381

(see reverse)

DEM 518955

EXHIBIT
35

LICENSE FOR FOREIGN FILING UNDER
Title 35, United States Code, Section 184
Title 37, Code of Federal Regulations, 5.11

### GRANTED

ie applicant has been granted a license under 35 U.S.C. 184, if the phrase "FOREIGN
LING LICENSE GRANTED" followed by a date appears on the reverse side of this form.
ich licenses are issued in all applications where the conditions for issuance of a
icense have been met, regardless of whether or not a license may be required.  The
:ope and limitations of this license are set forth in 36 CFR 5.15(a).  This license
; subject to revocation upon written notification.  The date indicated is the effective
ite of the license, unless an earlier license has been granted under 37 CFR 5.13.

iis license is to be retained by the licensee and may be used at anytime on or after
ie effective date thereof unless it is revoked.  The license is not retroactive.

ie grant of a license does not in any way lessen the responsibility of a licensee for
ie security of the subject matter as imposed by any Government contract or the provisions
f existing laws relating to espionage and the national security or the export of
achnical data.  Licensees should apprise themselves of current regulations, especially
ith respect to certain countries, of other agencies, particularly the Office of
unitions Control, Department of State (with respect to Arms, Munitions and Implements
f War (22 CFR, Parts 121-128)); the Office of Export Administration, Department of
ommerce (15 CFR 370.10(j)); and the Department of Energy or its successors.

### NOT GRANTED

o license under 35 U.S.C. 184 has been granted at this time, if the phrase "FOREIGN
ILING LICENSE GRANTED" DOES NOT appear on the reverse side of this form.  Applicant
ay still petition for a license under 37 CFR 5.12(b), if a license is desired.

DEM 518956

## ASSIGNMENT OF PATENT APPLICATION

WHEREAS,
Soren WEINRICH, of Svanevej 11, 3060 Espergaerde, DENMARK (hereinafter referred to as "ASSIGNOR") have/has invented certain new and useful improvements in
   A Hearing Aid, Especially of the In-the-Ear Type
for which an application for Letters Patent of the United States has been filed on March 13, 1989
   AND WHEREAS
OTICON A/S, whose post office address is Eriksholm, Kongevejen 243, DK-3070 Snekkersten, DENMARK (hereinafter referred to as "ASSIGNEE") is desirous of acquiring the entire right, title and interest in and to said application and the inventions and improvements therein disclosed, for the United States of America,
   NOW THEREFORE in consideration of the sum of ten U.S. dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the ASSIGNOR does hereby assign, sell, transfer and set over unto the ASSIGNEE the entire right, title and interest in and to said application and the inventions and improvements therein disclosed, for the United States and any Letters Patent which may issue therefor in the United States and all divisions, continuations, re-issues, renewals and/or extensions thereof, said ASSIGNEE to have and to hold the interests herein assigned to the full ends of the terms of said Letters Patent and any and all divisions, continuations, re-issues, renewals and/or extensions thereof, respectively, as fully and entirely as the same would have been held and enjoyed by the ASSIGNOR had this assignment not been made.
   And for the consideration aforesaid, ASSIGNOR agrees that ASSIGNOR will communicate to said ASSIGNEE or the representatives thereof any facts known to ASSIGNOR respecting the inventions and improvements of the said United States application and will, upon request, but without expense to ASSIGNOR, testify in any legal proceedings, sign all lawful papers, execute all divisional, continuation, re-issue, renewal and/or extension applicaions, make all rightful oaths, and generally do all other and further lawful acts, deemed necessary or expedient by said ASSIGNEE or by counsel for said ASSIGNEE, to assist or enable said ASSIGNEE to obtain and enforce full benefits from the rights and interest herein assigned.
   This assignment shall be binding upon the ASSIGNOR's heirs, executors, administrators, successors and/or assigns, and shall inure to the benefit of the heirs, executors, administrators, successors, and/or assigns, as the case may be, of the ASSIGNEE.
   The Commissioner of Patents is requested to issue such Letters Patent in accordance with this assignment.

Signature: _Søren Weinrich_

Name: Søren Weinrich

Date: 18.4.89

RECORDED
PATENT & TRADEMARK OFFICE

MAY 12 1989

COMMISSIONER OF PATENTS
AND TRADEMARKS OFFICE

REEL 5083 FRAME 246

DEM 518957



**Patent and Trademark Office**

Address    COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/323,367 | 03/13/89 | HEINRICH | S | 011 |

```
ROSS F. HUNT, JR.
LARSON & TAYLOR
727 23RD STREET SOUTH
ARLINGTON, VA 22202
```

01.11.95(3)
04.11.95(3)
s.c.
At

| EXAMINER |
|---|
| MCGEARTY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 261 | 7 |

DATE MAILED: 10/11/89

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

This application has been examined ☐ Responsive to communication filed on _____ ☐ This action is made final.

A shortened statutory period for response to this action is set to expire **3** month(s), _____ days from the date of this letter. Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.    2. ☒ Notice re Patent Drawing, PTO-948.
3. ☒ Notice of Art Cited by Applicant, PTO-1449.    4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.    6. ☐ _____

SUMMARY OF ACTION

☒ Claims _1 - 8_ are pending in the application.

Of the above, claims _____ are withdrawn from consideration.

☐ Claims _____ have been cancelled.

☐ Claims _____ are allowed.

☒ Claims _1 - 8_ are rejected.

☐ Claims _____ are objected to.

☐ Claims _____ are subject to restriction or election requirement.

☐ This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.

☐ Allowable subject matter having been indicated, formal drawings are required in response to this Office action.

☐ The corrected or substitute drawings have been received on _____. These drawings are ☐ acceptable;
☐ not acceptable (see explanation).

☐ The ☐ proposed drawing correction and/or the ☐ proposed additional or substitute sheet(s) of drawings, filed on _____,
has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).

☐ The proposed drawing correction, filed _____, has been ☐ approved. ☐ disapproved (see explanation). However,
the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are
corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO
EFFECT DRAWING CHANGES", PTO-1474.

☒ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☒ been received ☐ not been received
☐ been filed in parent application, serial no. _____; filed on _____.

☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

DEM 518958

☐ Other

Serial No. 322,387                                    -2-

Art Unit 261

1.      The Abstract of the Disclosure is objected to because there is more than one paragraph. Also, the suggestion as to which figure should be published should be removed.

2.      Applicant is reminded of the proper language and format of an Abstract of the Disclosure.

The abstract should be in narrative form and generally limited to a single paragraph on a separate sheet within the range of 50 to 250 words. It is important that the abstract not exceed 250 words in length since the space provided for the abstract on the computer tape used by the printer is limited. The form and legal phraseology often used in patent claims, such as "means" and "said", should be avoided. The abstract should describe the disclosure sufficiently to assist readers in deciding whether there is a need for consulting the full patent text for details.

The language should be clear and concise and should not repeat information given in the title. It should avoid using phrases which can be implied, such as, "The disclosure concerns," "The disclosure defined by this invention " "The disclosure describes," etc.

3.      The drawings are objected to because the boxes in Figures 1-3 (in Figure 1, for example boxes 1, 3, 6 and 9) are required to be labeled according to 37 CFR 1.83(a).

Applicant is required to submit a proposed drawing correction in response to this Office action. However, correction of the noted defect can be deferred until the application is allowed by the examiner

4.      Claim 6 is rejected under 35 U.S.C. 112, second paragraph as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

The phrase "an acoustic impedance-matching element, such as an acoustical resistance" is considered

DEM 518959

Serial No. 322,387                                    -3-

Art Unit 261

to be indefinite as to the scope of the claim. It is

not clear whether the narrower expression is, in fact, a

claim limitation.

In addition, claim 1b would be clarified by

changing "for amplifying" to "to amplify".

5.      The following is a quotation of the first
paragraph of 35 U.S.C. 112:

The specification shall contain a written descrip
tion of the invention, and of the manner and pro
cess of making and using it, in such full, clear,
concise, and exact terms as to enable any person
skilled in the art to which it pertains, or with
which it is most nearly connected, to make and use
the same and shall set forth the best mode con
templated by the inventor of carrying out his
invention.

The specification is objected to under 35 U.S C

112, first paragraph, as failing to provide an adequate

written description of the invention.

The specification (p 5, 1 16-20) states that

the inputs to the amplifier 14 are equal in amplitude

and phase, contradictory to the claimed invention in

claim 1 (which specifies inputs to the amplifier oppo-

site in phase).

6.      Claims 1-8 are rejected under 35 U.S.C. 112,

first paragraph, for the reasons set forth in the above

objection to the specification.

7.      The following is a quotation of the appropriate
paragraphs of 35 U.S.C. 102 that form the basis for the
rejections under this section made in this Office
action:

A person shall be entitled to a patent unless-

(e) the invention was described in a patent
granted on an application for patent by
another filed in the United States before the
invention thereof by the applicant for patent,
or on an international application by another
who has fulfilled the requirements of

DEM 518960

Serial No. 322,387                                      -4-

Art Unit 261

          paragraphs (1), (2), and (4) of section 371(c)
of this title before the invention thereof by
the applicant for patent.

8.      Claim 1 is rejected under 35 U.S.C 102e as
being anticipated by Levitt et al.

      Figure 2 of Levitt shows a hearing aid
comprising a microphone (57), an amplifier (60), and an
electro-acoustical transducer (69). The signal path is
disclosed in col. 9, l. 13 as "the acoustic feedback
loop". The additional signal path disclosed as "the
electronic feedback path" (col. 9, l. 14). The electro-
nic feedback path may contain a "programmable filter"
(col. 9, l. 33-34) which produces a signal delivered to
a subtraction amplifier equal to that provided from the
"acoustic feedback loop" (col. 9, l 13-17). This filter
effectively delays & modifies (col. 2 l 55 58) the
signal along the "electronic feedback path" so that it
arrives at the subtraction amplifier at a time equal to
~~the subtraction amplifier at a time equal to~~ the signal
along the acoustic feedback path.

9.      Any inquiry concerning this communication or
earlier communications from the examiner should be
directed to Nelson M^cGeary whose telephone number is
(703) 557-6096.

     Any inquiry of a general nature, or relating to the
status of this application, should be directed to the
Group receptionist whose telephone number is (703)
557-3321.

N. McGEARY:sm

703 557-6096

10/4/89

DEM 518961

PTO - 948
(Rev. 8-82)

GROUP 260

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

ATTACHMENT TO
PAPER NUMBER 7

S.N. 322387

## NOTICE OF PATENT DRAWINGS OBJECTION

Drawing Corrections and/or new drawings may only be
submitted in the manner set forth in the attached letter,
"Information on How to Effect Drawing Changes" PTO-1474.

A. ☑ The drawings, filed on **3/13/89**, are objected to as informal for reason(s) checked below:

1. ☐ Lines Pale.

2. ☐ Paper Poor.

3. ☐ Numerals Poor.

4. ☑ Lines Rough and Blurred.
   Fig 1-4

5. ☐ Shade Lines Required.

6. ☐ Figures Must be Numbered.

7. ☐ Heading Space Required.

8. ☐ Figures Must Not be Connected.

9. ☐ Criss-Cross Hatching Objectionable.

10. ☐ Double-Line Hatching Objectionable.

11. ☐ Parts in Section Must Be Hatched.

12. ☐ Solid Black Objectionable.

13. ☐ Figure Legends Placed Incorrectly.

14. ☐ Mounted Photographs.

15. ☐ Extraneous Matter Objectionable. [37 CFR 1.84 (1)]

16. ☐ Paper Undersized; either 8½" x 14", or 21.0 cm. x 29.7 cm. required.

17. ☐ Proper A4 Margins Required:
    ☐ TOP 2.5 cm.    ☐ RIGHT 1.5 cm.
    ☐ LEFT 2.5 cm.    ☐ BOTTOM 1.0 cm.

18. ☑ Other: ~~Bore~~ ~~~~

B. ☑ The drawings, submitted on **3/13/89**, are so informal they cannot be corrected. New drawings are required. Submission of the new drawings MUST be made in accordance with the attached letter.

DEM 518962

FORM PTO-892
(REV. 3-78)

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

NOTICE OF REFERENCES CITED

SERIAL NO. 07/322,387

GROUP ART UNIT 261

ATTACHMENT TO PAPER NUMBER 7

APPLICANT(S)

## U.S. PATENT DOCUMENTS

|   |   | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| * | W | 4 7 3 1 8 5 0 | 3-85 | Levitt et al. | 381 | 68.4 | |
| * | B | 4 4 5 5 6 7 5 | 6-84 | Bose et al. | 381 | 74 | |
|   | C | | | | | | |
|   | D | | | | | | |
|   | E | | | | | | |
|   | F | | | | | | |
|   | G | | | | | | |
|   | H | | | | | | |
|   | I | | | | | | |
|   | J | | | | | | |
|   | K | | | | | | |

## FOREIGN PATENT DOCUMENTS

|   |   | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| * | L | 2 8 0 8 5 1 6 | 9-79 | Germany | Schmidt | — | — | | |
| * | M | 2 8 5 4 9 1 2 | 6-79 | Germany | Burwood et al | — | — | | |
| * | N | 3 5 2 6 5 9 1 | 1-87 | Germany | Schmidt-Enzmann | — | — | | |
|   | O | | | | | | — | | |
|   | P | | | | | | | | |
|   | Q | | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

|   | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER | DATE | | DEM 518963 |
|---|---|---|---|
| M Nin (Tony II | 9/21/89 | | |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of                )
WEINRICH, Soren                     )
Serial No.: 07/322,387              )
Filed: March 13, 1989               )
For: A HEARING AID, ESPECIALLY OF   )
     THE IN-THE-EAR TYPE            )

RESPONSE TO NOTICE TO FILE MISSING PARTS OF
APPLICATION - FILING DATE GRANTED

Honorable Commissioner of Patents and Trademarks
Washington, D.C.  20231
S I R:

        In Response to the Notice dated March 31, 1989,
submitted herewith are:

        1.    Declaration signed by Applicant.

        2.    An Assignment to OTICON A/S.

        3.    A certified copy of Danish Patent No. 1479/88
filed March 18, 1988, the priority of which is hereby claimed.

        4.    An Information Disclosure Statement with four (4)
references.

        5.    A check in the amount of $490 for the following:
              Application Filing Fee (Large Entity) - $370.00
              Surcharge Fee (Large Entity) - $120.00
              Assignment Recordal Fee - $8.00

DEM 518964

If any other fee is due in connection with this communication or if the check enclosed is insufficient, the Commissioner is authorized to charge any fee or additional fee due in connection with this communication to Deposit Account No. 12-0555.

It is considered that this application is in order for examination and such action is respectfully requested.

Respectfully submitted,

LARSON AND TAYLOR

By: _____
Ross F. Hunt, Jr.
Registration No. 24,082

727 Twenty-Third Street, South
Arlington, Virginia  22202
(703) 920-7200

May 12, 1989

DEM 518965



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTY. DOCKET NO |
|---|---|---|---|---|
| 07/322,387 | 03/13/89 | WEINRICH | 6 | VII |

```
ROSS F. HUNT, JR.
LARSON & TAYLOR
727 23RD STREET SOUTH
ARLINGTON, VA 22202
```
000
03/31/89

DATE MAILED:

### NOTICE TO FILE MISSING PARTS OF APPLICATION—
### FILING DATE GRANTED

A filing date has been granted to this application. However, the following parts are missing.

If all missing parts are filed within the period set below, the total amount owed by applicant as a
☐ large entity, ☐ small entity (verified statement filed), is $ ___ — $490.00

1. ☐ The statutory basic filing fee is ☐ missing. ☐ insufficient. Applicant as a ☐ large entity,
☐ small entity, must submit $ ___ to complete the basic filing fee and MUST ALSO SUBMIT
THE SURCHARGE AS INDICATED BELOW.

2. ☐ Additional claim fees of $ ___ as a ☐ large entity, ☐ small entity, including any required
multiple dependent claim fee, are required. Applicant must submit the additional claim
fees or cancel the additional claims for which fees are due. NO SURCHARGE IS REQUIRED
FOR THIS ITEM.

3. ☑ The oath or declaration:
☐ is missing.
☐ does not cover items omitted at the time of execution.
An oath or declaration in compliance with 37 CFR 1.63, identifying the application by the
above Serial Number and Filing Date is required. A SURCHARGE MUST ALSO BE
SUBMITTED AS INDICATED BELOW.

4. ☐ The oath or declaration does not identify the application to which it applies. An oath or
declaration in compliance with 37 CFR 1.63 identifying the application by the above
Serial Number and Filing Date is required. A SURCHARGE MUST ALSO BE SUBMITTED
AS INDICATED BELOW.

5. ☐ The signature to the oath or declaration is: ☐ missing; ☐ a reproduction; ☐ by a person
other than the inventor or a person qualified under 37 CFR 1.42, 1.43, or 1.47. A properly
signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by
the above Serial Number and Filing Date is required. A SURCHARGE MUST ALSO BE
SUBMITTED AS INDICATED BELOW.

6. ☐ The signature of the following joint inventor(s) is missing from the oath or declaration:
___ Applicant(s) should provide, if possible an oath or declaration
signed by the omitted inventor(s), identifying this application by the above Serial Number
and Filing Date. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED
BELOW.

7. ☐ The application was filed in a language other than English. Applicant must file a verified
English translation of the application and a fee of $25.00 under 37 CFR 1.17(k), unless this
fee has already been paid NO SURCHARGE UNDER 37 CFR 1.16(e) IS REQUIRED FOR
THIS ITEM.

8. ☐ A $20.00 processing fee is required for returned checks. (37 CFR 1.21(m)).

9. ☐ Your filing receipt was mailed in error because check was returned.

10. ☐ Other:

A Serial Number and Filing Date have been assigned to this application. However, to avoid
abandonment under 37 CFR 1.53(d), the missing parts and fees identified above in items 1 and
3-6 must be timely provided ALONG WITH THE PAYMENT OF A SURCHARGE OF $110.00
for large entities or $55.00 for small entities who have filed a verified statement claiming such
status. The surcharge is set forth in 37 CFR 1.16(e). Applicant is given ONE MONTH FROM
THE DATE OF THIS LETTER, OR TWO MONTHS FROM THE FILING DATE of this
application, WHICHEVER IS LATER, within which to file all missing parts and pay any fees.
Extensions of time may be obtained by filing a petition accompanied by the extension fee under
the provisions of 37 CFR 1.136(a).

Direct the response to, and any questions about, this notice to the undersigned, Attention:
Application Branch.

*A copy of this notice MUST be returned with response.*        DEM 518966

| For Office Use Only |  |
|---|---|
| ☐ 202 | ☐ 202 |

**DECLARATION FOR PATENT APPLICATION (USA)**
(INCLUDING DESIGN PATENT APPLICATIONS)

Attorney's Docket No
VII

As a below named inventor, I hereby declare that

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled    A Hearing Aid,
Especially of the In-the-Ear Type, _____ the specification of which

(check one)    [ ] is attached herein

X was filed on    March 13, 1989    , as

Application Serial No

and was amended on _____
(if applicable)

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code, §119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

| Prior Foreign Application(s) | | | Priority Claimed | |
|---|---|---|---|---|
| 1479/88 | Denmark | 18/03/88 | ☒ Yes | ☐ No |
| (Number) | (Country) | (Day/Month/Year Filed) | | |
| | | | ☐ Yes | ☐ No |
| (Number) | (Country) | (Day/Month/Year Filed) | | |
| | | | ☐ Yes | ☐ No |
| (Number) | (Country) | (Day/Month/Year Filed) | | |

[ ] Additional applications identified on attached sheet

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, §1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| | | |
|---|---|---|
| (Application Serial No.) | (Filing Date) | (Status) (patented, pending, abandoned) |
| (Application Serial No) | (Filing Date) | (Status) (patented, pending, abandoned) |

[ ] Additional applications identified on attached sheet

I hereby appoint the following attorneys to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith:

| | | | |
|---|---|---|---|
| Robert B. Watson | Reg No 23128 | Marvin Petry | Reg No 22752 | William E. Jackson | Reg No 24016 |
| Andrew L. Gaito | Reg No 17000 | Thomas F. Smegal | Reg No 19290 | Harold I. Novick | Reg No 28011 |
| Walter C. Giles | Reg No 32086 | Ross F. Hunt Jr | Reg No 24082 | Douglas E. Jackson | Reg No 28078 |

Direct all telephone calls to _____ Ross F. Hunt, Jr.    TEL: 920-7200
Address all correspondence to LARSON & TAYLOR, 727 23rd Street South, Arlington, Virginia 22202.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true, and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

| Full Name of Sole or First Inventor | Inventor's Signature | | Date |
|---|---|---|---|
| Soren WEINRICH | *Soren Weinrich* | Citizenship | 18.4.89. |
| Residence Svanevej 11, 3060 Espergaerde, DENMARK | | | |
| Post Office Address    same as above | | | Date |
| Full Name of Second Joint Inventor if any | Inventor's Signature | | |
| | | Citizenship | |
| Residence | | | |
| Post Office Address | | | Date |
| Full Name of Third Joint Inventor, if any | Inventor's Signature | | |
| | | Citizenship | |
| Residence | | | |
| Post Office Address | | | Date |
| Full Name of Fourth Joint Inventor, if any | Inventor's Signature | | |
| | | Citizenship | |
| Residence | | | |
| Post Office Address | | | |

[ ] See attached sheet for similar information and signature for additional joint inventors.

Law Offices of LARSON & TAYLOR, 727 23rd Street South, Arlington, Virginia 22202.

DEM 518967

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of | ) |
| WEINRICH, Soren | ) |
| Serial No.: 07/322,387 | ) |
| Filed:  March 13, 1989 | ) |
| For: A HEARING AID, ESPECIALLY OF | ) |
|      THE IN-THE-EAR TYPE | ) |

L E T T E R

Honorable Commissioner of Patents and Trademarks

Washington, D.C.  20231

S I R:

Please record the attached Assignment and return it to the undersigned.  Our firm check in payment of the government recordal fee is attached hereto.

Respectfully submitted,
LARSON AND TAYLOR

Ross F. Hunt, Jr.
Registration No. 24,082

727 Twenty-Third Street, South
Arlington, Virginia  22202
(703) 920-7200

May 12, 1989

DEM 518968

B329

## ASSIGNMENT OF PATENT APPLICATION

WHEREAS,
Soren WEINRICH, of Svanevej 11, 3060 Espergaerde, DENMARK (hereinafter referred to as "ASSIGNOR") have/has invented certain new and useful improvements in
A Hearing Aid, Especially of the In-the-Ear Type for which an application for Letters Patent of the United States has been filed on March 13, 1989
AND WHEREAS
OTICON A/S, whose post office address is Eriksholm, Kongevejen 243, DK-3070 Snekkersten, DENMARK (hereinafter referred to as "ASSIGNEE") is desirous of acquiring the entire right, title and interest in and to said application and the inventions and improvements therein disclosed, for the United States of America,
NOW THEREFORE in consideration of the sum of ten U.S. dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the ASSIGNOR does hereby assign, sell, transfer and set over unto the ASSIGNEE the entire right, title and interest in and to said application and the inventions and improvements therein disclosed, for the United States and any Letters Patent which may issue therefor in the United States and all divisions, continuations, re-issues, renewals and/or extensions thereof, said ASSIGNEE to have and to hold the interests herein assigned to the full ends of the terms of said Letters Patent and any and all divisions, continuations, re-issues, renewals and/or extensions thereof, respectively, as fully and entirely as the same would have been held and enjoyed by the ASSIGNOR had this assignment not been made.
And for the consideration aforesaid, ASSIGNOR agrees that ASSIGNOR will communicate to said ASSIGNEE or the representatives thereof any facts known to ASSIGNOR respecting the inventions and improvements of the said United States application and will, upon request, but without expense to ASSIGNOR, testify in any legal proceedings, sign all lawful papers, execute all divisional, continuation, re-issue, renewal and/or extension applicaions, make all rightful oaths, and generally do all other and further lawful acts, deemed necessary or expedient by said ASSIGNEE or by counsel for said ASSIGNEE, to assist or enable said ASSIGNEE to obtain and enforce full benefits from the rights and interest herein assigned.
This assignment shall be binding upon the ASSIGNOR's heirs, executors, administrators, successors and/or assigns, and shall inure to the benefit of the heirs, executors, administrators, successors, and/or assigns, as the case may be, of the ASSIGNEE.
The Commissioner of Patents is requested to issue such Letters Patent in accordance with this assignment.

Signature: _Soren Weinrich_

Name: _Søren Weinrich_

Date: _18.4.89._

DEM 518969

B330

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of                    )

WEINRICH, Soren                         )

Serial No.:  07/322,387                 )

Filed:  March 13, 1989                  )

For: A HEARING AID, ESPECIALLY OF )

  THE IN-THE-EAR TYPE            )

L E T T E R

Honorable Commissioner of Patents and Trademarks

Washington, D.C.  20231

S I R:

  Applicant hereby claims the priority date of the

attached Danish Patent Application No. 1479/88, filed March 18,

1988, under the provisions of 35 USC 119.

        Respectfully submitted,
        LARSON AND TAYLOR

        Ross F. Hunt, Jr.
        Reg. No. 24,082

727 Twenty-Third Street, South
Arlington, Virginia  22202
(703) 920-7200

May 12, 1989

**DEM 518970**



# Kongeriget Danmark

Patent application No.  1479/88

Date of filing  18 Mar 1988

Applicant  Oticon A/S, Eriksholm; Kongevejen 243;
3070 Snekkersten, DK

Int. Cl. 4  H 04R 25/02

Titel:  A hearing aid, especially of the in-
the-ear type

This is to certify that the attached photocopy is a true copy of
the specification, drawings and abstract filed with the applica-
tion.



## ♛ Patentdirektoratet

16 Mar 1989

*Gitte M. Dall*

Gitte M. Dall
Overassistent

*DEM 518971*



William Demant / Holding

Annual Report 2006

EXHIBIT
36

DEM012268

maintain the high gross profit ratio level recorded particularly in the second half of 2006.

The corporate employee share ownership plan implemented in autumn 2006 had a gift element of DKK 34 million, of which DKK 10 million are included in production costs and DKK 24 million in capacity costs.

## Capacity costs

Consolidated capacity costs rose by 13% to DKK 2,397 million, which is marginally above the revenue increase for the period under review. If we disregard costs relating to the employee share ownership plan and due diligence costs, the rise in Group capacity costs was 11%. The development in capacity costs is shown in the table below.

| Capacity costs | | | Percentage change in | |
| --- | --- | --- | --- | --- |
| DKK million | 2005 | 2006 | DKK | local currency |
| Research and development costs | 383 | 460 | 20.2% | 20.4% |
| Distribution costs | 1,354 | 1,513 | 11.8% | 11.7% |
| Administrative expenses | 297 | 334 | 12.4% | 11.9% |
| Total | 2,034 | 2,307 | 13.4% | 13.3% |

## Research and development costs

We are of the opinion that continuous focus on innovation and product development is essential to ensure our long term growth potential. In 2006, we thus boosted research and development resources by 20% to DKK 460 million, of which DKK 7 million, however, relates to the employee share ownership plan carried through in 2006.

Research and development costs accounted for 9.0% of revenue in 2006, which is about 0.5 percentage point more than in 2005. In 2007, the plan is to continue the sharp focus on research and development of recent years – particularly due to the constant pressure from the competition and the consolidation currently taking place in the hearing aid industry. The increase in corporate research and development costs is therefore again estimated to exceed sales growth in 2007. The primary drivers of the boost in development

activities in 2006 and 2007 are the introduction in the first half of 2007 of the new technological architecture (RISE) for Oticon's future hearing aids and the development of new products using this architecture.

The development functions in the William Demant Holding Group collaborate across business areas and continents to maximise know-how and knowledge. This policy ensures that basic technologies and special competencies developed for specific purposes in one part of the Group are utilised in other corporate contexts, thereby optimising the use of resources. The establishment in 2004/2005 of our new domicile and development centre in Smørum is a natural extension of our focused development strategy. Our vision was to create and continue to have the world's leading and most sophisticated centre for developing hearing aids, thereby creating optimal conditions for maintaining our innovative edge and competitiveness. In addition to the facilities in Denmark, the Group has major development centres in Switzerland, Germany and the USA. Our researchers are members of research networks and institutions all over the world.

### Distribution costs

Distribution costs rose to DKK 1,513 million, or a 12% increase, which matches the growth in consolidated revenues for the period. Distribution costs include DKK 10 million relating to the employee share ownership plan carried through in 2006. Major launch activities in connection with the introduction of Oticon Delta in spring and summer further boosted distribution costs, particularly in the first half-year. Corporate retail activities, which in relative terms operate with high distribution costs, pulled in the opposite direction. In 2006, revenues from retail activities grew more than market growth, but nevertheless not as much as our wholesale business.

### Administrative expenses

Administrative expenses increased to DKK 334 million in 2006, or 12%, matching the growth in revenues for the period. These expenses were strongly affected by due diligence costs of DKK 25 million and costs relating to the employee share ownership plan of DKK 7 million. Ignoring these two items, administrative expenses would have grown by a mere 2%.



R&D costs
DKK million



Operating profit (EBIT)
DKK million

DEM012278

B334

# Risk management activities

Risk management activities in the William Demant Holding Group primarily focus on the business and financial risks to which the Company with a certain degree of probability may be exposed.

Generally, the Company operates in a stable market with a limited number of players. The risks to which the Company may be exposed are unlikely to change materially in the short term. When preparing the annual strategic and budgetary plans, the Board of Directors considers the risks identified by the Company.

## Business risks

The major risks to which the William Demant Holding Group may be exposed are of a business nature – be they risks within the Company's control or external risks due to the behaviour of the competition, for instance.

The market in which the Company acts is a highly product driven market. Products introduced on the market in the past two years generated about half of corporate sales. The Group's significant research and development initiatives help underpin our market position. It is therefore also vital in the long term to maintain the Group's innovative edge and to attract the most qualified and competent staff.

## Financial risks

Financial risk management concentrates on exchange, interest and liquidity risks and protecting against the risk of loss of plant, property and equipment. The purpose of financial risk management is to protect the business against avoidable losses and make sure that Management's forecasts for the current year will only be affected to a limited extent by changes in the surrounding world – be they fluctuating exchange or interest rates or direct damage to corporate assets.

### Exchange, interest and liquidity risks

The Company seeks to hedge against exchange risks through

foreign exchange contracts and other hedging instruments. Major net exchange positions are normally hedged up to 24 months ahead. Currency hedging gives Management the opportunity and necessary time to redirect the business strategy in the event of persistent foreign exchange fluctuations.

At present, the Group has limited debts compared with the volume of business activity, and changes in interest rates therefore only have negligible impact on the Group. In some cases, interest rate swaps are used to hedge interest rates.

We are of the opinion that the Group has a strong cash flow and satisfactory credit rating to secure current working capital and funds for possible acquisitions.

### Safeguarding corporate assets

Company Management continuously seeks to minimise any financial consequences of damage to corporate assets, including any operating losses incidental to potential damage. We are currently investing in security and surveillance systems to minimise potential damage. Major risks that cannot be adequately minimised are identified by Company Management who will on a continuous basis ensure that appropriate insurance policies are taken out under the corporate global insurance programme administered by recognised and credit-rated insurance companies. The Group's insurance programme has deductible clauses in line with normal market terms. The Board of Directors annually reviews the Company's insurance policies, including coverage of any identified risks.

The Board of Directors is regularly briefed on any developments in identified risks. The purpose of this reporting is to keep the Board fully updated and enable it to take corrective action to minimise any risks.



22

B335

DEM012289



27

variety to their working day while offering a far better and more efficient packaging solution geared to the challenges of the future.

Bernafon in Switzerland has also taken innovative initiatives in 2006. Thus, Bernafon launched two new series of hearing aids, Prio and ICOS. A third innovation was the thin-tube concept Spiraflex. The flexible thin tube, which can be used for all Bernafon's products, is fitted by means of a tiny adapter. Spiraflex provides hearing aid users with an almost invisible solution and has also made life much easier for hearing clinic staff who can now fit all instruments using the same equipment. Spiraflex is a good example of Bernafon's innovation philosophy, which focuses not only on technological innovation, but also on finding smart solutions to simplify life for users and hearing care professionals alike.

SPIRAFLEX THIN-TUBE CONCEPT

Introduced together with ICOS, the new fitting software Oasis Plus defines the first fitting of the hearing aid in a series of listening situations in which data on the user's lifestyle and preferences are entered. This software has been further developed and introduced with four pre-defined programs in connection with the launch of Prio.

"Innovative solutions have characterised our business philosophy since the formation of the company over 60 years ago. To promote new thinking we have introduced a portal for ideas on the intranet enabling staff to present their ideas for development, whether for new products, new processes or working conditions. The ideas are evaluated by a committee consisting of management and staff, and the best ones are rewarded and put into practice."

BERNHARD BAEHNISWYL
Head of Business Team, Bernafon

"All the fundamentals for innovation are in place. They have strong values that pervade and govern the operation and development of the entire organisation from top to bottom. The innovation culture is solidly anchored in Management and everyone in the entire organisation is passionate about innovation. It quite simply runs in their blood. Moreover, Oticon has an efficient project model and competent project managers. Their results – ground-breaking new products, high-speed innovation, sound earnings and high value creation – speak for themselves."

ANDERS DREJER
Professor at the Aarhus School of Business, University of Aarhus, and a member of the Innovation Cup Jury

B336

DEM012294

Impairment testing should be basis for impairment of goodwill at 31 December 2006.

Goodwill is tested for impairment annually on preparation of the annual report. On impairment testing the discounted values of future cash flows are compared with the carrying amounts.

The Group entities collaborate closely on research and development, purchasing and production as well as marketing and sale, where the use of resources on the individual markets is co-ordinated and monitored by Management in Denmark. The Group entities are therefore highly integrated. Consequently, Management considers the overall business as one cash-generating unit.

Certain business activities which to a higher degree act with more autonomy in relation to the Group, and whose profitability can be measured independently of the other activities, will constitute a separate cash-generating unit. With the existing integration in the Group and recognised goodwill at 31 December 2006, no separate cash-generating units have been identified to which goodwill can be allocated. The annual impairment test was thus based on the Group as a whole.

Future cash flows are based on the 2007 budget, strategic plans and projections hereof, whereas projections extending beyond 2009 are based on general parameters. The terminal value for the period after 2009 is determined on the assumption of 2% growth. The discounting rate before tax is 8%.

## Note 8 – Intangible assets (DKK - in thousands)

| | Goodwill | Acquired patents and licences | Other intangible assets |
| --- | --- | --- | --- |
| | | | GROUP |
| Cost at 1.1.2006 | 54,342 | 27,230 | 0 |
| Foreign currency adjustments | -812 | -29 | 0 |
| Additions in 2006 | 0 | 6,678 | 744 |
| Additions relating to acquisitions | 33,183 | 0 | 945 |
| Cost at 31.12.2006 | 86,713 | 33,879 | 1,689 |
| Amortisation at 1.1.2006 | | -17,555 | 0 |
| Foreign currency adjustments | | 29 | 0 |
| Amortisation for 2006 | | 9,019 | -35 |
| Amortisation at 31.12.2006 | | -26,545 | -35 |
| Carrying amount at 31.12.2006 | 86,713 | 7,334 | 1,654 |



B337

DEM012313



| Note 14 – Provisions - continued (DKK - in thousands) | 2006 | GROUP 2005 |
|---|---|---|
| **Defined benefit costs recognised in the income statement:** | | |
| Current service cost | 3,819 | 3,077 |
| Calculated interest on obligation | 1,877 | 1,062 |
| Expected return on plan assets | -1,842 | -1,635 |
| Costs recognised in the income statement (note 2) | 3,854 | 2,504 |
| | | |
| Accumulated actuarial loss recognised in statement of recognised income and expense | -8,738 | 0 |
| | | |
| **Present value of defined benefit obligations** | | |
| Defined benefit obligations at 1.1. | 43,421 | 39,062 |
| Foreign currency adjustments | -1,425 | 377 |
| Current service cost | 3,819 | 3,077 |
| Calculated interest on obligations | 1,877 | 1,062 |
| Actuarial loss | 3,438 | 0 |
| Actuarial loss relating to Holland | 13,987 | 0 |
| Benefits paid | -3,241 | -3,045 |
| Contributions from plan participants | 2,890 | 2,557 |
| Defined benefit obligations at 31.12. | 64,766 | 43,421 |
| | | |
| **Fair value of plan assets** | | |
| Plan assets at 1.1. | 39,233 | 35,656 |
| Foreign currency adjustments | -1,287 | 460 |
| Expected return on plan assets | 1,842 | 1,635 |
| Actuarial gains | 1,485 | 0 |
| Actuarial gain relating to Holland | 7,202 | 0 |
| Contributions | 7,155 | 5,553 |
| Benefits paid | -3,241 | -2,008 |
| Plan assets at 31.12. | 52,389 | 39,233 |
| | | |
| Present value of defined benefit obligations | 64,766 | 43,421 |
| Fair value of plan assets | 52,389 | 39,233 |
| Net obligation recognised in the balance sheet | 12,377 | 4,188 |
| | | |
| Discount rate | 3.0%-4.3% | 3.0% |
| Expected return on plan assets | 3.4%-4.3% | 6.0% |
| Future rate of salary rises | 1.5%-2.5% | 2.5% |

The Group has defined benefit plans, which are required by law, in Switzerland and Holland.

In 2005, the benefit plan in Holland (multi-employer plan) was treated as a defined contribution plan in the financial statements. In 2006, it became possible to actuarially calculate the Group's share of net obligations, and the plan has therefore been reclassified as a defined benefit plan. On reclassification, the part of net obligations of DKK 6.8 million at 1 January 2006 has been charged to equity as an actuarial loss.

DEM012320



## Note 18 – Contingent liabilities (DKK in thousands)

| | PARENT | | GROUP | |
|---|---|---|---|---|
| | 2005 | 2006 | 2006 | 2005 |
| Recourse guarantee commitments in relation to subsidiaries' credit facilities | 67,732 | 81,934 | 0 | 0 |
| Utilised credit facilities | 22,966 | 34,335 | 0 | 0 |

William Demant Holding A/S acts as a guarantor for the credit facilities established with the Group's Danish subsidiaries in the amount of DKK 794 million (DKK 490 million in 2005).

William Demant Holding A/S has guaranteed the payment of rent by a subsidiary in the amount of DKK 11.2 million (DKK 0 million in 2005) and provided guarantees in respect of the continued operation of certain subsidiaries in 2007.

Together with the jointly taxed entities, William Demant Holding A/S is jointly and severally liable for the payment of corporation tax for the 2004 tax year and previous years.

The William Demant Holding Group is party to a few lawsuits, the outcomes of which, in Management's opinion, are insignificant in terms of the Group's financial position. Provisions are made for lawsuits to the best of our knowledge.

As part of our business activities, the Group has entered into normal agreements with customers and suppliers etc. as well as agreements for the purchase of shareholdings.





B339

56



## Business activities

The William Demant Holding Group develops, manufactures and sells products and equipment designed to aid the hearing and communication of individuals. The Group covers three business activities: Hearing Aids, Diagnostic Instruments and Personal Communication. Subsidiaries collaborate in many areas and to a wide extent also share resources and technologies in the areas of production, research and development etc.



William Demant Holding A/S

| Oticon | Bernafon | Maico Diagnostics Interacoustics | Phonic Ear Sennheiser Communications |

Operational activities

Distribution activities

### Hearing Aids

The Group's core business is Hearing Aids, and this business activity comprises Oticon and Bernafon.

Oticon's vision is "to help people live the life they want, with the hearing they have". Oticon aims to supply the most sophisticated technology and audiology based on the needs and wishes of the hearing impaired and at any time to offer a full range of the best hearing aids and fitting systems on the market. Oticon wishes to be the most attractive provider of hearing aids and looks upon the hearing care professional as its business partner. Oticon sells its products through sales enterprises in 22 countries and about 80 independent distributors worldwide.



Bernafon aims to help hearing impaired people to hear and communicate better through innovative hearing aid solutions. Bernafon offers a large range of quality hearing aid systems in all product categories. Bernafon's hearing aids are flexible and easy to fit for hearing care professionals, and the products represent some of the most attractive combinations on the market in terms of performance and price. Today, Bernafon sells its products through 14 sales enterprises and over 70 independent distributors.



B340

DEM012327