IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ENERGY TRANSPORTATION GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-422 (GMS) |
| | ) | |
| SONIC INNOVATIONS, INC., et al, | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Defendants. | ) | |
| | ) | |

**REPLY OF WILLIAM DEMANT HOLDING A/S ON ITS RENEWED
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for William Demant Holding A/S,
WDH Inc., Oticon A/S, Oticon, Inc.,
Bernafon AG, and Bernafon LLC*

OF COUNSEL:

John M. Romary
C. Gregory Gramenopoulos
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER
901 New York Ave., N.W.
Washington, DC 20001-4413
202.408.4000

Original Filing Date: September 14, 2007
Redacted Filing Date: September 21, 2007

TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| INTRODUCTION | | 1 |
| ARGUMENT | | 2 |
| I. | NO CREDIBLE EVIDENCE EXISTS OF WDH A/S'S KNOWLEDGE OF THE PATENTS-IN-SUIT. | 2 |
| II. | NO EVIDENCE EXISTS OF AN INTENT BY WDH A/S TO CAUSE INFRINGEMENT. | 5 |
| III. | ETG'S OTHER ARGUMENTS ARE NOT LEGALLY RECOGNIZED. | 5 |
| IV. | ETG IMPROPERLY SEEKS TO SHIFT THE BURDEN OF PROOF. | 8 |
| CONCLUSION | | 9 |

## TABLE OF AUTHORITIES

**CASES**     **PAGE(S)**

*BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*,
   229 F.3d 254 (3d Cir. 2000) — 8

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006) (en banc) — 5-6

*Monsanto Co. v. Syngenta Seeds, Inc.*,
   443 F. Supp. 2d 636 (D. Del. 2006) — 7

*Pieczenik v. Dyax Corp.*,
   265 F.3d 1329 (Fed. Cir. 2001) — 8

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*,
   819 F.2d 434 (3d Cir. 1987) — 8

*Sears, Roebuck & Co. v. Sears*, plc,
   744 F. Supp. 1297 (D. Del. 1990) — 9

*Stranahan Gear Co. v. NL Indus., Inc.*,
   800 F.2d 53 (3d Cir. 1986) — 8

*Telcordia Techs., Inc. v. Alcatel S.A.*,
   No. Civ. A. 04-874 GMS, 2005 WL 1268061 (D. Del. May 27, 2005) — 6-7

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*,
   735 F.2d 61 (3d Cir. 1984) — 8

## INTRODUCTION

ETG's Opposition to WDH A/S's renewed motion to dismiss disregards the standard of proof this Court articulated last December when it gave ETG eight months to find evidence of induced infringement. To proceed against WDH A/S, the Court's Order required ETG to come forward with evidence that WDH A/S (1) knew of the patents in suit, ***and*** (2) with that knowledge engaged in a course of conduct that it knew (or should have known) would result in infringement. (D.I. 135, p. 2; nn.1-2.) Eight months later, ETG continues to rely on speculation. There is not a single document in WDH A/S's files (or in the files of any other defendant) refuting WDH A/S's sworn representation that it did not know of the patents-in-suit before suit was filed. No witness testified otherwise.

As to the second prong, ETG's brief does not even address the issue of intent to cause infringement. Ironically, ETG avoided the best source of evidence of both knowledge and intent, opting not to take any deposition of any WDH A/S officer or employee, despite that ETG's lawyers spent weeks in Denmark this summer deposing many witnesses of other parties. Having wholly failed to address the second half of the inducement test, it is impossible for ETG to make out even a *prima facie* case of inducement.

Instead of focusing on intent, ETG submits a ream of exhibits to support an allegation that there were close ties between WDH A/S and its subsidiaries, presumably in support of an alter ego theory of liability. But as this Court noted in footnote 1 of its Order of December 4, 2006 (D.I. 135), ETG already abandoned all other theories of personal jurisdiction in favor of an inducement theory. Not only is it improper for ETG to back track, but the evidence ETG now submits is legally insufficient. **Redacted**

- 2 -

**Redacted**    Nor does WDH A/S dispute statements in its annual reports that to achieve efficiencies, resources were shared.  But such facts alone hardly warrant disregarding WDH A/S's corporate form.  ETG submits no evidence that WDH A/S misused its corporate form, and consistent with Delaware precedent, Niels Jacobsen, WDH A/S's Chief Executive Officer (who sits on the board of directors of over 70 entities) confirmed under oath that WDH A/S does not control the day-to-day activities of the subsidiaries accused of infringement in this case.  Speculation, particularly after ETG was afforded eight months to take discovery on induced infringement, is not a basis for establishing jurisdiction over a non-U.S. entity with no Delaware contacts and no accused infringing conduct.

## ARGUMENT

I.  NO CREDIBLE EVIDENCE EXISTS OF WDH A/S'S KNOWLEDGE OF THE PATENTS-IN-SUIT.

On pages 3-4 of its Opposition, ETG offers its only "proof" of WDH A/S's "knowledge" of the patents in suit.    **Redacted**

Such a position defies common sense.

---

[1]    **Redacted**

**Redacted**

ETG tries to finesse the matter by citing cases for the proposition that knowledge of one partner is imputed to another. Yet, not only did ETG fail to establish knowledge [Redacted], none of the cases ETG cites deal with imputing knowledge to support a claim of induced infringement.[2] Moreover, ETG offered no evidence that, with the alleged imputed knowledge of the patents-in-suit, WDH A/S embarked on a course of conduct calculated to cause infringement—a necessary prerequisite to even a *prima facie* case of induced infringement.

---

[2] ETG fails to cite any case where knowledge of a patent necessary to impose liability for inducing infringement was imputed to a defendant. Nor did ETG cite a single case where knowledge of a patent held by one party was imputed to another party.

On page 7 of its Opposition, ETG suggests that knowledge of WDH A/S subsidiaries should be imputed to WDH A/S. In three bullet points summarized below, ETG again stretches logic to support an allegation that subsidiaries had knowledge of the patents-in-suit.

1. In 1989, more than a decade before any accused product was on the market, a U.S. Patent Examiner cited one of the patents-in-suit to outside counsel in Arlington, Virginia for Oticon A/S, a subsidiary of WDH, A/S, who was handling one of Oticon A/S's own patent applications. There is no evidence that anyone within Oticon A/S discussed the reference from an infringement perspective, let alone recognized that it might raise infringement issues with respect to products that would be first sold more than a decade later. And ETG cites absolutely no evidence whatsoever that this information was transmitted to WDH A/S.

2. Two years later, in 1991, the U.S. Patent and Trademark Office cross-referenced another of the patents-in-suit among 10 patents, on the cover of an Oticon A/S patent. There is no evidence that anyone within Oticon A/S discussed the cross-reference from an infringement perspective, let alone recognized that it might raise infringement issues with respect to products to be released nearly a decade later. And there is absolutely no evidence whatsoever that this information was transmitted to WDH A/S.

3. In 1999, one of the patents-in-suit was cited in an Examiner's search report for an Oticon A/S patent application. ETG offers no evidence that anyone at Oticon A/S discussed the reference from an infringement perspective, let alone recognized that it might raise an infringement concern. More importantly, ETG submits no evidence whatsoever that this information was transmitted to WDH A/S.

In contrast to ETG's speculation that WDH A/S might have known of the patents-in-suit, the president of WDH A/S submitted a Declaration swearing otherwise. ETG now speculates that Mr. Niels Jacobsen meant something other than what he said in his Declaration. If ETG had any reason to doubt the Declaration, ETG could have deposed Mr. Jacobsen or any of WDH A/S's other eight employees. It is ETG's burden to establish jurisdiction, not WDH A/S's burden to disprove it.

## II. NO EVIDENCE EXISTS OF AN INTENT BY WDH A/S TO CAUSE INFRINGEMENT.

ETG's Opposition is conspicuously silent as to the second prong of an induced infringement analysis: engaging in a course of conduct with "the intent to cause direct infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305-06 (Fed. Cir. 2006) (*en banc*). The table of contents to ETG's Opposition skips the intent issue altogether, and intent is addressed nowhere in ETG's brief. ETG bears the burden of coming forward with such evidence. Having failed to do so, ETG's Opposition is deficient and must fail for at least this reason.

## III. ETG'S OTHER ARGUMENTS ARE NOT LEGALLY RECOGNIZED.

Instead of addressing intent, ETG devotes the balance of its brief to points not legally relevant to an induced infringement determination.

For example, on the first page of its Opposition, ETG states, "WDH A/S cannot credibly claim it had no inkling that some of its hearing aids would make their way into Delaware via well-established distribution channels (that it owned and controlled)." Even if one were to accept ETG's unsupported factual allegations in that statement, knowledge that a subsidiary's hearing aids might be sold in Delaware is not the test for induced infringement. As

discussed previously, the test is whether WDH A/S knew of the patents and with that knowledge embarked on a course of conduct to purposefully cause infringement. *DSU Med. Corp.*, 471 F.3d at 1306 ("[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.").

ETG argues on page 2 of its Opposition that "WDH A/S encouraged its subsidiaries to use streams of commerce owned, funded and controlled by WDH A/S and directed toward the U.S. and Delaware." Yet ETG provides no citation to any evidence supporting this allegation.[3] And again, this argument fails to address the prongs of inducement.

On page 8, ETG cites a passage from an annual report referring to an agreement between WDH A/S and the Oticon Foundation – an entity not involved in this suit. The passage does not address those subsidiaries whose "knowledge" ETG seeks to impute to WDH A/S. Stretching further, ETG does not contest Mr. Niels Jacobsen's statement in his Declaration that WDH A/S does not control the day-to-day operations of its subsidiaries, but rather, ETG suggests that the Declaration implies some level of control other than day-to-day control. The fact that ETG does not challenge a lack of day-to-day control is fatal to its jurisdictional claim. On the issue of control, it is the extent of *day-to-day management* of a subsidiary that the court examines. *Telcordia Techs., Inc. v. Alcatel S.A.*, No. Civ. A. 04-874 GMS, 2005 WL 1268061,

---

[3] ETG's Opposition is rife with unsupported and incorrect allegations of fact. For example, ETG incorrectly alleges on page 1 that WDH A/S **Redacted**

Nor does WDH A/S make, use, brand, or sell any products, including hearing aids, as ETG's Opposition repeatedly infers without support. Throughout its Opposition, ETG, incorrectly cites shorthand references to the Demant group as alleged evidence that WDH A/S performed the specific activity.

- 6 -

at *2 (D. Del. May 27, 2005). ETG does not and cannot contest that WDH A/S does not manage its subsidiaries on a day-to-day basis.[4]

Indeed, this Court recently dismissed for lack of personal jurisdiction a Swiss parent holding company who owned subsidiaries incorporated in Delaware. The Court noted that although the parent holding company had "final say" over what products its subsidiaries commercialized, and although the subsidiaries reported to and updated the parent corporation on their product development and marketing efforts, that did not suffice to support personal jurisdiction where the parent corporation did not control the day-to-day operations of its subsidiaries, and the parent, as here, did not personally participate in the manufacturing of the accused products, did not distribute the accused products, and did not participate in marketing efforts accused of being unlawful. *Monsanto Co. v. Syngenta Seeds, Inc.,* 443 F. Supp. 2d 636, 641, 644-45 (D. Del. 2006). Further, the Court rejected the plaintiff's attempt to support personal jurisdiction under a stream of commerce theory since the facts did not show that the parent corporation "purposefully availed" itself of the privilege of doing business in Delaware. *Id.* at 646.

If, instead, ETG is attempting to suggest that WDH A/S is the alter ego of its subsidiaries, ETG falls far short of its burden. The alter ego theory requires a showing of fraud in the corporate structure. *Telcordia*, 2005 WL 1266061, at *2 n.2. ETG has not pled or alleged such fraud.

---

[4] Indeed, with only nine employees and over approximately 45 (wholly owned) subsidiaries, WDH A/S could not possibly manage the day-to-day operations of its subsidiaries.

### IV. ETG IMPROPERLY SEEKS TO SHIFT THE BURDEN OF PROOF.

On page 3 of its Opposition, ETG reverses the burden of proof when it states, "WDH A/S fails to offer credible evidence that WDH A/S lacked knowledge of the patents in suit." As the plaintiff, ETG bears "the burden of proving by a preponderance of the evidence the facts necessary to establish personal jurisdiction over the defendant." *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001); *accord BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 258 (3d Cir. 2000) ("Once FCFC moved to dismiss, BP had the burden of coming forth with competent evidence demonstrating that FCFC had sufficient contacts with the United States to justify the court's assertion of either specific or general personal jurisdiction."). ETG must "sustain its burden of proof: 'through sworn affidavits or other competent evidence.'" *Stranahan Gear Co. v. NL Indus., Inc.*, 800 F.2d 53, 58 (3d Cir. 1986) (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984)).

Indeed, since ETG has had a full opportunity for jurisdictional discovery, it "must respond with *actual proofs*, not mere allegations." *Id.* (emphasis added). And it must do more than raise an issue of fact as to whether the court has personal jurisdiction. *Time Share Vacation Club v. Atlantic Resorts, Ltd,*, 735 F.2d 61, 63, 66 (3d Cir. 1984) ("Unlike summary judgment proceedings, in which a party need only submit affidavits which make out disputes of material fact, in establishing in personam jurisdiction, Time Share had a burden of proof to sustain, and thus mere affidavits which parrot and do no more than restate plaintiff's allegations without identification of particular defendants and without factual content do not end the inquiry."). To avoid dismissal, ETG must establish "with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,*, 819 F.2d 434, 437 (3d Cir. 1987). In evaluating the strength of ETG's

showing, "it is appropriate to review and evaluate the entire record. The Court need not be blind to discovered materials, and should look beyond the facade of the pleadings." *Sears, Roebuck & Co. v. Sears, plc*, 744 F. Supp. 1297, 1301 (D. Del. 1990).

A review of the evidence, outlined above, demonstrates that after eight months of discovery to establish jurisdiction, ETG has merely come forward with speculation as opposed to evidence, and has failed to carry its burden.

## **CONCLUSION**

WDH A/S's motion to dismiss should be granted for at least three reasons:

1. ETG relies on pure speculation that WDH A/S knew of the patents-in-suit before suit was filed. After exhaustive discovery, there is not a single document or piece of testimony that places knowledge of either patent within WDH A/S.

2. ETG failed even to attempt to make a *prima facie* showing that WDH A/S meets the second prong of the induced infringement test: embarking on a course of conduct with knowledge that the conduct was likely to cause infringement. Since ETG's brief is completely silent on this point, it has not made even a *prima facie* showing sufficient to support jurisdiction.

3. ETG's voluminous evidence of a relationship between parent and subsidiary is meaningless without a showing that there was fraud in the corporate structure. ETG neither pled nor alleged fraud.

For all the reasons set forth herein and in WDH A/S's opening brief, WDH A/S respectfully urges that the time is ripe for the Court to now dismiss WDH A/S from this suit.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for William Demant Holding A/S, WDH Inc., Oticon A/S, Oticon, Inc., Bernafon AG, and Bernafon LLC*

OF COUNSEL:

John M. Romary
C. Gregory Gramenopoulos
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER
901 New York Ave., N.W.
Washington, DC  20001-4413
202.408.4000

Dated:  September 14, 2007
1232493

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 21, 2007, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that true and correct copies of the foregoing were caused to be served via electronic mail on September 21, 2007 upon the following parties:

| | |
|---|---|
| REPRESENTING ENERGY TRANSPORTATION GROUP, INC. | Edmond D. Johnson<br>PEPPER HAMILTON LLP<br>**johnsone@pepperlaw.com**<br><br>Thomas H. Kovach<br>PEPPER HAMILTON LLP<br>**kovacht@pepperlaw.com**<br><br>Brian M. Buroker<br>HUNTON & WILLIAMS LLP<br>**etg@hunton.com** |
| REPRESENTING GN RESOUND A/S AND GN HEARING CARE CORPORATION | Jack B. Blumenfeld<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>**jblumenfeld@mnat.com**<br><br>Maryellen Noreika<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>**mnoreika@mnat.com**<br><br>Kenneth B. Herman<br>ROPES & GRAY LLP<br>**kenneth.herman@ropesgray.com**<br><br>William J. McCabe<br>ROPES & GRAY LLP<br>**william.mccabe@ropesgray.com**<br><br>Jeffrey D. Mullen<br>ROPES & GRAY LLP<br>**jeffrey.mullen@ropesgray.com** |

| | |
|---|---|
| REPRESENTING PHONAK AG, PHONAK, LLC, UNITRON HEARING LTD., AND UNITRON HEARING, INC. | Thomas C. Grimm<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>**tgrimm@mnat.com** |
| | James R. Sobieraj<br>David H. Bluestone<br>BRINKS HOFER GILSON & LIONE<br>**phonaketg@brinkshofer.com** |
| REPRESENTING RESISTANCE TECHNOLOGY INC. | Barry M. Klayman<br>WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP<br>**bklayman@wolfblock.com** |
| | Jeffrey D. Shewchuk<br>SHEWCHUK IP SERVICES, LLP<br>**jdshewchuk@comcast.net** |
| REPRESENTING SONIC INNOVATIONS, INC. | Richard L. Horwitz<br>David E. Moore<br>POTTER ANDERSON & CORROON LLP<br>**sonicnet@potteranderson.com** |
| | Donald Degnan<br>HOLLAND AND HART LLP<br>**ddegnan@hollandhart.com** |
| | Bryan K. Hanks<br>HOLLAND AND HART LLP<br>**bkhanks@hollandhart.com** |
| REPRESENTING STARKEY LABORATORIES, INC. | Mary B. Matterer<br>MORRIS JAMES LLP<br>**mmatterer@morrisjames.com** |
| | Amy A. Quinlan<br>MORRIS JAMES LLP<br>**aquinlan@morrisjames.com** |
| | Steven L. Reitenour<br>BOWMAN AND BROOKE LLP<br>**steve.reitenour@bowmanandbrooke.com** |
| | Richard G. Morgan<br>BOWMAN AND BROOKE LLP<br>**richard.morgan@bowmanandbrooke.com** |

| | |
|---|---|
| REPRESENTING WIDEX A/S<br>AND WIDEX HEARING AID CO. INC. | Donald E. Reid<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>**dreid@mnat.com**<br><br>William H. Mandir<br>SUGHRUE MION PLLC<br>**wmandir@sughrue.com**<br><br>David J. Cushing<br>SUGHRUE MION PLLC<br>**dcushing@sughrue.com**<br><br>Carl J. Pellegrini<br>SUGHRUE MION PLLC<br>**cpellegrini@sughrue.com**<br><br>Brian K. Shelton<br>SUGHRUE MION PLLC<br>**bshelton@sughrue.com** |
| REPRESENTING WILLIAM DEMANT HOLDING A/S, WDH, INC., OTICON A/S, OTICON INC., BERNAFON AG, AND BERNAFON, LLC | Mary B. Graham<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>**mgraham@mnat.com;**<br>**mbgeservice@mnat.com**<br><br>John M. Romary<br>FINNEGAN, HENDERSON, FARABOW,<br>GARRETT & DUNNER<br>**john.romary@finnegan.com**<br><br>C. Gregory Gramenopoulos<br>FINNEGAN, HENDERSON, FARABOW,<br>GARRETT & DUNNER<br>**c.gregory.gramenopoulos@finnegan.com** |

The undersigned also hereby certifies that on September 21, 2007, true and correct copies of the foregoing were caused to be served by hand upon the following Delaware counsel:

Edmond D. Johnson
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, DE 19899-1709

*/s/ Mary B. Graham*
_____
Mary B. Graham (#4292)

913379

- 3 -