IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENERGY TRANSPORTATION GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> SONIC INNOVATIONS, INC., et al, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) C.A. No. 05-422 (GMS) <br> ) <br> ) <br> ) **CONFIDENTIAL EXHIBITS** <br> ) **ARE FILED SEPARATELY** <br> ) **UNDER SEAL** <br> ) <br> ) <br> ) <br> ) |

### LETTER TO THE HONORABLE GREGORY M. SLEET FROM EDMOND D. JOHNSON REGARDING CERTAIN PRIVILEGE AND WORK PRODUCT DISPUTES

OF COUNSEL:

Brian M. Buroker
Robert L. Kinder, Jr.
HUNTON & WILLIAMS LLP
1900 K Street, N.W., Suite 1200
Washington, DC 20006-1109
(202) 955-1500

Maya M. Eckstein
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
(804) 788-8788

Dated: October 2, 2007

Edmond D. Johnson (No. 2257)
PEPPER HAMILTON
Hercules Plaza Suite 5100
1313 Market Street
Wilmington, DE 19899-1709
(302) 777-6539

*Attorneys for Energy Transportation Group, Inc.*

**Pepper Hamilton LLP**
*Attorneys at Law*

Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
302.777.6500
Fax 302.421.8390

Edmond D. Johnson
direct dial: 302.777.6539
johnsone@pepperlaw.com

October 2, 2007

The Honorable Gregory M. Sleet
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE 19801

    Re:    <u>*Energy Transportation Group Inc. v. Sonic Innovations Inc., et al.*, C.A. No. 05-422</u>

Dear Judge Sleet:

    This letter is a response to the Defendants' September 25, 2007 Letter ("Defendants' Letter") regarding certain privilege and work product disputes. ETG asks the Court to deny Defendants' motion, as the requested documents are protected by the attorney-client privilege or work product doctrine.

    1.    <u>The Inventors' Communications with Patent Prosecution Counsel Are Protected by the Attorney-Client Privilege.</u>

    A key issue in this case is the date of invention for the claims in the two patents in suit. In response to interrogatories asking for all facts that ETG intended to rely on, ETG answered that it intended to rely on the ***fact of communications*** with patent counsel to show that it was diligently working between December of 1985 and June of 1986 when the first patent application was filed. ETG ***does not*** rely on the substance of those communications. Nevertheless, Defendants have insisted that ETG produce the underlying documents and now argue waiver in support. Their request should be denied.

    Defendants do not dispute that the communications at issue -- communications between Dr. Levitt and Richard Dugot, inventors of the patents-in-suit and patent prosecution counsel -- are privileged. Defendants claim only that "ETG's reliance on the contents of the communications . . . results in a classic issue waiver." *See* Defendant's Letter, p. 2. This is the first fundamental flaw in their approach. ETG is not relying on the substance of the communications, but instead that, on more than forty occasions, the inventors corresponded with patent counsel. ETG recognizes that Defendants may raise doubts about whether those communications related to the patents-in-suit or specific claims of the patents-in-suit, and willingly accepts the risk that Defendants may weaken ETG's case by doing so.

    If ETG wants to show a date of invention prior to its filing date, ETG must prove conception and reasonable diligence toward reduction to practice from "a date just prior to the other party's conception to its reduction to practice." *Brown v. Barbacid*, 436 F.3d 1376, 1379 (Fed. Cir. 2006) (*citing Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996)). To

Pepper Hamilton LLP
———————————————————— Attorneys at Law

The Honorable Gregory M. Sleet
October 2, 2007
Page 2

do so, it must corroborate the inventor's testimony concerning diligence. *Brown*, 436 F.3d at 1380. ETG may prove reasonable diligence and corroboration in a variety of ways. *Id.* ("Unlike the legal rigor of conception and reduction to practice, diligence and its corroboration may be shown by a variety of activities."). *Compare Bey v. Kollonitsch*, 806 F.2d 1024, 1027 (Fed. Cir. 1986) (holding that "reasonable diligence can be shown if it is established that the [patent] attorney worked reasonably hard on the particular application in question during the continuous critical period"), *with Lacotte v. Thomas*, 758 F.2d 611, 613 (Fed. Cir. 1985) (holding that the testimony of the inventor was "corroborated by independent circumstantial evidence of his withdrawal of supplies to practice the invention, as well as independent corroborating testimony of his associate"), *and Scott v. Koyama*, 281 F.3d 1243, 1248 (Fed. Cir. 2002) (finding that diligence was proven by repeated efforts to locate a construction company capable of building a manufacturing plant for practicing the process on a large scale), *and In re Jolley*, 308 F.3d 1317, 1327 (finding that diligence was shown by activity to obtain necessary supplies and by testing related materials).

As Defendants correctly note, "[t]he basic inquiry is whether, on all the evidence, there was reasonably continuing activity to reduce the invention to practice." Defendants' Letter, p. 1 (*quoting Brown*, 436 F.3d at 1380). Defendants, however, omitted from their Letter the critical line in *Brown* that followed the statement above: "[t]here is no rule requiring a specific kind of activity in determining whether the applicant was reasonably diligent in proceeding toward an actual or constructive reduction to practice." *Id.*[1]

Here, ETG intends to support its position on the inventors' diligent reduction to practice by pointing to the fact that the inventors regularly communicated with patent prosecution counsel during the relevant time period. ETG **does not** intend to rely on the substance of those communications. Defendants are free to, and undoubtedly will attempt to, raise doubts about whether those communications related to the patents-in-suit or specific claims found in the patents-in-suit.

---

[1] Defendants' Letter also misstates the law in at least two other respects. First, Defendants rely on precedent from the Third Circuit to support their waiver argument. *See* Defendant's Letter, p. 2. But Federal Circuit case law controls this issue, as diligence and corroboration concern substantive patent law. *Midwest Indus., Inc. v. Karavan*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (*en banc* in relevant part) (holding that "a procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to our exclusive [jurisdiction] by statute, or if it clearly implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction.") (internal citations and quotation marks omitted). *See also In re Spalding Sports Worldwide., Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("*Spalding*") (applying Federal Circuit precedent to find that invention records were protected from disclosure by the attorney-client privilege).

Second, Defendants misstate the law by asserting that "ETG must show that **Audimax's counsel** was actively working on the patent application." Defendants' Letter, p. 1 (emphasis added). Defendants' own citation to *Allied Signal v. Allegheny Ludlum* reveals their fundamental mistake, as it is the **inventors**, not the attorneys, who must have actively worked on the inventions at issue. 29 U.S.P.Q. 2d 1039, 1993 WL 315339, at *9 (D. Conn. 1993) (To show diligence, a party must demonstrate that "its inventors were actively working on the inventions at issue."). *See* Defendants' Letter, p. 1 (*citing Allied Signal*).

Pepper Hamilton LLP
Attorneys at Law

The Honorable Gregory M. Sleet
October 2, 2007
Page 3

This case is virtually identical to *Ginter v. Benson*, 81 U.S.P.Q. 2d 1342, 2005 WL 3694320 (B.P.A.I. 2005). In that interference action, the Board of Patent Appeals and Interferences (the "BPAI") held that the party responding to a claim of lack of diligent reduction to practice could make a "litigation decision or choice whether it should or should not offer in evidence copies of any drafts [of patent applications] which it may still have in its possession." *Id.* at *4 (internal quotation marks omitted). If that party believes it can establish diligence "without offering in evidence a copy of any draft, it is free to do so." *Id.* Either way, the party must "live[] with its decision or choice." *Id.* (internal quotation marks omitted). The BPAI further held that mere reliance on the fact that draft patent applications were prepared "did not constitute waiver," because "[i]t is almost a given . . . that a draft patent application would have been (1) prepared, (2) circulated, (3) commented upon, (4) re-drafted, (5) re-circulated, (6) re-commented upon, etc." *Id.* at *8. "Testimony which confirms the obvious is hardly a basis upon which to hold that the attorney-client privilege has been waived." *Id.*

In *Ginter*, the Board ultimately held that Ginter failed to established diligence, in part because of "speculation that the various drafts may have included descriptions of other non-related inventions." *Id.* The Board held that there was "no basis on the record for assuming" that the speculation "is factually right or wrong." *Id.* What was clear was that the party trying to prove diligence "elected to make out its diligence case without putting in evidence copies of the drafts. As stated earlier, [he] made a litigation choice" and "now lives with that result." *Id.*

Similarly, ETG has made a litigation choice to support its proof of diligence by relying on the fact that communications occurred between a co-inventor and patent prosecution counsel, but not on the substance of those communications. ETG accepts the risks attached to that choice, including the risk that Defendants will raise doubts about whether those communications related to the patents-in-suit or the specific claims at issue at all.[2] But that is ETG's choice to make and does not result in waiver.

2.  The EKMS Documents Are Protected by the Work Product Doctrine

As Audimax's[3] president testified, ETG hired EKMS, a third-party patent consulting firm, to "***identify infringement activities.***" (Pitonyak Dep. 14:14:20 - 14:14:26, Aug 27, 2007) (emphasis added) (attached as Exhibit A). Under Rule 26(b)(3), the work product doctrine applies to "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *In re Cendant Corp. Sec. Litig.*, 343

---

[2] Defendants' attempt to analogize this Court's decision in *Software AG v. BEA Systems, Inc.*, C.A. 03-739-GMS, slip op. at 1 (D. Del. 2005) ("*Software AG*"), confuses the issues. The issue here involves diligence and corroboration, whereas the issue in *Software AG* involved willful infringement and the assertion of the advice of counsel defense in a "wink-wink" manner. See *id.* at 4. Not only is that opinion not relevant to this situation, but it may be called into question by the Federal Circuit's recent decision in *In re Seagate Technology*, LLC, 2007 WL 2358677, *1, *9 (Fed. Cir. Aug. 20, 2007).

[3] Audimax is the former owner of the patents-in-suit, and assigned them to ETG.

**Pepper Hamilton LLP**
Attorneys at Law

The Honorable Gregory M. Sleet
October 2, 2007
Page 4

F.3d 658, 661-662 (3d Cir. 2003) ("*Cendant*"); Fed. R. Civ. P. 26(b)(3). This protection extends beyond materials prepared by an attorney to include materials prepared by a party's agents and consultants. *Cendant*, 343 F.3d at 662. "Attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the [work product] doctrine protect materials prepared by agents of the attorney as well as those prepared by the attorney himself." *Id.* (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)).

The Third Circuit in *Cendant* noted that, if the opinions of a consultant were developed during confidential discussions with the client, the consultant's work product could be considered work product and, thus, entitled to stronger protections. *Id.* at 665. *See also United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988) (holding that the work product doctrine extended beyond materials reflecting an attorney's mental impressions to encompass materials prepared in anticipation of litigation by a party's insurer); *Spaulding v. Denton*, 68 F.R.D. 342, 345-346 (D. Del. 1975) (holding that reports prepared by a marine surveyor investigating the sinking of a yacht were work product under the Rule 26(b)(3) provision that such materials may be prepared by non-lawyers); Fed. R. Civ. P. 26(b)(3), Advisory Comm. Note, 48 F.R.D. 487, 502 (1970) ("Subdivision (b)(3) reflects the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or any representative acting on his behalf.").

To determine whether the work product doctrine applies, the Third Circuit considers whether, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990). Courts in the Third Circuit generally look to the state of mind of the person ordering production of the alleged work product to determine the documents' purpose. *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993). The requesting party's belief that the documents were prepared in anticipation of litigation must be objectively reasonable. *Id.* Specifically,

> [p]rudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced. Thus, the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.

*Id.* For instance, the court in *Martin* held that a report prepared regarding chemical emission of a dishwasher was protectable work product because the owner received an OSHA complaint and objectively could have believed that the likelihood of litigation existed. *Id.* Further, the Third Circuit held that Rule 26(b)(3) requires that the material be prepared in anticipation of some litigation, not necessarily in anticipation of the particular litigation in which it is sought. *In re Ford Motor Co.*, 110 F.3d 954, 967 (3d. Cir. 1997) (finding work product where material was prepared during other litigations).

**Pepper Hamilton LLP**
Attorneys at Law

The Honorable Gregory M. Sleet
October 2, 2007
Page 5

      Contrary to what Defendants would have the Court believe, the EKMS documents were prepared in anticipation of litigation. As Mr. Pitonyak, the person most knowledgeable of ETG's involvement with EKMS, stated in his deposition, "[EKMS was hired to i]dentify licensing opportunity for the patent. Or *identify infringement activities*." (Pitonyak Dep. 14:14:20 - 14:14:26) (emphasis added) (Exhibit A). He further explained that "[t]he purpose of the contract with EKMS was to two things, evaluate for potential license partners and to identify infringers." (Pitonyak Dep. 77:4-9) (Exhibit A).

      Defendants' assertion that the EKMS work was a "commercial matter" is based on selective testimony from Messrs. Chen and Evans and obscures the reasoning behind Audimax's hiring of EKMS: to identify potential infringers in anticipation of litigation.

      Defendants' citation to *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 2002 WL 31556497 (D. Del.) is not to the contrary. There, the plaintiff hired a consultant "to proselytize the '621 patent." *Tulip*, 2002 WL 31556497, *1. Most of the documents at issue related to "commercial matters." *Id.* Here, on the other hand, Audimax's president, Mr. Pitonyak, testified that he hired EKMS to "identify infringement activities."

      Moreover, if ETG filed suit against infringers and then resolved that litigation through licenses, this is at once a "commercial activity" and an outcome of litigation. Before filing suit against a potential infringer or exploring licensing arrangements, it is necessary to determine the scope of the patents at issue and identify potential infringers. These tasks frequently carry business and legal implications that often are simultaneously addressed. *See Hercules Inc. v. Exxon Corp.*, 434 F.Supp. 136, 147 (D.Del. 1977) (holding that "[a] single proposed course of conduct such as patenting and licensing of an invention will have both legal and business ramifications," both of which may exist in a single communication). The "interw[eaving]" of both legal and business advice does not vitiate the privilege. *See id.* Having identified infringers, ETG could license the patents and, if unsuccessful in those efforts, commence litigation against them. That is precisely what ETG did with the filing of the instant lawsuit.

      Finally, Defendants' arguments and inquiries regarding EKMS and willfulness are red herrings. ETG has no intention of relying on information obtained from EKMS to prove willful infringement at trial. Indeed, ETG's responses to Defendants's interrogatories regarding willful infringement (*see, e.g.*, Widex Interrog. # 3; Sonic Interrog. # 13), do not rely on EKMS at all. *See* Pl.'s Resp. to Widex Interrog. # 3; Pl.'s Resp. to Sonic Interrog. # 13 (attached as Exhibit B).

      Accordingly, ETG respectfully asks the Court to deny Defendants' motion.

      Respectfully,

Edmond D. Johnson (# 2257)

cc:    Clerk of the Court (via hand delivery)
       All Counsel of Record (via e-filing and email)