EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ENERGY TRANSPORTATION GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-422 (GMS) |
| | ) | |
| SONIC INNOVATIONS, INC., et al, | ) | |
| | ) | Contains Both: |
| Defendants. | ) | (I) Confidential - Attorneys' Eyes |
| | ) | Only Information, and |
| | ) | (II) Confidential Information |
| | ) | Pursuant to the Proposed Protective |
| | ) | Order |
| | ) | |

**PLAINTIFF'S OBJECTIONS AND ANSWERS TO DEFENDANTS OTICON A/S, OTICON INC., BERNAFON AG, WDH, INC., AND BERNAFON, LLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF**

Plaintiff Energy Transportation Group, Inc. ("ETG" or "Plaintiff"), by counsel and pursuant to Fed. R. Civ. P. 26 and 33, hereby objects and answers to Defendants Oticon A/S, Oticon Inc., Bernafon AG, WDH, Inc. and Bernafon, LLC's ("Demant Group Defendants" or "Defendants") First Set of Interrogatories dated June 27, 2007.

## I.    GENERAL RESPONSES.

1.    Subject to, and without waiving ETG's general and specific objections to Demant Group Defendant's First Set of Interrogatories, ETG will respond to Demant Group Defendants' interrogatories pursuant to the requirements of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware, the Court's Scheduling Order, and/or other applicable law.

2.    The general and specific objections set forth below are made based on the best information presently available to ETG.  ETG reserves the right to amend, supplement, or

change any objection if and when additional, different, or more accurate information becomes available and/or facts are developed.  In making the following objections, ETG does not waive any objections that may be applicable to: (a) the use, for any purpose, of any document or information identified or provided in response to Demant Group Defendants' First Set of Interrogatories and Document Requests; or (b) the admissibility, relevancy, or materiality of any information or documents to any issues in this case.

   3.  ETG reserves the right to make any use of, or to introduce at any hearing and at trial, documents or information responsive to Defendants' requests, but discovered subsequent to ETG's initial responses, including, but not limited to, any documents or information obtained in discovery herein.

   4.  Where ETG states that it will produce documents or is searching for documents or information, ETG will respond with documents or information currently in ETG's possession, custody or control.  ETG does not represent that any documents actually exist, but that ETG will make a good faith search and attempt to ascertain whether documents responsive to Defendants' requests do in fact exist.

   5.  To the extent ETG responds to Defendants' requests by stating that ETG will produce documents or information that it deems to embody material that is private, business confidential, proprietary, trade secret or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c)(7) or Federal Rule of Evidence 501, ETG will produce documents or information only subject to and in accordance with the terms of a suitable Protective Order entered by the Court.

6.      Subject to and without waiving all objections, privileges, and other exceptions stated herein, ETG shall produce the documents requested and provide a privilege log at a time and place mutually agreeable to the parties.

7.      ETG reserves the right to decide whether the documents produced shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories in Defendants' requests, in accordance with Federal Rule of Civil Procedure 34(b).

8.      Subject to all other objections, privileges and exceptions set forth herein, ETG will identify in a separate privilege log the date, author, and recipient(s) of each document withheld on the basis of any applicable privilege or the work product doctrine.  To the extent Defendants' requests implicate documents generated after the date of filing of this suit that are protected from disclosure by any applicable privilege and/or the work product doctrine, ETG will not list such documents in its privilege log on the ground that, to the extent Defendants intended its requests to cover such materials, the requests are oppressive, overly broad and unduly burdensome, and call for documents not reasonably calculated to lead to the discovery of admissible evidence in the pending action, in violation of Rule 26(b) of the Federal Rules of Civil Procedure.

## II.    GENERAL OBJECTIONS

ETG makes the following general objections, whether or not separately set forth in response to each interrogatory, to each and every instruction and definition in Demant Group Defendants' First Set of Interrogatories:

1.      ETG objects to all instructions, definitions and requests to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent Nos. 4,731,850 ("the '850 Patent"); and 4,879,749 ("the '749 Patent") (collectively, "the

3

patents-in-suit") on the grounds that each such discovery request is overly broad, unduly

burdensome, and seeks the discovery of information or documents that are neither relevant to a

claim or defense of any party, or to the subject matter of this litigation, nor reasonably calculated

to lead to the discovery of admissible evidence.

     2.    ETG objects to all instructions, definitions and requests to the extent they seek

information not relevant to the subject matter of this litigation and not reasonably calculated to

lead to the discovery of admissible evidence.  In particular, insofar as Defendants' instructions,

definitions and requests seek confidential marketing and business information regarding products

not relating to the patents-in-suit, ETG objects to such inquiries as overly broad and unduly

burdensome.  ETG also specifically objects to providing information or documents regarding any

products currently being designed, under development or yet to be commercialized by ETG or its

licensees and affiliates, as such documents contain highly proprietary, sensitive and confidential

business information and are neither relevant to the subject matter of this litigation nor likely to

lead to the discovery of admissible evidence.

     3.    ETG objects to all instructions, definitions and requests to the extent they seek

discovery of third-party information ETG is contractually obligated not to disclose.  ETG will

cooperate with Defendants to identify what confidential third-party information, if any, is

relevant and reasonably necessary for investigation of the claims and defenses herein.  ETG will

then seek consent from the third party to produce such confidential information in accordance

with the terms of the Protective Order entered by the Court.

     4.    ETG objects to Defendants' requests to the extent they call for production of

documents or information protected by the attorney-client privilege, work product doctrine, or

the joint defense doctrine.  Such documents or information will not be produced in response to

Defendants' requests, and any inadvertent production thereof shall not be deemed a waiver of any applicable privilege. Any such inadvertent production shall be destroyed or returned to ETG in accordance with the terms of the Protective Order entered by the Court, or in accordance with call back provisions of the Federal Rules of Civil Procedure.

5.    ETG objects to the introductory definitions and instructions to Defendants' requests to the extent said definitions and instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific request on the ground that such enlargement, expansion, or alteration renders said request vague, ambiguous, unintelligible, overly broad, unduly burdensome, and/or uncertain. ETG specifically objects to any request to the extent it asks for documents or things "which reflects, or refers or relates to" the subject matter of the request, on the grounds that such requests would impermissibly require the disclosure of the mental impressions or thoughts of counsel in violation of the work product doctrine.

6.    ETG objects to all instructions, definitions and requests to the extent that they seek documents or information not currently in ETG's possession, custody, or control, or refer to persons, entities or events not known to ETG.

7.    ETG objects to all instructions, definitions and requests to the extent they seek information beyond what is available from a reasonable search of ETG's files likely to contain relevant or responsive documents and a reasonable inquiry of ETG employees likely to have information relevant to a claim or defense of any party, or to the subject matter of this suit.

8.    ETG objects to all instructions, definitions and requests insofar as they call for a construction of the claims of the patents-in-suit on the grounds that such requests are premature. The Court has not yet construed the claims of the patents-in-suit and therefore any answer that depends upon the construction of the claims must be considered preliminary in nature, and ETG

reserves the right to amend or supplement any such answer after the Court has construed the claims of the patents-in-suit.

9.     ETG objects to all instructions, definitions, and requests to the extent they seek to impose discovery obligations that are overbroad, unduly burdensome, or that are beyond those obligations imposed by the Local Rules of the United States District Court for the District of Delaware, the Federal Rules of Civil Procedure, and/or other applicable law.

10.     ETG objects to Demant Group Defendants' First Set of Interrogatories and Requests for Production, including all definitions and instructions, to the extent the requests:  (a) are unduly burdensome; (b) are unreasonably broad, vague, or ambiguous; or (c) require a legal conclusion.

11.     ETG objects to the definition of "ETG," "Plaintiff" and "you" as overly broad and unduly burdensome to the extent that it improperly includes persons or entities not within ETG's control, and/or who are otherwise not within the scope of discovery contemplated by the Federal Rules of Civil Procedure.  ETG further objects to Defendants' definition of "ETG," "Plaintiff" and "you" as overly broad and unduly burdensome to the extent that Defendants' definition covers subsidiaries, shareholders or other related companies whose information and documents are neither relevant to the subject matter of this action nor likely to lead to the discovery of admissible evidence.

12.     ETG objects to Demant Group Defendants' First Set of Interrogatories to the extent the interrogatories and their discrete subparts exceed the maximum number allowed under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, the Pretrial Scheduling Order in this case, and/or other applicable law.

13.    ETG objects to Defendants' interrogatories that require ETG to identify "all documents referring to, relating to or supporting" the subject matter of the request on the ground that Defendants' request renders the interrogatory or request for production unduly burdensome, overbroad, and imposes obligations not required by the Local Rules or the Federal Rules of Civil Procedure.

## III.    SPECIFIC OBJECTIONS AND ANSWERS TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all settlement agreements and negotiations, including but not limited to the settlement with Gennum Corp., that ETG has entered into concerning any of the patents-in-suit or this case and, with respect to each such agreement, identify all parties to the agreement, the chronology of the negotiation of the agreement, the terms of the agreement, and all persons involved in negotiating the agreement.

### OBJECTIONS TO INTERROGATORY NO. 1:

ETG incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 1, 2, 3, 4, 6, 7 and 9. ETG further objects to this request to the extent it seeks information protected by attorney client privilege, attorney work product and/or any other applicable privilege.

### ANSWER TO INTERROGATORY NO. 1:

Subject to and without waiving the foregoing general and specific objections, ETG incorporates its answer to Interrogatory Number 3 of Defendants' First Set of Common Interrogatories. ETG also incorporates its answer to Interrogatory Number 8 of Defendants' First Set of Common Interrogatories.

As noted in the incorporated answers, ETG (including Audimax) cooperated with Hearing Aid companies including Siemens, Linear Technology, Inc., Bristol Meyers and others from 1985 to 1992 in an effort to commercialize a hearing aid product. During these cooperative efforts, ETG engaged in negotiations regarding the patents-in-suit. These negotiations did not lead to any licenses or settlement agreements related to the patents-in-suit. ETG has also engaged in settlement negotiations with several of the Defendants in this action. The terms of

any agreements reached and/or the specific details regarding these discussions are not admissible

pursuant to Rule 408 of the Federal Rules of Evidence and not likely to lead to the discovery of

admissible evidence. ETG further identifies the following as knowledgeable regarding the

subject matter of this interrogatory:

| Name | Company & Address |
|------|-------------------|
| Kimball C. Chen, Chairman and Chief Executive Officer | Energy Transportation Group, Inc. 654 Madison Avenue, 17th Floor New York, NY 10021 (Should only be contacted through counsel of record) |
| Alex W. Evans, Vice President | Energy Transportation Group, Inc. 654 Madison Avenue, 17th Floor New York, NY 10021 (Should only be contacted through counsel of record) |
| Harry Levitt | P.O. BOX 610 Bodega Bay, CA 94923 998 SeaEagle Dr. (707) 875-2289 (Should only be contacted through counsel of record) |
| Richard S. Dugot | 590 W End Ave New York, NY 10024 (212) 873-8067 (Should only be contacted through counsel of record) |
| Edward Kahn | EKMS, Inc. 675 Massachusetts Avenue Cambridge, MA 02139 (617) 864-2100 |
| John J. Zei | Last known address: Former President and CEO Siemens Hearing Instruments, Inc. 10 Constitution Avenue Piscataway, New Jersey 088855 (908) 562-6600 |

| Name | Company & Address |
|------|-------------------|
| R. G. Simpson<br>D. F. Clifton | Linear Technology Inc.<br>PO Box 489 Station A<br>Burlington, Ontario<br>CANADA L7R3Y3 |

## INTERROGATORY NO. 2:

Describe in detail the method by which ETG contends the amount of alleged damages in this case should be calculated with respect to each of the Demant Group Defendants, including, without limitation, an identification of each damages theory that ETG alleges should be used in the damages calculation, an identification of the specific factors that ETG alleges should be used under each such damages theory, and an identification of the amount of damages resulting from the calculation under each such damages theory. For example, if ETG alleges that the damages should be calculated under a theory of reasonable royalty, the detailed description should include at least the applicable royalty rate or rates, the product sales to which the royalty rate should be applied, and how the royalty rate was determined and is supportable by law, including under the factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

## OBJECTIONS TO INTERROGATORY NO. 2:

ETG incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 4, 8, 9, and 10. ETG further objects to this request on the basis that it is premature because the Scheduling Order requires ETG to serve its expert report on the issue of damages on September 7, 2007. ETG specifically objects to this request to the extent it seeks information protected by attorney client privilege, attorney work product and/or any other applicable privilege. ETG specifically objects to this request to the extent the phrase requesting ETG to explain in detail "the method by which

ETG contends the amount of alleged damages in this case should be calculated" is vague and ambiguous.

**ANSWER TO INTERROGATORY NO. 2:**

Subject to and without waiving the foregoing general and specific objections, ETG incorporates its answer to Interrogatory 13 of Defendants' First Set of Common Interrogatories. ETG reserves the right to amend or supplement that answer based upon its continuing investigation and discovery, and in particular based upon discovery from Defendants relating to all of the models that it has made, sold, offered for sale, or imported into the United States.

**INTERROGATORY NO. 3:**

Identify each act performed by WDH, Inc., that ETG contends constitutes direct infringement, and identify the specific claims of the patents-in-suit that ETG contends are infringed by each such act.

**OBJECTIONS TO INTERROGATORY NO. 3:**

ETG incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 8, 9 and 10. ETG further objects to the extent the phrase requesting ETG to "identify each act" is unduly burdensome and overly broad.

**ANSWER TO INTERROGATORY NO. 3:**

ETG is continuing to investigate the relationship between WDH Inc. and the Demant Group Defendants. Subject to and without waiving the foregoing general and specific objections, ETG incorporates its preliminary infringement charts that identify specific claims of the patents-in-suit and the infringing acts of the Demant Group Defendants. These acts of

11

manufacture, use, sale, offer for sale and/or import of the accused products directly infringe the claims of the patents-in-suit.

ETG reserves the right to amend or supplement this answer based upon its continuing investigation and discovery, and in particular based upon discovery from Defendants relating to all of the models that it has made, sold, offered for sale, or imported into the United States.

## INTERROGATORY NO. 4:

For each of the Demant Group Defendants alleged to "indirectly" infringe the patents-in-suit (*see, e.g.*, ¶¶ 30 and 36, Second Amended Complaint) either by contributory infringement or inducement, identify: (a) the date or approximate date on which ETG contends that each of the Demant Group Defendants first became aware of each of the patents-in-suit; (b) each alleged indirect infringing act performed by each of the Demant Group Defendants' (c) each alleged act of direct infringement resulting from each of the Demant Group Defendants alleged indirect infringing acts; (d) each claim of the patents-in-suit that are infringed by such acts; and (e) all evidence that demonstrates that any of the Demant Group Defendants intended infringement to result.

## OBJECTIONS TO INTERROGATORY NO. 4:

ETG incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 8, 9 and 10. ETG further objects to the extent the phases "each alleged indirect infringing act" and "each alleged act of direct infringement resulting from each of the Demant Group Defendants alleged indirect infringing acts" are vague, ambiguous and impossible to understand.

12

## ANSWER TO INTERROGATORY NO. 4:

Subject to and without waiving the foregoing general and specific objections, ETG states that the Demant Group Defendants' manufacture, sale, offer for sale, and/or import of the accused products, with knowledge of the patents-in-suit, contributes to infringement and/or induces others to infringe.

(a)    Subject to and without waiving the foregoing general and specific objections, ETG states that the '850 Patent was cited and described in the Journal of the Acoustical Society of America, 84(6) December 1988, a publication that is widely distributed to companies and individuals in the hearing aid industry. One or more Demant employees subscribed to this publication and, on information and belief, reviewed this information.

Further, the Demant Group Defendants are members of Hearing Instrument Manufacturers Patent Partnership ("HIMPP"). HIMPP evaluated a number of hearing aid patents, including the patents-in-suit, to determine which patents to acquire for the HIMPP patent pool. In addition, the '850 Patent was cited during the prosecution of at least two patents owned by HIMPP. K/S HIMPP is the assignee of U.S. Patent No. 5,706,352 with a filing date of April 7, 1993 and an issue date of January 6, 1998, which cites the '850 Patent. K/S HIMPP is the assignee of U.S. Patent No. 5,724,433 with a filing date of June 7, 1995 and an issue date of March 3, 1998, which cites the '850 Patent. Because Demant Group Defendants are members of HIMPP, knowledge by HIMPP should be imputed to the Demant Group Defendants.

Oticon A/S had notice at least as early as October 11, 1989. The '850 Patent was cited during prosecution of application 07/322,387, filed March 13, 1989 which serves as priority to application 07/577,069, later issued as U.S. Patent No. 5,033,090. Oticon A/S is the assignee of U.S. Patent No. 5,033,090 with a filing date of September 4, 1990 and an issue date of July 16,

1991. The '850 Patent was applied under an anticipation theory in rejecting the claims, as detailed in the Office Action mailed October 11, 1989. In the response/amendment filed January 9, 1989, patent counsel for Oticon prepared a lengthy analysis and discussion of the '850 Patent. In addition, the '749 Patent was cited in the International Search report dated November 18, 1999 for WO99/65275, assigned to Oticon A/S. The other Demant Group Defendants had notice on at least those dates by imputed knowledge.

Bernafon A/G had notice at least as early as June 27, 2003. The '850 Patent was cited on June 27, 2003 during the prosecution of U.S. Patent No. 6,644,120, assigned to Bernafon A/G. The other Demant Group Defendants had notice on at least those dates by imputed knowledge.

(b)    Subject to and without waiving the foregoing general and specific objections and to the extent that this request can be understood, ETG incorporates its motions and responses filed in opposition to WDH A/S's jurisdictional motion to dismiss. Demant Group Defendants encourage sales of, aid marketing of and aid distribution of each of the accused products.

(c)    Subject to and without waiving the foregoing general and specific objections and to the extent that this request can be understood, ETG incorporates its motions and responses filed in opposition to WDH A/S's jurisdictional motion to dismiss. Demant Group Defendants encourage sales of, aid marketing of and aid distribution of each of the accused products.

(d)    Subject to and without waiving the foregoing general and specific objections and to the extent that this request can be understood, ETG incorporates its preliminary claim charts which detail each claim of the patents-in-suit that are infringed by the Demant Group Defendants.

(e)    Subject to and without waiving the foregoing general and specific objections, ETG states that the Demant Group Defendants were sued in 2005 and did not cease their

14

infringing activities. Demant Group Defendants never contacted ETG to provide any explanation as to its activities or provide any basis for its continued infringement. Therefore, Demant Group Defendants' infringement was willful from the point in time that it possessed knowledge of the patents-in-suit and continued to be willful up through the expiration of the patents-in-suit.

**INTERROGATORY NO. 5:**

State the complete factual basis for ETG's contention that each of the Demant Group Defendants' alleged infringement of the patents-in-suit has been "willful, deliberate and with knowledge of Plaintiff's rights (*see, e.g.*, ¶¶ 34 and 40, Second Amended Complaint), including without limitation an identification of all evidence that any of the Demant Group Defendants were provided with any notice of alleged infringement of the patents-in-suit, any of the Demant Group Defendants had any knowledge of the patents-in-suit, any of the Demant Group Defendants copied any of the patents-in-suit, and/or any of the Demant Group Defendants lacked any good-faith belief that the patents in suit are invalid, unenforceable and/or not infringed.

**OBJECTIONS TO INTERROGATORY NO. 5:**

ETG incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 8, 9 and 10.

**ANSWER TO INTERROGATORY NO. 5:**

Subject to and without waiving the foregoing general and specific objections, ETG incorporates its answers to Interrogatory No. 4 above. In addition, there is no evidence of design around by the Demant Group Defendants. As the court ordered date for indicating a reliance on

an opinion of counsel has passed, the Demant Group Defendants cannot rely on an opinion of

counsel.

## INTERROGATORY NO. 6:

With respect to Audimax's or ETG's efforts, or the efforts of any person under

Audimax's or ETG's control, to work with any one or more of Siemens, Linear Technology, Inc.

(later renamed "Gennum Corporation"), Bristol Meyers and "other hearing aid manufacturers"

(*see* Plaintiff's Objections and Second Supplemental Answers to Defendants' First Set of

Common Interrogatories at 13-16) or to work with EKMS (*see* Plaintiff's Objections and Second

Supplemental Answers to Defendants' First Set of Common Interrogatories at 23-24) in

connection with any hearing aid product or prototype, provide a detailed description of these

efforts, including the date of the first letter or other communication with each company, a

chronology of the meetings with each company and listing those individuals in attendance and

the nature and outcome the meetings with each company.

## OBJECTIONS TO INTERROGATORY NO. 6:

ETG incorporates by reference its General Objections stated above, and in particular,

objects to this interrogatory on the grounds stated in General Objections 1, 2, 3, 4, 6, 7 and 9.

ETG further objects to this request to the extent it seeks information protected by attorney client

privilege, attorney work product and/or any other applicable privilege.

## ANSWER TO INTERROGATORY NO. 6:

Subject to and without waiving the foregoing general and specific objections, ETG

(including Audimax) states that certain prototype products were produced from about 1985

through 1992 that have utilized the inventions of one or more claims of one or more of the

patents-in-suit.  Upon information and belief, no such product produced by Audimax or ETG was marketed or sold.  Audimax attempted to commercialize a hearing aid product, including but not limited to, cooperation with existing hearing aid companies, from about 1985 through about 1992 but was unable to do so.

In the late 1980s, Audimax through its Chief Executor Officer, Dr. C.Y. Chen, met with Dr. Rodney Perkins, President and Chief Executive Officer of the Resound Corporation, to discuss commercialization of the proprietary and patented Audimax technology.

In 1985, R.G. Simpson, Vice President of Marketing and Business Development of Linear Technology Inc. and Dr. C. Y. Chen had discussions regarding the hearing aid market. Linear Technology Inc. was renamed Gennum around 1987 and accordingly discussions of commercialization and the technology of the patents in suit occurred with the current Gennum Corporation.

Audimax met with Siemens in 1991 to explore entry in the hearing aid market.  Dr. C.Y. Chen had discussions with John Zei, President and Chief Executor Officer of Seimens Hearing Instruments, Inc. from 1991 to 1993.

ETG identifies that Audimax entered into discussions with Beckman Instruments, Inc. regarding commercialization, specifically Arnold Beckman.

ETG identifies that Audimax discussed commercialization issues with Telex Inc., specifically with a Mr. Harry Teder at Telex Inc.  Also, ETG identifies that it discussed hearing aid related issues with Nicolet Instrument Corp.

Since about 2002, Audimax/ETG has undertaken efforts to identify infringers of the patents-in-suit and to enforce its patents rights through licensing and other actions.  Kimbell Chen engaged the services of EKMS, Inc. as part of this effort in 2002.

17

EKMS was engaged in around 2001 to approach companies to determine interest in licensing the patents-in-suit. In around 2004-2005, ETG engaged in discussions with SoundID under which a license under one or more of the patents in suit was proposed.

ETG further identifies the following as knowledgeable regarding the subject matter of this interrogatory:

| Name | Company & Address |
|---|---|
| Kimball C. Chen, Chairman and Chief Executive Officer | Energy Transportation Group, Inc. 654 Madison Avenue, 17th Floor New York, NY 10021 (Should only be contacted through counsel of record) |
| Alex W. Evans, Vice President | Energy Transportation Group, Inc. 654 Madison Avenue, 17th Floor New York, NY 10021 (Should only be contacted through counsel of record) |
| Harry Levitt | P.O. BOX 610 Bodega Bay, CA 94923 998 SeaEagle Dr. (707) 875-2289 (Should only be contacted through counsel of record) |
| Richard S. Dugot | 590 W End Ave New York, NY 10024 (212) 873-8067 (Should only be contacted through counsel of record) |
| Edward Kahn | EKMS, Inc. 675 Massachusetts Avenue Cambridge, MA 02139 (617) 864-2100 |

| Name | Company & Address |
|---|---|
| John J. Zei | Last known address: Former President and CEO Siemens Hearing Instruments, Inc. 10 Constitution Avenue Piscataway, New Jersey 088855 (908) 562-6600 |
| R. G. Simpson D. F. Clifton | Linear Technology Inc. PO Box 489 Station A Burlington, Ontario CANADA L7R3Y3 |

ETG emphasizes that it reserves the right to amend or supplement that answer based upon its continuing investigation and discovery.

## INTERROGATORY NO. 7:

Identify all entities and persons, including but not limited to the inventors of the patents-in-suit, who have a financial interest in the patents-in-suit or the outcome of this case, how such interest was obtained, all documents that refer to or define that entity's or person's interest, and whether such interest is subject to the rights of any third party.

## OBJECTIONS TO INTERROGATORY NO. 7:

ETG incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 2, 4, 9 and 10. ETG further objects to this request to the extent it seeks information protected by attorney client privilege, attorney work product and/or any other applicable privilege.

## ANSWER TO INTERROGATORY NO. 7:

Subject to, and without waiving, the foregoing general and specific objections, ETG owns all right, title and interest in the two patents in suit. Energy Transportation Group is the

19

assignee of all right, title and interest in the two patents in suit at the present time and accordingly has a financial interest in the patents-in-suit.

**INTERROGATORY NO. 8:**

Identify all witnesses, including expert witnesses, whose testimony ETG will or may offer at trial in this case.

**OBJECTIONS TO INTERROGATORY NO. 8:**

ETG incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 4, 9 and 10. ETG further objects to this request to the extent it seeks information protected by attorney client privilege, attorney work product and/or any other applicable privilege. ETG specifically objects to this request on the basis that it is premature because discovery is ongoing and the Scheduling Order indicates a trial date of January 22, 2008.

**ANSWER TO INTERROGATORY NO. 8:**

ETG is continuing its investigation and reserves the right to amend or supplement this answer based upon its continuing investigation.

**INTERROGATORY NO. 9:**

Identify all persons who provided any information used in responding to these Interrogatories and indicate for which Interrogatory or Interrogatories they did so.

**OBJECTIONS TO INTERROGATORY NO. 9:**

ETG incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 9 and 10.

## ANSWER TO INTERROGATORY NO. 9:

Subject to and without waiving the foregoing general and specific objections, ETG

identifies the individuals as provided above.

Dated:   July 30, 2007                    Respectfully Submitted,

                                          Energy Transportation Group, Inc.

                                          By Counsel:

                                          Edmond D. Johnson (No. 2257)
                                          PEPPER HAMILTON
                                          Hercules Plaza Suite 5100
                                          1313 Market Street
                                          Wilmington, DE 19899-1709

                                          Attorneys for Energy Transportation Group, Inc.

                                          OF COUNSEL:

                                          Brian M. Buroker
                                          Robert L. Kinder, Jr.
                                          HUNTON & WILLIAMS LLP
                                          1900 K Street, N.W., Suite 1200
                                          Washington, DC 20006-1109
                                          Telephone:  (202) 955-1500
                                          Facsimile:  (202) 778-2201

                                          Maya M. Eckstein
                                          HUNTON & WILLIAMS LLP
                                          Riverfront Plaza, East Tower
                                          951 East Byrd Street
                                          Richmond, VA 23219-4074
                                          Telephone:  (804) 788-8788
                                          Facsimile:  (804) 343-4630

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th Day of July 2007, I caused a copy of the foregoing: **PLAINTIFF'S OBJECTIONS AND ANSWERS TO DEFENDANTS OTICON A/S, OTICON INC., BERNAFON AG, WDH, INC., AND BERNAFON, LLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF** to be served via electronic service and by United States mail service upon the following counsel of record:

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

John M. Romary
C. Gregory Gramenopoulos
FINNEGAN, HENDERSON, FARABOW, GARRETT
& DUNNER
901 New York Ave., N.W.
Washington, DC 20001-4413

*Attorneys for William Demant Holding A/S,
WDH Inc., Oticon A/S, Oticon, Inc., Bernafon
AG, and Bernafon LLC*

Jack B. Blumenfeld (#1014)
Maryellen E. Noreika (#3208)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

Kenneth B. Herman
William J. McCabe
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704

*Attorneys for GN ReSound A/S and
GN Hearing Care Corporation*

Thomas C. Grimm (#1098)
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
Wilmington, DE 19899

James R. Sobieraj
Meredith Martin Addy
David H. Bluestone
Jeffrey A. Marx
BRINKS HOFER GILSON & LIONE
NBC Tower
455 Cityfront Plaza Dr., Suite 3600
Chicago, IL 60611

*Attorneys for Phonak Inc., Phonak LLC,
Unitron Hearing Inc., and Unitron Hearing
Ltd.*

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON
1313 N. Market St.
Hercules Plaza, 6th Floor
Wilmington, DE

Donald A. Degnan
Brett L. Foster
L. Grant Foster
HOLLAND & HART
60 East South Temple, Suite 2000
Salt Lake City, UT 84111

*Attorneys for Sonic Innovations, Inc.*

Barry M. Klayman (#3676)
WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP
Wilmington Trust Center
1100 North Market St., Suite 1001
Wilmington, DE 19801

Jeffrey D. Shewchuk
SHEWCHUK IP SERVICES, LLP
533 77th Street West
Eagan, MN 55121

*Attorneys for Resistance Technology Inc.*

Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
Amy Quinlan (#3021)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494

Richard Morgan
Steven Reitenour
BOWMAN AND BROOKE LLP
150 S. Fifth St., Suite 2600
Minneapolis, MN 55402

*Attorneys for Starkey Laboratories, Inc.*

Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
Wilmington, DE  19899

William H. Mandir
David J. Cushing
Carl J. Pellegrini
SUGHRUE MION PLC
2100 Pennsylvania Ave., N.W.
Washington, DC  20037

*Attorneys for Widex A/S, Widex Hearing Aid
Co., Inc.*



EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ENERGY TRANSPORTATION GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-422 (GMS) |
| | ) | |
| SONIC INNOVATIONS, INC., et al, | ) | |
| | ) | Contains Both: |
| Defendants. | ) | (I) Confidential - Attorneys' Eyes |
| | ) | Only Information, and |
| | ) | (II) Confidential Information |
| | ) | Pursuant to the Proposed Protective |
| | ) | Order |
| | ) | |

## PLAINTIFF'S OBJECTIONS AND SUPPLEMENTAL ANSWERS TO DEFENDANTS OTICON A/S, OTICON INC., BERNAFON AG, WDH, INC., AND BERNAFON, LLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF

Plaintiff Energy Transportation Group, Inc. ("ETG" or "Plaintiff"), by counsel and pursuant to Fed. R. Civ. P. 26 and 33, hereby objects and answers to Defendants Oticon A/S, Oticon Inc., Bernafon AG, WDH, Inc. and Bernafon, LLC's ("Demant Group Defendants" or "Defendants") First Set of Interrogatories dated June 27, 2007.

### I.     GENERAL RESPONSES.

1.     Subject to, and without waiving ETG's general and specific objections to Demant Group Defendant's First Set of Interrogatories, ETG will respond to Demant Group Defendants' interrogatories pursuant to the requirements of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware, the Court's Scheduling Order, and/or other applicable law.

2.     The general and specific objections set forth below are made based on the best information presently available to ETG.  ETG reserves the right to amend, supplement, or

1

change any objection if and when additional, different, or more accurate information becomes available and/or facts are developed. In making the following objections, ETG does not waive any objections that may be applicable to: (a) the use, for any purpose, of any document or information identified or provided in response to Demant Group Defendants' First Set of Interrogatories and Document Requests; or (b) the admissibility, relevancy, or materiality of any information or documents to any issues in this case.

        3.      ETG reserves the right to make any use of, or to introduce at any hearing and at trial, documents or information responsive to Defendants' requests, but discovered subsequent to ETG's initial responses, including, but not limited to, any documents or information obtained in discovery herein.

        4.      Where ETG states that it will produce documents or is searching for documents or information, ETG will respond with documents or information currently in ETG's possession, custody or control. ETG does not represent that any documents actually exist, but that ETG will make a good faith search and attempt to ascertain whether documents responsive to Defendants' requests do in fact exist.

        5.      To the extent ETG responds to Defendants' requests by stating that ETG will produce documents or information that it deems to embody material that is private, business confidential, proprietary, trade secret or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c)(7) or Federal Rule of Evidence 501, ETG will produce documents or information only subject to and in accordance with the terms of a suitable Protective Order entered by the Court.

6.      Subject to and without waiving all objections, privileges, and other exceptions stated herein, ETG shall produce the documents requested and provide a privilege log at a time and place mutually agreeable to the parties.

7.      ETG reserves the right to decide whether the documents produced shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories in Defendants' requests, in accordance with Federal Rule of Civil Procedure 34(b).

8.      Subject to all other objections, privileges and exceptions set forth herein, ETG will identify in a separate privilege log the date, author, and recipient(s) of each document withheld on the basis of any applicable privilege or the work product doctrine.  To the extent Defendants' requests implicate documents generated after the date of filing of this suit that are protected from disclosure by any applicable privilege and/or the work product doctrine, ETG will not list such documents in its privilege log on the ground that, to the extent Defendants intended its requests to cover such materials, the requests are oppressive, overly broad and unduly burdensome, and call for documents not reasonably calculated to lead to the discovery of admissible evidence in the pending action, in violation of Rule 26(b) of the Federal Rules of Civil Procedure.

## II.    GENERAL OBJECTIONS

ETG makes the following general objections, whether or not separately set forth in response to each interrogatory, to each and every instruction and definition in Demant Group Defendants' First Set of Interrogatories:

1.      ETG objects to all instructions, definitions and requests to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent Nos. 4,731,850 ("the '850 Patent"); and 4,879,749 ("the '749 Patent") (collectively, "the

3

patents-in-suit") on the grounds that each such discovery request is overly broad, unduly burdensome, and seeks the discovery of information or documents that are neither relevant to a claim or defense of any party, or to the subject matter of this litigation, nor reasonably calculated to lead to the discovery of admissible evidence.

2.    ETG objects to all instructions, definitions and requests to the extent they seek information not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. In particular, insofar as Defendants' instructions, definitions and requests seek confidential marketing and business information regarding products not relating to the patents-in-suit, ETG objects to such inquiries as overly broad and unduly burdensome. ETG also specifically objects to providing information or documents regarding any products currently being designed, under development or yet to be commercialized by ETG or its licensees and affiliates, as such documents contain highly proprietary, sensitive and confidential business information and are neither relevant to the subject matter of this litigation nor likely to lead to the discovery of admissible evidence.

3.    ETG objects to all instructions, definitions and requests to the extent they seek discovery of third-party information ETG is contractually obligated not to disclose. ETG will cooperate with Defendants to identify what confidential third-party information, if any, is relevant and reasonably necessary for investigation of the claims and defenses herein. ETG will then seek consent from the third party to produce such confidential information in accordance with the terms of the Protective Order entered by the Court.

4.    ETG objects to Defendants' requests to the extent they call for production of documents or information protected by the attorney-client privilege, work product doctrine, or the joint defense doctrine. Such documents or information will not be produced in response to

4

Defendants' requests, and any inadvertent production thereof shall not be deemed a waiver of any applicable privilege. Any such inadvertent production shall be destroyed or returned to ETG in accordance with the terms of the Protective Order entered by the Court, or in accordance with call back provisions of the Federal Rules of Civil Procedure.

      5.     ETG objects to the introductory definitions and instructions to Defendants' requests to the extent said definitions and instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific request on the ground that such enlargement, expansion, or alteration renders said request vague, ambiguous, unintelligible, overly broad, unduly burdensome, and/or uncertain. ETG specifically objects to any request to the extent it asks for documents or things "which reflects, or refers or relates to" the subject matter of the request, on the grounds that such requests would impermissibly require the disclosure of the mental impressions or thoughts of counsel in violation of the work product doctrine.

      6.     ETG objects to all instructions, definitions and requests to the extent that they seek documents or information not currently in ETG's possession, custody, or control, or refer to persons, entities or events not known to ETG.

      7.     ETG objects to all instructions, definitions and requests to the extent they seek information beyond what is available from a reasonable search of ETG's files likely to contain relevant or responsive documents and a reasonable inquiry of ETG employees likely to have information relevant to a claim or defense of any party, or to the subject matter of this suit.

      8.     ETG objects to all instructions, definitions and requests insofar as they call for a construction of the claims of the patents-in-suit on the grounds that such requests are premature. The Court has not yet construed the claims of the patents-in-suit and therefore any answer that depends upon the construction of the claims must be considered preliminary in nature, and ETG

reserves the right to amend or supplement any such answer after the Court has construed the claims of the patents-in-suit.

9.    ETG objects to all instructions, definitions, and requests to the extent they seek to impose discovery obligations that are overbroad, unduly burdensome, or that are beyond those obligations imposed by the Local Rules of the United States District Court for the District of Delaware, the Federal Rules of Civil Procedure, and/or other applicable law.

10.    ETG objects to Demant Group Defendants' First Set of Interrogatories and Requests for Production, including all definitions and instructions, to the extent the requests:  (a) are unduly burdensome; (b) are unreasonably broad, vague, or ambiguous; or (c) require a legal conclusion.

11.    ETG objects to the definition of "ETG," "Plaintiff" and "you" as overly broad and unduly burdensome to the extent that it improperly includes persons or entities not within ETG's control, and/or who are otherwise not within the scope of discovery contemplated by the Federal Rules of Civil Procedure.  ETG further objects to Defendants' definition of "ETG," "Plaintiff" and "you" as overly broad and unduly burdensome to the extent that Defendants' definition covers subsidiaries, shareholders or other related companies whose information and documents are neither relevant to the subject matter of this action nor likely to lead to the discovery of admissible evidence.

12.    ETG objects to Demant Group Defendants' First Set of Interrogatories to the extent the interrogatories and their discrete subparts exceed the maximum number allowed under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, the Pretrial Scheduling Order in this case, and/or other applicable law.

6

13.     ETG objects to Defendants' interrogatories that require ETG to identify "all documents referring to, relating to or supporting" the subject matter of the request on the ground that Defendants' request renders the interrogatory or request for production unduly burdensome, overbroad, and imposes obligations not required by the Local Rules or the Federal Rules of Civil Procedure.

7

### III.    SPECIFIC OBJECTIONS AND ANSWERS TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all settlement agreements and negotiations, including but not limited to the settlement with Gennum Corp., that ETG has entered into concerning any of the patents-in-suit or this case and, with respect to each such agreement, identify all parties to the agreement, the chronology of the negotiation of the agreement, the terms of the agreement, and all persons involved in negotiating the agreement.

### OBJECTIONS TO INTERROGATORY NO. 1:

ETG incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 1, 2, 3, 4, 6, 7 and 9. ETG further objects to this request to the extent it seeks information protected by attorney client privilege, attorney work product and/or any other applicable privilege.

### ANSWER TO INTERROGATORY NO. 1:

Subject to and without waiving the foregoing general and specific objections, ETG incorporates its answer to Interrogatory Number 3 of Defendants' First Set of Common Interrogatories. ETG also incorporates its answer to Interrogatory Number 8 of Defendants' First Set of Common Interrogatories.

As noted in the incorporated answers, ETG (including Audimax) cooperated with Hearing Aid companies including Siemens, Linear Technology, Inc., Bristol Meyers and others from 1985 to 1992 in an effort to commercialize a hearing aid product. During these cooperative efforts, ETG engaged in negotiations regarding the patents-in-suit. These negotiations did not lead to any licenses or settlement agreements related to the patents-in-suit. ETG has also engaged in settlement negotiations with several of the Defendants in this action. The terms of

any agreements reached and/or the specific details regarding these discussions are not admissible pursuant to Rule 408 of the Federal Rules of Evidence and not likely to lead to the discovery of admissible evidence. ETG further identifies the following as knowledgeable regarding the subject matter of this interrogatory:

| Name | Company & Address |
|------|-------------------|
| Kimball C. Chen, Chairman and Chief Executive Officer | Energy Transportation Group, Inc. 654 Madison Avenue, 17th Floor New York, NY 10021 (Should only be contacted through counsel of record) |
| Alex W. Evans, Vice President | Energy Transportation Group, Inc. 654 Madison Avenue, 17th Floor New York, NY 10021 (Should only be contacted through counsel of record) |
| Harry Levitt | P.O. BOX 610 Bodega Bay, CA 94923 998 SeaEagle Dr. (707) 875-2289 (Should only be contacted through counsel of record) |
| Richard S. Dugot | 590 W End Ave New York, NY 10024 (212) 873-8067 (Should only be contacted through counsel of record) |
| Edward Kahn | EKMS, Inc. 675 Massachusetts Avenue Cambridge, MA 02139 (617) 864-2100 |
| John J. Zei | Last known address: Former President and CEO Siemens Hearing Instruments, Inc. 10 Constitution Avenue Piscataway, New Jersey 088855 (908) 562-6600 |

| Name | Company & Address |
|------|-------------------|
| R. G. Simpson | Linear Technology Inc. |
| D. F. Clifton | PO Box 489 Station A |
| | Burlington, Ontario |
| | CANADA L7R3Y3 |

## INTERROGATORY NO. 2:

Describe in detail the method by which ETG contends the amount of alleged damages in this case should be calculated with respect to each of the Demant Group Defendants, including, without limitation, an identification of each damages theory that ETG alleges should be used in the damages calculation, an identification of the specific factors that ETG alleges should be used under each such damages theory, and an identification of the amount of damages resulting from the calculation under each such damages theory. For example, if ETG alleges that the damages should be calculated under a theory of reasonable royalty, the detailed description should include at least the applicable royalty rate or rates, the product sales to which the royalty rate should be applied, and how the royalty rate was determined and is supportable by law, including under the factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

## OBJECTIONS TO INTERROGATORY NO. 2:

ETG incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 4, 8, 9, and 10. ETG further objects to this request on the basis that it is premature because the Scheduling Order requires ETG to serve its expert report on the issue of damages on September 7, 2007. ETG specifically objects to this request to the extent it seeks information protected by attorney client privilege, attorney work product and/or any other applicable privilege. ETG specifically objects to this request to the extent the phrase requesting ETG to explain in detail "the method by which

10

ETG contends the amount of alleged damages in this case should be calculated" is vague and ambiguous.

## ORIGINAL ANSWER TO INTERROGATORY NO. 2:

Subject to and without waiving the foregoing general and specific objections, ETG incorporates its answer to Interrogatory 13 of Defendants' First Set of Common Interrogatories. ETG reserves the right to amend or supplement that answer based upon its continuing investigation and discovery, and in particular based upon discovery from Defendants relating to all of the models that it has made, sold, offered for sale, or imported into the United States.

## SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 2:

Subject to and without waiving the foregoing general and specific objections, ETG incorporates its forthcoming Expert Report on Damages, which will be served on September 14, 2007.

## INTERROGATORY NO. 3:

Identify each act performed by WDH, Inc., that ETG contends constitutes direct infringement, and identify the specific claims of the patents-in-suit that ETG contends are infringed by each such act.

## OBJECTIONS TO INTERROGATORY NO. 3:

ETG incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 8, 9 and 10. ETG further objects to the extent the phrase requesting ETG to "identify each act" is unduly burdensome and overly broad.

11

**ORIGINAL ANSWER TO INTERROGATORY NO. 3:**

ETG is continuing to investigate the relationship between WDH Inc. and the Demant Group Defendants. Subject to and without waiving the foregoing general and specific objections, ETG incorporates its preliminary infringement charts that identify specific claims of the patents-in-suit and the infringing acts of the Demant Group Defendants. These acts of manufacture, use, sale, offer for sale and/or import of the accused products directly infringe the claims of the patents-in-suit.

ETG reserves the right to amend or supplement this answer based upon its continuing investigation and discovery, and in particular based upon discovery from Defendants relating to all of the models that it has made, sold, offered for sale, or imported into the United States.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 3:**

Subject to and without waiving the foregoing general and specific objections, based on current information and belief, WDH, Inc.'s predecessor, Bernafon, Inc., imported accused products into the United States and sold accused products in the United States. ETG incorporates by reference its preliminary infringement charts and infringement charts by reference as providing the identification of specific claims of the patents-in-suit that ETG contends are infringed by the importation and sale of accused products..

**INTERROGATORY NO. 4:**

For each of the Demant Group Defendants alleged to "indirectly" infringe the patents-in-suit (*see, e.g.*, ¶¶ 30 and 36, Second Amended Complaint) either by contributory infringement or inducement, identify: (a) the date or approximate date on which ETG contends that each of the Demant Group Defendants first became aware of each of the patents-in-suit; (b) each alleged indirect infringing act performed by each of the Demant Group Defendants' (c) each alleged act

12

of direct infringement resulting from each of the Demant Group Defendants alleged indirect infringing acts; (d) each claim of the patents-in-suit that are infringed by such acts; and (e) all evidence that demonstrates that any of the Demant Group Defendants intended infringement to result.

## OBJECTIONS TO INTERROGATORY NO. 4:

ETG incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 8, 9 and 10. ETG further objects to the extent the phases "each alleged indirect infringing act" and "each alleged act of direct infringement resulting from each of the Demant Group Defendants alleged indirect infringing acts" are vague, ambiguous and impossible to understand.

## ORIGINAL ANSWER TO INTERROGATORY NO. 4:

Subject to and without waiving the foregoing general and specific objections, ETG states that the Demant Group Defendants' manufacture, sale, offer for sale, and/or import of the accused products, with knowledge of the patents-in-suit, contributes to infringement and/or induces others to infringe.

(a)    Subject to and without waiving the foregoing general and specific objections, ETG states that the '850 Patent was cited and described in the Journal of the Acoustical Society of America, 84(6) December 1988, a publication that is widely distributed to companies and individuals in the hearing aid industry. One or more Demant employees subscribed to this publication and, on information and belief, reviewed this information.

Further, the Demant Group Defendants are members of Hearing Instrument Manufacturers Patent Partnership ("HIMPP"). HIMPP evaluated a number of hearing aid patents, including the patents-in-suit, to determine which patents to acquire for the HIMPP patent

13

pool. In addition, the '850 Patent was cited during the prosecution of at least two patents owned by HIMPP. K/S HIMPP is the assignee of U.S. Patent No. 5,706,352 with a filing date of April 7, 1993 and an issue date of January 6, 1998, which cites the '850 Patent. K/S HIMPP is the assignee of U.S. Patent No. 5,724,433 with a filing date of June 7, 1995 and an issue date of March 3, 1998, which cites the '850 Patent. Because Demant Group Defendants are members of HIMPP, knowledge by HIMPP should be imputed to the Demant Group Defendants.

Oticon A/S had notice at least as early as October 11, 1989. The '850 Patent was cited during prosecution of application 07/322,387, filed March 13, 1989 which serves as priority to application 07/577,069, later issued as U.S. Patent No. 5,033,090. Oticon A/S is the assignee of U.S. Patent No. 5,033,090 with a filing date of September 4, 1990 and an issue date of July 16, 1991. The '850 Patent was applied under an anticipation theory in rejecting the claims, as detailed in the Office Action mailed October 11, 1989. In the response/amendment filed January 9, 1989, patent counsel for Oticon prepared a lengthy analysis and discussion of the '850 Patent. In addition, the '749 Patent was cited in the International Search report dated November 18, 1999 for WO99/65275, assigned to Oticon A/S. The other Demant Group Defendants had notice on at least those dates by imputed knowledge.

Bernafon A/G had notice at least as early as June 27, 2003. The '850 Patent was cited on June 27, 2003 during the prosecution of U.S. Patent No. 6,644,120, assigned to Bernafon A/G. The other Demant Group Defendants had notice on at least those dates by imputed knowledge.

(b)      Subject to and without waiving the foregoing general and specific objections and to the extent that this request can be understood, ETG incorporates its motions and responses filed in opposition to WDH A/S's jurisdictional motion to dismiss. Demant Group Defendants encourage sales of, aid marketing of and aid distribution of each of the accused products.

14

(c)      Subject to and without waiving the foregoing general and specific objections and to the extent that this request can be understood, ETG incorporates its motions and responses filed in opposition to WDH A/S's jurisdictional motion to dismiss. Demant Group Defendants encourage sales of, aid marketing of and aid distribution of each of the accused products.

(d)      Subject to and without waiving the foregoing general and specific objections and to the extent that this request can be understood, ETG incorporates its preliminary claim charts which detail each claim of the patents-in-suit that are infringed by the Demant Group Defendants.

(e)      Subject to and without waiving the foregoing general and specific objections, ETG states that the Demant Group Defendants were sued in 2005 and did not cease their infringing activities. Demant Group Defendants never contacted ETG to provide any explanation as to its activities or provide any basis for its continued infringement. Therefore, Demant Group Defendants' infringement was willful from the point in time that it possessed knowledge of the patents-in-suit and continued to be willful up through the expiration of the patents-in-suit.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 4:**

(a)      In March of 2001, each of the HIMPP members received a copy of a CD containing the '850 patent and the '749 patent. The Demant Group Defendants who were members of HIMPP in March of 2001 had notice of the patents-in-suit at least as early as March of 2001.

(d)      Subject to and without waiving the foregoing general and specific objections and to the extent that this request can be understood, ETG incorporates its infringement claim charts

15

which detail each claim of the patents-in-suit that are infringed by the Demant Group Defendants.

## INTERROGATORY NO. 5:

State the complete factual basis for ETG's contention that each of the Demant Group Defendants' alleged infringement of the patents-in-suit has been "willful, deliberate and with knowledge of Plaintiff's rights (*see, e.g.*, ¶¶ 34 and 40, Second Amended Complaint), including without limitation an identification of all evidence that any of the Demant Group Defendants were provided with any notice of alleged infringement of the patents-in-suit, any of the Demant Group Defendants had any knowledge of the patents-in-suit, any of the Demant Group Defendants copied any of the patents-in-suit, and/or any of the Demant Group Defendants lacked any good-faith belief that the patents in suit are invalid, unenforceable and/or not infringed.

## OBJECTIONS TO INTERROGATORY NO. 5:

ETG incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 8, 9 and 10.

## ANSWER TO INTERROGATORY NO. 5:

Subject to and without waiving the foregoing general and specific objections, ETG incorporates its answers to Interrogatory No. 4 above. In addition, there is no evidence of design around by the Demant Group Defendants. As the court ordered date for indicating a reliance on an opinion of counsel has passed, the Demant Group Defendants cannot rely on an opinion of counsel.

16

**INTERROGATORY NO. 6:**

With respect to Audimax's or ETG's efforts, or the efforts of any person under

Audimax's or ETG's control, to work with any one or more of Siemens, Linear Technology, Inc.

(later renamed "Gennum Corporation"), Bristol Meyers and "other hearing aid manufacturers"

(*see* Plaintiff's Objections and Second Supplemental Answers to Defendants' First Set of

Common Interrogatories at 13-16) or to work with EKMS (*see* Plaintiff's Objections and Second

Supplemental Answers to Defendants' First Set of Common Interrogatories at 23-24) in

connection with any hearing aid product or prototype, provide a detailed description of these

efforts, including the date of the first letter or other communication with each company, a

chronology of the meetings with each company and listing those individuals in attendance and

the nature and outcome the meetings with each company.

**OBJECTIONS TO INTERROGATORY NO. 6:**

ETG incorporates by reference its General Objections stated above, and in particular,

objects to this interrogatory on the grounds stated in General Objections 1, 2, 3, 4, 6, 7 and 9.

ETG further objects to this request to the extent it seeks information protected by attorney client

privilege, attorney work product and/or any other applicable privilege.

**ORIGINAL ANSWER TO INTERROGATORY NO. 6:**

Subject to and without waiving the foregoing general and specific objections, ETG

(including Audimax) states that certain prototype products were produced from about 1985

through 1992 that have utilized the inventions of one or more claims of one or more of the

patents-in-suit.  Upon information and belief, no such product produced by Audimax or ETG

was marketed or sold.  Audimax attempted to commercialize a hearing aid product, including but

17

not limited to, cooperation with existing hearing aid companies, from about 1985 through about 1992 but was unable to do so.

In the late 1980s, Audimax through its Chief Executor Officer, Dr. C.Y. Chen, met with Dr. Rodney Perkins, President and Chief Executive Officer of the Resound Corporation, to discuss commercialization of the proprietary and patented Audimax technology.

In 1985, R.G. Simpson, Vice President of Marketing and Business Development of Linear Technology Inc. and Dr. C. Y. Chen had discussions regarding the hearing aid market. Linear Technology Inc. was renamed Gennum around 1987 and accordingly discussions of commercialization and the technology of the patents in suit occurred with the current Gennum Corporation.

Audimax met with Siemens in 1991 to explore entry in the hearing aid market. Dr. C.Y. Chen had discussions with John Zei, President and Chief Executor Officer of Seimens Hearing Instruments, Inc. from 1991 to 1993.

ETG identifies that Audimax entered into discussions with Beckman Instruments, Inc. regarding commercialization, specifically Arnold Beckman.

ETG identifies that Audimax discussed commercialization issues with Telex Inc., specifically with a Mr. Harry Teder at Telex Inc. Also, ETG identifies that it discussed hearing aid related issues with Nicolet Instrument Corp.

Since about 2002, Audimax/ETG has undertaken efforts to identify infringers of the patents-in-suit and to enforce its patents rights through licensing and other actions. Kimbell Chen engaged the services of EKMS, Inc. as part of this effort in 2002.

18

EKMS was engaged in around 2001 to approach companies to determine interest in licensing the patents-in-suit.  In around 2004-2005, ETG engaged in discussions with SoundID under which a license under one or more of the patents in suit was proposed.

ETG further identifies the following as knowledgeable regarding the subject matter of this interrogatory:

| Name | Company & Address |
|------|-------------------|
| Kimball C. Chen, Chairman and Chief Executive Officer | Energy Transportation Group, Inc. 654 Madison Avenue, 17th Floor New York, NY 10021 (Should only be contacted through counsel of record) |
| Alex W. Evans, Vice President | Energy Transportation Group, Inc. 654 Madison Avenue, 17th Floor New York, NY 10021 (Should only be contacted through counsel of record) |
| Harry Levitt | P.O. BOX 610 Bodega Bay, CA 94923 998 SeaEagle Dr. (707) 875-2289 (Should only be contacted through counsel of record) |
| Richard S. Dugot | 590 W End Ave New York, NY 10024 (212) 873-8067 (Should only be contacted through counsel of record) |
| Edward Kahn | EKMS, Inc. 675 Massachusetts Avenue Cambridge, MA 02139 (617) 864-2100 |

| Name | Company & Address |
|------|-------------------|
| John J. Zei | Last known address: <br> Former President and CEO <br> Siemens Hearing Instruments, Inc. <br> 10 Constitution Avenue <br> Piscataway, New Jersey 088855 <br> (908) 562-6600 |
| R. G. Simpson <br> D. F. Clifton | Linear Technology Inc. <br> PO Box 489 Station A <br> Burlington, Ontario <br> CANADA L7R3Y3 |

ETG emphasizes that it reserves the right to amend or supplement that answer based upon its continuing investigation and discovery.

## SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 6:

ETG incorporates by reference its Answer and Supplemental Answer to Interrogatory No. 3 of Defendants First Set of Common Interrogatories.

## INTERROGATORY NO. 7:

Identify all entities and persons, including but not limited to the inventors of the patents-in-suit, who have a financial interest in the patents-in-suit or the outcome of this case, how such interest was obtained, all documents that refer to or define that entity's or person's interest, and whether such interest is subject to the rights of any third party.

## OBJECTIONS TO INTERROGATORY NO. 7:

ETG incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 2, 4, 9 and 10. ETG further objects to this request to the extent it seeks information protected by attorney client privilege, attorney work product and/or any other applicable privilege.

20

**SUPPLEMENTAL OBJECTIONS TO INTERROGATORY NO. 7:**

ETG further objects to this request to the extent the phrases "financial interest" and "the outcome of this case" are vague and ambiguous.

**ORIGINAL ANSWER TO INTERROGATORY NO. 7:**

Subject to, and without waiving, the foregoing general and specific objections, ETG owns all right, title and interest in the two patents in suit. Energy Transportation Group is the assignee of all right, title and interest in the two patents in suit at the present time and accordingly has a financial interest in the patents-in-suit.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 7:**

In February of 2005, the shareholders of Audimax agreed to sell their shares in Audimax to ETG in exchange for a contractual right to the commercial value of the patents-in-suit. ETG has produced documents in its possession responsive to this interrogatory.

**INTERROGATORY NO. 8:**

Identify all witnesses, including expert witnesses, whose testimony ETG will or may offer at trial in this case.

**OBJECTIONS TO INTERROGATORY NO. 8:**

ETG incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 4, 9 and 10. ETG further objects to this request to the extent it seeks information protected by attorney client privilege, attorney work product and/or any other applicable privilege. ETG specifically objects to this request on the basis that it is premature because discovery is ongoing and the Scheduling Order indicates a trial date of January 22, 2008.

21

**ORIGINAL ANSWER TO INTERROGATORY NO. 8:**

ETG is continuing its investigation and reserves the right to amend or supplement this answer based upon its continuing investigation.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 8:**

ETG identifies at least those individuals listed in Part I: Persons Likely to Have Discoverable Information of its initial disclosures, as updated.

**INTERROGATORY NO. 9:**

Identify all persons who provided any information used in responding to these Interrogatories and indicate for which Interrogatory or Interrogatories they did so.

**OBJECTIONS TO INTERROGATORY NO. 9:**

ETG incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 9 and 10.

**ANSWER TO INTERROGATORY NO. 9:**

Subject to and without waiving the foregoing general and specific objections, ETG identifies the individuals as provided above.

22

Respectfully Submitted,

Energy Transportation Group, Inc.

By Counsel:


_____

Edmond D. Johnson (No. 2257)
PEPPER HAMILTON
Hercules Plaza Suite 5100
1313 Market Street
Wilmington, DE 19899-1709

Attorneys for Energy Transportation Group, Inc.

OF COUNSEL:

Marty Steinberg
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460

Brian M. Buroker
Robert L. Kinder, Jr.
HUNTON & WILLIAMS LLP
1900 K Street, N.W.; Suite 1200
Washington, DC 20006-1109
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

Maya M. Eckstein
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
Telephone: (804) 788-8788
Facsimile: (804) 343-4630

Dated: August 31, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st Day of August 2007, I caused a copy of the foregoing: **PLAINTIFF'S OBJECTIONS AND SUPPLEMENTAL ANSWERS TO DEFENDANTS OTICON A/S, OTICON INC., BERNAFON AG, WDH, INC., AND BERNAFON, LLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF** to be served via electronic service and by Overnight mail service upon the following counsel of record:

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899

John M. Romary
C. Gregory Gramenopoulos
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER
901 New York Ave., N.W.
Washington, DC  20001-4413

*Attorneys for William Demant Holding A/S, WDH Inc., Oticon A/S, Oticon, Inc., Bernafon AG, and Bernafon LLC*

Jack B. Blumenfeld (#1014)
Maryellen E. Noreika (#3208)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899

Kenneth B. Herman
William J. McCabe
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY  10036-8704

*Attorneys for GN ReSound A/S and GN Hearing Care Corporation*

24

Thomas C. Grimm (#1098)
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
Wilmington, DE 19899

James R. Sobieraj
Meredith Martin Addy
David H. Bluestone
Jeffrey A. Marx
BRINKS HOFER GILSON & LIONE
NBC Tower
455 Cityfront Plaza Dr., Suite 3600
Chicago, IL 60611

*Attorneys for Phonak Inc., Phonak LLC,
Unitron Hearing Inc., and Unitron Hearing
Ltd.*

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON
1313 N. Market St.
Hercules Plaza, 6th Floor
Wilmington, DE

Donald A. Degnan
Brett L. Foster
L. Grant Foster
HOLLAND & HART
60 East South Temple, Suite 2000
Salt Lake City, UT 84111

*Attorneys for Sonic Innovations, Inc.*

Barry M. Klayman (#3676)
WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP
Wilmington Trust Center
1100 North Market St., Suite 1001
Wilmington, DE 19801

Jeffrey D. Shewchuk
SHEWCHUK IP SERVICES, LLP
533 77th Street West
Eagan, MN 55121

*Attorneys for Resistance Technology Inc.*

Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
Amy Quinlan (#3021)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494

Richard Morgan
Steven Reitenour
BOWMAN AND BROOKE LLP
150 S. Fifth St., Suite 2600
Minneapolis, MN 55402

*Attorneys for Starkey Laboratories, Inc.*

Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
Wilmington, DE  19899

William H. Mandir
David J. Cushing
Carl J. Pellegrini
SUGHRUE MION PLC
2100 Pennsylvania Ave., N.W.
Washington, DC  20037

*Attorneys for Widex A/S, Widex Hearing Aid
Co., Inc.*