1479406_1.DOC

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENERGY TRANSPORTATION GROUP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SONIC INNOVATIONS, INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

C.A. No. 05-422 (GMS)

PUBLIC VERSION

## DEMANT AND WIDEX DEFENDANTS' OPENING BRIEF IN
## SUPPORT OF MOTION TO AMEND ANSWER AND COUNTERCLAIM

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

OF COUNSEL:

John M. Romary
C. Gregory Gramenopoulos
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Ave., N.W.
Washington, DC 20001-4413
202.408.4000

*Attorneys for William Demant Holding A/S,
WDH Inc., Oticon A/S, Oticon, Inc.,
Bernafon AG, and Bernafon LLC*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

OF COUNSEL:

SUGHRUE MION, PLLC
David J. Cushing
William H. Mandir
Carl J. Pellegrini
2100 Pennsylvania Ave., N.W.
Suite 800
Washington, DC 20037
202.293.7060

*Attorneys for Widex A/S and Widex Hearing
Aid Co. Inc.*

Confidential Version Filed: November 6, 2007
Public Version Filed: December 21, 2007

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. ii

TABLE OF EXHIBITS ...................................................................... iv

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................1

      A.    The Inequitable Conduct.........................................................2

      B.    Dr. Levitt's Knowledge and Key Role ........................................2

      C.    The Material Prior Art That Dr. Levitt Withheld from the USPTO .......................4

            1.    The Nunley Article and 1982 Egolf Article Were Withheld .......................4

                  a)    The 1985 Egolf Abstract and 1984 VA Report Were
                        Withheld.............................................................6

                        (1)    The Zeta Noise Blocker and Stein Article Were
                               Withheld.........................................................9

            2.    The Discovery That Revealed the Inequitable Conduct ...........................10

II.   ARGUMENT ...........................................................................12

      A.    The Applicable Standards Under Rules 16(b) and 15(a) .........................12

      B.    The Filing of the Amended Answer Is Fully Justified.............................15

            1.    There Has Been No Undue Delay, Bad Faith, or Dilatory Motive
                  by Defendants; Any Delay Was Caused by ETG .......................................15

            2.    ETG Will Not Be Prejudiced by the Demant Defendants'
                  Amendment..........................................................................17

            3.    No Other Reasons Justify Denying Leave to Amend ................................18

III.  CONCLUSION..........................................................................19

i

TABLE OF AUTHORITIES

Page(s)

CASES

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*,
  989 F. Supp. 1237, 1247 (N.D. Cal. 1997) ............................................................ 17

*Agere Sys. Guardian Corp. v. Proxim, Inc.*,
  190 F. Supp. 2d 726, 732 (D. Del. 2002) ......................................................... 13, 14

*Arthur v. Maersk, Inc.*,
  434 F.3d 196, 202 (3d Cir. 2006) .................................................................... 13, 14

*Biovail Labs. v. Andrx Pharms.*,
  C.A. Nos. 05-586, 05-730, 06-620, (D. Del. May 4, 2007) ............................. 14, 15

*Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*,
  295 F. Supp. 2d 430, 433 (D. Del. 2003) ............................................................ 17

*Ciena Corp. v. Nortel Networks Corp.*,
  233 F.R.D. 493, 495 (E.D. Tex. 2006) ............................................................ 13, 16

*E. Minerals & Chems. Co. v. Mahan*,
  225 F.3d 330, 340 (3d Cir. 2000) ......................................................................... 12

*Enzo Life Scis., Inc. v. Digen Corp.*,
  270 F. Supp. 2d 484, 490 (D. Del. 2003) .......................................... 12, 14, 16, 18

*Foman v. Davis*,
  371 U.S. 178, 182 (1962) ...................................................................................... 13

*General Tire & Rubber Co. v. Watson-Bowman Associates, Inc*
  193 U.S.P.Q. 97, 98 (D. Del. 1976) ...................................................................... 14

*Go Med. Indus. Pty, Ltd. v. C.R. Bard, Inc.*,
  1995 U.S. Dist. LEXIS 22248 (N.D. Ga. July 7, 1995) ......................................... 15

*IGT v. Alliance Gaming Corp.*,
  No. 2:04-cv-1676-RCJ-RJJ, 2007 WL 2429147, at *6 (D. Nev. Aug. 20, 2007) ................. 12

*Medpointe Healthcare Inc. v. Apotex Inc.*,
  No. Civ. 06-164 SLR, 2007 WL 211205, at *1 (D. Del. Jan. 26, 2007) ................. 18

*Micron Tech., Inc. v. Rambus Inc.*,
  409 F. Supp. 2d 552, 558 (D. Del. 2006) ............................................................. 13

*Molins PLC v. Textron, Inc.*,
    48 F.3d 1172, 1178 (Fed. Cir. 1995)............................................................ 18

*Resqnet.com, Inc. v. Lansa, Inc.*,
    382 F. Supp. 2d 424, 450 (S.D.N.Y. Jan. 13, 2005) ................................... 15

*Semiconductor Energy Lab. Co. v. Chi Mei Optoelectronics Corp.*,
    No. C 04-04675 MHP, 2006 WL 3826726, at *3 (N.D. Cal. Dec. 27, 2006) ................. 13, 16

*Symbol Techs., Inc. v. Proxim Inc.*,
    C.A. No. 01-801-SLR, 2003 U.S. Dist. LEXIS 6686, at *5-7 (D. Del. Apr. 17, 2003) ... 14, 16

*Thompson-Hayward Chem. Co. v. Rohm & Haas Co.*,
    745 F.2d 27, 33 (Fed. Cir. 1984)............................................................. 18

*Trimble Navigation Ltd. v. RHS, Inc.*,
    No. C 03-1604 PJH, 2007 WL 2727164, at *10 (N.D. Cal. Sept. 17, 2007)............... 13

*Trueposition, Inc. v. Allen Telecom, Inc.*,
    No. C.A. No. 01-823 GMS, 2002 WL 1558531, at *1 (D. Del. July 16, 2002) ................. 13

## RULES

Federal Rule of Civil Procedure 11 ......................................................... 16

Federal Rule of Civil Procedure 15(a) ..................................................... 12, 13

Federal Rule of Civil Procedure 16(b) ..................................................... 12

Federal Rule of Civil Procedure 30(b)(6) ................................................. 11

Federal Rule of Civil Procedure 9(b) ....................................................... 12, 18

# TABLE OF EXHIBITS

**Exhibit**                                    **Description**

1. Amended Answer of Defendants Oticon A/S, Oticon Inc., Bernafon AG, WDH, INC., and Bernafon, LLC, Amended Counterclaim of Oticon Inc. and Bernafon, LLC, and Demand For Jury Trial

2. Amended Answer of Defendants Oticon A/S, Oticon Inc., Bernafon AG, WDH, INC., and Bernafon, LLC, Amended Counterclaim of Oticon Inc. and Bernafon, LLC, and Demand For Jury Trial, showing changes

3. Defendant Widex A/S's Amended Answer, Defenses and Counterclaims

4. Defendant Widex A/S's Amended Answer, Defenses and Counterclaims, showing changes

5. Defendant Widex Hearing Aid Co. Inc.'s Amended Answers and Counterclaims

6. Defendant Widex Hearing Aid Co. Inc.'s Amended Answers and Counterclaims, showing changes

7.                                    REDACTED

8. "A Wearable Digital Hearing Aid," *Hearing Journal* (Oct. 1983) (the "Nunley Article")  Levitt Deposition Exhibit 108

9. "Review of the Acoustic Feedback Literature form a Control Systems Point of View," Levitt Exhibit 105 (the "1982 Egolf Article")

10. "Electronic Cancellation of Acoustic Feedback to Increase Hearing-Aid Stability," Spring 1985 Supplement of the *Journal of Acoustical Society of America,* Levitt Deposition Exhibit 115 (the "1985 Egolf Abstract")

11. Excerpts from the "Rehabilitation R&D Progress Reports- 1984", *Veterans Administration,* ("the 1984 VA Report"), (cover page, pp. i-xi, and 163-164), Levitt Deposition Exhibit 135

12. Typed version of "Electronic Cancellation of Acoustic Feedback to Increase Hearing-Aid Stability" 1985 Egolf Abstract, found in Dr. Levitt's garage, Levitt Deposition Exhibit 116.

13.                                    REDACTED

iv

Exhibit 24

14.    "Listener- Assessed Intelligibility of a Hearing Aid Self- Adaptive Noise Filter, *Ear and Hearing,* Vol. 5, No. 4 (1984) (the "Stein Article"), Levitt Deposition Exhibit 113.

15.                              REDACTED

16.                              REDACTED

17.                              REDACTED

18.                              REDACTED

19.    Biovail Laboratories v. Andrx Pharmaceuticals, C.A. Nos. 05-586, 05-730 & 06-620, (D. Del. May 4, 2007)

20.    Excerpt from Larson Deposition Transcript, 193:10-194:22, Aug. 30, 2007

PUBLIC VERSION

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Discovery has revealed that the lead inventor on the patents-in-suit, Dr. Harry Levitt, withheld key prior art from the United States Patent and Trademark Office ("USPTO") in order to obtain patents in his name and the financial benefits that came along with those patents. Defendants Oticon A/S, Oticon, Inc., Bernafon AG, Bernafon LLC, WDH Inc. and William Demant Holding A/S (collectively the "Demant Defendants"), and Widex A/S and Widex Hearing Aid Co. Inc. (collectively the "Widex Defendants") each seek to file an Amended Answer and Counterclaim to the Second Amended Complaint of Plaintiff Energy Transportation Group, Inc. ("ETG") in order to add the affirmative defense and counterclaim of inequitable conduct based on this conduct.[1]

ETG filed its original Complaint on June 23, 2005 (D.I. 1); an Amended Complaint on August 4, 2005 (D.I. 38); and a Second Amended Complaint, which was deemed filed as of February 15, 2006 (D.I. 65). The Demant Defendants (D.I. 95) and the Widex Defendants (D.I. 93 and 94) each filed their Answer and Counterclaim to the Second Amended Complaint on February 27, 2006. The Court entered a Scheduling Order on February 20, 2007, with a date for amendment of pleadings of April 2, 2007. Fact discovery in general closed on August 31, 2007, but was extended in a discovery teleconference with the Court to accommodate certain fact depositions and document production.

---

[1]    As is required by Local Rule 15.1, the following pleadings are attached to this Motion and a copy of each pleading is also enclosed as the indicated Exhibits: Amended Answer of Defendants Oticon A/S, Oticon Inc., Bernafon AG, WDH, INC., and Bernafon, LLC, Amended Counterclaim of Oticon Inc. and Bernafon, LLC, and Demand For Jury Trial (Exhibit 1, copy showing changes at Exhibit 2), Defendant Widex A/S's Amended Answer, Defenses and Counterclaims (Exhibit 3, copy showing changes at Exhibit 4) and Defendant Widex Hearing Aid Co. Inc.'s Amended Answers and Counterclaims (Exhibit 5, copy showing changes at Exhibit 6).

## STATEMENT OF FACTS

### A.    The Inequitable Conduct

The Defendants' claim of inequitable conduct, as asserted in their proposed Amended Answer, is as follows.

During the prosecution of the patent application that resulted in the '850 patent-in-suit, lead inventor Dr. Harry Levitt, in violation of his duty of candor, withheld from the USPTO Examiner handling this application, information that was material to the patentability of the claims in this application.

Dr. Levitt signed an initial "Combined Declarations and Power of Attorney" declaring to the USPTO that he understood the claims in the application as filed, and that he and two coinventors were the original and true inventors of the inventions defined by those claims. Dr. Levitt knew, however, contrary to his declaration, that the three were not, and could not possibly have been, the inventors of at least application claims 1, 2, 8-11, 15, 16, 19, 20, and 22, and issued claims 5, 9, 13, 14, 16, and 19 of the '850 patent.

As explained in more detail below, Dr. Levitt, at the time of the application, knew of material prior art that rendered those claims invalid, or at the very least, was material to their patentability and, because he was responsible for supplying the prior art background in the application, he knew that this prior art was not being disclosed in the application.

### B.    Dr. Levitt's Knowledge and Key Role

Dr. Levitt is said by ETG to be "the Father of the digital hearing aid."  This claim is presumably based on work Dr. Levitt did prior to 1984 at City College of New York

2

PUBLIC VERSION

("CUNY"), where he was a professor of audiology. That pre-1984 CUNY work resulted in a large scale device (i.e., approximately the size of a wheelbarrow).

While still working as a professor, Dr. Levitt in 1984 began to consult for Audimax, ETG's predecessor.

REDACTED

that ostensibly led to the inventions claimed in the '850 patent application filed on June 26, 1986, and the later related application for the '749 patent filed on February 12, 1988.

In fact, many of the allegedly novel features claimed by Dr. Levitt had already been developed or published by others, as he was aware. During the time of his work at CUNY and for Audimax, Dr. Levitt was actively following what others were doing and had written in the field. If for no other reason than his status as a well-known member of review and editorial panels in fields and an active professor at CUNY, he needed to keep abreast of the work of others. He was particularly interested in the considerable work of others who, as he was doing, were trying to develop practical, digital hearing aid technology. It was understandable, therefore, that Dr. Levitt would take the lead on selecting the prior art to be disclosed to the USPTO in filing the '850 patent application.

REDACTED

Although Dr. Levitt was aware of the extensive work by others on digital hearing aids that related to many of the features he claimed in his patent application (see below), he did not disclose to the USPTO this important work, instead selecting much less important work that

3

was far less material to his alleged inventions. He understood his obligation to disclose material

prior art to the USPTO and he necessarily had to appreciate, when making the choice not to

disclose the most significant work of others, that disclosure of the most relevant work would

likely undermine the patent rights he was claiming. Thus, his decision not to cite this important

collection of prior art can only have been made with the intent to deceive the USPTO.

### C.     The Material Prior Art That Dr. Levitt Withheld from the USPTO

Dr. Levitt's patent application filed on June 26, 1986, which led to the '850

patent, included claims to the following:

(a)     a hearing aid with a programmable delay line filter included in the "forward path" to reduce acoustic feedback (application claims 1, 2, and 15, and issued claim 9 of the '850 patent);

(b)     a method of reducing acoustic feedback in a hearing aid with the programmable delay line filter used in the feedback path (including application claims 19, 20, and 22, and issued claims 13, 14, 16, and 19 of the '850 patent); and

(c)     the generic idea of changing the characteristics of a hearing aid as the characteristics of the sound being heard changes (including application claims 8-11 and issued claim 5 of the '850 patent).

In fact, none of these claims were deserving of patenting over the prior art known to Dr. Levitt,

but concealed from the USPTO.

### 1.     The Nunley Article and 1982 Egolf Article Were Withheld

First, James Nunley, in an article entitled "A Wearable Digital Hearing Aid,"

*Hearing Journal* (Oct. 1983) (the "Nunley Article") (Exhibit 8), disclosed a programmable delay

line filter, which he called a "programmable digital processor":

> This digital signal representation [in the Nunley hearing aid] is operated on by *adding and subtracting weighted versions of past and present inputs to emphasize or de-emphasize various aspects of the signal. By adjusting these weighting factors, the action of the hearing aid may be "personalized"* for its recipient.

4

PUBLIC VERSION

(Nunley Article, Exhibit 8 at 31) (emphasis added). The Nunley Article also shows in Figure 2 a programmable delay line filter in the forward path of a digital hearing aid, and the Nunley Article expressly anticipates the elimination of acoustic feedback in a digital hearing aid.

While the Nunley Article did not explain how to eliminate acoustic feedback in a digital hearing aid, another important article at the time did. Specifically, a 1982 seminal review article by Dr. Egolf, entitled "Review of the Acoustic Feedback Literature from a Control Systems Point of View," (the "1982 Egolf Article") (Exhibit 9), discloses a method (the "phase shifting method") of reducing the effect of acoustic feedback. (*Id.*)

It would have been obvious to one of ordinary skill in the art to use the Nunley "programmable digital processor" in the "forward path" to implement the method of the 1982 Egolf Article and thereby achieve a digital hearing aid with improved acoustic feedback reduction, as predicted by Nunley. Thus, this art would have been material to Dr. Levitt's claims to a hearing aid with a programmable delay line filter in the forward path to reduce acoustic feedback (application claims 1, 2, and 15, and issued claim 9 of the '850 patent).

REDACTED

Yet he failed to disclose either the Nunley Article or the 1982 Egolf Article when he provided his description of the so-called relevant prior art.

5

PUBLIC VERSION

**a)    The 1985 Egolf Abstract and 1984 VA Report Were Withheld**

Second, Dr. Egolf and another individual, Kim Weaver, did work in 1984 and 1985 on another method of reducing acoustic feedback, herein called the "mimic and subtract" method.   According to this method, an electrical feedback path is designed to "mimic" the acoustic feedback path of the hearing aid.  This electrical feedback path "subtracts" the acoustic feedback portion from the main hearing aid signal, thereby reducing the effect of that acoustic feedback.  Egolf and Weaver reported use of this method in an abstract entitled, "Electronic Cancellation of Acoustic Feedback to Increase Hearing-Aid Stability," published in the Spring 1985 Supplement of the *Journal of the Acoustical Society of America*, page S105, (the "1985 Egolf Abstract") (Exhibit 10), which was a summary of a talk they were giving on April 12, 1985.  The 1985 Egolf Abstract reports that an "estimator" forms the electrical feedback path.

The Egolf and Weaver work was also disclosed in the "Rehabilitation R&D Progress Reports - 1984," published by the Veterans Administration (the "1984 VA Report") (cover page, pp. i-xi, and 163-164, Exhibit 11).  In view of the Nunley Article, it was obvious that this "estimator" of the 1985 Egolf Abstract or the 1984 VA Report could take the form of a programmable delay line filter.  Thus, this art is material to the claims of Dr. Levitt relating to a method of reducing acoustic feedback in a hearing aid with the programmable delay line filter used in the feedback path (including application claims 19, 20, and 22, and issued claims 13, 14, 16 and 19 of the '850 patent).

REDACTED

This claim is not credible, not only in view of Dr. Levitt's general practice of keeping up on the work being done in the field, but also because of contemporaneous

6

PUBLIC VERSION

written evidence found in his possession and his review work for the VA. In particular, at the critical time of publication,

REDACTED

The 1985 Egolf Abstract surely was of interest to him because it reported on work solving the very problem he was addressing, cancellation of acoustic feedback.

Moreover, in late August 2007, Defendants discovered in Dr. Levitt's garage a copy of a private, typed version of the 1985 Egolf Abstract from April 1985 that was sent only to the *Acoustic Society of America*. This typed version (Exhibit 12) was to be used by the *Society* to access the merits of the Egolf and Weaver April 1985 talk to decide if approval for the talk would be given. The public version of this abstract (Exhibit 10) is noticeably different than the typed version found in Dr. Levitt's garage. Dr. Levitt has no meaningful explanation for how he got that typed copy. This version was never distributed to the public, and was only used for a short period of time within the *Society* prior to the April 1985 talk. Accordingly, Dr. Levitt had to have received this typed version at that time.

The 1984 VA Report was also found in the Levitt garage,     REDACTED

REDACTED                                    , not contemporaneous with its September 1985 distribution. The 1984 VA Report, however, announces at page iii that it is intended to be mailed to "all professionals in the rehabilitation field who are . . . actively involved in research." (Exhibit 11, at iii.) Certainly Dr. Levitt qualified, as not only was he actively involved in such research at this time,     REDACTED

7

PUBLIC VERSION

REDACTED

Dr. Larson, who worked for the VA during this time period, confirms that the 1984 VA Report was widely circulated. (Exhibit 20, Larson Dep. at 193:10-194:22, Aug. 30, 2007.) It is inconceivable that he was not contemporaneously aware of the 1984 VA Report which summaries the progress of such VA research.

The 1985 Egolf Abstract and the 1984 VA Report address the issue of acoustic feedback.

REDACTED

REDACTED

8

PUBLIC VERSION

REDACTED

Neither the 1985 Egolf Abstract nor the 1984 VA Report were cited to the USPTO.

### (1)    The Zeta Noise Blocker and Stein Article Were Withheld

Third, in the late 1970s and into the 1980s, Dr. Graupe and his company, Intellitech, developed and were marketing a device for changing the characteristics of a hearing aid as the characteristics of the sound being heard changes. The Graupe device was called the "Zeta Noise Blocker." The Zeta Noise Blocker was described in an article by Laszlo K. Stein et al., entitled "Listener-Assessed Intelligibility of a Hearing Aid Self-Adaptive Noise Filter," published in *Ear and Hearing*, Vol. 5, No. 4 (1984) (the "Stein Article," Exhibit 14), as well as in various U.S. patents to Dr. Daniel Graupe, all prior to the alleged invention by Dr. Levitt and his coinventors. Dr. Levitt was aware of the Zeta Noise Blocker and related documentation, such as the Stein Article, prior to and during the pendency of the '850 patent application, yet never brought this information to the attention of the USPTO.

The Stein Article describes a study conducted into improvements in speech intelligibility using a hearing aid with the Zeta Noise Blocker. The Stein Article describes that the hearing aid used a "Graupe-Causey Self-Adaptive Noise Filter," cites the Graupe '721 patent as describing the filter, and goes on to describe the filter as differentiating between speech and noise, and automatically adapting and adjusting itself to a continually changing noise environment. (Stein Article, Exhibit 14 at ETG002592.)

REDACTED

9

PUBLIC VERSION

REDACTED

REDACTED

Thus, similarity between the claimed Levitt Noise Blocker invention of application claims 8-11 and issued claim 5 of the '850 patent and the Intellitech Zeta Noise Blocker is not mere coincidence. Yet, Dr. Levitt made no attempt to tell the USPTO about the Zeta Noise Blocker when seeking his patent on the same concept.

## 2.    The Discovery That Revealed the Inequitable Conduct

Defendants from the outset diligently pursued discovery of the prior art, and the inventors' knowledge and use of that prior art, in the making of their claimed invention.  On February 1, 2007, a subpoena was served on Dr. Levitt,

REDACTED

This subpoena sought, among other things, all documents relating to the conception and reduction to practice of the invention, and all documents relating to the prior art.  As Defendants later would learn, Dr. Levitt has

10

PUBLIC VERSION

maintained all these years in the garage of his home what amounts to a personal archival library of work on hearing aids and audiology from at least the early 1970s that he had learned about while doing his work and has chosen to save. That prior art archive, however, was not produced to the Defendants before the deposition that Defendants took of Dr. Levitt, as the ETG Rule 30(b)(6) designee on February 27 and 28, 2007. ETG produced that art only *after* this deposition. In fact, considerable prior art was produced to the Defendants only when the Defendants themselves conducted an inspection of Dr. Levitt's garage files on August 20, 2007.

REDACTED

REDACTED

REDACTED

## II.     ARGUMENT

### A.     The Applicable Standards Under Rules 16(b) and 15(a)

Since this request for leave comes after the deadline to amend pleadings, Defendants must, and do, show that its request meets the "good cause" standard of Rule 16(b) for modifying the scheduling order and the standards for granting leave to amend under Rule 15(a). *See Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 490 (D. Del. 2003).

Good cause exists under Rule 16(b) where the party acts diligently. *IGT v. Alliance Gaming Corp.*, No. 2:04-cv-1676-RCJ-RJJ, 2007 WL 2429147, at *6 (D. Nev. Aug. 20, 2007) ("The 'good cause' standard 'primarily considers the diligence of the party seeking the amendment.'"); *see also E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000). Here, as shown above and in section II(B), *infra*, the Defendants diligently pursued discovery on the inequitable conduct issues during fact discovery and before the deadline to amend pleadings. But, as a result of ETG's and Dr. Levitt's efforts to deny Defendants relevant discovery on the inequitable conduct issue until late August, Defendants were not able to obtain the necessary factual information sufficient to confirm their beliefs and plead the acts of inequitable conduct with the particularity required under Rule 9(b). This motion comes within two and half months after the Defendants confirmed their inequitable conduct beliefs via depositions held on August 23 and October 24, 2007. Other courts have found similar actions by an accused infringer showing good cause for granting leave to amend after the deadline to amend pleadings has expired. *E.g., Trimble Navigation Ltd. v. RHS, Inc.*, No. C 03-1604 PJH, 2007 WL 2727164, at

12

PUBLIC VERSION

*10 (N.D. Cal. Sept. 17, 2007) (good cause existed where accused infringer filed motion five months after obtaining information showing the basis for the inequitable conduct allegations); *IGT*, 2007 WL 2429147, at *6 (good cause for amendment sought seventeen months after the scheduling order deadline, where the allegations of inequitable conduct were based on newly discovered evidence); *Ciena Corp. v. Nortel Networks Corp.*, 233 F.R.D. 493, 495 (E.D. Tex. 2006) (good cause existed to permit amendment adding inequitable conduct where accused infringer diligently pursued discovery); *Semiconductor Energy Lab. Co. v. Chi Mei Optoelectronics Corp.*, No. C 04-04675 MHP, 2006 WL 3826726, at *3 (N.D. Cal. Dec. 27, 2006) (good cause existed for amendment sought after the close of fact discovery, where testimonial evidence to support the new defense did not become available to the accused infringers until the end of the fact discovery period, even though some documentary evidence to support the defenses may have been previously available).

Under Rule 15(a), the decision to grant or deny leave to amend is within the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Although within the district court's discretion, the Supreme Court has held: "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Id.*; *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006); *Micron Tech., Inc. v. Rambus Inc.*, 409 F. Supp. 2d 552, 558 (D. Del. 2006); *Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp. 2d 726, 732 (D. Del. 2002). Although the court has discretion to grant or deny leave to amend, leave should be freely granted in accordance with Rule 15(a) unless there is an apparent or declared reason for denial. *Trueposition, Inc. v. Allen Telecom, Inc.*, No. C.A. No. 01-823 GMS, 2002 WL 1558531, at *1 (D. Del. July 16, 2002).

13

Leave to amend must generally be granted unless equitable considerations render it otherwise unjust. *Foman*, 371 U.S. at 182; *Arthur*, 434 F.3d at 204. Absent a clear reason—such as undue delay, bad faith, or dilatory motive on the movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the nonmoving party, or futility of the amendment—the leave sought should be freely given. *Id.* "[T]he Third Circuit Court of Appeals has found that absent a clear reason such as delay, bad faith, or prejudice, it is an abuse of discretion for a district court to deny leave to amend." *Agere Sys.*, 190 F. Supp. 2d at 732; *see also Biovail Labs. v. Andrx Pharms.*, C.A. Nos. 05-586, 05-730, 06-620, (D. Del. May 4, 2007) (Exhibit 19). None of these factors is present here.

Leave to amend to assert inequitable conduct is routinely granted. There is a strong interest in protecting the public from patents procured by fraud or other inequitable conduct. As Judge Wright stated in *General Tire & Rubber Co. v. Watson-Bowman Associates, Inc.*:

> The public interest in bringing to light unclean hands in connection with a patent proceeding is such that evidence related to the issue is admissible and the issue proper for consideration by the Court even without an allegation of unclean hands in the pleading.

193 U.S.P.Q. 97, 98 (D. Del. 1976) (granting a motion to amend for inequitable conduct on the "the eve of the pre-trial conference"); *see also Enzo Life Scis.*, 270 F. Supp. 2d at 489 (granting leave to amend complaint to include new allegations of inequitable conduct); *Symbol Techs., Inc. v. Proxim Inc.*, C.A. No. 01-801-SLR, 2003 U.S. Dist. LEXIS 6686, at *5-7 (D. Del. Apr. 17, 2003) (same).

Furthermore, inequitable conduct is frequently asserted after the facts have been fully developed in discovery revealing the patentee's improper conduct. *Go Med. Indus. Pty,*

14

*Ltd. v. C.R. Bard, Inc.,* 1995 U.S. Dist. LEXIS 22248 (N.D. Ga. July 7, 1995). Indeed, given that fraud must be pled with particularity, pleading of inequitable conduct should most often be done only after much or all of the discovery of the patentee has taken place. *See id.* at *15-16; *see also Resqnet.com, Inc. v. Lansa, Inc.,* 382 F. Supp. 2d 424, 450 (S.D.N.Y. Jan. 13, 2005) (granting leave to assert inequitable conduct and stating that "[l]earning of a factual basis for a defense after the pleading stage and during discovery provides a 'perfectly permissible reason' for failing to assert the defense at the pleading stage."). As this Court has noted, denial of a motion to amend to plead inequitable conduct after discovery may lead to "knee jerk, thoughtless, and poorly grounded assertions of inequitable conduct by defendants in patent infringement actions." *Biovail Labs.,* C.A. Nos. 05-586, 05-730 & 06-620, at 3 (Exhibit 19).

**B.      The Filing of the Amended Answer Is Fully Justified**

> **1.      There Has Been No Undue Delay, Bad Faith, or Dilatory Motive by Defendants; Any Delay Was Caused by ETG**

Pleading inequitable conduct is a serious allegation, and a defendant should therefore assert that defense only when the elements of the claim have been developed and firmly established in discovery. The allegations of inequitable conduct, as detailed above, were developed during the course of fact discovery and were established from documents produced by ETG and Dr. Levitt, and by Dr. Levitt's deposition testimony. Although certain allegations of inequitable conduct were developed before the end of discovery, the full picture of the important prior art Dr. Levitt withheld from the USPTO was not developed until late in discovery, after the Defendants finally had access in mid-August to the file cabinets of prior art and contemporaneous documents in Dr. Levitt's garage. (They had been seeking these documents long before.) And prudence dictated that Defendants depose Dr. Levitt further on the evidence

15

of his knowledge of the prior art at the time of the prosecution of the '850 patent, an opportunity they did not have until his deposition on August 23, 2007. Dr. Levitt's recent deposition on October 24, 2007, has further confirmed evidence of inequitable conduct and ETG's purposeful efforts to deny Defendants discovery materials relevant to the inequitable conduct issues. The addition of allegations of inequitable conduct based on prior art that was produced late at the end of discovery cannot be viewed as dilatory, undue delay, or the product of bad faith. *Symbol Techs.,* 2003 U.S. Dist. LEXIS 6686, at *5-7 (granting motion to amend adding allegations of inequitable conduct based on facts uncovered during discovery); *Ciena Corp.*, 233 F.R.D. at 495.

Additionally, even for the documents that the Defendants were aware of, they still needed to depose Dr. Levitt to see if there was an explanation for the nondisclosure to determine if there were grounds for a motion to amend based on inequitable conduct. The first opportunity the Defendants were given to question the inventor on much of the important prior art and contemporaneous documents was on August 23, 2007, near the end of fact discovery. Moreover, as detailed in the proposed Amended Answer and Counterclaim,        REDACTED

                                        REDACTED                        *Semiconductor Energy Lab.*, 2006 WL 3826726, at *3 (finding no undue delay in not seeking leave until accused infringer had opportunity to depose key witnesses on the issue and noting that "[w]ith respect to inequitable conduct in particular, defendants would not have been able to plead inequitable conduct with sufficient specificity prior to obtaining witness testimony and without falling afoul of Federal Rule of Civil Procedure 11."); *Enzo Life Scis.*, 270 F. Supp. 2d at 488-89 (finding good cause to grant motion to amend for inequitable conduct based on allegations confirmed after inventor depositions); *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 989 F. Supp. 1237,

16

PUBLIC VERSION

1247 (N.D. Cal. 1997) (same); *see also Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*, 295 F. Supp. 2d 430, 433 (D. Del. 2003) (Rule 16(b)'s good cause standard met where plaintiff did not have the basis for its negligence claim until deposition held after the scheduling order deadline).

##### 2.     ETG Will Not Be Prejudiced by the Demant Defendants' Amendment

Permitting the amendment will not prejudice ETG, unduly or otherwise. ETG has been on notice that the Defendants were asserting inequitable conduct as a defense based on the inventors' withholding of at least the Zeta Noise Blocker prior art from the USPTO from Defendant Widex A/S's supplemental interrogatory responses served on August 9, 2007. And it was not until the August 23, 2007 deposition of Dr. Levitt that Defendants learned about the typed form of the 1985 Egolf Abstract or the 1984 VA Report that was found a few days earlier in Dr. Levitt's garage. ETG has only itself to blame for not having produced these material pieces of evidence sooner in the litigation. As to the contentions developed after that time, those are detailed in the pleading, which was provided to ETG on October 19, 2007, in advance of the deposition of Dr. Levitt on October 24, 2007.

Accordingly, ETG had the opportunity to place on the record any testimony of Dr. Levitt it cared to. Moreover, ETG is working with Dr. Levitt,                    REDACTED

         REDACTED                    , and ETG's counsel also represents him and has full access to question him and develop his testimony for trial. But if ETG were somehow prejudiced, it is a consequence of its own making, as ETG could have, and should have, produced the relevant documents at the start, and not at the end, of discovery.

17

### 3.     No Other Reasons Justify Denying Leave to Amend

Defendants' proposed amendments set forth the specifics of its inequitable conduct allegations with sufficient detail to comply with the heightened pleading requirement of Rule 9(b).  The facts pled will survive a motion to dismiss.  *See Medpointe Healthcare Inc. v. Apotex Inc.*, No. Civ. 06-164 SLR, 2007 WL 211205, at *1 (D. Del. Jan. 26, 2007) (denying patentee's motion to strike accused infringer's affirmative defenses of inequitable conduct since accused infringer had adequately pled the specifics of the alleged acts of inequitable conduct).  Accordingly, the amendment to add allegations of inequitable conduct is not futile.  *See Enzo Life Scis.*, 270 F. Supp. 2d at 489 ("An amendment is deemed futile if it could not withstand a motion to dismiss.").

An applicant for a patent has a duty to prosecute an application with candor, good faith, and honesty.  *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995).  The Federal Circuit has explained that the "[strong] public interest in enforcing adherence to the duty of candor in the PTO [can] ... be paramount over the proprieties of pleading practice." *Thompson-Hayward Chem. Co. v. Rohm & Haas Co.*, 745 F.2d 27, 33 (Fed. Cir. 1984) (*sua sponte* applying finding of unenforceability for inequitable conduct of a patent made in first case to a second case, even though accused infringer in the second case never raised that defense in its pleadings).  This strong public interest further justifies finding good cause to grant the Defendants leave to amend their Answer to assert the charges of inequitable conduct.

## III.  CONCLUSION

For the reasons above, the Demant and Widex Defendants' Motion for Leave to

File an Amended Answer and Counterclaim should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr.*
_____
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
302.658.9200

OF COUNSEL:

John M. Romary
C. Gregory Gramenopoulos
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Ave., N.W.
Washington, DC  20001-4413
202.408.4000

*Attorneys for William Demant Holding A/S,
WDH Inc., Oticon A/S, Oticon, Inc.,
Bernafon AG, and Bernafon LLC*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Donald E. Reid*
_____
Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
302.658.9200

OF COUNSEL:

SUGHRUE MION, PLLC
David J. Cushing
William H. Mandir
Carl J. Pellegrini
2100 Pennsylvania Ave., N.W.
Suite 800
Washington, DC  20037
202.293.7060

*Attorneys for Widex A/S and Widex Hearing
Aid Co. Inc.*

Dated:  November 6, 2007

19

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 6, 2007, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that true and correct copies of the foregoing were caused to be served via electronic mail on November 6, 2007 upon the following parties:

| | |
|---|---|
| REPRESENTING ENERGY TRANSPORTATION GROUP, INC. | Edmond D. Johnson<br>PEPPER HAMILTON LLP<br>**johnsone@pepperlaw.com** |
| | Thomas H. Kovach<br>PEPPER HAMILTON LLP<br>**kovacht@pepperlaw.com** |
| | Brian M. Buroker<br>HUNTON & WILLIAMS LLP<br>**etg@hunton.com** |
| REPRESENTING PHONAK AG, PHONAK, LLC, UNITRON HEARING LTD., AND UNITRON HEARING, INC. | Thomas C. Grimm<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>**tgrimm@mnat.com** |
| | James R. Sobieraj<br>David H. Bluestone<br>BRINKS HOFER GILSON & LIONE<br>**phonaketg@brinkshofer.com** |
| REPRESENTING SONIC INNOVATIONS, INC. | Richard L. Horwitz<br>David E. Moore<br>POTTER ANDERSON & CORROON LLP<br>**sonicnet@potteranderson.com** |
| | Donald Degnan<br>HOLLAND AND HART LLP<br>**ddegnan@hollandhart.com** |
| | Bryan K. Hanks<br>HOLLAND AND HART LLP<br>**bkhanks@hollandhart.com** |

| | |
|---|---|
| REPRESENTING STARKEY LABORATORIES, INC. | Mary B. Matterer<br>MORRIS JAMES LLP<br>**mmatterer@morrisjames.com** |
| | Amy A. Quinlan<br>MORRIS JAMES LLP<br>**aquinlan@morrisjames.com** |
| | Steven L. Reitenour<br>BOWMAN AND BROOKE LLP<br>**steve.reitenour@bowmanandbrooke.com** |
| | Richard G. Morgan<br>BOWMAN AND BROOKE LLP<br>**richard.morgan@bowmanandbrooke.com** |
| REPRESENTING WIDEX A/S AND WIDEX HEARING AID CO. INC. | Donald E. Reid<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>**dreid@mnat.com** |
| | William H. Mandir<br>SUGHRUE MION PLLC<br>**wmandir@sughrue.com** |
| | David J. Cushing<br>SUGHRUE MION PLLC<br>**dcushing@sughrue.com** |
| | Carl J. Pellegrini<br>SUGHRUE MION PLLC<br>**cpellegrini@sughrue.com** |
| | Brian K. Shelton<br>SUGHRUE MION PLLC<br>**bshelton@sughrue.com** |
| REPRESENTING WILLIAM DEMANT HOLDING A/S, WDH, INC., OTICON A/S, OTICON INC., BERNAFON AG, AND BERNAFON, LLC | Mary B. Graham<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>**mgraham@mnat.com;**<br>**mbgeservice@mnat.com** |
| | John M. Romary<br>FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER<br>**john.romary@finnegan.com** |
| | C. Gregory Gramenopoulos<br>FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER<br>**c.gregory.gramenopoulos@finnegan.com** |

2

The undersigned also hereby certifies that on November 6, 2007, true and correct copies of the foregoing were caused to be served by hand upon the following Delaware counsel:

Edmond D. Johnson
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, DE  19899-1709


                              /s/ James W. Parrett
                              _____
                              James W. Parrett (#4292)

1307254