IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ENERGY TRANSPORTATION GROUP, INC.,   )
                                       )
        Plaintiff,              )        C.A. No. 05-422 (GMS)
                                         )
      v.                      )        PUBLIC VERSION
                                         )
SONIC INNOVATIONS, INC., et al.,      )
                                       )
        Defendants.           )

## DEMANT AND WIDEX DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO AMEND ANSWER AND COUNTERCLAIM

                            MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                            Mary B. Graham (#2256)
                            James W. Parrett, Jr. (#4292)
                            1201 North Market Street
OF COUNSEL:                   P.O. Box 1347
                            Wilmington, DE  19899
John M. Romary                302.658.9200
C. Gregory Gramenopoulos
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP        *Attorneys for William Demant Holding A/S,*
901 New York Ave., N.W.         *WDH Inc., Oticon A/S, Oticon, Inc.,*
Washington, DC  20001-4413      *Bernafon AG, and Bernafon LLC*
202.408.4000


                            MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                            Donald E. Reid (#1058)
                            Jason A. Cincilla (#4232)
OF COUNSEL:                   1201 North Market Street
                            P.O. Box 1347
SUGHRUE MION, PLLC           Wilmington, DE  19899
David J. Cushing              302.658.9200
William H. Mandir
Carl J. Pellegrini             *Attorneys for Widex A/S and Widex Hearing*
Brian K. Shelton             *Aid Co. Inc.*
2100 Pennsylvania Ave., N.W.
Suite 800
Washington, DC  20037
202.293.7060

Confidential Version Filed: December 3, 2007
Public Version Filed: December 21, 2007

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ...................................................................................................... 1

COUNTER STATEMENT OF FACTS ...................................................................... 3

    A.    ETG's And Dr. Levitt's Frustration Of Defendants' Discovery. ........ 4

        1.    The February Subpoena Of Dr. Levitt's Prior Art And The Failure To Produce Dr. Levitt's Archive Of Original Documents In His Garage. ............. 4

        2.    Dr. Levitt's Admissions At The End Of Discovery. ............. 8

    B.    Defendants' Timely Disclosure Of Their Claim Of Inequitable Conduct. ........ 9

        1.    The Schedule In The Case And Defendants' Disclosure Of The Prior Art. ............. 9

        2.    The Notice Of Defendants' Inequitable Conduct Claim Given To ETG. ............. 10

        3.    ETG's Discovery On The Inequitable Conduct Claim. ............. 12

ARGUMENT ............................................................................................................. 13

I.    There Has Been No Undue Delay, Bad Faith, Or Dilatory Motive (By Defendants). ............. 13

II.    ETG Suffered No Prejudice (Caused By Defendants), Because It Had Ample Notice Of Defendants' Inequitable Conduct Claim And ETG's Validity Expert Analyzed The Prior Art And Its Materiality. ............. 15

III.    Defendants Have Alleged Sufficient Facts To Support An Inequitable Conduct Claim And Amendment Would Not Be Futile. ............. 17

CONCLUSION ......................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

CASES

*Agere Sys. Guardian Corp. v. Proxim, Inc.*,
190 F. Supp. 2d 726 (D. Del. 2002).................................................................................. 13

*Enzo Life Scis., Inc. v. Digen Corp.*,
270 F. Supp. 2d 484 (D. Del. 2003).................................................................................. 17

*IGT v. Alliance Gaming Corp.*,
No. 04-1676-RCJ-RJJ, 2007 WL 2429147 (D. Nev. Aug. 20, 2007).................................... 15

*Medpointe Healthcare Inc. v. Apotex, Inc.*,
No. 06-164-SLR, 2007 WL 211205 (D. Del. Jan. 26, 2007)................................................. 17

*Semiconductor Energy Lab. Co. Ltd. v. Chi Mei Optoelectronics Corp.*,
No. 04-04675-MHP, 2006 WL 3826726 (N.D. Cal. Dec. 27, 2006)..................................... 14

## <u>INTRODUCTION</u>

ETG's opposition would portray the Defendants as aware of the relevant facts underlying their claim of inequitable conduct by Dr. Levitt, and as failing timely to pursue discovery and give notice of their claim, to the undue prejudice of ETG. That portrayal is false. ETG and Dr. Levitt delayed and frustrated discovery of Dr. Levitt and what he knew about the prior art at the time of his own work. They dribbled out discovery from Dr. Levitt and delayed until the very end of fact discovery key evidence that made the full picture come together of Dr. Levitt's inequitable conduct and that revealed how far reaching it was. It was only through Defendants' persistence that they ever learned of that evidence in Dr. Levitt's possession and, indeed, they only learned of the 1984 VA Report with its publication of the Egolf and Larson work when Dr. Levitt showed it to defendants REDACTED  The truth is that the Defendants were diligent, while ETG's and Dr. Levitt's frustration of discovery almost succeeded in keeping the inequitable conduct from ever being known. It is Defendants, not ETG, who have suffered prejudice, as Defendants' ability fully to develop during fact discovery the totality of the facts underlying the inequitable conduct was impaired.

What Defendants now know, only because of their persistence, is that Dr. Levitt, while making his "invention" and securing his patent, was intimately aware of prior art he did not disclose to the patent office addressing and solving the very issues of digital hearing aids that he was attempting to solve: (1) the Nunley Article and 1982 Egolf Article; (2) the 1985 Egolf Abstract and 1984 VA Report; and (3) the Zeta Noise Blocker and Stein Article. The materiality of this art and its closeness to Dr. Levitt's alleged invention is manifest. His intent to deceive in withholding the art from the patent office is demonstrated by the evidence of REDACTED

REDACTED

nd the appreciation of its significance he surely had

REDACTED        [1] Thus, this amendment would not be futile, as ETG argues.

Defendants informed ETG in discovery, as these facts were developed, of their claim of inequitable conduct and the basis for that claim. ETG was well aware of the claim and had as much opportunity to develop any discovery it might have needed as was possible given its late production of so much of the evidence. Indeed, ETG's own technical expert has proceeded to opine at length on the prior art asserted in the claim (Ex. 36) and explicitly considered its materiality to inequitable conduct (*id.* at 155-157). Thus, ETG's assertion that it needs further expert discovery (D.I. 453 at 24) should not be accepted. And ETG had full opportunity to elicit testimony of Dr. Levitt on the record. ETG was well aware by the time of Dr. Levitt's personal depositions that Defendants were asserting an inequitable conduct claim. ETG chose to conclude the deposition of Dr. Levitt without pursuing what he might say on the issue of inequitable conduct (Ex. 34 at 360-62). Given that Dr. Levitt is working with ETG, and       REDACTED

REDACTED                        ETG's

suggestion (D.I. 453 at 26) that it has been prejudiced by an inability to get discovery of Dr. Levitt rings hollow.

---

[1]    Cited Exhibits 1-20 are exhibits to Defendants' Opening Brief (D.I. 435) and cited Exhibits 21-36 are exhibits to this brief.

## COUNTER STATEMENT OF FACTS[2]

ETG's statement of facts is replete with errors and mischaracterizes what occurred in discovery. ETG colors that with reckless charges that Defendants were not truthful with the Court in presenting the facts relating to their diligence, saying that Defendants "attempt to mislead [the Court]" (D.I. 453 at 14), "demonstrate[] a lack of candor with the Court" and "demonstrate[] a lack of candor" (*id.* at 15). ETG's basic charge is that the Defendants were actually long aware (or had "constructive knowledge") of all the prior art (*id.* at 13-14), but "attempt to hide that fact" from the Court (*id.* at 13), and that they were responsible for the delay in full discovery from Dr. Levitt, including from Dr. Levitt's garage (*id.* at 14, 16-17). As to its own conduct, ETG implies that it was diligent in producing Dr. Levitt's documents, and in particular the key documents relating to the prior art which Defendants found in his garage on August 20 (*id.* at 7).

Defendants' counter statement of facts corrects ETG's mischaracterizations and reckless charges. The actual facts show that Defendants were diligent, but ETG failed timely to produce documents called for by subpoena of Dr. Levitt, and almost prevented Defendants from ever finding the evidence in Dr. Levitt's garage.

---

2    ETG asserts that there is a "dearth of supporting references to appendices or the record" to back up Defendants' allegations (D.I. 453 at 31, n.60). The futility of a motion to amend a pleading, however, is judged not by a summary judgment standard requiring that allegations be supported by admissible evidence, but rather by the standard of whether amended pleading could withstand a motion to dismiss (*see* p. 16, *infra.*). But in fact, every one of defendants' allegations is well supported by the evidence that Defendants have adduced in this case.

**A.      ETG's And Dr. Levitt's Frustration Of Defendants' Discovery.**

    **1.      The February Subpoena Of Dr. Levitt's Prior Art And The Failure To Produce Dr. Levitt's Archive Of Original Documents In His Garage.**

On February 1, 2007, Defendants served a subpoena on Dr. Levitt, seeking, among other things, all documents relating to the prior art (Ex. 22 at B-3, "[a]ll documents referring or relating to prior art concerning the patents in suit."). ETG and its counsel took charge of the production of Dr. Levitt's documents (*see* Ex. 23 at A1-A2; Ex. 24 at 585-86) and produced roughly 2300 pages of his documents on February 22, shortly before the scheduled 30(b)(6) deposition of ETG on February 27 and 28 at which Dr. Levitt testified as ETG's designee (Ex. 24). ETG produced another 161 pages of his documents the first day of his deposition. Unknown to Defendants, however, Dr. Levitt still had tens of thousands of responsive pages of documents he and ETG had not produced.

Well after the deposition, ETG produced 43,743 additional pages of his documents at the end of March and another 18,594 pages in April (Ex. 23 at A4, A6 and A8) Among the documents produced in April was certain prior art from Dr. Levitt's files. But that prior art did not include Dr. Levitt's copies of the highly material prior art that was produced from his files only late in August.

ETG represents that "Defendants [were] offered access to the documents at Dr. Levitt's home as early as June 18, 2007 [but] declined to inspect the documents until August 20" (D.I. 453 at 14). This representation, which would place the blame on Defendants, is wrong. The true facts are as follows. On May 8, 2007, concerned about the dribbling out of production of Dr. Levitt's documents, Defendants asked to inspect Dr. Levitt's original documents (Ex. 26 at C1). ETG's counsel responded on May 15, stating that the inspection could take place at Dr. Levitt's home "where most of the documents were collected" (Ex. 26 at

C3).  The Defendants and ETG corresponded thereafter in May and June regarding scheduling the inspection date, including the June 18, 2007 letter cited by ETG in its answering brief.  A date for inspecting Dr. Levitt's documents at his home was set for July 13, 2007 (Ex. 26 at C7).

Abruptly, on July 6, ETG informed Defendants in an email that it was changing the location of the inspection to Hunton & Williams' Los Angeles office (Ex. 26 at C9).  The Defendants objected to the change of location and offered to reschedule (Ex. 26 at C10).  ETG insisted on the inspection occurring in its Los Angeles office, and the Defendants therefore went forward with that inspection on July 19, 2007 (Ex. 26 at C11).  ETG represented to the Defendants that the documents they would inspect in Los Angeles were the originals of documents already produced in response to the February subpoena (Ex. 26 at C13).

During that July 19 inspection, however, the Defendants discovered important documents that had not previously been produced, such as a document showing that, contrary to his testimony in February, Dr. Levitt in fact was in possession of material relating to his involvement in reviewing work for the VA in 1984-1985 (Ex. 26 at C16).  On July 20, 2007, Defendants served a follow-up document subpoena on Dr. Levitt seeking certain specific categories of documents (D.I. 336, Ex. 27).[3]

ETG produced 2,830 pages of documents on August 7, but copies of various originals observed during the inspection on July 19 were *still* not produced (Ex. 26 at C16).  On August 13, 2007, Defendants again requested that those documents be produced (Ex. 26 at C16).

---

[3]    At the discovery teleconference in September 2007 at which the Court granted Defendants' request for an additional day of deposition with Dr. Levitt, ETG suggested that the documents produced in August relating to the prior art were not called for by the February subpoena and were only called for by the July 20 subpoena (Ex. 31 at 11).  ETG's brief also seems subtly to try to make the same suggestion (D.I. 453 at 7).  That suggestion is facially wrong, as the February subpoena sought all "documents referring or relating to prior art to the patents in suit," as noted above.

ETG responded, "[w]e suggest, instead, that we arrange another inspection at which you review Dr. Levitt's original documents at his house and flag any that you believe have not been produced and should be produced" (Ex. 26 at C19).

Defendants were finally permitted to inspect Dr. Levitt's originals from his garage archive on August 20 and there stumbled upon documents relating to the prior art that Dr. Levitt had not previously produced, including: his copy of a private version of the 1985 Egolf Abstract (also called at times the 1985 JASA Abstract or, herein, the 1985 Egolf (JASA) Abstract), his published copy of the 1984 VA Report, a copy of the Nunley Article,[4] a copy of the Graupe '721 patent (describing the Zeta Noise Blocker) with a handwritten note dated 10/4/84 that makes reference to the "Stein et al paper" (Ex. 29 at D1-D9), and a copy of a 1984 University of Wyoming College of Engineering Newsletter with an article entitled "First Wearable Digital Hearing Aid Developed at UW"  (Ex. 34A) that describes the digital hearing aid discussed in the Nunley Article.  These documents were highly significant.  Not only did they bring to light the publication of the Egolf and Weaver work in the 1984 VA Report (see D.I. 435 at 6), they provided important documentary evidence of Dr. Levitt's contemporaneous first-hand knowledge of the prior art.

ETG claims, without citation, that the Defendants' statements in their opening brief "demonstrate a lack of candor with the Court" because purportedly defendants suggested "that they first became aware of this art when it was produced from Dr. Levitt's garage," referring to the Nunley Article, the Stein Article, and the Zeta Noise Blocker (D.I. 453 at 15). ETG misrepresents what Defendants argued.  The Defendants did not argue that they were

---

[4]     It is noteworthy that the copy of the Nunley Article discovered in Dr. Levitt's garage by Defendants included the handwritten note:  "Dear Dr. Levitt please find the article I mentioned to you.  Hope you will find it useful" (Ex. 8 at 1).

unaware of that art itself before it was produced from Dr. Levitt's garage and Defendants did not state that this art was first produced in the litigation during the inspection of Dr. Levitt's home. What Defendants have argued, correctly, is that they did not have Dr. Levitt's copies of various prior art before the garage inspection (D.I. 435 at 11, 15).

ETG asserts that "Defendants cannot reasonably mean to suggest that Dr. Egolf, **their own paid consultant,** was unaware of **his own work**" (D.I. 453 at 14) (emphasis in original). There is no such assertion. What Defendants do assert is that Dr. Egolf and the Defendants were unaware that Dr. Levitt had knowledge of a copy of a private, typed version of the 1985 Egolf (JASA) Abstract and that Dr. Levitt had knowledge of the publication of the Egolf and Larson work. Dr. Egolf was aware that he had prepared a typed version of that work and had sent a copy to Dr. Larson as one of many progress reports owed to the VA (DEM517756-758). But he and the Defendants had no idea that this work had been widely published by the VA (in September 1985 in the report). But Dr. Levitt had that knowledge.[5]

After the August 24, 2007 Levitt deposition, Defendants sought an additional day of deposition to, among other things, further explore Dr. Levitt's knowledge of the 1984 VA Report and his knowledge of the additional prior art found just a few days earlier in his garage. After hearing opposition from ETG, much of it based on the same charge levied here that Defendants were not diligent, the Court granted that extra day (Ex. 31 at 18-23). That additional day exposed the true scope of the inequitable conduct by Dr. Levitt that is the subject of this Motion.

---

[5]   Obviously, had Defendants known of the published 1984 VA Report with its publication of the Egolf and Larson work, they would have included this critical prior art in their earlier invalidity assertions. Defendants had no motive to suppress this information. The typed form Dr. Egolf had was part of the collective "Weaver Work" asserted against the patents in suit.

Defendants also sought to depose certain third-party witnesses to authenticate the 1984 VA Report, which ETG opposed on the grounds that the Defendants did not have good cause to modify the scheduling order (Ex. 31 at 19-22).  ETG argued then, as it does now, that because the Defendants had retained Dr. Egolf as a consultant, the Defendants had not been diligent in finding this prior art (*id*. at 22).  The Court allowed the Defendants to take the depositions and held that Defendants' counsel had "acted with reasonable diligence" (*id*. at 23).

### 2.    Dr. Levitt's Admissions At The End Of Discovery.

As part of its futility argument, ETG argues that, "After questioning Dr. Levitt for four days, Defendants are unable to show even that the inventors were aware [at the relevant time] of some of the alleged prior art on which they rely" (D.I. 453 at 29).

REDACTED

REDACTED

REDACTED

**B.    Defendants' Timely Disclosure Of Their Claim Of Inequitable Conduct.**

    **1.    The Schedule In The Case And Defendants' Disclosure Of The Prior Art.**

        This Court set a schedule for the case on November 30, 2006 and entered the scheduling order on February 20, 2007 (Ex. 21, D.I. 206).  That schedule provided for deadlines of April 2, 2007 to amend the pleadings, of August 1, 2007 for the close of fact discovery (later extended to August 31, and then to November 15 for certain discovery), and November 21, 2007 for the close of expert discovery.  ETG asserts that the Scheduling Order "required Defendants to identify all prior art on which they rely by March 30, 2007" (D.I. 453 at 9), implying that Defendants could not thereafter supplement.  In fact, ETG wanted to place strict and early restrictions on supplementation of the Defendants' identification of prior art, a restriction to which the Defendants would not agree (Ex. 21, D.I. 129 Joint Status Report at 9).  The Court did not enter ETG's proposed restrictions on supplementation (D.I. 206, so ordered Feb. 20, 2007).

### 2.     The Notice Of Defendants' Inequitable Conduct Claim Given To ETG.

Contrary to ETG's assertions, ETG had notice of the Defendants' intention to use as prior art the Stein Article, the 1982 Egolf Article, and the 1985 Egolf (JASA) abstract, as early as March 30, 2007, not on August 9 as ETG asserts (D.I. 453 at 9). Defendant Phonak's Preliminary Invalidity Statement, served on March 30, 2007, identified prior art that "may be applied to invalidate the claims" of the patents in suit (Ex. 25 at B6, B9). That list included the Stein Article and 1982 Egolf Article (*id.* at B9-B11). The 1985 Egolf (JASA) Abstract was identified on March 30, 2007 as prior art in Widex's Prior Art Statement, that was incorporated by reference in the other Defendants' prior art statements (Ex. 25 at B1).[6] ETG itself discussed the 1985 Egolf Abstract in its Validity Statement served on April 27, 2007 (Ex. 25, referred to as OTI8696, at B13-B14).

On August 9, Widex served its Second Supplemental Responses to Interrogatories (which included an interrogatory asking about unenforceability) and set forth a claim of inequitable conduct by Dr. Levitt in failing to provide the Stein Article, the Zeta Noise Blocker, and the Graupe '721 patent which references the Zeta Noise Blocker (Ex. 30 at E1-E33). (At that point, the Defendants did not know about the published 1984 VA Report, Dr. Levitt's knowledge of the report, or his possession of the 1985 Egolf (JASA) Abstract and Nunley Article, and so could not include that material prior art as part of their inequitable conduct claim.) On August 15, 2007, Widex served its third supplement and identified as prior art the

---

6     Widex's prior art statement (which Demant's statement incorporated by reference) identified collectively the "Weaver Prior Art," which included the presentation of Weaver's work at the Acoustical Society of America and any public knowledge or use of that work, "including, for example, OTI 007708-810 and OTI 8696" (Ex. 25 at B2-B3). OTI8696 is the 1985 Egolf Abstract (Ex. 25 at B5).

1982 Egolf Article, the Stein Article, the Zeta Noise Blocker, and the 1985 Egolf (JASA) Abstract (Ex. 30 at E34-E39).

On August 31, Widex served its fourth supplement to include the prior art found in Dr. Levitt's home ten days before and supplement its claim of inequitable conduct based on the new documents and testimony of Dr. Levitt (Ex. 30 at E41-E46). Widex cited as prior art in connection with inequitable conduct the Nunley Article,[7] the 1982 Egolf Article, the 1984 VA Report and the 1985 Egolf Abstract (*id.* at E42-E47). (The Demant defendants served supplemental responses on August 31, 2007 that incorporated by reference claim of inequitable conduct.) Thus, by then, the Defendants had identified as the basis for their inequitable conduct claim all the prior art on which the proposed amended answer relies.

On October 19, 2007, Defendants provided a draft of their proposed amended answer and counterclaims to ETG, and asked ETG to agree to its filing (Ex. 32).[8] After ETG would not agree, Defendants prepared their motion to amend which they filed on November 6, 2007 (D.I. 434).

---

[7]   ETG, in its answering brief, stated that it was "unable to identify any disclosure . . . of the Nunley Article as prior art" before the submission of Defendants' expert, Dr. Soli's expert report on September 17, 2007 (D.I. 453. at 9, n.37). Setting aside that ETG itself had produced the Nunley Article on January 5, 2007, the Nunley Article was cited, as noted, in Widex's August 31, 2007 supplemental responses (Ex. 30 at E41). Its significance to inequitable conduct was then apparent.

[8]   ETG claims that it will be prejudiced if the Defendants' motion is granted because the inequitable conduct allegations from the interrogatory responses "do not match those in Defendants' motion" (D.I. 453 at 215). That argument is without merit. The Defendants' proposed amendment is a detailed elaboration of the inequitable conduct allegations already asserted in Widex's and Demant's interrogatory responses (Ex. 30).

### 3.     ETG's Discovery On The Inequitable Conduct Claim.

ETG asserts that Defendants waited to seek to add their claims until it was "too late for ETG to identify additional experts who can offer relevant opinions as to the alleged inequitable conduct issue" (D.I. 433 at 24).  But Defendants' expert on validity, Dr. Sigfrid Soli, provided his opinion, in his opening expert report on September 17, 2007, that the prior art in question either anticipated or rendered obvious the claims of the patents in suit (Ex. 35).  Dr. Soli also stated that the prior art would have been material to the patent examiner (*id*. at 99-101). ETG's validity expert, Norman Matzen, responded to all of Dr. Soli's opinions in his expert report submitted on October 19, 2007 (Ex. 36).  In his 158-page report, Mr. Matzen opined that none of the prior art anticipated the claims or rendered them obvious, and in addition, that none of the art would have been material to the patent examiner (*id*. at 155-57).

ETG suggests that it was deprived of an opportunity to depose Dr. Levitt (D.I. 453 at 26).  ETG could readily have obtained his testimony.  At the end of Defendants' examination of Dr. Levitt at his October 24, 2007 deposition, in the midst of examination about the inequitable conduct claim, ETG's counsel terminated the deposition (Ex. 34 at 362:3-11).  In short, more than two months after being put on notice of Defendants' inequitable conduct claim and five days after receiving Defendants' proposed amended pleading, ETG declined to allow questioning of Dr. Levitt about the amendment, or to ask its own questions about the alleged inequitable conduct.  This was ETG's own choice, as Defendants had made clear that they were willing to proceed for more time.  Moreover, Dr. Levitt is working with ETG so ETG had ample opportunity to discuss the claims with Dr. Levitt (even before his renewed deposition).

# ARGUMENT

The Defendants have met the standard for amending the pleadings under Rule 15(a).  ETG has not established that any reason to deny leave to amend exists - undue delay, bad faith, dilatory motive, prejudice, or futility.  *See Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp. 2d 726, 732 (D. Del. 2002).  The Defendants have likewise met the standard for amending the scheduling order's date for amendment of pleadings under Rule 16 because they have been diligent.

## I.    There Has Been No Undue Delay, Bad Faith, Or Dilatory Motive (By Defendants).

The basis for ETG's argument that Defendants were not diligent is that, purportedly, Defendants knew (or had "constructive knowledge" of) all the prior art at the outset of the case and should have gotten the documents from Dr. Levitt's garage sooner, and so should have fully developed their inequitable conduct defense early in discovery, including by asking Dr. Levitt in February about all that art (D.I. 453 at 13, 15).

First, ETG's argument fails because there is no basis to attribute to Defendants knowledge of some fact (here the prior art 1984 VA Report) that might have been known to a technical consultant (Dr. Egolf) whom they had retained and ETG cites no authority for this novel proposition.[9]

Second, ETG's argument misses the point that it was Dr. Levitt's possession all these years of copies of the art (and other documents, such as his pre-publication version of the Egolf (JASA) Abstract, which reveal his contemporaneous knowledge) that showed the full

---

[9]                                    REDACTED

- 13 -

picture of his inequitable conduct.  As noted above (p. 6, *supra*), that evidence, available from

Dr. Levitt's files alone, was not produced to Defendants until six months after the subpoena.

ETG's further suggestion that Defendants had the responsibility to use their

limited deposition time in February to run through with Dr. Levitt every piece of prior art that he

might have known about,[10] even when Defendants did not have a documented connection

between the witness and the art which would likely refresh his recollection, would turn the

parties' discovery obligations on their heads.  Dr. Levitt at his first deposition was under a

subpoena to produce his documents, including all documents he had relating to the prior art (Ex.

22 at B-3).  At that time, he was in possession of prior art that had not been produced to

Defendants, but which should have been.  ETG's lawyers represented Dr. Levitt in connection

with the subpoena and took responsibility for producing his documents (Ex. 24 at 584-86).

REDACTED

It is ETG

and Dr. Levitt who failed to live up to their discovery obligations, not Defendants for failing to

be prescient about what Dr. Levitt did or did not know about in 1985.

The addition of allegations of inequitable conduct based on prior art that was

produced late at the end of discovery should not be viewed as dilatory, undue delay, or the

product of bad faith.  *Semiconductor Energy Lab. Co. Ltd. v. Chi Mei Optoelectronics Corp.*, No.

04-04675-MHP, 2006 WL 3826726, at *3 (N.D. Cal. Dec. 27, 2006) (finding no undue delay,

---

[10]  Defendants identified in March 2007 hundreds of references as possible prior art to the
patents in suit (Ex. 25).  It is not reasonable to suggest (D.I. 453 at 16-17) that Defendants
had to ask the witness about all this art, which had not come from Dr. Levitt's files, and
further to suggest that he would necessarily give the same answers to questions about 20-
year-old documents without having his own copies and related documents to refresh his
recollection.  ETG is simply attempting to avoid responsibility for its own failures by placing
the blame on Defendants.

bad faith, or dilatory motive when the facts regarding inequitable conduct came to light late in discovery and allowing amendment to add claim of inequitable conduct).

Contrary to ETG's accusation that Defendants show "disregard for the Scheduling Order" (D.I. 453 at 12), the Defendants have met the good cause requirement of Rule 16(b) for amending the scheduling order which provided for amendments to the pleading by April 1, 2007 (Ex. 21). Diligence by the party seeking the amendment satisfies the good cause requirement of Rule 16. *IGT v. Alliance Gaming Corp.*, No. 04-1676-RCJ-RJJ, 2007 WL 2429147, at *6 (D. Nev. Aug. 20, 2007). In that case, the court permitted the defendant to amend the scheduling order seventeen months after the deadline to assert a claim of inequitable conduct. *Id.* The Court held that the defendant was diligent in pursuing discovery and did not have sufficient evidence to plead inequitable conduct until certain documents were produced after the deadline to amend had passed. *Id.* The same scenario occurred here. The Defendants diligently pursued discovery on the prior art and Dr. Levitt's knowledge, but did not have enough facts to plead inequitable conduct until well after the deadline for amendment had passed. After obtaining sufficient facts, they were diligent in giving notice to ETG and filing their motion.

## II.    ETG Suffered No Prejudice (Caused By Defendants), Because It Had Ample Notice Of Defendants' Inequitable Conduct Claim And ETG's Validity Expert Analyzed The Prior Art And Its Materiality.

ETG claims prejudice resulting from the interjection of "new facts and theories into this action that would require ETG to engage in new preparation, at additional cost of resources and time" (D.I. 453 at 23). ETG will not suffer any prejudice, at least that is not of its own making, if Defendants' motion to amend is granted. ETG has been on notice that Defendants were asserting an inequitable conduct claim since August 9, before the close of fact discovery, and it had ample opportunity to consider and address the inequitable conduct allegation.

- 15 -

ETG's specific claims are that it would need:  to depose the third named inventor, Ken Kopper; to depose one or more of the patent attorneys involved in prosecuting the patents in suit; and to engage additional experts "who can offer relevant opinions as to the alleged inequitable conduct issue" (D.I. 453 at 23-24).

ETG's claims of prejudice are belied by the facts.  ETG would not have to engage in further fact or expert discovery.  The Defendants' claim of inequitable conduct is directed at Dr. Levitt's conduct.  Dr. Levitt was the inventor who prepared the Background of the Invention and identified the prior art.  Dr. Levitt knew of material prior art and failed to disclose it to the patent examiner.  ETG failed to question Dr. Levitt, even after it knew of the inequitable conduct claim, either at the August 23 deposition or the October 24 deposition or under its own deposition notice (*see* p. 12, *supra*).  Whether or not the other inventors knew, or didn't know, of that prior art is irrelevant to what Dr. Levitt knew and failed to disclose.  ETG likewise has no need to depose the patent attorneys that prosecuted the patents in suit and notably does not say what it would need from the attorneys in the way of discovery.

Moreover, ETG has been on notice of all the prior art forming the basis for the claim of inequitable conduct claim since August 9 and August 31 (*see* pp. 10-11, *supra*).  Although ETG claims that it had no opportunity to take discovery on this "new" claim (D.I. 453 at 2, 23-24), ETG's validity expert, Norman Matzen, had ample time to provide an opinion on whether the prior art in question invalidates the claims of the patents in suit and whether that prior art would have been material to the patent examiner.  Indeed, he did so (*see* p. 12, *supra*).

### III. Defendants Have Alleged Sufficient Facts To Support An Inequitable Conduct Claim And Amendment Would Not Be Futile.

Contrary to ETG's argument, Defendants have alleged sufficient facts to support a claim of inequitable conduct and the amendment would not be futile. Where a claim can withstand a motion to dismiss, amendment of the pleading is not futile. *Enzo Life Scis., Inc. v. Digen Corp.*, 270 F. Supp. 2d 484, 489 (D. Del. 2003). In order for a claim of inequitable conduct to withstand a motion to dismiss, the facts pled must "specify the time, place, and content of any alleged misrepresentations made to the PTO" and otherwise give the notice of the exact misconduct alleged. *Medpointe Healthcare Inc. v. Apotex, Inc.*, No. 06-164-SLR, 2007 WL 211205, at *1 (D. Del. Jan. 26, 2007).

There is no dispute here that the prior art in question was not provided to the patent office. Dr. Levitt's knowledge of the prior art in question before he filed his patent application and his intent have been shown by the evidence developed in discovery.

REDACTED


A copy of a private version of the 1985 Egolf (JASA) Abstract was found in Dr. Levitt's garage, as was a copy of the published 1984 VA Report. The obvious explanation

REDACTED

Defendants have provided expert testimony, through Dr. Soli, that the prior art in question is material, and would have been material to the patent examiner (Ex. 35 at 100). Dr. Soli stated that none of the prior art that was cited to the patent examiner described reducing or canceling acoustic feedback, as do the Nunley Article, the 1982 Egolf Article, the Egolf Abstract, and the 1984 VA Report (*id.*). Thus, these references would have been material to the examination of the '850 patent. Dr. Soli also stated that the Zeta Noise Blocker, as referenced in the Stein Article, describes the very limitation that was added to claim 5 of the '850 patent to overcome an anticipation rejection by the examiner (*id.*). These references would also have been material.

## CONCLUSION

For the reasons above and in their opening brief, the Demant and Widex Defendants' Motion for Leave to File an Amended Answer and Counterclaim should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*
_____
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
302.658.9200

*Attorneys for William Demant Holding A/S,*
*WDH Inc., Oticon A/S, Oticon, Inc.,*
*Bernafon AG, and Bernafon LLC*

OF COUNSEL:

John M. Romary
C. Gregory Gramenopoulos
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Ave., N.W.
Washington, DC  20001-4413
202.408.4000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
302.658.9200

OF COUNSEL:

*Attorneys for Widex A/S and Widex Hearing Aid Co. Inc.*

SUGHRUE MION, PLLC
David J. Cushing
William H. Mandir
Carl J. Pellegrini
Brian K. Shelton
2100 Pennsylvania Ave., N.W.
Suite 800
Washington, DC  20037
202.293.7060

Dated:  December 3, 2007

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 3, 2007, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that true and correct copies of the foregoing were caused to be served via electronic mail on December 3, 2007 upon the following parties:

REPRESENTING ENERGY
TRANSPORTATION GROUP, INC.

Edmond D. Johnson
PEPPER HAMILTON LLP
**johnsone@pepperlaw.com**

Brian M. Buroker
HUNTON & WILLIAMS LLP
**etg@hunton.com**

REPRESENTING WIDEX A/S
AND WIDEX HEARING AID CO. INC.

Donald E. Reid
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
**dreid@mnat.com**

William H. Mandir
SUGHRUE MION PLLC
**wmandir@sughrue.com**

David J. Cushing
SUGHRUE MION PLLC
**dcushing@sughrue.com**

Carl J. Pellegrini
SUGHRUE MION PLLC
**cpellegrini@sughrue.com**

Brian K. Shelton
SUGHRUE MION PLLC
**bshelton@sughrue.com**

| | |
|---|---|
| REPRESENTING WILLIAM DEMANT HOLDING A/S, WDH, INC., OTICON A/S, OTICON INC., BERNAFON AG, AND BERNAFON, LLC | Mary B. Graham<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>**mgraham@mnat.com;**<br>**mbgeservice@mnat.com**<br><br>John M. Romary<br>FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER<br>**john.romary@finnegan.com**<br><br>C. Gregory Gramenopoulos<br>FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER<br>**c.gregory.gramenopoulos@finnegan.com** |

The undersigned also hereby certifies that on December 3, 2007, true and correct copies of the foregoing were caused to be served by hand upon the following Delaware counsel:

Edmond D. Johnson
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, DE  19899-1709

/s/ Mary B. Graham
_____
        Mary B. Graham (#4292)

913379