IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ENERGY TRANSPORTATION GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-422 (GMS) |
| | ) | |
| SONIC INNOVATIONS, INC., et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S *DAUBERT*  OPENING BRIEF IN SUPPORT OF MOTION TO STRIKE
<u>SIGRFRID D. SOLI AS AN EXPERT</u>**

                                      Edmond D. Johnson (No. 2257)
                                      Matthew A. Kaplan (No. 4956)
                                      PEPPER HAMILTON LLP
                                      Hercules Plaza Suite 5100
                                      1313 Market Street
                                      P.O. Box 1709
                                      Wilmington, DE 19899-1709
                                      *Attorneys for Energy Transportation Group, Inc.*

OF COUNSEL:

Brian M. Buroker
Robert L. Kinder, Jr.
HUNTON & WILLIAMS LLP
1900 K Street, N.W., Suite 1200
Washington, DC 20006-1109

Maya M. Eckstein
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Marty Steinberg
HUNTON & WILLIAMS LLP
1111 Brickell Avenue
Suite 2500
Miami, Florida  33131

Dated:  December 21, 2007

#9160501 v1

**TABLE OF CONTENTS**

                                                                                                                      Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.    DISCUSSION .................................................................................................................. 1

        A.    The Standards For Admissibility Under Federal Rule of Evidence 702 and *Daubert*. .................................................................................................................... 1

        B.    Dr. Soli's Inadmissible Opinions On Prior Art. ............................................. 3

        C.    Dr. Soli Is Not Qualified To Testify As An Expert In This Matter. ........................ 3

        D.    Dr. Soli Should Not Be Allowed To Testify As An Expert Because His Opinions Are Unreliable. ........................................................................................ 7

        (1)    Dr. Soli's Opinion As To Invalidity Is Moot. ............................................. 7

        (2)    Expert Opinions Must Be Reliable. .............................................................. 8

        (3)    Dr. Soli's Opinions Rely Solely On Defendants' Determination Of Prior Art As The Basis For His Opinion. ......................................................................... 9

        (4)    Dr. Soli's Opinion Is Not Adequately Inquired Into Or Investigated. ....................... 10

        (5)    Dr. Soli's Testimony Is Based On Incomplete, Unreliable, and Inaccurate Factual Data. .............................................................................................. 2

II.    CONCLUSION ................................................................................................................ 15

#9160501 v1

# TABLE OF AUTHORITIES

## CASES

Page(s)

AMX Corp. v. Pilote Films,
    2007 WL 1813770 (N.D.Tex. 2007) ...........................................................................1

Aloe Coal Co. v. Clark Equipment Co.,
    816 F.2d 110 (3d Cir. 1987) .......................................................................................3

American Key Corp. v. Cole Nat'l Corp.,
    762 F.2d 1569 (11th Cir. 1985) ................................................................................10

Benjamin v. Peter's Farm Condo. Owners Ass'n,
    820 F.2d 640 (3d Cir. 1987) .......................................................................................9

Berry v. City of Detroit,
    25 F.3d 1342 (6th Cir. 1994) ......................................................................................4

Daubert v. Merrell Dow. Pharm., Inc.,
    509 U.S. 579 (1993) ........................................................................................ *passim*

Edwards v. Safety-Kleen Corp.,
    61 F. Supp. 2d 1354 (S.D. Fla. 1999) ......................................................................13

Elcock v. Kmart Corp.,
    233 F.3d 734 (3d Cir. 2003) ...............................................................................2, 7, 9

Fulop v. Malev Hungarian Airlines,
    2003 WL 42016 (S.D.N.Y.Jan. 6, 2003) ..................................................................13

Henry v. Gulf Dumar Marine, Inc.,
    2000 WL 1140493 (E.D. La. Aug. 10, 2000) ...........................................................13

Kumho Tire Co., Ltd. v. Carmichael,
    526 U.S. 137 (1999) ........................................................................................1, 2, 3, 8

Montgomery County v. Microvote Corp.,
    320 F.3d 440 (3d Cir. 2003) ...................................................................................8, 9

## STATUTES

Fed. R. Civ. P. 702 ..................................................................................................................1, 2

Fed.R. Evid. 103 ..........................................................................................................................1

#9160501 v1

-iii-

Fed. R. Evid. 104(a) ........................................................................................................... 3

Fed. R. Evid. 702 ................................................................................................... 2, 3, 4, 9,

Fed. R. Evid. 702, Advisory Comm. Notes, 2000 ............................................................... 2, 4, 9

Plaintiff, Energy Transportation Group, Inc. ("ETG" or "Plaintiff"), respectfully requests that the Court strike Sigfrid D. Soli, Ph.D. ("Dr. Soli") as an expert in this matter because he does not have the requisite qualifications necessary to offer an opinion on whether the patents in-suit are invalid based on prior art.[1]  And even if the Court decides that Dr. Soli, despite his self-admitted lack of qualification as an expert, can offer expert testimony, Dr. Soli still should be stricken as an expert because his opinions are unreliable given that he contradicted his opinion, rendering it moot; his reliance on defendants' counsel as the basis for his opinions; his failure to adequately inquire or investigate the basis for his opinions; and the fact that he ignored key facts and factors relevant to his opinions.  As a result, Dr. Soli does not meet the requirement necessary for an expert under either Fed. R. Civ. P. 702 or *Daubert* v. *Merrell Dow. Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## I.  DISCUSSION

### A.  The Standards For Admissibility Under Federal Rule of Evidence 702 and *Daubert*.

Rule 702 of the Federal Rules of Evidence, which incorporates the Supreme Court's holding in *Daubert* v. *Merrell Dow. Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and cases

---

[1] ETG's Motion is timely filed and should be considered by the Court prior to trial.  A *Daubert* analyses contemplates a gatekeeping function by the Court.  *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999) (holding that the objective is to "ensure the reliability and relevancy of expert testimony").  In order to properly exercise this function, a *Daubert* motion should be ruled on by the Court in anticipation of trial.  As noted by the court in *AMX Corp. v. Pilote Films*,  2007 WL 1813770, *3 (N.D.Tex. 2007), "by addressing before trial, to the extent possible .. challenges to ….expert testimony, the court will promote the efficient use of trial time."

The *Daubert/Kumho* gatekeeping standard, however, does not override the elementary rule of evidence, codified at Fed.R.Evid. 103, that a party timely objects to evidence at the time that it is offered, or runs the risk of waiving the objection entirely.  Here, ETG's objection is timely as Defendants have not yet offered Dr. Soli's testimony at trial.  Further, there can be no argument that ETG has waived it right to present this motion or the that ETG should have presented this as a motion in limine because expert discovery closed on the same day on which opening briefs on the motions in limine were required to be exchanged by the parties.  It was thus impossible, and not contemplated by the Court or the parties that Daubert motions challenging experts would be served as motion in limine.

applying it, governs the admissibility of expert testimony.[2]  The rule permits an expert who is qualified in the relevant field to testify when scientific, technical, or specialized knowledge will assist the trier of fact to understand the evidence or to determine an issue of fact:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Under this rule, the Court must first determine if the expert is qualified to give the opinions offered, and if so, whether the opinions are both reliable and relevant.  *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 148 (1999).  The party offering the expert testimony has the burden of proving admissibility by the preponderance of the evidence.  *Daubert*, 509 U.S. at 592 n. 10.

        To determine the admissibility of expert testimony under Rule 702, the trial court must conduct a "rigorous three-part inquiry" based on the proffered expert's: 1) qualifications to ensure that the witness possesses specialized expertise; 2) reliability, which requires that the expert testimony be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; and 3) helpfulness, which requires that the expert testimony fit the issues in the case or, in other words, requires that the expert's testimony be relevant for the purposes of the case and assist the trier of fact.  *Daubert*, 509 U.S. at 589; *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2003).

---

[2] *See* Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments ("Rule 702 has been amended in response to *Daubert*, and to the many cases applying *Daubert*, including *Kumho Tire Co. v. Carmichael*, 119 S.Ct 1167 (1999).").

The trial court must exercise its discretion as a "gatekeeper" to exclude expert testimony that fails to meet the requirements of Rule 702 and *Daubert*. *See Kumho Tire Co., Ltd.,* 526 U.S. at 152 (holding that the objective is to "ensure the reliability and relevancy of expert testimony"); *Aloe Coal Co. v. Clark Equip. Co.,* 816 F.2d 110, 114-15 (3d Cir. 1987) (holding that a tractor salesman could not testify about the cause of a tractor fire because he did not possess expertise in equipment fires). This gatekeeper role is most important since an expert's opinion can be both influential and deceptive because of the difficulty in understanding it. *Daubert*, 509 U.S. at 595, 113 S.Ct. at 2798. Therefore, as the gatekeepers, trial courts must guard against unqualified, unreliable, *or* unhelpful expert testimony such as Dr. Soli.

**B.    Dr. Soli's Inadmissible Opinions On Prior Art.**

Dr. Soli's opinion that the '850 and '749 patents "are invalid as being anticipated and/or rendered obvious from the prior art" does not meet the established standards for admissibility. Expert Report at 6.[3] He is not qualified to render an opinion about prior art and his opinions are unreliable.

**C.    Dr. Soli Is Not Qualified To Testify As An Expert In This Matter.**

Dr. Soli does not possess the requisite expertise to opine on the validity of the '850 and '749 Patents because he has never performed the work he now seeks to perform for this Court. A trial judge is required to determine at the outset whether a witness is qualified to testify. *See* Fed. R. Evid. 104(a). The starting point for evaluating whether an expert is qualified begins with Rule 702 of the Federal Rules of Evidence. It is well settled that a district court should not allow the testimony of an expert who lacks the "knowledge, skill, experience, training, or education" in the pertinent field. Fed. R. Evid. 702. Thus, before an expert witness

---

[3] A copy of Dr. Soli's expert disclosure is attached as Exhibit "A".

may offer testimony, he must be qualified to render an opinion regarding the specific issues involved in the litigation and not simply be experienced in a general field. *See Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994), cert. denied, 513 U.S. 1111 (1995) ("The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question"). The advisory committee notes for Federal Rule of Evidence 702 further provide that one of the factors for consideration is whether the expert is "proposing to testify about matters growing naturally and directly out of research [he has] conducted independent of the litigation." Fed. R. Evid. 702, Advisory Comm. Notes.

In *Aloe Coal Co.*, 816 F.2d at 114, the Third Circuit Court of Appeals concluded that the district court abused its discretion in allowing a tractor salesman to testify about the cause of a tractor fire because he did not possess expertise in equipment fires. In reviewing the proposed expert's credentials, the *Aloe Coal* court noted that:

> [The expert] was not an engineer. He had no experience in designing construction machinery. He had no knowledge or experience in determining the cause of equipment fires. … He had no training as a mechanic. He had never operated construction machinery in the course of business.

*Id*.

Defendants offer Dr. Soli as an expert on the validity of the '850 and '749 patents. *See* Expert Report at 6. Dr. Soli describes himself as "a person of ordinary skill in the art of the ETG patents." Expert Report at 15. But Dr. Soli, like the expert in *Aloe Coal*, is not qualified to testify about whether the '850 and '749 Patents are invalid because the offered opinions go to matters far beyond his stated scope of expertise. Dr. Soli admits that his proposed testimony is not related to matters growing naturally and directly out of his work as he has never done an analysis of prior art before his retention in this litigation. In fact, as discussed further below, Dr.

-4-

Soli did not even conduct an independent analysis of prior art in this case, instead relying on the conclusions of Defendants and their counsel in reaching his conclusions.

Most importantly, Dr. Soli *admitted* during his deposition that he does not qualify as an expert to opine on prior art in this case. In his opinion, Dr. Soli identifies "a person of ordinary skill in the art of ETG patents" as an "individual with at least training at the master's degree level and a specificity in acoustic related engineering." (Deposition of Dr. Soli at 146:20-147:2).[4] In Dr. Soli's own words, "That's obviously not me." (*Id.* at 147:6).[5] Instead of tendering an expert with these qualification, Defendants seek to fit the square peg in the round hole by having Dr. Soli testify that, "[i]n the alternative, [the expert] would have training in hearing and speech science, auditory physiology, sensory psychology, and at least three years of practical experience with hearing aid device development including the design, development and behavioral evaluation of prototype hearing aids." (*Id.* at 147:19-148:3).

The Defendants devised this "alternate" expertise because Dr. Soli is a psychologist, with no engineering training, who is mainly involved in the perception of speech, not the technical engineering details of hearing aids. But Dr. Soli cannot even met this "alternate" description, as he lacks the requisite experience in design, development, and behavioral evaluation of prototype hearing aids given his failure to participate in the electrical engineering portion of hearing aid research and development. (*Id.* at 148:8-149:19). As Dr. Soli succinctly put it, "No, That's not my expertise." (*Id.* at 149:19). Dr. Soli readily admitted that he relied on the engineering members of his staff for the technical details of the equipment itself.

---

[4] A copy of the transcript for the Videotaped Deposition of Dr. Soli taken on November 14, 2007 is attached as Exhibit "B".

[5] Dr. Soli also admitted that he would not meet ETG's definition of a person of ordinary skill in the art. (Deposition of Dr. Soli at 334:8-336:17).

-5-

(*Id.* at 29:21-30:10; 47:20-48:11; 51:21-52:9; 53:5-20; 56:6-16; 64;11-65:5).  Not surprising, given his self-admitted lack of qualifications, Dr. Soli has never been retained as an expert in a field of engineering or prior art.  (Deposition of Dr. Soli at 10:8-22 and 128:9-16).  In fact, Dr. Soli has only been retained as an expert in functional hearing assessments (regarding the tests and procedures used to determine if a person can hear and function in connection with the employment cases of police officers and firefighters.  (*Id.* at 11:7-22 and 127:22-128:7).

Dr. Soli's deposition supports his direct admission as to his lack of expertise.  Dr. Soli does not have the requisite educational background necessary to be qualified as an expert in prior art in this case.  Dr. Soli is not an engineer or patent examiner, as one would expect from an expert in the field, but is instead an experimental psychologist.  (*Id.* at 13:17-15:13).  He lacks training as an engineer other than rudimentary course work in engineering and has never been a tenured professor in any field.  (*Id.* at 15:8-13 and 18:19-19:7).  Dr. Soli has not obtained any honors in the area of digital devices.  (*Id.* at 91:18-21).  Nor does Dr. Soli's professional training make up for his educational deficiencies because he lacks training in the area he seeks to testify.  Dr. Soli has never designed any electrical circuits, has never had any field design training, and does not have any training in electrical engineering, all of which Dr. Soli admits are necessary to build the hearing aid devices described in the patents in-suit.  (*Id.* at 20:18-19 and 21:7-22:11).  Dr. Soli's engineering educational background and training are so deficient that, throughout his career, he required that others perform all engineering tasks in the actual design of the filters for algorithms he and others patented.  (*Id.* at 29:21-30:10; 47:20-48:11; 51:21-52:9; 53:5-20; 56:6-16; 64;11-65:5).

Given that he does not have the education, training, or experience to perform the work he now seeks to perform in this litigation and that he has never performed this type of work before,

-6-

Dr. Soli is unqualified to render opinions on the validity of the '850 or '749 Patents and, therefore, the Court should strike him as an expert in this matter.

> **D.    Dr. Soli Should Not Be Allowed To Testify As An Expert Because His Opinions Are Unreliable.**

Even if the Court decides that Dr. Soli can be marginally qualified as an expert, he should still be stricken because his opinions are unreliable. The marginal nature of the Dr. Soli's qualifications would affect the reliability of his proposed testimony. *Elcock,* 233 F.3d at 744. But even if the Court gives his opinions the weight of a well-qualified expert, which he is not, Dr. Soli cannot be allowed to testify because his opinions: (1) are moot; (2) are unreliable given that he relies solely on Defendants' counsel for the basis for his opinion; (3) are not adequately inquired into or investigated; and (4) ignore relevant facts and factors.

> (1)    **Dr. Soli's Opinion As To Invalidity Is Moot.**

As a threshold matter, Dr. Soli should be stricken as an expert because he admits that his opinions are rendered moot by the Court's claim construction. Specifically, Dr. Soli admitted that the opinions set forth in his expert report do not apply to the '850 and '749 patents when viewed in terms of the Court's claim construction:

> Q. Well, you just made a statement that the prior art issues go away, if I'm characterizing you testimony correctly, if you looked strictly at the wording of the patents themselves; is that correct?
>
> A. When I look at the structures that are enumerated in the claim construction, and I look to those structures in prior art, I don't see those specific structures.

(Deposition of Dr. Soli at 101:22-103:19). In other words, based on the wording of the patents and the Court's claim construction, the '850 and '749 Patents are not rendered invalid by prior art. This position is completely contrary to the opinions set forth in Dr. Soli's expert report. As a result, Dr. Soli should be stricken as an expert either because his opinions are unreliable based

-7-

on this contradiction or, in the alternative, because they are moot given his admissions with respect to the validity of the patents.

(2) **Expert Opinions Must Be Reliable.**

But even examining the methodology of the opinions, the Court, as the "gatekeeper" of reliability, must exclude Dr. Soli's opinions. *Kumho Tire Co., Ltd.,* 526 U.S. at 148. "[W]here [expert] testimony's factual basis, data principles, methods, or their application are called sufficiently into question ... the trial judge must determine whether the testimony has a 'reliable basis' in the knowledge and experience of [the relevant] discipline." *Id.* at 149. "[T]he testimony of a witness, who is well-qualified" to give an opinion "still may be barred if it is not based on sound data." *Montgomery County v. Microvote Corp.,* 320 F.3d 440, 448 (3d Cir. 2003).

In sum, expert testimony must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation. *Id.* Moreover, Rule 702 requires that the Court determine "whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). *Daubert* mandates a trial court to evaluate not the expert's opinion, but rather the basis for that opinion. *Daubert*, 509 U.S. at 595. "*Daubert* identifies a non-exhaustive list of factors for consideration when determining the reliability of proffered testimony." *Montgomery County*, 320 F.3d at 447. The factors identified by *Daubert* include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

-8-

*Elcock*, 233 F.3d at 745-46. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702, Advisory Comm. Notes. These requirements are imposed because "[t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id.*

(3) **Dr. Soli's Opinions Rely Solely On Defendants' Determination Of Prior Art As The Basis For His Opinion.**

Dr. Soli's testimony is unreliable and, as a result, Dr. Soli must be stricken as an expert because his opinions are based solely on information and opinions provided to Dr. Soli by Defendants' counsel and Dr. Soli relies on Defendants' conclusions that the referenced materials are prior art. *Montgomery County*, 320 F. 3d at 449 (excluding expert testimony which was based on materials selected by attorney for expert); *Benjamin v. Peter's Farm Condominium Owners Ass'n*, 820 F.2d 640, 643 (3d Cir. 1987) (finding expert testimony based on personal belief of plaintiff was improper); *American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985) (barring admission of expert testimony because it was based upon the opinion of the plaintiff's principal); *see also Thomas v. FAG Bearings Corp.*, 846 F. Supp. 1382, 1394 n.7 (excluding evidence, in part, because "[i]t is abundantly clear that, for whatever reason, [the expert] was not given the opportunity to make the type of personal investigation that would have allowed him to reach actual conclusions, rather than speculations"), *reconsidered in part on other grounds*, 860 F. Supp. 663 (W.D. Mo. 1994).

Dr. Soli readily testifies that Defendants' counsel provided him with his ultimate conclusions from the out-set. (Deposition of Dr. Soli at 172:1-177:6) Dr. Soli relied on these conclusions, as discussed below, conducted no independent invalidity analysis, subsequently agreed that what was provided to him is prior art, and now seeks to serve as a conduit to

-9-

legitimize the conclusions of Defendants' counsel before the trier of fact. "Yes [the Widex attorneys] informed that it qualifies as prior art." (*Id.* at 172:22-173:1) "In this case I agree it qualifies as prior art." (*Id.* at 173:3-4). "Q. And you are relying on what they told you, right? A. In this case. Q. And that opinion came from the defendant attorneys, right? A. **Correct**." (*Id.* at 173:7-14) (emphasis added). Dr. Soli testified almost identically with respect to the Graupe '721 patent, the Stein article, the Graupe '168 patent, the Nunley '672 patent, the Borth '529 patent, the Beex '192 patent, the Graupe '667 patent, the Feintuch '536 patent, the Hearing Journal of 1986, the Chabries '426 patent, the South article, the AFC-1 circuit, the AFC-2 circuit, the AFC-3 circuit. (*Id.* at 172:1-173:14; 174:3-11; 175:9-16; 176:2-10; 176:17-22; 177:1-6; 183:18-184:3, 225:7-15; 226:4-20; 228:1-16; 231:15-232:2; 235:4-14; 253:4-9; 254:11-16). Dr. Soli further specifically agreed that he "relied on what Widex said about the AFC Circuits." (*Id.* at 333:18-20).

In other words, Dr. Soli began and ended his analysis with the conclusion provided to him by Defendants' counsel. This, should the Court allow Dr. Soli as an expert, it would not only be taking his "word for it," the trier of fact would in fact just be taking Defendants' word for it. This result cannot be allowed. Given the unreliability of this method, the Court cannot accept Dr. Soli as an expert.

        (4)    **Dr. Soli's Opinion Is Not Adequately Inquired Into Or Investigated.**

Additionally, even if Dr. Soli's opinion was not based on Defendants' ultimate conclusions, he should still be stricken as an expert by the Court because his opinions are unreliable based on the lack of any inquiry or investigation into the material underlying the opinions and because of his failure to conduct an invalidity analysis. Aside from his clear failure to undertake any independent evaluation aside from merely relying on the ultimate conclusion provided to him by Defendants' counsel, Dr. Soli's opinions are also unreliable because he did

-10-

not adequately inquire into or investigate his opinions. Dr. Soli's acceptance of Defendants' position without any further investigation into the underlying facts or additional relevant facts renders the opinions unreliable. Given the danger that an "expert's opinion can be both influential and deceptive because of the difficulty in understanding it," the Court must exercise it's gatekeeper role here to exclude Dr. Soli's untested opinions. *Daubert*, 509 U.S. at 595, 113 S.Ct. at 2798.

Here, Dr. Soli failed to independently investigate any of the materials provided to him by Defendants' counsel and instead merely relied on them in the form given to him. For instance, Dr. Soli failed to determine if the isolated materials provided to him by Defendants' counsel were independent references or part of a larger project. With respect to the Egolf work, Dr. Soli never determined if there were quarterly reports on the over-all project, and never reviewed the R&D quarterly progress reports or the final report to United States Department of Veterans Affairs ("Veterans Affairs") in reaching his opinions. (Deposition of Dr. Soli at 190:10-22; 203:7-16; 247:10-19).

Specifically, Dr. Soli never investigated whether Dr. Egolf asked Veterans Affairs to maintain the reports as confidential. (*Id.* at 197:1-22; 199:14-200:4). Nor did Dr. Soli investigate whether Dr. Egolf's reports were published. (*Id.* at 201:4-11).. Dr. Soli did not bother to read Dr. Egolf's testimony even though he believed that testimony relevant to his analysis. (*Id.* at 210:22-211:13). Nor did Dr. Soli review Dr. Egolf's work where he stated that his research was related to eye glass hearing aids and would not work for behind the ear or in the ear hearing aids. (*Id.* at 241:7-247:5). Dr. Soli was not even aware that Dr. Egolf's work did not relate to digital devices. (*Id.* at 269:1-270:5). Had Dr. Soli even done a minimum of due diligence, he would have determined that the isolated references selectively given to him by

-11-

Defendants' counsel were part of a Veterans Affairs project that dealt solely with eyeglass hearing aids, that did not apply to in the ear or behind the ear hearing aids, that the project interim prototypes relied on were abandoned as not working, that the project was not published and kept confidential and a host of other detrimental information clearly attainable in the interim and final reports on the project and in Dr. Egolf's deposition testimony in this case. But Dr. Soli failed to examine this information, which was readily available.

Further, Dr. Soli did not conduct the requisite analysis to determine whether the material provided to him by Defendants' counsel are prior art. Dr. Soli apparently is aware that he must conduct an invalidity analysis on a claim-by-claim basis to demonstrate that the prior art covers in its entirety a specific claim, yet he does not perform this analysis. (*Id.* at 117:2-13). No invalidity analysis was performed on the Graupe '168 patent, the Nunley '672 patent, the GABR '124 patent, the Mansgold '481 patent, the Engebrestson '082 patent, the Weaver presentation, the Chabries work, or the Chabries-2 work, all of which Dr. Soli claims qualify to render the '850 and '749 patents invalid. (*Id.* at 117:20-119:9 and 122:3-122:21).

Additionally, Dr. Soli did not perform an invalidity analysis on any of the articles identified by Defendants as prior art in their answers to Plaintiff's interrogatories. (*Id.* at 123:7-125:22). Dr. Soli even neglected to perform an invalidity analysis on the AFC-1 circuit, AFC-2 circuit, and AFC-3 Circuit, the primary prior art that he claims leads to the invalidity of the '850 and '749 patents (or determine whether the circuits were digital). (Deposition of Dr. Soli at 119:10-120:20). As a result, Dr. Soli's untested and unverified opinions are unreliable and Dr. Soli should be excluded as an expert in this matter.

      (5)    **Dr. Soli's Testimony Is Based On Incomplete, Unreliable, and Inaccurate Factual Data.**

Finally, Dr. Soli should also be stricken as an expert in this matter because his opinions are based on incomplete information. Expert testimony that is incomplete is inadmissible. *See Fulop v. Malev Hungarian Airlines*, No. 00 Civ. 1965, 2003 WL 42016, *1 (S.D.N.Y.Jan. 6, 2003) (excluding expert testimony based upon "incomplete factual data" and "the product of unreliable principles and methods"); *Henry v. Gulf Dumar Marine, Inc.*, No. 2000 WL 1140493, *1 (E.D. La. Aug. 10, 2000) (excluding expert testimony that was "inconclusive" where expert felt he needed "further review," and failed to account for contrary findings). Because Dr. Soli's opinions are based solely upon Defendants' rendition of the facts and are, therefore, merely speculative at best because they constitute nothing more than a "parroting of other testimony," Dr. Soli's report should be stricken. *Midland*, 2002 WL 31780156, at *3 ("[Expert] simply relied on [plaintiff's] testimony that he requested MSDS for the paint, but he was informed that 'they had none on board.' [The expert's] testimony pertaining to the required MSDS is, therefore, at most a parroting of other testimony and speculative at best."); *Edwards v. Safety-Kleen Corp.*, 61 F. Supp. 2d 1354, 1358 (S.D. Fla. 1999) (finding expert opinion based upon underlying studies that were unreliable to be inadmissible).

As discussed above, Dr. Soli's analysis of the Egolf work was flawed in that it failed to take into consideration all of the relevant information that could easily have been made available to Dr. Soli. Dr. Soli did not even take Dr. Levitt's materials into account in reaching his decision. (Deposition of Dr. Soli at 302:10-303:14). Dr. Soli's stated reason for not reviewing the Levitt materials is that the materials provided by Defendants' counsel "did not include Dr. Levitt's publications." *Id.* ).Dr. Soli, however, recognizes that materials Dr. Levitt created before the lawsuit would be without motive and potentially relevant to his examination of

-13-

-14-

the '850 and '749 patents. *Id.* One can only surmise what other relevant material was excluded from Dr. Soli's evaluation. But given these blatant omissions, the Court must find that Dr. Soli's opinions are unreliable and strike him as an expert in this matter.

## II.    CONCLUSION

Dr. Soli's testimony should be excluded because it does not comport with the requirements of Rule 702.  His opinions are merely the conclusions of Defense counsel and not relevant to understanding the facts or evidence at issue in this case.  He is not qualified to render his opinions, and his opinions are manifestly unreliable.  Accordingly, Plaintiff respectfully submits that Dr. Soli's testimony should be excluded from trial.

Dated: December 21, 2007

        /s/ Edmond D. Johnson
        Edmond D. Johnson (No. 2257)
        Matthew A. Kaplan (No. 4956)
        PEPPER HAMILTON LLP
        Hercules Plaza Suite 5100
        1313 Market Street
        Wilmington, DE 19899-1709
        *Attorneys for Energy Transportation Group, Inc.*

OF COUNSEL:

Brian M. Buroker
Robert L. Kinder, Jr.
HUNTON & WILLIAMS LLP
1900 K Street, N.W., Suite 1200
Washington, DC 20006-1109

Maya M. Eckstein
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Marty Steinberg
HUNTON & WILLIAMS LLP
1111 Brickell Avenue
Suite 2500
Miami, Florida  33131

**CERTIFICATE OF SERVICE**

I do hereby certify that on the 21st day of December 2007, I caused a true copy of the foregoing ***Plaintiff's Daubert Opening Brief in Support of Motion to Strike Sigrfrid D. Soli as an Expert*** to be served upon the following counsel of record as indicated below:

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
MORRIS, NICHOLS, ARSHT &TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
**Via CM/ECF**

John M. Romary
C. Gregory Gramenopoulos
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER
901 New York Ave., N.W.
Washington, DC 20001-4413
**Via Electronic Mail**

*Attorneys for William Demant Holding A/S, WDH Inc., Oticon A/S, Oticon, Inc., Bernafon AG, and Bernafon LLC*

Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
MORRIS, NICHOLS, ARSHT &TUNNELL LLP
1201 N. Market Street
Wilmington, DE 19899
**Via CM/ECF**

William H. Mandir
David J. Cushing
Carl J. Pellegrini
Brian K. Shelton
SUGHRUE MION PLC
2100 Pennsylvania Ave., N.W., Ste. 800
Washington, DC 20037
**Via Electronic Mail**

*Attorneys for Widex A/S, Widex Hearing Aid Co., Inc.*

/s/ Edmond D. Johnson
Edmond D. Johnson (No. 2257)