IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ENERGY TRANSPORTATION GROUP, INC.

       Plaintiff,

       v.

SONIC INNOVATIONS, INC., *et al.*,

       Defendants.

)
)
)
)
)
)
)
)
)

C.A. NO. 05-422 (GMS)

REDACTED

**PLAINTIFF ENERGY TRANSPORTATION GROUP, INC.'S
BRIEF IN OPPOSITION TO DEMANT AND WIDEX DEFENDANTS'
MOTION TO AMEND ANSWER AND COUNTERCLAIM**

OF COUNSEL:

Brian M. Buroker
Robert L. Kinder, Jr.
HUNTON & WILLIAMS LLP
1900 K Street, N.W., Suite 1200
Washington, DC 20006-1109
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

Maya M. Eckstein
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
Telephone: (804) 788-8788
Facsimile: (804) 343-4630

Marty Steinberg
HUNTON & WILLIAMS LLP
1111 Brickell Avenue
Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460
Dated: November 21, 2007
Dated: November 21, 2007

Edmond D. Johnson (No. 2257)
Thomas H. Kovach (No. 3964)
PEPPER HAMILTON
Hercules Plaza Suite 5100
1313 Market Street
Wilmington, DE 19899-1709

*Attorneys for Energy Transportation
Group, Inc.*

#9077932 v1

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

## TABLE OF CONTENTS

Page

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ................... 1

II.   SUMMARY OF ARGUMENT ................................................................................. 1

III.  STATEMENT OF FACTS .................................................................................... 3

IV.   ARGUMENT ....................................................................................................... 11

    A.  Defendants Cannot Show Good Cause to Modify the Scheduling Order ............. 12

        1.  Defendants Cannot Establish Diligence in Seeking the Factual Basis for Their Allegations ................................................................................ 13

        2.  Defendants Cannot Establish Diligence in Bringing Their Motion ........... 18

    B.  Defendants' Actions Warrant Denial of Leave to Amend ................................... 19

        1.  Defendants Have Demonstrated Undue Delay, Bad Faith and Dilatory Motives ................................................................................................. 19

        2.  Defendants' Amendments Would Prejudice ETG ................................... 22

        3.  Defendants' Amendments Are Futile ..................................................... 26

V.    CONCLUSION .................................................................................................... 32

#9077932 v1

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amquip Corp. v. Admiral Ins. Co.*, 231 F.R.D. 197, 199 (E.D. Pa. 2005) ....................................22

*Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp.2d 411, 423 (D. N.J. 2005)........................19

*Ciena Corp. v. Nortel Networks Corp.*, 233 F.R.D. 493, 495 (E.D. Tex, 2006) ....................20, 21

*Componentone, L.L.C. v. Componentart, Inc.* 2007 WL 2580635, *2 (W.D. Pa. August 16, 2007).................................................................................................................................13

*E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000)........................................13

*Elf Atochem, N. Am., Inc. v. United States*, 161 F.R.D. 300, 301-02 (E.D. Pa. 1995) ............21, 22

*Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3rd Cir. 2003)........................................19

*In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).................................................27

*Inline Connection Corp. v. AOL Time Warner Inc.*, 237 F.R.D. 361, 370 n.75 (D. Del. 2006).............................................................................................................................12, 19, 22

*Life Techs., Inc. v. Clontech Lab., Inc.*, 224 F.3d 1320, 1324 (Fed Cir. 2000) ............................28

*Lifescan Inc. v. Polymer Tech. Int'l Corp.*, 35 U.S.P.Q.2d 1225, 1238 (W.D. Wash. 1995) ........21

*Manville Sales Corp. v. Paramount Sys., Inc.* 917 F.2d 544, 551-52 (Fed. Cir. 1990).................28

*McLaughlin v. Diamond State Port Corp.*, Civ. A. No. 03-617(GMS), 2004 WL 2958664, *4 (D. Del. Dec. 21, 2004) ......................................................................................................12

*Med. Graphics Corp. v. Hartford Fire Ins. Co.*, 171 F.R.D. 254, 257 (D. Minn. 1997)...............27

*Miller Products Co., Inc. v. Veltek Associates, Inc.*, 218 F.R.D. 425, 427 (D. Del. 2003) ...........19

*Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995).................................................28

*Remington Arms Co., Inc. v. Modern Muzzleloading, Inc.*, 1998 WL 1040949, *2 (M.D. N.C. 1998) ......................................................................................................................21, 22

*Symbol Techs., Inc. v. Proxim Inc.*, C.A. No. 01-801-SLR, 2003 U.S. Dist. LEXIS 6686, at *5-7 (D. Del. Apr. 17, 2003) ......................................................................................20

*Toth v. Glazer*, 163 F.R.D. 549 (E.D. Wis. 1995) .......................................................................21

*Warner-Lambert Co. v. Teva Pharm., Inc.*, 289 F. Supp. 2d 515, 544-45 (D. N.J. 2003) ...........27

**Rules**

Fed. R. Civ. P. 15(a) ...........................................................................................................................2

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

Fed. R. Civ. P. 16(b) ................................................................................................1, 12, 13

Fed. R. Civ. P. 30(b)(6) ........................................................................................................5

#9077932 v1

<u>**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION**</u>
<u>**FILED UNDER SEAL**</u>

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

At least 10 months after becoming aware of the information upon which Defendants now base a new, previously unpled (and unfounded) defense, eight months after first deposing inventor Dr. Harry Levitt, seven months after this Court's deadline for moving to amend a pleading, two months after allegedly "confirming" their belief of inequitable conduct, after the close of fact discovery, after the deadline for the service of both initial *and* rebuttal expert reports and, *perhaps most importantly, just two and one-half months before the start of trial*, the Demant and Widex Defendants move to amend their answers and counterclaims by adding a counterclaim and affirmative defense of unenforceability, along with more than 21 pages of new allegations that fail to meet their pleading and evidentiary burden. Plaintiff Energy Transportation Group, Inc. ("ETG") opposes Defendants' transparent attempt, through the introduction of scurrilous and baseless allegations, to sandbag ETG *at this late stage of the proceedings and/or to delay trial in this action.*

## II.    SUMMARY OF ARGUMENT

This Court should deny the Demant and Widex Defendants' Motion to Amend Answer and Counterclaim ("Defendants' Motion") for one or more of the following reasons:

1.    Defendants lack good cause, as required by Fed. R. Civ. P. 16(b), *to modify this Court's Scheduling Order.* Defendants' failure to file their motion within the timeframe set by this Court's Scheduling Order, a Scheduling Order stipulated to by Defendants, results from their own lack of diligence in pursuing discovery on the issue of any purported inequitable conduct. Half of the alleged prior art relied upon by Defendants in their proposed amendments was produced to them more than 10 months ago; the other half was prepared by their own paid fact

<u>PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL</u>

witness.[1] Moreover, Defendants failure to file their motion for more than two months after they

allegedly "confirmed" a belief in their inequitable conduct claim further demonstrates

Defendants' lack of diligence in seeking to modify the Scheduling Order.

   2.  Each of the following factors weighs heavily in favor of denying Defendants'

Motion under the leave to amend standard of Fed. R. Civ. P. 15(a): (1) Defendants' undue delay,

bad faith and dilatory motives in bringing their motion; (2) the resulting prejudice to ETG of

granting the motion; and (3) the futility of Defendants proposed amendments to the pleadings.

The timing of Defendants' Motion, which evidences either a clear attempt to sandbag ETG at

this late stage of the proceedings and/or to delay trial in this action, demonstrates their undue

delay, bad faith and dilatory motives in bringing the motion. Moreover, a decision to grant

Defendants' Motion, without a concurrent decision to reopen fact and expert discovery and delay

trial, would unduly prejudice ETG, which would have no opportunity to take discovery on an

entirely new defense not previously pled.[2] The pretrial order is due December 6, 2007 and jury

selection set to begin on January 18, 2008; a decision to reopen discovery, even for a limited

time, would require an extension of all remaining deadlines, including the trial date. Finally,

even if Defendants were allowed to amend their pleadings, the proposed amendments would be

futile. With all discovery now complete, Defendants cannot show critical elements of their new

counterclaim/defense: (1) that the alleged prior art is more relevant than the prior art that was

disclosed to the United States Patent and Trademark Office ("PTO"); (2) that the inventors had

---

   [1] *See* Exhibit 1: Plaintiff's Motion In Limine To Exclude The Testimony Of Paid Fact Witnesses (served November 21; to be filed December 6).

   [2] *See, infra* pp. 23-25.

#9077932 v1

<u>**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION**</u>
<u>**FILED UNDER SEAL**</u>

knowledge of both the alleged prior art and its materiality at the time that they applied for the

patents-in-suit; and (3) that the inventors intended to deceive the PTO.

## III.    STATEMENT OF FACTS

ETG filed this action on June 23, 2005, asserting claims for infringement of U.S. Patent

Nos. 4,731,850 and 4,879,749 (the "patents-in-suit").[3]  ETG filed its Second Amended

Complaint on February 15, 2006.[4]  Defendants Oticon A/S, Oticon Inc., Bernafon AG, Bernafon,

LLC, WDH, Inc. and William Demant Holding A/S (collectively the "Demant Defendants") filed

an Answer and Counterclaim to the Second Amended Complaint on February 27, 2006.[5]

Defendants Widex A/S and Widex Hearing Aid Co., Inc., (collectively the "Widex Defendants")

filed their Answers and Counterclaims to the Second Amended Complaint on February 27,

2006.[6]  None of the answers asserted a counterclaim or a defense of inequitable conduct.

This Court entered its Scheduling Order on February 20, 2007.[7]  The Scheduling Order

contains the following relevant provisions:

> 2. <u>**Joinder of Other Parties and Amendments of Pleadings.**</u> . . . All . . . motions
> to amend the pleadings shall be filed on or before April 1, 2007. . . .

> 5. <u>**Discovery.**</u>  All fact discovery in this case shall be initiated so that it will be
> completed on or before August 1, 2007.  Expert discovery in this case shall be
> initiated so that it will be completed on or before November 21, 2007.  All
> opening expert [reports] for the party with the burden of proof on an issue shall be
> served by September 7, 2007.  All answering expert reports shall be served by
> October 8, 2007. . . .

---

[3] D.I. 1.

[4] D.I. 65.

[5] D.I. 95.

[6] D.I. 93 and 94.

[7] D.I. 206.

#9077932 v1

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

      b. Discovery Provisions. . . .

           iv. Invalidity Claim Charts and Contentions. By March 30, 2007, each defendant shall serve on Plaintiff a list of all of the prior art on which it relies . . . ("Defendant's Prior Art Statement"). . . .

12. **Pretrial Conference.** . . ."The parties shall file with the Court the joint proposed final pretrial order on or before December 6, 2007.

13. **Trial**. This matter is scheduled for trial with jury selection on January 18, 2008 . . . and trial starting January 22, 2008.[8]

This Court subsequently extended fact discovery to August 31, 2007[9] and then extended it again *solely to accommodate specific fact depositions and issues.* It also extended deadlines for some expert discovery. This Court did not extend any other relevant deadlines in the Scheduling Order. In fact, this Court made clear the prejudice to the Court that would result from an extension to the trial date and its intent not to postpone the case.[10]

      Defendants now move to amend their pleadings to add a claim of unenforceability more than seven months after the deadline set in the Scheduling Order for doing so. In support of their motion, Defendants identify six pieces of alleged prior art as the basis for their new claim:

    (1) James Nunley, et al., "A Wearable Digital Hearing Aid," The Hearing Journal, Oct. 1983 at 29. ("Nunley Article");

    (2) Dr. David P. Egolf, "Review of the Acoustic Feedback Literature from a Control Systems Point of View," The Vanderbilt Hearing Aid Report, 1982 at 94 ("Egolf Article");

    (3) Kim A. Weaver and Dr. David P. Egolf, "Electronic Cancellation of Acoustic Feedback to Increase Hearing-Aid Stability," J. Acoust. Soc. Am. Suppl. 1, Spring 1985

---

[8] *Id.*

[9] Exhibit 2: Telephone Conference, Jun. 13, 2007 at 36:1-3.

[10] *Id.* at 33:22-34:23.

<u>PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL</u>

at S105 ("Egolf Abstract");

(4) Dr. Vernon D. Lawson and Dr. David P. Egolf, "Acoustic Feedback Suppression in Hearing Aids," VA Rehabilitation R&D Progress Reports, 1984 at 163 ("Egolf Report");

(5) Laszlo K. Stein and Deborah Dempsey-Hart, "Listener-Assessed Intelligibility of a Hearing Aid Self-Adaptive Noise Filter," Ear and Hearing, Vol. 5, No. 4, 1984 at 199 ("Stein Article"); and

(6) a device developed by Dr. Daniel Graupe at Intellitech ("Zeta Noise Blocker").[11]

Defendants have had actual or constructive knowledge of each of these items *for months*. ETG first produced the Nunley and Stein Articles to Defendants on January 5, 2007.[12] The Stein Article references the Zeta Noise Blocker.[13] As noted, Dr. David Egolf authored, individually, or in conjunction with others, the Egolf Article, the Egolf Abstract and the Egolf Report, all of which concern the same purported prior art. Defendants hired Dr. Egolf as a paid consultant in this action in January 2006.[14]                      REDACTED


Defendants produced the Egolf Article to ETG on April 10, 2007.[16]

ETG produced the Egolf Abstract and the Egolf Report to Defendants on September 7, 2007.[17]

The Widex Defendants noticed ETG's deposition under Fed. R. Civ. P. 30(b)(6) on

---

[11] Defendants' Opening Brief at 4-9.

[12] Exhibit 3: ETG00002649-2653 and ETG00002591-2596.

[13] Defendants' Opening Brief at 9, Exhibit 14.

[14] Exhibit 4: Egolf Dep., Oct. 9, 2007 at 18:16 - 21:8.

[15]

[16] Exhibit 5: WID189169-189204.

[17] Exhibit 6: LEV00084003-84166 and LEV00084500-84719.

#9077932 v1

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

February 22, 2007.[18]  The Widex Defendants specifically demanded that ETG designate someone

to testify on its behalf about several matters, including issues of conception, diligence, reduction

to practice, the "prior art" and "6. Activities related to the development, preparation and filing of

the applications that led to the patents in suit."[19]

ETG designated Dr. Harry Levitt, one of the inventors of the patents-in-suit, to testify on

its behalf concerning the inventorship issues and Matter 6.  Defendants conducted the 30(b)(6)

deposition on February 27 and 28, 2007 (the "February Deposition").[20]  Dr. Levitt testified for a

full 14 hours over a two-day period.[21]  Defendants elected not to ask Dr. Levitt a single question

about the Nunley or Stein Articles, even though ETG had produced both almost two months

earlier.[22]  Defendants also elected not to ask Dr. Levitt a single question about any specific art

attributed to Dr. Egolf,[23] even though Dr. Egolf had been consulting with Defendants for more

than a year, and                REDACTED                 Defendants extensively

questioned Dr. Levitt about the Zeta Noise Blocker, which was referred to as the "Intellitech

device" or the "Intellitech blocker chip."[25]

In response to three different subpoenas *duces tecum*, ETG produced almost 96,000 pages

---

[18] D.I. 215.

[19] *Id.*

[20] Exhibit 7: Levitt Dep., Feb. 27, 2007 and Feb. 28, 2007.

[21] *Id.*

[22] *Id.*

[23] *Id.*

REDACTED

[25] *Id., e.g.,* Feb. 27, 2007 at 328:20-330:22, 333:1-335:5; Feb 28, 2007 at 432:1-433:14.

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION**
**FILED UNDER SEAL**

of documents on behalf of Dr. Levitt. Dr. Levitt keeps files that contain documents of

professional interest to him, along with what might be considered a small library of other books,

magazines, journals and records, (what Defendants refer to as a "personal archival library") in the

lower level and garage spaces of his home.[26] In response to a subpoena issued to Dr. Levitt on

February 1, 2007, ETG engaged in a rolling production, producing more than 24,000 pages on

February 20, 2007, more than 20,000 pages on March 30, 2007, more than 17,000 pages on April

4, 2007 and approximately 400 pages on April 9, 2007. In response to a second subpoena issued

to Dr. Levitt on July 20, 2007, ETG produced more than 1,800 pages on August 7, 2007,

approximately 10,000 pages on August 15, 2007, approximately 300 pages on August 29, 2007,

more than 8,000 pages on September 7, 2007 and more than 12,000 pages on September 12,

2007. ETG also produced more than 1,000 pages of documents extracted from Dr. Levitt's

computer. ETG produced more documents from Dr. Levitt's files than three of the corporate

defendants named in this action. More importantly, ETG began trying to coordinate Defendants'

access to Dr. Levitt's home for inspection of the documents as early as June 18, 2007.[27]

Defendants elected not to conduct a personal deposition of Dr. Levitt until near the end of

fact discovery.[28] Defendants deposed Dr. Levitt again on August 23, 2007 ("August

Deposition"), this time for well over the permitted seven hours.[29] Notably, Defendants reviewed

the files at Dr. Levitt's home on August 20, 2007, before the August Deposition. Defendants

---

[26] Defendants' Opening Brief at 11.

[27] Exhibit 8: Letter from M. Eckstein to All Defense Counsel, Re:*Energy Transportation Group, Inc. v. Sonic Innovations, Inc., et al.*, dated June 18, 2007. (Exhibit 2).

[28] D.I. 328.

[29] Exhibit 7: Levitt Dep., Aug. 23, 2007.

#9077932 v1

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION**
**FILED UNDER SEAL**

then deposed Dr. Levitt for a third time on October 24, 2007 ("October Deposition") for another full 7 hours.[30]

During the review of the files at Dr. Levitt's home on August 20, two documents were discovered that had not been part of the more than 73,000 pages of documents produced on Dr. Levitt's behalf to that point: the Egolf Abstract and the Egolf Report.

REDACTED

The Widex Defendants served supplemental interrogatory responses on ETG on August 9, 2007.[34] In those supplemental interrogatory responses, the Widex Defendants informed ETG, *for the first time*, that "Dr. Levitt and/or Mr. Dugot are aware of the following factual information relevant to the unenforceability of the patents-in-suit because of inequitable conduct

---

[30] Exhibit 7: Levitt Dep., Oct. 24, 2007.

[31] *Id.* at 149:13-150:13.

REDACTED
                          . Considering Dr. Levitt's lack of legal training, it is understandable that he might have been confused about privilege issues. As ETG has advised Defendants, ETG's counsel did not advise Dr. Levitt that the Egolf Report was privileged.

[34] Exhibit 10: Defendant Widex A/S's Second Supplemental Response and Objections to Plaintiff's First Set of Common Interrogatories to All Defendants and Plaintiff's First Set of Interrogatories to Defendant Widex A/S, served August 9, 2007.

<u>**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION FILED UNDER SEAL**</u>

for failing to disclose material prior art during prosecution of the patents-in-suit, with an intent to mislead the Patent Office into granting the [patents-in-suit] . . . ."[35]  The factual information detailed by the Widex Defendants concerned the Stein Article, the Zeta Noise Blocker and the February Deposition.[36]  In the same responses, the Widex Defendants identified, *for the first time*, multiple pieces of alleged prior art, including the *Stein Article, the Zeta Noise Blocker* and the *Egolf* art,[37] despite the fact that the Court's Scheduling Order required Defendants to identify all prior art on which they rely by March 30, 2007.

In response to this information, ETG advised the Widex Defendants that it objected to these responses for the following reasons:

> Widex's attempted assertion of an inequitable conduct defense near the close of fact discovery is untimely and prejudicial.  The February 20, 2007 Scheduling Order entered in this case and agreed to by all parties required amending pleadings on or before April 1, 2007 -- over four months ago.  Further, Widex's attempted assertion of an inequitable conduct defense near the close of discovery without any notice to ETG and without the opportunity to have discovery on that defense is highly prejudicial to ETG and improper.

> Widex's failure to previously raise any allegation of inequitable conduct based on the references Widex cites further reflects undue delay.  Widex relies on evidence produced by ETG *eight months ago* to support its alleged inequitable conduct defense.  The Stein article, (ETG2591) and Mr. Bunce's letter of June 10, 1985, (ETG2590) were both produced on January 5, 2007.  Thus, Widex had every opportunity to assert an inequitable conduct theory well before the April 1, 2007 scheduling order deadline, and certainly well before the close of fact discovery on

---

[35] *Id.*

[36] *Id.*

[37] *Id.*  ETG is unable to identify any disclosure, prior to being served on September 17, 2007 with the expert report of Dr. Sigfrid Soli, of the Nunley Article as prior art.

#9077932 v1

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

August 31st. There is no excuse for this undue delay.[38]

Furthermore, the introduction of more than 20 additional prior art references never before

disclosed or relied upon in support of their invalidity contentions violated the Scheduling Order

and prejudiced ETG because it had no opportunity to conduct additional discovery and formulate

a proper response. The Widex Defendants offered no response to ETG's objections.

The Demant Defendants served supplemental interrogatory responses on ETG on August

31, 2007. In those supplemental interrogatory responses, the Demant Defendants informed ETG,

*for the first time*, "that the patents-in-suit are unenforceable due to inequitable conduct for

failing to bring to the Patent Examiner's attention during prosecution of the asserted patents-in-

suit the prior art of Best, Weaver, Egolf, and Graupe. That prior art, which has come to light in

this litigation, was known to Dr. Levitt, was material, and was withheld from the Examiner in

contravention of Dr. Levitt's duty of candor and good faith, rendering the patents

unenforceable."[39] In response to this information, ETG informed the Demant Defendants as

follows:

> The Demant Group's attempted assertion of an inequitable conduct defense at the
> close of fact discovery is untimely and prejudicial. The February 20, 2007
> Scheduling Order entered in this case, agreed to by all parties, required amending
> pleadings on or before April 1, 2007--over four months ago. The Demant
> Group'[s] attempted assertion of an inequitable conduct defense at the close of
> discovery without any notice to ETG, and without the opportunity for ETG to
> conduct discovery on that defense, is highly prejudicial to ETG and improper.

---

[38] Exhibit 10: Plaintiff Energy Transportation Group Inc.'s Objections and Responses to
Defendants Widex A/S's Second, Third, and Fourth Supplemental Response and Objections to Plaintiff's
First Set of Common Interrogatories to All Defendants and Plaintiff's First Set of Interrogatories to
Defendant Widex A/S, served September 4, 2007 (emphasis in the original).

[39] Exhibit 11: Defendants Oticon A/S, Oticon Inc., Bernafon AG, WDH, Inc., and Bernafon,
LLC's Supplemental Objections and Responses Interrogatories Nos. 1-10 and 12 of Plaintiff's First Set
of Common Interrogatories to All Defendants, served August 31, 2007.

<u>**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**</u>

      The Demant Group's failure to previously raise any allegation of inequitable conduct based on the references it cites further reflects undue delay. The Demant Group knew of these alleged prior art references for months before attempting to assert an inequitable conduct defense on August 31st. For example, Dr. Larson testified that the Demant Group questioned him about the VA project as early as February 2007. Further, from other testimony, it has been revealed that the Demant Group has been working with Dr. Egolf, and/or Kim Weaver for the past 7 months. Thus, the Demant Group had every opportunity to assert an inequitable conduct theory based on the prior art of Best, Weaver, Egolf, and Graupe well before the close of fact discovery. There is no excuse for this undue delay.[40]

The Demant Defendants offered no response to ETG's objections.

## IV.    ARGUMENT

      This Court should deny Defendants' attempt to introduce a baseless and inflammatory claim of inequitable conduct more than seven months after the deadline set for amending pleadings and after all discovery has closed. Defendants' assertion that they acted diligently in pursuing discovery on the issue of inequitable conduct is belied by the fact that all of the alleged prior art that Defendants now assert Dr. Levitt should have disclosed to the PTO was, or should have been, known to Defendants before the February Deposition. As a result, Defendants had ample opportunity, long before the deadline for amending their pleadings, to depose Dr. Levitt on whether he was aware of the alleged prior art and, if so, what his motivations were for not disclosing it to the PTO. Defendants either made a conscious decision not to pursue those questions or failed to timely consider the defense of inequitable conduct. Either alternative demonstrates Defendants' lack of diligence in this matter. This Court should not now reward Defendants, and prejudice ETG, for Defendants' lack of diligence.

#9077932 v1

<u>PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION</u>
<u>FILED UNDER SEAL</u>

Moreover, Defendants have exhibited bad faith by unduly delaying bringing Defendants'

Motion for the purpose of either denying ETG any opportunity to take discovery on an entirely

new, previously unpled defense or delaying trial.  Defendants *admit* that "[t]his motion comes

within two and half [sic] months after the Defendants confirmed their inequitable conduct

beliefs."[41]  That approximately two and one-half month delay ensured that Defendants' Motion

was not submitted until after final expert reports were served and discovery was closed.  Denying

ETG any opportunity to take discovery on this new defense would result in undue prejudice, as

would delaying the trial to permit the necessary discovery.  Any one of these reasons provides a

sufficient basis for this Court to deny Defendants' Motion.

## A.  Defendants Cannot Show Good Cause to Modify the Scheduling Order[42]

Defendants' disregard for the Scheduling Order and its purpose is sufficient to deny

Defendants' Motion.  "'The purpose of a scheduling order is to provide concrete deadlines on

which the parties can rely in planning their respective litigation strategies.  If the court were to

permit parties to ignore these deadlines, unfair surprise would abound.'" *Inline Connection Corp.*

*v. AOL Time Warner Inc.*, 237 F.R.D. 361, 370 n.75 (D. Del. 2006) (quoting, *McLaughlin v.*

*Diamond State Port Corp.*, Civ. A. No. 03-617(GMS), 2004 WL 2958664, *4 (D. Del. Dec. 21,

2004)).  Accordingly, Fed. R. Civ. P. 16(b) provides that "[a] schedule shall not be modified

---

[40] Exhibit 12: Plaintiff Energy Transportation Group Inc.'s *Objections and Responses to Demant Group Oticon A/S, Oticon Inc., Bernafon AG, WDH Inc., and Bernafon, LLC's Supplemental Responses and Objections* Filed on August 31, 2007, served September 10, 2007.

[41] Defendants' Opening Brief at 12.

[42] Despite Defendants' failure to move this Court to modify the Scheduling Order so that they could file their present motion, Defendnats recognize that they must satisfy the "good cause" standard of Fed. R. Civ. P. 16(b) to be permitted to amend their answers and counterclaims.

#9077932 v1

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

except upon a showing of good cause and by leave of the district judge . . . ." Fed. R. Civ. P.
16(b). "'Good cause' under Rule 16(b) focuses on the diligence of the party seeking the
modification of the scheduling order." *Componentone, L.L.C. v. Componentart, Inc.* 2007 WL
2580635, *2 (W.D. Pa. August 16, 2007); *see also E. Minerals & Chems. Co. v. Mahan*, 225
F.3d 330, 340 (3d Cir. 2000).

A focus on Defendants' actions during the now-completed fact discovery phase of this
matter reveals a lack of diligence in seeking the facts that they now allege support their *de facto*
request to modify the Scheduling Order. Defendants' actions also reveal a lack of diligence in
bringing their motion once they claim that they learned those facts.

1.  **Defendants Cannot Establish Diligence in Seeking the Factual Basis for
    Their Allegations**

Defendants not only fail to advise the Court that they either knew or should have known
about the Nunley Article, the Stein Article, the Zeta Noise Blocker, the Egolf Article, the Egolf
Abstract and the Egolf Report before the February Deposition but actually actively attempt to
hide that fact. Defendants had knowledge of the Nunley Article and the Stein Article at least as
early as January 5, 2007, when ETG first produced them. The Stein Article contains a reference
to the Zeta Noise Blocker; thus, Defendants also had knowledge of the Zeta Noise Blocker at
least as early as January 5, 2007. Indeed, Defendants specifically questioned Dr. Levitt about the
Zeta Noise Blocker during the February Deposition. Moreover, the three remaining pieces of
alleged prior art were prepared years ago by Defendants' own paid consultant. Defendants had
actual or constructive knowledge of Dr. Egolf's work (including his Article, Abstract and Report)
since they hired him as a paid consultant in February 2006. Indeed, Defendants produced the
Egolf Article to ETG on April 10, 2007.

-13-

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION**
**FILED UNDER SEAL**

Rather than inform the Court of these facts, Defendants attempt to mislead it by asserting that they could not develop a full picture of their inequitable conduct allegations until they "finally had access in mid-August to the file cabinets of prior art and contemporaneous documents in Dr. Levitt's garage. (They had been seeking these documents long before.)"[43] Obviously, Defendants had not "been seeking these documents long before" with any level of diligence. Otherwise, they would have found them in the documents produced to them more than seven months earlier. Moreover, not only were Defendants offered access to the documents at Dr. Levitt's home as early as June 18, 2007 (Defendants declined to inspect the documents until August 20), but they had *actual or constructive knowledge of all of the art* months prior.

Most notably, ETG fails to grasp how Defendants can assert that they were unaware of the Egolf documents before those documents were discovered at Dr. Levitt's home. Defendants cannot reasonably mean to suggest that Dr. Egolf, *their own paid consultant*, was unaware of *his own work*. Defendants assert that some of the inventions in the patents are identical to the work of Dr. Egolf: "Dr. Levitt intended to misappropriate as his own the work of Dr. Egolf."[44] Thus, to find good cause to modify the Scheduling Order, this Court would have to believe that Dr. Egolf consulted with Defendants for more than a year before the February Deposition and, in that time period, never informed his employers that certain claims in the patents were a duplication of work that he purportedly published.[45] Moreover, the evidence suggests that Defendants were

---

[43] Defendants' Opening Brief at 15.

[44] Defendants' Opening Brief at 9.

[45] If, in fact, Dr Egolf did fail to inform his employers of the Egolf Article, the Egolf Abstract and the Egolf Report before February 2007, ETG can only surmise that he did not consider the information that he was reviewing an attempt to misappropriate his work.

#9077932 v1

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

well aware of the Egolf art by the time of the February Deposition. Defendants made a point of

questioning Dr. Levitt about his familiarity with Dr. Egolf and with Dr. Egolf's work. As with

the Nunley Article, the Stein Article and the Zeta Noise Blocker, Defendants' suggestion that

they first became aware of this art when it was produced from Dr. Levitt's garage demonstrates a

lack of candor with the Court.

Because they were aware of all of this art long before it was produced from Dr. Levitt's

garage and before the deadline in the Scheduling Order to amend pleadings, Defendants aver that

"even for the documents that the Defendants were aware of, they still needed to depose Dr. Levitt

to see if there was an explanation for the nondisclosure to determine if there were grounds for a

motion to amend based on inequitable conduct."[46] Although this statement is reasonable,

Defendants immediately follow it with a specious statement: "The first opportunity the

Defendants were given to question the inventor on much of the important prior art and

contemporaneous documents was on August 23, 2007, near the end of fact discovery."[47]

In other words, the core premise of Defendants' claim of diligence and, thus, their

argument for good cause, is that, even though they had actual or constructive knowledge of all of

the alleged prior art that forms the basis of their claims of inequitable conduct at least 10 months

ago, they were deprived of an opportunity to question Dr. Levitt about that art until the August

Deposition. Relying on that core premise demonstrates a lack of candor. Defendants questioned

Dr. Levitt for a full 14 hours during the February Deposition, a deposition that occurred a

minimum of almost two months after they knew or should of known of all of the art they now

---

[46] Defendants' Opening Brief at 16.

[47] Id.

#9077932 v1

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

claim forms the basis for an inequitable conduct defense.

Moreover, the Scheduling Order, to which Defendants stipulated, was in place at the time

of the February Deposition.  When Defendants took the February Deposition, they knew of the

April 1 deadline for filing motions to amend pleadings.  With actual or constructive knowledge

of all of the art that they now rely upon to assert their allegations of inequitable conduct,

Defendants should have understood that they needed to investigate promptly and take action on

any theory of inequitable conduct so as to meet that deadline.  Despite that knowledge,

Defendants elected not to ask a single question about the Nunley Article, the Stein Article or the

Egolf work.

Finally, Defendants cannot credibly claim that they could not have known that Dr. Levitt

might be aware of that art until it was discovered at his home.  Defendants highlight that,

> [d]uring the time of his work at [City University of New York ("]CUNY[")] and
> for Audimax, Dr. Levitt was actively following what others were doing and had
> written in the field.  If for no other reason than his status as a well-known member
> of review and editorial panels in fields and an active professor at CUNY, he
> needed to keep abreast of the work of others.  He was particularly interested in the
> work of others who, as he was doing, were trying to develop practical, digital
> hearing aid technology.[48]

Defendants knew of Dr. Levitt's work at CUNY and Audimax before the February Deposition.

Presumably, they held similar opinions, at that time, as to whose work he was interested in.

Defendants also knew, at that time, what prior art the inventors had disclosed to the PTO.  If

Defendants believed that the art now relied upon to support their claims of purported inequitable

conduct was material to the patents-in-suit (even though it is not), they need only have asked Dr.

---

[48] Defendants' Opening Brief at 3.

<u>PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION</u>
<u>FILED UNDER SEAL</u>

Levitt if the inventors were aware of that art when the patent applications were filed and, if so, why they did not disclose the art to the PTO.[49]  Defendants elected not to do so during the February Deposition, even though Dr. Levitt was designated to testify on behalf of ETG concerning "[a]ctivities related to the development, preparation and filing of the applications that led to the patents in suit."  The disclosure of material prior art certainly fell within that topic and would have been of interest to a defendant diligently exploring the possibility of an inequitable conduct defense.  Defendants then elected not to conduct a personal deposition of Dr. Levitt until near the close of discovery, well after the deadline set in the Scheduling Order for modifying pleadings had passed.

Defendants cannot establish that they were diligent about seeking the information they now rely upon to justify a modification of the Scheduling Order.  Defendants knew about the alleged prior art that forms the basis of their claims of inequitable conduct at least as early as January 2007.  They knew that that art was not disclosed to the PTO as part of the applications for the patents-in-suit.  If the art is as obviously material to the claims of the patents-in-suit as Defendants assert, presumably it was as obviously material when they first became aware of it.  Yet, Defendants made *no effort to timely determine, despite the opportunity to do so, whether the* inventors knew of the art and its materiality or whether the inventors had the requisite intent to mislead the PTO.  Instead, Defendants waited until the deadline for requesting leave to amend

---

[49] An alternative is that Defendants did not believe, at that time, that the art was material and only discovered its purported materiality as their other defenses began faltering.  The fact that none of the alleged prior art that now forms the basis for Defendants' allegations of inequitable conduct -- art that is allegedly so close to the inventions disclosed in the patents-in-suit that it is now clear to Defendants that Dr. Levitt stole his ideas from others -- was disclosed in Defendants' Prior Art Statements served on

-17-

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

their pleadings had long passed.  Diligence demands more.

### 2.  *Defendants Cannot Establish Diligence in Bringing Their Motion*

Even if Defendants had been diligent in seeking the factual basis for their claims of inequitable conduct, they were not diligent in seeking permission to modify the Scheduling Order.  "[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent.  A party who delays in seeking an amendment is acting contrary to the spirit of the rule."  6 Wright & Miller, *Federal Practice & Procedure* § 1488 (2d ed. 1990).

Defendants admit that they have known of their intent to file an inequitable conduct defense since on or before August 9, 2007, asserting in their opening brief that "ETG has been on notice that the Defendants were asserting inequitable conduct as a defense . . . from Defendant Widex A/S's supplemental interrogatory responses served on August 9, 2007."[50]  ETG objected, however, to those assertions, advising the Widex Defendants that the assertions were untimely and improper.  Defendants never responded to ETG's objections, thus reasonably leading ETG to believe that Defendants recognized the weakness of their position.  Tellingly, at no time -- until they filed their motion -- did Defendants advise the Court that they intended to request leave to amend their answers in this regard, despite this Court's warnings concerning the importance of maintaining the trial date.

Again, Defendants attempt to blame this lack of diligence on not having access to the documents at Dr. Levitt's home until mid-August.  The fact is, though, that they have had actual

---

March 30, 2007 suggests that Defendants either believed, at that time at least, that it was not prior art, that it was not material, or both.

[50] Defendants' *Opening Brief* at 17.

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

or constructive knowledge of those documents since at least January.

### B. Defendants' Actions Warrant Denial of Leave to Amend

In addition to denying Defendants leave to amend their pleadings because they cannot

show good cause to modify the Scheduling Order, this Court also has discretion to deny

Defendants' Motion because Defendants have demonstrated undue delay, bad faith and dilatory

motives, the amendment would prejudice ETG, and the amendment would be futile. Although

Fed. R. Civ. P. 15(a) states that leave to amend a pleading is to be "freely given when justice so

requires," such leave is not without limits. "[A] district court has discretion to deny a request to

amend if it is apparent from the record that (1) the moving party has demonstrated undue delay,

bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would

prejudice the other party." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3rd Cir. 2003);

*see, e.g., Inline Connection Corp.*, 237 F.R.D. at 369 (leave to add new inequitable conduct

theories denied, even where inequitable conduct had already been pled, where defendants unduly

delayed raising theories until during the preparation of expert reports, and plaintiff would be

prejudiced); *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp.2d 411, 423 (D. N.J. 2005)

(leave to amend to add affirmative defenses denied for futility); *Miller Products Co., Inc. v.*

*Veltek Associates, Inc.*, 218 F.R.D. 425, 427 (D. Del. 2003) (leave to amend to add counterclaim

denied where it would require reopening discovery and unduly delay trial). Defendants' Motion

implicates all of these factors.

### 1. Defendants Have Demonstrated Undue Delay, Bad Faith and Dilatory Motives

As discussed previously, Defendants have had the knowledge and the opportunity to

develop the claims that they now seek to assert since February of 2007, well before the deadline

#9077932 v1

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

to amend pleadings set in the Scheduling Order. Defendants cite to *Symbol Techs., Inc. v.
Proxim Inc.*, C.A. No. 01-801-SLR, 2003 U.S. Dist. LEXIS 6686, at *5-7 (D. Del. Apr. 17, 2003)
and *Ciena Corp. v. Nortel Networks Corp.*, 233 F.R.D. 493, 495 (E.D. Tex, 2006) for the
proposition that "[t]he addition of allegations of inequitable conduct based on prior art that was
produced late at the end of discovery cannot be viewed as dilatory, undue delay, or the product of
bad faith."[51] Although the proposition cited indeed may be sound, it has nothing to do with the
facts of this case. Here, Defendants do not seek to add "allegations of inequitable conduct based
on prior art that was produced late at the end of discovery." Rather, they seek to add allegations
of inequitable conduct based on alleged prior art that was produced or known about early, at the
beginning of discovery. Such behavior can and should be viewed as dilatory, undue delay, and
the product of bad faith.

Even absent the lack of diligence on their part in developing their claims, Defendants
knew of their intent to assert a defense of inequitable conduct at least as early as August 9 and
had all of the facts on which they rely for their allegations by the completion of the August
Deposition. Yet, Defendants elected to wait until October 19, the same day that ETG's rebuttal
expert report on validity was due, to inform ETG of their intent to file their motion, thus ensuring
that ETG would have no opportunity of hiring and obtaining the advice of an expert to respond to
those amendments. They then waited more than two more weeks to actually file their motion.
Such conduct demonstrates bad faith and a dilatory motive. Waiting more than two months after
knowing of their allegations to file Defendants' Motion is sufficient, in and of itself, to deny

---

[51] Defendants' Opening Brief at 16.

<u>PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION</u>
<u>FILED UNDER SEAL</u>

Defendants' Motion because of the resulting prejudice to ETG and the Court. *Toth v. Glazer*, 163

F.R.D. 549 (E.D. Wis. 1995) (denying motion to amend to add affirmative defenses because of

prejudice to plaintiff and court where defendant waited "almost two more months" after

defendant knew about defenses before moving to amend).

Moreover, Defendants seek to add their allegations after the close of discovery. In *Ciena*

*Corp.*, cited by Defendants as an example of diligence, almost three months of discovery

remained after the court issued its decision. 233 F.R.D. at 496. Here, as scheduled, the trial of

this matter will have concluded within three months of the Court's decision on Defendants'

Motion.

> [A]mendments of pleadings are particularly inappropriate, absent exceptional
> circumstances, once discovery has closed. *See Lifescan Inc. v. Polymer Tech. Int'l*
> *Corp.*, 35 U.S.P.Q.2d 1225, 1238 (W.D. Wash. 1995) (Denying defendant's
> motion to amend its answer to add the defense of inequitable conduct where
> "[e]xtensive discovery [had] already occurred and any further discovery ... would
> jeopardize the current trial date."); *see also Toth*, 163 F.R.D. at 549-50 (Denying
> motion to amend where discovery had closed since "[a]n amendment here would
> prejudice the plaintiff either by denying them [sic] discovery or by adjourning the
> case."); *Elf Atochem, N. Am., Inc. v. United States*, 161 F.R.D. 300, 301-02 (E.D.
> Pa. 1995) ("Motion [to amend] is untimely based on the fact that discovery is
> virtually complete, and trial is looming close.").

*Remington Arms Co., Inc. v. Modern Muzzleloading, Inc.*, 1998 WL 1040949, *2 (M.D. N.C.

1998). No "exceptional circumstances" exist in this case that would warrant granting

Defendants' Motion.

In fact, the circumstances surrounding Defendants' Motion are remarkably similar to

those found in *Remington Arms*. Here, as in that case, more than one year after filing their most

recent answer and counterclaim, "Defendant[s] seek[] leave to amend to add the affirmative

defense of inequitable conduct, after the close of discovery, and within a short time of the

-21-

PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL

scheduled trail date." *See id.* at \*1. Here, as in that case, "Defendant[s] allege[] that Plaintiff committed inequitable conduct by failing to disclose material prior art during prosecution of the [patents-in-suit]. *See id.* In *Remington Arms*, evidence existed "in the record indicating that Defendant was aware of the potential prior art as early as" three months before and suggesting that it was aware of the potential prior art five months before filing its motion; *id.* at 2; here, evidence exists in the record indicating that Defendants were aware of the potential prior art at least as early as *ten months* before filing Defendants' Motion. In *Remington Arms*, the defendant filed its motion to amend more than six months before the scheduled trial date; *id.;* here, Defendants filed Defendants' Motion *less than three months* before the scheduled trial date. The court in *Remington Arms* concluded that the prejudice to the plaintiff created by these circumstances "in conjunction with Defendant's unwarranted delay, justifies denying leave to amend." *Id.* This Court should rule likewise.

## 2.  Defendants' Amendments Would Prejudice ETG

The addition of a new, highly complex defense at this late stage of the litigation would unduly prejudice ETG. "'A party is unduly prejudiced if amendment would cause surprise, result in additional discovery, or add cost in the preparation to defend against new facts or theories.'" *Inline Connection Corp.*, 237 F.R.D. at 370 (quoting *Amquip Corp. v. Admiral Ins. Co.*, 231 F.R.D. 197, 199 (E.D. Pa. 2005). "For example, if the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial." *Elf Atochem N. Am., Inc.*, 161 F.R.D. at 301.

ETG has spent considerable time and effort since Defendants filed their answers and

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION**
**FILED UNDER SEAL**

counterclaims more than 20 months ago in responding to and preparing to respond to

Defendants' myriad affirmative defenses of noninfringement, invalidity, sales to the federal

government and laches, waiver and/or estoppel and to Defendants' counterclaims of declaratory

judgment of noninfringement and declaratory judgment of invalidity. ETG anticipates that this

Court, and even Defendants, would agree that Defendants' proposed amendments to their answer

and counterclaims interject new facts and theories into this action that would require ETG to

engage in new preparation, at additional cost of resources and time.

Defendants' assertions that ETG will not be prejudiced if the Court grants Defendants'

Motion assumes that ETG should be limited to the same lack of diligence in challenging this

baseless and inflammatory claim that Defendants have exhibited in bringing it. Defendants

assert that ETG "has full access to question [Dr. Levitt] and develop his testimony for trial,"[52] as

if an inventor's testimony is all that is ever presented to counter an allegation of inequitable

conduct. ETG presumes, though is not certain given Defendants' lack of diligence in bringing

this defense, that Defendants plan to do more at trial to establish their claim of inequitable

conduct than question Dr. Levitt. For example, ETG anticipates that Defendants will proffer

expert testimony as to the materiality of the alleged prior art that forms the basis of their claims,

as their expert on invalidity, Dr. Soli, has offered opinions on that issue.[53]

Certainly, ETG is entitled to refute Defendants' claims with more than Dr. Levitt's

testimony. *If* an inequitable conduct defense were properly pled, ETG would be entitled to -- and

would conduct -- fact and expert discovery to defeat it. Among other discovery, ETG would

---

[52] Defendants' Opening Brief at 17.

[53] Exhibit 13: Expert Report of Sigfrid Soli, Ph.D. *Regarding Invalidity of the ETG Patents* at 99.

<u>**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**</u>

interview and likely take depositions of Ken Kopper, the third named inventor, and one or more

of the patent attorneys involved in prosecuting the patents. In addition, ETG has asserted

privilege to communications between the inventors and the patent attorneys. It did so based on

the *absence* of an allegation of inequitable conduct. If an inequitable conduct defense had been

properly pled, those documents may have been produced and privilege may have been waived.

Certainly, if ETG did so, Defendants would seek to reopen discovery as to those documents.

Moreover, Defendants conveniently waited to seek to add their claims after it is too late

for ETG to identify additional experts who can offer relevant opinions as to the alleged

inequitable conduct issue, i.e., would an examiner have found any of the undisclosed information

material, or was it merely cumulative to the information that was disclosed?

The prejudice to ETG should not be measured by what Defendants deem to be sufficient

preparation to defend against these spurious allegations but by what ETG must actually do to

prepare for a trial that is less than three months away. ETG's preparation would, necessarily,

involve significantly more than questioning Dr. Levitt. Defendants knew this fact when they

filed their motion. Accordingly, Defendants' late-filed motion is nothing more than a deliberate

attempt to prejudice ETG, either by denying it discovery to which it is entitled or by delaying

trial. This Court has made clear that delaying trial is not an option.

Moreover, Defendants' assertion that this prejudice to ETG "is a consequence of its own

making, as ETG could have, and should have, produced the relevant documents at the start, and

not at the end, of discovery,"[54] ignores the facts. ETG did produce both the Nunley Article and

---

[54] Defendants' Opening Brief at 17.

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

the Stein Article "at the start, and not at the end, of discovery." Defendants were aware of the Zeta Noise Blocker either when or before ETG produced the Stein Article. And Defendants hired Egolf in February 2006, thus giving them at least constructive knowledge all of his work. If, in fact, Defendants were unaware of the Egolf work even before the start of discovery, a premise that is difficult to accept considering that they hired him in February 2006, they cannot reasonably suggest that ETG was responsible for their failure to communicate with their own paid consultant.

Defendants also assert that ETG will not be prejudiced because it has been "on notice" of Defendants' inequitable conduct assertions since the Widex Defendants served their supplemental interrogatory responses on August 9, 2007.[55] However, ETG, upon receipt of those responses, advised the Widex Defendants that ETG objected to them, considering the impending close of discovery and lack of notice to ETG. The Widex Defendants lack of response to ETG's objections reasonably suggested to ETG that the Widex Defendants conceded to these arguments.

Furthermore, rationality dictated that ETG not use its limited resources in the closing days of fact discovery to explore new, unpled defenses when it was still attempting to get discovery from Defendants on defenses and claims actually pled in this case. Even if ETG had unlimited resources and cooperation from Defendants, the inequitable conduct allegations in the Widex Defendants' supplemental interrogatory responses do not match those in Defendants' Motion. The Demant Defendants also attempted to assert an inequitable conduct defense in supplementary responses to interrogatories; their allegations were completely different from

---

[55] *Id.*

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION**
**FILED UNDER SEAL**

those of the Widex Defendants and those asserted in Defendants' Motion. ETG also objected to

the Demant Defendants' attempt to assert the defense as highly prejudicial to ETG and improper.

The Demant Defendants also failed to respond to ETG's objections, suggesting to ETG that they

conceded to these arguments. Under Defendants' theory of prejudice, ETG is not prejudiced

because it could have used its resources during the last waning days of fact discovery to prepare

for unpled inequitable conduct allegations, some of which Defendants might include in a motion

to amend pleadings along with other allegations that had never been asserted.

　　　　This theory of prejudice holds distinct similarities to Defendants' theory that ETG will

not be prejudiced by the amendment because it had an opportunity to question Dr. Levitt about

inequitable conduct during the October Deposition, after Defendants supplied ETG with a draft

of their amended answers and counterclaims. Ignoring, for the moment, that Defendants used the

entire time allotted for the deposition and then some, ETG fails to grasp how questioning a

deposition witness, as a prophylactic measure, about allegations of inequitable conduct that were

not part of the case, were not guaranteed to enter the case in their existing form, and would be

inappropriate to add to the case after the deposition anyway is not tantamount to the type of

additional discovery and cost that courts recognize as prejudicial.

### 3. Defendants' Amendments Are Futile

　　　　Even if the inequities inherent in granting Defendants' Motion could be ignored, this

Court's denial of Defendants' Motion is justified by the futility of the proposed amendments.

This Court may deny a request for leave to amend when the proposed amendment would be

futile, such as when the amended pleading would be subject to a motion to dismiss, motion for

summary judgment, or where the movant is unable to plead with particularity all of the specific

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

elements necessary to support the claim. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332

(3d Cir. 2002) (amendment would be futile where amended complaint would fail to state a claim

upon which relief could be granted); *Warner-Lambert Co. v. Teva Pharm., Inc.*, 289 F. Supp. 2d

515, 544-45 (D. N.J. 2003) (denying defendant's motion for leave to amend to add inequitable

conduct defense as futile because plaintiff would be entitled to summary judgment on defense);

*Med. Graphics Corp. v. Hartford Fire Ins. Co.*, 171 F.R.D. 254, 257 (D. Minn. 1997) (leave to

amend answer should be denied if proposed defenses are legally insufficient so as to invite

motion to strike under Rule 12(f)).

 First, Defendants' proposed amendments are futile because they are premised on alleged

prior art that was not disclosed to ETG within the dictates of the Scheduling Order.  The

Scheduling Order required each defendant to provide ETG with a list of "all of the prior art on

which it relies" by March 30, 2007.  Despite having actual or constructive knowledge of all of

the alleged prior art on which they now rely months before the deadline for submitting their Prior

Art Statements, Defendants failed to identify any of that art.  Instead, Defendants attempted to

introduce a majority of the alleged prior art through supplemental interrogatory responses in

August, more than four months after the deadline.

 Even then, Defendants failed to identify the Nunley Article as prior art.  Defendants

identified the Nunley Article as prior art for the first time in the September 17, 2007 report of

Defendants' expert on invalidity, Dr. Soli.  Apparently, however, Dr. Soli did not consider it

"obvious to one of ordinary skill in the art to use the Nunley 'programmable digital processor' in

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

the 'forward path' to implement the method of the 1982 Egolf Article,"[56] as he failed to express

such an opinion in his report.[57]

Because none of the alleged prior art relied upon by Defendants is properly before this

Court, the art should not be considered by this Court, and it cannot be relevant to Defendants'

Motion. Without the alleged prior art, Defendants' proposed amendments are futile.

Defendants' amendments remain futile even if the art were properly before the Court.

Inequitable conduct allegations carry a heavy burden. "One who alleges inequitable conduct

arising from a failure to disclose prior art must offer clear and convincing proof of the materiality

of the prior art, knowledge chargeable to the applicant of that prior art and of its materiality, and

the applicant's failure to disclose the prior art, coupled with an intent to mislead the PTO."

*Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed. Cir. 1995). The Federal Circuit imposes a

strict intent requirement, and the required intent to mislead is not presumed or inferred from the

mere failure to disclose known, material prior art. *Manville Sales Corp. v. Paramount Sys., Inc.*

917 F.2d 544, 551-52 (Fed. Cir. 1990); *see also Molins PLC,* at 1178. "Materiality and intent to

deceive are distinct factual inquiries, and each must be shown by clear and convincing evidence."

*Life Techs., Inc. v. Clontech Lab., Inc.,* 224 F.3d 1320, 1324 (Fed Cir. 2000).

Even if the Court elects to allow Defendants to ignore multiple aspects of the Scheduling

Order, Defendants' proposed amendments are futile because they cannot establish the necessary

---

[56] *Defendants' Opening Brief* at 5.

-28-

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

elements of Defendants' proof. The only element that Defendants can establish is that the

alleged prior art was not disclosed to the PTO. That element alone, however, proves nothing. In

every case, there will be information that a defendant alleges to be prior art that was not before

the PTO during the patent application process. It is insufficient to allege that prior art exists that

was not submitted; the prior art must be *more* relevant than the art that the PTO had when it

considered the application.

Moreover, Defendants must show that the inventors were aware both of the alleged prior

art and of its materiality. After questioning Dr. Levitt for four days, Defendants are unable to

show even that the inventors were aware of some of the alleged prior art on which they rely.

Instead, they opine about what art Dr. Levitt should have been aware of because of his

prominence in the hearing-aid industry. Also, at best, Defendants have testimony from Dr. Levitt

*now*, 23 years later, that one or more of the pieces of alleged prior art might be relevant to his

inventions. They did not ask, nor did they plead, that Dr. Levitt knew of its relevance *at the

relevant time - during the pendency of the patent applications in question.*

Finally, Defendants cannot establish the requisite intent to mislead the PTO, even for

those pieces of alleged prior art of which the inventors were aware at the relevant time. Rather

than show any evidence that the inventors attempted to mislead the PTO, Defendants attempt to

convince the Court that there was some attempt on behalf of ETG and/or Dr. Levitt to mislead

---

[57] This heretofore undisclosed combination of the Nunley Article with the Egolf Article appears
to be posited for the sole purpose of justifying Defendants' lack of diligence *by combining the Nunley
Article with a piece of art that Defendants assert has been hidden from them by Dr. Levitt.* To ETG's
knowledge, none of Defendants' attorneys have been qualified as experts in this litigation. Accordingly,
their opinions as to obviousness to one of ordinary skill in the art are irrelevant to any issue before this
Court and inappropriate in papers filed with this Court.

#9077932 v1

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

them as to Dr. Levitt's knowledge of the alleged prior art.[58]  For example, Defendants insinuate

that Dr. Levitt, at some point, denied knowledge of the Stein Article: "Dr. Levitt *has now*

*admitted* knowledge of the Stein Article as of the June 1985 time frame."[59]

REDACTED

because ***Defendants asked the question, for the first time, at that deposition***.  Had

Defendants bothered to ask the same question during the February Deposition, Dr. Levitt

presumably would have admitted to the same knowledge.

Defendants devote an entire subsection of the Statement of Facts section of their opening

brief, "The Discovery That Revealed the Inequitable Conduct," to allegations of an attempt to

hide materials from them that they already had.  As with much of the rest of the Statement of

Facts section of Defendants' opening brief, this subsection has less to do with fact than it has to

do with baseless allegations and arguments.[60]  Preceding those allegations and arguments with

the phrase "the fact is" does not make them facts.  For example, neither Dr. Levitt nor ETG ever

intended to conceal the Egolf Report discovered at Dr. Levitt's home from Defendants, as they

---

[58] Even if Defendants' allegations of litigation misconduct had any basis in truth, which they do
not, such allegations cannot support declaring a patent unenforceable for inequitable conduct. *See
Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co.*, 380 F. Supp. 2d 457, 464 (D.N.J. 2005) (citing
*Aptix Corp. v. Quickturn Design Sys. Inc.*, 269 F.3d 1369, 1375 (Fed. Cir. 2001)).

[59] Defendants' Opening Brief at 10 (emphasis added).

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

allege. Dr. Levitt's deposition testimony does not support such an allegation. Instead, that testimony shows a misunderstanding on the part of Dr. Levitt, who is not an attorney, of what happens to documents once he delivers them to counsel for review.[61] ETG, which became aware of the existence of the Egolf report at Dr. Levitt's home at the same time as Defendants, produced the document as soon as it had an opportunity to review it. ETG never asserted a privilege following its review of the document.

Regardless, Defendants' allegations concerning the production of documents in this action cannot establish an intent to mislead the PTO more than 20 years ago. Without such an intent, no inequitable conduct exists.

---

[60] Consistent with their disregard for the Scheduling Order in this action, Defendants also disregard Local Rule of Civil Practice and Procedure 7.1.3(c)(1)E. Instead of providing a concise statement of facts to aid the Court in determining the points in controversy, Defendants use the Statement of Facts section in their opening brief to make allegations and arguments that lack any factual support, as evidenced by the dearth of supporting references to appendices or the record. In this vein, Defendants refer to claim 5 of the '850 Patent as the "Levitt Noise Blocker" at page 10 of their opening brief with no citation for the reference because *none exists*. Neither the inventors nor ETG have ever referred to their invention as the "Levitt Noise Blocker." Rather, the reference is nothing more than a contemptible attempt by Defendants to support their allegations with insinuation because they cannot support them with facts.

[61] One source

PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL

## V.    CONCLUSION

This Court should deny Defendants' Motion.  Defendants cannot show good cause to modify the scheduling order so as to permit amendment to the pleadings.  Furthermore, even if Defendants could show good cause to modify the scheduling order, each of the following factors justifies denying Defendants' Motion: Defendants' inequitable conduct in bringing the motion, the prejudice to ETG and the Court should the motion be granted, and the futility of the proposed amendments contained in the motion.

Dated:   November 21, 2007

Respectfully Submitted,

Edmond D. Johnson (No. 2257)
Thomas H. Kovach (No. 3964)
PEPPER HAMILTON
Hercules Plaza Suite 5100
1313 Market Street
Wilmington, DE 19899-1709

Attorneys for Energy Transportation Group,
Inc.

OF COUNSEL:

Brian M. Buroker
Robert L. Kinder, Jr.
HUNTON & WILLIAMS LLP
1900 K Street, N.W., Suite 1200
Washington, DC 20006-1109
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201

Maya M. Eckstein
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074

-32-

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

Telephone: (804) 788-8788
Facsimile: (804) 343-4630

Marty Steinberg
HUNTON & WILLIAMS LLP
1111 Brickell Avenue
Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460

#9077932 v1

**PORTIONS CONTAIN CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION
FILED UNDER SEAL**

## CERTIFICATE OF SERVICE

I do hereby certify that on the 21st day of November 2007, I caused a true copy of

*PLAINTIFF ENERGY TRANSPORTATION GROUP, INC.'S ANSWERING BRIEF IN*

*OPPOSITION TO DEMANT AND WIDEX DEFENDANTS' MOTION TO AMEND*

*ANSWER AND COUNTERCLAIM* to be served upon the following parties via hand delivery:

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

John M. Romary
C. Gregory Gramenopoulos
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER
901 New York Ave., N.W.
Washington, DC 20001-4413

*Attorneys for William Demant Holding A/S,
WDH Inc., Oticon A/S, Oticon, Inc.,
Bernafon AG, and Bernafon LLC*

Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
Wilmington, DE 19899

William H. Mandir
David J. Cushing
Carl J. Pellegrini
Brian K. Shelton
SUGHRUE MION PLC
2100 Pennsylvania Ave., N.W., Ste. 800
Washington, DC 20037

*Attorneys for Widex A/S, Widex Hearing
Aid Co., Inc.
Corporation*

Edmond D. Johnson (No. 2257)

-34-

#9077932 v1