# EXHIBIT 1

CONFIDENTIAL -- FILED UNDER SEAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENERGY TRANSPORTATION GROUP, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SONIC INNOVATIONS, INC., et al, ) <br> ) <br> Defendants. ) <br> ) | C.A. No. 05-422 (GMS) |

## PLAINTIFF'S FOURTH MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF PAID FACT WITNESSES

Plaintiff Energy Transportation Group, Inc. ("ETG"), respectfully moves the Court to exclude the testimony of David Egolf, Kim A. Weaver and Daniel Graupe, collectively referred to as the "Paid Witnesses," and any invalidity defenses based upon their work. Defendants paid these individuals for their fact testimony and for soliciting the testimony of other fact witnesses. Thus, they presumptively are incompetent to testify and their testimony and all inferences and evidence derived from their testimony, including any defenses that relate to their testimony, should be excluded.

### I. BACKGROUND

Each Paid Witness received substantial compensation from Defendants to provide non-expert fact testimony.

REDACTED

---

[1] All excerpts from Dr. Egolf's deposition are attached at Exhibit A.

REDACTED

## II. **ARGUMENT**

At common law, parties were prohibited from compensating fact witnesses to provide fact testimony in judicial proceedings. *See* 14 Williston on Contracts § 1716 (3d ed. 1972) ("As it is the duty of a citizen, when required to do so, to testify in court concerning facts within his knowledge for the compensation allowed him by law, a bargain to pay one who is amenable to process a further sum for his attendance as a witness is invalid both on grounds of public policy

---

[2] REDACTED

[3] All excerpts from Mr. Weaver's deposition are attached at Exhibit B.

[4] All excerpts from Mr. Graupe's deposition are attached at Exhibit C.

and for lack of consideration"); *see also* Restatement of Contracts § 552(1) (1932); 6A Corbin on Contracts § 1430 (1952); Calamari & Perillo, *Contracts* § 369 (1970).

The common law rule clearly prohibits paying fact witnesses for their testimony in an affidavit, during a deposition, or at a trial, *i.e.*, where a party's payment is related to the witness' testimony or to the fact that the individual is testifying. *In re Robinson*, 151 A.D. 589, 600 (N.Y. App. Div. 1912); *see also New York v. Solvent Chem. Co., Inc.*, 166 F.R.D. 284, 289 (W.D.N.Y. 1996). The policy behind the common law rule -- to prohibit witnesses with a duty to testify from receiving compensation for doing only that which they are already obligated to do -- applies both to the contingent and non-contingent compensation of fact witnesses. Moreover, it applies regardless of whether the testimony is truthful. *See, e.g., Hamilton v. Gen. Motors Corp.*, 490 F.2d 223, 228 (7th Cir. 1973); *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1524-26 (S.D. Fla. 1994), *aff'd in relevant part*, 117 F.3d 1328, 1335 n.2 (11th Cir. 1997); *see also In re Howard*, 372 N.E.2d 371, 374 (1977) ("[w]hether [made] to influence ... testimony to be truthful or otherwise, [payments to fact witnesses] have the clear appearance of impropriety, bring law officers, the legal profession, and the court into disrepute, and hinder the administration of justice"); *In re Porcelli*, 397 N.E.2d 830 (1979) (same).[5]

---

[5] Moreover, agreements between a party in a legal proceeding and a fact witness to compensate the witness for his testimony are unenforceable on public policy grounds. *See, e.g., Hamilton*, 490 F.2d at 227-29; *Alexander v. Watson*, 128 F.2d 627, 639 (4th Cir. 1942); *Goldstein v. Exxon Research & Eng'g Co.*, 1997 WL 580599, *2 (D.N.J. 1997) (finding that a party may not pay a fact witness for services rendered in connection with the preparation of his testimony, even if the arrangement is characterized as a "consulting agreement"; the "consulting agreement" is unenforceable); *see also* 7 Richard A. Lord, Williston on Contracts § 15.6 (4th ed. 1997); 81 Am. Jur. 2d *Witnesses* § 69 (1992); Restatement (Second) of Contracts § 73 cmt. b (1981). Courts have rejected such agreements as "lean[ing] toward the procurement of perjury; toward the raising of a class of witnesses who, for a sufficient consideration, will give testimony that shall win or lose the lawsuit; toward the perversion of justice; and toward the perversion of

The common law rule is embodied in Rule 3.4(b) of the Model Rules of Professional Conduct. *See* The Delaware Lawyers' Rules of Prof'l Conduct R. 3.4(b);[6] Model Code of Prof'l Responsibility DR 7-109(c) (1980); *see also Rentclub, Inc. v. Transamerica Rental Fin. Corp.*, 811 F. Supp. 651, 654-55 (M.D. Fla. 1992), *aff'd* 43 F.3d 1439, 1440 (11th Cir. 1995) (disqualifying an attorney for violations of ethical rules as a result of compensating a fact witness for his factual testimony); *Wagner v. Lehman Bros. Kuhn Loeb, Inc.*, 646 F. Supp. 643, 659-60 (N.D. Ill. 1986). District courts in this circuit have found it a violation of Rule 3.4(b) merely to offer to compensate a fact witness outside of reasonable compensation for time and expenses. *See, e.g., In re Complaint of PMD Enter. Inc.*, 215 F. Supp. 2d 519, 529-530 (D.N.J. 2002). *See also* Comment 3 to ABA Model Rules of Professional Conduct, Rule 3.4. In *PMD Enter.*, counsel for one of the parties contacted a member of an opposing party's control group and offered to pay him $100/hour to review records and assist in their preparation of the case. *PMD Enter.*, 215 F. Supp. 2d at 530. The court found this conduct, ***including the payments***, to violate the rules of professional conduct by clearly running afoul of the principle espoused by Rule 3.4(b). *Id.* at 532. Here, the Paid Witnesses were paid to review their files ***and*** for their testimony. *See* Egolf Dep. 19-20, Weaver Dep. 82-83. These payment were improper.

Nor can Defendants contend that their compensation to the Paid Witnesses merely compensated them for their time and expenses. This belated invention cannot prevail, as the Paid Witnesses' compensation was not "reasonable compensation" for their expenses.

REDACTED

---

our courts." *Goldstein*, 1997 WL 580599 at *4. Agreements to compensate a witness are also void for lack of consideration. *See, e.g., Hamilton*, 490 F.2d at 228; *Alexander*, 128 F.2d at 630.

[6] Delaware Rule of Professional Conduct 3.4(b) provides, in pertinent part, that "[a] lawyer shall not ... offer an inducement to a witness that is prohibited by law." The Delaware Lawyers' Rules of Prof'l Conduct R. 3.4(b) (2003).

REDACTED

The Court should exclude the Paid Witnesses' testimony, as well as all defenses relating to it. This was the action taken by the district court in *Golden Door,* where the court excluded "the testimony given . . . by any of the fact witnesses who received monetary compensation from Lloyds" and "all evidence tainted by the ethical violations." 865 F. Supp. at 1526-27. *See also Nat'l Labor Relations Bd. v. Thermon Heat Tracing Serv., Inc.,* 143 F.3d 181, 191 (5th Cir. 1998) (Garza, J., dissenting) (noting that the appropriate remedy to adopt with regard to paid witnesses is exclusion of the resulting testimony). Importantly, a decision striking the Paid Witnesses' testimony, but not Defendants' invalidity defenses relating to those witnesses, would prejudice ETG. Defendants asserted invalidity defenses related to work done by Egolf, Weaver and Graupe. As a result, ETG deposed these individuals and should be allowed to introduce that testimony if the Court opts not to exclude the defenses related to them.

### III.   CONCLUSION

For the foregoing reasons, ETG asks the Court to exclude the testimony of David Egolf, Kim A. Weaver and Daniel Graupe and defenses relating to their testimony.

Dated:   November 21, 2007          Respectfully Submitted,

Energy Transportation Group, Inc.

By Counsel:

_____
Edmond D. Johnson (No. 2257)
PEPPER HAMILTON
Hercules Plaza Suite 5100
1313 Market Street
Wilmington, DE 19899-1709

Attorneys for Energy Transportation Group, Inc.

OF COUNSEL:

Brian M. Buroker
Robert L. Kinder, Jr.
HUNTON & WILLIAMS LLP
1900 K Street, N.W., Suite 1200
Washington, DC 20006-1109
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

Maya M. Eckstein
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
Telephone: (804) 788-8788
Facsimile: (804) 343-4630

Marty Steinberg
HUNTON & WILLIAMS LLP
1111 Brickell Avenue
Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460

## CERTIFICATE OF SERVICE

      I do hereby certify that on the 21st day of November 2007, I caused a true copy of the foregoing Plaintiff's Fourth Motion In Limine To Exclude The Testimony Of Paid Fact Witnesses to be served via electronic service and by United States mail service upon the following counsel of record:

| | |
|---|---|
| Mary B. Graham (#2256)<br>James W. Parrett, Jr. (#4292)<br>MORRIS, NICHOLS, ARSHT &TUNNELL LLP<br>1201 N. Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br><br>John M. Romary<br>C. Gregory Gramenopoulos<br>FINNEGAN, HENDERSON, FARABOW, GARRETT<br>& DUNNER<br>901 New York Ave., N.W.<br>Washington, DC 20001-4413<br><br>*Attorneys for William Demant Holding A/S,*<br>*WDH Inc., Oticon A/S, Oticon, Inc., Bernafon*<br>*AG, and Bernafon LLC* | Donald E. Reid (#1058)<br>Jason A. Cincilla (#4232)<br>MORRIS, NICHOLS, ARSHT &TUNNELL LLP<br>1201 N. Market Street<br>Wilmington, DE 19899<br><br>William H. Mandir<br>David J. Cushing<br>Carl J. Pellegrini<br>Brian K. Shelton<br>SUGHRUE MION PLC<br>2100 Pennsylvania Ave., N.W., Ste. 800<br>Washington, DC 20037<br><br>*Attorneys for Widex A/S, Widex Hearing Aid*<br>*Co., Inc.* |



# EXHIBIT A

**REDACTED**

# EXHIBIT B

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ENERGY TRANSPORTATION GROUP, INC.,.

    Plaintiff,

vs.                   C.A. No. 05-422(GMS)

SONIC INNOVATIONS, INC., et al.,

    Defendants.

---

VIDEOTAPED DEPOSITION OF KIM A. WEAVER

Boulder, Colorado

Saturday, August 25, 2007

---

PURSUANT TO NOTICE, the videotaped deposition of Kim A. Weaver was taken on behalf of the Defendants at 1800 Broadway, Suite 300, Boulder, Colorado, on Saturday, August 25, 2007, at 9:10 a.m., before Debbie Zoetewey, Registered Merit Reporter and Notary Public within Colorado.

**Page 78**

1  Q. What did you know about his work?  10:45:07
2  A. His thesis -- he built a programmable  10:45:10
3  digital filter based on a current state-of-the-art  10:45:14
4  microprocessor. So it was largely a development  10:45:17
5  technology thesis.  10:45:21
6  MR. ROMARY: Let's take a break.  10:45:25
7  THE VIDEOGRAPHER: Off the record at  10:45:28
8  10:45.  10:45:29
9  (Recess taken.)  10:45:31
10  THE VIDEOGRAPHER: On the record at  10:50:19
11  10:50.  10:50:23
12  MR. ROMARY: Mr. Weaver, I want to thank  10:50:25
13  you for coming this morning, and we have no further  10:50:27
14  questions at this time. And counsel for ETG now  10:50:30
15  has an opportunity to ask you questions.  10:50:33
16  MR. BUROKER: I didn't know you were  10:50:36
17  going to be done. Let's take a break so I can get  10:50:37
18  organized and we'll go quicker that way. Just a  10:50:40
19  few minutes.  10:50:43
20  MR. ROMARY: Sure.  10:50:43
21  THE VIDEOGRAPHER: Off the record at  10:50:44
22  10:50.  10:50:46

**Page 79**

1  (Recess taken.)  10:50:47
2  THE VIDEOGRAPHER: On the record at  11:03:53
3  11:03.  11:03:54
4  EXAMINATION  11:03:54
5  BY MR. BUROKER:  11:03:57
6  Q. Good morning, Mr. Weaver. My name is  11:03:57
7  Brian Buroker, and I represent the plaintiff, ETG,  11:03:58
8  and I have some follow-up questions for you.  11:04:02
9  A. Okay.  11:04:04
10  Q. Before today have you ever given a  11:04:04
11  deposition?  11:04:06
12  A. No.  11:04:06
13  Q. Have you ever testified in court?  11:04:07
14  A. Yes.  11:04:10
15  Q. And what proceeding?  11:04:11
16  A. Had to do with my divorce.  11:04:13
17  Q. Other than your divorce proceedings, have  11:04:16
18  you ever testified in court?  11:04:17
19  A. No.  11:04:19
20  Q. Have you ever served as an expert  11:04:20
21  witness?  11:04:21
22  A. No.  11:04:22

**Page 80**

1  Q. You graduated from the University of  11:04:25
2  Wyoming in 1980 with your undergraduate degree;  11:04:26
3  correct?  11:04:31
4  A. Correct.  11:04:32
5  Q. What did you do between 1980 and 1982  11:04:32
6  when you started in your master's program at the  11:04:35
7  University of Wyoming?  11:04:40
8  A. I logged, cut trees, had a little break  11:04:40
9  between.  11:04:43
10  Q. That was your -- you were not involved in  11:04:43
11  any electrical engineering activities between 1980  11:04:44
12  and '82?  11:04:47
13  A. That's correct.  11:04:49
14  Q. How did you come to be involved in  11:05:03
15  providing testimony here today?  11:05:05
16  A. I was -- I was contacted by -- by  11:05:11
17  Mr. Romary. Actually, I was contacted by my head  11:05:21
18  professor, Dr. Dave Egolf. And I -- says,  11:05:25
19  there's -- there's a lawsuit going on and is it  11:05:29
20  okay if I give your name to the counsel? And I  11:05:34
21  said sure. And so then he called me -- called  11:05:38
22  me first and asked me.  11:05:43

**Page 81**

1  Q. Do you know when Dr. Egolf contacted you?  11:05:48
2  A. It was -- I believe it was April. April,  11:05:53
3  late March.  11:05:57
4  Q. Of 2007?  11:05:58
5  A. Yes.  11:06:00
6  Q. Did he provide you any documents for you  11:06:06
7  to look at at that time?  11:06:08
8  A. He -- in the mail he sent me, he said he  11:06:11
9  would; but he never actually sent them, so no.  11:06:14
10  Q. How many communications did you have with  11:06:20
11  Dr. Egolf at that time?  11:06:22
12  A. I had, I believe, two e-mails and a phone  11:06:25
13  call or two.  11:06:30
14  Q. And that's the total of communications  11:06:33
15  you had with Dr. Egolf before you contacted  11:06:36
16  Mr. Romary, or Mr. Romary contacted you?  11:06:39
17  A. Yes.  11:06:43
18  Q. When did that contact occur between you  11:06:44
19  and Mr. Romary?  11:06:46
20  A. It would have been late March, April of  11:06:49
21  this year.  11:06:52
22  Q. Were you engaged by Mr. Romary to provide  11:07:04

Page 82

1  consulting services at that time?  11:07:09
2  A. I guess you would call it consulting  11:07:13
3  services. He was asking me to recall work that was  11:07:16
4  done on the thesis and to give some general  11:07:19
5  information, help him understand a little better  11:07:25
6  the hearing aid systems, yes.  11:07:28
7  Q. Did you talk about compensation at that  11:07:30
8  time?  11:07:32
9  A. Yes.  11:07:32
10  Q. What was the arrangement made regarding  11:07:33
11  compensation?  11:07:34
12  A. I would be paid for time spent.  11:07:35
13  Q. At what rate?  11:07:39
14  A. 250 an hour.  11:07:40
15  Q. And have you been paid 250 an hour for  11:07:41
16  the time you spent?  11:07:46
17  A. I -- yes.  11:07:47
18  Q. Have you sent invoices?  11:07:48
19  A. I've sent one invoice.  11:07:49
20  Q. Approximately how many hours from the  11:07:52
21  beginning until your time here today have you spent  11:07:54
22  working with the defendant?  11:07:59

Page 83

1  A. Five hours earlier, and -- less than 20.  11:08:01
2  Around 20, I'd say.  11:08:09
3  Q. Did you look for documents to provide to  11:08:15
4  the defense counsel in this case?  11:08:20
5  A. Yes.  11:08:22
6  Q. Did you find any documents?  11:08:23
7  A. No.  11:08:25
8  Q. Where did you look?  11:08:27
9  A. I looked in my -- through my old files  11:08:28
10  and stuff. But I had actually recently cleaned  11:08:31
11  them out, because I thought, you know, keeping this  11:08:34
12  old thesis stuff around doesn't do me much good.  11:08:38
13  Of course, a few months later, I get a call.  11:08:42
14  Q. Did you -- you didn't even find your  11:08:45
15  master's thesis?  11:08:47
16  A. No.  11:08:49
17  Q. Prior to your deposition today, have you  11:08:59
18  reviewed any testimony of any other witnesses in  11:09:01
19  this lawsuit?  11:09:05
20  A. Have I -- have I reviewed testimony from  11:09:09
21  other witnesses?  11:09:12
22  Q. Correct.  11:09:13

Page 84

1  A. No.  11:09:14
2  Q. Have you been provided documents to  11:09:15
3  review?  11:09:17
4  A. I've gone through these documents, the  11:09:20
5  ones that we did years ago, but this is it.  11:09:22
6  Q. Apart from conversations you may have had  11:09:30
7  with Mr. Romary and Mr. Egolf, have you spoken with  11:09:3
8  anyone else about the information that you provided  11:09:36
9  today?  11:09:40
10  A. No.  11:09:41
11  Q. Did they ask you to provide an affidavit  11:09:45
12  or declaration?  11:09:47
13  A. Who is "they"?  11:09:49
14  Q. Did the defendant -- defense lawyers ask  11:09:51
15  you to provide an affidavit or a written statement  11:09:55
16  in this case?  11:09:59
17  A. I've provided no affidavits, no written  11:09:59
18  statements, no.  11:10:02
19     (Deposition Exhibit 211 was marked.)  11:10:31
20     MR. ROMARY: You may have copies of that,  11:10:45
21  if it's what I think it is.  11:10:46
22     MR. BUROKER: It's our notice.  11:10:49

Page 85

1     MR. ROMARY: May I see it?  11:10:50
2     MR. BUROKER: Sure. I think there's a  11:10:51
3  copy in the other room if you don't have it.  11:10:54
4     MR. ROMARY: It's okay. Go ahead  11:10:56
5  Q. (BY MR. BUROKER) What's been marked as  11:10:58
6  Exhibit 211 is a document that is a notice of  11:10:59
7  subpoena to you. Have you seen this document  11:11:03
8  before?  11:11:05
9  A. It arrived in my e-mail two or three days  11:11:06
10  ago.  11:11:11
11  Q. Took a look at it when it arrived in your  11:11:12
12  e-mail?  11:11:15
13  A. Just a very, very quick -- I did not read  11:11:17
14  it in depth, because it's a fat document.  11:11:18
15  Q. You're aware that the plaintiff, my  11:11:21
16  client, asked for you to look for certain  11:11:25
17  documents, though; correct?  11:11:28
18  A. Yeah. This only arrived like a day  11:11:31
19  before this meeting, two days before this meeting.  11:11:33
20  Q. Did you look for documents after the --  11:11:37
21  that document arrived?  11:11:40
22  A. I had previously already looked for  11:11:43

22 (Pages 82 to 85)

# EXHIBIT C

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ENERGY TRANSPORTATION GROUP, )
INC., )
 )
      Plaintiff, )
 )
   -vs- )  No. 05-CV-00422-GMS
 )
SONIC INNOVATIONS, INC., et )
al. )
 )
      Defendants. )

      Videotaped deposition of DANIEL GRAUPE, Ph.D., taken before TRACY L. BLASZAK, CSR, CRR, and Notary Public, pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, at Suite 3800, 500 West Madison Street, in the City of Chicago, Cook County, Illinois at 9:57 a.m. on the 10th day of September, A.D., 2007.

30a9e206-fbbe-468b-ab66-16bb781f8db1

Page 6

1  MR. MONCO: Dean Monco, Wood Phillips, representing
2  the witness, Professor Daniel Graupe.
3  THE VIDEOGRAPHER: Would the reporter swear in the
4  witness, please.
5       DANIEL GRAUPE, Ph.D.,
6  called as a witness herein, having been first duly
7  sworn, was examined upon oral interrogatories and
8  testified as follows:
9             EXAMINATION
10          by Mr. Bluestone:
11  Q  Good morning, Professor Graupe.
12  A  Good morning.
13  MR. BLUESTONE: Before we get started, I just want
14  to handle one preliminary matter. Phonak has agreed to
15  pay Professor Graupe at his consulting rate and
16  Mr. Monco for his time to defend it.
17      We noticed up the deposition. I don't know
18  if -- I'm assuming you might have some questions, ETG
19  might have some questions.
20      If you do, we would ask that you would agree to
21  pay for the time that you're spending on the deposition.
22      Is that okay with you guys?
23  MR. REITENOUR: Yes.
24  MR. BUROKER: No. You should have cleared that

Page 7

1  ahead of time.
2  MR. BLUESTONE: Okay. So you don't agree to do
3  that. Okay.
4  Q  All right. Professor Graupe, do you understand
5  that Phonak will be reimbursing you for your time at
6  your normal consulting rate?
7  A  I hope so.
8  Q  Now, depending on who wins the present
9  litigation, would you receive any benefit from that?
10 A  I don't think so, no.
11 Q  Okay. And are you an employee of any of the
12 parties in this case?
13 A  Not at all.
14 Q  And have you ever read the patents in this case,
15 the Levitt patents?
16 A  No. I don't even know which they are. I read
17 some papers of Levitt, but not the patents.
18 Q  Okay. Thank you.
19 MR. MONCO: I caution the witness, please speak up.
20 THE WITNESS: Yes, okay.
21 MR. MONCO: Just to make sure that he gets -- gets
22 your words.
23 THE WITNESS: I read some of his papers in the
24 literature, but I didn't read his patents.

Page 8

1  MR. BLUESTONE: Q  Okay. And if for some reason
2  your inventions are found to have been conceived earlier
3  than Mr. Levitt's, would you have any financial gain in
4  this case?
5  A  I don't -- Unfortunately, I don't own any of the
6  patents anymore.
7  Q  Okay. Thank you.
8  A  Actually, I never did.
9  Q  Okay. Have you ever been deposed before,
10 Professor Graupe?
11 A  I once was supposed to give character evidence
12 for one of the patients, one of the paraplegics with
13 whom I worked. But I never was asked by the attorney or
14 the judge to give evidence, so I was just sitting there
15 waiting for my turn until I was told that I can go, that
16 I am not needed, fortunately.
17 Q  Okay. But you've never been in a deposition
18 like what we're doing now, is that correct?
19 A  No, no.
20 Q  All right. Well, I'll give you some basic
21 ground rules of what's going to happen. I'm going to
22 ask you some questions, and your job is to give me
23 answers.
24     Do you understand?

Page 9

1  A  Yes.
2  Q  And if any of my questions are not clear, feel
3  free to ask me to clarify. I'll be happy to do so. But
4  if I don't ask you -- if you don't ask me to clarify,
5  I'm going to assume my question made sense. Is that
6  okay?
7  A  Yes, sure.
8  Q  And your job is simply just to answer the
9  questions that we've asked and that's it.
10 MR. BLUESTONE: I will get one preliminary matter,
11 guess another preliminary matter out of the way. I'm
12 going to mark as Exhibit 1 a document bearing control
13 Nos. PHO 173516 through 173668 and mark it as Graupe
14 Exhibit 1.
15    (Exhibit 1 marked as requested.)
16 MR. BLUESTONE: Q  I'd ask you, Professor Graupe,
17 to briefly look at this document and see if you recall
18 it.
19 A  It's quite a document. I see my CV here and
20 something from one of my books -- oh, the hard book.
21 No. Maybe. What's this here? It's another book of
22 mine, section of my other book. Which one is this?
23 These are two editions of the same book, I guess.
24 Q  We can go step by step through the exhibits.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENERGY TRANSPORTATION GROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 05-422 (GMS) |
| ) | |
| SONIC INNOVATIONS, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**EXPERT REPORT OF SIGFRID SOLI, Ph.D.
REGARDING INVALIDITY OF THE ETG PATENTS**

183. As set forth in the attached chart, it is my opinion that claim 2 is anticipated by Weaver and Graupe '818.

### 3. Claim 3

184. As set forth in the attached chart, it is my opinion that claim 3 is anticipated by Weaver, Best, and Graupe '818.

### 4. Claim 4

185. As set forth in the attached chart, it is my opinion that claim 4 is anticipated by Weaver, Best, and Graupe '818.

### 5. Claim 5

186. As set forth in the attached claim chart, Graupe '818 anticipates claim 5.

### 6. Claim 6

187. As set forth in the attached claim chart, claim 6 is anticipated by Weaver, Graupe '818 and the hearing aid described in the Best thesis.

## X. MATERIALITY OF REFERENCES THE EXAMINER DID NOT CONSIDER

188. I have been asked to consider whether the following documents would have been material to the examination of the claims in either of the ETG patents: the 1984 VA Rehabilitation R&D Progress Report; the Egolf, "Review of the Acoustic Feedback Literature from a Control Systems Point of View", 1982 (Vanderbilt Article); and April '85 Weaver JASA abstract; Stein at al., "Listener-Assessed Intelligibility of a Hearing Aid Self-Adaptive Noise Filter", Ear and Hearing, Vol. 5, No. 4, 1984, pp.194-204 (the "Stein article"). I understand to be material to a patent claim, the prior art reference must be more relevant than any of the prior art that the Examiner had before him or her during examination. That is, the prior art reference must

99