# EXHIBIT 2

```
                                                    1
         IN THE UNITED STATES DISTRICT COURT

         IN AND FOR THE DISTRICT OF DELAWARE


ENERGY TRANSPORTATION GROUP     : Civil Action
INC.,                           :
            Plaintiff,          :
                                :
       v.                       :
                                :
SONIC INNOVATIONS, INC.,        :
PHONAK HOLDING AG,              :
PHONAK INC.,                    :
UNITRON HEARING, INC.,          :
WILLIAM DEMANT HOLDING A/S,     :
OTICON A/S,                     :
OTICON INC.,                    :
WIDEX A/S,                      :
WIDEX HEARING AID CO. INC.,     :
GN RESOUND A/S,                 :
GN RESOUND CORPORATION,         :
STARKEY LABORATORIES, INC.,     :
GENNUM CORPORATION,             :
RESISTANCE TECHNOLOGY INC.,     :
BERNAFON AG,                    :
WDH, INC., and                  :
BERNAFON, LLC,                  :
            Defendants.         : No. 05-422 (GMS)

                       - - -

              Wilmington, Delaware
           Tuesday, September 18, 2007
                   9:30 a.m.
              Telephone Conference
                       - - -

BEFORE: HONORABLE GREGORY M. SLEET, Chief Judge
```

```
                                                              2
1   APPEARANCES:

2        EDMOND D. JOHNSON, ESQ., and
         THOMAS HENRY KOVACH, ESQ.
3        Pepper Hamilton LLP
              -and-
4        BRIAN M. BUROKER, ESQ.,
         MARTIN STEINBERG, ESQ.,
5        MAYA M. ECKSTEIN, ESQ., and
         RAFAEL RIBEIRO, ESQ.
6        Hunton & Williams
         (Washington, D.C.)
7
              Counsel for Plaintiff
8
         MARY B. GRAHAM, ESQ.
9        Morris, Nichols, Arsht & Tunnell
              -and-
10       JOHN M. ROMARY, ESQ., and
         C. GREGORY GRAMENOPOULOS, ESQ.
11       Finnegan, Henderson, Farabow, Garrett & Dunner
         (Washington, D.C.)
12
              Counsel for Defendant
13                 Oticon

14       RICHARD L. HORWITZ, ESQ.
         Potter Anderson & Corroon LLP
15            -and-
         DONALD DEGNAN, ESQ., and
16       BRYAN K. HANKS, ESQ.
         Holland & Hart
17       (Salt Lake City, Utah)

18            Counsel for Defendant Sonic

19       MARYELLEN NOREIKA, ESQ.
         Morris, Nichols, Arsht & Tunnell
20            -and-
         ERIC R. HUBBARD, ESQ., and
21       DAVID CHUN, ESQ.
         Ropes & Gray
22       (New York, New York)

23            Counsel for Defendant GN ReSound
```

```
                                                              3
1   APPEARANCES CONTINUED:

2        THOMAS C. GRIMM, ESQ.
         Morris Nichols Arsht & Tunnell
3             -and-
         DAVID H. BLUESTONE, ESQ., and
4        CHARLES M. McMAHON, ESQ.
         Brinks Hofer Gilson & Leone
5        (Chicago, Illinois)

6             Counsel for Defendant Phonak

7        DONALD E. REID, ESQ.
         Morris, Nichols, Arsht & Tunnell
8             -and-
         CARL J. PELLEGRINI, ESQ.
9        Sughrue Mion
         (New York, New York)
10
              Counsel for Defendant Widex
11
         AMY A. QUINLAN, ESQ.
12       Morris James Hitchens & Williams
              -and-
13       RICHARD G. MORGAN, ESQ., and
         STEVEN L. REITENOUR, ESQ.
14       Bowman and Brooke
         (Minneapolis, Minnesota)
15
              Counsel for Defendant
16                 Starkey Labs

17       BARRY M. KLAYMAN, ESQ.
         Wolf Block Schorr and Solis-Cohen
18            -and-
         JEFFREY D. SHEWCHUK, ESQ.
19       Shewchuk IP Services

20            Counsel for Defendant
                   Resistance Technology
```

```
                                                              4
09:43:19  1        THE COURT: Good morning.
09:43:19  2        UNIDENTIFIED SPEAKER: Good morning, Your Honor.
09:43:19  3        THE COURT: Apologize for the delay. Let's
09:43:19  4   start with introductions for plaintiff, plaintiff's counsel.
09:43:28  5        MR. STEINBERG: Marty Steinberg from Hunton &
09:43:30  6   Williams, Your Honor.
09:43:31  7        THE COURT: Good morning.
09:43:32  8        MR. BUROKER: Brian Buroker, Maya Eckstein, and
09:43:38  9   Rafael Ribeiro from Hunton & Williams on the line.
09:43:39 10        MR. JOHNSON: Ted Johnson and Tom Kovach at
09:43:42 11   Pepper Hamilton.
09:43:43 12        Mary Graham had provided the Court with the list
09:43:46 13   of the attendees for the Court, Your Honor.
09:43:50 14        THE COURT: I want you to identify yourselves
09:43:52 15   for the record. I have that list. We can start with Mary
09:43:55 16   Graham.
09:43:56 17        MS. GRAHAM: Yes, Your Honor. This is Mary
09:43:58 18   Graham. With me are John Romary and Greg Gramenopoulos of
09:44:03 19   Finnegan Henderson.
09:44:04 20        THE COURT: Ms. Noreika.
09:44:06 21        MS. NOREIKA: Good morning, Your Honor.
09:44:06 22   Maryellen Noreika. With me are Eric Hubbard and David Chun
09:44:10 23   from Ropes & Gray.
09:44:13 24        THE COURT: Mr. Grimm, who are you with? Hello?
09:44:18 25   Thomas Grimm?
```

29

10:16:26 1   under the Federal Rules and the new electronic discovery
10:16:29 2   rules to find electronic documents.
10:16:32 3           We find it very difficult to believe that a
        4   company as large as this would only have 25 e-mails that
10:16:38 5   would be responsive to the document request we set out. We
10:16:42 6   wanted to know the keyword searches that were used and other
10:16:45 7   techniques, what file folders and so forth were searched.
10:16:49 8   And those questions were refused. And we have tried to get
10:16:53 9   this information even in a letter response or some other
10:16:58 10  discover mechanism, and we have been told that information
10:17:00 11  is work product and they won't provide it. And that is what
10:17:03 12  this issue is.
10:17:05 13          MR. GRAMENOPOULOS: Your Honor, again, we
10:17:09 14  disagree on the facts here. Just as a reference point, the
10:17:15 15  Demant Group has produced over 800,000 pages of documents.
10:17:19 16  Most of those are, in fact, stored as electronic records.
10:17:24 17  During the 30(b)(6) depositions which Mr. Buroker
10:17:29 18  referenced, we had put up a number of witnesses, each of
10:17:32 19  which testified as to the nature and scope of the searches
10:17:38 20  that were done in terms of computer databases and e-mails
10:17:43 21  being searched. We also had one particular witness who had
10:17:48 22  been involved in reporting much of these searches. And he
10:17:54 23  also testified on the scope and nature of the search.
10:17:57 24          It's also not true that we haven't provided them
     :00 25  with any criteria or outline of the search that we did

30

10:18:04 1   perform.
10:18:04 2           I would again reference Mr. Buroker to look at
10:18:08 3   Mr. Hogg's (phonetic) deposition from July 31st, 2007,
10:18:12 4   particularly Pages 126 and 127, where it was outlined how we
10:18:16 5   addressed the over 100 document requests that we had
10:18:20 6   received from ETG. We even highlighted in that statement
10:18:24 7   some of the terms that we had searched.
10:18:26 8           At this point in time, it's impossible to
10:18:28 9   reconstruct all of the searches that we had done. But we
10:18:33 10  did highlight that we did look and search for terms such as
10:18:37 11  Levitt, which is one of the inventors' names, as well as
10:18:44 12  HIMPP.
10:18:45 13          The other point I would like to make is that Mr.
10:18:48 14  Buroker refers to the new Federal Rules concerning
10:18:50 15  e-discovery. Those rules, in fact, state that the parties
10:18:53 16  should discuss at the beginning of discovery what search
10:18:57 17  terms will be used for electronic discovery. It actually
10:19:00 18  recommends that the procedure be done in front of discovery
10:19:03 19  as opposed to the end of discovery.
10:19:06 20          If ETG thought this was a concern of theirs,
      21  they should have brought it to our attention as well as the
10:19:13 22  other defendants. They did not. So we think it's too late
10:19:16 23  to do so.
10:19:18 24          THE COURT: Mr. Buroker, I think he correctly
10:19:18 25  references the way the rule is intended to work.

31

10:19:22 1           MR. BUROKER: Your Honor, we did. At the
10:19:24 2   beginning of this case, we served a document that we called
10:19:27 3   the preservation of electronic documents that would have
10:19:30 4   addressed all these issues, and we were told by the
10:19:33 5   defendants that they didn't think it was appropriate or
10:19:35 6   necessary in this case. So we set out to serve our document
10:19:38 7   requests under the normal procedure, and noticed a 30(b)(6)
10:19:44 8   deposition on the topic of what search was conducted to
10:19:46 9   identify what they had done.
10:19:49 10          What Mr. Gramenopoulos says is that the witness
10:19:52 11  has indicated where a search was done, but they didn't say
10:19:55 12  what they searched for.
10:19:56 13          To say that I searched on these computer
10:19:59 14  databases doesn't tell us anything about what they were
10:20:01 15  looking for. They did provide one or two terms, but we
10:20:05 16  asked what other criteria were used. We wanted to know --
10:20:09 17          THE COURT: Mr. Gramenopoulos, you have two
10:20:12 18  responses here. You just heard the latter. What about the
10:20:16 19  first response?
10:20:18 20          MR. GRAMENOPOULOS: Yes. I think what he is
10:20:19 21  referring to is document retention. There is no question
10:20:22 22  that we haven't retained our electronic discovery, all of
10:20:26 23  our electronic documents, including e-mails. In fact, there
10:20:29 24  is testimony on that from our 30(b)(6) witnesses.
10:20:31 25          We were not approached from ETG to have a

32

10:20:35 1   meet-and-confer. Again, the Federal Rules say it should
10:20:38 2   happen at the 26(f) conference or shortly thereafter, if
10:20:41 3   there is a concern of a party they have to raise it and sit
10:20:45 4   down with the other side and set up the search criteria.
10:20:49 5   And that did not happen.
10:20:53 6           THE COURT: Mr. Buroker.
10:20:54 7           MR. GRAMENOPOULOS: We think it is too late to
10:20:56 8   open discovery now and try to go through this whole process
10:20:58 9   again.
10:20:59 10          THE COURT: Mr. Buroker, I tend to concur with
10:21:01 11  that view. Can you tell me why I should take a different
10:21:04 12  position?
10:21:05 13          MR. BUROKER: Well, Your Honor, I thought that
10:21:07 14  we did -- our letters talk about electronic discovery
10:21:10 15  preservation. We were indicating the kinds of documents
10:21:13 16  that they should be preserving, which was sort of part of
10:21:16 17  the same agenda, which is to find out where they would
10:21:19 18  search for documents responsive to the requests.
10:21:22 19          THE COURT: Retention and e-discovery are
10:21:25 20  different subjects. Don't you agree?
10:21:29 21          MR. BUROKER: Yes, they are.
10:21:32 22          THE COURT: The question is, did you comply with
10:21:35 23  the requirements of the new e-rules?
10:21:36 24          MR. BUROKER: We were told by defendants'
10:21:39 25  counsel that they didn't believe the new rules took effect

33

```
10:21:41  1   because they came into effect right after the scheduling
10:21:46  2   conference in this case.
10:21:47  3              THE COURT: Is that accurate, Mr. Gramenopoulos?
      9   4              MR. GRAMENOPOULOS: I believe -- well, the rules
      5       came into effect I believe December 2006. And there is a
10:21:57  6   statement in the Federal Rules that says, at least as to
10:22:00  7   pending cases, I don't remember the exact language, but it
10:22:04  8   says, you know, these rules should apply as fair and just.
10:22:10  9   Again, I don't remember the exact words. But I think it
10:22:13 10   acknowledges that some cases may be further along in
10:22:19 11   discovery than others and that the rules should apply
10:22:19 12   accordingly.
10:22:19 13              Again, I disagree with Mr. Buroker. I don't
10:22:24 14   recall them ever saying to us, hey, let's really sit down
10:22:27 15   and work out some search terms. At least they didn't
10:22:30 16   contact us directly on that.
10:22:32 17              MR. BUROKER: I didn't say we did that. What I
10:22:37 18   said was we said we believe the new electronic discovery
10:22:37 19   rules applied, and we were told by defense counsel that they
10:22:39 20   didn't believe -- they didn't agree with that, and they
10:22:42 21   would conduct discovery as it always conducted discovery
10:22:45 22   under the rules in Delaware.
10:22:46 23              THE COURT: Do you agree with that statement,
10:22:49 24   Mr. Gramenopoulos?
       50 25             MR. GRAMENOPOULOS: I don't recall that. I
```

34

```
10:22:51  1   would have to check the record on that.
10:22:53  2              THE COURT: The question remains, what if
10:22:54  3   anything -- your position is that it's too late in the
10:22:57  4   process, Mr. Gramenopoulos?
10:22:58  5              MR. GRAMENOPOULOS: Yes. Nothing stopped them
10:23:00  6   from -- we produced documents well before -- remember,
10:23:05  7   again, that the 30(b)(6) deposition that they noticed was
10:23:08  8   done at the very end of discovery. They had all the
10:23:13  9   documents we produced, the majority of them, prior to that.
10:23:16 10   And if they were concerned about the level of documents or
10:23:18 11   the way that we were producing certain things, then they
10:23:21 12   should have contacted us and said let's address it now.
10:23:25 13              THE COURT: I am going to side with Demant on
10:23:27 14   this issue.
10:23:29 15              Let's go to the failure to make Thomas Kaulberg
10:23:40 16   available for deposition.
10:23:40 17              MR. BUROKER: Yes, Your Honor. This was an
10:23:40 18   employee of Oticon A/S in Denmark. And we noticed his
10:23:43 19   deposition on the 15th -- excuse me, 13th of August to take
10:23:46 20   place on August 31st in Delaware. We were told that
      21      eventually he was available for two hours of deposition in
10:24:02 22   Denmark.
10:24:02 23              We believe we are entitled to the full seven
10:24:04 24   hours of deposition, and wanted that to take place in
10:24:07 25   Delaware because of the close of discovery and the need to
```

35

```
10:24:10  1   do a number of other things that were going on rather than
10:24:12  2   have the time and expense to fly to Denmark for that
10:24:17  3   deposition.
10:24:19  4              One of the issues that we were told -- Mr.
10:24:24  5   Kaulberg is an employee of Oticon now. He was formerly an
10:24:28  6   employee of Widex, another of the defendants. That raises
10:24:32  7   some sensitive issues. We intended to ask him questions
10:24:35  8   about both the work that he had done for Widex, because some
10:24:38  9   of the documents that we had found in the Widex production
10:24:41 10   listed him as an author, and we wanted to ask him about the
10:24:44 11   work that he had done for them on some of the accused
10:24:47 12   products, as well as the work he currently was doing for
10:24:50 13   Oticon on some other accused products for them.
10:24:53 14              We believe we are entitled to this deposition.
10:24:57 15   And offering us two hours of deposition in Denmark on the
10:25:00 16   last day of discovery we don't think was complying with the
10:25:04 17   rules. We wanted a full day of deposition, and we believe
10:25:09 18   he should have been brought to Delaware.
10:25:10 19              THE COURT: Let's hear a response.
10:25:12 20              MR. GRAMENOPOULOS: Rule 30 does talk about
10:25:17 21   what's required. And the key term is reasonableness. We
10:25:23 22   did get the notice, as Mr. Buroker pointed out, two weeks
10:25:26 23   before the close of fact discovery. They noticed him for
10:25:29 24   August 29th. They did not serve, formally serve the
10:25:33 25   subpoena on him. But we accepted it. And we checked with
```

36

```
10:25:37  1   Mr. Kaulberg's schedule, including his condition. He has
10:25:42  2   actually a strained back. We already informed that to Mr.
10:25:48  3   Buroker. He could simply not travel to the U.S., especially
10:25:53  4   on the short time frame that was being demanded from ETG.
10:26:00  5              We said, look, you know, given his work schedule
10:26:03  6   and his condition, his health condition, we can make him
10:26:07  7   available in Denmark on the 29th if you so elect.
10:26:12  8              We never heard back from them. Fact discovery
10:26:15  9   closed, and then when we put up this conference or suggested
10:26:18 10   this conference, they then raised the Kaulberg issue.
10:26:23 11              The other issue that I would like to raise is
10:26:25 12   that Mr. Kaulberg is one of many engineers at Oticon A/S.
10:26:29 13   He has authored or co-authored certain technical documents
10:26:33 14   that we produced. Again, those documents were produced
10:26:37 15   months before we had the 30(b)(6) depositions in Denmark at
10:26:42 16   the end of July - beginning of August.
10:26:44 17              We put up at least for two days technical
10:26:48 18   30(b)(6) witnesses to address all of the products. While
10:26:52 19   they were out -- while ETG's counsel was out in Denmark,
10:26:56 20   they never asked about Kaulberg. They didn't ask for his
10:26:59 21   deposition before the 30(b)(6) depositions. They didn't ask
10:27:03 22   until August, I believe it was the 13th or 15th, as Mr.
10:27:07 23   Buroker said.
10:27:08 24              So we also think it is a little bit odd that
10:27:10 25   they are now raising and suggesting that we need to provide
```