IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENERGY TRANSPORTATION GROUP, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WILLIAM DEMANT HOLDING A/S et al., ) <br> ) <br> Defendants. ) | C.A. No. 05-422 GMS |

## MEMORANDUM

**I.  INTRODUCTION**

On June 23, 2005, Energy Transportation Group, Inc. ("ETG") filed this patent infringement action against the above-captioned defendants. Presently before the court is William Demant Holding A/S' ("WDH A/S") renewed motion to dismiss for lack of personal jurisdiction. For the following reasons, the court will deny the motion.

**II.  BACKGROUND**

WDH A/S is a Danish corporation with its principal place of business in Smørum, Denmark. WDH A/S is the parent company of forty-five subsidiaries located throughout the world, including the following defendants who manufacture the allegedly infringing products: Oticon A/S, a Danish corporation; WDH, Inc., a Minnesota corporation, with its principal place of business in New Jersey; Oticon Inc., a California corporation, with its principal place of business in Somerset, New Jersey; Bernafon, LLC, a limited liability company organized under the laws of New Jersey; and Bernafon AG, a Swiss Atiengesellschaft. (D.I. 88, at 1.) WDH A/S is a holding company that does not manufacture, sell, advertise, offer to sell, trade, or import any goods or services in the United States

or anywhere in the world. (Id. at 3.) It maintains its own financial statements and corporate records separate from the financial statements and corporate records of its subsidiaries. (Id. at 4.) WDH A/S is not registered to do business in Delaware and has never contracted to supply goods or services in Delaware. (Id.) It has not appointed an agent to accept service on its behalf in Delaware or anywhere in the United States. (Id.) It does not maintain any offices or other facilities in Delaware or the United States. (Id.) It neither owns nor leases any real property in Delaware or the United States. (Id.) It does not maintain any bank accounts in Delaware and has never contracted to supply services or things in Delaware or the United States. (Id.)

ETG, a Delaware corporation with its principal place of business in New York, New York, is the assignee and owner of U.S. Patent Nos. 4,731,850 (the "'850 patent") and 4,879,749 (the "'749 patent") (collectively, the "patents-in-suit"). The '850 patent relates to a programmable digital hearing aid system, while the '749 patent relates to a host controller for the programmable digital hearing aid system. ETG alleges that WDH A/S has induced infringement of one or more claims of the patents-in-suit. (D.I. 89, at 8.)

On October 31, 2005, WDH A/S filed a motion to dismiss for lack of personal jurisdiction (D.I. 87). ETG responded by opposing the motion or, in the alternative, requesting jurisdictional discovery. On November 30, 2006, the court held a scheduling conference, during which it orally denied WDH A/S' motion to dismiss and granted ETG's request for jurisdictional discovery. On December 4, 2006, the court issued an Order (D.I. 135) reiterating its denial of WDH A/S' motion, outlining the scope of ETG's jurisdictional discovery, and limiting the scope of ETG's claim against WDH A/S to inducement of infringement. On August 20, 2007, WDH A/S filed a renewed motion to dismiss for lack of personal jurisdiction (D.I. 353).

**III.    STANDARD OF REVIEW**

WDH A/S moves to dismiss the complaint for lack of personal jurisdiction. "Rule 12(b)(2) of the Federal Rules of Civil Procedure requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant[]." *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates*, 197 F.R.D. 112, 119 (D. Del. 2000). In determining whether personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm statute of the state in which the court sits. *Transportes Aeros de Angola v. Ronair, Inc.*, 544 F. Supp. 864-65 (D. Del. 1982). If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Id.* (noting, however, the "intent of the legislature to exercise jurisdiction over non-residents whenever feasible"); *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 948 F. Supp. 338, 342 (D. Del. 1996) (citation omitted).

In determining the jurisdictional question, the court must accept as true the allegations in the complaint. *Altech Indus., Inc. v. Al Tech Specialty Steel Corp.*, 542 F. Supp. 53, 55 (D. Del. 1982). However, ETG, the plaintiff, bears the burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction over WDH A/S. *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268, 270-71 (D. Del. 2001). To meet this burden, ETG must adduce facts which "'establish with reasonable particularity'" that jurisdiction over WDH A/S exists. *Id.* (quoting *Joint Stock Soc'y v. Heublein, Inc.*, 936 F. Supp. 177, 193 (D. Del. 1996)).

## IV. DISCUSSION

### A. Delaware's Long-Arm Statute

The first step in the court's analysis is to determine whether any of the provisions of Delaware's long-arm statute, Del. Code Ann. tit. 10 § 3104, warrant the exercise of jurisdiction over WDH A/S. WDH A/S contends that the court has no basis to assert jurisdiction, while ETG maintains that the WDH A/S' conduct satisfies the requirements of subsections (c)(1) and (c)(3) of the long-arm statute, under a stream of commerce theory. In other words, ETG's principle argument is that the court may exercise jurisdiction over WDH A/S, because WDH A/S has induced infringement by its distributors and co-defendants Oticon A/S, Oticon, Inc., Bernafon AG, and Bernafon, LLC.

Under subsection (c)(1), the court may exercise jurisdiction over a nonresident or agent of a nonresident who "transacts any business or performs any character of work or service in the State." DEL. CODE ANN. tit. 10 § 3104(c)(1). Subsection (c)(3) gives the court the authority to exercise jurisdiction over a nonresident or agent of a nonresident who "causes tortious injury in the State by an act or omission in this State." DEL. CODE ANN. tit. 10 § 3104(c)(3). Delaware courts construe the long-arm statute broadly to confer jurisdiction to the maximum extent possible so as to "provide residents a means of redress against those not subject to personal service within the state." *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1156-57 (Del. Super. 1997). The Delaware Supreme Court has interpreted subsections (c)(1) and (c)(3) as specific jurisdiction provisions that require a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *See LaNuova D&B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986). In order to meet the requirements of subsections (c)(1) and (c)(3), WDH A/S' actions must be directed at

residents of Delaware and the protection of Delaware laws. *Thorn EMI N. Am. Inc. v. Micron Tech., Inc.*, 821 F. Supp. 272, 274 (D. Del. 1993).

ETG asserts that the court should exercise jurisdiction under § 3104(c)(1) and/or (c)(3), because WDH A/S actively induced sales of infringing products in the United States and Delaware, via well-established distribution channels that it owned and controlled. ETG relies on *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) for the proposition that a foreign company's actions in inducing infringement, here WDH A/S, give rise to personal jurisdiction in any United States forum where the infringing products are sold. ETG argues that WDH A/S and its subsidiaries "collaborate in many areas" and "to a wide extent also share resources and technologies." D.I. 387, at 7 (quoting WDH Holding Annual Report 2006, D.I. 388, Ex. 36 at DEM012313). Put differently, ETG argues that WDH A/S acted in consort with its subsidiaries to develop the allegedly infringing hearing aid products, then induced its subsidiaries to manufacture, sell, and distribute the infringing products in the United States and Delaware. ETG argues that these acts by WDH A/S caused the allegedly infringing products to be injected into the stream of commerce for sale in Delaware.

For support, ETG cites to a number of WDH A/S documents, including annual reports, press releases or announcements, and licensing agreements, as well as the company's website "www.demant.com." The website states that "The William Demant Holding Group develops, manufactures and sells products and equipment designed to aid the hearing and communication of individuals." D.I. 89-2, Ex. A-4; see id. Ex. A-6 ("In 2000, the William Demant Holding Group acquired four major companies that have strengthened the distribution of hearing aids manufactured by both Oticon and Bernafon."). The annual reports of WDH A/S from 1999-2006 discuss profits

and costs for the entire group of companies owned by it. Additionally, several of the annual reports describe the "shared functions" of the "Group," which include "co-ordinat[ing] and handl[ing] a substantial part of . . . operational activities, such as purchasing, logistics, production facilities, IT infrastructure, quality management systems, service and technical support as well as finance and administration." (D.I. 388, at DEM012013, DEM012047, DEM012084, DEM012126, DEM012170.) Further, the Group sells its products direct to end users and to OEM customers through a number of distribution companies in selected countries. (Id. at DEM012013, DEM012047, DEM012084, DEM012126, DEM012170.) An announcement or press release from Niels Jacobsen ("Jacobsen"), President and CEO of WDH A/S, to the Copenhagen Stock Exchange, dated November 22, 2000, states that "William Demant Holding A/S has just concluded a joint venture and an OEM-agreement with a group of independent American hearing aid dispensers. . . ." (Id. Ex. A-1 at 1.) The press release further states, "[b]y virtue of the recently concluded exclusive OEM-agreement, the clinics will in [the] future mainly sell OEM-products from the William Demant companies under the AVADA brand." (Id.) Finally, the release states that "[t]he cooperation with the AVADA Group will strengthen the position of William Demant Holding A/S on the North American market. . . ." (Id. at 2.)

A license and development agreement between Widex A/S and William Demant Holding A/S further supports ETG's position. The agreement, dated March 22, 2002, specifically lists WDH A/S as a party and discusses a collaboration between WDH A/S and Widex with respect to a production method for hearing aid shells and an ear scanner. The agreement states that "WDH has *developed* a model (3 times real size) ear scanner (the "Ear Scanner"), and applied for certain patents in relation to the Ear Scanner and has afterwards initiated a full-scale feasibility study in order to

6

develop functional test models." (D.I. 388, Ex. 23 at DEM012958) (emphasis added). The scope of the agreement indicates that Widex and WDH A/S will jointly continue development of the Ear Scanner. (Id. at DEM012959, DEM012962.) The agreement is signed by Jacobsen on behalf of WDH A/S.

WDH A/S disagrees with ETG's assertion, arguing that it is merely a Danish holding company that did not know of the asserted patents before the suit was filed and did not undertake any affirmative acts to cause the accused products to enter the United States. As previously mentioned, WDH A/S contends that it does not manufacture, sell, advertise, offer to sell, trade, or import any goods or services in the United States or anywhere in the world. The crux of WDH A/S' argument is that, as a holding company, it had nothing to do with the accused products, it had no knowledge of the patents-in-suit, and it did not purposefully induce infringement in the United States, let alone purposefully direct activities to Delaware residents. Thus, according to WDH A/S, subjecting it to jurisdiction in Delaware is beyond the reach of the Delaware long-arm statute, and would violate due process.

The court is not persuaded by WDH A/S' argument. After having reviewed the record, the court finds that the evidence produced by ETG illustrates that WDH A/S is not merely just a passive holding company. The situation in the present case is analogous to that in *Beverly Hills Fan*, where the Federal Circuit found that jurisdiction was proper over foreign defendants when the plaintiff alleged that the defendants purposefully shipped the accused product into the forum through an established distribution channel. 21 F.3d at 1565. Quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980), the Federal Circuit highlighted: "'[I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of

the [defendants] to serve, directly or indirectly, the market for its product . . ., it is not unreasonable to subject it to suit.'" *Beverly Hills Fan*, 21 F.3d at 1565. The court then concluded that the plaintiff had stated all of the necessary ingredients for an exercise of jurisdiction: "defendants, acting in consort, placed the accused [product] in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Id.* at 1566. In the present case, when viewed in light of the allegations, assertions in the affidavits, and evidence provided in ETG's appendix, the court concludes that ETG has stated the necessary ingredients for an exercise of jurisdiction over WDH A/S: WDH A/S acted in consort with its subsidiaries to place the accused products in the stream of commerce; it knew that the accused products foreseeably would be sold in the United States and Delaware;[1] and WDH A/S' conduct and connections with the forum state were such that it should reasonably have anticipated being brought to court here. *See Oakley, Inc. v. JOFA AB*, 287 F. Supp. 2d 1111, 1117 (finding the exercise of jurisdiction consonant with due process: "the fact situation is more compelling here than in *Beverly Hills Fan Co.* given the peculiar relationship between the [Defendant seeking dismissal] and the other Defendants, which are its subsidiaries").

---

[1] Oticon's website directs customers to three providers of hearing aids located in Wilmington, Delaware. http://hcl.oticonusa.com/(S(xhila545oy02kgqusfqwspft))/viewMap.aspx (last visited Dec. 27, 2007); http://hcl.oticonusa.com/(S(xhila545oy02kgqusfqwspft))/form.aspx (last visited Dec. 27, 2007) ("The hearing care professionals that are listed within the US Hearing Center Locator represent an overview of currently active Oticon distributors trained in fitting Oticon products.")

**B.     Due Process**

Having found that the exercise of jurisdiction is proper per Delaware's long-arm statute, the court must determine whether jurisdiction comports with the requirements of constitutional due process. To satisfy the due process prong of the jurisdictional analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). Specifically, ETG must show that WDH A/S "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 108-09 (1987). Due process, therefore, requires the court to consider whether it would be unreasonable for the court to assert jurisdiction under all the facts and circumstances.

As the *Beverly Hills Fan* court noted, "[i]n general, these cases are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." 21 F.3d at 1568. The court concludes that this is not one of those rare cases. Delaware's interest in the dispute is significant. Delaware has an interest in discouraging injuries that occur within the state, which extends to patent infringement actions such as the one here. *Id.* Additionally, the burden on WDH A/S of litigating in Delaware is not significant enough to outweigh Delaware's interest in the dispute. While WDH A/S will have to travel to the United States to defend itself, "'progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome.'" *Id.* at 1569 (citing *World-Wide Volkswagen*, 444

U.S. at 294). Moreover, because many of the defendants are subsidiaries of WDH A/S, the burden of document and witness production will be minimal to WDH A/S. See D.I. 88, at 2, 16-17 ("[A]s a manufacturer, seller, and/or designer, these defendants [the subsidiaries] can provide any potentially relevant documents or witnesses in this action."). Given the foregoing, the court concludes that it is not unreasonable to assert jurisdiction over WDH A/S. Accordingly, the court will deny WDH A/S' motion.


Dated: January 4, 2008 /s/ Gregory M. Sleet
CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ENERGY TRANSPORTATION GROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 05-422 GMS |
| v. ) | |
| ) | |
| WILLIAM DEMANT HOLDING A/S et al., ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. WDH A/S' Renewed Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 353) is DENIED.

Dated: January 4, 2008                         /s/ Gregory M. Sleet
                                               CHIEF, UNITED STATES DISTRICT JUDGE