IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENERGY TRANSPORTATION GROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 05-422 (GMS) |
| ) | |
| SONIC INNOVATIONS, INC., et al, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO 50(a) ON DAMAGES

Defendants Oticon A/S, Oticon Inc., Bernafon AG, Bernafon, LLC, WDH, Inc., William Demant Holding A/S, Widex A/S and Widex Hearing Aid Co., Inc. (collectively the "Defendants") hereby move for judgment in their favor and against Plaintiff Energy Transportation Group, Inc. ("ETG") as a matter of law pursuant to Fed. R. Civ. P. 50(a) on the issue of damages.

## INTRODUCTION

ETG alleges that Defendants infringe the patents in suit, and seeks damages based on a reasonable royalty. No reasonable jury could find that ETG is entitled to the royalty it seeks. To the extent that ETG has established a *prima facie* showing of infringement and of possible entitlement to an award of a reasonable royalty, it has failed to establish that it is entitled to its proposed 8.4% royalty rate under controlling law.

## ARGUMENT

### A.   Legal Standard For Judgment As A Matter of Law

Judgment as a matter of law ("JMOL") should be granted when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R.

Civ. P. 50(a). The sufficiency of the evidence is determined by "the record as presented to the jury." *Advanced Medical Optics v. Alcon Laboratories, Inc.*, No. Civ. A. 03-1095-KAJ, 2005 WL 3454283, at *2 (D. Del. Dec. 16, 2005) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1199 (3d Cir. 1993)). The proper analysis is "whether the record contains the minimum quantum of evidence from which a jury might reasonably afford relief." *Espeed, Inc. v. Brokertec USA, L.L.C.*, 404 F. Supp. 2d 575, 578 (D. Del. 2005) (quoting *Keoth v. Truck Stops Corp. of America,* 900 F. 2d 743, 745 (3d Cir. 1990)).

### B.   ETG Has Not Introduced Legally Sufficient Evidence To Support Its Reasonable Royalty Analysis

ETG's reasonable royalty analysis is not supported by legally sufficient evidence.

A reasonable royalty may be determined by hypothesizing a negotiation between a willing licensee and a willing licensor at the time the alleged infringement began. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971). *Georgia-Pacific* sets forth a number of factors that, when present, should be taken into consideration in a reasonable royalty analysis. ETG's damages expert, Mr. Terry Musika, however, has improperly given weight to factors which are unsupported by the evidence and ignored other factors which are present in the record, all the while engaging in impermissible speculation and guesswork concerning the profits associated with the accused products.

#### 1.   Defendants' Profits

In an effort to seek a large damages award, ETG's damages expert advances a speculative "profit premium" to raise the damages floor over a reasonable royalty. *See* Trial Tr. 851:7-8 ("What we are getting to is the profits. We are looking for the profits.") By law, however, ETG is not entitled to any form of damages other than a reasonable royalty. ETG can

not seek lost profits because it never made or had the capacity to make a hearing aid according to the patents in suit. ETG is also not permitted to an accounting of the defendants' profits, because damages based on an accounting of profits was excluded by the 1946 Patent Act.[1]

To determine a reasonable royalty, ETG's expert purported to follow the analytical approach upheld by the Federal Circuit in *TWM Manufacturing Co. v. Dura Corp.*, 789 F.2d 895, 899-900 (Fed. Cir. 1986). That approach involves the subtraction of "the infringer's usual or acceptable net profit from its anticipated net profit realized from sales of infringing devices." *Id.* at 899; *see also Tektronix, Inc. v. United States*, 552 F.2d 343, 349 (Ct. Cl. 1977). In practice, however, Mr. Musika followed another approach altogether.

Mr. Musika calculated an operating profit margin of 25.6% based on financial information from Widex, Demant, and four other hearing aid manufacturers. (*See* Trial Tr. 862:19-20.) He based this calculation on the gross profit margin on accused products of 65.2%, less the gross profit margin for "all the other industry participants," to get a "premium" of 9.2% for the accused products. (*See* Trial Tr. 864:8-18.) He then added this 9.2% premium to the operating margin for "all the other companies that are claimed to rely on the patent," 16.4%, to produce an operating margin of 25.6% for the accused products. (Trial Tr. 864:21-865:5.)[2] Further, without the benefit of reasoned analysis, ETG asserts that a range of 25% to 33% of

---

[1] The 1946 Patent Statute was amended to "precisely eliminate the recovery of profits as such and allow the recovery of damages only." *Aro Mfg. Co. v. Convertible Top Co.*, 377 U.S. 476, 505 (1964). It was also to "eliminate the necessity of the traditional accounting to determine the infringer's profits in all damages determinations." *Kori Corp. v. Wilco Marsh Buggies & Buggies & Draglines Inc.*, 761 F.2d 649, 654 (Fed. Cir. 1985).

[2] Although Mr. Musika's claimed approach is to gather as much information as possible to be accurate, his calculations omit financial information pertaining to Siemens, another major company in the hearing aid industry; Mr. Musika could cite no evidence to refute the apparent fact that his calculations purporting to concern "all the other industry participants" left out at least 20% of hearing aid manufacturers. (*See* Trial Tr. 926:11-927:8.)

these supposed operating profits for the accused products forms a starting point for the *Georgia-Pacific* hypothetical negotiation. (*See* Trial Tr. 861:8-12; 866:12-867:17.) This creates an unsupported "negotiating range" within which the *Georgia-Pacific* factors were manipulated. ETG then concludes that a running royalty rate of 8.4% is appropriate. Applying this rate to its calculations of Defendants' royalty base, ETG seeks approximately $35 million from Demant and $26 million from Widex.

Mr. Musika's analysis is fundamentally flawed. He calculated a purported "industry profit margin" based on (1) the profit margins of assorted hearing aid companies (including parties no longer in this lawsuit) and (2) the profit margins on all of these companies' products (both accused as well as non-accused hearing aid products, as well as on non-hearing products). As a result, Mr. Musika fails to compare any single defendant's expected profits on a given accused hearing aid product with that particular defendant's profits on non-accused hearing aid products. In addition, since his computation involves not only non-accused hearing aid products but also non-hearing aid products ***and*** the accused products, a comparison with the profit margins on the accused products becomes utterly meaningless. In other words, rather than determining what the "premium" of a given defendant's accused apples' profit rate happens to be over the profit rate on its non-accused oranges, ETG seeks to compare the defendants' collective accused apples' profit rate to a bowl containing a mixture of all of the defendants' apples, oranges, and irrelevant radishes with no attempt to make adjustments for the presence of either apples or radishes in the bowl.

Such an approach was not employed by either the *TWM* or *Tektronix* courts, nor has it been sanctioned by any other court in the land. While there is no single accepted method for determining a reasonable royalty, that does not mean that ETG can adopt whatever approach

it likes. Mr. Musika's analysis is inherently flawed and speculative, failing to provide a **_reliable_** indication of what portion of the profit for any given defendant (or even for all defendants collectively) is attributed "for the use made of the **_invention_** by the **_infringer_**" as required by 35 U.S.C. § 284 (emphasis added).[3] *See Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to essentially be an apples and oranges comparison). This court upheld a similar attack on an expert's gross margin calculations in a lost profits analysis in *Joy Technologies, Inc. v. Flakt, Inc.*, 954 F. Supp. 796, 806 (D. Del. 1996) (damages expert's use of nonescalated and escalated numbers in the same gross margin calculation found to be akin to comparing apples to oranges). Nor is it an excuse that Mr. Musika lacked the proper data to break down his analysis by defendant and by accused product. *See Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 2007 WL 470259, *9-*10 (N.D. Cal. 2007).

This is not the first time that Mr. Musika has presented unreliable damages testimony. In *Telecomm Tech. Serv., Inc. v. Siemens Rolm Comm. Inc.*, 1999 U.S. Dist. LEXIS 21415 (N.D. Ga. 1999), Mr. Musika also sought to opine as to damages resulting from infringement. In calculating damages attributable to most of the counterdefendants in the case, Mr. Musika examined each of their records to make his calculations for each counterdefendant. *Telecomm*, 1999 U.S. Dist. LEXIS at *6. With respect to counterdefendant RealCom, however, Mr. Musika considered the produced information insufficient, so instead he used the average of the percentages of infringing systems and the average sales prices for the other counterdefendants in making his computations for RealCom. *Id.* at *6-*8. Although the

---

[3]   Mr. Musika similarly failed to make any meaningful analysis of the appropriate share of the profits under *Georgia-Pacific* Factor 13. (*See* Trial Tr. 886; 934-35.)

counterplaintiff, Siemens Rolm, argued that Mr. Musika's extrapolation method was the best possible approach given the scarcity of the data produced, the court noted that those cases allowing extrapolation in calculating infringement damages relied on known *intracompany* figures, *not figures from other defendants*. *Id.* at *9-*10. The court therefore rejected Mr. Musika's averaging approach as unreliable:

> [E]ven accepting *arguendo* that Musika's method is the best possible one under the circumstances, it still must pass the threshold of reliability. Thus, while Kumho Tire and Daubert recognize that an expert must be afforded a degree of flexibility in approaching his or her task, the need for flexibility does not negate the ever present requirement of reliability, which Musika's method simply does not satisfy.

*Id.* (footnote omitted).

In rejecting Mr. Musika's opinion as unreliable, the *Telecomm* court noted that his method was "inherently unreliable because it assumed without evidence that RealCom's business mix is indistinguishable from the other counterdefendant[s]" and that evidence actually existed that RealComm's business mix in fact was different from the other counterdefendants. *Id.* at *8.[4]

Mr. Musika made virtually identical mistakes in this case in using the financial information for other hearing aid manufacturers not on trial. His profit calculations and opinions based thereon are supported neither in the method nor in the requirements of the law for determining damages for patent infringement. In short, the record contains no reliable evidence

---

[4]   Mr. Musika's method effectively sums together the defendants and treats them as a single entity. But this method is unreliable because it does not account consistently for the differing mixes of products and profits produced by each company. As recognized by the *Telecomm* court, this differing business mix is further evidence of the unreliability of Mr. Musika's approach. *TeleComm* at *8. The unreliability of Mr. Musika's methodology was highlighted by the January 31, 2007 testimony of Dr. Putnam that, if the premium is calculated just based on the financial information of Demant and Widex, the "premium" is a *negative* 12%.

that there is a 9.2% profit premium associated with the accused products.[5] Therefore, as with the *Telecomm* case, this Court should find that Mr. Musika's analysis is unreliable and that ETG's royalty rate is not supported by legally sufficient evidence.

### 2.    Pioneering Patent Status

Mr. Musika also gave improper weight in his *Georgia-Pacific* analysis based on the allegedly "pioneering" status of the patents in suit. ETG failed to introduce any evidence at trial to establish that the patents in suit are pioneering. Consequently, Mr. Musika, who has no expertise in relevant technology, erred in considering this to be a factor in favor of an increased royalty.

### 3.    Licenses In The Hearing Aid Field

Finally, rather than relying on comparable licenses under *Georgia-Pacific* Factor 2, Mr. Musika improperly discounted all of the license agreements in the hearing aid field on the basis of the German Federal Cartel Office's decision. The German Federal Cartel Office, however, was focused on market concentration of certain hearing aid manufacturers (the "oligopolists") in the German market. (*See* PX648 at ¶¶ 124-125.) The German Federal Cartel Office specifically stated that it was not examining "technology transfer among the oligopolists for its conformity to Article 81 of the EC Treaty." (PX648 at ¶ 209.) It likewise made no findings whatsoever as to whether the royalty rates for licenses in the hearing aid field were unreasonable or artificially depressed, let alone whether Defendants' or HIMPP's actions had any negative effect whatsoever on competition in the United States.

---

[5]    Defendants' expert, Jonathan Putnam, analyzed the "premium" using Mr. Musika's method for just Widex and Demant, and found it to be -12% rather than the 9.2% Mr. Musika found for the six hearing aid companies whose financial information he improperly combined. (*See* Trial Tr. 1876:5-1877:13.)

Under the circumstances, Mr. Musika had no legitimate basis for excluding the legion of comparable licenses from his reasonable royalty analysis. Contrary to ETG's contentions, a reasonable royalty rate can be determined from examination of comparable licenses in the hearing aid industry, and resort to an arbitrary and speculative apportionment of profits analysis is neither necessary or appropriate. In fact, the undisputed record establishes that comparable licenses in the hearing aid field would lead negotiators under a *Georgia-Pacific* analysis to approximately $1 million for a lump sum agreement or, alternatively, a maximum of 0.5% for a running royalty. Moreover, proper analysis of Defendants' expected profits and the allocation of those profits to the patents in suit pursuant to *Georgia-Pacific* Factor 13 confirms valuations of well under 1% of sales. (*See* Trial Tr. 1885:12-1886:3.) Moreover, the other evidence in this case such as ETG's and Audimax's failure to license the patents in suit, Mr. Chen's purchase of the patents in suit for approximately $2.5 million and the opinions reached by EKMS further support a royalty rate below 1%.

## CONCLUSION

In light of the record in this case, no reasonable jury could find that ETG is entitled to the royalty it seeks. Mr. Musika's analysis is unreliable and based on impermissible speculation and guesswork without due consideration for the evidence in this case. The only competent and reliable evidence in the record establishes that, upon appropriate application of the *Georgia-Pacific* factors, reasonable negotiators would determine that a lump sum payment of approximately $1 million or a running royalty rate of no more than 0.5% would fairly compensate ETG. With respect to Demant, that rate applied to a proper calculation of the royalty base totals approximately $2.0 million, even without taking into account certain defenses asserted by Demant. With respect to Widex, application of that rate to the royalty base, again without taking into account defenses asserted by Widex, totals $1.5 million.

For the reasons given above, the Court should grant judgment as a matter of law that ETG has failed to establish the damages it seeks.

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | /s/ *Mary B. Graham (#2256)* |
|  | Mary B. Graham (#2256)<br>James W. Parrett, Jr. (#4292)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>302.658.9200 |
| OF COUNSEL:<br><br>John M. Romary<br>C. Gregory Gramenopoulos<br>FINNEGAN, HENDERSON, FARABOW,<br> GARRETT & DUNNER, LLP<br>901 New York Ave., N.W.<br>Washington, DC 20001-4413<br>202.408.4000 | *Attorneys for William Demant Holding A/S, WDH Inc., Oticon A/S, Oticon, Inc., Bernafon AG, and Bernafon LLC* |
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | /s/ *Donald E. Reid (#1058)* |
|  | Donald E. Reid (#1058)<br>Jason A. Cincilla (#4232)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>302.658.9200 |
| OF COUNSEL:<br><br>SUGHRUE MION, PLLC<br>David J. Cushing<br>William H. Mandir<br>Carl J. Pellegrini<br>Brian K. Shelton<br>2100 Pennsylvania Ave., N.W.<br>Suite 800<br>Washington, DC 20037<br>202.293.7060 | *Attorneys for Widex A/S and Widex Hearing Aid Co. Inc.* |

Dated: February 1, 2008
1446394

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 1, 2008, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that true and correct copies of the foregoing were caused to be served via electronic mail on February 1, 2008 upon the following parties:

| | |
|---|---|
| REPRESENTING ENERGY TRANSPORTATION GROUP, INC. | Edmond D. Johnson<br>PEPPER HAMILTON LLP<br>**johnsone@pepperlaw.com**<br><br>Brian M. Buroker<br>HUNTON & WILLIAMS LLP<br>**etg@hunton.com** |
| REPRESENTING WIDEX A/S AND WIDEX HEARING AID CO. INC. | Donald E. Reid<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>**dreid@mnat.com**<br><br>William H. Mandir<br>SUGHRUE MION PLLC<br>**wmandir@sughrue.com**<br><br>David J. Cushing<br>SUGHRUE MION PLLC<br>**dcushing@sughrue.com**<br><br>Carl J. Pellegrini<br>SUGHRUE MION PLLC<br>**cpellegrini@sughrue.com**<br><br>Brian K. Shelton<br>SUGHRUE MION PLLC<br>**bshelton@sughrue.com** |

| | |
|---|---|
| REPRESENTING WILLIAM DEMANT HOLDING A/S, WDH, INC., OTICON A/S, OTICON INC., BERNAFON AG, AND BERNAFON, LLC | Mary B. Graham<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>mgraham@mnat.com;<br>mbgeservice@mnat.com<br><br>John M. Romary<br>FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER<br>john.romary@finnegan.com<br><br>C. Gregory Gramenopoulos<br>FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER<br>c.gregory.gramenopoulos@finnegan.com |

The undersigned also hereby certifies that on February 1, 2008, true and correct copies of the foregoing were caused to be served by hand upon the following Delaware counsel:

Edmond D. Johnson
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, DE 19899-1709

/s/ Mary B. Graham (#4292)
_____
Mary B. Graham (#4292)

913379