IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENERGY TRANSPORTATION GROUP, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SONIC INNOVATIONS, INC., et al, ) <br> ) <br> Defendants. ) | C.A. No. 05-422 (GMS) |

**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF
LAW THAT THE DEFENDANTS HAVE NOT INFRINGED
AND THE PATENTS ARE INVALID**

Defendants Oticon A/S, Oticon Inc., Bernafon AG, Bernafon, LLC, WDH, Inc., and William Demant Holding A/S (collectively "Demant" or the "Demant Defendants") and Defendants Widex A/S and Widex Hearing Aid Co., Inc. (collectively, "Widex" or the "Widex Defendants") respectfully move for judgment in their favor and against Plaintiff Energy Transportation Group, Inc. ("ETG") as a matter of law pursuant to Fed. R. Civ. P. 50(a) on the issues of non-infringement and invalidity.

As discussed below, judgment is warranted because ETG has failed to establish that the asserted products infringe, literally or under the doctrine of equivalents, any of claims 13, 14, 16, or 19 of U.S. Patent No. 4,731,850 ("the '850 patent") or claims 1-2 of U.S. Patent No. 4,879,749 ("the '749 patent"). In addition, the Court should grant judgment as a matter of law that Defendants, who do not practice the patented methods in the United States, did not directly infringe method claims 13, 14, or 16 of the '850 patent. ETG has failed to offer evidence to establish the requisite knowledge and intent and, as such, the Court should grant judgment as a matter of law that Defendants did not induce infringement, nor contribute to the infringement of any asserted claims 13, 14, 16, or 19 of the '850 patent, or claims 1-2 of the '749

patent, prior to the date of the filing of the suit. Further, the Court should grant judgment as a matter of law that claims 13, 14, 16, or 19 of the '850 patent, or claims 1-2 of the '749 patent, are invalid because they fail to satisfy the written description requirement, or because they are anticipated or obvious in view of the prior art.

## I.     THE DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF NON-INFRINGEMENT

### A.     The Standard for Judgment as a Matter of Law Entitles The Defendants to Prevail on This Motion

Judgment as a matter of law ("JMOL") against a party is proper with respect to a "claim or defense" if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue" under the controlling law. *See* Fed. R. Civ. P. 50(a)(1). This standard is similar to the standard for granting summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (noting that the summary judgment standard "mirrors" the standard for JMOL, such that "'the inquiry under each is the same.'") (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986)).

### B.     There Is No Basis for a Reasonable Jury To Find Infringement Under The Doctrine of Equivalents of the Relevant Claims of the '850 Patent

#### 1.     The Doctrine of Equivalents Cannot Extend to Include the Prior Art

The doctrine of equivalents allows a patentee to exclude others from practicing equivalents of the claimed invention. However, the range of equivalents cannot extend so far as to ensnare the prior art. *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684-85 (Fed. Cir. 1990) *overruled in part on other grounds*, *Cardinal Chem. Co. v. Morton Int'l, Inc.* 508 U.S. 83 (1993). Defendants' expert, Dr. Morley, testified that if the claims were "expanded" under the doctrine of equivalents to read on the accused devices, they would read on

the prior art. (Trial Tr. 1415:15-1425:20.) Specifically, if the "filter therein programmed" (claim 13), "programmable filter programmed" (claims 14, 16) or a "programmable delay line filter" that is "programmed" (claim 19), are expanded to cover adaptive filters, the claims would read on at least the Best and Graupe prior art.[1] Likewise, Dr. Soli, Defendants' validity expert explained that given Dr. Brown's broad doctrine of equivalents analysis regarding claims 1 and 2, those claims would be anticipated by the prior art. (Trial Tr. 1686:17-21, 1687:3-9.)

After an accused infringer satisfies its burden of presenting prior art which shows that the asserted range of equivalents would encompass the prior art, the burden then rests on the patentee to show that its claim does not cover the prior art. *Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 984 (Fed. Cir. 1999). ETG has not met that burden, and in fact, has presented no evidence to rebut the evidence that ETG's expanded claim scope ensnares the prior art. Indeed, Mr. Brown, ETG's infringement expert, testified that he did not consider the claims in the context of the prior art. (Trial Tr. 628:19-629:6; 635:19-23.)

### 2. Prosecution History Estoppel Precludes the Application of the Doctrine of Equivalents to claim 19

ETG cannot use the doctrine of equivalents to recapture claim scope which it surrendered during prosecution. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 733-34 (2002). The question of whether a prosecution history estoppel arises from a claim amendment, and if so, the extent of the estoppel, presents a question of law, to be determined exclusively by the court. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997). *See also Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1301-

---

[1] Defendants' validity expert, Dr. Soli, also established that the prior art included adaptive filters. (Trial Tr. 1656:22-1657:14.) Even more significantly, inventor Dr. Levitt admitted that he was working on least-means-square (LMS) adaptive filters before the patents were filed. (Trial Tr. 358:14-24.)

02 (Fed. Cir. 2005). Where a patent's prosecution history shows that an applicant narrowed the scope of the claims to secure the patent, those acts presumptively create an estoppel that bars ***all*** equivalents for the added limitations. *Festo Corp.*, 535 U.S. at 740 (emphasis added); *Biagro Western Sales*, 423 F.3d at 1305. Like claim amendments, the addition of a new independent claim can create an estoppel. *See, e.g.*, *Deering Precision Instruments, L.L.C., v. Vector Distribution Sys., Inc.*, 347 F.3d 1314, 1325-26 (Fed. Cir. 2003), *Mycogen Plant Science, Inc. v. Monsanto Co.*, 252 F.3d 1306, 1319-20 (Fed. Cir. 2001).

A patentee can rebut the *Festo* presumption of total surrender only if it can show: 1) the equivalent was unforeseeable at the time of the application; 2) the rationale underlying the amendment bears no more than a tangential relation to the equivalent in question; or 3) other reasons suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question. *Festo*, 535 U.S. at 740-41. Whether the patentee has rebutted the presumption presents a question of law that the court, not the jury, must determine. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 344 F.3d 1359, 1367-68 (Fed. Cir. 2003) (*en banc*). Most importantly, the patentee bears the burden of proof on whether it has rebutted the presumption. *Biagro,* 423 F.3d at 1305.[2]

---

[2] As a consequence of the presumption of total surrender applying for *amendment*-based prosecution history estoppel, there is no requirement, as ETG has erroneously contended in earlier papers, that the prosecution history show an unmistakable surrender of the asserted equivalent for amendment-based estoppel to apply. The requirement of unmistakable surrender only applies for *argument*-based prosecution history estoppel. *Conoco, Inc. v. Energy & Environmental Int'l, L.C.*, 460 F.3d 1349, 1364 (Fed. Cir. 2006) ("To invoke argument-based estoppel, however, 'the prosecution history must evince a clear and unmistakable surrender of subject matter.' *Deering Precision*, 347 F.3d 1326 (citation and punctuation omitted). Unlike amendment-based estoppel, we do not presume a patentee's arguments to surrender an entire field of equivalents through simple arguments and explanations to the patent examiner.").

Claim 19 was not an original claim of the '850 patent. JX-5, at 32-38 (original application), 129 (Amendment dated June 27, 1987). Rather, it was added after the original claims had been rejected. The applicants expressly highlighted the programmable delay line filter in the feedback path as the novel feature. ETG has failed to produce any evidence to meet its burden here. Nor could it. ETG cannot win using criterion (1) because prior art LMS adaptive filters were known and used at the time, and were known and therefore foreseeable (357:14-16). Moreover, because an alleged equivalent LMS adaptive filter is directly relevant to the claimed "programmable filter" in the feedback path – the announced novel feature of new claim 19 – and that feature existed in the prior art, ETG cannot rely on criterion (2) or (3) of *Festo*.

Therefore, ETG's claim of infringement of claim 19 of the '850 patent under the doctrine of equivalents should be denied as a matter of law.

## C. There Is No Basis for a Reasonable Jury To Find Infringement Under The Doctrine of Equivalents of the Relevant Claims of the '749 Patent

### 1. Prosecution History Estoppel Precludes the Application of the Doctrine of Equivalents

During the prosecution of the '749 patent, claim 24 was added to the application on February 12, 1988. JX-3, Feb. 12, 1988 Preliminary Amendment at 1-2. As presented, claim 24 did not recite any requirement that the claimed means measure phase and amplitude. *Id.* at 2. In response to a rejection of this claim as obvious in view of the prior art, the applicants cancelled all of the application claims, and replaced them with application claims 33-38. JX-3, Mar. 23, 1989 Amendment at 1-3. New application claim 33 narrowed the "means for receiving signals" element present in original claim 24 by adding the further requirement that the means for receiving signals from the hearing aid also include a means for "measuring phase and amplitude." *Id*. at 2. Applicants' remarks accompanying their amendment did not specifically

address this particular claim limitation. As a result of the applicants' amendment, the Patent Examiner allowed new application claims 33-38, which subsequently issued as claims 1-6 of the '749 patent. JX-3, June 6, 1989 Notice of Allowability.

Given that the applicants narrowed their claims by adding the limitations regarding measuring phase and amplitude to overcome a prior art rejection, a presumption of total surrender of equivalents applies to these limitations. *Festo Corp.,* 535 U.S. at 740. This presumption cannot be rebutted in view of the record in this case, and ETG has not done so. ETG has not established that determining, without measuring, phase and amplitude was not a foreseeable alternative, that the amendments were not just tangentially related to the equivalent, or that there is any other reason to rebut the presumption.

Moreover, as discussed above, ETG cannot establish this in view of the fact that the pertinent prior art included LMS adaptive filters -- which do not measure phase and amplitude -- and this feature was added to distinguish the prior art. Therefore, ETG's claims of infringement of the '749 patent under the doctrine of equivalents should be denied as a matter of law.

> **2.    ETG has not established that any of the means-plus-function claim elements required in the '749 patent claims are present.**

ETG also cannot establish that the means-plus-function elements of claims 1-2 of the '749 patent are present. If an accused structure is not a section 112, paragraph 6 equivalent of the disclosed structure because it does not perform the *identical* function of the disclosed structure and therefore does not literally infringe, to be an "equivalent" under the doctrine of equivalents, the accused structure must perform substantially the same function in substantially the same way to achieve substantially the same result as the *disclosed* structure. *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000). For example, as set forth in

the Court's claim construction order, such disclosed structure includes elements such as a digital phase shifter 30, a programmable gain amplifier 32, and an analog-to-digital converter 40. January 4, 2008 Amended Claim Construction Order at 7-9. ETG has failed to introduce any competent evidence that the accused products employ, for example, a digital shifter 30, a programmable gain amplifier 32, or their substantial equivalents. *See, e.g.,* Trial Tr. 618:5-619:11. ETG has failed to introduce evidence that accused devices employ analog-to-digital converters or their substantial equivalents. Trial Tr. 637:12-638:4.

ETG also cannot establish that the means-plus-function elements are present because Mr. Brown did only a functional analysis. *See, e.g.*, Trial Tr. 621:5-13, 635:24-363:14, 652:17-25. In so doing, Mr. Brown neglected the "means" requirement in "means-plus-function" claim elements.

As discussed above, an LMS adaptive filter is a nonprogrammable filter, one known not to be interchangeable with a programmable filter. This lack of interchangeability inherently compels the conclusion that the differences in function and way of operation are indeed substantial, precluding a finding of equivalency. *See Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d at 1480-81 (Fed. Cir. 1998).

### D. There Is No Basis for a Reasonable Jury To Find Literal Infringement of the Relevant Claims of the '850 Patent

Literal infringement requires that each and every limitation set forth in an asserted patent claim appear in the accused product or method. *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005).

In the present case, ETG has failed to introduce any evidence to establish that each and every limitation set forth in claims 13, 14, 16, and 19 of the '850 patent can be found in the accused products or methods. For example, ETG has proffered insufficient evidence to

establish that the accused products include "programmable delay line filters" or filters that are "programmable" or "programmed," as is required by claims 13, 14, 16, and 19. Mr. Clyde Brown, ETG's infringement expert, testified that FIR filter blocks within the Defendants' products are the required "filter[s] therein programmed" (claim 13), "programmable filter[s] programmed" (claim 14), or "programmable delay line filter[s]" that are "programmed" (claim 19).[3] Dr. Gloster, ETG's technical expert who testified about the code used to create Defendants' hearing aid chips, testified that a device that did not have a memory could not be programmable. 684:1-685:11.

There is no dispute that there is no memory or storage location for the coefficients in the WFIR and FIR blocks that Mr. Brown identified. For the Widex products, although Mr. Brown did not specify where the memory was located, Dr. Gloster, who performed a more detailed code analysis of the accused products than Mr. Brown, testified that the memory is either in the WLMS, a block that is separate from the WFIR, or in some "RAM" blocks outside the WFIR. 683:17-25; 670:17-671:6. Similarly, for the Demant products, Dr. Gloster testified that the "update module computed coefficients which were stored in a memory and provided as input to an FIR filter which is FBC_FIR." Mr. Brown testified that the buffer and filter were separate components. *See, e.g.,* Trial Tr. 515:23-516:11; 518:7-11. Because the components identified by ETG's infringement expert as the programmable or programmed filters do not meet

---

[3]   In connection with the accused Widex products, Mr. Brown identified the "WFIR" is the programmable delay line filter. Trial Tr. 526:11-20; 541:16-542:7. For the Demant Products, Mr. Brown identified the "FIR block" (Trial Tr. 517:3-518:12), "some form of FIR or tap delay line filter" for the Alaska products (Trial Tr. 523:7-16) and "some variant of an FIR filter" (Trial Tr. 533:23-534:2) as the programmable or programmed filters.

ETG's own expert's standard for programmability, ETG has not established that Defendants' products infringe claims 13, 14, 16, or 19 of the '850 patent.

Moreover, Mr. Brown, provided an analysis that reads out required claim limitations. For example, Mr. Brown testified that the required filters be "programmed" or "programmable" as required by claims 13, 14, 16 and 19. By arguing that "just about any digital filter" would satisfy this element, Mr. Brown highlights the flaw in his analysis: his failure to give any meaning to the "programmable" limitation of the claim. *See, e.g.*, Trial Tr. 532:23-533:22.

Mr. Brown's analysis is also improper to the extent he relied upon marketing materials instead of Defendants' technical documents or hardware description language code.

### E. There Is No Basis for a Reasonable Jury To Find Indirect Infringement of the '850 or '749 Patents Prior to the Filing of the Lawsuit.

To establish liability for induced infringement under 35 U.S.C. § 271(b), a patent holder must prove that once the defendants knew of the patent, they "'actively and knowingly aid[ed] and abett[ed] another's direct infringement.'" *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305-06 (Fed. Cir. 2006) (en banc) (*quoting Water Techns. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) (emphasis in original). Knowledge of the acts alleged to constitute infringement is not enough, and mere knowledge of possible infringement by others does not amount to inducement. Rather, specific or affirmative intent and action to induce direct infringement must be proven. *Id.* (citations omitted). Inducement requires evidence of "culpable conduct, directed to encouraging another infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id.* at 1306. When a patentee fails to show that direct infringement has occurred, there can be no liability for indirect infringement.

- 9 -

ETG has failed to establish that at any point before the bringing of the lawsuit, Defendants had any specific intent and action to induce infringement. (*See e.g.,* Trial Tr. 1745:24-1747:7; 746:7-748:24, 719:12-729:22.) This failure to establish any such specific intent and action to induce infringement justifies a finding that the Defendants did not induce infringement at least prior to the initiation of the lawsuit, when they were made aware of the acts that were alleged to constitute infringement. The Defendants also put forth evidence that they believed they were not infringing after initiation of the lawsuit. (Trial Tr. 994: 13-19.)

Similarly, to be liable as a contributory infringer, one must "sel[] within the United States…a component of a patented machine, manufacture, combination or composition… constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c)(emphasis added); *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d at 1303. The Supreme Court has interpreted the language of § 271(c) as requiring knowledge of the existence of the patent and knowledge that the use of the component in the combination would be infringing. *Aro Mfg. co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964). ETG has failed to establish the requisite knowledge prior to the initiation of the lawsuit, and as such, cannot establish contributory infringement.

Moreover, even assuming *arguendo* that ETG has introduced some evidence from which a jury could reasonably conclude that one or more Demant Group Defendants possessed the specific intent to encourage others to infringe certain patent claims or the requisite knowledge, it does not follow that all of the Demant Group Defendants possessed such specific

intent or knowledge.[4] In the absence of evidence that all six Demant Group Defendants possessed a specific intent to encourage others or knowledge to infringe all of the claims at issue, those individual Defendants for whom no individual proof is introduced are entitled to a judgment as a matter of law that they have committed no acts of inducement.

### F. There Is No Basis for a Reasonable Jury To Find Direct Infringement of Method Claims 13, 14, or 16 of the '850 patent

Each of claims 13, 14, and 16 require a method step of "inserting…a programmable filter" or "inserting…an electrical feedback path having a filter therein programmed." The trial evidence shows that the accused circuits and hearing aids are made outside of the United States. (Trial Tr. 1414:4-12; 1742:4-11.) 35 U.S.C. § 271(a) requires infringement "within the United States." *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1318. Because this criteria is not met, there can be no direct infringement.

Moreover, direct infringement requires one party to perform or use each and every step or element of a claimed method or product. *BMC Resources v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007). If the "inserting" step is performed outside the United States, and the "determining" step is performed during operation within the United States, this criteria cannot be met.

---

[4] For example, William Demant Holding A/S (WDH A/S) and WDH, Inc. are holding companies. Although the Court found that it had personal jurisdiction over WDH A/S, the Court did not hold that WDH A/S was the alter ego of any of the other Defendants, nor did the Court make findings to the effect that either WDH A/S or WDH, Inc. had knowledge of the patents-in-suit or intent to induce infringement. ETG has failed to introduce any evidence to establish such knowledge or intent.

## II. THE DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT THE PATENTS ARE INVALID

### A. If The Claims Are Found To Cover Adaptive Filters, There Would Be No Basis for a Reasonable Jury To Find That the '850 Patent or '749 Patent Satisfy the Written Description Requirement

Paragraph one of § 112 of the Patent Act requires a patent specification to contain an adequate written description of the invention. The "written description" clause of § 112 has been construed to mandate that the specification satisfy two closely related requirements. First, it must describe the manner and process of making and using the invention so as to enable a person of skill in the art to make and use the full scope of the invention without undue experimentation. Second, it must describe the invention sufficiently to convey to a person of skill in the art that the patentee had possession of the claimed invention at the time of the application, i.e., that the patentee invented what is claimed. *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005); *see also Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 736 (2002) ("What is claimed by the patent application must be the same as what is disclosed in the specification; otherwise the patent should not issue.").

ETG takes the position that all of the asserted claims of the '850 and '749 patents cover hearing aids that have adaptive filters. Defendants disagree. However, if the asserted claims are broad enough to cover adaptive filters, then the ETG patents do not comply with the written description requirement because there is nothing in the patents that show that the inventors had possession of the use of adaptive filters to cancel acoustic feedback. ETG points to five portions of the specification as allegedly disclosing adaptive filters to cancel acoustic feedback. (Abstract, col. 1:9-14, col. 2:22-27, col. 11:31-38 and col. 11:51-57). Trial Tr. 265:5-268:16. However, no reasonable jury could reach that conclusion. Dr. Morley, Defendants'

expert, explained at great length that all of the portions of the patent that could arguably be considered to be "adaptive" have nothing to do with acoustic feedback.  Trial Tr. 1359:1-1364:5; 1432:20-1434:3.

In addition, Dr. Morley pointed to two articles (Kates and Bustamante) that also concluded that the ETG patents did not disclose an adaptive acoustic feedback canceling filter. Trial Tr. 1434:4-1437:5.

In addition, the Court should grant judgment as a matter of law that claims 13, 14, 16, or 19 of the '850 patent, or claims 1-2 of the '749 patent are invalid because they fail to satisfy the written description requirement.

> **B.  If The Claims Are Found To Cover Adaptive Filters, There Would Be No Basis for a Reasonable Jury To Find That the '850 Patent or '749 Patent Are Not Anticipated Or Obvious In View Of The Prior Art**

ETG takes the position that all of the asserted claims of the '850 and '749 patents cover hearing aids that have adaptive filters.  Defendants disagree.  However, if the asserted claims are broad enough to cover adaptive filters, then the ETG patents are either anticipated or obvious in view of at least Graupe '818 and/or the Best work.  The Defendants validity expert, Dr. Soli, presented clear and convincing evidence that all of the asserted claims of the ETG patents were anticipated by both Graupe '818 (1662:20-23, 1674:7-10, 1679:24-1680:9, 1686:17-21) and the Best work.  (1665:10-13, 1675:18-20, 1679:24-1680:9, 1687:3-9).

ETG failed to provide enough evidence that could cause a reason jury to find the claim valid.  In fact, ETG's validity expert, Mr. Matzen admitted that Graupe '818 satisfies all the elements of claim 19 of the '850 patent (1988:5-13).  Mr. Matzen further admitted that if the Best feedback cancellation system is deemed to be in a signal transmission channel then Best would have all the elements of claims 13, 14 and 16 (1985:25-1986:6).  Similarly, Mr. Matzen

admitted that if Graupe '818 is deemed to determine the effect on the amplitude and phase of a signal in a transmission channel as a function of frequency of acoustic feedback between the receiver and the microphone, then Graupe '818 satisfies claims 13, 14 and 16 of the '850 patent. (1988:21-1989:12)

### III. CONCLUSION

For the reasons given above, the Court should grant the requested relief.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*
_____
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
302.658.9200

OF COUNSEL:

John M. Romary
C. Gregory Gramenopoulos
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Ave., N.W.
Washington, DC  20001-4413
202.408.4000

*Attorneys for William Demant Holding A/S, WDH Inc., Oticon A/S, Oticon, Inc., Bernafon AG, and Bernafon LLC*

OF COUNSEL:

SUGHRUE MION, PLLC
David J. Cushing
William H. Mandir
Carl J. Pellegrini
Brian K. Shelton
2100 Pennsylvania Ave., N.W.
Suite 800
Washington, DC  20037
202.293.7060

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Donald E. Reid*
_____
Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
302.658.9200

*Attorneys for Widex A/S and Widex Hearing Aid Co. Inc.*

Dated:  February 1, 2008
1446390