## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| ENERGY TRANSPORTATION GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-422 (GMS) |
| | ) | |
| SONIC INNOVATIONS, INC., et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## EXHIBIT 16 TO THE PRETRIAL ORDER

## **FINAL JURY INSTRUCTIONS**

TABLE OF CONTENTS

**1.0 GENERAL INSTRUCTIONS** ....................................................................... **4**

1.1  INTRODUCTION .......................................................................... 4
1.2  JUROR'S DUTIES ...................................................................... 5
1.3  BURDEN OF PROOF ....................................................................... 6
1.4  EVIDENCE DEFINED ....................................................................... 7
1.5  CONSIDERATION OF EVIDENCE ................................................. 8
1.6  DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................... 9
1.7  CREDIBILITY OF WITNESSES ...................................................... 10
1.8  NUMBER OF WITNESSES ......................................................... 11
1.9  EXPERT WITNESSES ................................................................... 12
**2.0 THE PARTIES' CONTENTIONS** ................................................................ **13**

2.1  THE PATENTS ........................................................................ 13
2.2  ETG'S CONTENTIONS ................................................................. 14
2.3  DEFENDANTS' CONTENTIONS ...................................................... 15
2.4  SUMMARY OF PATENT ISSUES ...................................................... 16
**3.0 CLAIM CONSTRUCTION** ........................................................................ **17**

3.1  CLAIM CONSTRUCTION – GENERALLY ........................................ 17
3.2  CLAIM CONSTRUCTION FOR THE CASE ........................................ 18
3.3  CONSTRUCTION OF MEANS-PLUS-FUNCTION CLAIMS FOR THE CASE . 20
**4.0 INFRINGEMENT – GENERAL** .................................................................. **21**

4.1  DIRECT INFRINGEMENT – KNOWLEDGE OF PATENT OR INTENT TO
INFRINGE IS IMMATERIAL ........................................................... 22
4.2  INDIRECT INFRINGEMENT ......................................................... 23
4.3  INDUCING PATENT INFRINGEMENT ............................................. 24
4.4  CONTRIBUTORY INFRINGEMENT .................................................. 25
4.5  DIRECT INFRINGEMENT – LITERAL INFRINGEMENT .................... 26
4.6  INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS .................. 27
4.7  INFRINGEMENT OF DEPENDENT CLAIMS ...................................... 28
4.8  INFRINGEMENT OF OPEN ENDED OR "COMPRISING" CLAIMS ....... 29
4.9  DIRECT INFRINGEMENT – INFRINGEMENT UNDER THE DOCTRINE OF
EQUIVALENTS .......................................................................... 30
4.10  INFRINGEMENT DESPITE DEFENDANTS' IMPROVEMENTS OR
PATENTS ON IMPROVEMENT ...................................................... 31
4.11  DIRECT INFRINGEMENT OF METHOD CLAIM – ACTS DONE IN THE
UNITED STATES ........................................................................ 32
**5.0  SUMMARY OF INVALIDITY DEFENSE** ............................................... **33**

5.1  PRIOR ART DEFINED ............................................................... 34
**6.0 ANTICIPATION** ...................................................................................... **36**

6.1 ANTICIPATION ................................................................................................ 36
6.2 DATE OF INVENTION ..................................................................................... 37
6.3 PRINTED PUBLICATION ................................................................................ 38
6.4 REASONABLE ACCESSIBILITY .................................................................... 39
6.5 PRIOR INVENTION ......................................................................................... 40
6.6 PRIOR PATENT ............................................................................................... 41
6.7 PRIOR PUBLIC KNOWLEDGE AND USE - ORAL PRESENTATION &
DEMONSTRATION ............................................................................................... 42
**7.0 OBVIOUSNESS** ............................................................................................... **43**

7.1 OBVIOUSNESS ............................................................................................... 43
7.2 SCOPE AND CONTENT OF THE PRIOR ART ................................................ 44
7.3 ANALOGOUS ART .......................................................................................... 45
7.4 PRIOR ART CONSIDERED FOR OBVIOUSNESS DETERMINATION ......... 46
7.5 DIFFERENCES BETWEEN THE CLAIMED INVENTION AND THE PRIOR
ART ....................................................................................................................... 47
7.6 LEVEL OF ORDINARY SKILL ........................................................................ 48
7.7 FACTORS INDICATING OBVIOUSNESS: INDEPENDENT INVENTION BY
OTHERS ................................................................................................................ 49
7.8 FACTORS INDICATING NON-OBVIOUSNESS ............................................. 50
**8.0 WRITTEN DESCRIPTION REQUIREMENT** .................................................. **51**

**10.0 DAMAGES** ..................................................................................................... 52

10.1 DAMAGES -- GENERALLY ........................................................................... 52
10.2 DATE DAMAGES BEGIN .............................................................................. 53
10.3 REASONABLE ROYALTY ............................................................................. 54
10.4 REASONABLE ROYALTY -- DEFINITION .................................................... 55
10.5 REASONABLE ROYALTY -- RELEVANT FACTORS ..................................... 56
10.6 REASONABLE ROYALTY -- TIMING ............................................................ 58
10.7 DAMAGES -- REDUCING DAMAGE POOL IN VIEW OF SALES TO THE
FEDERAL GOVERNMENT .................................................................................... 59
10.8 WILLFUL INFRINGEMENT ........................................................................... 60
**11.0 DELIBERATION AND VERDICT** ................................................................... **61**

11.1 INTRODUCTION ........................................................................................... 61
11.2 UNANIMOUS VERDICT ................................................................................ 62
11.3 DUTY TO DELIBERATE ................................................................................ 63
11.4 COURT HAS NO OPINION ........................................................................... 64

#9256908 v1

# 1.0 GENERAL INSTRUCTIONS

## 1.1 INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

## 1.2 JUROR'S DUTIES

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide whether the defendants are liable. It is my job to instruct you about the law and about what the claims of the patent mean, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

#9256908 v1

### 1.3  BURDEN OF PROOF

This is a civil case in which the plaintiff, ETG, is charging the defendants, Widex A/S and Widex Hearing Aid Co., Inc. ("Widex"), and William Demant Holding A/S, WDH Inc., Oticon A/S, Oticon Inc., Bernafon AG, and Bernafon, LLC ( "Demant ") with patent infringement.  ETG alleges that the Widex and Demant infringed the asserted claims of ETG's patents.  ETG has the burden of proving patent infringement by a preponderance of the evidence.  That means that ETG has to produce evidence which, when considered in light of all of the facts, leads you to believe that what ETG claims is more likely true than not.  To put it differently, if you were to put ETG's and the defendants' evidence relating to infringement on the opposite sides of a scale, the evidence supporting ETG's claims would have to make the scales tip somewhat on ETG's side.

ETG further urges that the Widex' and Demant' infringement was willful.  ETG has the burden of proving that the Widex' and Demant' infringement was willful by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that a factual contention is true.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

In this case, Widex and Demant assert that ETG's patents are invalid.  A patent, however, is presumed to be valid.  Accordingly, Widex and Demant have the burden of proving by clear and convincing evidence that ETG's patents are invalid.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt.  That requirement does not apply to a civil case; therefore, you should put it out of your mind.

6

## 1.4  EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition transcript testimony that you heard, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed. Certain charts, summaries, and graphics have been used to illustrate testimony from witnesses. These charts, summaries, and graphics are not themselves evidence, and are only as good as the underlying evidence supporting them. You should, therefore, give them only as much weight as you think the underlying evidence deserves.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said if he or she had been allowed to answer, or what an exhibit might have shown had I admitted it. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

7

## 1.5 CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

#9256908 v1

## 1.6 DIRECT AND CIRCUMSTANTIAL EVIDENCE

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence in this case. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## 1.7 CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

10

## 1.8 NUMBER OF WITNESSES

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

#9256908 v1

## 1.9  EXPERT WITNESSES

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.  Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

## 2.0 THE PARTIES' CONTENTIONS

### 2.1 THE PATENTS

The plaintiff, ETG, owns United States Patent Nos. 4,731,850 and 4,879,749.

As I noted at the start of the trial, I will refer to the asserted patents by their last three numbers: the '850 patent and the '749 patent.

#9256908 v1

## 2.2  ETG'S CONTENTIONS

ETG contends that Widex and Demant have infringed claims 13, 14, 16, and 19 of the '850 patent, and claims 1 and 2 of the '749 patent by making, using, selling and offering for sale hearing aids in the United States that fall within or perform methods falling within the scope of one or more of those claims, and by inducing and contributing to infringement by others.

ETG contends that Demant's infringement and Widex's infringement of the '850 and '749 patents is willful.

ETG contends that it has been damaged by Demant's and Widex's infringement of the '850 and '749 patents, and that ETG is thus entitled to, among other things, an award of a reasonable royalty, as provided by statute.

ETG contends that none of the asserted claims of the '850 Patent or the asserted claims of the '749 Patent is invalid because Defendants have not proven invalidity by clear and convincing evidence.

14

## 2.3 DEFENDANTS' CONTENTIONS

Defendants contend that they do not infringe any of the asserted claims of the '850 and '749 Patents because ETG has not proven that it is more likely than not that the accused products manufactured and sold by Defendants in the United States meet every limitation of the asserted claims of that patent. Defendants further contend that they did not willfully infringe any claim of the '850 and '749 Patents, and that ETG cannot prove by clear and convincing evidence that they did so.

Defendants further contend that the asserted claims of ETG's two patents are invalid. Specifically, Defendants contend that asserted claims of the '850 and '749 patent are invalid because they are anticipated and/or rendered obvious in view of the prior art. They also contend that certain asserted claims do not satisfy written description requirement for patents.

15

## 2.4 SUMMARY OF PATENT ISSUES

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following five main issues:

1.  Whether ETG has proven by a preponderance of the evidence that accused products made, used, sold, offered for sale in the United States and/or imported by Widex and/or Demant into the United States infringe the asserted claims of Patent Number 4,731,850 ("the '850 Patent") and Patent Number 4,879,749 ("the '749 Patent").

2.  Whether ETG has proven by a preponderance of the evidence that Widex and/or Demant induced the infringement of the asserted claims of the '850 and '749 Patents.

3.  Whether ETG has proved by clear and convincing evidence that Widex and/or Demant engaged in willful acts of infringement.

4.  Whether Widex and/or Demant have proven by clear and convincing evidence that the asserted claims of the '850 Patent and/or the '749 Patent are invalid.

5.  If you find that either Widex and/or Demant have infringed any of the asserted claims of ETG's '850 Patent or ETG's '749 Patent, what amount of damages ETG has proven by a preponderance of the evidence is due as a result of the infringement.

16

## 3.0 CLAIM CONSTRUCTION

### 3.1 CLAIM CONSTRUCTION – GENERALLY

Before you decide whether Widex and/or Demant infringed the claims of ETG's patents or whether ETG's patents are invalid, you will have to understand the patent claims. The patent claims are the numbered sentences at the end of the patent. The patent claims involved here are 13, 14, 16 and 19 of the '850 Patent, beginning at column 12, line 1 of that patent, which is exhibit JX-4 in evidence, and claims 1 and 2 of the '749 Patent, beginning at column 12, line 12 of that patent, which is exhibit JX -2 in evidence. The claims are "word pictures" intended to define, in words, the boundaries of the invention. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

## 3.2 CLAIM CONSTRUCTION FOR THE CASE

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid. I will now tell you the meanings of the following words and groups of words from the patent claims.

1.      The term "programmable delay line filter" from claim 19 of the '850 Patent is construed to mean "a filter that operates on time-delayed samples of an input by multiplying each sample by a corresponding weighting coefficient and summing the weighted samples." Further, "the value of at least one weighting coefficient can be programmed."

2.      The term "feedback path" from claim 19 of the '850 Patent is construed to mean "a path in which a signal travels from the output to the input."

4.      The term "programmed" from claims 13, 14, and 19 of the '850 Patent is construed to mean "provided with one or more values so as to produce a response."

11.     The term "a filter therein programmed" from Claim 13 of the '850 Patent is construed to mean "a filter having coefficients where the values of the coefficients are programmed."

12.     The term "inserting ... an electrical feedback path having a filter therein programmed" from Claim 13 of the '850 Patent is construed to mean "inserting an electrical feedback path between the input and output of the transmission channel." Further, the steps of "determining" and "inserting" are performed in the order recited in the claim limitation.

13.     The term "programmable filter" from Claim 14 of the '850 Patent is construed to mean "a filter having coefficients where the values of the coefficients can be programmed."

14.     The term "inserting between the input and output of said transmission channel a programmable filter" from Claim 14 of the '850 Patent is construed to mean "inserting a programmable filter between the input and output of the transmission channel." Further, the "determining step" must be performed before the inserting step."

17.     The term "host controller" from Claim 1 of the '749 Patent is construed to mean "a processor for controlling operations of a device."

18.     The term "means for receiving signals from the hearing aid and measuring phase and amplitude" from Claim 1 of the '749 Patent is a means plus function term pursuant to 35 U.S.C. § 112(6). The function of the term is "receiving signals from the hearing aid and measuring phase and amplitude." The corresponding structure is "digital phase shifter 30, connector/terminals 31, 34, 121, programmable gain amplifier 32,

18

latches 33, 42, 43, switches 37, 120, related control and signal lines" and all equivalents thereof.

19.     The term "means for receiving signals from the hearing aid indicative of the summation of acoustic feedback cancellation signals" from Claim 1 of the '749 Patent is a means plus function term pursuant to 35 U.S.C. § 112(6). The function of the term is "receiving signals from the hearing aid indicative of the summation of acoustic feedback and acoustic feedback cancellation signals." The corresponding structure is "connector/terminals 34, 121, switches 37, 120, latch 45, programmable amplifier 38, rectifier 39, analog-to-digital converter 40, related control and signal lines," and all equivalents thereof.

20.     The term "means controlled by the computer for adjusting the phase and amplitude necessary to eliminate acoustic feedback and produce a null summation" from Claim 1 of the '749 Patent is a means plus function term pursuant to 35 U.S.C. § 112(6). The function of the term is "adjusting the phase and amplitude necessary to eliminate acoustic feedback and produce a null summation." The corresponding structure is "latches 33, 42, 43, programmable gain amplifier 32, digital phase shifter 30," and all equivalents thereof.

21.     The term "means controlled by the computer for transmitting phase shift and amplitude data to program the hearing aid to eliminate acoustic feedback" from Claim 2 of the '749 Patent is a means plus function term pursuant to 35 U.S.C. § 112(6). The function of the term is "transmitting phase shift and amplitude data to program the hearing aid to eliminate acoustic feedback." The corresponding structure is "programmable gain amplifier 32, latches 33, 42, 43, digital phase shifter 30," and all equivalents thereof.

You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

### 3.3  CONSTRUCTION OF MEANS-PLUS-
### FUNCTION CLAIMS FOR THE CASE

As I told you in the previous section, claims 1 and 2 of the '749 Patent use a special form of patent language called a "means-plus-function" clause. This clause requires a special interpretation. Those words do not cover all means that perform the recited functions in these claims, but cover only the structure described in the patent specification and drawings that performs the function described in the claim or an equivalent of that structure. You must use my interpretation of the means-plus-function structure in your deliberations regarding infringement and validity.

#9256908 v1

## 4.0 INFRINGEMENT – GENERAL

I will now instruct you as to the rules you must follow when deciding whether ETG has proven that the Widex and/or Demant infringed any of the claims of the '850 and the '749 Patents.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, ETG alleges that the Widex' and/or Demant' hearing aids infringed claims 13, 14, 16 and 19 of ETG's '850 Patent and claims 1 and 2 of ETG's '749 Patent.

A patent may be infringed directly or indirectly. Direct infringement results if the accused product is covered by at least one claim of the patent. Indirect infringement results if the defendant induces another to infringe a patent or contributes to the infringement of a patent by another.

21

## 4.1  DIRECT INFRINGEMENT – KNOWLEDGE OF PATENT OR INTENT TO INFRINGE IS IMMATERIAL

In this case, ETG asserts that Widex and/or Demant directly infringed the '850 and '749 Patents. Widex and/or Demant would be liable for directly infringing ETG's patents if you find that ETG has proven that it is more likely than not that Widex and/or Demant made, used, sold, offered for sale and/or imported the invention defined in at least one claim of ETG's patents.

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent. They also may infringe even though they believe in good faith that what they are doing is not an infringement of any patent.

22

## 4.2 INDIRECT INFRINGEMENT

ETG asserts that Demant and Widex indirectly infringe ETG's '850 and '749 patents. There are two kinds of indirect infringement – inducement to infringe and contributory infringement. If a particular one of the Demant or Widex defendants is found not to directly infringe, that particular one Demant or Widex defendant may still indirectly infringe if: (1) there is anyone else who does directly infringe and (2) the requirements of Instructions 4.3 or 4.4 are met.

#9256908 v1

### 4.3 INDUCING PATENT INFRINGEMENT

To be liable for inducement to infringe, the accused inducer must have known of the patent and actively encouraged or instructed another person how to use a product or perform a method in a manner that you find infringes the asserted patent claims.

Thus, to prove that a particular Demant or Widex defendant induced infringement of the '850 or '749 patents, ETG must prove by a preponderance of the evidence each of the following four things with respect to that particular defendant:

1.      had knowledge of the patent;

2.      actively encouraged or instructed another person how to use a product or perform a method in a way you, the jury, finds infringes the patent claims;

3.      had an affirmative intent to cause the acts that constitute direct infringement and must have known or should have known that its action would cause direct infringement; and

4.      the induced person directly infringed a claim of the patent.

All four of these things must be proven by either direct or circumstantial evidence before you may find that one of the Defendants induced patent infringement.

24

## 4.4 CONTRIBUTORY INFRINGEMENT

ETG asserts that Widex and/or Demant contributed to another's infringement. To show contributory infringement, ETG has the burden to prove that it is more likely than not that there was contributory infringement.

Thus, to prove that a particular Demant or Widex defendant contributed to another's infringement of the '850 or '749 patents, ETG must prove by a preponderance of the evidence each of the following four things with respect to that particular defendant:

1.  Any one of Widex or any one of Demant sold or supplied;

2.  a material component of the patented invention that is not a staple article of commerce capable of substantial non-infringing use;

3.  with knowledge that the component was especially made or adapted for use in an infringing product. This requires that the particular defendant knew of the patent and knew that the patent would be infringed by the use of their component; and

4    the acts of that particular defendant resulted in a direct infringement of a claim of the patent.

A "staple article of commerce capable of substantial non-infringing use" is something that has uses other than as a part or component of the patented product, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

## 4.5 DIRECT INFRINGEMENT – LITERAL INFRINGEMENT

To determine literal infringement, you must compare the accused product with each claim that ETG asserts was infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if the Widex' and/or Demant' products include each and every element in that patent claim. If the Widex' and/or Demant' products do not contain one or more elements recited in a claim, then that defendant does not literally infringe that claim. You must determine literal infringement with respect to each patent claim individually.

The accused products should be compared to the invention described in each patent claim it is alleged to infringe, not to ETG's preferred embodiment of the claimed invention. The same element of the accused products may satisfy more than one element of a claim.

26

### 4.6 INFRINGEMENT OF
### MEANS-PLUS-FUNCTION CLAIMS

Claims 1 and 2 of the '749 Patent define a component of the invention as a means for performing a certain function.

A means-plus-function element is a claim element that claims a means for performing a specified function. For example, a table could be claimed in a patent as being a tabletop, legs, and means for attaching the legs to the tabletop. The means-plus-function element would cover structures described in the specification that perform the required function of "attaching the legs to the tabletop" and all equivalents.

I will now explain the three special rules that apply to this type of claim language. First, the accused device must perform the specified function. Specifically, for Claims 1 and 2 of the '749 Patent, you must first determine whether Demant's accused products and/or Widex's accused products perform the functions of those claims. If not, the claim containing that means-plus-function element is not infringed.

Second, if a Defendant's accused product does perform the required function, you must identify the structure in that Defendant's accused product that actually performs this function.

Finally, you must determine whether that accused structure is the same as or equivalent to the structure identified in the patent for performing the required function that I described to you earlier. If the structure of the accused device is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element of the claim is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether or not people of ordinary skill in the art would have believed that the structure of the accused product and the structure in the patent were interchangeable as of the date the patent issued.

27

## 4.7 INFRINGEMENT OF DEPENDENT CLAIMS

There are two different types of claims in the patent. One type of claim is called an independent claim. The other type of claim is called a dependent claim.

An independent claim is a claim that does not refer to any other claim of the patent. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim is a claim that refers to at least one other claim in the patent. A dependent claim incorporates all of the elements of the claim to which the dependent claim refers, as well as the elements recited in the dependent claim itself.

For example, Claim 14 of the '850 Patent is an independent claim and recites several elements. Claim 16 of the '850 Patent is a dependent claim that refers to Claim 14 and includes an additional element or limitation. Claim 16 requires each of the elements of Claim 14, as well as the additional elements identified in Claim 16 itself.

To establish literal infringement of Claim 16 of the '850 Patent, ETG must show that it is more likely than not that the Widex' and/or Demant' products includes each and every element of Claim 16.

If you find that Claim 14 of the '850 Patent from which Claim 16 depends is not literally infringed, then you cannot find that Claim 16 is literally infringed.

28

## 4.8 INFRINGEMENT OF OPEN ENDED
## OR "COMPRISING" CLAIMS

The preamble to Claim 1 of the '850 Patent uses the phrase "a hearing aid comprising." The word "comprising" means "including the following but not excluding others."

If you find that the Widex' and/or Demant' products include all of the elements in Claim 1 of the '850 Patent, the fact that the Widex' and/or Demant' products might include additional components would not avoid literal infringement of a claim that uses "comprising" language.

#9256908 v1

## 4.9 DIRECT INFRINGEMENT – INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

If you decide that the Widex' and/or Demant' products do not literally infringe an asserted patent claim, you must then decide whether those products infringe the asserted claim under what is called the "doctrine of equivalents." Under the doctrine of equivalents, products can infringe an asserted patent claim if they include parts that are identical or equivalent to the requirements of the claim. If the products are missing an identical or equivalent part to even one part of the asserted patent claim, the products cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the products have an identical or equivalent part to that individual claim requirement.

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement. One way to decide whether any difference between a requirement of an asserted claim and a part of the product is not substantial is to consider whether, as of the time of the alleged infringement, the part of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement. The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents. The same element of the accused product may satisfy more than one element of a claim.

You may not find that a component in the Defendant's product is equivalent to an element of the patent claim if by doing so the patent claim would cover products that were already in the prior art.

30

## 4.10  INFRINGEMENT DESPITE DEFENDANTS' IMPROVEMENTS OR PATENTS ON IMPROVEMENT

You may find that defendant's accused product represents an improvement over the invention defined in plaintiff's patent claims. You have seen and heard evidence that defendant obtained a patent on the improvement. However, you are not to presume that these facts mean that defendant cannot literally infringe plaintiff's patent claims. As long as defendant's accused product or method includes all of the elements of at least one of plaintiff's patent claims, or if defendant's accused product or method is found to be equivalent under the doctrine of equivalents, then plaintiff's patent claims are infringed by defendant's product despite defendant's improvements and patents.

The fact of separate patentability is, however, relevant and is entitled to due weight when considering infringement under the doctrine of equivalents.

#9256908 v1

## 4.11 DIRECT INFRINGEMENT OF METHOD CLAIM – ACTS DONE IN THE UNITED STATES

In this case, claims 13, 14, and 16 of the '850 patent are method claims. To infringe a method claim, each and every step of the method must be performed in the United States, for example, by operation of a product.

#9256908 v1

## 5.0 SUMMARY OF INVALIDITY DEFENSE

The Defendants contend that the asserted claim of the patents-in-suit are invalid. The Defendants have the burden of proving by clear and convincing evidence that each claim is invalid.

Claims of an issued patent are presumed to be valid. However, they may be found to be invalid, if proven by clear and convincing evidence. Thus, you must determine whether each of ETG's claims is invalid.

The Defendants contend that all of the asserted patent claims are invalid for one or more reasons, depending on the claim in question. I will now instruct you in more detail why the Defendants allege that the asserted claims of the '350 and '749 Patents are invalid.

33

## 5.1 PRIOR ART DEFINED

Prior art includes any of the following items received into evidence during trial:

1. any public use of a product by another in the United States before November 12, 1985 (see Instruction 6.7);

2. any product that was made by someone other than Dr. Levitt, Mr. Dugot, or Mr. Kopper before November 12, 1985 that was not abandoned, suppressed, or concealed (see Instruction 6.5).

3. any public knowledge by others United States before November 12, 1985 (see Instruction 6.7);

4. any printed publications that were published before June 26, 1985 (see Instruction 6.3);

5. patents by anyone other than Dr. Levitt that were filed before November 12, 1985;

6. patents by anyone other than Dr. Levitt that were issued before November 12, 1985;

In this case, the Defendants contend that the following items are prior art:

1. The invention of Kim Weaver;

2. The public use and knowledge of Kim Weaver's invention.

3. The invention of Leland Best (as evidence in part by Best, "Digital Suppression of Acoustic Feedback in Hearing Aids," Masters Thesis, University of Wyoming ("Best Thesis");

4. The public use and knowledge of Leland Best's invention.

5. Egolf, "Review of the Acoustic Feedback Literature From a Control Systems Point of View," The Vanderbilt Hearing-Aid Report, 1982 (the "1982 Egolf Article");

6. Nunley et al., "A Wearable Digital Hearing Aid," The Hearing Journal, October 1983, (the "Nunley Article";

7. The Larson and Egolf, "Acoustic Feedback Suppression in Hearing Aids," Veterans Administration Rehabilitation R&D Progress Reports, 1984, pages 163-164 (the "1984 VA Report");

8. Weaver et al., "Electronic Cancellation of Acoustic Feedback to Increase Hearing Aid Stability," abstract of presentation at the 109th Meeting of the Acoustical Society of America, April 12, 1985, *Journal of the Acoustical Society of America*, Vol. 77, S1, p. S105 ("1985 JASA Abstract");

9. The overheads presented at the April 12, 1985 Meeting of the Acoustic Society of American, ("1985 JASA Presentation");

10. Weaver, "An Adaptive Open-Loop Estimator for the Reduction of Acoustic Feedback," Masters Thesis, University of Wyoming ("Weaver Thesis");

11. The AFC-1 Circuit;

12. The AFC-2 Circuit

13. U.S. Patent No. 4,188,667 to Graupe et al.;

14. HearTech Electronic Anti-Feedback Circuit, *The Hearing Journal*, June 1986;

15. U.S. Patent No. 4,658,426 to Chabries et al.;

16. South et al., "Adaptive Filter to Improve Loudspeaker Telephone," *Electronic Letters*, Vol. 15, No. 21, 1979, pp. 673-74; and

17. U.S. Patent No. 4,783,818 to Graupe et al.

   In this case, the Plaintiff contends that only the following items qualify as prior art:

1. U.S. Patent No. 4,791,672 to Nunley et al.;

2. South et al., "Adaptive Filter to Improve Loudspeaker Telephone," *Electronic Letters*, Vol. 15, No. 21, 1979, pp. 673-74;

3. U.S. Patent No. 4,783,818 to Graupe et al.

## 6.0 ANTICIPATION

### 6.1 ANTICIPATION

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new. An invention that is not new or novel is said to be "anticipated." Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection. To prove anticipation, the Defendants must show that the claimed invention is not new.

In this case, the Defendants contend that the claims of the '850 and the '749 Patents are anticipated.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art. You may not combine two or more items of prior art to prove anticipation. In determining whether every one of the elements of the claimed inventions is found in the prior publication, patent, etc., you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular publication, patent, etc.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior publication, invention, etc., but also what inherently featured in or resulted from a natural result of its practice. This is called "inherency." A party claiming inherency must prove it by clear and convincing evidence. To establish inherency, the evidence must make clear that prior art either necessarily featured or resulted in the missing descriptive matter and that it would be so recognized by persons of ordinary skill in the art. Inherent anticipation, however, does not require that a person of ordinary skill in the art at the time the patent application was filed would have recognized the inherent disclosure. Thus, the prior use of the patented invention that was accidental, or unrecognized and unappreciated can still be an invalidating anticipation.
You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case. There are additional requirements that apply to the particular categories of anticipation that the Defendants contend apply in this case. I will now instruct you about those.

## 6.2 DATE OF INVENTION

In this case, the date of invention for the asserted claims is November 12, 1985.

37

## 6.3 PRINTED PUBLICATION

The Widex and Demant contend that Claims 13, 14, 16 and 19 of the '850 Patent and Claims 1 and 2 of the '749 Patent are anticipated because the invention defined in those claims was described in a printed publication more than one year before the patentee filed the U.S. patent application or invented the invention.

A patent claim is invalid if the invention defined by that claim was described in a printed publication before it was invented by the patentee or more than one year prior to the filing date of the U.S. application. A printed publication must be reasonably accessible to those members of the public who would be interested in its contents. It is not necessary that the printed publication be available to every member of the public. The information must, however, have been maintained in some form, such as printed pages, typewritten pages, magnetic tape, microfilm, photographs, or photocopies. An issued patent is a printed publication. A published patent application is a printed publication as of its publication date.

For a printed publication to anticipate a patent claim, it must, when read by a person of ordinary skill in the art, expressly or inherently disclose each element of the claimed invention to the reader. The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art one year before the application for the '850 Patent was filed, and you may consider evidence that sheds light on the knowledge such a person would have had.

The Best Master Thesis is not a printed publication. You may use the Best Thesis to determine if there was a prior invention that was not abandoned, suppressed, or concealed or a prior public use or knowledge of the claimed invention.

38

## 6.4 REASONABLE ACCESSIBILITY

A document is a printed publication if it was reasonably accessible to that portion of the public most likely to use it. In making that determination, the following factors should be taken into account: 1) the degree of distribution or dissemination of the document; 2) whether the records were accessible to the public; 3) whether the document was indexed and catalogued in a meaningful way; 4) the duration of any display; 5) the expertise of the intended audience; 6) expectations regarding the copying of the information displayed; and 7) the ease or simplicity with which a display could be copied.

## 6.5 PRIOR INVENTION

The Defendants contend that Claims 13, 14, 16 and 19 of the '850 Patent and Claims 1 and 2 of the '749 Patent were anticipated because the invention defined in that claim was invented by another person, a third party, before the patentee invented his invention.

A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was invented by the patentee, and that other person did not abandon, suppress, or conceal the invention.

A product which would literally infringe made after November 12, 1985 would anticipate if made before November 12, 1985.

To invalidate a claim based on prior invention, the Defendants must show by clear and convincing evidence either that before the patentee invented his invention covered by that claim, a third party reduced to practice a product that included all of the elements of Claims 13, 14, 16 and 19 of the '850 Patent and Claims 1 and 2 of the '749 Patent.    In addition, the defendants must show that the third party's device was sufficiently developed that one skilled in the art would have recognized that it would work for its intended purpose.

If the prior invention was abandoned, suppressed, or concealed, it does not anticipate either the '850 or the '749 Patent.    However, it is not necessary that the patentee had knowledge of that prior invention, or that the public had access to the prior invention prior to June 26, 1986 filing date of the '850 and '749 patents, provided that the prior invention was not abandoned, suppressed, or concealed.

Generally, an invention was not abandoned, suppressed, or concealed if the invention was made public.    A period of delay does not constitute abandonment, suppression, or concealment if the prior inventor was engaged in reasonable efforts to made the invention public.

40

## 6.6 PRIOR PATENT

The Defendants contend that Claims 13, 14, 16 and 19 of the '850 Patent and Claims 1 and 2 of the '749 Patent were anticipated because the invention defined in those claims were patented by a third party before November 12, 1985.

A patent claim is invalid if the invention defined by that claim was described in a United States patent application that was filed before November 12, 1985 and that subsequently issued as a United States patent..

To show anticipation of each of Claims 13, 14, 16 and 19 of the '850 Patent and Claims 1 and 2 of the '749 Patent, the Defendants must show by clear and convincing evidence that before the critical date, November 12, 1985, the third party filed a patent application that included all of the elements of each of those claims.

.

41

## 6.7 PRIOR PUBLIC KNOWLEDGE AND USE - ORAL PRESENTATION & DEMONSTRATION

A patent claim is invalid if there is clear and convincing evidence that the invention was known or used by others in this country before the invention by the applicant for a patent. An oral presentation can show that the claimed invention was known by others in this country before the invention by the named inventors. A public demonstration of the invention without any obligation of secrecy or confidentiality can show a public use.

Oral testimony of prior public knowledge and public use must be corroborated in order to invalidate a patent. The most reliable evidence of corroboration comes from documentary or physical evidence that was made contemporaneously with the alleged prior public knowledge or public use, such as materials used in the oral presentation. You must decide whether, under the totality of the circumstances, the testimony of witnesses and the documentary evidence show a coherent and convincing story of the asserted prior public knowledge or public use. The burden is on the party asserting invalidity to prove it with facts supported by clear and convincing evidence.

#9256908 v1

## 7.0 OBVIOUSNESS

### 7.1 OBVIOUSNESS

The Defendants contend that claims 13, 14, and 16 through 19 of the '850 Patent and claims 1 and 2 of the '749 Patent are invalid because the claimed inventions were "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art at the time the invention was made. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

The following factors must be evaluated to determine whether the Defendants have established that the claimed inventions are obvious:

1. the scope and content of the prior art relied upon by the Defendants;

2. the difference or differences, if any, between each claim of the '850 Patent and each claim of the '749 Patent that the Defendants contend is obvious and the prior art;

3. the level of ordinary skill in the art at the time the invention of the of the '850 Patent and the level of ordinary skill in the art at the time the invention of the '749 Patent was made; and

4. additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims. The Defendants bear the burden of proving obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.

43

## 7.2  SCOPE AND CONTENT OF THE PRIOR ART

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes.

You must determine what is the prior art that may be considered in determining whether the '850 and the '749 Patents are obvious. A prior art reference may be considered if it discloses information designed to solve the same problems faced by the inventors or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve the same problems faced by the inventors.

## 7.3  ANALOGOUS ART

ETG and the Defendants disagree as to whether the alleged analogous art is analogous prior art.

An item of prior art is analogous if it comes from the same field in which the patentee was working, even if it does not concern the problem the patentee was addressing. An item of prior art is also analogous even if it was not from the same field in which the patentee was working, so long as it was reasonably pertinent to the particular problem that the patentee was trying to solve.

If you determine that the disputed reference is not analogous art, then you should ignore it in deciding whether the claimed invention would have been obvious.

45

## 7.4  PRIOR ART CONSIDERED FOR OBVIOUSNESS DETERMINATION

An invention is not patentable if it is anticipated by the "prior art," as explained a few minutes ago, or if it is obvious in view of the "prior art." The same "prior art" is used for both determinations, as is the same "date of invention." Accordingly, you may consider the Instructions I gave you on "Date of Invention" (Instruction 6.2), "Corroboration" (Instruction 6.2.1), "Printed Publication" (Instruction 6.3),    "Reasonable Accessibility" (Instruction 6.4), "Prior Invention" (Instruction 6.5), "Conception and Reduction to Practice" (Instruction 6.6), "Prior Patent" (Instruction 6.7), "Derivation" (Instruction 6.8), and "Prior Public Knowledge and Use -- Oral Presentation & Demonstration" (Instruction 6.9) to apply equally to the question of whether or not a claim is "anticipated" or "obvious."

In the case of "anticipation", each piece of prior art stands alone.  In the case of "obviousness," pieces of prior art may be combined as I will instruct.  The burden remains with Defendants to show "anticipation" or "obviousness" by clear and convincing evidence.

## 7.5  DIFFERENCES BETWEEN THE CLAIMED INVENTION AND THE PRIOR ART

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of any such differences on the obviousness or non-obviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

Again, you must undertake this analysis separately for each claim that the Defendants contend is obvious.

## 7.6  LEVEL OF ORDINARY SKILL

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the pertinent art field. The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

- the level of education and experience of persons actively working in the field at the time of the invention, including the inventor;

- the types of problems encountered in the art at the time of the invention; and

- the sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

48

## 7.7 FACTORS INDICATING OBVIOUSNESS: INDEPENDENT INVENTION BY OTHERS

In reaching your determination on the issue of obviousness, you should also consider whether or not the claimed invention was invented independently by other persons, either before it was invented by the patentee or at about the same time. Just as the failure of others to make the invention may be evidence that an invention would not have been obvious, independent making of the invention by persons other than the inventor at about the same time may be evidence that the invention would have been obvious, depending on the circumstances.

#9256908 v1

## 7.8  FACTORS INDICATING NON-OBVIOUSNESS

Before deciding the issue of obviousness, you must also consider certain factors which, if established, may indicate that the invention would not have been obvious. No factor alone is dispositive, and you must consider the obviousness or non-obviousness of the invention as a whole.

1.  Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2.  Was there long felt need for a solution to the problem facing the inventors which was satisfied by the claimed invention?

3.  Did others try, but fail, to solve the problem solved by the claimed invention?

4.  Did others copy the claimed invention?

5.  Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6.  Did others in the field, or any of the Widex, or any of Demant, praise the claimed invention or express surprise at the making of the claimed invention?

7.  Did others accept licenses under the '850 Patent or the '749 Patent because of the merits of the claimed invention?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.

## 8.0 WRITTEN
## DESCRIPTION REQUIREMENT

A patent must contain a written description of the systems and processes claimed in the patent. The written description requirement helps to ensure that the patent applicant actually invented the claimed subject matter and was in possession of the invention. To satisfy the written description requirement, the patent must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used. The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the invention as finally claimed in the patent. It is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention.

The Defendants contend that Claims 13, 14, and 16 of the '850 Patent and Claims 1 and 2 of the '749 Patent are invalid for failure to satisfy the written description requirement. The Defendants bear the burden of establishing lack of written description by clear and convincing evidence.

If you find that the Defendants have proved that it is highly probable that either the '850 Patent and/or the '749 Patent does not contain a written description of the invention covered by any of these claims, then you must find that claim is invalid.

## 10.0 DAMAGES

### 10.1  DAMAGES -- GENERALLY

If you find that the accused device infringes any of the claims of the '850 or the '749 Patents, and that those claims are not invalid, you must determine the amount of damages to be awarded ETG for the infringement.  On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you need not address damages in your deliberations.  If you need to determine damages, the amount of those damages must be adequate to compensate ETG for the infringement.  Your damage award should put ETG in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty.  You may not add anything to the amount of damages to punish the accused infringer or to set an example.

ETG has the burden of proving each element of its damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case.  Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of ETG.

## 10.2  DATE DAMAGES BEGIN

Damages you may award ETG commence on the date that the specific defendant began to infringe ETG's patents, but no earlier than six (6) years before June 23, 2005, the filing date for this lawsuit.

53

## 10.3  REASONABLE ROYALTY

If you find that ETG has proven a claim of infringement, you must then determine what reasonable royalty ETG is entitled to. The patent law specifically provides that the amount of damages that Widex and/or Demant must pay ETG for infringing ETG's patents may not be less than a reasonable royalty for the use that Widex and/or Demant made of ETG's patents. A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall.

54

## 10.4 REASONABLE ROYALTY -- DEFINITION

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention. A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and a company in the position of Widex or Demant taking place just before the infringement began. You should also assume that both parties to that negotiation understood the patent to be valid and infringed and were willing to enter into a license.

## 10.5   REASONABLE ROYALTY -- RELEVANT FACTORS

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

1.    Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.    The rates paid by Widex and/or Demant to license other patents comparable to the '850 and '749 Patents.

3.    The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.    The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.    The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.    The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.    The duration of the '850 and '749 Patents and the term of the license.

8.    The established profitability of the product made under the '850 and '749 Patents; its commercial success; and its current popularity.

9.    The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.   The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11.   The extent to which Widex and/or Demant made use of the invention; and any evidence that shows the value of that use.

12.   The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

56

13.    The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.    The opinion testimony of qualified experts.

15.    The amount that a licensor (such as ETG) and a licensee (such as Widex and/or Demant) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.    Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

#9256908 v1

## 10.6  REASONABLE ROYALTY -- TIMING

Although the relevant date for the hypothetical reasonable royalty negotiation is just before the infringement began, you may consider in your determination of reasonable royalty damages any actual profits by Widex and/or Demant after that time. You may only consider this information, however, if it was foreseeable at the time that the infringement began.

#9256908 v1

## 10.7  DAMAGES -- REDUCING DAMAGE POOL IN VIEW OF SALES TO THE FEDERAL GOVERNMENT

Demant alleges that portions of its sales of accused products were made to the United States government and that you may not award damages based on any sales of the accused products to the United States government.   Demant must prove by a preponderance of the evidence that these products were sold with the authorization or consent of the United States government and that these products were for use by the Government.  If Demant meets its burden of doing so, then you may not award damages based on those sales.

## 10.8  WILLFUL INFRINGEMENT

If you find by a preponderance of the evidence that Widex and/or Demant infringed ETG's patents, either literally or under the doctrine of equivalents, then you must further determine if this infringement was willful. Willfulness must be proven by clear and convincing evidence showing that:

1.    Widex and/or Demant had actual knowledge of ETG's patents,

2.    A reasonable person, with knowledge of ETG's patent, would have concluded that: (a) the Widex' and/or Demant' actions were highly likely to infringe ETG's '850 Patent and/or '749 Patent, and (b) ETG's '850 Patent and/or '749 Patent were highly likely to be valid, and

3.    Widex and/or Demant acted even though they knew, or it was so obvious that they should have known, that their actions were highly likely to infringe a valid patent.

In making the determination as to willfulness, you must consider the totality of the circumstances and determine whether there was an objectively high likelihood that a party knew that it was infringing a valid patent. In making this determination you may consider a number of factors, which include, but are not limited to, whether Widex and/or Demant intentionally copied the claimed invention, whether Widex and/or Demant presented a substantial defense to infringement, including the defense that the patent is invalid and whether Widex and/or Demant obtained competent legal advice.

#9256908 v1

## 11.0  DELIBERATION AND VERDICT

### 11.1  INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. After you hear the closing arguments of counsel, you will return to the jury room to begin your deliberations. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  The first thing you should do is select a foreperson.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

61

## 11.2 UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges -- judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

#9256908 v1

## 11.3 DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that -- your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself

## 11.4  COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

#9256908 v1