IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ENERGY TRANSPORTATION GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-422 (GMS) |
| | ) | |
| SONIC INNOVATIONS, INC., et al, | ) | |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF THE
WIDEX DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
AND REQUEST FOR NEW TRIAL ON THE ISSUE OF WILLFUL INFRINGEMENT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200
dreid@mnat.com

OF COUNSEL:

*Attorneys for Widex A/S and
Widex Hearing Aid Co. Inc.*

SUGHRUE MION, PLLC
David J. Cushing
William H. Mandir
Carl J. Pellegrini
Brian K. Shelton
2100 Pennsylvania Ave., N.W.
Suite 800
Washington, DC 20037
202.293.7060

Dated: March 27, 2008

i.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................1

NATURE AND STAGE OF PROCEEDINGS ............................................................1

SUMMARY OF ARGUMENT ..............................................................................1

ARGUMENT...................................................................................................2

    I.      STANDARD FOR GRANTING JMOL..................................................2

    II.     STANDARD FOR GRANTING A NEW TRIAL .................................2

    III.    ETG PRESENTED INSUFFICIENT EVIDENCE TO SUPPORT A WILLFUL INFRINGEMENT FINDING.........................................3

        A.    The Standard For Willful Infringement ........................................3

        B.    No Reasonable Jury Could Find Clear And Convincing Evidence of Seagate's Objective Prong Because Substantial Defenses To Both Infringement And Validity Were Presented ...............................................................................5

            1.    Substantial Non-infringement Defenses Were Presented ...........................................................6

            2.    Substantial Invalidity Defenses Were Presented .............................8

        C.    Evidence Of ETG's Own Evaluation Of The Patents-In-Suit Supports The Substantial Nature Of Widex's Defenses.....................11

    IV.    NO REASONABLE JURY COULD FIND CLEAR AND CONVINCING EVIDENCE OF SEAGATE'S SUBJECTIVE PRONG. ...............................................................................13

CONCLUSION................................................................................................15

ii.

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Ajinomota Co., Inc., v. Archer-Daniels-Midland Co.*,
   228 F.3d 1338 (Fed. Cir. 2000).................................................................5, 13

*Black & Decker, Inc. v. Robert Bosch Tool Corp.*,
   2008 U.S. App. LEXIS 207 (Fed. Cir. 2008) ...........................................5

*Cohesive Techs., Inc. v. Waters Corp., Inc.*,
   526 F. Supp. 2d 84 (D. Mass. 2007) .......................................................6

*Cohesive Techs., Inc. v. Waters Corp.*,
   2007 U.S. Dist. LEXIS 69464 (D.Mass. 2007) .....................................13

*Comark Comm. v. Harris Corp.*,
   156 F.3d 1182 (Fed. Cir. 1998)..............................................................4

*Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*,
   34 F.3d 1048 (Fed. Cir. 1994)................................................................5

*Franklin Elec. Co. v Dover Corp.*,
   2007 U.S. Dist. LEXIS 84588 (W.D. Wis. 2007)..................................6

*Gustafson Inc. v. Intersystems Indus. Prods., Inc.*,
   897 F.2d 508 (Fed. Cir. 1990)................................................................5

*In re Seagate Tech., LLC*,
   497 F.3d 1360 (Fed. Cir. 2007).................................................... *passim*

*Innogenetics, N.V. v. Abbott Labs.*,
   512 F.3d 1363 (Fed. Cir. 2008).............................................................11

*Knorr Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp,.*
   383 F.3d 1337 (Fed. Cir. 2004).............................................................15

*Lifescan Inc. v. Home Diagnostics, Inc.*,
   103 F. Supp. 2d 345 (D. Del. 2000)......................................................3

*Montgomery Ward & Co. v. Duncan*,
   311 U.S. 243 (1940)...............................................................................2

*Norian Corp. v. Stryker Corp.*,
   363 F.3d 1321 (Fed. Cir. 2004).........................................................4, 13

*Pannu v. Iolab Corp.*,
   155 F.3d 1344 (Fed. Cir. 1998)........................................................................2

*ResQNet.com, Inc., v. Lansa, Inc.*,
   2008 U.S. Dist. LEXIS 7908 (S.D.N.Y. 2008)...............................................6, 12

*Trading Techs. Int'l Inc. v. eSpeed, Inc.*,
   2008 U.S. Dist. LEXIS 295 (N.D. Ill 2008) .....................................................4

**FEDERAL: STATUTES, RULES**

35 U.S.C. § 112, ¶ 1 ...........................................................................................10

Fed. R. Civ. P. 50 ............................................................................................1, 2

## INTRODUCTION

In its February 4, 2008 verdict, the Jury found the patents-in-suit valid and infringed by Defendants Widex A/S and Widex Hearing Aid Co., Inc. (collectively "Widex"), awarded ETG damages and found Widex's infringement willful. However, to prove willful infringement, ETG had to first establish that Widex acted despite an objectively high likelihood that their actions constituted infringement of a valid patent. ETG did not satisfy that burden and no reasonable jury could have found that ETG did. Therefore, Widex renews its motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) and, in the alternative, requests a new trial on willfulness.

## NATURE AND STAGE OF PROCEEDINGS

ETG filed this lawsuit against Widex on June 23, 2005, asserting infringement of U.S. Patent Nos. 4,731,850 ("the '850 patent") and 4,879,749 ("the '749 patent"). This Court held a jury trial on all issues from January 22, 2008, through February 1, 2008. At the close of evidence, Widex brought a motion for JMOL pursuant to Fed. R. Civ. P. 50(a). The Court reserved judgment on the motion. (Trial Tr. 2021:1-8 (Appendix A includes all pages of the trial transcript referenced herein).) On February 4, 2008, the Jury found that Widex willfully infringed the patents-in-suit. (D.I. 521.)

## SUMMARY OF ARGUMENT

The Federal Circuit recently set forth a new two-part test for willfulness consisting of an objective prong and a separate subjective prong, which a plaintiff in a patent infringement action must satisfy by clear and convincing evidence. In overruling the lower threshold that existed under previous case law, the Federal Circuit decreed that proof of willful infringement requires "at least a showing of objective recklessness." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

2.

No reasonable jury could have found that ETG presented substantial clear and convincing evidence of the objective prong because Widex presented numerous substantial defenses to both infringement and validity. In addition, ETG's own evaluation of the patents supports Widex's non-infringement defense. Likewise, no reasonable jury could have found that ETG presented substantial clear and convincing evidence of the subjective prong because the only evidence ETG presented was that Widex knew about the patents. No evidence was presented that showed that Widex considered the patents in the context of its products or that any of its designers involved in the design of the accused products were aware of the patents.

<u>ARGUMENT</u>

I.    STANDARD FOR GRANTING JMOL

Under Rule 50 of the Federal Rules of Civil Procedure, a court should grant a motion for judgment as a matter of law ("JMOL") where "there is no legally sufficient basis for a Jury to find for [the non-moving] party." Fed. R. Civ. P. 50. Thus, in order to prevail on a renewed motion for JMOL following a Jury trial, the Defendants "must show that the Jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the Jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (alteration in original) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)) ("'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review.").

II.   STANDARD FOR GRANTING A NEW TRIAL

A new trial may be granted at the discretion of the district court when the verdict is against the clear weight of the evidence. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940) ("The motion for a new trial may invoke the discretion of the court in so far as it is

3.

bottomed on the claim that the verdict is against the weight of the evidence . . . .").  The standard

for grant of a new trial is less rigorous than the standard for grant of judgment as a matter of law

because the court need not view the evidence in the light most favorable to the verdict winner.

*Lifescan Inc. v. Home Diagnostics, Inc.,* 103 F. Supp. 2d 345, 350 (D. Del. 2000).

> III.    ETG PRESENTED INSUFFICIENT EVIDENCE TO SUPPORT
>         A WILLFUL INFRINGEMENT FINDING

No reasonable jury could find that Widex willfully infringed the '850 and '749 patents.

The evidence presented by ETG on the issue of willfulness, taken in the light most favorable to

ETG, cannot sustain a willfulness finding in view of  the heightened standard for willful

infringement set forth by *Seagate*.  The Court should therefore grant JMOL that Widex did not

willfully infringe the ETG patents.

> A.    The Standard For Willful Infringement

The Federal Circuit raised the willful infringement bar considerably in the recent *en banc*

*Seagat*e ruling.  *Seagate* set forth a new two-part test, consisting of an objective prong and a

separate subjective prong, which a plaintiff in a patent infringement action must satisfy by clear

and convincing evidence.  In overruling the lower threshold that existed under previous case law,

the Federal Circuit decreed that proof of willful infringement requires "at least a showing of

objective recklessness."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).  The

*Seagate* court found that the lower threshold for willful infringement set forth in *Underwater*

*Devices*, which was more akin to a "negligence standard," did not comport with the general

understanding of willfulness in the civil context and was thus, inconsistent with Supreme Court

precedent regarding punitive damages.  *Seagate*, 497 F.3d at 1371.  In setting forth this

heightened standard for willfulness, the Federal Circuit expressly "abandon[ed] the affirmative

duty of due care" and "the affirmative obligation to obtain opinion of counsel."  *Id.*

4.

Under the objective prong of the *Seagate* test, the "patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Seagate*, 497 F.3d at 1371. The accused infringer's state of mind is not relevant to this inquiry. *Id*. If the threshold objective prong is met, the patentee must then satisfy the subjective prong of *Seagate*, which requires the patentee to show that the "objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id*. (footnote omitted). Further, the Federal Circuit clearly differentiated between pre-suit and post-suit conduct: "a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct."[1]

Both prongs of willful infringement must be proven by clear and convincing evidence. *Seagate*, 497 F. 3d at 1371. In determining whether willfulness is supported by substantial evidence, the reviewing court looks to the "totality of the circumstances." *See Comark Comm. v. Harris Corp.*, 156 F.3d 1182, 1190 (Fed. Cir. 1998); *Trading Techs. Int'l Inc. v. eSpeed, Inc.*, 2008 U.S. Dist. LEXIS 295, at *4 (N.D. Ill 2008). Exculpatory evidence must also be considered. *Id*. However, willfulness cannot be proved merely by evidence that the defendant infringed and knew of the patent. *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1332 (Fed. Cir. 2004).

Here, no reasonable jury could find that ETG proved by clear and convincing evidence that Widex's actions presented an objectively high likelihood of infringing ETG's patents and that this risk was either known to Widex or so obvious that Widex should have known it.

---

[1]     *Id*. at 1374. ETG did not supplement its complaint to add a post-suit allegation of willful infringement.

5.

Because ETG failed to satisfy its burden under the *Seagate* standard, the evidence is insufficient to sustain liability and this Court should find no willful infringement as a matter of law. At the very least, the finding of willful infringement is so against the weight of the evidence as to justify a new trial on this point.

> B.   No Reasonable Jury Could Find Clear And Convincing Evidence of Seagate's Objective Prong Because Substantial Defenses To Both Infringement And Validity Were Presented[2]

As mentioned above, under the objective prong of the *Seagate* test, the "patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Seagate*, 497 F.3d at 1371. No substantial clear and convincing evidence supports the Jury's finding that Widex acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

The assertion of substantial litigation defenses has, even before *Seagate*, been a basis for finding non-willfulness. *Gustafson Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990). Even without the heightened standard for willfulness findings imposed by *Seagate*, willfulness has been held inappropriate where, as here, a substantial defense as to both infringement and validity has been presented. *Ajinomota Co., Inc., v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1351-52 (Fed. Cir. 2000); *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1057 (Fed. Cir. 1994).

The significance of substantial litigation defenses in willfulness determinations is only enhanced under the new *Seagate* criteria. *See Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 2008 U.S. App. LEXIS 207, at *18 (Fed. Cir. 2008) (under *Seagate*, "both legitimate defenses to

---

[2]   Widex has also filed, concurrently with this motion, a JMOL on the issues of infringement and validity.

6.

infringement claims and credible invalidity arguments demonstrate the lack of an objectively

high likelihood that a party took actions constituting infringement of a valid patent."); *see also*

*ResQNet.com, Inc., v. Lansa, Inc.*, 2008 U.S. Dist. LEXIS 7908, at *50 (S.D.N.Y. 2008)  (no

willfulness despite patent being found valid and infringed where "arguments in these areas were

substantial, reasonable, and far from the sort of easily-dismissed claims that an objectively

reckless infringer would be forced to rely upon.");  *Cohesive Techs., Inc. v. Waters Corp.*, *Inc.*,

526 F. Supp. 2d 84, 103-04 (D. Mass. 2007) (finding no willfulness where there was a bona fide

dispute over infringement); *Franklin Elec. Co. v Dover Corp.*, 2007 U.S. Dist. LEXIS 84588, at

*23 (W.D. Wis. 2007) (finding that the burden of showing objective recklessness was not met

given "significant support in the language of the patent, the specification, and the prosecution

history for defendant's non-infringement position.").

> 1.    Substantial   Non-infringement   Defenses   Were
> Presented

Widex presented substantial evidence that its Senso Diva and Inteo hearing aids employ a

continuously adaptive feedback cancellation technique very different from the fixed feedback

cancellation solution disclosed and claimed in the ETG patents.  (Trial Tr. 1387:7-1388:21,

1392:21-1393:19 (Morley direct).)  For instance, Dr. Morley, Widex's expert on infringement as

well as validity issues, testified that the ETG patents did not disclose any mechanism to adapt the

filter coefficients for feedback cancellation in normal operation:

> Q:  Again, is there anything that is described in the patent in terms of how you
> actually implement the feedback cancellation filter that discusses changing the
> coefficients in normal operation?
>
> A:  No.  It's programmed once at the audiologist's office.  That feedback
> cancellation filter is inserted into the circuit, and the patient walks away with the
> hearing aid, and you can't change it anymore.
>
> (Trial Tr. 1363:1-8 (Morley direct).)

Evidence was also presented that the Widex products did not include a "programmable delay line filter," as in claim 19. As Dr. Morley explained, the Court's construction of that term, even according to the explanation provided by ETG's expert Dr. Gloster, required the existence of a memory and the ability to change the coefficients stored in that memory that the Widex products lacked. (Trial Tr. 1397:15-1399:10 (Morley direct).) As further explained by Dr. Morley, the ETG patents provided no description of detecting a change in acoustic feedback and then changing the feedback coefficients. (Trial Tr. 1377:7-14 (Morley direct).)

Dr. Morley further testified as to the differences between the requirement in claims 13, 14 ad 16 of '850 patent of "determining the effect on amplitude and phase" and the feedback cancellation technique employed in the Widex hearing aids, which could not perform such a determination due to the adaptive nature of the LMS algorithm they employed. With reference to Widex's own patent describing the adaptive feedback cancellation system used in the Senso Diva and Inteo, Dr. Morley explained:

> Q: Okay. Does the Inteo or Senso Diva perform that determining step?
>
> A: No, neither of them perform that step.
>
> Q: Why not?
>
> A: Because the Inteo and Senso Diva just generate inside the WLMS block coefficients to try to cancel the feedback in an adaptive way. They don't in any way, if we go into the [Widex] patent and look at the equations, there is nothing in the equations that determines the calculation of the coefficients in that adaptive filter. Nothing in those equations has anything about phase and amplitude.

(Trial Tr. 1412:16-1413:2 (Morley direct).)

Regarding the '749 patent, Widex presented substantial evidence that the accused products did not have all of the required structure for the means plus function limitations. (Trial Tr. 1431:25-1432:12 (Morley direct).) For example, the second "means for receiving" element

of claim 1, according to the Court's claim construction Order, requires the structure of an analog-to-digital converter. (D.I. 495 § B, ¶ 3.) Mr. Brown conceded not only does the LMS filter of the Accused Products not have the structure of an analog-to-digital converter, but additionally there would be no reason to have anything equivalent to such an analog-to-digital converter. (Trial Tr. 637:17-638:4 (Brown cross).) Since ETG has conceded that an LMS filter does not have the required structure of an A-to-D converter or anything equivalent thereof, the Accused Products cannot possibly infringe claims 1 and 2 under the doctrine of equivalents.

Widex also presented substantial evidence of prior art that restricted the scope of the claims of the ETG patent under the Doctrine of Equivalents. (Trial Tr. 1415:15-1425:20 (Morley direct).) Conversely, ETG's expert Mr. Brown did not consider any prior art in performing his infringement analysis to determine if what he considered an equivalent of the claim limitations would impermissibly ensnare prior art. (Trial Tr. 1392:12-16 (Morley direct).)

In sum, Widex presented substantial evidence of sound and reasonable noninfringement defenses at trial. Indeed, the jury rejected ETG's argument that the Widex hearing aids literally infringed claims 13, 14 and 16 of the '850. (D.I. 521.) Instead the jury found infringement only under the doctrine of equivalents with respect to these claims based on the Mr. Brown's flawed analysis, which further evidences the closeness of this case.

2.     Substantial Invalidity Defenses were Presented

Widex also presented substantial evidence supporting its defense that the ETG patents were invalid. For example, substantial evidence was presented that Graupe '818 anticipated claim 19. Graupe '818 discloses a communication system in general, and a hearing aid in particular, that has an acoustic feedback path between the speaker and the microphone. (DX 982, Abstract, 1-8.) The Graupe '818 invention:

provides an identification circuit for dynamically identifying those parameters associated only with acoustic feedback, and a correction circuit whose transfer function is established in accordance with the parameters identified by the identification circuit. The transfer function of the correction circuit is such that the effect of acoustic feedback is cancelled . . . .

(DX 982, Abstract, 8-15.)

The Defendants offered testimony on Graupe '818 from Dr. Soli that, using ETG's interpretation of the Court's claim constructions, all the elements of claim 19 are found in Graupe '818. (Trial Tr. 1658:5-1662:22 (Soli direct).) ETG's expert, Mr. Matzen, agreed, stating that "[n]othing is missing from Claim 19." (Trial Tr. 1988:3-13 (Matzen cross).)[3]

Mr. Matzen did testify that, in his opinion, Graupe '818, even though it had all the elements of claim 19, nevertheless did not "effect substantial reduction of acoustic feedback." (Trial Tr. 1977:21-25 (Matzen cross), 2004:2-12 (Matzen redirect), 1927:8-21 (Matzen direct).) This bald assertion was made, however, without any scientific or factual support and without any basis in logic or technical reality.

Graupe '818 repeatedly states that it is effective in obviating the problem of acoustic feedback (DX 982, Abstract, 15 (acoustic feedback is "cancelled"), 2:55-60 ("the effect of acoustic feedback to be significantly reduced or eliminated"), 7:36-38 ("prevents the communication system from producing screeching noise associated with acoustic feedback"), 1:64-68 ("automatically and adaptively overcoming the problem of screeching noise caused by acoustic feedback"), 2:12-18 ("cancels the effect of the acoustic feedback"); *see also* DX 982 at

---

[3]     Graupe '818 in fact shows every element of claim 19, including, as shown in Fig. 3, a microphone 12, an output receiver 18, a signal transmission channel interposed between that microphone and receiver, and a programmable delay line filter 21, shown in more detail in Fig. 5 (Trial Tr. 1418:9-15 (Morley direct)), interposed in a feedback path between the input and output of the transmission channel.

the Title, claims 1, 5, 15, 29, 33, 43, 46, 47, 56, 1:15-18, 4:1-5, 2:33-36, 3:40-47, 5:9-14, 5:63-6:3).)

In addition, substantial evidence was presented by Dr. Leland Best (Trial Tr. 1291:20-1321:19, 1322:19-1324:2) and Kim Weaver (Trial Tr. 1250:14-1265:2), with corroborating testimony from Dr. David Egolf (Trial Tr. 1148:4-1171:8, 1172:11-1176:22, 1177:7-1178:3)), concerning two earlier developed adaptive hearing aid feedback cancellation systems. Dr. Soli testified how these prior inventions rendered the claims of the ETG patents invalid. (Trial Tr. 1663:4-1665:13, 1665;17-1671:8, 1674:14-1675:20, 1676:1-1679:16, 1679:24-1680:9, 1686:11-1687:14 (Soli direct).)

Next, Widex presented substantial evidence that if the asserted claims of the '850 and '749 Patents, are broadly construed to cover the accused LMS adaptive filters, then the claims would not satisfy the written description requirement set forth at 35 U.S.C. § 112, ¶ 1. (Trial Tr. 1432:20-1437:5 (Morley direct).) Not only did Dr. Morley hold this view, but evidence was presented of others in the hearing aid field who had reviewed the ETG patents and similarly concluded that the feedback cancellation technique disclosed in these patents did not cover adaptive modern-day hearing aids. Two independent articles, one by Kates (DX 1240) and one by Bustamante (DX 1239), confirm that the inventors of the '850 Patent did not contemplate adjusting to changes in the acoustic feedback path:

> **The fixed filter, however, cannot adjust to changes in the acoustic environment.** (DX 1240, p. 9 (emphasis added).)

> **[the '850 patent] employed a fixed filter, derived from one measurement of the feedback path transfer function, as the transfer function estimate, rendering this approach vulnerable to changes in the acoustic environment**. (DX 1239, p. 1 (emphasis added).)

In fact, Mr. Kates, a former colleague of Dr. Levitt, testified as to his view that Dr. Levitt's feedback cancellation work was not adaptive at all, but related to a fixed  filter feedback

cancellation approach that was "not an adequate solution to the problem of feedback in hearing aids." (Trial Tr. 1909:20-1910:4 (Kates).)

The substantial differences between the Widex products and the claimed invention and the evidence that the ETG patents were invalid based on prior art demonstrate that Widex presented legitimate noninfringement defenses and that ETG failed to show an objectively high likelihood of infringement. *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1381 (Fed. Cir. 2008) (affirming JMOL overturning jury's verdict of willful infringement because the court's review of the record does not indicate how Abbott's development and sale of its genotyping products were at risk of an objectively high likelihood of infringement."); *see also Seagate*, 497 F.3d at 1374 ("A substantial question about invalidity or infringement is likely sufficient not only to avoid a preliminary injunction, but also a charge of willfulness based on pos-filing conduct.").

        C.      Evidence Of ETG's Own Evaluation Of The Patents-In-Suit Supports The Substantial Nature Of Widex's Defenses.

The lack of an objectively defined risk of infringement was further apparent from evidence of an independent evaluation of the ETG patents. This evaluation was not performed by any defendant to this action, but on behalf of ETG as part of a failed effort to license the ETG patents. As ETG's owner, Mr. Chen, testified, EKMS was retained by ETG in 2001 to look at "commercialization opportunities" for the patents, but EKMS was unable "to interest any hearing aid manufacturer in licensing discussions." (Trial Tr. at 433:6-33, 435:3-7 (Chen direct).) During the course of the EKMS analysis, it is uncontroverted that EKMS, in an October 2002 report, indicated a finding that a "continuously adaptive" approach to feedback cancellation was not covered by the ETG patents, and that at least one manufacturer, SoundID, shared this view:

> Q: It says, "Eric Dowling, the EKMS expert, to a look at the patent while EKMS arranged a second call with Harry Levitt for early August." Do you see that?

A: Yes.

      …

Q:  It goes on to say, "Over the course of two calls we worked through the language of the patent and found that the body of the patent included language adverse to an interpretation of the claims covering a continuously adaptive approach."  Do you see that?
A:  Yes.

Q:  Were you made aware that EKMS had come to the conclusion that there was an interpretation based on the language in the patent adverse to an interpretation that the claims covered [a] continuously adaptive approach?
A:  I am generally aware that certain people said that this concept of continuously adaptive might be in their view a problem for us.  But I don't remember who it was.  I know that the Sound ID people had apparently said that.

(Trial Tr. 467:3-7, 467:20-468:9 (Chen Cross); DX 1610).)

The ETG summary report plainly reflects a determination by EKMS and SoundID that "continuously adaptive" approaches to feedback were outside the scope of the ETG patent claims.  Moreover, EKMS specifically included Widex's Senso Diva product among the "targets" it considered as a part of its analysis.  (Trial Tr. 463:16-464:5, 472:8-13 (Chen cross).)  This independent finding by EKMS unfavorable to ETG, some three years before ETG ultimately would bring this lawsuit, evidences the substantial and reasonable nature of the noninfringement defenses that Widex presented at trial.  Likewise, ETG's decision not to contact Widex with any allegation of infringement at any time prior to filing this lawsuit suggests that ETG itself had serious reservations as to whether any infringement could be proven, and undercuts any notion that the infringement could possibly have been willful.  (Trial Tr. 791:15-792:7 (S. Westermann cross).)

In view of the EKMS finding and the evidence of the noninfringement and invalidity evidence presented at trial, Widex's defenses were "far from the sort of easily dismissed claims that an objectively reckless infringer would be forced to rely upon."  *See ResQNet.com*, 2008

13.

U.S. Dist. LEXIS at *51.  Rather, Widex's defenses to infringement were substantial, supported

by the characterization of the ETG patents as being directed to a flawed fixed solution to

feedback cancellation and the EKMS analysis itself, which unquestionably reported a finding

adverse to an interpretation of these patents that would cover the continuously adaptive Widex

products.

> IV.     NO REASONABLE JURY COULD FIND CLEAR AND
> CONVINCING EVIDENCE OF SEAGATE'S SUBJECTIVE
> PRONG.

Besides failing to present substantial clear and convincing evidence of some objectively

high risk of infringement, ETG did not present substantial clear and convincing evidence that

such a risk was known to Widex, or that the risk should have been obvious.  Simply having

knowledge of the patents, even if infringement is subsequently found, is not enough to establish

that the infringement was willful.  *See Cohesive Techs., Inc. v. Waters Corp.*, 2007 U.S. Dist.

LEXIS 69464, at *50 (D. Mass. 2007) (*citing Comark*, 156 F.3d at 1190); *Norian Corp.*, 363

F.3d at 1332 ("willful infringement is not established by the simple fact of infringement);

*Ajinomoto Co., Inc.*, 228 F.3d at 1351-52 (accused infringer's knowledge of patent, without

more, is insufficient to support conclusion of willfulness).

Here, ETG presented no evidence, nor could it, that Widex ever considered the ETG

patents in the context of their products, let alone that the patents presented possible infringement

issues.  For instance, the evidence of Widex's knowledge of the ETG patents included a copy of

the '749 patent and a copy of the European equivalent of the '850 patent found in Widex's patent

database.  (Trial Tr. 722:14-725:9, 725:10-727:5 (S. Westermann direct).)  The ETG patents

were also listed on Dr. Levitt's twelve page resume, which had been transmitted to Soren

Westermann, Widex's Director of Research.  (PX 562; Trial Tr. 746:7-749:25 (S. Westermann

direct).)  The '850 patent had been cited in a patent that the HIMPP organization, to which

Widex is a member, acquired in 1996. (Trial Tr. 718:10-721:4 (S. Westermann direct).) Further, Widex received the ETG patents on a CD from Micropatent as a part of collecting hearing aid patents for the HIMPP database around 2001 or 2002, which consists of over 17,000 patents related to hearing aids. (Trial Tr. 716:25-718:5 (S. Westermann direct).)

None of this "knowledge" of the ETG patents suggested any risk of a high likelihood of infringement. Indeed, the only evidence of knowledge beyond mere possession of the ETG patents concerned writing on the '749 patent by a former patent engineer that occurred sometime between 1993 and 1999, that had nothing to do with the asserted patent claims, and which was never connected in any way, nor could it, to development of the accused products. (Trial Tr. 725:10-727:5 (S. Westermann direct); JX 77.) Dr. Morley, Widex's expert on infringement and validity issues, testified that the writing on the '749 patent concerned features that were unrelated to the asserted claims, which was uncontroverted by ETG. (Trial Tr. 1443:8-1444:8 (Morley direct).)

Further, none of the Widex engineers or scientists involved in the design of the Diva or Senso Diva had any awareness of the ETG patents at the time these products were developed. (Trial Tr. 803:8-13 (S. Westermann cross).) ETG did not, because it could not, present any evidence whatsoever that Widex copied the ETG patents.

On the other hand, evidence suggested that the ETG patents were not even relevant to the adaptive feedback cancellation techniques Widex had developed. For instance, the ETG patents were not even cited against Widex's patent application on the adaptive feedback cancellation employed in both the Senso Diva and the Inteo. (Trial Tr. 790:24-791:10, 809:21-810:8 (S. Westermann cross); DX 1599.)

15.

The fact that Widex had possession of the ETG patents among thousands of other patents does not establish knowledge of an objective risk of infringement. Even prior to *Seagate*, the Federal Circuit recognized the impracticality of requiring a thorough analysis of every potentially relevant patent when it eliminated the adverse inference for failing to obtain an opinion of counsel. *See Knorr Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) ("The *amici curiae* describe the burdens and costs of the requirement, as pressed in litigation, for early and full study by counsel of every potentially adverse patent of which the defendant had knowledge…"). The remaining evidence of knowledge presented by ETG fell far short of demonstrating an objective reckless risk of infringement.

Simply put, ETG failed to establish any nexus whatsoever between the accused products and Widex's knowledge of the Levitt patents. This knowledge was insufficient to suggest to a reasonable jury that Widex had knowledge of any potential infringement issues of the Levitt patents, much less an objectively high risk of infringement. ETG therefore did not satisfy the subjective prong of *Seagate* by clear and convincing evidence and JMOL on willfulness should be granted.

<u>CONCLUSION</u>

In light of the record in this case, no reasonable jury could find that Widex willfully infringed the ETG patents. The only competent and reliable evidence in the record establishes that Widex's actions were not objectively unreasonable, and that Widex was not aware of any objective risk of infringement. For the reasons given above, the Court should grant judgment as a matter of law that there is no willful infringement. Alternatively, it is respectfully requested that the Court order a new trial on the issue of willfulness for the reasons discussed above.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Donald E. Reid*

OF COUNSEL:

SUGHRUE MION, PLLC
David J. Cushing
William H. Mandir
Carl J. Pellegrini
Brian K. Shelton
2100 Pennsylvania Ave., N.W.
Suite 800
Washington, DC  20037
202.293.7060

March 27, 2008
2170797

_____

Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
302.658.9200
dreid@mnat.com

*Attorneys for Widex A/S and
Widex Hearing Aid Co. Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 27, 2008, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that true and correct copies of the foregoing were caused to be served via electronic mail on March 27, 2008 upon the following parties:

| | |
|---|---|
| REPRESENTING ENERGY TRANSPORTATION GROUP, INC. | Edmond D. Johnson<br>PEPPER HAMILTON LLP<br>**johnsone@pepperlaw.com** |
| | Brian M. Buroker<br>HUNTON & WILLIAMS LLP<br>**etg@hunton.com** |
| REPRESENTING WIDEX A/S AND WIDEX HEARING AID CO. INC. | Donald E. Reid<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>**dreid@mnat.com** |
| | William H. Mandir<br>SUGHRUE MION PLLC<br>**wmandir@sughrue.com** |
| | David J. Cushing<br>SUGHRUE MION PLLC<br>**dcushing@sughrue.com** |
| | Carl J. Pellegrini<br>SUGHRUE MION PLLC<br>**cpellegrini@sughrue.com** |
| | Brian K. Shelton<br>SUGHRUE MION PLLC<br>**bshelton@sughrue.com** |

| | |
|---|---|
| REPRESENTING WILLIAM DEMANT HOLDING A/S, WDH, INC., OTICON A/S, OTICON INC., BERNAFON AG, AND BERNAFON, LLC | Mary B. Graham<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>**mgraham@mnat.com;**<br>**mbgeservice@mnat.com** |
| | John M. Romary<br>FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER<br>**john.romary@finnegan.com** |
| | C. Gregory Gramenopoulos<br>FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER<br>**c.gregory.gramenopoulos@finnegan.com** |

The undersigned also hereby certifies that on March 27, 2008, true and correct copies of the foregoing were caused to be served by hand upon the following Delaware counsel:

Edmond D. Johnson
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, DE  19899-1709

/s/ Donald E. Reid
_____
Donald E. Reid (#1058)

913379

2