# Exhibit YY



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:  COMMISSIONER OF PATENTS AND TRADEMARKS
          Washington, D.C. 20231

Customer No
197

M12KB

COMPUTER PATENT ANNUITIES
225 REINEKERS LANE
SUITE 400
ALEXANDRIA  VA  22314

## MAINTENANCE FEE STATEMENT

The data shown below is from the records of the Patent and Trademark Office.  If the maintenance fees and any necessary surcharges have been timely paid for the patents listed below, the notation "PAID"  will appear in column 11, "STAT" below.

If a maintenance fee payment is defective, the reason is indicated by code in column 11, "STAT" below.   TIMELY CORRECTION IS REQUIRED IN ORDER TO AVOID EXPIRATION OF THE PATENT.  NOTE 37 CFR 1.377.  THE PAYMENT(S) WILL BE ENTERED UPON RECEIPT OF ACCEPTABLE CORRECTION.  IF PAYMENT OR CORRECTION IS SUBMITTED DURING THE GRACE PERIOD, A SURCHARGE IS ALSO REQUIRED.  NOTE 37 CFR 1.20(h).

If the statement of small entity status is defective the reason is indicated below in column 10 for the related patent number.  THE STATEMENT OF SMALL ENTITY STATUS WILL BE ENTERED UPON RECEIPT OF ACCEPTABLE CORRECTION.

| ITEM NBR | PATENT NUMBER | FEE CDE | FEE AMT | SUR CHARGE | SERIAL NUMBER | PATENT DATE | FILE DATE | PAY YR | SML ENT | STAT |
|----------|---------------|---------|---------|------------|---------------|------------|-----------|--------|---------|------|
| 1 | 5,033,090 | 1553 | 3150 | 0 | 07/577,069 | 07/16/91 | 09/04/90 | 12 | NO | PAID |

```
                                Atty
                Item   Dkt Number

                          1
```

DIRECT THE RESPONSE TOGETHER WITH ANY QUESTIONS ABOUT THIS NOTICE TO:
COMMISIONER OF PATENTS AND TRADEMARKS, BOX M. FEE, WASHINGTON, D.C. 20231

TOL-439 (REV. 11-97)

EXHIBIT
JX 9

DEM 518917

EXHIBIT
___ 14



*The United States of America*

## The Commissioner of Patents and Trademarks

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

## United States Patent

*Grants to the person or persons having title to this patent the right to exclude others from making, using or selling the invention throughout the United States of America for the term of seventeen years from the date of this patent, subject to the payment of maintenance fees as provided by law.*

*Harry F. Manbeck, Jr.*

Commissioner of Patents and Trademarks

*Linda P. Abbott*

*Attest*

**DEM 518918**

# United States Patent [19]

**Weinrich**

[11] **Patent Number:** 5,033,090

[45] **Date of Patent:** Jul. 16, 1991

[54] HEARING AID, ESPECIALLY OF THE IN-THE-EAR TYPE

[75] Inventor: Soren Weinrich, Espergaerde, Denmark

[73] Assignee: Oticon A/S, Denmark

[21] Appl. No.: 577,069

[22] Filed: Sep. 4, 1990

### Related U.S. Application Data

[63] Continuation of Ser. No. 322,387, Mar. 13, 1989, abandoned.

[30] Foreign Application Priority Data

Mar. 18, 1988 [DK] Denmark .............................. 1479/88

[51] Int. Cl.⁵ ............................................. H04R 25/00
[52] U.S. Cl. .............................. 381/68.4; 381/68.6; 381/93
[58] Field of Search ................... 381/68, 68.4, 68.6, 381/69, 83, 93, 94

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,763,333 | 9/1981 | Lichowsky | 381/68 |
| 4,291,203 | 10/1973 | Bellafiore | 381/68 |
| 4,455,675 | 6/1984 | Bose et al. | 381/74 |
| 4,456,795 | 6/1984 | Saito | 381/68 |
| 4,731,850 | 3/1988 | Levitt et al. | 381/68.4 |
| 4,837,829 | 6/1989 | Lobb | 381/83 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2854912 | 6/1979 | Fed. Rep. of Germany . | |
| 2808516 | 9/1979 | Fed. Rep. of Germany . | |
| 3524591 | 1/1987 | Fed. Rep. of Germany . | |
| 0387718 | 3/1980 | Japan | 381/93 |

*Primary Examiner*—Forester W. Isen
*Assistant Examiner*—M. Nelson McGeary, III
*Attorney, Agent, or Firm*—Larson & Taylor

[57] **ABSTRACT**

In a hearing aid with a microphone, an amplifier and a receiver supplying amplified sound to the user, a second signal path is provided comprising a second, feedback-suppressing microphone, placed at a location to receive feedback-causing sound from the receiver. The output of second provided microphone is suitably attenuated and delayed by an amount Δt corresponding to the effective acoustical distance a+b between the second microphone and the main microphone and supplied to a difference amplifier in opposition to the signal from the main microphone. Thus, the component of the signal from the main microphone likely to cause positive feedback or "howling" is substantially cancelled out. In another embodiment, the feedback-suppressing signal path is an acoustical path comprising a tube leading to a rear cavity in a microphone of the directional or differential type.

11 Claims, 2 Drawing Sheets



MICRO-PHONE

SIGNAL PROCESSOR

TRANSDUCER

MICROPHONE

DEM 518919

**U.S. Patent**          July 16, 1991          Sheet 1 of 2          5,033,090



MICRO-
PHONE

SIGNAL
PROCESSOR

TRANSDUCER

MICROPHONE

*FIG. 1*



ATTENUATOR

Δt

DELAY UNIT

*FIG. 2*

DEM 518920



*Fig.3*

*Fig.4*

DEM 518921

5,033,090

| 1 | 2 |

## HEARING AID, ESPECIALLY OF THE IN-THE-EAR TYPE

This application is a continuation of application Ser. No. 07/322,387 filed 3/13/89, now abandoned.

### TECHNICAL FIELD

The present invention relates to a hearing aid of the kind set forth in the preamble of claim 1.

### BACKGROUND ART

In many types of hearing aid, especially those of the in-the-ear type, sound from the receiver intended for the user's sound-sensitive organ may reach the microphone along an acoustical transmission path, the length and attenuation of which is so low, that positive acoustical feedback or "howling" may occur. This is especially the case with hearing aids of the in-the-ear type with a vent canal communicating the external auditory meatus with the atmosphere, as the sound from the receiver issuing into the meatus may be propagated along the vent canal and through the atmosphere to the microphone situated at a comparatively short distance from the vent canal.

Several attempts have been made or proposed to reduce the risk of positive acoustical feedback, but up to the present, none of these attempts have proved successful. Thus, attempts have been made by partly or completely occluding the vent canal, by introducing various filters, phase shifts and/or time delays or even negative feedback in the amplifying path, but all these attempts have led to discomfort to the user and/or reduced intelligibility of the speech processed by the hearing aid.

### DISCLOSURE OF THE INVENTION

It is the object of the present invention to provide a hearing aid of the kind referred to initially, in which the risk of positive acoustical feedback causing "howling" is eliminated or at least substantially reduced, and this object is attained in a hearing aid also exhibiting the features set forth in the characterizing clause of claim 1. With this arrangement, that part of the sound from the receiver reaching the input to the amplifier is cancelled out by an equal and opposite "anti-sound" from the additional signal path, so that only that component of the signal reaching the amplifier caused by ambient sound to be amplified is effectively transmitted to the user's soundsensitive organ.

Further embodiments of the hearing aid according to the invention, the technical effects of which are explained in the following detailed portion of the present specification, are set forth in claims 2 to 8.

### BRIEF DESCRIPTION OF THE DRAWINGS

The invention will now be explained in more detail with reference to the accompanying, in parts highly diagrammatic, drawings, in which

FIG. 1 is a section through a first embodiment,

FIG. 2 is a block diagram of the circuit components of the embodiment shown in FIG. 1,

FIG. 3 is a section through a second embodiment, and

FIG. 4 is a greatly enlarged partial view of the region marked IV in FIG. 3.

### DESCRIPTION OF THE PREFERRED EMBODIMENTS

As may be seen from FIGS. 1 and 3, the exemplary embodiments of the hearing aid according to the invention shown constitute hearing aids of the so-called in-the-ear (ITE) type in the form of a plug-shaped device adapted to be inserted into the external auditory meatus (not shown) of the user. In a manner known per se, both the embodiments shown comprise

a microphone 1 connected to the surrounding atmosphere through a duct 2,

an electro-acoustic transducer or receiver 3, connected to the part of the user's external auditory meatus proximal of the hearing aid through a duct 4,

a vent canal 5 establishing permanent communication between said part of the auditory meatus and the surrounding atmosphere, and

equipment to be described below for transmitting and amplifying signals from the microphone 1 to the receiver 3.

In the embodiment illustrated in FIGS. 1 and 2, the equipment transmitting and amplifying signals from the microphone 1 to the receiver 3 comprises an electronic signal processor 6, the output of which is connected to the receiver 3 and a first input 7 of which is connected to the microphone 1 adapted to receive sound through the surrounding atmosphere. In what follows, the microphone 1 will be described as the "main microphone".

In addition to said first input 7, the signal processor 6 also comprises a second input 8 receiving signals from a second, feedback-suppressing microphone 9 adapted to receive sound from a location 10 in the vent canal 5 through a duct 11.

The second input 8 is connected to the input of a variable attenuator 12, the output of which is connected to a delay unit 13, the latter in turn through its output being connected to the positive input of a difference amplifier 14, the other, negative input of which is connected to the first input 7 receiving signals from the main microphone 1. The output of the difference amplifier 14 is connected to the receiver 3 —directly in the embodiment shown, but this connection could also include amplifying filtering and/or other signal processing equipment.

The location 10, i.e. the location of the duct 11 leading to the second microphone 9 in the vent canal 5, is placed at a distance "a" from the external opening 15 of the vent canal 5, and this opening 15 is situated at a distance "b" from the duct 2 leading to the main microphone 1. Thus, sound from the location 10 to the duct 2 will have to travel through a distance a+b.

The delay unit 13 shown in FIG. 2 is adapted to delay the signal from the attenuator 12 through the difference amplifier 14 by an amount Δt corresponding to the time required for sound to travel through the above-mentioned distance a+b. When the hearing aid shown is in operation, some of the sound emerging from the duct 4 of the receiver 3 will unavoidably "leak" through the vent canal 5 to the external opening 15, and of the sound in this manner emerging through the external opening 15, a portion will reach the duct 2 and hence the main microphone 1. In the absence of the second, feedback-suppressing microphone 9 and its associated circuitry components, i.e. the attenuator 12, the delay unit 13 and the "positive part" of the difference amplifier 14, this could lead to a positive feedback condition or "howl-

DEM 518922

5,033,090

3

ing". This situation is, however, avoided by means of the microphone 9 and its associated equipment mentioned. At the same time as the "leaking" sound from the receiver 3 passes through the air from the location 10 to the duct 2 of the main microphone 1, the sound is detected by the microphone 9 at the location 10 will be converted into an electrical signal, attenuated in the attenuator 12, delayed in the delay unit 13 by the above-mentioned amount Δt and delivered to the positive input of the difference amplifier 14. By suitable adjustment of the attenuator 12 and the delay unit 13, the signal from the latter will be received at the positive input of the difference amplifier 14 with the same amplitude and phase as the signal from the main microphone 1 supplied to the negative input for which reason the signal from the delay unit 13 will cancel-out that component of the signal from the main microphone 1 arising from sound received from the receiver 3 as described above. Thus the output of the difference amplifier 14 will only contain signals from the main microphone 1 arising from ambient sound 16 received. A minor portion of the ambient sound 16 will, of course, be detected by the second microphone 9, but due to the attenuation and/or delay introduced in the signals from the second microphone 9, this will not be able to cause any cancelling-out of the ambient sound signals in the microphone 1.

It can be shown that the frequency response of the hearing aid shown in FIGS. 1 and 2, defined as the difference between the sound pressure level generated by the receiver 3 in the auditory meatus and the free-field sound-pressure level of the ambient sound 16, is modified by the following amount:

$$\Delta_{dyn} = 20 \log_{10} \left(1 - 10^{H(a+b)/20}\right),$$

where H(a+b) is the acoustical attenuation between the location 10 in the vent canal and the duct 2 leading to the main microphone 1.

This attenuation is practically frequency-independent for frequencies below 6 to 7 kHz and only dependent on the distance (a+b). As a consequence, the frequency response of the hearing aid is only changed by a frequency-independent quantity, which means that the shape of the frequency response curve is preserved and no high-frequency gain is lost.

In the exemplary embodiment illustrated in FIGS. 3 and 4, reference numbers and characters similar to those in FIGS. 1 and 2 refer to components having—at least in general—the same function as such components shown in FIGS. 1 and 2, for which reason these components will only be described in detail to the extent necessary for describing and explaining the functioning of the embodiment shown in FIGS. 3 and 4.

In the embodiment illustrated in FIGS. 3 and 4, the microphone 1 is of the type having a front cavity 17 and a rear cavity 18, the arrangement being such that sound received by the front cavity 17 causes the generation of microphone output signals opposite in phase to the signals generated due to sound received by the rear cavity 18. Such microphones are known as "directional" or "differential" microphones. In this exemplary embodiment, the feedback-suppressing connection between the location 10 in the vent canal 5 and the microphone 1 is constituted by a tube 19, slightly convoluted so as to have an effective acoustical length equivalent to the acoustical length of the distance a+b. The output end of the tube 19 is connected to the rear cavity 18 of the microphone 1, the connection preferably including

4

an acoustic termination impedance 20, shown in FIG. 4, to avoid reflections at the point of entry to the rear cavity 18, i.e. to enable a free, progressive sound wave to travel through the tube 19.

As the effective acoustical length of the tube 19 is equivalent to the effective acoustical distance from the location 10 to the external duct 2 of the microphone 1, the sound transmitted from the location 10 to the microphone 1 will be delayed by the same amount in the two paths referred to, and by adjusting an acoustic value 21 placed in the tube 19 it is possible to attain substantially complete suppression of feedback caused by the acoustic connection between the receiver 3 and the microphone 1.

An amplifier 22, that may be of the type conventional to this technology, amplifies the net electrical signals from the microphone 1 and transmits them to the receiver 3 in the conventional manner.

Persons skilled in this art may make numerous modifications to a hearing aid according to the present invention without exceeding the scope of the invention as set forth in the accompanying claims. Thus, the principle of the invention may also be applied to other types of hearing aid than the one shown, such as e.g. a hearing aid partly worn behind the ear. The tube 19 shown in FIG. 3 may have other shapes than the one shown; it may e.g. be wound in a helix or spiral or bent in zig-zag with "soft" curves, or have other shapes capable of giving the tube 19 or a duct equivalent thereto the requisite effective acoustical length.

The active components, such as the difference amplifier 14 shown in FIG. 2 and the straight amplifier 22 shown in FIG. 3, possibly also the attenuator 12 and the delay unit 13, may be powered by suitable batteries (not shown). In the case of two microphones as shown in FIGS. 1 and 2 it is preferred that both microphones are of the same general type, i.e. either pressure-sensitive or velocity-sensitive.

I claim:

1. In a hearing aid comprising a microphone for receiving ambient sound and for producing, on a main signal path, electrical signals corresponding thereto for subsequent amplification, an electro-acoustical transducer for receiving said signals after amplification, for converting the amplified signals into acoustical signals and for directing the acoustical signals towards a user's eardrum or other sound-sensitive organ, and an additional signal path the output signals from which are delivered to the input of a component connected in the main signal path, said output signals being substantially equal in amplitude to signals received by said electro-acoustical transducer, and in such a relative phase as to substantially cancel the part of the received signals originating from the transducer upon or before being delivered to the input of said transducer, said additional signal path comprising:

a sound-input means, disposed at least near to a location remote from said microphone in a preferred sound transmission path between said transducer and said microphone, for receiving sound at least near said location and for producing a corresponding output, the transmission time along said additional signal path being substantially equal to the transmission time along said preferred path for sound transmitted from said location to said microphone; and means for delaying said output of said sound-input means and for controlling the magni-

DEM 518923

5                                      5,033,090                                      6

tude of said output of said sound-input means, so as
to ensure cancellation of said part of said received
signals.

2. A hearing aid according to claim 1 wherein said
sound-input means of said additional path comprises a
tube leading from said location to an acoustical input of
said microphone for causing the generation of signals
opposite in phase to the signals generated by said micro-
phone in response to said ambient sound.

3. A hearing aid according to claim 2 wherein said
microphone includes a front cavity and a rear cavity so
that sound received in the two cavities produces signals
of opposite phase at the output of the first microphone,
and wherein one said cavity is acoustically connected to
the surrounding atmosphere and the other said cavity is
acoustically connected to the output end of said tube.

4. A hearing aid according to claim 2 wherein the
output end of said tube is provided with an acoustical
impedance-matching element placed in an aperture in
the wall of said tube.

5. A hearing aid according to claim 4 wherein said
impedance-matching element comprises an acoustical
resistance.

6. a hearing aid according to claim 2 wherein said
tube includes an adjustable acoustical valve.

7. A hearing aid according to claim 2 wherein the
hearing aid comprises an in-the-ear hearing aid for
placement in the external meatus of a human ear, said
microphone being placed with a sound-receiving duct
or cavity substantially directly connected to the atmo-
sphere, said electro-acoustical transducer being placed
with a sound producing output duct or cavity directed
inwardly in said external meatus, said in-the-ear hearing
aid including a vent canal extending through the body
of the hearing aid and connecting the portion of said
meatus lying interior of the hearing aid to the atmo-
sphere, and said location being located in said vent
canal.

8. In a hearing aid comprising a first microphone for
receiving ambient sound and for producing, on a main
signal path, electrical signals corresponding thereto, an
amplifier for receiving and amplifying the electrical
signals produced by said microphone to produce ampli-
fied signals, an electro-acoustical transducer for receiv-
ing the amplified signals, for converting the amplified
signals into acoustical signals and for directing the
acoustical signals towards a user's eardrum or other
sound-sensitive organ, and an additional signal path the
output signals from which are delivered to the input of
said amplifier, said output signals being substantially
equal in amplitude to signals received by said amplifier
from said first microphone and caused by sound propa-
gated from said electro-acoustical transducer and being
in such a relative phase as to substantially cancel the
part of received signals originating from said transducer

at least near to said input, said additional signal path
comprising:
  a second microphone, disposed at least near to a loca-
    tion remote from said first microphone in a pre-
    ferred sound transmission path between said trans-
    ducer and said microphone, for receiving sound at
    least near said location and for producing a corre-
    sponding output, the transmission time along said
    additional signal path being substantially equal to
    the transmission time along said preferred path for
    sound transmitted from said location to said first
    microphone; and means, comprising an adjustable
    attenuator and an adjustable signal delay device,
    for delaying said output of said second microphone
    and for controlling the magnitude of said output of
    said second microphone so as to ensure cancella-
    tion of said part of said received signals.

9. A hearing aid according to claim 8 wherein said
hearing aid includes a vent canal for venting sound to
the ambient and said location is in said vent canal.

10. In a hearing aid comprising a microphone for
receiving ambient sound and for producing, on a main
signal path, electrical signals corresponding thereto, an
amplifier for receiving and amplifying the electrical
signals produced by said microphone so as to produce
amplified signals, an electro-acoustical transducer for
receiving said amplified signals, for converting said
amplified signals into acoustical signals and for direct-
ing the acoustical signals towards a user's eardrum or
other sound-sensitive organ, and an additional signal
path the output signals from which are delivered to an
input of said microphone, said output signals being sub-
stantially equal in amplitude to signals received by said
electro-acoustical transducer and in such a relative
phase as to substantially cancel the part of the received
signals originating from the transducer upon or before
being delivered to the input of said transducer, said
additional signal path further comprising:
  a sound-input means, disposed at least near to a loca-
    tion remote from said microphone in a preferred
    sound transmission path between said transducer
    and said microphone, for receiving sound at least
    near said location and for producing a correspond-
    ing output, the transmission time along said addi-
    tional signal path being substantially equal to the
    transmission time along said preferred path for
    sound transmitted from said location to said micro-
    phone; and means for delaying said output of said
    sound-input means and for controlling the magni-
    tude of said output of said sound-input means so as
    to ensure cancellation of said part of said received
    signals.

11. A hearing aid according to claim 10 wherein said
hearing aid includes a vent canal for venting sound to
the ambient and said location is in said vent canal.

* * * * *

DEM 518924

**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 7/377,069 | 09/04/90 | WEINRICH | S |

LARSON AND TAYLOR
727 TWENTY-THIRD STREET SOUTH
ARLINGTON, VA 22202

| EXAMINER |
|---|
| ISEN, F |

| ART UNIT | PAPER NUMBER |
|---|---|
| 261 | 14/E |

DATE MAILED: 02/12/91

## NOTICE OF ALLOWABILITY

**PART I.**

1. ☑ This communication is responsive to *Fed. Amdt. 9-8-90*

2. ☑ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.

3. ☐ The allowed claims are *9-49*

4. ☐ The drawings filed on _____ are acceptable.

5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has (...) been received, (...) not been received, (...) been filed in parent application Serial No. _____ filed on _____

6. ☑ Note the attached Examiner's Amendment.

7. ☑ Note the attached Examiner Interview Summary Record, PTOL-413.

8. ☑ Note the attached Examiner's Statement of Reasons for Allowance.

9. ☐ Note the attached NOTICE OF REFERENCES CITED, PTO-892.

10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

**PART II.**

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

2. ☑ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.

    a. ☐ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. _____. CORRECTION IS REQUIRED.

    b. ☑ The proposed drawing correction filed on *1-7-90 & 9-8-90* has been approved by the examiner. CORRECTION IS REQUIRED.

    c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.

    d. ☑ Formal drawings are now REQUIRED.

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

Attachments:
✓ Examiner's Amendment
✓ Examiner Interview Summary Record, PTOL-413
✓ Reasons for Allowance
_ Notice of References Cited, PTO-892
_ Information Disclosure Citation, PTO-1449
_ Notice of Informal Application, PTO-152
_ Notice re Patent Drawings, PTO-948
_ Listing of Bonded Draftsmen
_ Other _____

**DEM 518925**

Serial No. 577,069                              -2-
Art Unit    261

An Examiner's Amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 C.F.R. § 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the Issue Fee.

1.    Claim 9, line 12, insert --the-- before "main".

2.    Claim 16, line 6, replace "and amplifying the electrical" with --the amplified--; line 7, insert --the-- before "amplified".

Authorization for this Examiner's Amendment was given in a telephone interview with Mr. Hunt on January 31, 1991.

The following is an Examiner's Statement of Reasons for Allowance: The claims are considered allowable over Saito, Lobb, and JA 0038718 since they recite a delay means. Each of the references has a phase inversion means, which works because the path lengths are identical, ie symmetrical. The instant invention, by virtue of having the second sound input somewhere in the main, or preferred, feedback path, has no such symmetry and must make up the difference in sound path lengths with an additional delay. Since a typical delay means, either analog or digital, or acoustic, as for example an additional path length, would be totally unnecessary when a simple inverter would do, it would have been unobvious to use a delay means to attain the phase inversion, or 180 degree phase shift, in the references.

DEM 518926

Serial No. 577,069                           -3-

Art Unit   261


Also, Lobb and JA 0038718 lack amplitude adjustment means, which
are not required in a symmetrical path feedback cancellation
system.    Saito does not actually concern feedback problems, ie,
howling.                 Any comments considered necessary by
applicant must be submitted no later than the payment of the
Issue Fee and, to avoid processing delays, should preferably
accompany the Issue Fee.  Such submissions should be clearly
labeled "Comments on Statement of Reasons for Allowance."  .


FORESTER W. ISEN
PRIMARY EXAMINER
ART UNIT 261


DEM 518927

| U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | | 577,069 | 261 | ATTACHMENT TO PAPER NUMBER |
|---|---|---|---|---|
| NOTICE OF REFERENCES CITED | | APPLICANT(S) WEINRICH | | |

### U.S. PATENT DOCUMENTS

| | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| ✓ | A | 4 8 3 7 8 7 9 | 6/6/89 | LOBB | 351 | 83 | |
| | B | | | | | | |
| | C | | | | | | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG. | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| ✓ | L | 0 3 8 7 7 1 8 | 3/1980 | JAPAN | SUZUKI | 351 | 93 | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| | R | |
| | S | |
| | T | |
| | U | |

| EXAMINER | DATE 1/31/91 | | DEM 518928 |
|---|---|---|---|

A copy of this reference is not being furnished with this office action



UNITED STATES DEPARTMENT OF COMMERCE
**Patent and Trademark Office**

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

LARSON AND TAYLOR
727 TWENTY-THIRD STREET SOUTH
ARLINGTON, VA 22202

*2/13/91 (CO)*
*5/13/91 (IF)*
*My prob*

### NOTICE OF ALLOWANCE
### AND ISSUE FEE DUE

Note attached communication from the Examiner

This notice is issued in view of applicants communication filed _____

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/577,069 | 09/04/90 | 011 | ISEN, F | 261 | 02/12/91 |

First Named
Applicant: HEINRICH, SOREN

TITLE OF
INVENTION: HEARING AID, ESPECIALLY OF THE IN-THE-EAR TYPE

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 381-068.400 | M86 | UTILITY | NO | $1050.00 | 05/13/91 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED.**

**THE ISSUE FEE MUST BE PAID WITHIN _THREE MONTHS_ FROM THE MAILING DATE OF THIS NOTICE OR THIS
APPLICATION SHALL BE REGARDED AS ABANDONED.  THIS STATUTORY PERIOD CANNOT BE EXTENDED.**

### HOW TO RESPOND TO THIS NOTICE:

I. Review the SMALL ENTITY Status shown above.

If the SMALL ENTITY is shown as YES, verify your
current SMALL ENTITY status:

A. If the Status is changed, pay twice the amount of the
FEE DUE shown above and notify the Patent and
Trademark Office of the change in status, or

B. If the Status is the same, pay the FEE DUE shown
above.

If the SMALL ENTITY is shown as NO:
A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with,
payment of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE.
Even if the ISSUE FEE has already been paid by a charge to deposit account, Part B should be completed and returned.
If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number.
Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

*IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
maintenance fees.*

*(space is pending)*                    **YOUR COPY**

DEM 518929

PTO-103X
(Rev. 11-86)

FILING RECEIPT



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | GRP ART UNIT | FIL FEE REC'D | ATTORNEY DOCKET NO. | DRWGS | TOT CL | IND CL |
|---|---|---|---|---|---|---|---|
| 07/577,069 | 09/04/90 | 261 | $ 370.00 | | 2 | 11 | 3 |

LARSON AND TAYLOR
727 TWENTY-THIRD STREET SOUTH
ARLINGTON, VA 22202

Receipt is acknowledged of the patent application identified herein. It will be considered in its order and you will be notified as to the examination thereof. Be sure to give the U.S. SERIAL NUMBER, DATE OF FILING, NAME OF APPLICANT, and TITLE OF INVENTION when inquiring about this application. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this transmittal.

Applicant(s)    SOREN WEINRICH, ESPERGAERDE, DENMARK.

CONTINUING DATA AS CLAIMED BY APPLICANT-
        THIS APPLN IS A CON OF  07/322,387 03/13/89    ABAN

FOREIGN/PCT APPLICATIONS-DENMARK        1479/88        03/18/88

TITLE
HEARING AID, ESPECIALLY OF THE IN-THE-EAR TYPE

PRELIMINARY CLASS: 381

(see reverse)                    DEM 518930

LICENSE FOR FOREIGN FILING UNDER
Title 35, United States Code, Section 184
Title 37, Code of Federal Regulations, 5.11

## GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "FOREIGN FILING LICENSE GRANTED" followed by a date appears on the reverse side of this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required. The scope and limitations of this license are set forth in 36 CFR 5.15(a). This license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license has been granted under 37 CFR 5.13.

This license is to be retained by the licensee and may be used at anytime on or after the effective date thereof unless it is revoked. The license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations, especially with respect to certain countries, of other agencies, particularly the Office of Munitions Control, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR, Parts 121-128)); the Office of Export Administration, Department of Commerce (15 CFR 370.10(j)); and the Department of Energy or its successors.

## NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "FOREIGN FILING LICENSE GRANTED" DOES NOT appear on the reverse side of this form. Applicant may still petition for a license under 37 CFR 5.12(b), if a license is desired.

DEM 518931

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of            )
                                )
WEINRICH, Soren                 )
                                )      Examiner:  McGeary
Serial No.:  New Application     )
                                )      Art Unit:  261
Filed:  September 4, 1990        )
                                )
For: HEARING AID, ESPECIALLY OF  )
     THE IN-THE-EAR TYPE         )

PRELIMINARY AMENDMENT

Honorable Commissioner of Patents and Trademarks

Washington, D.C.  20231

S I R:

        Preliminary to the examination thereof, please amend the above-identified application as follows:

IN THE CLAIMS:

        Please amend Claim 9 as follows:

        9.    (Amended) In  a  hearing  aid  comprising  a  [first] microphone for receiving ambient sound and for producing, on a main signal path, electrical signals corresponding thereto for subsequent amplification.[, an amplifier for receiving and amplifying the electrical signals produced by said microphone to produce amplified signals,] an electro-acoustical transducer for receiving said [amplified] signals after amplification, for converting [said] the amplified signals into [to] acoustical signals and for directing the acoustical signals towards a user's eardrum or other sound-sensitive organ, and an additional signal path the output signals from which are delivered to the input of a component connected in [said amplifier] main signal path, said output signals being substantially equal in amplitude to signals received by [said amplifier from said microphone and caused by sound propagated from] said electro-acoustical transducer, and in

( det understregede indføjes, mens det i [ ] udelades )

DEM 518932

such a relative phase as to substantially cancel the part of the [latter] received signals originating from the transducer upon or before being delivered to the input of said transducer [at lest near to said input, the improvement wherein], said additional signal path comprising [comprises]:

a [second microphone placed] sound-input means, disposed at least near to a location remote from said microphone in a preferred sound transmission path between said transducer and said microphone [amplifier], for receiving sound at least near said location and for producing a corresponding output, the transmission time along said additional signal path being substantially equal to the transmission time along said preferred path for sound transmitted from said location to said [first] microphone; [an attenuator having an input connected to the output of said second microphone;] and [a signal delay] means [having an input connected to the output of said attenuator and an output connected to an input of said amplifier] for delaying said output of said sound-input means and for controlling the magnitude of said output of said sound-input means, so as to ensure cancellation of said part of said received signals.

Please amend Claims 10, 11 and 15 as follows:

Claim 10, line 1, after "wherein" please insert --said sound-input means of--.

Claim 10, line 3, please delete "first".

Claim 10, line 5, please delete "first".

Claim 11, line 1, please delete "first".

Claim 15, line 3, please delete "first".

Claim 15, line 7, please delete "and" and insert --said in-the-ear hearing aid including--.

DEM 518933

Please add the following new Claims 16 to 19:

16. In a hearing aid comprising a first microphone for receiving ambient sound and for producing, on a main signal path, electrical signals corresponding thereto, an amplifier for receiving and amplifying the electrical signals produced by said microphone to produce amplified signals, an electro-acoustical transducer for receiving and amplifying the electrical signals, for converting amplified signals into acoustical signals and for directing the acoustical signals towards a user's eardrum or other sound-sensitive organ, and an additional signal path the output signals from which are delivered to the input of said amplifier, said output signals being substantially equal in amplitude to signals received by said amplifier from said first microphone and caused by sound propagated from said electro-acoustical transducer and being in such a relative phase as to substantially cancel the part of received signals originating from said transducer at least near to said input, said additional signal path comprising:

a second microphone, disposed at least near to a location remote from said first microphone in a preferred sound transmission path between said transducer and said microphone, for receiving sound at least near said location and for producing a corresponding output, the transmission time along said additional signal path being substantially equal to the transmission time along said preferred path for sound transmitted from said location to said first microphone; and means, comprising an adjustable attenuator and an adjustable signal delay device, for delaying said output of said second microphone and for controlling the magnitude of said output of said second microphone so as to ensure cancellation of said part of said received signals.

DEM 518934

17.  A hearing aid according to Claim 16 wherein said hearing aid includes a vent canal for venting sound to the ambient and said location is in said vent canal.

18.  In a hearing aid comprising a microphone for receiving ambient sound and for producing, on a main signal path, electrical signals corresponding thereto, an amplifier for receiving and amplifying the electrical signals produced by said microphone so as to produce amplified signals, an electro-acoustical transducer for receiving said amplified signals, for converting said amplified signals into acoustical signals and for directing the acoustical signals towards a user's eardrum or other sound-sensitive organ, and an additional signal path the output signals from which are delivered to an input of said microphone, said output signals being substantially equal in amplitude to signals received by said electro-acoustical transducer and in such a relative phase as to substantially cancel the part of the received signals originating from the transducer upon or before being delivered to the input of said transducer, said additional signal path further comprising:

a sound-input means, disposed at least near to a location remote from said microphone in a preferred sound transmission path between said transducer and said microphone, for receiving sound at least near said location and for producing a corresponding output, the transmission time along said additional signal path being substantially equal to the transmission time along said preferred path for sound transmitted from said location to said microphone; and means for delaying said output of said sound-input means and for controlling the magnitude of said output of said sound-input means so as to ensure cancellation of said part of said received signals.

19.  A hearing aid according to Claim 18 wherein said hearing aid includes a vent canal for venting sound to the ambient and said location is in said vent canal.                    DEM 518935

## REMARKS

The purpose of this preliminary amendment is to add claims generally corresponding to those discussed with Examiner McGeary and Examiner Isen in an interview held in connection with the parent application on August 2, 1990. It was evident from the discussions at the interview that the Examiners were not prepared to enter such claims at that stage of the prosecution of the parent application and hence applicant then proceeded with the filing of this continuation application.

Briefly considering the issues raised in the last Office Action in the parent application, the amendments made to Claim 9 overcome the rejection of the claims made under 35 USC 112. In particular, Claim 9 is now generic and Claims 10 to 15 properly depend therefrom. It is noted that new Claim 16 is directed to the embodiment of Figure 1 and new Claim 18 is directed to the embodiment of Figure 3.

With respect to the objection to the drawings, a proposed drawing correction is submitted herewith in which is Figure 3 has been amended to overcome this objection. In particular, Figure 3 has been amended to show a microphone including a "front and rear cavity." This illustration is quite schematic so as not to raise any issues of so-called "new matter," but appropriately illustrates the subject matter in question. Such "directional" microphones are, of course, well known and, in fact, the Saito reference cited by the Examiner shows such a microphone in Figure 3. In addition, two pages are submitted herewith which describe a commercially available miniature directional microphone of this type manufactured by Knowles Electronics, Inc. of Franklin Park, Illinois.

DEM 518936

With respect to the rejection on prior art, i.e., the rejection of Claim 9 as being "anticipated by Saito," it is believed that the claims presented clearly distinguish over the Saito patent. In this regard, it is noted that the system of the Saito patent is not an anti-feedback system and would not serve this purpose. Further, the purpose of the embodiment of Figure 4 and the embodiment of Figures 5 and 6 referred to by the Examiner is to eliminate the problem discussed at lines 45 to 50 of column 2 of the Saito patent, i.e., the problem that when a person hears a voice from the telephone through the microphone of a hearing aid worn by that person that voice will exhibit a response characteristic wherein the lower frequency range drops in response and the higher frequency range is emphasized. As a result, the voice coming from the telephone appears to be high pitched and the wearer of the hearing aid "feels displeasure in the sense of hearing."

This problem is combated in the embodiment of Figure 4 through the provision of a low pass filter 38 which simply attenuates the intermediate and higher frequency regions so as "to impart the comfortable hearing aid effect to the user." The embodiments of Figures 5 and 6 serve the same purpose and are similar to each other except that in the embodiment of Figure 6 a "gain control" 44 is connected across the phase inverter 42. It is important to understand that in both embodiments a pair of essentially identical microphones 30a and 30b are used which are disposed "adjacent to each other" so as to receive the same input. One microphone is connected directly to an amplifier while the other is connected to the phase inverter 42. As discussed in the patent at lines 25 to 34 of Column 5, in a far sound field, the microphones received sound pressures equal in both amplitude and phase and produce respective output voltages which are substantially equal to each other (because the microphones are

DEM 518937

substantially identical in sensitivity to each other). As a consequence, the output voltage from microphone 30a is "canceled out at the junction with 40 by the output from phase inverter 42." On the other hand, in a near sound field, the microphones receive respective sound pressures which are different in phase and thus the output voltage from the microphone 30a is not canceled by the output from the phase inverter 34. As a result, according to the Saito patent, "the amplifier (not shown) is applied with the output voltage from the microphone 30a added to that from the phase inverter 42." The purpose of gain control 44 is to control "the gain of the phase inverter 42 to adjust the output voltage from the microphone 30b so that the voltages originating from the in-phase sound pressures are not entirely canceled out by each other but a desirable portion thereof can be developed at the junction 40." It will be evident from the foregoing and, as is indeed stated in the patent, the arrangement of Figures 5 and 6 serves the same purpose as that of Figure 4, i.e., the arrangement of Figures 5 and 6 simply acts to cancel or attenuate the high frequency sound.

It is respectfully submitted that it is evident from the foregoing the Saito patent does not disclose or suggest the present invention as claimed in Claim 9 as amended. Further, and more to point, since Claim 9 was previously rejected under 35 USC 102(b) as being "anticipated by Saito," it is also clear that amended Claim 9 cannot be read on the Saito patent. For example, as explained above, it is essential in the embodiments of Figures 5 and 6 of the Saito patent that the microphones 30a and 30b can be disposed adjacent one another. In Claim 9, as well as Claims 16 and 18, the sound-input means of the additional signal path is disposed at least near to a location <u>remote</u> from the [first] microphone. Further, the Saito patent is not an anti-feedback system and does not provide for substantially canceling the part of the received signals originating from the transducer upon or before being

DEM 518938

delivered to the input of the transducer as set forth in the claims. In addition, it is respectfully submitted that the phase converter 42 of Figures 5 and 6 cannot be properly read as a "delay means" without completely distorting the understood meaning of that phrase. In fact, it is respectfully submitted that any attempt to read amended Claim 9 on the Saito patent must necessarily require distorting the clear meaning of the terms of Claim 9, and thus if the Examiner intends to pursue a rejection of amended Claim 9 based on the Saito patent, it is respectfully requested that the Examiner spell out in detail exactly how the claims are being read on that patent.

Allowance of the application in its present form is respectfully solicited.

Respectfully submitted,

Date: September 4, 1990

Ross F. Hunt, Jr.
Registration No. 24082

LARSON AND TAYLOR
727 - 23rd Street, South
Arlington, Virginia 22202
(703) 920-7200

DEM 518939



Fig.3

Fig.4

DEM 518940

2

An example of a commercially available miniature directional
microphone (Mfgr. Knowles)



Fig. 3. Condenser directional microphone construction.

DEM 518941



DEM 518942

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| | | | |

| EXAMINER | |
|---|---|
| ART UNIT | PAPER NUMBER |
| | *10* |

DATE MAILED:

## EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

1) *Ross F Hunt Jr.*          (3) *Forester N. Zza*

2) *Nelson McGeary*          (4) _____

Date of Interview  *8/2/90*

Type:  ☐ Telephonic  ☒ Personal (copy is given to)  ☐ applicant  ☐ applicant's representative.

Exhibit shown or demonstration conducted:  ☐ Yes  ☒ No  If yes, brief description: _____

Agreement  ☐ was reached with respect to some or all of the claims in question.  ☒ was not reached.

Claims discussed:  *all*

Identification of prior art discussed: _____

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:

*Discussion of the existing claim 9 & the proposed amended claims (9a,b,c) failed to cause agreement in the claimed material.*

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1~7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ It is not necessary for applicant to provide a separate record of the substance of the interview.

☐ Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

Examiner's Signature

PTOL-413 (REV. 1-84)

APPLICANT'S COPY

MISSING.                                    DEM 518943

LAW OFFICES OF

**LARSON AND TAYLOR**

727 TWENTY-THIRD STREET SOUTH
ARLINGTON, VIRGINIA 22202

ANDREW E. TAYLOR
WALTER C. GILLIS
MARVIN PETRY
THOMAS P. SARRO
ROSS F. HUNT, JR.
WILLIAM E. JACKSON *
DOUGLAS L. JACKSON *
BREWSTER B. TAYLOR *
B. AARON SCHULMAN *

OF COUNSEL
HAROLD L. NOVICK *

*BAR OTHER THAN VA

ROBERTS B. LARSON
(1904-1985)

PATENT, TRADEMARK,
COPYRIGHT
AND RELATED CAUSES

CABLE ADDRESS
LARSON

TELEX 89-2540

FACSIMILE (703) 892-8425

TELEPHONE
(703) 920-7200



VIA FACSIMILE

DATE:       July 18, 1990

TO:         Examiner McGeary, Group 261

FROM:       Ross F. Hunt, Jr.

RE:         U.S. Serial No. 07/322,387, filed March 13, 1989

            Inventor:  WEINRICH, Soren

TOTAL PAGES:    4

OPERATOR:       VII/kr

COMMENTS:

Telefaxed herewith are three amended versions of Claim 9;
Claim 9A is a generic claim; Claim 9B is directed to the
embodiment of Figure 1; and Claim 9C is directed to the
embodiment of Figure 3. If Clam 9A presents problems it can
be cancelled.

                              Sincerely,

                              Ross F. Hunt, Jr.

NOTE:  PLEASE NOTIFY THE OPERATOR INDICATED ABOVE IF PAGES ARE
       MISSING.

DEM 518944



--9A. In a hearing aid comprising a [first] microphone for receiving ambient sound and for producing, on a main signal path, electrical signals corresponding thereto for subsequent amplification,[, an amplifier for receiving and amplifying the electrical signals produced by said microphone to produce amplified signals,] an electro-acoustical transducer for receiving said [amplified] signals after amplification, for converting [said] the amplified signals into [to] acoustical signals and for directing the acoustical signals towards a user's eardrum or other sound-sensitive organ, and an additional signal path the output signals from which are delivered to the input of a component connected in [said amplifier] main signal path, said output signals being substantially equal in amplitude to signals received by [said amplifier from said microphone and caused by sound propagated from] said electro-acoustical transducer, and in such a relative phase as to substantially cancel the part of the [latter] received signals originating from the transducer at upon or before being delivered to the input of said transducer [at lest near to said input, the improvement wherein], said additional signal path comprising [comprises]:

a [second microphone placed] sound-input means, disposed at least near to a location remote from said microphone in a preferred sound transmission path between said transducer and said microphone [amplifier] , for receiving sound at least near said location and for producing a corresponding output, the transmission time along said additional signal path being substantially equal to the transmission time along said preferred path for sound transmitted from said location to said [first] microphone; [an attenuator having an input connected to the output of said second microphone;] and [a signal delay] means [having an input connected to the output of said attenuator and an output

DEM 518945

connected to an input of said amplifier] for delaying said output of said sound-input means and for controlling the magnitude of said output of said sound-input means, so as to ensure cancellation of said part of said received signals.

--9B. In a hearing aid comprising a first microphone for receiving ambient sound and for producing, on a main signal path, electrical signals corresponding thereto, an amplifier for receiving and amplifying the electrical signals produced by said microphone to produce amplified signals, an electro-acoustical transducer for receiving said amplified signals, for converting amplified signals into [to] acoustical signals and for directing the acoustical signals towards a user's eardrum or other sound-sensitive organ, and an additional signal path the output signals from which are delivered to the input of said amplifier, said output signals being substantially equal in amplitude to signals received by said amplifier from said first microphone and being caused by sound propagated from said electro-acoustical transducer, and in such a relative phase as to substantially cancel the part of received [latter] signals originating from said transducer at least near to said input, [the improvement wherein] said additional signal path comprising [comprises]:

a second microphone placed at least near to a location remote from said first microphone in a preferred sound transmission path between said transducer and said microphone [amplifier], for receiving sound at least near said location and for producing a corresponding output, the transmission time along said additional signal path being substantially equal to the transmission time along said preferred path for sound transmitted from said location to

DEM 518946

said first microphone; and means, comprising an adjustable
[an] attenuator [having an input connected to the output of
said second microphone;] and a signal delay device, means
having an input connected to the output of said attenuator and
an output connected to an input of said amplifier for delaying
said output of said second microphone and for controlling the
magnitude of said output of said second microphone so as to
ensure cancellation of said part of said received signals.


--9C.   In a hearing aid comprising a microphone for
receiving ambient sound and for producing, on a main signal
path, electrical signals corresponding thereto, an amplifier
for receiving and amplifying the electrical signals produced
by said microphone so as to produce amplified signals, an
electro-acoustical transducer for receiving said amplified
signals, for converting said amplified signals into [to]
acoustical signals and for directing the acoustical signals
towards a user's eardrum or other sound-sensitive organ, and
an additional signal path the output signals from which are
delivered to [the] an input of said microphone [said
amplifier], said output signals being substantially equal in
amplitude to signals received by [said amplifier from said
microphone and caused by sound propagated from] said electro-
acoustical transducer, and in such a relative phase as to
substantially cancel the part of the [latter] received signals
originating from the transducer upon or before being delivered
to the input of said transducer, [at lest near to said input,
the improvement wherein] said additional signal path further
comprising [comprises]:

        a [second microphone placed] sound-input means,
disposed at least near to a location remote from said
microphone in a preferred sound transmission path between said

transducer and said <u>microphone</u> [amplifier], <u>for receiving</u> <u>sound at least near said location and for producing a</u> <u>corresponding output,</u> the transmission time along said additional signal path being substantially equal to the transmission time along said preferred path for sound transmitted from said location to said [first] microphone; [an attenuator having an input connected to the output of said second microphone;] and [a signal delay] means [having an input connected to the output of said attenuator and an output connected to an input of said amplifier] <u>for delaying said</u> <u>output of said sound-input means and for controlling the</u> <u>magnitude of said output of said sound-input means so as to</u> <u>ensure cancellation of said part of said received signals</u>.

DEM 518948

**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office

Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | |
|---|---|---|---|---|
| 07/322,387 - 03/13/89 | | WEINRICH | | S      VII |

ROSS F. HUNT, JR.
LARSON & TAYLOR
727 23RD STREET SOUTH
ARLINGTON, VA 22202

*IN A*
*17-20-90(SM)*
*16-20-90(ew)*

| | EXAMINER |
|---|---|
| | MCGEARY, M. |
| ART UNIT | PAPER NUMBER |
| 261 | 9 |

DATE MAILED:        04/20/90

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined    ☒ Responsive to communication filed on __1/9/90__ ☒ This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), __ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.      2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.            4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.   6. ☐ ___

**Part II    SUMMARY OF ACTION**

1. ☒ Claims __9-15_____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☒ Claims __1-8_____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims __9-15_____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☒ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☒ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 9-85)

DEM 518949

Serial No. 322,387                              -2-

Art Unit  261

1.   Applicant's arguments with respect to claims 9-15 are have been considered but are deemed to be moot in view of the new grounds of rejection.

2.   The following is a quotation of the first paragraph of 35 U.S.C. § 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The specification is objected to under 35 U.S.C. § 112, first paragraph, as failing to disclose the embodiment of claims 10-15.

The independent claim 9 is specifically drawn to an embodiment including a "second microphone"; while ~~alaims~~ claims 10-15 are drawn to an embodiment with one microphone.  The invention of claims 10-15 as claimed is not disclosed.

3.   Claims 10-15 are rejected under 35 U.S.C. § 112, first paragraph, for the reasons set forth in the objection to the specification.

4.   Claim 9 is rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

Claim 9, line 9 refers to an "additional signal path";

DEM 518950

Serial No. 322,387                              -3-

Art Unit    261

however, it is unclear what the applicant considers as the "main" signal path. Clarification is required.

Claims 10-15 are rejected as follows; Independent claim 9 is specifically drawn to an embodiment including a "second microphone" (Fig. 1, element 9). In contrast, claims 10-15 (dependent claims to claim 9) refer to an embodiment without a second microphone (see figure 3).

5.  The drawings are objected to because they fail to clearly show a first microphone comprising "a front & rear cavity" (directed to fig. 3, 17 & 18). Correction is required.

6.  The following is a quotation of the appropriate paragraphs of 35 U.S.C. § 102 that form the basis for the rejections under this section made in this Office action:

    A person shall be entitled to a patent unless --
    (b) the invention was patented or described in a printed
    publication in this or a foreign country or in public use or
    on sale in this country, more than one year prior to the
    date of application for patent in the United States.

7.  Claim 9 is rejected under 35 U.S.C. § 102(b) as being anticipated by Saito.

Figure 6 & 1 teach the following elements: a first microphone (30a), an amplifier & as output transducer (fig. 1, col. 2, lines 56-60), an additional signal path wherein the output signal delivered to the input of the amplifier (fig. 6, at 40) cancels the signals from the microphone (30a) and a second microphone (30b) in a transmission path between the transducer and amplifier (such that sounds passing from transducer and

DEM 518951

Serial No. 322,387                              -4-

Art Unit    261

amplifier may first pass over the second microphone), an

attenuator & a signal delay means (Fig. 6, 42, 44; col. 5, lines

46-60) wherein the signal inverter is considered to be a "signal

delay means".

8.   Applicant's amendment necessitated the new grounds of

rejection.  Accordingly, THIS ACTION IS MADE FINAL.  See M.P.E.P.

§ 706.07(a).  Applicant is reminded of the extension of time

policy as set forth in 37 C.F.R. § 1.136(a).  The practice of

automatically extending the shortened statutory period an

additional month upon the filing of a timely first response to a

final rejection has been discontinued by the Office.  See 1021

TMOG 35.

      A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL
ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS
ACTION.   IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS
OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION
IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED
STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE
ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION.   IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.

9.   The prior art made of record and not relied upon is

considered pertinent to applicant's disclosure.

      Lichawsky teaches a further hearing aid with feedback

control.

      Bellafiore teaches a hearing aid including a sound inlet

tube.

DEM 518952

Serial No. 322,387 . . .                    -5-

Art Unit   261

10   Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Nelson
McGeary whose telephone number is (703) 557-6096.

   Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 557-3321.

N. MCGEARY:rm
April 3, 1990

JIN F. NG
SUPERVISORY PRIMARY EXAMINER
ART UNIT 261

DEM 518953

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 322,387 | GROUP ART UNIT 261 | ATTACHMENT TO PAPER NUMBER | 9 |
|---|---|---|---|---|---|

**NOTICE OF REFERENCES CITED**

APPLICANT(S) Weinrich

### U.S. PATENT DOCUMENTS

| * | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| A | 4,456,795 | 6/84 | Saito | 381 | 68 | |
| B | 4,763,323 | 9/81 | Lichowsky | 381 | 68 | |
| C | 3,991,203 | 10/73 | Bellafiore | 381 | 68 | |
| D | | | | | | |
| E | | | | | | |
| F | | | | | | |
| G | | | | | | |
| H | | | | | | |
| I | | | | | | |
| J | | | | | | |
| K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. / PP. DWG. SPEC. |
|---|---|---|---|---|---|---|---|
| L | | | | | | | |
| M | | | | | | | |
| N | | | | | | | |
| O | | | | | | | |
| P | | | | | | | |
| Q | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER MNMC (George) | DATE 3/26/91 |
|---|---|

\* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

DEM 518954



**FILING RECEIPT**

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | GRP ART UNIT | FIL FEE REC'D | ATTORNEY DOCKET NO. | DRWGS | TOT CL | IND CL |
|---|---|---|---|---|---|---|---|
| 07/322,387 | 03/13/89 | 261 | $ 490.00 | VII | 2 | 8 | 1 |

ROSS F. HUNT, JR.
LARSON & TAYLOR
727 23RD STREET SOUTH
ARLINGTON, VA 22202

Receipt is acknowledged of the patent application identified herein. It will be considered in its order and you will be notified as to the examination thereof. Be sure to give the U.S. SERIAL NUMBER, DATE OF FILING, NAME OF APPLICANT, and TITLE OF INVENTION when inquiring about this application. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this transmittal.

Applicant(s)      SOREN WEINRICH, ESPERGAERDE, DENMARK.

FOREIGN/PCT APPLICATIONS-DENMARK            1479/88        03/18/88

TITLE
HEARING AID, ESPECIALLY OF THE IN-THE-EAR TYPE

PRELIMINARY CLASS: 381

(see reverse)

DEM 518955

LICENSE FOR FOREIGN FILING UNDER
Title 35, United States Code, Section 184
Title 37, Code of Federal Regulations, 5.11

### GRANTED

ie applicant has been granted a license under 35 U.S.C. 184, if the phrase "FOREIGN
LING LICENSE GRANTED" followed by a date appears on the reverse side of this form.
ich licenses are issued in all applications where the conditions for issuance of a
icense have been met, regardless of whether or not a license may be required.  The
:ope and limitations of this license are set forth in 36 CFR 5.15(a).  This license
: subject to revocation upon written notification.  The date indicated is the effective
ate of the license, unless an earlier license has been granted under 37 CFR 5.13.

his license is to be retained by the licensee and may be used at anytime on or after
ie effective date thereof unless it is revoked.  The license is not retroactive.

ie grant of a license does not in any way lessen the responsibility of a licensee for
ie security of the subject matter as imposed by any Government contract or the provisions
f existing laws relating to espionage and the national security or the export of
:chnical data.  Licensees should apprise themselves of current regulations, especially
lth respect to certain countries, of other agencies, particularly the Office of
unitions Control, Department of State (with respect to Arms, Munitions and Implements
f War (22 CFR, Parts 121-128)); the Office of Export Administration, Department of
ommerce (15 CFR 370.10(j)); and the Department of Energy or its successors.

### NOT GRANTED

o license under 35 U.S.C. 184 has been granted at this time, if the phrase "FOREIGN
ILING LICENSE GRANTED" DOES NOT appear on the reverse side of this form.  Applicant
ay still petition for a license under 37 CFR 5.12(b), if a license is desired.

DEM 518956

## ASSIGNMENT OF PATENT APPLICATION

WHEREAS,
Soren WEINRICH, of Svanevej 11, 3060 Espergaerde,
DENMARK (hereinafter referred to as "ASSIGNOR") have/has
invented certain new and useful improvements in
A Hearing Aid; Especially of the In-the-Ear Type
for which an application for Letters Patent of the United
States has been filed on March 13, 1989
AND WHEREAS
OTICON A/S, whose post office address is Eriksholm,
Kongevejen 243, DK-3070 Snekkersten, DENMARK (hereinafter
referred to as "ASSIGNEE") is desirous of acquiring the
entire right, title and interest in and to said
application and the inventions and improvements therein
disclosed, for the United States of America,
NOW THEREFORE in consideration of the sum of ten U.S.
dollars ($10.00) and other good and valuable
consideration, the receipt and sufficiency of which is
hereby acknowledged, the ASSIGNOR does hereby assign,
sell, transfer and set over unto the ASSIGNEE the entire
right, title and interest in and to said application and
the inventions and improvements therein disclosed, for the
United States and any Letters Patent which may issue
therefor in the United States and all divisions,
continuations, re-issues, renewals and/or extensions
thereof, said ASSIGNEE to have and to hold the interests
herein assigned to the full ends of the terms of said
Letters Patent and any and all divisions, continuations,
re-issues, renewals and/or extensions thereof,
respectively, as fully and entirely as the same would have
been held and enjoyed by the ASSIGNOR had this assignment
not been made.
And for the consideration aforesaid, ASSIGNOR agrees
that ASSIGNOR will communicate to said ASSIGNEE or the
representatives thereof any facts known to ASSIGNOR
respecting the inventions and improvements of the said
United States application and will, upon request, but
without expense to ASSIGNOR, testify in any legal
proceedings, sign all lawful papers, execute all
divisional, continuation, re-issue, renewal and/or
extension applications, make all rightful oaths, and
generally do all other and further lawful acts, deemed
necessary or expedient by said ASSIGNEE or by counsel for
said ASSIGNEE, to assist or enable said ASSIGNEE to obtain
and enforce full benefits from the rights and interest
herein assigned.
This assignment shall be binding upon the ASSIGNOR's
heirs, executors, administrators, successors and/or
assigns, and shall inure to the benefit of the heirs,
executors, administrators, successors, and/or assigns, as
the case may be, of the ASSIGNEE.
The Commissioner of Patents is requested to issue such
Letters Patent in accordance with this assignment.

Signature: _Soren Weinrich_

Name: Søren Weinrich

Date: _18.4.89._

RECORDED
PATENT & TRADEMARK OFFICE

MAY 1 2 1989

COMMISSIONER OF PATENTS
AND TRADEMARKS OFFICE

DEM 518957

**Patent and Trademark Office**

Address   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, B.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/322,387 | 03/13/89 | HEINRICH | S | VEI |

```
┌ ROSS F. HUNT, JR.
  LARSON & TAYLOR
  727 23RD STREET SOUTH
  ARLINGTON, VA 22202                  ┐
```

| | EXAMINER |
|---|---|
| | MCGEARY,T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 261 | 7 |

DATE MAILED:        10/11/89

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

---

his application has been examined ☐ Responsive to communication filed on _____ ☐ This action is made final.

tened statutory period for response to this action is set to expire **3** month(s), ____ days from the date of this letter.
e to respond within the period for response will cause the application to become abandoned.   35 U.S.C. 133

**THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☒ Notice re Patent Drawing, PTO-948.
3. ☒ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**SUMMARY OF ACTION**

☒ Claims **1 - 8** _____ are pending in the application.

Of the above, claims _____ are withdrawn from consideration.

☐ Claims _____ have been cancelled.

☐ Claims _____ are allowed.

☒ Claims **1 - 8** _____ are rejected.

☐ Claims _____ are objected to.

☐ Claims _____ are subject to restriction or election requirement.

☐ This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.

☐ Allowable subject matter having been indicated, formal drawings are required in response to this Office action.

☐ The corrected or substitute drawings have been received on _____. These drawings are ☐ acceptable; ☐ not acceptable (see explanation).

☐ The ☐ proposed drawing correction and/or the ☐ proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).

☐ The proposed drawing correction, filed _____, has been ☐ approved. ☐ disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.

☒ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☒ been received ☐ not been received

☐ been filed in parent application, serial no. _____; filed on _____.

☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

**DEM 518958**

☐ Other

Serial No. 322,387                    -2-

Art Unit 261


1.      The Abstract of the Disclosure is objected to

because there is more than one paragraph.  Also, the

suggestion as to which figure should be published should

be removed.

2.      Applicant is reminded of the proper language

and format of an Abstract of the Disclosure.

The abstract should be in narrative form and
generally limited to a single paragraph on a separate
sheet within the range of 50 to 250 words. It is impor-
tant that the abstract not exceed 250 words in length
since the space provided for the abstract on the com-
puter tape used by the printer is limited.  The form and
legal phraseology often used in patent claims, such as
"means" and "said", should be avoided.  The abstract
should describe the disclosure sufficiently to assist
readers in deciding whether there is a need for con-
sulting the full patent text for details.

The language should be clear and concise and should
not repeat information given in the title. It should
avoid using phrases which can be implied, such as, "The
disclosure concerns," "The disclosure defined by this
invention " "The disclosure describes," etc.

3.      The drawings are objected to because the boxes

in Figures 1-3 (in Figure 1, for example boxes 1, 3, 6

and 9) are required to be labeled according to 37 CFR

1.83(a).

Applicant is required to submit a proposed

drawing correction in response to this Office action.

However, correction of the noted defect can be deferred

until the application is allowed by the examiner

4.      Claim 6 is rejected under 35 U.S.C. 112,

second paragraph, as being indefinite for failing to

particularly point out and distinctly claim the subject

matter which applicant regards as the invention.

The phrase "an acoustic impedance matching

element, such as an acoustical resistance" is considered

DEM 518959

Serial No. 322,387                             -3-

Art Unit 261

to be indefinite as to the scope of the claim. It is
not clear whether the narrower expression is, in fact, a
claim limitation.

      In addition, claim 1b would be clarified by
changing "for amplifying" to "to amplify".

5.     The following is a quotation of the first
paragraph of 35 U.S.C. 112:
> The specification shall contain a written descrip
> tion of the invention, and of the manner and pro-
> cess of making and using it, in such full, clear,
> concise, and exact terms as to enable any person
> skilled in the art to which it pertains, or with
> which it is most nearly connected, to make and use
> the same and shall set forth the best mode con-
> templated by the inventor of carrying out his
> invention.

The specification is objected to under 35 U.S.C.
112, first paragraph, as failing to provide an adequate
written description of the invention.

      The specification (p 5, l 16-20) states that
the inputs to the amplifier 14 are equal in amplitude
and phase, contradictory to the claimed invention in
claim 1 (which specifies inputs to the amplifier oppo-
site in phase).

6.     Claims 1-8 are rejected under 35 U.S.C. 112,
first paragraph, for the reasons set forth in the above
objection to the specification.

7.     The following is a quotation of the appropriate
paragraphs of 35 U.S.C. 102 that form the basis for the
rejections under this section made in this Office
action:

A person shall be entitled to a patent unless-

> (e) the invention was described in a patent
> granted on an application for patent by
> another filed in the United States before the
> invention thereof by the applicant for patent,
> or on an international application by another
> who has fulfilled the requirements of

DEM 518960

Serial No. 322,387                    —4—

Art Unit 261

paragraphs (1), (2), and (4) of section 371(c)
of this title before the invention thereof by
the applicant for patent.

8.      Claim 1 is rejected under 35 U.S.C 102e as
being anticipated by Levitt et al.

Figure 2 of Levitt shows a hearing aid
comprising a microphone (57), an amplifier (60), and an
electro-acoustical transducer (69). The signal path is
disclosed in col. 9, 1. 13 as "the acoustic feedback
(loop". The addition signal path disclosed as "the
electronic feedback path" (col. 9, 1 14). The electro-
nic feedback path may contain a "programmable filter"
(col. 9, 1. 33.34) which produces a signal delivered to
a subtraction amplifier equal to that provided from the
"acoustic feedback loop" (col. 9, 1 13-17). This filter
effectively delays & modifies (col. 2 1 55 58) the
signal along the "electronic feedback path" so that it
arrives at the subtraction amplifier at a time equal to
~~the subtraction amplifier at a time equal to~~ the signal
along the acoustic feedback path.

9.      Any inquiry concerning this communication or
earlier communications from the examiner should be
directed to Nelson MᶜGeary whose telephone number is
(703) 557-6096.

Any inquiry of a general nature, or relating to the
status of this application, should be directed to the
Group receptionist whose telephone number is (703)
557-3321.

N. McGEARY:sm

703 557-6096

10/4/89

DEM 518961

PTO - 948
(Rev. 6-82)

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

ATTACHMENT TO
PAPER NUMBER        7

S.N.   322387

GROUP 260

## NOTICE OF PATENT DRAWINGS OBJECTION

Drawing Corrections and/or new drawings may only be
submitted in the manner set forth in the attached letter,
"Information on How to Effect Drawing Changes" PTO-1474.

A. ☑ The drawings, filed on **3/13/89**, are objected to as informal for reason(s)
checked below:

1. ☐ Lines Pale.

2. ☐ Paper Poor.

3. ☐ Numerals Poor.

4. ☑ Lines Rough and Blurred.
   *Fig 1-4*

5. ☐ Shade Lines Required.

6. ☐ Figures Must be Numbered.

7. ☐ Heading Space Required.

8. ☐ Figures Must Not be Connected.

9. ☐ Criss-Cross Hatching Objectionable.

10. ☐ Double-Line Hatching Objectionable.

11. ☐ Parts in Section Must Be Hatched.

12. ☐ Solid Black Objectionable.

13. ☐ Figure Legends Placed Incorrectly.

14. ☐ Mounted Photographs.

15. ☐ Extraneous Matter Objectionable.
    [37 CFR 1.84 (1)]

16. ☐ Paper Undersized; either 8½" x 14",
    or 21.0 cm. x 29.7 cm. required.

17. ☐ Proper A4 Margins Required:
    ☐ TOP 2.5 cm.   ☐ RIGHT 1.5 cm.
    ☐ LEFT 2.5 cm.  ☐ BOTTOM 1.0 cm.

18. ☑ Other: ~~Boxes must be labelled~~

B. ☑ The drawings, submitted on **3/13/89**, are so informal they cannot be
corrected. New drawings are required. Submission of the new drawings MUST be
made in accordance with the attached letter.

DEM 518962

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 07/322,387 | GROUP ART UNIT 261 | ATTACHMENT TO PAPER NUMBER 7 |
|---|---|---|---|---|
| | NOTICE OF REFERENCES CITED | APPLICANT(S) | | |

**U.S. PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| * | A | 4 7 3 1 8 5 0 | 3-88 | Levitt et al. | 381 | 68.4 | |
| * | B | 4 4 5 5 6 7 5 | 6-84 | Bose et al. | 381 | 74 | |
| | C | | | | | | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS DWG / PP. SPEC. |
|---|---|---|---|---|---|---|---|---|
| * | L | 2 8 0 8 5 1 6 | 9-79 | Germany | Schmidt | — | — | |
| * | M | 2 8 5 4 9 1 2 | 6-79 | Germany | Burwood et al | — | — | |
| * | N | 3 5 2 6 5 9 1 | 1-87 | Germany | Schmidt-Enzmann | — | — | |
| | O | | | | | | | |
| | P | | | | | | | |
| | Q | | | | | | | |

**OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)**

| | | |
|---|---|---|
| R | | |
| S | | |
| T | | |
| U | | |

| EXAMINER MNAT (sung III | DATE 9/21/89 | DEM 518963 |
|---|---|---|

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of            )

WEINRICH, Soren                 )

Serial No.: 07/322,387          )

Filed: March 13, 1989           )

For: A HEARING AID, ESPECIALLY OF )

    THE IN-THE-EAR TYPE          )

RESPONSE TO NOTICE TO FILE MISSING PARTS OF

APPLICATION - FILING DATE GRANTED

Honorable Commissioner of Patents and Trademarks

Washington, D.C. 20231

S I R:

    In Response to the Notice dated March 31, 1989,

submitted herewith are:

    1.   Declaration signed by Applicant.

    2.   An Assignment to OTICON A/S.

    3.   A certified copy of Danish Patent No. 1479/88

filed March 18, 1988, the priority of which is hereby claimed.

    4.   An Information Disclosure Statement with four (4)

references.

    5.   A check in the amount of $490 for the following:

    Application Filing Fee (Large Entity) - $370.00

    Surcharge Fee (Large Entity) - $120.00

    Assignment Recordal Fee - $8.00

DEM 518964

If any other fee is due in connection with this communication or if the check enclosed is insufficient, the Commissioner is authorized to charge any fee or additional fee due in connection with this communication to Deposit Account No. 12-0555.

It is considered that this application is in order for examination and such action is respectfully requested.

Respectfully submitted,

LARSON AND TAYLOR

By: _____
Ross F. Hunt, Jr.
Registration No. 24,082

727 Twenty-Third Street, South
Arlington, Virginia  22202
(703) 920-7200

May 12, 1989

DEM 518965



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTY. DOCKET NO. |
|---|---|---|---|---|
| 07/322,387 | 03/13/89 | WEINRICH | S | VII |

```
ROSS F. HUNT, JR.
LARSON & TAYLOR
727 23RD STREET SOUTH
ARLINGTON, VA 22202
```

003/31/89    000

DATE MAILED:

## NOTICE TO FILE MISSING PARTS OF APPLICATION— FILING DATE GRANTED

A filing date has been granted to this application. However, the following parts are missing.

If all missing parts are filed within the period set below, the total amount owed by applicant as a ☑ large entity, ☐ small entity (verified statement filed), is $ ....... — $490.00

1. ☐ The statutory basic filing fee is ☐ missing, ☐ insufficient. Applicant as a ☐ large entity, ☐ small entity, must submit $ ....... to complete the basic filing fee and MUST ALSO SUBMIT THE SURCHARGE AS INDICATED BELOW.

2. ☐ Additional claim fees of $ ....... as a ☐ large entity, ☐ small entity, including any required multiple dependent claim fee, are required. Applicant must submit the additional claim fees or cancel the additional claims for which fees are due. NO SURCHARGE IS REQUIRED FOR THIS ITEM.

3. ☑ The oath or declaration:
   ☐ is missing.
   ☐ does not cover items omitted at the time of execution.
   An oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Serial Number and Filing Date is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

4. ☐ The oath or declaration does not identify the application to which it applies. An oath or declaration in compliance with 37 CFR 1.63 identifying the application by the above Serial Number and Filing Date is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

5. ☐ The signature to the oath or declaration is: ☐ missing; ☐ a reproduction; ☐ by a person other than the inventor or a person qualified under 37 CFR 1.42, 1.43, or 1.47. A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Serial Number and Filing Date is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

6. ☐ The signature of the following joint inventor(s) is missing from the oath or declaration: ....... Applicant(s) should provide, if possible an oath or declaration signed by the omitted inventor(s), identifying this application by the above Serial Number and Filing Date. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

7. ☐ The application was filed in a language other than English. Applicant must file a verified English translation of the application and a fee of $26.00 under 37 CFR 1.17(k), unless this fee has already been paid NO SURCHARGE UNDER 37 CFR 1.16(e) IS REQUIRED FOR THIS ITEM.

8. ☐ A $20.00 processing fee is required for returned checks. (37 CFR 1.21 (m)).

9. ☐ Your filing receipt was mailed in error because check was returned.

10. ☐ Other:
A Serial Number and Filing Date have been assigned to this application. However, to avoid abandonment under 37 CFR 1.53(d), the missing parts and fees identified above in Items 1 and 3-6 must be timely provided ALONG WITH THE PAYMENT OF A SURCHARGE OF $110.00 for large entities or $55.00 for small entities who have filed a verified statement claiming such status. The surcharge is set forth in 37 CFR 1.16(e). Applicant is given ONE MONTH FROM THE DATE OF THIS LETTER, OR TWO MONTHS FROM THE FILING DATE of this application, WHICHEVER IS LATER, within which to file all missing parts and pay any fees. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

Direct the response to, and any questions about, this notice to the undersigned, Attention: Application Branch.

*A copy of this notice MUST be returned with response.*    DEM 518966

| For Office Use Only |
|---|
| ☐ 102    ☐ 202 |

**DECLARATION FOR PATENT APPLICATION (USA)**
**(INCLUDING DESIGN PATENT APPLICATIONS)**

Attorney's Docket No
**VII**

As a below named inventor I hereby declare that

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled _____ A Hearing Aid, _____
**Especially of the In-the-Ear Type.** _____ the specification of which

is attached hereto

X was filed on **March 13, 1989** as

Application Serial No

and was amended on _____ (if applicable)

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code, §119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed.

Prior Foreign Application(s)

| (Number) | (Country) | (Day/Month/Year Filed) | Priority Claimed |  |
|---|---|---|---|---|
|  |  |  | Yes | No |
| 1479/88 | Denmark | 18/03/88 | ☒ | ☐ |
|  |  |  | ☐ | ☐ |
| (Number) | (Country) | (Day/Month/Year Filed) | Yes | No |
|  |  |  | ☐ | ☐ |
| (Number) | (Country) | (Day/Month/Year Filed) | Yes | No |

☐ Additional applications identified on attached sheet

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, §1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| (Application Serial No.) | (Filing Date) | (Status) (patented, pending, abandoned) |
|---|---|---|
| (Application Serial No.) | (Filing Date) | (Status) (patented, pending, abandoned) |

☐ Additional applications identified on attached sheet

I hereby appoint the following attorneys to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith:

| | Reg No 13126 | Mason Fenn | Reg No 22752 | | Reg No 24816 |
| | Reg No 17003 | Thomas F Sims | Reg No 18336 | | Reg No 26011 |
| Walter C Kehm | Reg No 27088 | Page F Hunt Jr | Reg No 24082 | | Reg No 28519 |

Direct all telephone calls to _____ Ross F. Hunt, Jr. _____ TEL: 920-7200

Address all correspondence to LARSON & TAYLOR, 727 23rd Street South, Arlington, Virginia 22202.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true, and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

| Full Name of Sole or First Inventor: Soren WEINRICH | Inventor's Signature *Soren Weinrich* | Citizenship | Date 18.4.89 |
|---|---|---|---|
| Residence: Svanevej 11, 3060 Espergaerde, DENMARK | | | |
| Post Office Address: same as above | | | |
| Full Name of Second Joint Inventor, if any | Inventor's Signature | Citizenship | Date |
| Residence | | | |
| Post Office Address | | | |
| Full Name of Third Joint Inventor, if any | Inventor's Signature | Citizenship | Date |
| Residence | | | |
| Post Office Address | | | |
| Full Name of Fourth Joint Inventor, if any | Inventor's Signature | Citizenship | Date |
| Residence | | | |
| Post Office Address | | | |

☐ See attached sheet for similar information and signature for additional joint inventors.

Law Offices of LARSON & TAYLOR, 727 23rd Street South, Arlington, Virginia 22202.

DEM 518967

IN THE UNITED STATES PATENT ANDTRADEMARK OFFICE

In re application of                    )

WEINRICH, Soren                         )

Serial No.: 07/322,387                  )

Filed: March 13, 1989                   )

For: A HEARING AID, ESPECIALLY OF )

    THE IN-THE-EAR TYPE              )

L E T T E R

Honorable Commissioner of Patents and Trademarks

Washington, D.C. 20231

S I R:

        Please record the attached Assignment and return it to

the undersigned. Our firm check in payment of the government

recordal fee is attached hereto.

                        Respectfully submitted,
                        LARSON AND TAYLOR

                        Ross F. Hunt, Jr.
                        Registration No. 24,082

727 Twenty-Third Street, South
Arlington, Virginia  22202
(703) 920-7200

May 12, 1989

DEM 518968

## ASSIGNMENT OF PATENT APPLICATION

WHEREAS,
 Soren WEINRICH, of Svanevej 11, 3060 Espergaerde,
DENMARK (hereinafter referred to as "ASSIGNOR") have/has
invented certain new and useful improvements in
 A Hearing Aid, Especially of the In-the-Ear Type
for which an application for Letters Patent of the United
States has been filed on March 13, 1989
 AND WHEREAS
 OTICON A/S, whose post office address is Eriksholm,
Kongevejen 243, DK-3070 Snekkersten, DENMARK (hereinafter
referred to as "ASSIGNEE") is desirous of acquiring the
entire right, title and interest in and to said
application and the inventions and improvements therein
disclosed, for the United States of America,
 NOW THEREFORE in consideration of the sum of ten U.S.
dollars ($10.00) and other good and valuable
consideration, the receipt and sufficiency of which is
hereby acknowledged, the ASSIGNOR does hereby assign,
sell, transfer and set over unto the ASSIGNEE the entire
right, title and interest in and to said application and
the inventions and improvements therein disclosed, for the
United States and any Letters Patent which may issue
therefor in the United States and all divisions,
continuations, re-issues, renewals and/or extensions
thereof, said ASSIGNEE to have and to hold the interests
herein assigned to the full ends of the terms of said
Letters Patent and any and all divisions, continuations,
re-issues, renewals and/or extensions thereof,
respectively, as fully and entirely as the same would have
been held and enjoyed by the ASSIGNOR had this assignment
not been made.
 And for the consideration aforesaid, ASSIGNOR agrees
that ASSIGNOR will communicate to said ASSIGNEE or the
representatives thereof any facts known to ASSIGNOR
respecting the inventions and improvements of the said
United States application and will, upon request, but
without expense to ASSIGNOR, testify in any legal
proceedings, sign all lawful papers, execute all
divisional, continuation, re-issue, renewal and/or
extension applicaions, make all rightful oaths, and
generally do all other and further lawful acts, deemed
necessary or expedient by said ASSIGNEE ot by counsel for
said ASSIGNEE, to assist or enable said ASSIGNEE to obtain
and enforce full benefits from the rights and interest
herein assigned.
 This assignment shall be binding upon the ASSIGNOR's
heirs, executors, administrators, successors and/or
assigns, and shall inure to the benefit of the heirs,
executors, administrators, successors, and/or assigns, as
the case may be, of the ASSIGNEE.
 The Commissioner of Patents is requested to issue such
Letters Patent in accordance with this assignment.

Signature: _Søren Weinrich_

Name: Søren Weinrich

Date: 18.4.89.

DEM 518969

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of          )

WEINRICH, Soren               )

Serial No.: 07/322,387        )

Filed: March 13, 1989         )

For: A HEARING AID, ESPECIALLY OF )

    THE IN-THE-EAR TYPE        )

L E T T E R

Honorable Commissioner of Patents and Trademarks

Washington, D.C.  20231

S I R:

      Applicant hereby claims the priority date of the

attached Danish Patent Application No. 1479/88, filed March 18,

1988, under the provisions of 35 USC 119.

                   Respectfully submitted,
                   LARSON AND TAYLOR

                   Ross F. Hunt, Jr.
                   Reg. No. 24,082

727 Twenty-Third Street, South
Arlington, Virginia  22202
(703) 920-7200

May 12, 1989

DEM 518970



# Kongeriget Danmark

| | |
|---|---|
| Patent application No. | 1479/88 |
| Date of filing | 18 Mar 1988 |
| Applicant | Oticon A/S, Eriksholm, Kongevejen 243, 3070 Snekkersten, DK |
| Int. Cl. 4 | H 04R 25/02 |
| Titel: | A hearing aid, especially of the in-the-ear type |

This is to certify that the attached photocopy is a true copy of the specification, drawings and abstract filed with the application.



## ♔ Patentdirektoratet

16 Mar 1989

*Gitte M. Dall*

Gitte M. Dall
Overassistent

DEM 518971

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of          )
                              )
WEINRICH, Soren               )
                              )
Serial No.: 07/322,387        )
                              )
Filed: March 13, 1989         )
                              )
For: A HEARING AID, ESPECIALLY OF )
     THE IN-THE-EAR TYPE      )

INFORMATION DISCLOSURE STATEMENT

Honorable Commissioner of Patents and Trademarks

Washington, D.C.  20231


S I R:

        Pursuant to the requirements of 37 CFR 1.56, the
following references have come to the attention of the Applicant
which may be of relevance to present invention:

        German Published Application No. 2,808,516

        German Published Application No. 2,854,912

        German Published Application No. 3,526,591

    United States Patent No. 4,455,675 (Bose et al)

        Copies of these references are submitted herewith.

        Considering the possible relevance of these patents,
German Published Application No. 2,808,516 discloses a system
wherein distortion is suppressed by means of a preferably linear
measuring microphone 9 which senses sound vibrations from a
telephone 8.  The output from the measuring microphone 9 is
compared with an input signal and the difference used to produce
a correction signal.  The measuring microphone is preferably a
component of an hearing aid apparatus and is placed close to the
sound exit opening of the telephone 8.  There does not appear to
be any disclosure of producing "counter-coupling" corresponding
to the sound coming from the telephone 8 to the main sound
microphone 1.

DEM 518972

German Published Application No. 2,854,912 discloses a magnetic, electrical and/or mechanical coupling to or from an electro-acoustic-electrical transducer, which could produce undesired feedback, wherein such feedback is reduced by making the transducer symmetrical mechanically, electrically and magnetically. There is no "counter-coupling" disclosed.

German Published Application No. 3,526,591 which, translating Col. 2, lines 42 to 56, includes the following disclosure "In the arrangement shown in Figure 1, the speech signal leaving the microphone 1 at 2 is divided into two channels 3 and 4. Channel 4 comprises a phase displacement unit 5 adjustable in such a manner that the phase is displaced by 180°, so that the phase in channel 4 is opposite to that in channel 3. Further, channel 4 comprises an adjustable device 6, by means of which it is possible to make the signal in channel 4 substantially weaker than the signal transmitted through channel 3. At 7, the two channels are again united and connected to the loudspeaker 8. By means of the adjustable device 6, the additional signal in channel 4 may be so adjusted that it is substantially weaker than the signal transmitted in channel 3, but still sufficient to prevent feedback."

The Bose et al patent discloses a headphone device of the general type discussed in the introductory portions of this application and set forth in the preamble of Claim 1.

Consideration and citation of these references is respectfully requested.

Respectfully submitted,

Ross F. Hunt, Jr.
Registration No. 24,082

LARSON AND TAYLOR
727 Twenty-Third Street, South
Arlington, Virginia 22202
(703) 920-7200

May 12, 1989

DEM 518973

341-33

**DECLARATION FOR PATENT APPLICATION (USA)**
**(INCLUDING DESIGN PATENT APPLICATIONS)**

Attorney's Docket No.
VII

As a below named inventor, I hereby declare that

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled **A Hearing Aid, Especially of the In-the-Ear Type**, the specification of which

(check one)
☐ is attached hereto
☒ was filed on **March 13, 1989**, as
Application Serial No. _____
and was amended on _____ (if applicable)

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code, §119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed.

Prior Foreign Application(s)                                                                    Priority Claimed

| (Number) | (Country) | (Day/Month/Year Filed) | Yes | No |
|----------|-----------|------------------------|-----|-----|
| 1479/88  | Denmark   | 18/03/88               | ☒ Yes | ☐ No |
|          |           |                        | ☐ Yes | ☐ No |
|          |           |                        | ☐ Yes | ☐ No |

☐ Additional applications identified on attached sheet

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, §1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| (Application Serial No.) | (Filing Date) | (Status) (patented, pending, abandoned) |
|--------------------------|---------------|------------------------------------------|
| (Application Serial No.) | (Filing Date) | (Status) (patented, pending, abandoned) |

☐ Additional applications identified on attached sheet

I hereby appoint the following attorneys to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith:

| Roberts D. Larson | Reg. No. 13129 | Mason Perry | Reg. No. 22252 | William S. Jackson | Reg. No. 24416 |
| Andrew E. Taylor | Reg. No. 19000 | Thomas P. Sauer | Reg. No. 19298 | Donald I. Nowak | Reg. No. 20811 |
| Walter C. Giles | Reg. No. 22086 | Peter S. Held Jr. | Reg. No. 24082 | Douglas E. Andrew | Reg. No. 28518 |

Direct all telephone calls to    **Ross F. Hunt, Jr.**    TEL: 528-7200

Address all correspondence to: LARSON & TAYLOR, 727 23rd Street South, Arlington, Virginia 22202

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true, and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

| Full Name of Sole or First Inventor: **SOREN WEINRICH** | Inventor's Signature *Soren Weinrich* | Citizenship | Date 18.4.89 |
| Residence **Svanevej 11, 3060 Espergaerde, DENMARK** |  |  |  |
| Post Office Address **same as above** |  |  |  |
| Full Name of Second Joint Inventor, if any | Inventor's Signature | Citizenship | Date |
| Residence |  |  |  |
| Post Office Address |  |  |  |
| Full Name of Third Joint Inventor, if any | Inventor's Signature | Citizenship | Date |
| Residence |  |  |  |
| Post Office Address |  |  |  |
| Full Name of Fourth Joint Inventor, if any | Inventor's Signature | Citizenship | Date |
| Residence |  |  |  |
| Post Office Address |  |  |  |

☐ See attached sheet for similar information and signature for additional joint inventors

Law Offices of LARSON & TAYLOR, 727 23rd Street South, Arlington, Virginia 22202

**DEM 518974**

1

A hearing aid, especially of the in-the-ear type.


TECHNICAL FIELD

The present invention relates to a hearing aid of the
kind set forth in the preamble of claim 1.


BACKGROUND ART

5   In many types of hearing aid, especially those of the
in-the-ear type, sound from the receiver intended for
the user's sound-sensitive organ may reach the micro-
phone along an acoustical transmission path, the
length and attenuation of which is so low, that posi-
10  tive acoustical feedback or "howling" may occur. This
is especially the case with hearing aids of the
in-the-ear type with a vent canal communicating the
external auditory meatus with the atmosphere, as the
15  sound from the receiver issuing into the meatus may be
propagated along the vent canal and through the atmos-
phere to the microphone situated at a comparatively
short distance from the vent canal.


Several attempts have been made or proposed to reduce
20  the risk of positive acoustical feedback, but up to
the present, none of these attempts have proved
successful. Thus, attempts have been made by partly or
completely occluding the vent canal, by introducing
various filters, phase shifts and/or time delays or

DEM 518975

2

even negative feedback in the amplifying path, but all
these attempts have led to discomfort to the user
and/or reduced intelligibility of the speech processed
by the hearing aid.

5  DISCLOSURE OF THE INVENTION
It is the object of the present invention to provide a
hearing aid of the kind referred to initially, in
which the risk of positive acoustical feedback causing
"howling" is eliminated or at least substantially
10  reduced, and this object is attained in a hearing aid
also exhibiting the features set forth in the charac-
terizing clause of claim 1. With this arrangement,
that part of the sound from the receiver reaching the
input to the amplifier is cancelled out by an equal
15  and opposite "anti-sound" from the additional signal
path, so that only that component of the signal reach-
ing the amplifier caused by ambient sound to be ampli-
fied is effectively transmitted to the user's sound-
sensitive organ.

20  Further embodiments of the hearing aid according to
the invention, the technical effects of which are
explained in the following detailed portion of the
present specification, are set forth in the claims 2
to 8.

25  BRIEF DESCRIPTION OF THE DRAWINGS
The invention will now be explained in more detail
with reference to the accompanying, in parts highly
diagrammatic drawings, in which
30  Figure 1  is a section through a first embodiment,
Figure 2  is a block diagram of the circuit components
          of the embodiment shown in Figure 1,
Figure 3  is a section through a second embodiment,
          and

DEM 518976

3

Figure 4 is a greatly enlarged partial view of the
region marked IV in Figure 3.

DESCRIPTION OF THE PREFERRED EMBODIMENTS

As may be seen from Figures 1 and 3, the exemplary
5    embodiments of the hearing aid according to the inven-
tion shown constitute hearing aids of the so-called
in-the-ear (ITE) type in the form of a plug-shaped
device adapted to be inserted into the external audi-
tory meatus (not shown) of the user. In a manner known
10   per se, both the embodiments shown comprise
      -  a microphone 1 connected to the surrounding atmos-
         phere through a duct 2,
      -  an electro-acoustic transducer or receiver 3, con-
         nected to the part of the user's external auditory
15       meatus proximal of the hearing aid through a duct
         4,
      -  a vent canal 5 establishing permanent communication
         between said part of the auditory meatus and the
         surrounding atmosphere, and
20    -  equipment to be described below transmitting and
         amplifying signals from the microphone 1 to the
         receiver 3.

In the embodiment illustrated in Figures 1 and 2, the
equipment transmitting and amplifying signals from the
25   microphone 1 to the receiver 3 comprises an electronic
signal processor 6, the output of which is connected
to the receiver 3 and a first input 7 of which is
connected to the microphone 1 adapted to receive sound
through the surrounding atmosphere. In what follows,
30   the microphone 1 will be described as the "main micro-
phone".

In addition to said first input 7, the signal proces-
sor 6 also comprises a second input 8 receiving sig-

DEM 518977

4

nals from a second, feedback-suppressing microphone 9
adapted to receive sound from a location 10 in the
vent canal 5 through a duct 11.

5  The second input 8 is connected to the input of a
variable attenuator 12, the output of which is con-
nected to a delay unit 13, the latter in turn through
its output being connected to the positive input of a
difference amplifier 14, the other, negative input of
which is connected to the first input 7 receiving
10  signals from the main microphone 1. The output of the
difference amplifier 14 is connected to the receiver 3
- directly in the embodiment shown, but this connec-
tion could also include amplifying, filtering and/or
other signal processing equipment.

15  The location 10, i.e. the location of the duct 11
leading to the second microphone 9 in the vent canal
5, is placed at a distance "a" from the external
opening 15 of the vent canal 5, and this opening 15 is
situated at a distance "b" from the duct 2 leading to
20  the main microphone 1. Thus, sound from the location
10 to the duct 2 will have to travel through a
distance a+b.

The delay unit 13 shown in Figure 2 is adapted to
delay the signal from the attenuator 12 through the
25  difference amplifier 14 by an amount $\Delta t$ corresponding
to the time required for sound to travel through the
above-mentioned distance a+b. When the hearing aid
shown is in operation, some of the sound emerging from
the duct 4 of the receiver 3 will unavoidably "leak"
30  through the vent canal 5 to the external opening 15,
and of the sound in this manner emerging through the
external opening 15, a portion will reach the duct 2
and hence the main microphone 1. In the absence of the

DEM 518978

5

second, feedback-suppressing microphone 9 and its
associated circuitry components, i.e. the attenuator
12, the delay unit 13 and the "positive part" of the
difference amplifier 14, this could lead to a positive
5    feedback condition or "howling". This situation is,
however, avoided by means of the microphone 9 and its
associated equipment mentioned. At the same time as
the "leaking" sound from the receiver 3 passes through
the air from the location 10 to the duct 2 of the main
10   microphone 1, the sound detected by the microphone 9
at the location 10 will be converted into an electri-
cal signal, attenuated in the attenuator 12, delayed
in the delay unit 13 by the above-mentioned amount $\Delta t$
and delivered to the positive input of the difference
15   amplifier 14. By suitable adjustment of the attenuator
12 and the delay unit 13, the signal from the latter
will be received at the positive input of the diffe-
rence amplifier 14 with the same amplitude and phase
as the signal from the main microphone 1 supplied to
20   the negative input, for which reason the signal from
the delay unit 13 will cancel-out that component of
the signal from the main microphone 1 arising from
sound received from the receiver 3 as described above.
Thus the output of the difference amplifier 14 will
25   only contain signals from the main microphone 1 aris-
ing from ambient sound 16 received. A minor portion of
the ambient sound 16 will, of course, be detected by
the second microphone 9, but due to the attenuation
and/or delay introduced in the signals from the second
30   microphone 9, this will not be able to cause any
cancelling-out of the ambient sound signals in the
microphone 1.

It can be shown that the frequency response of the
hearing aid shown in Figures 1 and 2, defined as the
35   difference between the sound pressure level generated

DEM 518979

6

by the receiver 3 in the auditory meatus and the free-field sound-pressure level of the ambient sound 16, is modified by the following amount:

$$\Delta_{FF} = 20\log_{10}(1 - 10^{H(a+b)/20}),$$

5  where H(a+b) is the acoustical attenuation between the location 10 in the vent canal and the duct 2 leading to the main microphone 1.

This attenuation is practically frequency-independent for frequencies below 6 to 7 kHz and only dependent on 10  the distance (a+b). As a consequence, the frequency response of the hearing aid is only changed by a frequency-independent quantity, which means that the shape of the frequency response curve is preserved and no high-frequency gain is lost.

15  In the exemplary embodiment illustrated in Figures 3 and 4, reference numbers and characters similar to those in Figures 1 and 2 refer to components having - at least in general - the same function as such components shown in Figures 1 and 2, for which reason these 20  components will only be described in detail to the extend necessary for describing and explaining the functioning of the embodiment shown in Figures 3 and 4.

In the embodiment illustrated in Figures 3 and 4, the 25  microphone 1 is of the type having a front cavity 17 and a rear cavity 18, the arrangement being such that sound received by the front cavity 17 causes the generation of microphone output signals opposite in phase to the signals generated due to sound received 30  by the rear cavity 18. Such microphones are known as "directional" or "differential" microphones. In this

DEM 518980

7

exemplary embodiment, the feedback-suppressing connec-
tion between the location 10 in the vent canal 5 and
the microphone 1 is constituted by a tube 19, slightly
convoluted so as to have an effective acoustical
5  length equivalent to the acoustical length of the
distance a+b. The output end of the tube 19 is con-
nected to the rear cavity 18 of the microphone 1, the
connection preferably including an acoustic termina-
tion impedance 20, shown in Figure 4, to avoid reflec-
10  tions at the point of entry to the rear cavity 18,
i.e. to enable a free, progressive sound wave to
travel through the tube 19.

As the effective acoustical length of the tube 19 is
equivalent to the effective acoustical distance from
15  the location 10 to the external duct 2 of the micro-
phone 1, the sound transmitted from the location 10 to
the microphone 1 will be delayed by the same amount in
the two paths referred to, and by adjusting an acou-
stic valve 21 placed in the tube 19 it is possible to
20  attain substantially complete suppression of feedback
caused by the acoustic connection between the receiver
3 and the microphone 1.

An amplifier 22, that may be of the type conventional
to this technology, amplifies the net electrical sig-
25  nals from the microphone 2 and transmits them to the
receiver 3 in the conventional manner.

Persons skilled in this art may make numerous modifi-
cations to a hearing aid according to the present
invention without exceeding the scope of the invention
30  as set forth in the accompanying claims. Thus, the
principle of the invention may also be applied to
other types of hearing aid than the one shown, such as
e.g. a hearing aid partly worn behind the ear.

DEM 518981

8

The tube 19 shown in Figure 3 may have other shapes
than the one shown; it may e.g. be wound in a helix or
spiral or bent in zig-zag with "soft" curves, or have
other    shapes capable of giving the tube 19 or a duct
5   equivalent thereto the requisite effective acoustical
length.

The active components, such as the difference ampli-
fier 14 shown in Figure 2 and the straight amplifier
22 shown in Figure 3, possibly also the attenuator 12
10   and the delay unit 13, may be powered by suitable
batteries (not shown). In the case of two microphones
as shown in Figures 1 and 2 it is preferred that both
microphones are of the same general type, i.e. either
pressure-sensitive or velocity-sensitive.

DEM 518982

9

## CLAIMS

1. A hearing aid of the type comprising

a) a microphone (1) adapted to receive ambient sound
   (16) and to produce electrical signals correspond-

5     ing thereto,

b) an amplifier (14;22) for amplifying the electrical
   signals from said microphone and deliver the am-
   plified signals to

c) an electro-acoustical transducer (3) adapted to

10    convert said amplified signals to acoustical sig-
   nals and to direct the latter towards the user's
   eardrum or other sound-sensitive organ,

c h a r a c t e r i z e d   by

d) an additional signal path (11,9,8,12,13;19,18)

15    leading from a location (10) in a preferred sound-
   transmission path (4,5,10,15,2) between said
   transducer (3) and said amplifier (14;22), the
   transmission time (Δt) along said additional sig-
   nal path being substantially equal to the trans-

20    mission time along said preferred path for sound
   from said location (10) to said microphone (1),
   the output signals from said additional signal
   path being delivered to the input of said ampli-
   fier substantially in opposite phase and equal

25    amplitude to the signals received thereby from
   said microphone (1) and caused by sound propagated
   along said preferred path.


2. A hearing aid according to claim 1,   c h a -
   r a c t e r i z e d   in that said additional signal

30  path comprises

a) a second microphone (9) placed at or near said lo-
   cation (10),

b) an attenuator (12), the input of which is connect-
   ed to the output of said second microphone (9),

35    and

DEM 518983

10

c) an electrical signal delay unit (13), the input of
which is connected to the output of said attenua-
tor (12) and the output of which is connected to
said amplifier (14) in a sense to counteract the
5      signal from said first-mentioned microphone (1)
caused by sound propagated along said preferred
path.

3.      A hearing aid according to claim 2, c h a -
r a c t e r i z e d  in that said amplifier (14) is a
10  difference amplifier with two inputs, one of which is
connected to the output of said first-mentioned micro-
phone (1) and the other of which is connected to the
output of said delay unit (13).

4.      A hearing aid according to claim 1, c h a -
15  r a c t e r i z e d  in that said additional path com-
prises a tube (19) leading from said location (10) to
an acoustical input (18) in said microphone (1) adapt-
ed to cause the generation of signals opposite in
phase to the signals generated in response to said
20  ambient sound.

5.      A hearing aid according to claim 4, c h a -
r a c t e r i z e d  in
a) that said microphone (1) is of the type having a
front cavity (17) and a rear cavity (18), sound
25     received in the two cavities producing signals of
opposite phase in the output of the microphone,
and
b) that one of said cavities is acoustically connect-
ed to the surrounding atmosphere, while the other
30     cavity is acoustically connected to the output end
of said tube (19).

6.      A hearing aid according to claim 4 or 5, c h a-

DEM 518984

11

r a c t e r i z e d  in that  the output end of  said
tube (19) is provided with an acoustical impedance-
matching element, such as an acoustical resistance
(20), placed in an aperture in the wall of said tube.

5  7.    A hearing aid  according to  any one or any  of
the claims 4 to 6,  c h a r a c t e r i z e d  in that
said tube (19) is provided with an adjustable acousti-
cal valve (21).

8.    A hearing aid  according to  any one or any  of
10 the claims 1 to 7,  c h a r a c t e r i z e d   in
    a) that it constitutes a so-called in-the-ear hearing
        aid, being adapted to be placed in the external
        meatus of the human ear and in which
    a1) said first-mentioned microphone (1) is placed with
15      a sound-receiving duct or cavity substantially
        directly connected to the atmosphere,
    a2) said  electro-acoustical transducer (3)  is placed
        with a sound-producing output duct or cavity di-
        rected inwardly in said external meatus, and
20 a3) a vent canal (5)  connecting  the portion of  said
        meatus lying interior of the hearing aid to the
        atmosphere extends through the body of the hearing
        aid, and
    b) that said location (10)  is  located in  said vent
25      canal (5).

DEM 518985

A hearing aid, especially of the in-the-ear type.

ABSTRACT OF THE INVENTION

In a hearing aid with a microphone (1), an amplifier
(6) and a receiver (3) supplying amplified sound to
the user, the novel feature consists in a second
signal path comprising a feedback-suppressing micro-
phone (9), placed at a location to receive feedback-
causing sound from the receiver (3), the output of
said microphone (9) being suitably attenuated (12) and
delayed (13) by an amount $\Delta t$ corresponding to the
effective acoustical distance a+b between the second
microphone (9) and the main microphone (1) and
supplied to a difference amplifier (14) in opposition
to the signal from the main microphone (1). In this
manner, the component of the signal from the main
microphone (1) likely to cause positive feedback or
"howling" is substantially cancelled out. The inven-
tion is especially suitable for use in a hearing aid
of the in-the-ear (ITE) type.

In another embodiment (not shown), the feedback-
suppressing signal path is an acoustical path compris-
ing a tube leading to the rear cavity in a microphone
of the directional or differential type.


(It is suggested that figure 2 be published with the
abstract).

DEM 518986



*Fig.1*



*Fig.2*

DEM 518987



*Fig.3*

*Fig.4*

DEM 518988

**Bundesrepublik Deutschland**
**Federal Republic of Germany**

# Vollmacht – Power of Attorney

Dem Patentanwalt – Den Patentanwälten

The Patent Attorney(s)

**Dipl.-Phys. Dr. Gerhart Manitz – Dipl.-Ing., Dipl.-Wirtsch.-Ing. Manfred Finsterwald**
**Dipl.-Phys. Hanns-Jörg Rotermund – Dipl.-Chem. Dr. Heliane Heyn**

Robert-Koch-Straße 1 - 8000 München 22

wird hiermit in Sachen

is (are) hereby appointed in the matter of

Vertretervollmacht erteilt für das Anmelde- und Schutzbewilligungsverfahren, für das erteilte bzw. eingetragene Schutzrecht sowie für das Einspruchs-, Nichtigkeits-, Zwangslizenz- oder Löschungsverfahren vor dem Deutschen Patentamt, dem Bundespatentgericht, den zuständigen Registerbehörden für Geschmacksmuster und dem Bundesgerichtshof. Der (Die) Bevollmächtigte(n) ist (sind) berechtigt, Untervollmachten zu erteilen.

Auf Grund dieser Vollmacht ist er (sind sie) insbesondere zu folgenden Rechtsgeschäften und Verfügungen ermächtigt: Alle Mitteilungen, Bescheide und Beschlüsse des Patentamtes und der Gerichte in Empfang zu nehmen, Rechtsmittel oder Rechtsbehelfe einzulegen und zurückzunehmen, Vergleiche abzuschließen, auf die Anmeldung oder das Schutzrecht ganz oder teilweise zu verzichten, die Beschränkung des Patentes zu beantragen, eine Lizenzbereitschaftserklärung abzugeben oder einen von einem Gegner erhobenen Anspruch anzuerkennen, in Warenzeichen- und Markensachen Widerspruch gegen die Löschung des Zeichens oder Aberkennung des Schutzes der Marke und gegen die Eintragung anderer Zeichen sowie gegen die Schutzbewilligung für andere IR-Marken zu erheben und die Löschung bzw. Schutzentziehung anderer Zeichen und für andere IR-Marken zu beantragen, gestellte Anträge zurückzunehmen, Zahlungen für den Auftraggeber in Empfang zu nehmen, Strafanträge zu stellen.

(Nur bei ausländischen Vollmachtgebern:) Durch diese Vollmacht ist (sind) der Patentanwalt (die Patentanwälte) zum Vertreter gemäß § 25 des Patentgesetzes, § 20 des Gebrauchsmustergesetzes und § 35 des Warenzeichengesetzes bestellt.

Erfüllungsort für alle Ansprüche aus dem der Vollmacht zugrunde liegenden Rechtsverhältnis und vereinbarter Gerichtsstand ist der Ort der Kanzlei des Patentanwaltes (der Patentanwälte).

Die Vollmacht gilt auch für einen Praxisverweser (Treuhänder, Abwickler), solange sie diesem gegenüber nicht widerrufen wird.

to act for me/us in proceedings concerning applications, registrations, granted or registered industrial or intellectual property rights, and in proceedings concerning opposition, nullity, compulsory license, rectification, revocation or cancellation in the German Patent Office, before the Federal Patent Court, the Registration Authorities for Designs and before the Federal Court of Justice. The authorized agent(s) is (are) authorized to grant powers of substitution.

By virtue of this authorization he is (they are) especially empowered to carry out the following legal transactions and disposals: to receive all communications, official actions and decisions of the Patent Office and the Courts; to lodge or withdraw legal measures or legal remedies; to conclude agreements; to fully or partially disclaim the application or the property right; to apply for the restriction of a patent; to deliver a declaration of "readiness to license" or to acknowledge a claim raised by an opposing party; in matters of trade marks to contest an application for the cancellation or revocation of an entry in the Register in respect of a trade mark, to enter opposition against the registration of other trade marks including internationally registered marks, and to apply for the cancellation or revocation of an entry in the Register in respect of other trade marks including internationally registered marks; to receive payments on behalf of the client(s); and to demand penalties.

(For foreign clients only:) By this Authorization, the Patent Attorney(s) is (are) appointed as representative(s) in accordance with § 25 of the Patent Law, § 20 of the Utility Model Law and § 35 of the Trade Mark Law.

The place of settlement and the agreed court for all claims arising out of the legal relationship existing by virtue of the Power of Attorney are at the location where the office of the Patent Attorney(s) is situated.

The power is also extended to an administrator (trustee, liquidator) of the office of the Patent Attorney(s) unless revoked.

Espergærde

Espergærde d. 18.4.89.

Ort/Place; Datum/Date

civ.ing. Søren Weinrich

OTICON A/S    Søren Weinrich

(Bei Personen: Namen und Vornamen voll ausschreiben, bei Firmen genaue, eingetragene Firmenbezeichnung angeben. Keine Beglaubigung erforderlich.)

(First names and surnames of individual persons are to be written in full; corporate bodies are to sign in the form in which they are registered. No legalization.)

DEM 518989

Bestell-Nr. PAK 01
Rechtsakt vetteilen!
Carl Heymanns Verlag KG, 5 Köln 1, Gereonstr. 18-32

## ASSIGNMENT OF PATENT APPLICATION

WHEREAS,
Soren WEINRICH, of Svanevej 11, 3060 Espergaerde, DENMARK (hereinafter referred to as "ASSIGNOR") have/has invented certain new and useful improvements in
A Hearing Aid, Especially of the In-the-Ear Type for which an application for Letters Patent of the United States has been filed on March 13, 1989
AND WHEREAS
OTICON A/S, whose post office address is Eriksholm, Kongevejen 243, DK-3070 Snekkersten, DENMARK (hereinafter referred to as "ASSIGNEE") is desirous of acquiring the entire right, title and interest in and to said application and the inventions and improvements therein disclosed, for the United States of America,
NOW THEREFORE in consideration of the sum of ten U.S. dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the ASSIGNOR does hereby assign, sell, transfer and set over unto the ASSIGNEE the entire right, title and interest in and to said application and the inventions and improvements therein disclosed, for the United States and any Letters Patent which may issue therefor in the United States and all divisions, continuations, re-issues, renewals and/or extensions thereof, said ASSIGNEE to have and to hold the interests herein assigned to the full ends of the terms of said Letters Patent and any and all divisions, continuations, re-issues, renewals and/or extensions thereof, respectively, as fully and entirely as the same would have been held and enjoyed by the ASSIGNOR had this assignment not been made.
And for the consideration aforesaid, ASSIGNOR agrees that ASSIGNOR will communicate to said ASSIGNEE or the representatives thereof any facts known to ASSIGNOR respecting the inventions and improvements of the said United States application and will, upon request, but without expense to ASSIGNOR, testify in any legal proceedings, sign all lawful papers, execute all divisional, continuation, re-issue, renewal and/or extension applications, make all rightful oaths, and generally do all other and further lawful acts, deemed necessary or expedient by said ASSIGNEE or by counsel for said ASSIGNEE, to assist or enable said ASSIGNEE to obtain and enforce full benefits from the rights and interest herein assigned.
This assignment shall be binding upon the ASSIGNOR's heirs, executors, administrators, successors and/or assigns, and shall inure to the benefit of the heirs, executors, administrators, successors, and/or assigns, as the case may be, of the ASSIGNEE.
The Commissioner of Patents is requested to issue such Letters Patent in accordance with this assignment.

Signature: X _Soren Weinrich_

Name:  Søren Weinrich

X   Date:  18. 4. 89.

**DEM 518990**