IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENERGY TRANSPORTATION GROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 05-422 (GMS) |
| ) | |
| SONIC INNOVATIONS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' ANSWERING BRIEF IN
OPPOSITION TO PLANTIFF'S MOTION FOR
PREJUDGMENT AND POST-JUDGMENT INTEREST**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200
dreid@mnat.com

OF COUNSEL:

SUGHRUE MION, PLLC
David J. Cushing
William H. Mandir
Carl J. Pellegrini
Brian K. Shelton
2100 Pennsylvania Ave., N.W.
Suite 800
Washington, DC 20037
202.293.7060

*Attorneys for Widex A/S and Widex Hearing Aid Co. Inc.*

May 9, 2008

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200
mgraham@mnat.com
jparrett@mnat.com

OF COUNSEL:

John M. Romary
C. Gregory Gramenopoulos
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Ave., N.W.
Washington, DC 20001-4413
202.408.4000

*Attorneys for William Demant Holding A/S, WDH Inc., Oticon A/S, Oticon, Inc., Bernafon AG, and Bernafon LLC*

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................2

    I.    ETG'S UNDUE DELAY IN INSTITUTING SUIT WARRANTS
        DENIAL OF PREJUDGMENT INTEREST ........................................................2

    II.   ETG'S PREJUDGMENT INTEREST CALCULATIONS ARE
        OBJECTIVELY FLAWED .....................................................................................3

        A.    ETG Uses the Wrong Formula for Quarterly Compounding
            Interest ..........................................................................................................4

        B.    ETG Uses the Wrong Start Date for the Date of First
            Infringement ................................................................................................4

        C.    ETG's "Equal Spacing" Method Unfairly Results in a
            Premature and Excessively Large Award of Prejudgment
            Interest ..........................................................................................................5

        D.    ETG Uses the Wrong Historical Prime Rate Numbers ...............................7

        E.    ETG Fails to Account for Corporate Income Tax Effects ..........................7

        F.    ETG Fails to Employ the Highest-Quality Debt Rate ................................8

    III.  THE COURT SHOULD ADOPT THE TREASURY BILL RATE .....................10

    IV.  ETG'S ENTITLEMENT TO POST-JUDGMENT INTEREST IS
        SET BY STATUTE ...............................................................................................12

CONCLUSION ......................................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*800 Adept, Inc. v. Murex Secs., Ltd.*,
   No. 02-1354, 2007 WL 1101238 (M.D. Fla. 2007)................................................................2

*Ajinomoto Co. v. Archer-Daniels-Midland Co.*,
   No. 95-218, 1998 U.S. Dist. LEXIS 3833 (Mar. 13, 1998).................................................10

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
   246 F.3d 1336 (Fed. Cir. 2001).............................................................................................2

*Datascope Corp. v. SMEC, Inc.*,
   879 F.2d 820 (Fed. Cir. 1989) (affirming district court's selection of prejudgment
   interest set at the Treasury bill rate of 28 U.S.C. § 1961).................................................10

*Electro Sci. Indus., Inc. v. Gen. Scanning, Inc.*,
   247 F.3d 1341 (Fed. Cir. 2001).............................................................................................8

*General Motors Corp. v. Devex Corp.*,
   461 U.S. 648 (1983).........................................................................................................2, 7

*GNB Battery Techs., Inc. v. Exide Corp.*,
   886 F. Supp. 420 (D. Del. 1995).........................................................................................10

*Group One Ltd. v. Hallmark Cards, Inc.*,
   407 F.3d 1297 (Fed. Cir. 2005).............................................................................................2

*IPPV Enterprises, LLC v. EchoStar Communications Corp.*,
   No. 99-577, 2003 WL 723260 (D. Del. Feb. 23, 2003) (Jordan, J.).....................................5

*Joy Techs., Inc. v. Flakt, Inc.*,
   954 F. Supp. 796 (D. Del. 1996)...................................................................................10, 12

*Kaufman Co. v. Lantech, Inc.*,
   926 F.2d 1136 (Fed. Cir. 1991).............................................................................................8

*Laitram Corp. v. NEC Corp.*,
   115 F.3d 947 (Fed. Cir. 1997)......................................................................................... 10-11

*Mars, Inc. v. Conlux USA Corp.*,
   818 F. Supp. 707 (D. Del. 1993).........................................................................................10

*Phillips Petroleum Co. v. Rexene Corp.*,
   No. 90-208, 1997 U.S. Dist. LEXIS 18460 (D. Del. Sept. 4, 1997)...................................10

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,
   862 F.2d 1564 (Fed. Cir. 1988)...........................................................................................9

*Symbol Techs., Inc. v. Proxim Inc.*,
   No. 01-801, 2004 U.S. Dist. LEXIS 14949 (July 28, 2004)....................................10

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
   939 F.3d 1540 (Fed. Cir. 1991)......................................................................2, 11

**STATUTES**

28 U.S.C. § 1961(a) ............................................................................................2, 12

35 U.S.C. § 284.........................................................................................................2

**OTHER AUTHORITIES**

Roy J. Epstein, "Prejudgment Interest Rates In Patent Cases: Don't Compound An
   Error," ...............................................................................................................9

**INTRODUCTION**

Defendants Oticon A/S, Oticon, Inc., Bernafon AG, Bernafon, LLC, WDH, Inc., William Demant Holding A/S ("Demant"), Widex A/S, and Widex Hearing Aid Co., Inc. ("Widex") (collectively the "Defendants") oppose the motion by Plaintiff Energy Transportation Group, Inc. ("ETG") for an award of prejudgment interest.  As discussed in detail below, ETG's undue delay in filing suit warrants a denial of prejudgment interest in this case.  Should the Court nonetheless decide that some award of prejudgment interest is appropriate, the particular award sought by ETG is plainly excessive.  ETG not only relies on an interest rate that is overly generous under the circumstances, but its own calculations are objectively flawed, based on erroneous assumptions and inaccurate data that result in a prejudgment interest award that is inflated and grossly overcompensates ETG.

In support of this opposition, Defendants have submitted a declaration (filed herewith) from its damages expert, Dr. Jonathan D. Putnam, that not only details the errors present in ETG's calculations but also recalculates the proposed award by correcting the identified errors and employing a more appropriate interest rate.  As outlined in Dr. Putnam's declaration and discussed herein, ETG's calculations result in a prejudgment interest award that is more than 50% higher than can be legitimately supported.  Correction of all the errors in ETG's analysis would reduce ETG's prejudgment interest claim against the Defendants by at least $3.4 million.  (Putnam Decl. at ¶ 7.)  Moreover, various economic indicia suggest that the Court's adoption of the three-month Treasury bill rate would be more appropriate under the particular circumstances of this case.  Thus, if the Court decides to award prejudgment interest, the award should total no more than $1.792 million against Demant and $1.870 million against Widex.  (Putnam Decl. at ¶ 10.)

Finally, with respect to post-judgment interest, Defendants do not contest ETG's entitlement to post-judgment interest at the rate set by 28 U.S.C. § 1961(a). Defendants, however, reserve the right to challenge the accuracy of ETG's post-judgment calculations when they are submitted to the Court.

**ARGUMENT**

**I.    ETG'S UNDUE DELAY IN INSTITUTING SUIT WARRANTS DENIAL OF PREJUDGMENT INTEREST**

The Supreme Court in *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656 (1983), made clear that 35 U.S.C. § 284 does not "requir[e] the award of prejudgment interest whenever infringement is found." Instead, the Court has the discretion "to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit," or if other appropriate circumstances are present.[1]

The Defendants began selling the Accused Products during the fourth quarter of 2001,[2] yet ETG delayed filing suit until June 23, 2005, nearly four years later. The record is devoid of any justification for such an extreme delay. In fact, Mr. Kimball Chen, the Chairman of ETG, admitted at trial that the Defendants started selling the Accused Products during the

---

[1]    *Id.* at 656-57; *see also Group One Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1308 (Fed. Cir. 2005) (affirming that the district court did not abuse its discretion in declining to award prejudgment interest on infringement that took place during a twenty-month period, where the patent had expired for failure to pay maintenance fees and the patentee delayed in seeking to revive its patent); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1361-62 (Fed. Cir. 2001) (affirming denial of prejudgment interest where patentee delayed for over two years in bringing suit); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.3d 1540, 1546 (Fed. Cir. 1991) (affirming denial of prejudgment interest during the period that litigation was stayed at patentee's request); *800 Adept, Inc. v. Murex Secs., Ltd.*, No. 02-1354, 2007 WL 1101238, at *3-4 (M.D. Fla. 2007) (denying prejudgment interest due to patentee's three year and nine month delay in asserting its infringement claim).

[2]    (*See* Putnam Decl. at ¶ 4, n.1.) ETG's brief asserts that the Defendants began selling the Accused Products as of January 1, 2001 (ETG Br. at 2), which would only increase ETG's delay in filing suit by an additional six months or more.

"same time frame" that EKMS was hired by Audimax, ETG's predecessor. (Chen, Tr. 439:18-440:2 (direct) (Attachment A)[3] Further, a 2002 report issued by EKMS confirms that the Defendants were identified as "targets" as early as May or June 2002. (DX 1610 at MP00000031 (attached to D.I. 542).) Had ETG filed suit in a timely fashion upon learning of the Defendants' alleged infringement, more than half of the period for which prejudgment interest is now sought would have been avoided, the volume of accused sales would have been substantially reduced, and the prime interest rate advocated by ETG on average would have been significantly lower. Moreover, by delaying the filing of the suit until after the Defendants' products became entrenched in the market and shortly before the expiration of the asserted patents,[4] ETG left the Defendants with no practical alternative to mitigate the damages in this case, such as voluntarily suspending their sales or exploring noninfringing alternatives.

Instead, ETG seeks to recover prejudgment interest for a delay in judgment that was entirely of its own making. Principles of equity and fairness dictate that the Court should therefore deny ETG's request for prejudgment interest in this case.

## II. ETG'S PREJUDGMENT INTEREST CALCULATIONS ARE OBJECTIVELY FLAWED

Assuming *arguendo* that an award of some amount of prejudgment interest is appropriate, regardless of the interest rate adopted by the Court, the methodology employed by ETG's damages expert, Mr. Terry Musika, is fatally flawed. In fact, as detailed in Dr. Putnam's

---

[3] Trial exhibits and trial transcript excerpts cited herein, unless otherwise indicated, are attached to the accompanying Appendix Of Exhibits And Trial Transcript Excerpts To Defendants' Answering Brief In Opposition To Plaintiff's Motion For Prejudgment And Post-Judgment Interest. Attachment A includes all pages of the trial transcript referenced herein.

[4] U.S. Patent No. 4,731,850 expired in June 2006, and U.S. Patent No. 4,879,749 expired in November 2006.

declaration, Mr. Musika's prejudgment interest calculations contain no less than six fundamental errors.

### A. ETG Uses the Wrong Formula for Quarterly Compounding Interest

Mr. Musika assumes that quarterly compounding of the annual interest rate would be appropriate. (Musika Decl. at ¶ 7.) Mr. Musika, however, employed an incorrect formula for converting an annual interest rate into a quarterly rate, thus overstating the annual rate by nearly a quarter of a percentage point. (Putnam Decl. at ¶ 15, n.12.) Use of the correct formula for within-year compounding would reduce Demant's and Widex's prejudgment interest obligations by about $137,000 and $128,000, respectively. (Putnam Decl. at ¶ 15, Table 1 (Correction 1).)

### B. ETG Uses the Wrong Start Date for the Date of First Infringement

ETG erroneously contends that the beginning date of the Defendants' alleged infringement was January 1, 2001. (ETG Br. at 2; Musika Decl. at ¶ 6.) The documents cited in support of the royalty base Mr. Musika ultimately advocated at trial show that sales of the Accused Products for Demant began in the fourth quarter of 2001. (JX 36, JX 40.)[5] The sales of Accused Products for Widex likewise began in the fourth quarter of 2001. (JX 199.)[6] (*See* Putnam Decl. at ¶¶ 5, 16, n.1.)

It should be apparent that the Defendants cannot be liable on January 1, 2001, for sales of allegedly infringing products that did not take place until the fourth quarter of 2001. Nor can the Defendants be liable for the sales of infringing products sold by other entities prior to the

---

[5] Mr. Musika's original damages report had the hypothetical negotiation between the parties occurring in 1999, but that was for sales of products that are no longer involved in the case.

[6] Although JX 199 was not referenced by Mr. Musika at trial, it was among the materials considered by Mr. Musika for his expert report on damages.

fourth quarter of 2001 that are no longer parties to the lawsuit. Consequently, the earliest start date in Mr. Musika's calculations should have been the fourth quarter of 2001.

ETG thus improperly inflates the calculation of prejudgment interest because Mr. Musika increases, by nine months, the interval over which prejudgment interest should be calculated. If, instead, twenty-one quarters rather than twenty-four quarters are employed, prejudgment interest owed by Demant would decrease by an additional $386,000 and the amount owed by Widex would decrease by an additional $362,000. (Putnam Decl. at ¶ 17, Table 1 (Correction 2).)

### C. ETG's "Equal Spacing" Method Unfairly Results in a Premature and Excessively Large Award of Prejudgment Interest

Mr. Musika advocates the use of a quarterly royalty payment apportionment model approved by this Court in *IPPV Enterprises, LLC v. EchoStar Communications Corp.*, No. 99-577, 2003 WL 723260, at *3 (D. Del. Feb. 23, 2003) (Jordan, J.). The *IPPV Enterprises* Court, however, never suggested that such approach was to be routinely applied in all cases, and there are several reasons why such an approach would be highly inappropriate in this particular case.

For example, the limited period of infringement involved in the *IPPV Enterprises* case was less than two years, involving only seven quarters. Presumably, there was little variability in either the level of infringement or the applicable interest rate during that period of time, making the "equal spacing" method in that case likely one of administrative convenience. Here, in contrast, the period of infringement is spread out over twenty-one quarters (or six full years under ETG's approach), over which there was great variability in the prime interest rate. (*See* Putnam Decl. at Table 2.) Moreover, the Defendants' sales were anything but constant over the period in question, being the smallest in the year 2001 and, for Demant, the largest in 2006.

- 5 –

This can be most easily appreciated by the bar graph in Figure 1 of Dr. Putnam's Declaration, which plainly demonstrates that the running royalty on Demant's actual sales was on an essentially upwardly sloping curve. (Putnam Decl. at Fig. 1.)

Indeed, the majority of Demant's allegedly infringing sales took place during the last three years at issue. Although Widex's sales were more variable, they too were skewed toward the second half of the period in question. ETG's approach, however, would ignore the factual record regarding the Defendants' actual sales and replace it with a fictitious model where royalty payments on sales were equally spaced or fixed over time. This permits ETG to accelerate the royalty payments to an earlier point in time to artificially increase the amount of compounded interest owed on them. (Putnam Decl. at ¶ 20.) In other words, ETG seeks to recover prejudgment interest on allegedly infringing sales ***before the time that many of them actually took place***.

Another problem with ETG's "equal spacing" method is that it goes directly counter to the approach ETG advocated at trial. At no time did ETG ever present any argument or evidence that the hypothetical royalty negotiation between the parties would contemplate fixed, equally spaced royalty payments or that essentially constant levels of infringing sales would have been assumed. On the contrary, Mr. Musika testified at trial that damages should be calculated as a running royalty on actual sales. (Musika, Tr. at 851:14-856:18 (direct).) Likewise, ETG's counsel sought admissions to support the award of a running royalty. (Donohoe, Tr. at 1845:14-1847:19 (cross).) Consequently, ETG is now estopped from arguing a different theory of damages upon which it seeks to recover prejudgment interest.

As ETG itself admits at page 3 of its brief, the purpose of an award of prejudgment interest is to restore the patentee to the position it would have been in had a

reasonable royalty been paid at the time of the hypothetical negotiation, *Gen. Motors*, 461 U.S. at 655, and not to provide it with an unfair windfall.

When prejudgment interest is computed using the jury's royalty on the Defendants' actual sales, rather than Mr. Musika's equal spacing method over the same period of time, prejudgment interest falls by an additional $634,000 for Demant and by an additional $67,000 for Widex. (Putnam Decl. at ¶ 21, Table 1 (Correction 3).)

### D. ETG Uses the Wrong Historical Prime Rate Numbers

Although Mr. Musika purports to have used "the prime rate as it is promulgated by the Board of Governors of the Federal Reserve Board" (Musika Decl. at ¶ 4), the numbers employed by Mr. Musika in his attached schedules do not correspond with the rates reported by the Federal Reserve. (Putnam Decl. at ¶¶ 22-23.) In fact, the Federal Reserve does not report interest rates on a quarterly basis, so quarterly rates must be computed using the reported monthly data. (*Id*. at ¶¶ 23-24.)

As reported in Dr. Putnam's declaration, when the geometric mean of the monthly rates reported by the Federal Reserve over each quarter are calculated, the results are at a variance with Mr. Musika's numbers—sometimes they are lower and sometimes they are higher. (*Id*. at ¶ 24.) On balance, however, use of the correct interest rates would additionally reduce Demant's prejudgment interest obligation by $32,000 and Widex's prejudgment interest obligation by $49,000. (*Id*. at ¶ 24, Table 1 (Correction 4).)

### E. ETG Fails to Account for Corporate Income Tax Effects

Since the purpose of prejudgment interest is to make the patentee whole, the Court must consider the financial position that ETG would have been in had it actually received the damages award in the form of hypothetical royalty payments. After receiving the quarterly royalty payments, ETG would have owed quarterly corporate income taxes on those payments.

- 7 –

Payment of those taxes would have reduced the balance on which interest would be computed in the following quarter. By allowing interest to compound at the pre-tax rate and letting ETG instead defer taxes until the damage award is made would provide ETG with an unwarranted windfall. (Putnam Decl. at ¶¶ 25-27.)

If, instead, one would use the after-tax rate and "gross up" the result, this would put ETG in a position that it would have occupied had it been receiving and paying taxes on the royalty payments over time. Such a correction would further reduce Demant's prejudgment interest liability by $73,000 and Widex's prejudgment interest liability by $91,000. (*Id*. at ¶ 27, Table 1 (Correction 5).)[7] Such an approach has been approved by the Federal Circuit. *See Electro Sci. Indus., Inc. v. Gen. Scanning, Inc.*, 247 F.3d 1341, 1354 (Fed. Cir. 2001) (affirming district court's prejudgment interest award that differed from patentee's expert's figure because district court's award properly accounted for tax consequences on principal damages award).

### F. ETG Fails to Employ the Highest-Quality Debt Rate

As ETG acknowledges at page 3 of its brief, the selection of the rate to be used to derive the prejudgment interest award is entirely within the discretion of the Court. *See Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1144 (Fed. Cir. 1991). Although this Court has awarded prejudgment interest based on the prime rate on occasion, it has never held that the prime rate ***must*** be used. Indeed, the Federal Circuit has made it clear that it has never "establish[ed] any rule that prejudgment interest at the prime rate should be awarded as a matter of course in every case." *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579-80 (Fed. Cir. 1988).

---

[7] Dr. Putnam conservatively employed a 25% marginal tax rate. It is entirely possible that ETG faced the standard marginal rate of 38%. (Putnam Decl. at ¶ 27, nn.24-25.)

As discussed below in Section C of this brief, this Court has frequently also awarded prejudgment interest based on Treasury bill rates. Moreover, the prime rate is not the only "risky interest rate" at the Court's disposal. In fact, as discussed in Dr. Putnam's declaration, the "prime rate" is not the usual rate reserved for most credit-worthy corporate borrowers. (Putnam Decl. at ¶ 29.) Rather, the actual rate paid by a corporate borrower depends on its credit rating set by an independent agency, such as Moody's or Standard & Poor's. *Id.*

In this case, ETG has repeatedly relied upon the Defendants' high profitability (with its inherent low risk) to support a high royalty rate and a large damages award. (*See*, *e.g.*, Musika, Tr. 851:7-8, 864:8-865:5, 876:9-877:20 (direct), Steinberg, Tr. 2209:10-22 (closing); (Putnam Decl. at ¶¶ 30-32.) Viewing the delayed payment of royalties to the Plaintiff as a loan from ETG to the Defendants, such a loan was made to high-quality corporate debtors who posed unusually low risks to ETG and who pay interest at corresponding lower rates. (Putnam Decl. at ¶ 33.) If a risky rate were to be adopted by the Court, the appropriate interest rate for low-risk corporate debtors such as Demant and Widex would be the Moody's Aaa rate, not the prime rate. (*Id.*; *see also* Roy J. Epstein, "Prejudgment Interest Rates In Patent Cases: Don't Compound An Error," ABA IPL Newsletter 24(2) (Winter 2006) (Attachment B) (noting that the use of the prime rate for prejudgment interest is rapidly becoming anachronistic and advocating use of Federal Reserve data on actual rates for commercial and industrial loans for defendants with above-average creditworthiness).)

Moody's Aaa rate is also reported by the Federal Reserve. (Putnam Decl. at ¶ 33.) Substitution of that rate for the prime rate in Mr. Musika's calculations would reduce the amount Demant would owe by an additional $766,000. (*Id.* at ¶ 33, Table 1 (Correction 6).) For Widex, the reduction would be $704,000. *Id.*

**III.     THE COURT SHOULD ADOPT THE TREASURY BILL RATE**

If any prejudgment interest is to be awarded in this case, Defendants contend that it is well within the discretion of this Court to award prejudgment interest at the risk-fee Treasury bill rates.  *See, e.g., Symbol Techs., Inc. v. Proxim Inc.*, No. 01-801, 2004 U.S. Dist. LEXIS 14949, at *29 (July 28, 2004); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, No. 95-218, 1998 U.S. Dist. LEXIS 3833, at *168 (Mar. 13, 1998); *Phillips Petroleum Co. v. Rexene Corp.*, No. 90-208, 1997 U.S. Dist. LEXIS 18460, at *83 (D. Del. Sept. 4, 1997), supplemental opinion, 1997 U.S. Dist LEXIS 18459 (Sept. 9, 1997); *Joy Techs., Inc. v. Flakt, Inc.*, 954 F. Supp. 796, 808 (D. Del. 1996); *GNB Battery Techs., Inc. v. Exide Corp.*, 886 F. Supp. 420, 442 (D. Del. 1995); *see also Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) (affirming use of Treasury bill interest rate as not an abuse of discretion); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 829 (Fed. Cir. 1989) (affirming district court's selection of prejudgment interest set at the Treasury bill rate of 28 U.S.C. § 1961).

To the extent that a risky prejudgment interest rate has been awarded by this Court in the past, the stated rationale for doing so has been that "***[i]n this case*** the cost of borrowing money—and not the rate of return on investing money—provides a better measure of the harm [the patentee] suffered as a result of the use of money over time."  *Mars, Inc. v. Conlux USA Corp.*, 818 F. Supp. 707, 720-21 (D. Del. 1993) (emphasis added).  Clearly, the selection of the appropriate rate is a case-by-case determination.

Although the Federal Circuit indicated in *Uniroyal*, 939 F.2d at 1545, that a patentee is not required to demonstrate that it borrowed at the prime rate in order for the appellate court to affirm an award of prejudgment interest at the prime rate, the Federal Circuit subsequently made clear that evidence of the patentee's borrowing habits are indeed highly relevant to the analysis.  Thus, in *Laitram*, the Federal Circuit affirmed a district court's use of

the Treasury bill interest rate as not being an abuse of discretion absent evidence that the patentee "borrowed money at a higher rate, what that rate was, or that there was a causal connection between any borrowing and the loss of the use of the money awarded as a result of [the defendant's] infringement."  115 F.3d at 955.

Neither ETG in its brief nor Mr. Musika in his declaration provides any reason why the adoption of the prime rate would be either more appropriate or necessary given the particular facts in this case.  Certainly ETG has submitted no evidence that ETG had to borrow funds to replace what it otherwise would have received from the Defendants (known as "liquidity risk").  In fact, ETG has not asserted—let alone proved—any causal connection between any borrowing and the loss of the use of the money awarded as a result of the Defendants' alleged infringement.  *Id.*  Nor has ETG put forward any evidence that it or its predecessor, Audimax, would have used its damages award to pay down any alleged debt.  In other words, had ETG or Audimax received its damages award in the equally spaced, fixed quarterly payments it now seeks, the record provides no basis to conclude how those funds would have been used.

Unlike many patentees in the reported cases, ETG and Audimax are non-producing entities.  ETG and Audimax did not compete with the Defendants with regard to the sale of patented hearing aids and, therefore, did not bear marketplace risk due to the lack of funds (known as "competitive risk").  Moreover, ETG unduly delayed and waited nearly four years after the date that infringement allegedly began to bring suit against the Defendants.  This lack of urgency on the part of ETG is compelling evidence that the time value of money for ETG was relatively low.  (Putnam Decl. at ¶ 38.)

Had ETG instead sued the Defendants in 2002, its recovery of interest would have been limited to less than 10% of the damages award.  By waiting until mid-2005, ETG (using the

erroneous calculations and methodology discussed above) seeks interest payments equal to more than 30% of the total damages award. (*Id*. at ¶ 39.) To award interest at a higher rate would thus provide ETG with a windfall on account of its delay when the higher rate is not economically justified.

As discussed in Dr. Putnam's declaration, a risk-free rate such as the three-month Treasury bill rate published by the Federal Reserve would achieve the legal objective of making the patentee whole on account of the delay in receiving royalty payments from the Defendants. (Putnam Decl. at ¶¶ 37-40.) Accordingly, if prejudgment interest is awarded at all, the proper rate for such interest is the Treasury bill rate, which would adequately compensate ETG for the lost investment income it might have earned on its damages award. *See*, *e.g.*, *Joy Techs.*, 954 F. Supp. at 808. Employing the published Treasury bill rates along with corrections 1-5 in place of the prime rate employed by Mr. Musika would result in a prejudgment interest liability of $1.792 million for Demant and $1.870 million for Widex. (*Id*. at ¶ 40.)

## IV.     ETG'S ENTITLEMENT TO POST-JUDGMENT INTEREST IS SET BY STATUTE

As stated above, the Defendants do not contest ETG's entitlement to post-judgment interest at the rate set by statute. 28 U.S.C. § 1961(a). Defendants, however, reserve the right to challenge the accuracy of ETG's post-judgment calculations when they are submitted to the Court.

Defendants have elsewhere briefed their opposition to ETG's request for enhanced damages and attorneys' fees. In the event that the Court should award some form of punitive damages, post-judgment interest should not begin to run until the date of the order granting such punitive damages. *See McKnight v. Circuit City Stores, Inc.*, No. 99-1007 & 00-2402, 2001 U.S. App. LEXIS 13778, at *23-24 (4th Cir. June 19, 2001).

**CONCLUSION**

For the reasons discussed herein, ETG's motion for prejudgment interest should be denied on account of its undue delay in instituting suit. If, however, the Court is inclined to award prejudgment interest, the Court should, at a minimum, award prejudgment interest with the six corrections to Mr. Musika's calculations documented by Dr. Putnam in his declaration. Furthermore, under the circumstances, the appropriate interest to be employed by the Court in this case should be the three-month Treasury bill rate published by the Federal Reserve.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr.*
_____
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
302.658.9200
mgraham@mnat.com
jparrett@mnat.com

*Attorneys for William Demant Holding A/S, WDH, Inc., Oticon A/S, Oticon, Inc., Bernafon AG, and Bernafon, LLC*

OF COUNSEL:

John M. Romary
C. Gregory Gramenopoulos
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Ave., N.W.
Washington, DC  20001-4413
202.408.4000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Donald E. Reid*
_____
Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
302.658.9200
dreid@mnat.com
jcincilla@mnat.com

*Attorneys for Widex A/S and Widex Hearing Aid Co., Inc.*

OF COUNSEL:

SUGHRUE MION, PLLC
David J. Cushing
William H. Mandir
Carl J. Pellegrini
Brian K. Shelton
2100 Pennsylvania Ave., N.W.
Suite 800
Washington, DC  20037
202.293.7060

Dated:  May 9, 2008
2322674
#1588415

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 9, 2008, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that true and correct copies of the foregoing were caused to be served via electronic mail on May 9, 2008 upon the following parties:

| | |
|---|---|
| REPRESENTING ENERGY TRANSPORTATION GROUP, INC. | Edmond D. Johnson<br>PEPPER HAMILTON LLP<br>**johnsone@pepperlaw.com** |
| | Brian M. Buroker<br>HUNTON & WILLIAMS LLP<br>**etg@hunton.com** |
| REPRESENTING WIDEX A/S AND WIDEX HEARING AID CO. INC. | Donald E. Reid<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>**dreid@mnat.com** |
| | William H. Mandir<br>SUGHRUE MION PLLC<br>**wmandir@sughrue.com** |
| | David J. Cushing<br>SUGHRUE MION PLLC<br>**dcushing@sughrue.com** |
| | Carl J. Pellegrini<br>SUGHRUE MION PLLC<br>**cpellegrini@sughrue.com** |
| | Brian K. Shelton<br>SUGHRUE MION PLLC<br>**bshelton@sughrue.com** |

| | |
|---|---|
| REPRESENTING WILLIAM DEMANT HOLDING A/S, WDH, INC., OTICON A/S, OTICON INC., BERNAFON AG, AND BERNAFON, LLC | Mary B. Graham<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>**mgraham@mnat.com;**<br>**mbgeservice@mnat.com**<br><br>John M. Romary<br>FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER<br>**john.romary@finnegan.com**<br><br>C. Gregory Gramenopoulos<br>FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER<br>**c.gregory.gramenopoulos@finnegan.com** |

The undersigned also hereby certifies that on May 9, 2008, true and correct copies of the foregoing were caused to be served by hand upon the following Delaware counsel:

Edmond D. Johnson
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, DE  19899-1709

*/s/ James W. Parrett, Jr.*
_____
James W. Parrett, Jr. (#4292)