# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENERGY TRANSPORTATION GROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 05-422 (GMS) |
| ) | |
| SONIC INNOVATIONS, INC., et al, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF ENERGY TRANSPORTATION GROUP, INC.'S,
REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION
FOR PREJUDGMENT AND POST-JUDGMENT INTEREST**

Edmond D. Johnson (No. 2257)
Matthew A. Kaplan (No. 4956)
PEPPER HAMILTON LLP
Hercules Plaza Suite 5100
1313 Market Street
Wilmington, DE 19801
Telephone: (302) 777-6500
*Attorneys for Energy Transportation Group, Inc.*

OF COUNSEL:
Marty Steinberg
HUNTON & WILLIAMS LLP
1111 Brickell Avenue , Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500

Brian M. Buroker
HUNTON & WILLIAMS LLP
1900 K Street, N.W., Suite 1200
Washington, DC 20006-1109
Telephone: (202) 955-1500

Maya M. Eckstein
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
Telephone: (804) 788-8788

Dated: May 29, 2008

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT...................................................................................................... 2

    A.   ETG Did Not Unduly Delay The Prosecution Of Its Action Against
        Defendants ............................................................................................... 2

    B.   ETG Used An Acceptable Formula For Quarterly Compounding And Used
        The Proper Prime Rate Numbers ........................................................... 5

    C.   This Court Has Approved The Apportionment Model Proposed By ETG............. 6

    D.   Defendants' Argument Regarding Corporate Tax Effects Is Flawed...................... 7

    E.   Defendants' Contention That The Moody's Aaa Rate Applies Would Be
        Unprecedented ......................................................................................... 9

    F.   The Prime Rate Is The Appropriate Rate To Apply ............................................... 9

III. CONCLUSION.................................................................................................. 10

# TABLE OF AUTHORITIES

## CASES

*Applied Elastomerics, Inc. v. Z-Man Fishing Products, Inc.*,
   521 F. Supp. 2d 1031 (N.D. Cal. 2007) ...............................................................................7

*Electro-Scientific Indus., Inc. v. Gen. Scanning, Inc.*,
   247 F.3d 1341 (Fed. Cir. 2001)..........................................................................................7, 8

*Floe International, Inc. v. Newman's Manufacturing Inc.*,
   No. 04-5120 (DWF/RLE), 2006 WL 2472112 (D. Minn. Aug. 23, 2006).............................8, 9

*General Motors Corp. v. Devex Corp.*,
   461 U.S. 648 (1983)...........................................................................................................2, 3

*IPPV Enterprises, LLC. v. EchoStar Communications Corp., No. Civ. A. 99-577*,
   2003 WL 723260 (D. Del. Feb. 27, 2003) ........................................................................2, 6, 7

*IPPV Enterprises, LLC v. Echostar Communications Corp.*,
   No. 99-577, 2003 WL 723260 (D. Del. Feb. 23, 2003) ................................................2

*Lummus Industries, Inc. v. D.M. & E. Corp.*,
   862 F.2d 267 (Fed. Cir. 1988)..............................................................................................3

*Phillips Petroleum Co. v. Rexene Corp.*,
   1997 WL 781856 (D. Del. Sept. 4, 1997) ...........................................................................9

*Tristrata Technology, Inc. v. Mary Kay, Inc.*,
   423 F. Supp. 2d 456 (D. Del. 2006) ....................................................................................4

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
   939 F.2d 1540 (Fed. Cir. 1991)............................................................................................9

*Wallace Computer Services, Inc. v. Uarco Inc.*,
   887 F.2d 1095 (Fed. Cir. Sept. 19, 1989)............................................................................4

## STATUTES

28 U.S.C. § 1961....................................................................................................................10

**I.        INTRODUCTION**

Plaintiff, Energy Transportation Group, Inc. ("ETG"), hereby files its Reply Memorandum in further support of its Motion for Prejudgment and Post-Judgment Interest (D.I. 532) and responds to the arguments put forth by Defendants, Widex A/S and Widex Hearing Aid Co., Inc. (collectively, "Widex") and William Demant Holding A/S, Oticon A/S, Oticon Inc., Bernafon AG, Bernafon, LLC, and WDH, Inc. (collectively, "Demant"), in their Answering Brief in Opposition to Plaintiff's Motion for Prejudgment and Post-Judgment Interest ("Opposition" or "Opp.") (D.I. 587).

In their Opposition, Defendants first argue that the Court should not award ETG prejudgment interest at all because ETG purportedly unduly delayed the commencement of this action.[1]  Defendants' position is untenable in light of the evidence presented to the jury demonstrating that (i) due to advances in miniaturization, Defendants did not implement the infringing technology until 2001, (ii) Defendants were aware of existence of U.S. Patent Nos. 4,731,850 (the "'850 Patent") and 4,879,749 (the "'749 Patent") (collectively, the "Patents-in-suit") well before the filing of this lawsuit, (iii) Defendants continued to infringe the Patents-in-suit despite the filing of the lawsuit, and (iv) Defendants did not obtain prelitigation opinions from outside counsel on the issue of whether Defendants infringed the Patents-in-suit.

After attempting to dispute ETG's entitlement to prejudgment interest, Defendants proffer the Declaration of Dr. Jonathan Putnam, an economist whose testimony regarding damages the jury rejected, in support of Defendants' position that ETG miscalculated prejudgment interest in various respects.  As discussed below, many of Defendants' objections, as well as Dr. Putnam's proposed "corrections," have no basis in law or fact.  Additionally, and

---

[1] Defendants do not contest ETG's entitlement to post-judgment interest.  (Opp., 12.)

1

as more specifically set forth in the Reply Declaration of Terry L. Musika ("Reply Musika Decl."), attached to the Declaration of Daniel G. Vivarelli as Exhibit A, the methodologies and calculations Mr. Musika used to arrive at ETG's prejudgment interest award are widely accepted and consistent with banking and lending practices.

Defendants also object to the prejudgment interest apportionment model proposed by ETG in its Memorandum of Law in Support of its Motion for Prejudgment and Post-Judgment Interest ("Memorandum") (D.I. 537). Specifically, although conceding its prior use and approval by the Court (*see* Opp., 5), Defendants attack the model for awarding prejudgment interest used by this Court in *IPPV Enterprises, LLC v. Echostar Communications Corp.*, No. 99-577, 2003 WL 723260 (D. Del. Feb. 23, 2003) (Jordan, J.) by artificially creating barriers to its application where none exist.

The Opposition, along with the Putnam Declaration, are meant to over-complicate the Court's task in reaching a proper prejudgment interest award. This Court used the apportionment method ETG proposes in *IPPV* and Defendants fail to cite any legal authority questioning its viability in this case. Moreover, this Court also has approved the use of the prime rate to calculate prejudgment interest on several occasions. Because the Court enjoys wide discretion in arriving at its prejudgment interest award, and because ETG has provided support for its prejudgment interest award calculations, ETG respectfully requests that the Court award ETG prejudgment interest in the amounts set forth in its Memorandum and in the Declaration of Terry L. Musika, submitted as Exhibit A to the Memorandum.

## II.     ARGUMENT

### A.    ETG Did Not Unduly Delay The Prosecution Of Its Action Against Defendants

Defendants contend that, under *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656

(1983), the Court should deny ETG an award of prejudgment interest because ETG purportedly unduly delayed its prosecution of this action. (Opp., 2.) As held by the Federal Circuit, however, "[i]t is clear from *General Motors* that the withholding of prejudgment interest based on delay is the exception, not the rule, and that the discretion of the district court is not unlimited." *Lummus Industries, Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 (Fed. Cir. 1988) (vacating district court's denial of prejudgment interest award due to, in part, a purported delay in prosecuting the action).

In support of their position, Defendants make the illogical leap that ETG unduly delayed filing suit because Defendants began infringing in 2001 and ETG did not file suit until June 2005. (Opp., 2.) As a preliminary matter, ETG's claims were brought well within the applicable statute of limitations and Defendants did not argue laches at trial. Moreover, the record is clear that ETG did not know until 2001 or 2002 that Defendants were selling infringing products. (Tr. at 439:17-25; 440:1.) (D.I. 576) EKMS, a third-party consulting company retained by ETG, only *began* its exploration of the licensing possibilities of the Patents-in-suit in late May or early June of 2002.[2] (D.I. 553, Ex. 28.) As part of its initial investigation, EKMS identified Defendants, as well as other hearing aid manufacturers, as potential licensee of the Patents-in-suit, not as "targets" or infringers for potential litigation. (D.I. 553, Ex. 28.) It was only later in 2002 that EKMS concluded that hearing aid manufacturers likely would not take a license to the Patents-in-suit and that ETG likely would have to sue them for infringement. (D.I. 553, Ex. 28; Tr. at 470:11-16.) (D.I. 552) Defendants' attempt to manipulate the record to exaggerate the time ETG took to prosecute the instant action is transparent and should be disregarded.

---

[2] The '850 Patent expired in June 2006 and the '749 Patent expired in November 2006.

Additionally, as found by this Court, "…unless that delay causes prejudice to the defendant, it does not support a denial of prejudgment interest." *Tristrata Technology, Inc. v. Mary Kay, Inc.*, 423 F. Supp. 2d 456, 471 (D. Del. 2006) (awarding prejudgment interest and rejecting defendant's arguments that, had plaintiff filed action earlier, defendant would have altered its products or advertising claims). Defendants attempt to show prejudice by offering the ***unsubstantiated*** allegations that "[h]ad ETG filed suit in a timely fashion upon learning of Defendants' alleged infringement, more than half of the period for which prejudgment interest is now sought would have been avoided, the volume of accused sales would have been substantially reduced, and prime rate advocated by ETG on average would have been significantly lower" and that "ETG left Defendants with no practical alternative to mitigate the damages in this case, such as voluntarily suspending their sales or exploring noninfringing alternatives." (Opp., 3.). As discussed below, Defendants' claim of prejudice is unsupported by the record. Defendants introduced no evidence in support of its purported prejudice, contrary to their newly-framed theory and despite having notice of their infringement, Defendants ignored this lawsuit and continued to infringe the Patents-in-suit even after they were sued. In light of their conduct, it is entirely appropriate for the Court to infer that Defendants would have continued their infringement had ETG asserted its claims at an earlier date.

As a preliminary matter, the Federal Circuit has held that the fact that a plaintiff's delay in filing suit may have increased the sales on which the infringer must now pay damages is "not the sort of undue delay on [plaintiff's] part or prejudice to [defendant] which would justify limiting the term of prejudgment interest." *Wallace Computer Services, Inc. v. Uarco Inc.*, 887 F.2d 1095, at * 2 (Fed. Cir. Sept. 19, 1989) (unpublished opinion) (reversing the district court's denial of prejudgment interest and remanding with instructions that it calculate prejudgment

interest from the date of the defendant's liability for infringement).  Defendants similarly fail to show any other actual category of prejudice because, despite their attempts to introduce unsubstantiated argument at this post-trial juncture to speculate as to what they *would* have done had ETG filed suit earlier, the evidentiary record demonstrates that (i) due to advances in miniaturization, Defendants first implemented the infringing technology in 2001 (Tr. at 740:5-8),[3] (ii) Defendants were aware of the existence of the Patents-in-suit before the filing of the lawsuit (Tr. at 748:20-25; 749:1-24) (D.I 552), (iii) Defendants continued selling the accused products after the filing of the lawsuit (Tr. at 781:22-25; 782:1-24 (D.I. 552)) and (iv) Defendants did not bother to obtain prelitigation opinions from outside counsel to determine whether they were in fact infringing the Patents-in-suit.  (Tr. at 1493:13-25; 1494:1-25; 1495:1-7.) (D.I. 552)  Simply put, for Defendants to now offer up argument from counsel suggesting they would have altered their conduct had ETG filed suit earlier is pure speculation and is contradicted by Defendants' actual conduct after having been put on notice of their infringement.  Therefore, Defendants' contentions regarding undue delay should be summarily rejected by the Court.

      **B.**    **ETG Used An Acceptable Formula For Quarterly Compounding And Used The Proper Prime Rate Numbers**

Similarly, Defendants' complaints about the formula used for arriving at the historical prime rate numbers and the method of calculating monthly prime rates are wrong in addition to being nit-picky.  (Opp., 4.)  Defendants cite to no authority, legal or otherwise, in support of these complaints.  The methodologies utilized by Mr. Musika to arrive both at the quarterly compounding figures and prime rate numbers selected are widely accepted and consistent with

---

[3] All trial transcript citations without a D.I. reference number are attached to the Declaration of Daniel G. Vivarelli, Jr. in Support of Plaintiff Energy Transportation Group Inc.'s Reply Briefs as Exhibit B.

5

the methodology used by banks and other financial institutions. (*See* Reply Musika Decl., ¶¶ 5-11.) Consequently, Mr. Musika's methodology for quarterly compounding and his prime rate figures should be approved by the Court.

### C. This Court Has Approved The Apportionment Model Proposed By ETG

ETG proposed that the Court calculate prejudgment interest by spreading the damages awarded to ETG (*i.e.* $15 million against Widex and $16 million against Demant) over 24 quarterly royalty payments Defendants would have tendered to ETG had they licensed (and not infringed) of the Patents-in-suit. This Court approved and used this apportionment model in *IPPV Enterprises, LLC. v. EchoStar Communications Corp.*, No. Civ. A. 99-577, 2003 WL 723260, at *3 (D. Del. Feb. 27, 2003) (J. Jordan). Defendants alternatively offer speculation or inapposite portions of the record to argue against its applicability here.

First, Defendants argue against the use of the apportionment model used by the Court in *IPPV* because "[p]resumably, there was little variability in either the level of infringement or the applicable interest rate during that period of time, making the 'equal spacing' method in that case likely one of administrative convenience." (Opp., 5.) As a preliminary matter, Defendants offer no basis for the contention that there was "little variability" in the level of infringement in *IPPV*. Additionally, although it is the case that the prime rate fluctuated from 8.25% to 8.5% during the time period in question in *IPPV* (March 1996 through September 1997), the "variability" of the prime rate in the instant case can be attributed to the longer period of infringement as much as any other factor.

Defendants also argue that the apportionment model used by the Court in *IPPV* should not be applied in the instant case because "…it goes directly counter to the approach ETG advocated at trial" and because "[a]t no time did ETG ever present any argument or evidence that the hypothetical negotiation between the parties would contemplate fixed, equally spaced royalty

payments…" (Opp., 6.) According to Defendants, ETG is now "estopped" from arguing "a different theory of damages upon which it seeks to recover prejudgment interest." (Opp., 6.) But Mr. Musika opined that the parties, in a hypothetical negotiation over the licensing of the Patents-in-suit, would have utilized a running royalty rate model, which would have captured the reasonable amount of an infringer's operating profit on the sale of accused products over time. *See*, *e.g.*, *Applied Elastomerics, Inc. v. Z-Man Fishing Products, Inc.*, 521 F. Supp. 2d 1031, 1035 (N.D. Cal. 2007) (describing a running royalty as one "calculated as a percentage of [d]efendant's net revenues from sales of products using [p]laintiff's technology or patents."). Mr. Musika opined that this model would have been used instead of a paid-up royalty model, which would have consisted of a one-time lump sum payment. (*See*, *e.g.*, Tr. at 887:20-25; 888:1-8.) ETG is not advocating a "new theory of damages" by advocating for the use of the apportionment model adopted by Judge Jordan in *IPPV*, but is simply proposing a model for the calculation of prejudgment interest that is consistent with a running royalty. The model used by the Court in *IPPV* is straight-forward and will facilitate the Court's calculation of ETG's prejudgment interest award. Defendants have only offered conjecture as to why the *IPPV* model should not be used, and the Court should reject Defendants' arguments and adopt ETG's proposed *IPPV* model.

        **D.**     **Defendants' Argument Regarding Corporate Tax Effects Is Flawed**

Citing to the Federal Circuit's decision in *Electro-Scientific Indus., Inc. v. Gen. Scanning, Inc.*, 247 F.3d 1341, 1354 (Fed. Cir. 2001), Defendants argue that the Court should apply a "conservative" marginal tax rate of 25% to each of ETG's proposed quarterly royalty payments, which Defendants contend would "…put ETG in a position that it would have occupied had it been receiving and paying taxes on the royalty payments over time." (Opp., 8.) Before addressing Defendants' unfettered speculation regarding the tax rate Defendants *guess* would

7

apply to ETG's royalty payments, not only is *Electro-Scientific* factually distinguishable from the case at bar (*see* footnote 4, *infra*), but at least one court recently ruled that "…*Electro Scientific* does not stand for the general proposition that prejudgment interest should be calculated on an after-tax basis." *Floe International, Inc. v. Newman's Manufacturing Inc.*, No. 04-5120 (DWF/RLE), 2006 WL 2472112, at * 8 (D. Minn. Aug. 23, 2006) (declining to calculate prejudgment interest on an after-tax basis).[4]

Apart from the inapplicability of *Electro-Scientific* to the instant matter, it is clear from the record and Defendants' Opposition that Defendants have no idea what ETG's effective tax rate was during the years in question. Stated alternatively, although Defendants offer the unsubstantiated assertion that "[i]t is entirely possible that ETG faced the standard marginal [tax] rate of 38%," it is also entirely possible that ETG's effective tax rate would have been zero and, therefore, ETG would have owed no taxes. More importantly, the record is devoid of any evidence regarding ETG's effective tax rates or how Defendants' royalty payments to ETG, had they been paid, would have affected ETG's tax liabilities, if at all. Because Defendants' premise is based on pure speculation and inapposite authority, the Court should not calculate ETG's prejudgment interest award on an after-tax basis. ETG will pay any applicable taxes on the Final Judgment after it is entered by the Court.

---

[4] In *Electro-Scientific*, the court calculated plaintiff's prejudgment interest award on an after-tax basis because plaintiff's expert had calculated its prejudgment interest award based on the tax-free interest rate of its money market account. *Id*. at 1354. The case at bar is factually distinguishable in that there is no tax-free money market account rate to reference. Whereas there are indicia in the *Electro-Scientific* and *Floe* opinions that the courts were aware of the tax rates applicable to the plaintiffs, the record in this case is completely devoid of any mention of ETG's effective tax rate or of the tax impact, if any, that Defendants' royalty payments would have had on ETG.

### E. Defendants' Contention That The Moody's Aaa Rate Applies Would Be Unprecedented

Defendants' novel and unsupported proposition that ETG's prejudgment interest award should be calculated using the Aaa rate set by the Moody's Investor's Services should also be rejected. (Opp., 9.) Defendants argue for this rate because, "[v]iewing the delayed payment of royalties to [ETG] as a loan *from **ETG** to the **Defendants***, such a loan was made to high-quality corporate debtors who posed unusually low risks to ETG and who pay interest at corresponding low rates." (*Id.*) (emphasis added). Defendants then make the leap that "[i]f a risky rate were adopted by the Court, the appropriate interest rate for low-risk corporate debtors such as Demant and Widex would be the Moody's Aaa rate, not the prime rate." (*Id.*)

Prejudgment interest is not a tool to attempt to determine the creditworthiness of any entity - its goal is to put the plaintiff in the position it would have been if it had the damages award paid to it when the damages were incurred. Defendants' attempt to introduce this issue is a red herring and confusing, at best. Defendants tellingly fail to cite to any authority, legal or otherwise, in support of the proposition that delayed royalty payments should be viewed as "loans" from the aggrieved patent holder to the patent infringer.[5] Moreover, there is no evidence in the record that the rate ETG proposes is a "risky" rate. Finally, Defendants' argument that the Court apply the Moody's Aaa rate has no support in law or fact, and the Court should disregard it.

### F. The Prime Rate Is The Appropriate Rate To Apply

Defendants finally contend that the Court should award prejudgment interest at the "risk-

---

[5] This is not the first time Defendants' expert, Dr. Putnam, has put forth academically-interesting but nevertheless unreliable theories. His patent citation ranking system was criticized by his fellow expert, Mr. Charles Donohoe, and Dr. Putnam admitted he did not know of any instances where his patent citation ranking system had been cited, much less approved, by a court of law. (Tr. at 1894:8-25; 1895:1-13.)

9

free" Treasury bill rates. (Opp., 10.) Unfazed by this Court's and the Federal Circuit's rulings that a patentee need not "…demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate,"[6] Defendants first argue that the prime rate should not be applied because "…ETG has submitted no evidence that ETG had to borrow funds to replace what it otherwise would have received from the Defendants…" (Opp., 11.) Simply put, ETG does not have to provide such evidence to be awarded prejudgment interest at the prime rate.

Second, Defendants attempt to distract the Court by arguing, again without citation to legal authority, that the prime rate is only appropriate if ETG and its predecessor, Audimax, competed with Defendants as manufacturers of hearing aids and therefore suffered "competitive risk." (Opp., 11.) But any discussion of ETG and Audimax not being competitors is irrelevant, particularly since ETG did not seek lost profits damages. More importantly, as set forth in the Memorandum, this Court has used the prime rate and it is appropriate for the calculation of ETG's prejudgment interest award. (*See* Memorandum, 3-4.)

## III.  CONCLUSION

ETG respectfully requests that the Court enter an order awarding (i) $4,515,570 in prejudgment interest against Widex and (ii) $4,816,608 in prejudgment interest against Demant.[7] ETG further requests that the Court award ETG post-judgment interest as specified by 28 U.S.C. § 1961 on the entire monetary judgment, including compensatory damages, prejudgment interest, and any enhanced damages and attorneys' fees, that the Court awards.

---

[6] *See Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991); *Phillips Petroleum Co. v. Rexene Corp.*, 1997 WL 781856, at * 28 (D. Del. Sept. 4, 1997).

[7] Defendants object to ETG's use of January 1, 2001 as the date for the initial quarterly compounding of interest. (Opp., 5.) To the extent the Court agrees with Defendants' position, ETG should be entitled to receive a prejudgment award of $4,144,044 from Widex and $4,420,340 from Demant. (*See* Reply Musika Decl., ¶ 12.)

Dated: May 29, 2008

/s/ Edmond D. Johnson
Edmond D. Johnson (No. 2257)
Matthew A. Kaplan (No. 4956)
PEPPER HAMILTON LLP
Hercules Plaza Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390

*Attorneys for Energy Transportation Group, Inc.*

OF COUNSEL:

Marty Steinberg
HUNTON & WILLIAMS LLP
1111 Brickell Avenue
Suite 2500
Miami, Florida  33131
Telephone:  (305) 810-2500
Facsimile:  (305) 810-2460

Brian M. Buroker
HUNTON & WILLIAMS LLP
1900 K Street, N.W., Suite 1200
Washington, DC 20006-1109
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201

Maya M. Eckstein
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
Telephone:  (804) 788-8788
Facsimile:  (804) 343-4630

## CERTIFICATE OF SERVICE

I do hereby certify that on the 29th day of May, 2008, I caused a true copy of the foregoing **Plaintiff, Energy Transportation Group's, Reply Memorandum In Further Support of Its Motion For Prejudgment and Post-Judgment Interest** to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

| | |
|---|---|
| Mary B. Graham (#2256)<br>MORRIS, NICHOLS, ARSHT &TUNNELL LLP<br>1201 N. Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899 | Donald E. Reid (#1058)<br>Jason A. Cincilla (#4232)<br>MORRIS, NICHOLS, ARSHT &TUNNELL LLP<br>1201 N. Market Street<br>Wilmington, DE  19899 |
| John M. Romary<br>C. Gregory Gramenopoulos<br>FINNEGAN, HENDERSON, FARABOW,<br>GARRETT & DUNNER<br>901 New York Ave., N.W.<br>Washington, DC  20001-4413 | William H. Mandir<br>David J. Cushing<br>Carl J. Pellegrini<br>SUGHRUE MION PLC<br>2100 Pennsylvania Ave., N.W.<br>Washington, DC  20037 |
| *Attorneys for William Demant Holding A/S, WDH Inc., Oticon A/S, Oticon, Inc., Bernafon AG, and Bernafon LLC* | *Attorneys for Widex A/S, Widex Hearing Aid Co., Inc.* |

/s/ Edmond D. Johnson
Edmond D. Johnson (No. 2257)

12