## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

ENERGY TRANSPORTATION GROUP,     )
INC.,                            )
                Plaintiff,    )
                                 )
      v.                         )
                                 )     C.A. No. 05-422 (GMS)
SONIC INNOVATIONS, INC., et al,  )
                                 )
            Defendants.      )
_____)

### PLAINTIFF ENERGY TRANSPORTATION GROUP INC.'S REPLY TO DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR ENHANCED DAMAGES AND ATTORNEY'S FEES

Edmond D. Johnson (No. 2257)
Matthew A. Kaplan (No. 4956)
PEPPER HAMILTON LLP
Hercules Plaza Suite 5100
1313 Market Street
Wilmington, DE 19801
Telephone (302) 777-6500
*Attorneys for Energy Transportation Group, Inc.*

OF COUNSEL:
Marty Steinberg
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500

Brian M. Buroker
HUNTON & WILLIAMS LLP
1900 K Street, N.W., Suite 1200
Washington, DC 20006-1109
Telephone: (202) 955-1500

Maya M. Eckstein
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
Telephone: (804) 788-8788

Dated: May 29, 2008

## **TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT ..............................................................................................................1

   A. Enhanced Damages Against Widex Are Appropriate ............................................1

      1. Substantial evidence supports the willfulness verdict............................................1

      2. Defendants' litigation misconduct was rampant ..................................................3

      3. This case was not close ......................................................................................7

      4. Defendants were motivated to harm ETG............................................................8

      5. Widex's size and resources are relevant ............................................................9

   B. Attorney's Fees Are Appropriate ........................................................................9

      1. This case is exceptional ....................................................................................9

      2. ETG did not engage in litigation misconduct ....................................................9

   C. This Case Is Similar to *Medtronic* ....................................................................10

III. CONCLUSION..........................................................................................................10

# TABLE OF AUTHORITIES

## Cases

*Black & Decker, Inc. v. Robert Bosch Tool Corp.*,
 2008 U.S. App LEXIS 207 (Fed. Cir. Jan 7, 2008) .................................................. 3

*Domestic Fabrics Corp. v. Sears, Roebuck & Co.*,
 326 F. Supp. 2d 694 (E.D.N.C. 2004) ...................................................................... 9

*Golight, Inc. v. Wal-mart Stores, Inc.*
 355 F.3d 1327 (Fed. Cir. 2004) ................................................................................ 9

*In re Seagate Tech., LLC*,
 497 F.3d 1360 (Fed. Cir. 2007) ................................................................................ 2

*Jurgens v. CBK, Ltd.*,
 80 F.3d 1566 (Fed. Cir. 1996) ............................................................................. 1, 3

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersystems GmbH*,
 No. 98-cv-01072 (D. Colo. Feb. 12, 2008) ............................................................ 10

*nCube Corp. v. SeaChange Int'l, Inc.*,
 313 F. Supp. 2d 361 (D. Del. 2004) ...................................................................... 8, 9

*Promega Corp. v. LifeCodes Corp.*,
 53 USPQ2d 1463 (D. Utah 1999) ............................................................................ 9

*Read Corp. v. Portec, Inc.*,
 90 F.2d 816 (Fed. Cir. 1992) .................................................................................... 1

#9674054 v1

## I. INTRODUCTION

In view of the jury's willfulness finding, the Court should treble the damage award against Widex. The Court also should find this case exceptional and award ETG attorney's fees from either or both Defendants.[1]

## II. ARGUMENT

### A. Enhanced Damages Against Widex Are Appropriate

The jury's willfulness verdict establishes that Widex "is guilty of conduct upon which increased damages may be based." *See Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570-71 (Fed. Cir. 1996) (*citing Read Corp. v. Portec, Inc.*, 90 F.2d 816, 826-27 (Fed. Cir. 1992)). Moreover, the totality of the circumstances, including Widex's litigation misconduct, support enhancement.

#### 1. Substantial evidence supports the willfulness verdict

The jury's verdict that Widex willfully infringed the Patents-In-Suit satisfies the first step of the two-step enhanced damages inquiry. *See Jurgens*, 80 F.3d at 1571. In their Opposition, Widex needlessly notes that "ETG made no attempt to reconcile the jury's finding of willfulness with the heightened standard for finding willful infringement mandated by *Seagate*." Defendants' Answering Brief in Opposition to Plaintiff's Amended Motion for Enhanced Damages and Attorney's Fees (D.I. 579) at 5. The Court entered judgment (*see* D.I. 522) on the jury's verdict, which found willful infringement by Widex, so there was no need for ETG to do anything further. *See Jurgens*, 80 F.3d at 1571. Instead, the jury's willfulness verdict establishes that Widex "is guilty of conduct upon which increased damages may be based." *Id*.

Indeed, contrary to Defendants' assertion, the jury was presented with substantial evidence that Widex willfully infringed the Patents-In-Suit. *See* Plaintiff Energy Transportation

---

[1] The term "Defendants" includes both Widex and Demant.

Group, Inc.'s Opposition to the Widex Defendants' Motion for Judgment as a Matter of Law and Request for New Trial on the Issue of Willful Infringement (D.I. 573). The jury heard that because Widex (1) launched new products in an industry crowded with presumptively valid patents; (2) failed to search its keyword searchable database using keywords relating to key features included in its new products; (3) ignored the well-publicized nature of the Patents-In-Suit; (4) ignored the patented technology of Dr. Levitt, who was a prominent inventor in the hearing aid industry; (5) intended to infringe the Patents-In-Suit; (6) ignored copies of and references to the Patents-In-Suit in its own records; and (7) ignored its own technical and marketing materials, Widex acted despite an objectively high likelihood that launching the Diva and Inteo hearing aids would infringe a valid patent. *See id* at Section V.B.

In its Opposition, Widex establishes exactly why its actions were objectively reckless, asserting that ETG "could not [] point to any evidence of anyone ever considering the Levitt Patents in connection with any of the Widex Accused Products." *See* D.I. 579 at 8. That is because Widex admitted that it ***never*** even considered its possible infringement or the validity of the Patents-In-Suit. *See* Tr. at 733:1-735:2 (S. Westermann) (D.I. 574). It is clear, however, that Widex should not have ignored the Patents-In-Suit because, under *Seagate*, doing so was objectively reckless. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007); *see also* D.I. 573 at Section V.B.1. Moreover, Widex knew or should have known that the Diva and Inteo products would infringe a valid patent. *See id* at Section V.B.2.

Widex contends that the Court should excuse the fact that Widex ignored the Patents-In-Suit because "Defendants presented substantial litigation defenses as to both infringement and validity that are contrary to an objective risk of infringement." D.I. 579 at 6. But Widex's purported litigation defenses were not substantial. *See* D.I. 573 at Section V.C.2. Moreover, the

jury's verdict that Widex willfully infringed the claims of the Patents-In-Suit and that ETG's claims were not invalid establishes that Widex's purported litigation defenses were not substantial. While invalidity defenses may be a basis for rejecting willfulness, that is so only if the jury invalidates at least one claim. *See Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 2008 U.S. App LEXIS 207 at *18 (Fed. Cir. Jan 7, 2008). Here, the jury rejected Widex's litigation defenses, finding that Widex willfully infringed all asserted claims and upholding the validity of **all** of ETG's claims *see* D.I. 521. *See* D.I. 522. The jury clearly did not consider Widex's litigation defenses substantial.[2]

### 2. Defendants' litigation misconduct was rampant

As the Court is well aware, increased damages may also be awarded because of the bad faith of attorney or client misconduct during litigation. *Jurgens*, 80 F.3d at 1570. Defendants' litigation misconduct began during discovery and continued through closing arguments. *See* D.I. 539 at Section V.C. Their litigation misconduct, summarized below, cannot be ignored:[3]

- Defendants presented theories of non-infringement that were legally and factually untenable in light of this Court's Claim Construction Order. *See* D.I. 539 at 10-11.

- Defendants misrepresented, and continue to misrepresent, the EKMS documents. *See* D.I. at Section V.C.1-V.C.2; *see also* D.I. 573 at Section V.C.4.

- Defendants mislead and distracted the jury by attempting to cover up admitted infringement, offering shifting non-infringement positions throughout discovery and trial.

---

[2] Further support that Widex's litigation defenses lacked credibility can be found in Plaintiff ETG's Opposition to Defendants' Brief In Support of Their Renewed Motion for Judgment as a Matter of Law and Request for a New Trial on the Issues of Infringement and Validity (D.I. 577 ). As made clear there, Widex is not entitled to JMOL on the issues of non-infringement or invalidity. Because Widex's litigation defenses were not convincing to a jury and lack merit as a matter of law, they cannot now be used as a defense to willful infringement. *Id.*

[3] A more complete discussion of Defendants' litigation misconduct can be found in Plaintiff Energy Transportation Group, Inc.'s Memorandum in Support of Its Motion for Enhanced Damages and Attorneys Fees (D.I. 539) at Section V.C.

*See* D.I. 539 at Section V.C.3.

- Defendants paid fact witnesses exorbitant sums and hired industry friendly experts, attempting to distract the jury and carry out the cover-up.  *See* D.I. 539 at Section V.C.4.

- Defendants belated document production was an effort to divert ETG's attention away from taking depositions and preparing for trial.  *See* D.I. 539 at Section V.C.5.

Defendants offer only excuses in response to ETG's allegations of litigation misconduct. Regarding the EKMS smokescreen, Defendants blame ETG for attempting to exploit evidence that it purportedly wrongly withheld.  *See* D.I. 579 at Section I.C.1.  While the Court ultimately ordered ETG to produce documents relating to EKMS, ETG's work product claim was not improper.  In fact, the parties submitted letter briefs, *see* D.I. 413, D.I. 417, and the Court ultimately ruled against ETG.  Having a meritorious work product claim overruled does not excuse Defendants' later misuse of those documents.  *See* D.I. 539 at Sections V.C.1-V.C.2.

But that is exactly what Defendants did and continue to do.  In light of Dr. Dowling's Declaration (D.I. 553, Ex. 29), supported by his "red-faced liar email" (DX 1642 (D.I. 553, Ex. 25), the parties know that "the only opinion [Dr. Dowling] gave at the time of [his] technical evaluation of the Levitt Patents was that [they] cover 'an adjustable filter [that] is adaptively adjusted so as to estimated the acoustic environment and cause the feedback signal to be cancelled.'" Dowling Dec. (D.I. 553, Ex. 29) at ¶22.  At trial, despite warnings from the Court, Defendants repeatedly misrepresented the EKMS documents to the jury.  *See* D.I. 539 at Sections V.C.1-V.C.2.  Now, Defendants rely solely on the EKMS  Summary Report (DX 1610 (D.I. 553, Ex. 28)), while ignoring the very declaration submitted to correct the prejudice to ETG as a result of Widex's misuse and mischaracterization of the EKMS documents.  In fact, in post-trial pleadings, Defendants continue to contend that Dr. Dowling opined that the Patents-In-Suit

included language adverse to an interpretation of the claims involving a continuously adaptive approach.[4]  *See* D.I. 579 at 18-19 ("The documents plainly suggest that Dr. Dowling, the technical expert retained by EKMS, had reviewed the Levitt Patents with the assistance of Dr. Levitt and agreed that the patents contained language adverse to covering continuously adaptive products…."); *see also* Opening Brief in Support of the Widex Defendants' Motion for Judgment as a Matter of Law and Request for New Trial on the Issue of Willful Infringement (D.I. 541) at Section III.C.  These continued misrepresentations should not be tolerated and further support enhancement.

In response to ETG's allegation that Widex disobeyed the Court's instruction during closing arguments, Defendants attempt to downplay the significance of its failure by suggesting it made an "innocent mistake" that was "in reality a misunderstanding by Widex's counsel…as to the precise manner of the clarification the Court required."  *See* D.I. 579 at 18.  The record plainly suggests otherwise – the Court instructed Widex to "say something like we are not saying that Eric Dowling changed his mind," Tr. at 2188:13-15 (D.I. 552), and Widex's counsel made no efforts to abide by this instruction.  Instead, Widex's counsel, Mr. Mandir, stated:

> Now, I don't know exactly how that came about.  I don't know how it came about.  All I know is this EKMS document says it and this was given to Audimax.  They're saying that they looked at it and EKMS is coming to the conclusion that they interpret the claims – EKMS interprets these claims to be something adverse to interpretation that would involve a continuously adaptive approach.

Tr. at 2189:8-14 (D.I. 552).  By failing to state that Dr. Dowling did not change his mind, Mr. Mandir failed to comply with the Court's instruction.  In fact, Mr. Mandir's purported clarification does not even mention Dr. Dowling.  And Mr. Mandir himself admitted that he failed to mention Dr. Dowling.  *See* Tr. at 2204:13-17 (D.I. 552).  The Court correctly believed

---

[4]  Noticeably absent from this contention is a citation to either the "red-faced liar email" (DX 1642 (D.I. 553, Ex. 25)) or Dr. Dowling's Declaration (D.I. 553, Ex. 29).

that ETG was so prejudiced by Mr. Mandir's arguments characterizing the EKMS documents and his failure to comply with its instruction that it admitted Dr. Dowling's Declaration into evidence to rectify the prejudice to ETG and clarify this point.[5]  Tr. at 2204:19-22 (D.I. 552). Accordingly, Widex's failure can hardly be characterized as an "innocent mistake."

Defendants blame their own "cover-up" of infringement on ETG's purported tactic of painting Defendants as liars and criminals.  But ETG never referred to Defendants as liars or criminals.[6]  Instead, the evidence established that Defendants voluntarily tried to cover-up their infringement.  Defendants' documents prepared before trial admit infringement.  *See* D.I. 539 at Section V.C.3.  Only after suit was filed did Defendants disavow their prior written statements. *See id*.

To carry out this cover-up, Defendants paid purported fact witnesses exorbitant sums of money and hired industry-friendly experts.  Defendants do not deny that they paid large sums of money to their fact witnesses, *see* D.I. 579 at Section I.C.5, but instead characterize these exorbitant sums as reasonable consulting fees.[7]  The witnesses were not experts, but merely fact witnesses.  Tr. at 1180:20-1181:2 (Egolf) (D.I. 552).  The amounts Defendants paid them were

---

[5]  In their Opposition, Defendants suggest that they opposed Dr. Dowling's Declaration.  D.I. 579 at 21. This is not true.  While Defendants' objected to ETG calling Dr. Dowling as a rebuttal witness, they never objected to Dr. Dowling's Declaration or its admission into evidence.  Also, Defendants now complain that they did not have an opportunity to test Dr. Dowling's declaration.  D.I. 579 at 18, n.12.  This complaint is incredible given that Widex opposed ETG's motion to call Dr. Dowling as a rebuttal witness and to make arrangements for his deposition prior to his testimony.

[6]  Defendants allege that ETG's lead counsel said "the case should be entitled 'CSI Delaware.'"  D.I. 579 at 25, n.17.  ETG, though, was referring to the necessity to retain Dr. Gloster to review Defendants' source code to confirm the admissions in their marketing materials that Defendants attempted to deny, stating that "[n]ow we have CSI Delaware where we had to have our expert come in and look at the root of their code to tell us the technical documents really mean what they say."  Tr. at 2100:20-24 (Attached as Exhibit B to Declaration of Daniel G. Vivarelli, Jr. Is Support of Plaintiff Energy Transportation Group, Inc.'s Reply Briefs.

[7]  Similarly, Defendants do not deny that their experts were friendly to the hearing aid industry.  For example, Dr. Soli's House Ear Institute receives contracts from hearing aid manufacturers.  *See* D.I. 579 at 28. Defendants claim this fact had no effect on their decision to engage him as an expert.  *Id*.  Defendants fail to acknowledge, though, that his receipt of such funds credibly leads to the conclusion that Dr. Soli would not seek to imperil his receipt of such lucrative contracts.

not reasonable and certainly would have influenced the witnesses' testimony.[8,9]  In fact, Dr. Egolf was even personally represented by Defendant's counsel.  Tr. at 1180:10-16 (D.I. 552).

Defendants also do not deny that they "dumped" large amounts of documents on ETG very late in discovery.  *See* D.I. 579 at I.C.6.  Instead, they seek to justify their conduct by asserting that "everyone was doing it."  But the facts reveal otherwise.  While Defendants inexplicably produced millions of pages during the closing months of discovery, *see* D.I. 539 at 27, ETG, on the other hand produced 83% of its documents before March 31, 2007.[10]  It is incredible for Defendants to assert that ETG participated in Defendants' document production games.

Defendants also attempt to justify their failure to produce HIMPP documents by asserting that "there was never any suggestion that these documents…were ever in the Defendants' possession."  *See* D.I. 579 at 29.  Importantly, Defendants ***do not*** declare that they did not possess these documents; instead they merely "suggest" that they may not have had them.  The record plainly proves otherwise.  Widex is the secretary of HIMPP, HIMPP has no offices, and HIMPP uses Widex's employees, offices and resources.  *See* Tr. 716:10-17, 727:6-16 (D.I. 574). It is, thus, incredible for Widex to assert that it never possessed HIMPP documents.

### 3.  This case was not close

Defendants believe this case was close simply because they took it to trial.  *See* D.I. 579

---

[8] For example, before his deposition, Defendants paid Dr. Egolf $53,000.  Tr. at 1181:18-20 (D.I. 552). Dr. Egolf purported not to know how much Defendants would be obligated to pay him for his work after his deposition and through trial, testifying that he had not yet rendered a new bill.  Tr. at 1181:22-1182:9 (D.I. 552). Because Defendants continue to refuse to reveal how much they ultimately paid their purported "fact" witnesses, ETG can only wonder how large these amounts were.

[9] Curiously, Defendants also note that "it is improper for ETG to raise this issue of witness fees after the Court had already ruled."  D.I. 579 at 27-28.  If this is the case, then Defendants similarly forfeited all of their regurgitated arguments regarding claim construction, etc.

[10] The majority of documents that ETG produced after March 31, 2007 was a collection of calendars by ETG's former owner, Dr. C.Y. Chen.  None of these calendar documents were used at trial.

at Section I.B. But that does not make it so. As explained above, Defendants' litigation defenses were not substantial, *see* D.I. 573 at Section V.C.2; *see also* Plaintiff ETG's Opposition to Defendants' Brief In Support of Their Renewed Motion for Judgment as a Matter of Law and Request for a New Trial on the Issues of Infringement and Validity (D.I. 577), and, as a result, the jury found **every** asserted claim valid and infringed. *See* D.I. 521. Moreover, Defendants are not entitled to JMOL on issues of infringement and validity. *See* D.I. 577.

### 4. Defendants were motivated to harm ETG

Defendants were clearly motivated to harm ETG. In their Opposition, Defendants impute a requirement that Widex harbor ill will or animosity towards ETG to be motivated to harm ETG. ETG is not aware of any such requirement. Instead, market conditions can give rise to a motivation for harm. *See nCube Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 391-91 (D. Del. 2004). Widex was an integral member of an oligopoly, HIMPP, whose stated purpose was to prevent patents from falling into the hands of people outside of the major hearing aid manufacturers. Tr. at 811:25-812:6 (D.I. 552). The oligopoly also wanted to protect excessive revenues. One way of doing that is to purloin others' technology and refuse to pay for it.

Defendants' arguments that they could not harm ETG because they were not competitors, *see* D.I. 579 at 34-35, also lacks merit. As members of HIMPP, Defendants sought to use ETG's case to send a message to others that HIMPP's members could infringe an "outsider's" patent without regard to the consequences. Doing so, they also signaled to others that the only recourse against a HIMPP member would be to engage in a protracted, expensive litigation. Once sued, Defendants therefore were motivated to prevent ETG from enforcing its patent rights against HIMPP members to protect the organization whose stated purpose was to prevent patents from falling into the hands of those outside the oligopoly of major hearing aid manufacturers.

### 5.  Widex's size and resources are relevant

Widex admits its "size and financial condition [is] relevant to an amount of enhanced damages…." D.I. 579 at 32. ETG urges this Court to enhance damages against Widex. *See* D.I. 539. In determining the amount of enhanced damages, the Court should consider that Widex is financially capable of paying the enhanced damages award. *See* D.I. 539 at Section V.D.I; *see also Promega Corp. v. LifeCodes Corp.*, 53 USPQ2d 1463, 1447 (D. Utah 1999).

## B.  Attorney's Fees Are Appropriate

### 1.  This case is exceptional

This Court should award attorney's fees from Widex and Demant. First, Widex willfully infringed the Patents-In-Suit. A verdict of willful infringement is a sufficient basis to find that a case is 'exceptional' and award attorney's fees. *See Golight, Inc. v. Wal-mart Stores, Inc.* 355 F.3d 1327, 1339-40 (Fed. Cir. 2004). On the jury's finding alone, the Court is justified in awarding attorneys' fees from Widex. *See Domestic Fabrics Corp. v. Sears, Roebuck & Co.*, 326 F. Supp. 2d 694, 702 (E.D.N.C. 2004). The totality of circumstances surrounding the *Read* factors, including Defendants' litigation misconduct, support award of attorney's fees from Defendants. *See nCube*, 313 F. Supp. 2d, at 361, 387 & 391.

### 2.  ETG did not engage in litigation misconduct

Defendants attempt to deflect the egregiousness of their own litigation misconduct by shamelessly fabricating tales of ETG's litigation conduct. *See* D.I. 579 at Section II.A. Defendants accuse ETG of taking overreaching and inaccurate positions at trial. *Id.* ETG, though, tried the case based on the fact that Defendants pre-suit materials admitted infringement, *see* D.I. 539 at Section V.C.3, and Defense counsel acknowledged as much during opening argument when stating, "we use it!" and "if some of our witnesses are going to get up here and…say that we don't, they're -- it's just not right. *See* Tr. at 165:12-17 (D.I. 552). The trial

record is clear that Defendants were caught in a cover-up.  *See*  D.I. 539 at Section V.C.3.  That

ETG had to expose this cover-up does not qualify as overreaching or inaccurate.

### C.  This Case Is Similar to *Medtronic*

A litigant that "pursue[s] a strategy of giving superficial recognition to the court's claim

construction rulings, while pressing its own interpretations of the claims" at trial engages in

litigation misconduct.  *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersystems*

*GmbH*, No. 98-cv-01072 at 12 (D. Colo. Feb. 12, 2008) (order for award of attorney fees and

costs) (D.I. 553, Ex. 24).  That is exactly what Defendants did.  *See, e.g.*, D.I. 539, Section

V.B.1.  Defendants argue that in *Medtronic*, counsel's actions were far more egregious than

theirs and baldly suggest that they are more in line with ETG's conduct.  *See* D.I. 579 at 39.

This is yet another example of  Defendants attempting to deflect the egregiousness of its own

litigation misconduct by shamelessly fabricating tales of ETG's litigation conduct.

Like the plaintiffs in *Medtronic*, **Defendants** "pursued a strategy of giving superficial

recognition to the court's claim construction rulings, while pressing [their] own interpretations of

the claims." *Medtronic*, No. 98-cv-01072 at 12;  *see also* D.I. 539, Section V.C.1.  And like the

plaintiffs in *Medtronic*, to effectively distract the jury and carry out the cover-up, **Defendants**

needed witnesses and experts to fit the theories put forward by defense counsel.  *See* D.I. 539,

Section V.C.  Therefore, it is **Defendants**' litigation misconduct that indeed parallels *Medtronic*.

### III.  CONCLUSION

The Court should enforce the jury's verdict.  The jury made a thoughtful and well-

reasoned distinction in finding Widex's actions willful.  The Court should therefore exercise its

discretion to enhance damages against Widex.  Likewise, this Court should consider that, in the

totality of the circumstances, including the Defendants' litigation conduct and other *Read* factors,

an award of attorneys' fees from Widex and Demant is the just result.

Dated: May 29, 2008

      /s/ Edmond D. Johnson
Edmond D. Johnson (No. 2257)
Matthew A. Kaplan (No. 4956)
PEPPER HAMILTON
Hercules Plaza Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390

*Attorneys for Energy Transportation Group, Inc.*

OF COUNSEL:

Marty Steinberg
HUNTON & WILLIAMS LLP
1111 Brickell Avenue
Suite 2500
Miami, Florida  33131
Telephone:  (305) 810-2500
Facsimile:  (305) 810-2460

Brian M. Buroker
HUNTON & WILLIAMS LLP
1900 K Street, N.W., Suite 1200
Washington, DC 20006-1109
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201

Maya M. Eckstein
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
Telephone:  (804) 788-8788
Facsimile:  (804) 343-4630

## CERTIFICATE OF SERVICE

I do hereby certify that on the 29th day of May, 2008, I caused a true copy of the foregoing ***Plaintiff Energy Transportation Group Inc.'s Reply To Defendants' Answering Brief In Opposition To Plaintiff's Amended Motion For Enhanced Damages And Attorney's Fees*** to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

| | |
|---|---|
| Mary B. Graham (#2256) | Donald E. Reid (#1058) |
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | Jason A. Cincilla (#4232) |
| 1201 N. Market Street | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| P.O. Box 1347 | 1201 N. Market Street |
| Wilmington, DE 19899 | Wilmington, DE 19899 |
| | |
| John M. Romary | William H. Mandir |
| C. Gregory Gramenopoulos | David J. Cushing |
| FINNEGAN, HENDERSON, FARABOW, | Carl J. Pellegrini |
| GARRETT & DUNNER | SUGHRUE MION PLC |
| 901 New York Ave., N.W. | 2100 Pennsylvania Ave., N.W. |
| Washington, DC 20001-4413 | Washington, DC 20037 |
| | |
| *Attorneys for William Demant Holding A/S,* | *Attorneys for Widex A/S, Widex Hearing* |
| *WDH Inc., Oticon A/S, Oticon, Inc.,* | *Aid Co., Inc.* |
| *Bernafon AG, and Bernafon LLC* | |

/s/ Edmond D. Johnson

Edmond D. Johnson (No. 2257)