**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ENERGY TRANSPORTATION GROUP, INC., )<br>          Plaintiff, )<br>   v. )<br>          )<br>SONIC INNOVATIONS, INC., et al, )<br>          Defendants. ) | C.A. No. 05-422 (GMS) |

**PLAINTIFF ETG'S REPLY TO DEFENDANTS' OPPOSITION TO ETG'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER
<u>OF LAW ON THE ISSUES OF INFRINGEMENT AND VALIDITY</u>**

Edmond D. Johnson (No. 2257)
Matthew A. Kaplan (No. 4956)
PEPPER HAMILTON
Hercules Plaza Suite 5100
1313 Market Street
Wilmington, DE 19801
Telephone: (302) 777-6505
*Attorneys for Energy Transportation Group, Inc.*

OF COUNSEL:
Marty Steinberg
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500

Brian M. Buroker
HUNTON & WILLIAMS LLP
1900 K Street, N.W., Suite 1200
Washington, DC 20006-1109
Telephone: (202) 955-1500

Maya M. Eckstein
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
Telephone: (804) 788-8788

Dated: May 29, 2008

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................1

II.    ARGUMENT................................................................................................................1

    A.    THE VALIDITY PORTION OF ETG'S MOTION IS PROPER ...........................2

        1.    The Best Work Fails To Qualify As Prior Art..............................................2

        2.    The "Weaver Work" Fails To Qualify As Prior Art ....................................4

        3.    Defendants' New Invalidity Positions Are Improper And Not Supported By Any Evidence ........................................................................................5

    B.    NO REASONABLE JURY COULD HAVE FOUND THAT CLAIMS 13, 14 AND 16 OF THE '850 PATENT WERE NOT LITERALLY INFRINGED .....................5

        1.    Defendants' Infringing Products Literally Perform The Determining Step 6

        2.    Defendants' Infringing Products Literally Perform The Inserting Step ......7

        3.    Defendants' Infringing Products Literally Meet The "Programmable" Claim Recitation ..........................................................................................9

III.    CONCLUSION...........................................................................................................10

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

Page

*Checkpoint System Inc., v. U.S. International Trade Commission*,
   54 F.3d 756 (Fed. Cir. 1995)......................................................................................3

*Kimberly-Clark Corp. v. Johnson & Johnson*,
   745 F.2d 1437 (Fed. Cir. 1984)..................................................................................3

### **FEDERAL STATUTES**

35 U.S.C. § 102................................................................................................................ 2-4

Fed. R. Civ. P. 50 ..................................................................................................................2

**I.      INTRODUCTION**

Energy Transportation Group, Inc. ("ETG") submits this reply memorandum in support of its motion for judgment as a matter of law ("JMOL") on the issues of validity and infringement.

**II.     ARGUMENT**

JMOL should be granted in ETG's favor concerning nine items[1] that do not qualify as "prior art." At trial, Defendants improperly advanced invalidity defenses based on an alleged prior invention purportedly described in a thesis referred to as the Master's Thesis - Digital Suppression of Acoustic Feedback in Hearing Aids by Leland Best ("the Best Work") and eight items that encompass the "Weaver Work."[2] While the jury properly determined that none of these items taught Dr. Levitt's invention, ETG moves this Court for a determination on the ineligibility of the items themselves. In addition, Defendants advance new obviousness positions, involving the JASA Abstract and U.S. Patent No. 4,783,818 to Graupe ("Graupe '818), that are unsupported by any trial evidence. Defendants should not be allowed to present new defenses after the close of evidence.

The substantial evidence at trial demonstrated that Defendants' documents and graphical depictions admit infringement by mirroring the feedback reduction methods of claims 13, 14 and 16 of Dr. Levitt's Patents. Defendants admit that their products "cancel/reduce acoustic feedback by creating an electrical feedback signal that mimics the phase and amplitude of the feedback signal." *See* Defendants' Answering Brief in Opposition to Plaintiff's Second Amended Motion for JMOL ("Answer Br.") at 22. D.I. 585. The Infringing Products literally

---

[1] *See* Plaintiff ETG's Memorandum in Support of Its Motion for JMOL ("ETG's Opening Memo") for description of the nine items. D.I. 548.

[2] Defendants have waived invalidity defenses based on any of the eight items pertaining to the "Weaver Work." *See* Defendant's Opening Brief. D.I. 545.

1

meet the claims because they determine the effect of amplitude and phase and activate the device accordingly to cancel or reduce acoustic feedback. No reasonable jury could have found that claims 13, 14 and 16 of the '850 Patent were not literally infringed.

### A.    THE VALIDITY PORTION OF ETG'S MOTION IS PROPER

The evidence set forth in ETG's Opening Memorandum (D.I. 548) and ETG's Opposition to Defendants' motion (D.I. 577) is sufficient to support an entry of JMOL for ETG on Defendants' invalidity defenses that rely on any one of nine items that do not qualify as "prior art." Rule 50 provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *See* Fed. R. Civ. P. 50. The issue of whether certain items qualify as valid prior art is an issue that was fully heard during trial and the outcome of which supports the judgment of validity. Rule 50 motions are available to "a party," including the prevailing party. Accordingly, ETG's motion in support of the validity judgment is proper.

Defendants do not cite to any relevant authority supporting their position that ETG is not entitled to seek JMOL on issues of validity. Instead, they argue by analogy to Appellate Practice at the Federal Circuit. Answer Br. at 4-5. But even under this standard, ETG's motion is proper because a grant of its motion will expand ETG's right on remand or appeal by limiting Defendants' ability to defend and also lessen Defendants' right by removing certain defenses that are based on these items.

#### 1.    The Best Work Fails To Qualify As Prior Art

The Best Work fails as prior invention under 35 U.S.C. § 102(g) for any <u>one</u> of the following reasons: (1) the circuit was suppressed; (2) the circuit was subsequently abandoned; and/or (3) the circuit was not sufficiently tested.

A principle purpose of §102(g) is to encourage prompt public disclosure of an invention

by penalizing the unexcused delay or failure to share the benefit of the knowledge of the invention with the public after the invention has been completed. *Checkpoint Sys. Inc., v. U.S. Int'l Trade Comm'n*, 54 F.3d 756, 761 (Fed. Cir. 1995). Dr. Best submitted his Thesis[3] to his Engineering Department as a requirement for graduation.[4] *See, e.g.,* Tr. 1307:4-8.[5] Beyond fulfilling this requirement, Dr. Best made no efforts to publicize his circuit or disclose any details concerning his circuit. He simply did nothing with his idea. He did not publish any articles about the circuit, made no presentations about the circuit, made no effort to commercialize the circuit, and did not submit his idea for a patent. Dr. Egolf, who is a member of the faculty at the Engineering Department, testified that he knew about the Best circuit, *see, e.g.,* Tr. 1217:7-16, but did not include it in his Veterans Administration (VA) research for reducing acoustic feedback in hearing aids. *See, e.g.,* Tr. 1217:20-1218:21. Even Dr. Egolf did not consider Dr. Best's circuit particularly relevant to solving the problem of acoustic feedback.

Defendants' only documentary evidence of the Best circuit is the Best Thesis, which this Court ruled is not a printed publication. D.I. 504. Moreover, the Best Thesis fails to support an actual reduction to practice because the Best Work was not ***sufficiently*** tested to demonstrate that it would work for its intended purpose. *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437 (Fed. Cir. 1984). The "testing" Defendants rely upon is insufficient, given that Dr. Best admitted that the circuit was never tested on a hearing impaired person. *See, e.g.,* Tr. 1326:11-13 (D.I. 556). Thus, there was no way to determine if the circuit worked for its intended purpose - to reduce acoustic feedback in a hearing aid for a hearing impaired person. These undisputed

---

[3] The Best Thesis bears a date of May 1985. Pursuant to the Pre-Trial Hearing held on January 3, 2008, ETG was not permitted to prove an invention date earlier than June 26, 1986.

[4] Dr. Best did not submit his Thesis to the University Library for public dissemination.

[5] All trial transcript citations without a D.I. reference number are attached to the Declaration of Daniel G. Vivarelli, Jr. in Support of Plaintiff Energy Transportation Group Inc.'s Reply Briefs as Exhibit B.

facts support a finding that the Best Work is not prior art under any section of 35 U.S.C. § 102.

### 2. The "Weaver Work" Fails To Qualify As Prior Art

Before this litigation and before Defendants retained Dr. Egolf as a paid fact witness, Dr. Egolf represented in a letter to the VA that none of the pertinent details concerning the Weaver Work had been made public as of August 31, 1987. *See, e.g.,* JX 43A (D.I. 556, Ex. H), Tr. 1228:17-22 (D.I. 556). This statement applies to the eight items[6] that relate to the Weaver Work from May 1984 to April 1986.[7] Dr. Egolf's admission that no one had publicly disclosed any pertinent details of the Weaver Work is consistent with the lack of details made at any alleged presentation or publication,[8] as well as Dr. Egolf's citation to this work as "unpublished." PX 975 (D.I. 557, Ex. I). *See, e.g.,* Tr. 1196:10-15; 1198:15-1199:15 (D.I. 556). Given that Dr. Egolf had considered applying for a patent, there is ample evidence to support that all the details concerning the Weaver Work, including AFC-1 and AFC-2 which are the only circuits at issue, were concealed and suppressed from the public for this very purpose.

Finally, each circuit in the series of AFC circuits was abandoned in favor of a subsequent improved AFC circuit. The VA project culminated in the final circuit, known as the AFC-6 circuit, which superseded the earlier AFC-1 and AFC-2 circuits. Even the AFC-6 circuit was never patented or utilized in any way. By the time Dr. Egolf and his team were completing the

---

[6] The eight items include: Weaver Thesis; JASA Presentation; VA Presentation; Jackson Hole Presentation; Weaver Thesis Presentation; AFC-1 and AFC-2 circuits; JASA Abstract; and 1984 VA R&D Progress Report.

[7] Defendants' attempt to limit Dr. Egolf's admission of confidentiality to only the AFC-3 contradicts the document's indication that all the AFC circuits (AFC-1 through AFC-6) were affected.

[8] While Defendants may have obliquely mentioned the JASA Abstract (Answer Br. at 1, 2 (D.I. 585)) and VA Report (Answer Br. at 2 (D.I. 585)), Defendants' Opening Brief (D.I. 545) fails to advance any invalidity defense based on either one of these items. Moreover, Defendants' reliance on Dr. Soli's conclusion that the JASA Abstract was sufficiently detailed to make and use the invention is misplaced. Dr. Soli is not a degreed electrical engineer and does not have any filter design experience to qualify him as one skilled in the art. His testimony is simply unreliable. Moreover, Mr. Weaver, Dr. Egolf and Dr. Larson - who are all engineers - testified to the contrary. Tr. 1270:15-17; 1191:6-10; 1768:22-24 (D.I. 556). It is simply incredible for Defendants to allege that the jury may have agreed with Dr. Soli (with a degree in psychology) instead of Defendants' other paid fact witnesses (all with engineering degrees).

AFC-6 circuit, the AFC-1 and AFC-2 circuits were recycled and forgotten. *See, e.g.,* Tr. 1270:20-1271:2; 1271:3-5; 1212:19-22 (D.I. 556).

### 3. Defendants' New Invalidity Positions Are Improper And Not Supported By Any Evidence

At trial, Defendants advanced obviousness defenses based on the Weaver Work only in combination with the South Article or the Nunley Article. *See, e.g.,* Tr. 1727:6-19 (D.I. 578). Defendants made no arguments that the JASA Abstract, by itself or in any combination, invalidated any of the claims. In addition, Defendants failed to advance a proper obviousness defense based on Graupe '818. Defendants' make a new allegation that if the JASA Abstract is "[t]aken in combination with Graupe '818, one of ordinary skill in the art would be enabled to build the claimed Levitt invention." Answer Br. at 16. The trial evidence, as well as Defendants' Opening Brief (D.I. 548), fail to support these new theories of invalidity. Defendants should not be given the opportunity to advance new arguments that are unsupported by *any* evidence. *See* ETG's Opposition to Defendants' Brief in Support of JMOL and New Trial on Issues of Infringement and Validity. D.I. 577.

### B. NO REASONABLE JURY COULD HAVE FOUND THAT CLAIMS 13, 14 AND 16 OF THE '850 PATENT WERE NOT LITERALLY INFRINGED

Defense counsel admitted that Dr. Levitt's novel technique of creating an equal and opposite signal to cancel feedback is a "great idea" and "we use it." Tr. 165:10-15 (D.I. 578). Prior to this litigation, Defendants prepared scores of technical and marketing documents and graphic depictions that all describe how they use Dr. Levitt's technology. Demant's Thomas Christensen testified that, if he admitted that Demant's own statements were accurate, Defendants would be infringing Dr. Levitts' technology. *See, e.g.,* Tr. 1044:23-1045:6; 1048:5-9 (D.I. 578). The substantial evidence at trial demonstrated that Defendants' documents and graphical depictions do in fact accurately describe Defendants' Infringing Devices and were

prepared well before litigation ensued and thus have every indicia of reliability.

### 1. Defendants' Infringing Products Literally Perform The Determining Step

The LMS algorithm - present in all Infringing Products - determines the effect on amplitude and phase of a signal. As explained by Dr. Levitt, the "determining" step determines what is needed to cancel the acoustic feedback, which can be accomplished by measurement or by an empirical procedure, such as the null method or other algorithm. *See, e.g.*, Tr. 271:9-20; 291:18-21[9] (D.I. 556). ETG's expert, Mr. Clyde Brown, testified that phase and amplitude are defined by the coefficients. *See, e.g.,* Tr. 516:19-517:1; 619:1-2 (D.I. 556). Defendants admit that "[a]n LMS algorithm is used to cancel/reduce acoustic feedback by creating an electrical feedback signal that mimics the phase and amplitude of the feedback signal." *See* Answer Br. at 22. Defendants also admit that ETG proved that the Infringing Products reduced acoustic feedback by using a filter "that mimics the effect of the acoustic feedback path." *Id*. at 3. Thus, the Infringing Products cannot cancel/reduce acoustic feedback, as they claim, unless the step of "determining the effect on amplitude and phase" is performed. *See, e.g.,* Tr. 375:10-14 (D.I. 556). If the Infringing Products did not consider phase and amplitude in the manner as recited in the claims, they could not produce a counter signal to cancel acoustic feedback.

Moreover, Defendants' documents support this understanding. Defendants made admissions in their documents that their hearing aid products create an equal and opposite signal to cancel feedback. *See, e.g.,* PX 33 (D.I. 560, Ex. BB) reproduced below. *See also* PX 393 (D.I. 561, Ex. DD); PX 820 (D.I. 564, Ex. LL).

---

[9] Dr. Levitt explained that the term "determining" was chosen carefully to encompass a variety of methods, including measuring, estimating, *etc*. *See, e.g.,* Tr. 374:12-20. Defendants' admit that taking a "measurement" is one form of "determining." *See* Answer Br. at 2-3. Moreover, Defendants admit that they argued for the more narrow term "measuring" even when the claims recite the broader term "determining" because measuring is one type of determining. *Id*. at 28-29.



As shown above, the amplitude (height of the peak) and phase (location of the peak) must be determined to remove feedback. Oticon graphically depicted as much in a document given to distributors, audiologists, hearing aid dispensers and customers. Defendants fail to consider the substantial evidence and only rely on paid witness testimony - testimony that the jury discredited and simply did not believe.

**2.    Defendants' Infringing Products Literally Perform The Inserting Step**

One skilled in the art would understand the term "inserting" a filter to mean applying coefficients so as to activate the filter. *See, e.g.,* Tr. 517:2-16; 527:5-528:4 (D.I. 556). As Mr. Brown explained, when coefficients are provided to the filter, the filter is electrically inserted. *See, e.g.,* Tr. 517:9-16 (D.I. 556). Defendants' *physical* insertion theory advanced at trial was confusing and contrary to the claims and specification, as understood by one skilled in the art. In fact, the claims at issue do not require a removal of a filter before the inserting step, as suggested by Defendants' expert. Tr. 1590:24-1591:7 (Anderson). While the hearing aid is in operation, the LMS algorithm calculates new coefficients that activate the FIR filter. As Mr. Brown explained, the process repeats itself many times. *See, e.g., Id.* Tr. 528:21-529:7; 566:2-10; 606:15-25 (cross); 609:11-18 (cross) and 628:9-12 (cross) (D.I. 578).

As shown in the Oticon document below, the Update block (shown in blue) represents the LMS algorithm, which compares signals at an input and an output (shown by the dashed blue lines) and determines the effect on amplitude and phase of a signal in the transmission channel.

*See, e.g.*, Tr. 516:11-517:1 (D.I. 556); JX 138 (D.I. 557, Ex. Q). The Update block generates coefficients that represent the amplitude and phase of the feedback signal, temporarily stores the coefficients in a buffer (memory) and then provides the coefficients to the FIR filter (shown in orange), as shown by the directional arrows. *See, e.g.,* Tr. 516:4-18 (D.I. 556). Each time a set of coefficients is provided to the FIR filter, the FIR filter is activated, thereby inserting a new filter programmed to generate an equal and opposite signal to counter acoustic feedback. *See, e.g.*, Tr. 517:2-16 (D.I. 556). Defendants admit "[t]he output of the internal feedback path is subtracted from the microphone signal to remove the part of the microphone signal that comes via the external feedback." JX 138 at DEM0005186 (D.I. 557, Ex. Q); Tr. 518:22-519:8 (D.I. 556). To remove feedback, the Infringing Products determine the effect on amplitude and phase of a signal and activate (or electrically insert) the filter accordingly.



Figure 13. Block diagram of the implementation of the AFB algorithm.   D.I. 578, Ex. QQ

Mr. Brown also performed a similar analysis for Widex, as shown below. *See, e.g.*, Tr. 523:20-531:18 (D.I. 556). The diagram below is taken from technical documents prepared by Widex before this litigation. *See, e.g.*, PX 791 (D.I. 563, Ex. JJ), JX 305 (D.I. 557, Ex. P). Widex's Infringing Devices all include a WFIR filter (shown in orange) and a WLMS algorithm (shown in blue). *See, e.g.* Tr. 526:20-25 (D.I. 556). The WLMS algorithm generates

coefficients that are temporarily stored in memory and then provided to the WFIR filter, as shown by the directional arrows. *See, e.g.,* Tr. 541:19-542:1 (D.I. 556). Each time a set of coefficients is provided to the WFIR filter, the WFIR filter is activated, thereby inserting a new filter programmed to generate an equal and opposite signal to counter acoustic feedback. *See, e.g.,* Tr. 527:11-25; 528:21-529:7 (D.I. 556). As admitted by Widex, "when the FPS has determined the characteristics of the feedback signal it will subtract an imitated feedback signal from the incoming signal, thus eliminating the annoying feedback." PX 820 at WID163240 (D.I. 564, Ex. LL). To eliminate the feedback, the Infringing Products determine the effect on amplitude and phase of a signal and activate (or electrically insert) the filter accordingly.



D.I. 578, Ex. WW

### 3. Defendants' Infringing Products Literally Meet The "Programmable" Claim Recitation

Defendants' technical documentation - which Dr. Gloster confirmed are indeed accurate - all show the LMS algorithm as a separate component from the FIR filter, with directional arrows from the LMS algorithm to memory and then to the FIR filter. Defendants' diagrams show that coefficients generated by the LMS algorithm are provided to the FIR filter to program the filter.

Defendants argue that their filters are not programmable because the filter generates its own coefficients. In support of this argument, Defendants contradict their own technical documentation. Defendants attempt to draw an imaginary line around the FIR filter and the LMS

Algorithm, contending that these two components are "one" filter.  Defendants' position seems to be that because of miniaturization, they can now locate these components in an integrated circuit and that eliminates the separate nature of each component.  According to Defendants, because the FIR filter and LMS algorithm are "one" component, this one component cannot provide coefficients to itself.  Of course the very nature of the integrated circuits places disparate components in one "shell."  This does not eliminate the separate nature of each component.  As this defense contradicts Defendants' own source code and technical documents, no jury could have believed this theory.

Defendants admit that the presence of memory makes a device programmable.  Answer Br. at 26.  Defendants' documentation and source code show that the memory is present and appropriately accessible, given that the coefficients generated by the LMS algorithm are temporarily stored in the memory and then provided to the FIR filter.  *See, e.g.,* Tr. 671:24-672:4 (D.I. 556).  The claims do not require that the memory has to be contained within the filter block.  As acknowledged by Defendants, the memory just needs to be *appropriately accessible* for the component to be programmable.  Alternatively, Defendants advance a position that the LMS Algorithm combined with the FIR filter constitutes "one" filter.  Under this flawed reasoning, the memory - which temporarily stores the coefficients generated by the LMS algorithm - should also be included as part of this "one" filter.  If so, even under Defendants' analysis, the "one" filter contains the memory component and therefore renders the device "programmable."

## III.   CONCLUSION

For the foregoing reasons and based upon the entirety of the evidence admitted at trial, ETG respectfully requests that this Court grant ETG's motion for judgment as a matter of law.

Dated: May 29, 2008

   /s/ Edmond D. Johnson
Edmond D. Johnson (No. 2257)
Matthew A. Kaplan (No. 4956)
PEPPER HAMILTON
Hercules Plaza Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6509
Facsimile: (302) 421-8390

*Attorneys for Energy Transportation Group, Inc.*

OF COUNSEL:

Marty Steinberg
HUNTON & WILLIAMS LLP
1111 Brickell Avenue
Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460

Brian M. Buroker
HUNTON & WILLIAMS LLP
1900 K Street, N.W., Suite 1200
Washington, DC 20006-1109
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

Maya M. Eckstein
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
Telephone: (804) 788-8788
Facsimile: (804) 343-4630

## CERTIFICATE OF SERVICE

I do hereby certify that on the 29th day of May, 2008, I caused a true copy of the foregoing *Plaintiff ETG's Reply To Defendants' Opposition To ETG's Memorandum In Support Of Its Motion For Judgment As A Matter Of Law On The Issues Of Infringement And Validity* to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

| | |
|---|---|
| Mary B. Graham (#2256) | Donald E. Reid (#1058) |
| MORRIS, NICHOLS, ARSHT &TUNNELL LLP | Jason A. Cincilla (#4232) |
| 1201 N. Market Street | MORRIS, NICHOLS, ARSHT &TUNNELL LLP |
| P.O. Box 1347 | 1201 N. Market Street |
| Wilmington, DE 19899 | Wilmington, DE 19899 |
| | |
| John M. Romary | William H. Mandir |
| C. Gregory Gramenopoulos | David J. Cushing |
| FINNEGAN, HENDERSON, FARABOW, | Carl J. Pellegrini |
| GARRETT & DUNNER | SUGHRUE MION PLC |
| 901 New York Ave., N.W. | 2100 Pennsylvania Ave., N.W. |
| Washington, DC 20001-4413 | Washington, DC 20037 |
| | |
| *Attorneys for William Demant Holding A/S, WDH Inc., Oticon A/S, Oticon, Inc., Bernafon AG, and Bernafon LLC* | *Attorneys for Widex A/S, Widex Hearing Aid Co., Inc.* |

/s/ Edmond D. Johnson
Edmond D. Johnson (No. 2257)

-12-