# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ENERGY TRANSPORTATION GROUP, INC. | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. NO. 05-422 (GMS) |
| SONIC INNOVATIONS, INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

**REPLY DECLARATION OF TERRY L. MUSIKA IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PREJUDGMENT AND POST-JUDGMENT INTEREST (D.I. 532)**

The undersigned, Terry L. Musika, makes this declaration based on personal knowledge and pursuant to 28 U.S.C. § 1746. I hereby state as follows:

1. I am a Certified Public Accountant and the Chief Operating Officer of Invotex Group, a financial and economic consulting and intellectual property management firm that specializes in providing financial analyses related to complex financial transactions and intellectual property management, transaction, and finance services.

2. I have been retained by ETG as its damages expert in this matter. I submitted a Declaration in support of Plaintiff's Motion for Prejudgment and Post-Judgment Interest (D.I. 532).

3. I have reviewed Defendants' Answering Brief in Opposition to Plaintiff's Motion for Prejudgment and Post-Judgment Interest ("Opposition" or "Opp.") and the Declaration of Jonathan D. Putnam in Support of Defendants' Opposition to Plaintiff's

Motion for Prejudgment and Post-Judgment Interest ("Putnam Declaration" or "Putnam Decl.").

4. I will respond below to two of the arguments put forth by Defendants in their Opposition and by Dr. Putnam in his Putnam Declaration.

5. In Section A of their Opposition, Defendants accuse me of employing an "incorrect formula for converting an annual interest rate into a quarterly rate, thus overstating the annual rate by nearly a quarter percentage point." (Opp., 4; Putnam Decl., ¶ 15, n.12.) Defendants' and Dr. Putnam's understanding of my quarterly interest rate calculations is conceptually flawed and their attempt to recalculate my quarterly interest rate calculations is incorrect.

6. Simply put, I did not convert a quarterly rate into an annual rate. I identified the specific interest rate that was in effect at the end of each quarter directly from the Federal Reserve web site "federalreserve.gov." I then used this rate to calculate the interest for the completed quarter. At the end of each quarter, I identified the specific new quarter ending rate in effect and repeated this calculation for each quarter.

7. At no time did I take an annual rate and divide it by four. Further, because my calculation is more precise, in that I used the actual rate in effect at the end of each quarter, it would be incorrect to take an annual rate such as 8% and convert it to a quarterly rate by the formula ($1.08^{1/4} - 1 = 1.94\%$) as suggested by Dr. Putnam. The use of Dr. Putnam's proposed formula would be less precise and result in an incorrect overstatement of the prejudgment interest when rates were increasing during the year and an understatement of prejudgment interest when rates were declining during the year.

8. The quarterly compounding methodology I used to arrive at ETG's prejudgment interest figures is widely accepted and consistent with the practices of banks and other financial institutions.

9. In Section D of their Opposition, Defendants argue that I used the "wrong" historical prime rate numbers and that I should have used the "geometric mean of the monthly rates reported by the Federal Reserve over each quarter" to arrive at the correct prime rate figures. (Opp., 7; Putnam Decl., ¶¶ 22-24.) Again, Defendants' and Dr. Putnam's understanding of the prime rate figures used by me is conceptually flawed and their attempt to recalculate my quarterly interest rate using a "geometric mean of the monthly rates" is incorrect.

10. As a preliminary matter, Defendants' state that "[a]lthough Mr. Musika purports to have used 'the prime rate as it is promulgated by the Board of Governors of the Federal Reserve Board' (Musika Decl. at ¶ 4), the numbers employed by Mr. Musika in his attached schedules do not correspond with the rates reported by the Federal Reserve." (Opp., 7.) In fact, the rates employed by me are precisely consistent with the prime rate identified by the Board of Governors of the Federal Reserve Board as of the end of each quarter. For example, when compounding the interest for the fourth quarter of 2006 (October 1, 2006 through December 31, 2006), I took the prime rate published for December 31, 2006 (*i.e.* 8.25%) and applied it to the fourth quarter. Accordingly, the prime rates I utilized are quoted precisely as stated by the Board of Governors of the Federal Reserve Board and are applied in a manner that is consistent with common investment and lending practices.

11. Defendants' suggestion that the prime rate should be based on a "geometric mean of the monthly rates" suggests that an investment or loan with a variable rate would be adjusted quarterly based on the average of the monthly rates incurred during the quarter. Such an approach is inconsistent with most common banking and investment practices wherein adjustable rate loans are adjusted as of a point in time based on the rate in effect at the time and not based on an average of rates over the time period.

12. Defendants object to ETG's use of January 1, 2001 as the date for the initial quarterly compounding of interest. (Opp., 5.) If the Court is inclined to adopt Defendants' position with regard to the start date for the compounding of interest, ETG should be entitled to receive a prejudgment award of $4,144,044 from Widex and $4,420,314 from Demant.

13. I was informed by Plaintiff's counsel that the remaining objections set forth in the Opposition and the Putnam Declaration shall be addressed in a Reply Memorandum.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed this __28__ day of May, 2008.

_____
TERRY L. MUSIKA