# Exhibit B

```
 1              IN THE UNITED STATES DISTRICT COURT
 2              IN AND FOR THE DISTRICT OF DELAWARE
 3
                           -  -  -
 4
 5    ENERGY TRANSPORTATION,          :   Civil Action
      INC.,                           :
 6                                    :
                    Plaintiff,        :
 7                                    :
          v.                          :
 8                                    :
      WILLIAM DEMANT HOLDINGS A/S,    :
 9    et al.,                         :
                                      :
10              Defendants.           :   No. 05-422 (GMS)
11                         -  -  -
12                   Wilmington, Delaware
                 Wednesday, January 23, 2008
13                      8:30 a.m.
                    Third Day of Trial
14
                           -  -  -
15
      BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge
16
17
18    APPEARANCES:
19              EDMOND D. JOHNSON, ESQ.
                Pepper Hamilton LLP
20                      -and-
                MARTY STEINBERG, ESQ.,
21              BRIAN M. BUROKER, ESQ., and
                MAYA M. ECKSTEIN, ESQ.
22              Hunton & Williams
                (Washington, D.C.)
23
                                   Counsel for Plaintiff
24
25
```

```
 1    APPEARANCES CONTINUED:
 2                MARY B. GRAHAM, ESQ.
                  Morris, Nichols, Arsht & Tunnell
 3                     -and-
                  JOHN M. ROMARY, ESQ.,
 4                GREGORY C. GRAMENOPOULOS, ESQ.,
                  VINCENT KOVALICK, ESQ.,
 5                KAY HILL, ESQ.,
                  GERSON S. PANITCH, ESQ., and
 6                ARTHUR A. SMITH, ESQ.
                  Finnegan, Henderson, Ford, Farabow & Dunner
 7                (Washington, D.C.)
 8                                    Counsel for
                                      Demant Defendants
 9
                  DONALD E. REID, ESQ.
10                Morris, Nichols, Arsht & Tunnell
                       -and-
11                WILLIAM H. MANDIR, ESQ.,
                  JOHN SCHERLING, ESQ.,
12                CARL J. PELLEGRINI, ESQ.,
                  BRIAN SHELTON, ESQ.,
13                MATTHEW KAPLAN, ESQ., and
                  J. WARREN LYTLE, JR., ESQ.
14                Sughrue Mion
                  (Washington, D.C.)
15
                                      Counsel for Widex
16                                    Defendants
17                       -   -   -
18
19
20
21
22
23
24
25
```

Levitt - redirect

Page 374

```
 1    patent with him, Your Honor.

 2              THE COURT:  I don't recall that but I'm going to

 3    let you go a little distance.  I don't recall that he did go

 4    through the whole patent, Mr. Steinberg.  I'm going to let

 5    you cover this a little.

 6              MR. STEINBERG:  I only have one question

 7    basically, Your Honor.

 8              THE COURT:  All right.

 9    BY MR. STEINBERG:

10    Q.    Is the word "disconnect" anywhere in those claims?

11    A.    No, I don't believe so.

12    Q.    Now Mr. Romary asked you a number of times whether you

13    have to measure phase and amplitude and he used the word

14    "measure."  Does your patent require you to actually measure

15    phase and amplitude?

16    A.    No, we very deliberately used the word "determine"

17    because as I pointed out earlier, you can determine the

18    feedback in several ways.  The only one way is measurement.

19    One as the null method, the other one is theoretical

20    prediction.  There may be other ways.

21    Q.    Now, you recall when Mr. Romary asked you how an LMS

22    filter works, and he said the defendants used LMS filters on

23    their products?

24    A.    Yes, he said that.

25    Q.    Can an LMS filter determine the effect on amplitude
```

```
 1                 IN THE UNITED STATES DISTRICT COURT
 2                 IN AND FOR THE DISTRICT OF DELAWARE
 3
                              -   -   -
 4
 5   ENERGY TRANSPORTATION,            :   Civil Action
     INC.,                            :
 6                                     :
                  Plaintiff,          :
 7                                     :
          v.                          :
 8                                     :
     WILLIAM DEMANT HOLDINGS A/S,      :
 9   et al.,                          :
                                       :
10                Defendants.         :   No. 05-422 (GMS)
11                              -   -   -
12                   Wilmington, Delaware
                 Thursday, January 24, 2008
13                      9:07 a.m.
                   Fourth Day of Trial
14
                              -   -   -
15
     BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge
16
17
18   APPEARANCES:
19              EDMOND D. JOHNSON, ESQ.
                Pepper Hamilton LLP
20                   -and-
                MARTY STEINBERG, ESQ.,
21              BRIAN M. BUROKER, ESQ., and
                MAYA M. ECKSTEIN, ESQ.
22              Hunton & Williams
                (Washington, D.C.)
23
                                    Counsel for Plaintiff
24
25
```

```
 1    APPEARANCES CONTINUED:
 2              MARY B. GRAHAM, ESQ.
              Morris, Nichols, Arsht & Tunnell
 3                   -and-
              JOHN M. ROMARY, ESQ.,
 4           GREGORY C. GRAMENOPOULOS, ESQ.,
              VINCENT KOVALICK, ESQ.,
 5            KAY HILL, ESQ.,
              GERSON S. PANITCH, ESQ., and
 6            ARTHUR A. SMITH, ESQ.
              Finnegan, Henderson, Ford, Farabow & Dunner
 7            (Washington, D.C.)
 8                                  Counsel for
                                    Demant Defendants
 9
              DONALD E. REID, ESQ.
10           Morris, Nichols, Arsht & Tunnell
                     -and-
11            WILLIAM H. MANDIR, ESQ.,
              JOHN SCHERLING, ESQ.,
12            CARL J. PELLEGRINI, ESQ.,
             BRIAN SHELTON, ESQ.,
13            MATTHEW KAPLAN, ESQ., and
             J. WARREN LYTLE, JR., ESQ.
14            Sughrue Mion
              (Washington, D.C.)
15
                                    Counsel for Widex
16                                  Defendants
17                        -  -  -
18
19
20
21
22
23
24
25
```

Westermann - direct

Page 740

1   Q.    Yes.

2   A.    It says so.

3   Q.    And do you expect that statement to be true?

4   A.    I expect it to be true, yes.

5   Q.    Now, the first time your company manufactured a

6   hearing aid with what's called a feedback cancellation

7   system I think you said was in about the year 2000, 2001?

8   A.    Correct.

9   Q.    Now, that was because the size of computer chips and

10  the size of batteries would not permit that technology to be

11  enclosed in a hearing aid prior to that.  Correct?

12  A.    Not really.  It had been on the market for like ten

13  years.

14  Q.    Had you had it in a hearing aid in the market for ten

15  years?

16  A.    No.

17  Q.    Now, you're aware that the size of batteries and the

18  size of chips had diminished considerably over the years;

19  correct?

20  A.    Mainly, the size of chips.

21  Q.    Are you aware of something called Moore's Law?

22  A.    Yes.

23  Q.    Okay.  What is Moore's Law?

24  A.    It was stated by one of the experts, I think it was

25  Dr. Levitt, actually, I think it says every two years the

Westermann - direct

Page 781

1            THE COURT:  Well, I think she is simply

2    saying -- I don't want to mischaracterize what you are

3    saying -- we don't need to address that with this witness

4    right now because you can address it in the jury instruction

5    and in closings.

6            There is not going to be evidence that there was

7    affirmative reliance.

8            MS. ECKSTEIN:  As long as we have an

9    understanding that you are also not going to ask him.

10           MR. MANDIR:  I will not ask him.

11           MR. STEINBERG:  And that we can argue it.

12           THE COURT:  It depends.

13           MS. GRAHAM:  We will defer the issue until we

14   are in a better situation to address it.

15           THE COURT:  Okay.

16           MR. STEINBERG:  Fine.

17           (End of sidebar conference.)

18           THE COURT:  Sorry for the delay.  Is everyone

19   okay?

20           All right.

21   BY MR. STEINBERG:

22   Q.    Mr. Westermann, only a last question or two.  Since

23   your company has been put on notice that we've alleged that

24   your products infringed Dr. Levitt's patents, what have you

25   done to terminate or modify the infringement?

Westermann - direct

Page 782

1              MR. MANDIR:  Objection, mischaracterizes.  To

2    modify the infringement?

3              THE COURT:  Could you rephrase?

4              MR. STEINBERG:  Sure.

5    BY MR. STEINBERG:

6    Q.    What have you done to terminate the infringing

7    products that are on the market?

8              MR. MANDIR:  Same objection.

9              MR. STEINBERG:  To eliminate the infringing

10   products from the market.

11             THE COURT:  I don't think they accept the

12   characterization.

13             MR. MANDIR:  Exactly, Your Honor.  We don't

14   accept it's infringing.

15             THE COURT:  It's alleged.

16             MR. STEINBERG:  It's alleged, correct.

17             THE COURT:  You can rephrase.

18   BY MR. STEINBERG:

19   Q.    What have you done with respect to the products on

20   the market about the alleged infringement?

21   A.    We haven't developed anything after, I mean after the

22   patents actually ran out.

23   Q.    You continued to sell those products; correct?

24   A.    Yes, we continued to sell the products we had.

25             MR. STEINBERG:  May I have a moment, Your Honor?

```
 1                 IN THE UNITED STATES DISTRICT COURT
 2                 IN AND FOR THE DISTRICT OF DELAWARE
 3
                            -   -   -
 4
 5    ENERGY TRANSPORTATION,              :   Civil Action
      INC.,                              :
 6                                        :
                 Plaintiff,               :
 7                                        :
          v.                              :
 8                                        :
      WILLIAM DEMANT HOLDINGS A/S,        :
 9    et al.,                             :
                                          :
10               Defendants.    :   No. 05-422 (GMS)
11                          -   -   -
12                    Wilmington, Delaware
                    Friday, January 25, 2008
13                        9:00 a.m.
                      Fifth Day of Trial
14
                            -   -   -
15
      BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge
16
17
18    APPEARANCES:
19            EDMOND D. JOHNSON, ESQ.
              Pepper Hamilton LLP
20                   -and-
              MARTY STEINBERG, ESQ.,
21            BRIAN M. BUROKER, ESQ., and
              MAYA M. ECKSTEIN, ESQ.
22            Hunton & Williams
              (Washington, D.C.)
23
                                  Counsel for Plaintiff
24
25
```

```
 1    APPEARANCES CONTINUED:
 2              MARY B. GRAHAM, ESQ.
              Morris, Nichols, Arsht & Tunnell
 3                   -and-
              JOHN M. ROMARY, ESQ.,
 4            GREGORY C. GRAMENOPOULOS, ESQ.,
              VINCENT KOVALICK, ESQ.,
 5            KAY HILL, ESQ.,
              GERSON S. PANITCH, ESQ., and
 6            ARTHUR A. SMITH, ESQ.
              Finnegan, Henderson, Ford, Farabow & Dunner
 7            (Washington, D.C.)
 8                                Counsel for
                                  Demant Defendants
 9
              DONALD E. REID, ESQ.
10            Morris, Nichols, Arsht & Tunnell
                   -and-
11            WILLIAM H. MANDIR, ESQ.,
              JOHN SCHERLING, ESQ.,
12            CARL J. PELLEGRINI, ESQ.,
              BRIAN SHELTON, ESQ.,
13            MATTHEW KAPLAN, ESQ., and
              J. WARREN LYTLE, JR., ESQ.
14            Sughrue Mion
              (Washington, D.C.)
15
                                  Counsel for Widex
16                                Defendants
17                        -  -  -
18
19
20
21
22
23
24
25
```

Musika - direct

1    Q.    Mr. Donohoe?

2    A.    Mr. Donohoe, who is my counter, one of the two

3    counterparts for the defendants.  And, yes, I did review his

4    reports.

5    Q.    Now, in terms of what Mr. Donohoe relied on to come to

6    his conclusion, what did he rely on?  What is your

7    understanding of what he relied on?

8    A.    Well, he relied on a number of things.  Significantly

9    he relied on Dr. Putnam.  He is a doctor economist, Ph.D.

10   economist.  He relied on his report, for one.  He relied on

11   significantly the licensing transactions, the HIMPP

12   transactions, that three percent and other transactions

13   between the HIMPP members or industry participants.

14   Q.    The licenses that he relied on, were those licenses of

15   hearing aid industry members?

16   A.    Some were, some weren't, yes.

17   Q.    Are those the same license rates that you have

18   testified you found to be unreliable?

19   A.    Yes.

20   Q.    Did Mr. Donohoe make any conclusion about whether

21   there should be a one time payment or a running royalty?

22   A.    Yes.  He ultimately concluded that it shouldn't be a

23   percentage times the revenue.  He concluded that it should

24   be a one-time payment, so that what would be reasonable is

25   that the defendants write a check once to ETG, and that is

1    it regardless of how many millions, tens of millions,

2    hundreds of millions, as we have seen, $700 million,

3    regardless of that, it's a one-time check regardless of

4    that.

5    Q.    And did you come to a different conclusion?

6    A.    I came to a different conclusion and even the HIMPP

7    partners came to a different conclusion saying that that is

8    not appropriate.

9    Q.    Okay.  Let's turn to PX-640 which purports to be a

10   pleading on behalf of K/T HIMPP, that is, the HIMPP

11   organization we're talking about.  And is there something in

12   this particular document that indicates to you that HIMPP's

13   opinion about whether it should be a one time royalty or a

14   running royalty?

15   A.    Yes.  It says it should be a percentage-based royalty.

16   Not a flat, one-time payment.  That bottom statement there,

17   Therefore from both an administrative point of view but also

18   from what would be more reasonable for all manufacturers, it

19   was decided that it was best to have a percentage royalty.

20            And they say that, too, because to have a flat

21   amount doesn't take into consideration this wide variance in

22   pricing.

23            So you have some hearing aids that are sold, as

24   I say, for less than a thousand.  You have some that are

25   sold for 10,000.  So a flat fee doesn't take that into

Page 1056

```
 1              IN THE UNITED STATES DISTRICT COURT
 2              IN AND FOR THE DISTRICT OF DELAWARE
 3
                       -   -   -
 4
 5   ENERGY TRANSPORTATION,        :   Civil Action
     INC.,                        :
 6                                :
               Plaintiff,         :
 7                                :
         v.                       :
 8                                :
     WILLIAM DEMANT HOLDINGS A/S, :
 9   et al.,                      :
                                  :
10             Defendants.        :   No. 05-422 (GMS)
11                     -   -   -
12                  Wilmington, Delaware
                 Monday, January 28, 2008
13                     9:37 a.m.
                  Sixth Day of Trial
14
                       -   -   -
15
     BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge, and
16                                        a Jury
17
18   APPEARANCES:
19             EDMOND D. JOHNSON, ESQ.
               Pepper Hamilton LLP
20                  -and-
               MARTY STEINBERG, ESQ.,
21             BRIAN M. BUROKER, ESQ., and
               MAYA M. ECKSTEIN, ESQ.
22             Hunton & Williams
               (Washington, D.C.)
23
                                 Counsel for Plaintiff
24
25
```

```
 1   APPEARANCES CONTINUED:
 2                    MARY B. GRAHAM, ESQ.
                      Morris, Nichols, Arsht & Tunnell
 3                        -and-
                      JOHN M. ROMARY, ESQ.,
 4                    GREGORY C. GRAMENOPOULOS, ESQ.,
                      VINCENT KOVALICK, ESQ.,
 5                    KAY HILL, ESQ.,
                      GERSON S. PANITCH, ESQ., and
 6                    ARTHUR A. SMITH, ESQ.
                      Finnegan, Henderson, Ford, Farabow & Dunner
 7                    (Washington, D.C.)
 8                                        Counsel for
                                          Demant Defendants
 9
                      DONALD E. REID, ESQ.
10                    Morris, Nichols, Arsht & Tunnell
                          -and-
11                    WILLIAM H. MANDIR, ESQ.,
                      JOHN SCHERLING, ESQ.,
12                    CARL J. PELLEGRINI, ESQ.,
                      BRIAN SHELTON, ESQ.,
13                    MATTHEW KAPLAN, ESQ., and
                      J. WARREN LYTLE, JR., ESQ.
14                    Sughrue Mion
                      (Washington, D.C.)
15
                                          Counsel for Widex
16                                        Defendants
17                            -   -   -
18
19
20
21
22
23
24
25
```

Egolf - cross

1    Q.      Okay.  Now, let's go back to Mr. Best.  Mr. Best got

2    no patent on this; correct?

3    A.      I don't know whether he did or didn't.

4    Q.      Are you aware of any?

5    A.      I'm not aware of any, but I don't search the patents

6    so I wouldn't be knowledgeable about it.

7    Q.      Now, you were knowledgeable about Mr. Best's work at

8    the time you were proceeding with your research project;

9    correct?

10   A.      Yes, sir.

11   Q.      You were sharing information and you met

12   occasionally; correct?

13   A.      Peripherally knowledgeable.

14   Q.      And at least by May of 1985, you in fact had his

15   thesis in your hands?

16   A.      I had his thesis in my hands, yes.

17   Q.      And I believe you told the jury you thought it was an

18   incredible advancement or words to that effect?

19   A.      Yes, I believe that is what I said.

20   Q.      And yet in all of your submissions to the VA, you

21   have never even submitted this to the VA, did you?

22   A.      No, but there is a caveat to that.  VA did not

23   support this project.

24   Q.      Well, sir, whether or not they supported it, how much

25   money did the VA pay you through the years for your

Egolf - cross

Page 1218

1    projects?

2    A.    I'd have to go back and look.  I've forgotten.

3    Q.    Hundreds of thousands of dollars?

4    A.    I think that is incorrect.  I would -- I can give you

5    the answer in just a minute.

6    Q.    Well, I don't want you to have to go back through

7    your records, but it was a considerable amount; correct?

8    A.    At the time, it was reasonable.  "Considerable"

9    isn't --

10   Q.    And they wanted this information for war veterans;

11   right?

12   A.    That's correct.

13   Q.    So if you had any information that you thought would

14   advance the feedback cancellation, you should have given it

15   to them; correct?

16   A.    Let me correct that.  I was required to report the

17   results of my research to the Veterans Administration.  That

18   is what I did.

19   Q.    Okay.  But you never reported Mr. Best's research?

20   A.    I did not report Mr. Best's research to the Veterans

21   Administration, no.

22   Q.    Let's move on to the R&D progress report which is

23   DX-1357A.  I believe it had another number.  It's the large

24   one with only a few pages in the middle of that.  And it's

25   in the jury's notebooks.

Page 1243

```
 1                IN THE UNITED STATES DISTRICT COURT
 2                IN AND FOR THE DISTRICT OF DELAWARE
 3
                          -   -   -
 4
 5     ENERGY TRANSPORTATION,           :   Civil Action
       INC.,                           :
 6                                      :
                 Plaintiff,            :
 7                                      :
           v.                          :
 8                                      :
       WILLIAM DEMANT HOLDINGS A/S,     :
 9     et al.,                          :
                                        :
10                Defendants.    :   No. 05-422 (GMS)
11                          -   -   -
12                     Wilmington, Delaware
                     Tuesday, January 29, 2008
13                         8:50 a.m.
                     Seventh Day of Trial
14
                          -   -   -
15
       BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge,
16                                     and a Jury
17
18
       APPEARANCES:
19
                     EDMOND D. JOHNSON, ESQ.
20                   Pepper Hamilton LLP
                           -and-
21                   MARTY STEINBERG, ESQ.,
                     BRIAN M. BUROKER, ESQ., and
22                   MAYA M. ECKSTEIN, ESQ.
                     Hunton & Williams
23                   (Washington, D.C.)
24                                     Counsel for Plaintiff
25
```

Page 1244

```
 1   APPEARANCES CONTINUED:
 2               MARY B. GRAHAM, ESQ.
                 Morris, Nichols, Arsht & Tunnell
 3                    -and-
                 JOHN M. ROMARY, ESQ.,
 4               GREGORY C. GRAMENOPOULOS, ESQ.,
                 VINCENT KOVALICK, ESQ.,
 5               KAY HILL, ESQ.,
                 GERSON S. PANITCH, ESQ., and
 6               ARTHUR A. SMITH, ESQ.
                 Finnegan, Henderson, Ford, Farabow & Dunner
 7               (Washington, D.C.)
 8                                    Counsel for
                                      Demant Defendants
 9
                 DONALD E. REID, ESQ.
10               Morris, Nichols, Arsht & Tunnell
                      -and-
11               WILLIAM H. MANDIR, ESQ.,
                 JOHN SCHERLING, ESQ.,
12               CARL J. PELLEGRINI, ESQ.,
                 BRIAN SHELTON, ESQ.,
13               MATTHEW KAPLAN, ESQ., and
                 J. WARREN LYTLE, JR., ESQ.
14               Sughrue Mion
                 (Washington, D.C.)
15
                                      Counsel for Widex
16                                    Defendants
17                         -  -  -
18
19
20
21
22
23
24
25
```

Best - dep.

Page 1307

1          "Answer:  Well, at the same time, I was writing

2    my thesis, so it would have been to submit the finished

3    thesis, then do a defense.

4          "Question:  The date on this thesis is May 1985.

5    What does that date represent?  Does it represent the date

6    that you did your defense, or what does it represent?

7          "Answer:  It represents the date that I gave it

8    to the university, submitted it to the university.

9          "Question:  Would that have been before or after

10   your defense?

11         "Answer:  After.

12         "Question:  So your defense was some time -- I

13   guess we don't have a specific date.  Do you know what the

14   date of your defense was?

15         "Answer:  No, not the specific date.

16         "Question:  Do you know if it was in May of

17   1985?

18         "Answer:  Yes.

19         "Question:  It was in May of 1985?

20         "Answer:  (Nodding yes.)

21         "Question:  Okay.  And how much time after you

22   had your defense did you submit your thesis to the

23   university?

24         "Answer:  I don't really remember, but I imagine

25   very shortly afterwards.

Page 1522

```
 1                  IN THE UNITED STATES DISTRICT COURT
 2                  IN AND FOR THE DISTRICT OF DELAWARE
 3
                              -   -   -
 4
 5     ENERGY TRANSPORTATION,            :   Civil Action
       INC.,                            :
 6                                      :
                   Plaintiff,           :
 7                                      :
            v.                          :
 8                                      :
       WILLIAM DEMANT HOLDINGS A/S,     :
 9     et al.,                          :
                                        :
10                 Defendants.          :   No. 05-422 (GMS)
11                            -   -   -
12                      Wilmington, Delaware
                     Wednesday, January 30, 2008
13                         8:30 a.m.
                       Eighth Day of Trial
14
                              -   -   -
15
       BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge,
16                                    and a Jury
17
18
       APPEARANCES:
19
                     EDMOND D. JOHNSON, ESQ.
20                   Pepper Hamilton LLP
                          -and-
21                   MARTY STEINBERG, ESQ.,
                     BRIAN M. BUROKER, ESQ., and
22                   MAYA M. ECKSTEIN, ESQ.
                     Hunton & Williams
23                   (Washington, D.C.)
24                                    Counsel for Plaintiff
25
```

Page 1523

```
 1    APPEARANCES CONTINUED:
 2              MARY B. GRAHAM, ESQ.
               Morris, Nichols, Arsht & Tunnell
 3                   -and-
               JOHN M. ROMARY, ESQ.,
 4             GREGORY C. GRAMENOPOULOS, ESQ.,
               VINCENT KOVALICK, ESQ.,
 5             KAY HILL, ESQ.,
               GERSON S. PANITCH, ESQ., and
 6             ARTHUR A. SMITH, ESQ.
               Finnegan, Henderson, Ford, Farabow & Dunner
 7             (Washington, D.C.)
 8                                  Counsel for
                                    Demant Defendants
 9
               DONALD E. REID, ESQ.
10             Morris, Nichols, Arsht & Tunnell
                     -and-
11             WILLIAM H. MANDIR, ESQ.,
               JOHN SCHERLING, ESQ.,
12             CARL J. PELLEGRINI, ESQ.,
               BRIAN SHELTON, ESQ.,
13             MATTHEW KAPLAN, ESQ., and
               J. WARREN LYTLE, JR., ESQ.
14             Sughrue Mion
               (Washington, D.C.)
15
                                    Counsel for Widex
16                                  Defendants
17                        -  -  -
18
19
20
21
22
23
24
25
```

Anderson - direct

Page 1590

1           Can you explain your point using this

2    demonstrative, doctor?

3    A.      Sure.  And I know you have seen a lot of these

4    things.  I wanted to put them all up on the same slide and I

5    appreciate your patience here.

6           On the left, we have what I call the technical

7    description.  This can either be words or it can be a block

8    diagram, and this is how an engineer first expresses the

9    concept that he is trying to accomplish.  When he has got

10   that worked out, he writes Verilog code or she writes

11   Verilog code and this code is a description, it's a

12   description that the computer understands of the circuits

13   and it's used by chip manufacturers to actually produce the

14   circuits.

15          The final step is an actual chip.  This chip now

16   has circuits on there that perform the functions and have

17   the structure specified in the code but it's made of

18   transistors primarily and capacitors.

19   Q.      Doctor, did you actually take a picture of an accused

20   device or are you just using a demonstrative?

21   A.      I'm sorry.  We just pulled that chip off the

22   Internet.  But it's about the same size and complexity of

23   one of the accused devices.

24   Q.      Now, what did you understand Mr. Brown to say with

25   regard to this step of inserting a filter?  When did he say

1    that it occurred?

2    A.    Mr. Brown suggested that the filter was inserted

3    every time new coefficients were provided.  In my view, that

4    is inappropriate.  The filter is inserted at the time of

5    manufacture.  When you provide it with coefficients, you are

6    just updating the filter or changing the filter.  You are

7    not removing it and reinserting it.

8    Q.    According to Mr. Brown's interpretation, how many

9    times would this filter be inserted?

10   A.    In the accused devices, this filter is updated,

11   depending upon the specific device, between about 16,000 and

12   20,000 times a second.

13   Q.    A second?

14   A.    Yes.

15   Q.    What are the initial coefficients that are used in

16   the accused LMS adaptive filter?

17   A.    All of the initial coefficients -- I'm sorry.  All of

18   the initial coefficients and all the accused devices are

19   zero, so when you turn the device on, the adaptive filter

20   has coefficients in there that are all zeros.

21   Q.    And what happens the next step, the next 16,000th of

22   a seconds?  What happens?

23   A.    This a partial update of a few of the coefficients.

24   Q.    Do you know how many?

25   A.    I think it's four, for the Jump platform.

Page 1802

```
 1              IN THE UNITED STATES DISTRICT COURT
 2              IN AND FOR THE DISTRICT OF DELAWARE
 3
                        -   -   -
 4
 5   ENERGY TRANSPORTATION,          :  Civil Action
     INC.,                           :
 6                                   :
             Plaintiff,              :
 7                                   :
         v.                          :
 8                                   :
     WILLIAM DEMANT HOLDINGS A/S,    :
 9   et al.,                         :
                                     :
10           Defendants.             :  No. 05-422 (GMS)
11                      -   -   -
12                  Wilmington, Delaware
                 Friday, January 31, 2008
13                     9:30 a.m.
                 Ninth Day of Trial
14
                        -   -   -
15
     BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge
16
17
18   APPEARANCES:
19           EDMOND D. JOHNSON, ESQ.
             Pepper Hamilton LLP
20                   -and-
             MARTY STEINBERG, ESQ.,
21           BRIAN M. BUROKER, ESQ., and
             MAYA M. ECKSTEIN, ESQ.
22           Hunton & Williams
             (Washington, D.C.)
23
                             Counsel for Plaintiff
24
25
```

Page 1803

```
 1    APPEARANCES CONTINUED:
 2              MARY B. GRAHAM, ESQ.
                Morris, Nichols, Arsht & Tunnell
 3                  -and-
                JOHN M. ROMARY, ESQ.,
 4              GREGORY C. GRAMENOPOULOS, ESQ.,
                VINCENT KOVALICK, ESQ.,
 5              KAY HILL, ESQ.,
                GERSON S. PANITCH, ESQ., and
 6              ARTHUR A. SMITH, ESQ.
                Finnegan, Henderson, Ford, Farabow & Dunner
 7              (Washington, D.C.)
 8                                  Counsel for
                                    Demant Defendants
 9
                DONALD E. REID, ESQ.
10              Morris, Nichols, Arsht & Tunnell
                    -and-
11              WILLIAM H. MANDIR, ESQ.,
                JOHN SCHERLING, ESQ.,
12              CARL J. PELLEGRINI, ESQ.,
                BRIAN SHELTON, ESQ.,
13              MATTHEW KAPLAN, ESQ., and
                J. WARREN LYTLE, JR., ESQ.
14              Sughrue Mion
                (Washington, D.C.)
15
                                    Counsel for Widex
16                                  Defendants
17                          -   -   -
18
19
20
21
22
23
24
25
```

Putnam - cross

Page 1894

1    I haven't assigned a number for them.

2    Q.         So you don't have a number for those business

3    risks.  Is that right?

4    A.         I don't have a number for the business risks.

5    That's right.  I know generally what they represent as a

6    fraction of sales.  But I haven't quantified them in this

7    case.

8    Q.         Let's talk about your patent citation method,

9    what you called the count, rank and divide method.  Your

10   citation model, that has never been used in any court as the

11   basis for analyzing damages in a patent case, has it?

12   A.         Well, I would say I am not aware of its ever

13   having been used.  I don't know how it might have been used

14   in other cases.  And I am not -- I don't have a summary of

15   all the 2000 cases that are tried every year, that are filed

16   every year in the U.S.  But I am not aware of another time

17   it's been used.

18   Q.         Your co-expert, Mr. Donohoe, has testified that

19   your analysis doesn't have anything to do with real economic

20   value of a patent, hasn't he?

21   A.         Yeah.  I think that's taken out of context.  I

22   think he explained what he meant by that.  I don't think

23   that actually characterizes his testimony accurately.

24   Q.         Did you review his deposition testimony?

25   A.         I did.

Putnam - cross

Page 1895

1   Q.          And you saw there that he did state that your

2   analysis doesn't reflect an actual patent value, didn't he?

3   A.          I think you are paraphrasing, if not misquoting.

4   I think what he said here in court was that he was trying

5   to -- you are trying to get at the relative value of a

6   patent.  And the citation method is one way of ranking the

7   patents under one of the Georgia-Pacific factors.  It

8   doesn't take into account all of the factors.

9           And in order to value the patents properly in

10  litigation, you have got to take into account all the

11  factors.  So, you know, it's not a complete analysis.  And

12  if that's what he is saying, which I think is what he said

13  in court, then I would certainly agree with him.

14  Q.          Let's take a look at your analysis.  You used

15  the patent citation analysis in an effort to figure out how

16  to apportion the applicable profits to the Levitt patents.

17  Is that correct?

18  A.          The patent citation analysis is simply for the

19  purposes of ranking.  There is no apportionment going on.

20  It is simply ranking.

21  Q.          And in that ranking analysis, you looked at

22  various patents and you ranked them based on the number of

23  times they have been cited in other patents?

24  A.          Yes.  Mr. Musika actually mentioned that in his

25  report, and I thought it was something I should investigate.

Page 2029

```
 1                IN THE UNITED STATES DISTRICT COURT
 2                IN AND FOR THE DISTRICT OF DELAWARE
 3
                            -   -   -
 4
 5   ENERGY TRANSPORTATION,          :   Civil Action
     INC.,                          :
 6                                   :
                 Plaintiff,          :
 7                                   :
            v.                       :
 8                                   :
     WILLIAM DEMANT HOLDINGS A/S,    :
 9   et al.,                         :
                                     :
10              Defendants.          :   No. 05-422 (GMS)
11                          -   -   -
12                   Wilmington, Delaware
                  Friday, February 1, 2008
13                       8:30 a.m.
                   Tenth day of Trial
14
                            -   -   -
15
     BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge,
16                                   and a Jury
17
18
     APPEARANCES:
19
                 EDMOND D. JOHNSON, ESQ., and
20               MATTHEW KAPLAN, ESQ.
                 Pepper Hamilton LLP
21                      -and-
                 MARTY STEINBERG, ESQ.,
22               BRIAN M. BUROKER, ESQ., and
                 MAYA M. ECKSTEIN, ESQ.
23               Hunton & Williams
                 (Washington, D.C.)
24
                                  Counsel for Plaintiff
25
```

Page 2030

```
 1    APPEARANCES CONTINUED:
 2                    MARY B. GRAHAM, ESQ.
                      Morris, Nichols, Arsht & Tunnell
 3                        -and-
                      JOHN M. ROMARY, ESQ.,
 4                    GREGORY C. GRAMENOPOULOS, ESQ.,
                      VINCENT KOVALICK, ESQ.,
 5                    KAY HILL, ESQ.,
                      GERSON S. PANITCH, ESQ., and
 6                    ARTHUR A. SMITH, ESQ.
                      Finnegan, Henderson, Ford, Farabow & Dunner
 7                    (Washington, D.C.)
 8                                        Counsel for
                                          Demant Defendants
 9
                      DONALD E. REID, ESQ.
10                    Morris, Nichols, Arsht & Tunnell
                          -and-
11                    WILLIAM H. MANDIR, ESQ.,
                      JOHN SCHERLING, ESQ.,
12                    CARL J. PELLEGRINI, ESQ.,
                      BRIAN SHELTON, ESQ., and
13                    J. WARREN LYTLE, JR., ESQ.
                      Sughrue Mion
14                    (Washington, D.C.)
15                                        Counsel for Widex
                                          Defendants
16
                             -   -   -
17
18
19
20
21
22
23
24
25
```

1   in reading computer code.  Do you remember Dr. Clay Gloster?

2   You heard Dr. Clay Gloster trace through what would be to

3   anyone else undecipherable computer code and demonstrate to

4   you conclusively that the code written by their engineers,

5   the defendants' engineers is identical to their written

6   description of their products and how their technology

7   worked.  And his analysis is unrefuted because there can't

8   be any dispute.  Dr. Gloster told you these defendants

9   describe exactly what their products do.  And folks, as

10  Mr. Christensen admitted, if their documents are correct and

11  accurate, they infringe Dr. Levitt's patents.

12          Now, even their own experts reluctantly admitted

13  that the technical documents were accurate and Dr. Gloster

14  was right.  Although they were very polished, they were very

15  well rehearsed.  On cross-examination, they admit exactly

16  what Dr. Gloster testified to because they knew they

17  couldn't refute the root of their own client's technology,

18  the computer code that was prepared by these defendants'

19  engineers.

20          You know, you have CSI Miami and CSI New York

21  and CSI Las Vegas and now we have CSI Delaware where we had

22  to have our expert come in and look at the root of their

23  code to tell us the technical documents really mean what

24  they say.  So it comes fully back to the statement in

25  opening.  If some of our witnesses are going to come up here