IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ENERGY TRANSPORTATION GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-422 (GMS) |
| | ) | |
| SONIC INNOVATIONS, INC., et al, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST
FOR NEW TRIAL ON THE ISSUES OF INFRINGEMENT AND VALIDITY**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)

OF COUNSEL:                     1201 North Market Street
                                P.O. Box 1347
John M. Romary                  Wilmington, DE 19899
C. Gregory Gramenopoulos        302.658.9200
FINNEGAN, HENDERSON, FARABOW,   mgraham@mnat.com
 GARRETT & DUNNER, LLP          jparrett@mnat.com
901 New York Ave., N.W.          *Attorneys for William Demant Holding A/S,*
Washington, DC 20001-4413        *WDH Inc., Oticon A/S, Oticon, Inc.,*
202.408.4000                     *Bernafon AG, and Bernafon LLC*


MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Donald E. Reid (#1058)
Jason A. Cincilla (#4232)

OF COUNSEL:                     1201 North Market Street
                                P.O. Box 1347
David J. Cushing                Wilmington, DE 19899
William H. Mandir               302.658.9200
Carl J. Pellegrini              dreid@mnat.com
Brian K. Shelton                jcincilla@mnat.com
SUGHRUE MION, PLLC               *Attorneys for Widex A/S and*
2100 Pennsylvania Ave., N.W.     *Widex Hearing Aid Co. Inc.*
Suite 800
Washington, DC 20037
202.293.7060

Dated: May 29, 2008

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................1

II.   ARGUMENT ...............................................................................................1

     A.    The Levitt Patent Claims Cannot Be Broad Enough to Cover the Accused
           Products and Yet Not Be Invalid .............................................................1

     B.    No Reasonable Jury Could Find that Graupe '818 Does not Invalidate
           Claim 19 of the '850 Patent ...................................................................2

     C.    No Reasonable Jury Could Find that The Best Invention does Not
           Invalidate Claim 19 of the '850 Patent ......................................................7

     D.    No Reasonable Jury Could Find the Requisite Written Description ....................8

     E.    The Asserted Evidence of Infringement of Claims 13, 14, and 16 of the
           '850 Patent Is Illusory and Not Substantial ...............................................9

           1.    The "Determining" Step of Claims 13, 14, and 16 of the '850
                 Patent Cannot Simply Require Coefficients that Reduce Feedback,
                 or They Would Be Invalid in View of Graupe '818 and the Best
                 Invention ...............................................................................11

                 a)    Graupe '818 Is Prior Art that Restricts the DOE ...........................12

                 b)    The Best Invention Is Prior Art that Restricts the DOE.................13

           2.    No Particularized Testimony and Linking Argument for Claims 13,
                 14, or 16 of the '850 Patent.........................................................14

           3.    Vitiation of "Determining" Claim Element .................................14

           4.    There Is Insubstantial Evidence of Induced Infringement of
                 Method Claims 13, 14, or 16 of the '850 Patent.........................15

     F.    The Asserted Evidence of Infringement of Claim 19 of the '850 Patent Is
           Illusory and Not Substantial....................................................................16

           1.    No Particularized Testimony and Linking Argument for Claim 19 ..........17

           2.    Vitiation of "Programmable" and "Programmed"  Claim Element
                 of Claim 19 ...............................................................................18

     G.    The Asserted Evidence of Infringement of Claims 1 and 2 of the '749
           Patent Is Illusory and Not Substantial....................................................18

       1.     ETG Cannot Now Argue Claims 1 and 2 of the '749 Patent Were Not Amended for Patentability Purposes, Hence DOE Is Precluded ........18

       2.     There Is No Substantial Evidence that the Accused Products Have Any Structure Equivalent to the Corresponding Structure of Claims 1 and 2 of the '749 Patent ........................................................................19

III.    CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Brown v. 3M*, 265 F.3d 1349 (Fed. Cir. 2001) ................................................................ 4

*CytoLogix Corp. v. Ventana Medical Systems, Inc.*, 424 F.3d 1168 (Fed. Cir. 2005) ................ 20

*DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006) ................................ 16

*Hewlett-Packard Co. v. Mustek Systems, Inc.*, 340 F.3d 1314 (Fed. Cir. 2003) ......................... 14

*Impax Laboratories, Inc. v. Aventis Pharmaceuticals, Inc.*,
    468 F.3d 1366 (Fed. Cir. 2006) ......................................................................... 6

*In re Donohue*, 766 F.2d 531 (Fed. Cir. 1985) ............................................................. 6

*In re Wright,* 999 F.2d 1557 (Fed. Cir. 1993) ............................................................. 3

*Lucent Technologies, Inc. v. Gateway Inc.*, __ F.3d __, __, 2008 WL 1970225
    (Fed. Cir. May 8, 2008) ................................................................................ 19

*Manville Sales Corp. v. Paramount Systems*, *Inc.*, 917 F.2d 544 (Fed. Cir. 1990) ..................... 15

*Mycogen Plant Science, Inc. v. Monsanto Co.*, 252 F.3d 1306 (Fed. Cir. 2001) ........................ 19

*Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2003) .............. 18

*Schering Corp. v. Geneva Pharmaceuticals, Inc.*, 339 F.3d 1373 (Fed. Cir. 2003) ...................... 6

*Straussler v. United States*, 339 F.2d 670, 671 (Ct. Cl. 1964) ........................................ 7

*Streamfeeder, LLC v. Sure-Feed Systems, Inc.*, 175 F.3d 974 (Fed. Cir. 1999) .......................... 12

*Texas Instruments*, *Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558 (Fed. Cir. 1996) .......... 14

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997) ................................. 18

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*, 904 F.2d 677 (Fed. Cir.
    1990), *overruled in part on other grounds, Cardinal Chemical Co. v. Morton*
    *International, Inc.*, 508 U.S. 83 (1993) ................................................................. 13

*Zinus, Inc. v. Simmons Bedding Co*., No. C 07-3012 PVT, 2008 WL 682919 (N.D. Cal.
    Mar. 11, 2008) ............................................................................................ 12

I.    **INTRODUCTION**

This Brief is filed in further support of Defendants' Renewed Motion for Judgment as a Matter of Law and Request for New Trial ("Defendants' Renewed Motion," D.I. 527) and in response to ETG's Opposition to Defendants' Renewed Motion ("ETG Opp'n Br.," D.I. 577).

II.    **ARGUMENT**

A.    **The Levitt Patent Claims Cannot Be Broad Enough to Cover the Accused Products and Yet Not Be Invalid**

ETG admitted that Dr. Levitt's "great idea" is to "creat[e] an equal and opposite signal to cancel feedback." (ETG Opp'n Br., D.I. 577 at 1.) But if that is all that is literally required by these claims, then they are necessarily invalid and this breadth of scope is precluded under the doctrine of equivalents ("DOE") in view of the Graupe '818 patent and the Best Invention.

The jury apparently concluded, without sufficient supporting evidence and contrary to the express requirements of the claims of the Levitt Patents, that infringement of the Accused Products may be found merely based on the admitted use of this "great idea," thereby: ignoring the "determining" and "inserting" steps of claims 13, 14, and 16 of the '850 Patent; ignoring the corresponding structure requirements of claims 1 and 2 of the '749 Patent; and ignoring the "programmable" and "programmed" requirements of claim 19 of the '850 Patent. There were simply no facts of record to justify the finding of infringement of the asserted claims without a corresponding finding of invalidity based on the prior art. Apparently, the jury ignored the admitted facts that Graupe '818: (1) has all the elements of claim 19, (2) cancels acoustic feedback, and (3) uses a signal from the exact point the Levitt Patents use to calculate the coefficients required to remove feedback whistling, all of which preclude expansion of any claim under the doctrine of equivalents ("DOE"). Although ETG's validity expert conclusorily testified that the Graupe '818 feedback cancellation was still not good enough to be

"substantial," (Matzen, Tr. 1927:8-21 (direct), 2004:2-12 (redirect) (cited excerpts of transcripts are attached as Exhibit A)), his opinion is devoid of any defensible technical justification or evidentiary support. Moreover, ETG's infringement expert never considered Graupe '818, or any other prior art, leaving the jury, and everyone else, to wonder whether the Accused Products canceled feedback any more or less than Graupe '818. It was also legally erroneous for the jury to rely on the irrelevant facts urged by ETG that: (1) the Best Invention was not a printed publication (it is "prior invention" not "printed publication" prior art) and (2) it did not have a feedback path that surrounded the amplifier (no claim requires this configuration).

The bottom line is exactly as defense counsel stated: it matters not what you call it, it only matters what is "in there," in the Accused Products. (Tr. 2132:6-14 (closing).) The fact remains that the LMS filter present and employed in the Accused Products does not meet the specific recitations of the Levitt Patent claims, and no reasonable jury could have found otherwise, thereby justifying Defendants' Renewed Motion for judgment as a matter of law ("JMOL") of non-infringement and/or invalidity, or at the very least, justifying a new trial on those issues.

### B.  No Reasonable Jury Could Find that Graupe '818 Does not Invalidate Claim 19 of the '850 Patent

ETG does not dispute, nor did its expert at trial, that all elements of claim 19 are found in Graupe '818, as shown at pages 12-17 of Defendants' Opening Brief. (D.I. 545.) Instead, ETG raised the issue of enablement despite admitting that Graupe '818 has at least "some reduction" of acoustic feedback. (ETG Opp'n Br., D.I. 577 at 31.) According to ETG, however, Graupe '818 does not provide "substantial" reduction of acoustic feedback. But this bald assertion is without technical justification and without any explanation or evidence of what is meant by "substantial" that the jury could have relied on.

Regarding enablement, Mr. Matzen testified that Dr. Graupe used math, not circuitry or hardware, to describe his invention. (Matzen, Tr. 1926:4-9 (direct).) Even if true, this "fact" is not a basis upon which the jury could have found Graupe '818 non-enabled. *In re Wright,* 999 F.2d 1557, 1561 (Fed. Cir. 1993) ("Nothing more than objective enablement is required, and therefore it is irrelevant whether this teaching is provided through broad terminology or illustrative examples."). Critically, Mr. Matzen never opined that this math failed to enable one skilled in the art to make the invention of claim 19. To the contrary, Mr. Matzen admits that Graupe '818 provides at least "some reduction" of acoustic feedback. (Matzen, Tr. 2004:11-12 (redirect).) This is the "objective enablement" required by law and fundamentally inconsistent with ETG's assertion and any jury finding of non-enablement.

Moreover, Defendants' expert, Dr. Soli, never criticized Graupe '818 for lack of enablement as ETG asserts at page 31. Rather, in the cited pages Dr. Soli cautioned that the injection of noise as used in Graupe '818 and in the Levitt Patents has to be "carefully controlled." He never said Graupe '818 did not work as described. (Soli, Tr. 1714:24-1715:8 (cross).)

ETG points out at page 31 that, during calibration, the amplifier and transmission channel are removed from the circuit in Graupe '818. This is true, but wholly irrelevant. Claim 19 has no requirement that the amplifier and transmission channel remain intact during calibration. In fact, this same channel is opened in the Levitt Patents for coefficient determination. (Matzen, Tr. 1980:5-8 (cross); '850 Patent, JX 4 at 9:18-31 (attached to D.I. 547).)

The suggestion by ETG at page 33 that Graupe '818 is somehow not an enabling reference because it attempts to adjust to changing conditions turns the whole issue of enablement on its head. ETG has argued repeatedly that one skilled in the art could have made

the Levitt Patents' circuit adaptive despite a complete lack of any suggestion as to how this might be accomplished. ETG cannot have it both ways. No reasonable jury could have found that Graupe '818 is not enabled because of an occasional interruption when adapting to changes in the feedback path and yet find there was sufficient written description in the Levitt Patents to support claims covering filters that do successfully adapt to changing feedback conditions.

Moreover, the Levitt Patent claims do not <u>require</u> a filter that adapts to changes in the feedback path. To the contrary, they are supported by a preferred embodiment that even Dr. Levitt agrees does not detect changes in the feedback path. (Levitt, Tr. 322:13-22 (cross).) Thus, the circuitry in Graupe '818 that first cancels the effect of acoustic feedback (for example upon "system turn-on." (DX-982 (attached to D.I. 547) at 3:57)) is all that is required to anticipate claim 19, whether or not the aspect of Graupe '818 that adapts to changing conditions is enabled. *Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001) ("When a claim covers several structures or compositions, either generically or as alternatives, the claim is deemed anticipated if any of the structures or compositions within the scope of the claim is known in the prior art.").

ETG propounds to this Court, as it did to the jury, the false, misleading, and technically unsubstantiated assertion that "incorrect coefficients" are calculated by Graupe '818. (D.I. 577 at 31.) As testified to by Mr. Matzen and as Defendants pointed out in their Opening Brief, the signal $y(t)$ used in Graupe '818 and the signal $V_{\emptyset\,OUT}$ used in the Levitt Patents to calculate filter coefficients are both taken from the same place in both circuits. (D.I. 545 at 16.) ETG does not dispute this fact. Instead, Mr. Matzen's assertion of "incorrect coefficients" is based on the notion claim 19 <u>requires</u> that the signal used to calculate the coefficients ($y(t)$ in Graupe '818 and $V_{\emptyset\,OUT}$ in the Levitt Patents) first pass through the transmission path amplifier before being

sensed for coefficient calculation.[1]  ETG argues that y(t) in Graupe '818 does not do this and, accordingly, Graupe '818, "does not consider the transmission channel."  (D.I. 577 at 33.)  This is true, but irrelevant.  Claim 19 puts no condition on what happens in the transmission channel.  The Levitt Patents only require that one determine the effect that the acoustic *feedback path* has on a signal (*see* claims 13, 14, and 16), not the effect the *transmission path* has.  Mr. Matzen's testimony that the "substantial" reduction requirement of claim 19 can only be satisfied by a signal that has first passed through the transmission channel is utter nonsense and cannot be the basis for any finding that Graupe '818 uses the wrong coefficients.  There is no substantial evidence for this conclusion.  There is no explanation for why calculating coefficients based on what the acoustic feedback path does to the same signal as in the Levitt Patents produces *insubstantial* reduction just because that signal did not first pass through the amplifier of the transmission channel.  This is like saying that the ability to accurately measure the speed of a car traveling down one street (like the phase and amplitude of a signal passing through the acoustic feedback path) is dependant somehow on that car having first traveled down a specific other street (the transmission channel).  This is nonsense.

Instead, as noted above, Graupe '818 expressly claims "cancellation" of acoustic feedback (*e.g.*, claims 1, 5, and 29)[2] and, having been issued, bears with it a strong presumption of enablement.[3]  *See Impax Labs., Inc. v. Aventis Pharms., Inc.*, 468 F.3d 1366, 1382 (Fed. Cir.

---

[1] Even in the Levitt Patents, during coefficient calculation, $V_{\emptyset \, OUT}$ has passed through amplifier 68, but not the main hearing compensation filter 64.  (JX 4, Fig. 2).

[2] The stated objective of Graupe '818 is "automatically and adaptively overcoming the problem of screeching noise caused by acoustic feedback." (DX-982, 1:64-68 and 7:36-38).

[3] Moreover, the JASA Abstract established that one skilled in the art prior to the Levitt date of invention was able to use the technology of the type disclosed in Graupe '818 and employed in the Best Invention to successfully cancel acoustic feedback, no matter what Mr. Matzen, without

2006) ("'[W]hen, as here, an accused infringer asserts that either claimed or unclaimed material in a prior art patent anticipates patent claims asserted against it, the infringer is entitled to a presumption that the allegedly anticipating material is enabled.'"). This is the evidence that ETG alleges is missing. This is the evidence that has not even begun to be challenged by any technically sound rationale—only the unsupported, unjustified, conclusory utterances of a paid witness. No reasonable jury could have found this presumption of enablement overcome.

ETG also failed to give the jury any basis to distinguish between: (1) the degree of "cancellation" required to be a "substantial" reduction required by claim 19 and either (2) the admission that Graupe '818 provides "some reduction" or (3) the "cancellation" of the presumed enabled Graupe '818 claims. Thus, the jury was left with no way to judge if the Graupe '818 teaching was in fact sufficient to meet the claim 19 requirements. Instead, ETG responds at pages 32-33 by noting the lack of a working model and the lack of direct testimony from Dr. Graupe as apparent technical support for Mr. Matzen's unsubstantiated "no substantial reduction" assertion. This is also nonsense. Models and prior art inventor testimony are not required as invalidating evidence. *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1380 (Fed. Cir. 2003) ("Anticipation does not require the actual creation or reduction to practice of the prior art subject matter . . . ."); *In re Donohue*, 766 F.2d 531, 533 (Fed. Cir. 1985) ("It is not . . . necessary that an invention disclosed in a publication shall have actually been made in order to satisfy the enablement requirement."). Rather, the law requires the Court and the jury to look to the four corners of the prior art reference. *Straussler v. United States*, 339 F.2d 670, 671 (Ct. Cl.

---

(continued from previous page)
technical explanation, baldly asserted was a fatal flaw in either the Best Invention or Graupe '818.

1964).  Graupe '818, contrary to Mr. Matzen's unsubstantiated and conclusory opinion,

conclusively and repeatedly expresses that success is achieved and, thus, anticipates claim 19.

(*See* Defendants' Opening Br., D.I. 545 at 13-14.)  No reasonable jury could find otherwise.

> ### C.    No Reasonable Jury Could Find that The Best Invention does Not Invalidate Claim 19 of the '850 Patent

Nowhere does ETG argue that Dr. Best's approach did not provide the desired response

of reducing the effect of acoustic feedback.  Instead, other than asserting the Best Invention is

not "prior art,"[4] ETG argues that the Best Invention filter is not in a "feedback path."  (ETG

Opp'n Br., D.I. 577 at 28-30.)  The evidence is overwhelmingly to the contrary.

First, the diagram of the Best Invention shown on page 29 of the ETG Opposition Brief is

incomplete.  An "LMS filter" is hidden in the box ETG marks "Best Circuit," as shown on page

20 of Defendants' Opening Brief.  ETG does not dispute the accuracy of Defendants' page 20

drawing, but instead argues that, without going around the "amplification," the path formed by

the LMS filter in Defendants' drawing cannot be in "an electrical feedback path," as is required

by claim 19 of the '850 Patent.[5]  This misreads claim 19.  (*See* Defendants' Opening Br., D.I.

545 at 18-20.)  Claim 19 merely requires "a feedback path" that is inserted "between the input

and the output of said transmission channel."  Claim 19 recites "between" the input and output—

it does not recite extending from the input to the output, nor does it recite going around the

---

[4] This issue is addressed in detail at pages 17-18 of Defendants' Opening Brief (D.I. 545) and pages 7-11 of Defendants' Answering Brief in Opposition to Plaintiff's Second Amended Motion for Judgment as a Matter of Law (D.I. 585).  As addressed there, the fact the Best Invention is not described in a printed publication is irrelevant to the Best Invention nevertheless being "prior art" under § 102(g).

[5] Contrary to the assertions at pages 34-35 of ETG's Opposition Brief, to meet even ETG's definition of "feedback" path, the right hand connection of the Best LMS filter simply needs to be moved to the right of the amplifier, as Graupe '818 discloses.

amplification as ETG would require.  In fact, Claim 19 makes no mention of amplification at all.
(*See* Defendants' Opening Br., D.I. 545 at 18-20.)

>    **D.**    **No Reasonable Jury Could Find the Requisite Written Description**

If the asserted claims are, in fact, somehow construed to cover filters that adapt to
changing acoustic feedback conditions, then such claims are invalid as there is no written
description support of corresponding scope in the Levitt Patent specifications, and no reasonable
jury could have found otherwise.  (*See* Defendants' Opening Br., D.I. 545 at 21-26.)

ETG does not challenge the basic premise of Defendants' position, namely, there is no
teaching in the specification of detecting changes in the acoustic feedback path.  But if an
inventor has not given any thought on how to detect when the acoustic feedback path changes,
obviously that inventor has not provided written description of changing the filter coefficients to
adapt to that change.  (*See* Defendants' Opening Br., D.I. 545 at 22.)

Instead, ETG points to sections of the Levitt Patents that reference automation to
accommodate for changes in just about anything other than acoustic feedback.  For example,
column 1, lines 5 through 13 of the '850 Patent (JX 4) discloses the idea of automatic adjustment
for changes in speech level, room reverberation, and background noise.  Significantly, however,
the capability of reducing acoustic feedback, consistent with the disclosed embodiments, is
separated out and NOT associated with automatic change.  This is perfectly understandable in
view of the admitted fact the detection of acoustic feedback path change is not referenced at all
in the Levitt Patents.  The reference to JX 4 at 11:51-57 is nearly identical and similarly flawed.
The reference to JX 4 at 11:32-37 is directed to change in coefficients (frequency response) as
signal levels change.

Then ETG turns to the "nulling technique."  This is the process by which phase and
amplitude are measured during fitting.  Although this technique could possibly be used in

hindsight to recalculate coefficients if a change in the acoustic feedback path were detected, the absence of any suggestion of such detection dooms any suggestion that the "nulling technique" was in fact being disclosed to accommodate acoustic feedback changes.

ETG references "paired comparison testing" where a user listens to the hearing aid using two different sets of coefficients and then chooses the one that sounds best, but admitted it was used only for optimal hearing aid settings, not for adapting to changing acoustic feedback conditions.  (ETG Opp'n Br., D.I. 577 at n.18.)  But even if it were true that such testing "could" be used for other purposes, it does not save the Levitt Patents from a lack of written description. The test is what one skilled would understand is the invention possessed by the inventors from reading the patent description, not what one skilled in the art might possibly be able to have done.  (*See* Defendants' Opening Br., D.I. 545 at 24.)

And finally, the untested Dowling Declaration is not evidence of what is in fact in the four corners of the Levitt Patents, as Dr. Dowling never indicated that he understood much less applied the proper legal test for written description.[6]  For all we know, Dr. Dowling used the same incorrect test that ETG is urging here.

### E.    The Asserted Evidence of Infringement of Claims 13, 14, and 16 of the '850 Patent Is Illusory and Not Substantial

ETG is correct that in the Accused Products: (1) feedback is detected, (2) a replica signal matched in both phase and amplitude is created, and (3) the replica signal is used to cancel out the feedback.  Defense counsel admitted this the very first day in their opening statement.  But

---

[6] This Declaration was admitted without the opportunity for either Defendant to have ever cross-examined Dr. Dowling.  This admission is particularly unfair to Demant to the extent its admission was permitted due to any misunderstanding on the part of Widex counsel.  The lack of this opportunity, particularly for Demant, is additional grounds for a new trial if this declaration is deemed the only substantial evidence supporting a finding of written description support.

this is all ETG showed with its endless and needless references to marketing materials and so-called witness inconsistencies.  Not once did ETG at trial or in the ETG Opposition Brief point to any step in the LMS algorithm (a) that supposedly performs the "determining" step of claims 13, 14, or 16 of the '850 Patent, or (b) that comprises the corresponding structure of claims 1 and 2 of the '749 Patent, or  any equivalent of that specific structure.  All the jury, and now the Court, has heard from ETG is that points (1), (2), and (3) referenced above are present in the Accused Products.  This is at best substantial evidence that the same result is achieved, but it is not substantial evidence of infringement.

The "determining" step of claims 13, 14, or 16 is supposedly evidenced by the blue lines representing the LMS algorithm at page 11 of the ETG Opposition Brief.  But all ETG can say is that this algorithm "compares signals at an input and an output (shown by the dashed blue lines) and determines the effect on the amplitude and phase of a signal in the transmission channel." (ETG Opp'n Br., D.I. 577 at 12.)  This is a conclusory statement and mirrors the "evidence" at trial—without any testimony of how or where in the many steps of an LMS algorithm there is any such "determining" of any sort, much less one "as a function of frequency," as these claims expressly require.  As pointed out in Defendants' Opening Brief at page 33, all Mr. Brown could say is that "mathematically speaking, the coefficients define the amplitude and phase."

It may in fact be true, as ETG asserts, that one can theoretically determine amplitude and phase from the coefficients should one choose to do so, but there is no evidence that this additional step is ever actually performed by the Accused Products.  Thus, once again, ETG is simply saying that if you get the result of canceling feedback, then you must necessarily have satisfied the "determining" step of these claims.  This is simply not supported by any evidence at trial or the Court's claim construction.  These claims do not recite simply determining the

coefficients that reduce feedback—if that is what Dr. Levitt intended to claim, he should have used different claim language. The "determining" language that was used requires some intermediate step, such as the express measuring of phase and amplitude effect, as is shown in the Levitt Patents. Although Defendants acknowledge the Court did not limit these claims to actual measuring, neither did the Court remove the "determining" step entirely[7] and replace it merely with the end result of coefficients that reduce feedback. If that were the intent of the Court's claim construction, then these same claims are undeniably invalid in view of Graupe '818 and the Best Invention that both achieve the same result.

  1.  **The "Determining" Step of Claims 13, 14, and 16 of the '850 Patent Cannot Simply Require Coefficients that Reduce Feedback, or They Would Be Invalid in View of Graupe '818 and the Best Invention**

ETG purports to address this issue at page 20 of the ETG Opposition Brief, but misses the point entirely. Defendants do not assert that claims 13, 14, and 16 are invalid in view of Graupe '818. Defendants view the "determining" step of those claims as requiring some specific assessment of the effect the acoustic feedback path has on the phase and amplitude of signals passing through it, similar to, but not necessarily limited to, the phase and amplitude measurements shown in the Levitt Patents. But these claims cannot be expanded, either by improper literal construction or by the DOE, as ETG asserts, to cover the mere act of determining coefficients that reduce acoustic feedback. If that were the case, these claims, as so construed, would also encompass the prior art Graupe '818 disclosure and the prior art Best Invention.

Dr. Morley pointed out at trial that both Graupe '818 and the Best Invention do the same thing: (1) feedback is detected, (2) a replica signal matched in both phase and amplitude is

---

[7] Or the required order in which the steps must be performed.

created, and (3) the replica signal is used to cancel out the feedback. (Morley, Tr. 1415:15-1425:20 (direct).) Dr. Morley's testimony shifted the burden to ETG to prove that its assertion of equivalents was permissible in view of the prior art. *See Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 984 (Fed. Cir. 1999) ("[A]fter the accused infringer satisfies its burden of going forward . . . 'the burden to prove,' *i.e.*, the burden of persuasion, rests on the patentee to show that its claim does not cover the prior art."). ETG did not satisfy this burden at trial. In fact, as noted on pages 37-38 of Defendants' Opening Brief, Mr. Brown testified he never reviewed any prior art, including Graupe '818 or the Best Invention.

Nevertheless, ETG now suggests that Mr. Brown relied upon Mr. Matzen's testimony that the claims were valid over Graupe '818 and the Best Invention. But again, ETG misses the point. Here, Defendants are not asserting the claims are "invalid."[8] Mr. Matzen based his opinion on the *literal* scope of the claims; Dr. Morley based his opinion not on the literal scope, but on the *expanded* scope ETG applied to reach its assertions of infringement under the DOE. No ETG expert opined on the validity of the claims based on that scope.[9]

### a) Graupe '818 Is Prior Art that Restricts the DOE

Even when considering the validity of the Levitt Patent claims, Mr. Matzen admitted that Graupe '818 reduced acoustic feedback. (Tr. 2004:11-12 (redirect).) Even his complaint that Graupe '818 did not provide a "substantial" reduction is not applicable to claims 13, 14, and 16, which do not have such a requirement. So if the "determining" step of these claims simply

---

[8] For example, Defendants do *not* assert that the "determining" step is practiced by the LMS algorithm of the Best Invention or by Graupe '818.

[9] *E.g., Zinus, Inc. v. Simmons Bedding Co.*, No. C 07-3012 PVT, 2008 WL 682919, at *18 (N.D. Cal. Mar. 11, 2008) (granting summary judgment of no infringement in part because the *patentee* "ha[d] not submitted any *evidence* from which a rational trier of fact could find that [the asserted scope of equivalents] would not have been obvious….").

requires calculating coefficients that reduce the effect of acoustic feedback, there is no question

that Graupe '818 would invalidate those claims, and ETG at page 20 of ETG's Opposition Brief,

the only place where this issue is addressed, does not refute that assertion. Claims cannot, as a

matter of law, be expanded under the DOE to ensnare the prior art. *See Wilson Sporting Goods*

*Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684-85 (Fed. Cir. 1990), *overruled in part on*

*other grounds*, *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993).

### b)    The Best Invention Is Prior Art that Restricts the DOE

Other than asserting the Best Invention is not prior art, an issue addressed elsewhere,

ETG has advanced no reason why claims 13, 14, and 16 would not be ensnared by the Best

Invention if the "determining" step is satisfied by using coefficients generated by an LMS

algorithm, except to argue that: (1) the Best Invention filter is not in a "feedback path,"[10] and

(2) the Best Invention cannot determine what happens in the transmission path, as Mr. Matzen

opined. (ETG Opp'n Br., D.I. 577 at 28-30; Matzen, Tr. 1937:9-15 (direct).)

ETG lacks substantial evidence to support either point. The feedback path issue is

addressed above, and there is no requirement in claims 13, 14, or 16 to determine what happens

in the transmission path.

The whole point of the "determining" step of these claims is to determine what phase and

amplitude changes have to be made to a signal, as a function of frequency, to replicate the

acoustic feedback path. It is the feedback path that effects a phase and amplitude shift that must

be mimicked by signal passing through the "programmable delay line filter." (Brown, Tr. 507:3-

11 (direct).) That filter must assert the same phase and amplitude effect on any signal in it as the

---

[10] Notably, claim 16 of the '850 Patent merely requires an "electrical feedback loop," and claim
14 has no requirement on the filter placement. Presumably, ETG is not applying this lack-of-
feedback-path defense to these claims.

acoustic feedback path asserts.  (Levitt, Tr. 332:23-333:9 (cross).)  There is no evidence that what happens to the phase and amplitude of a signal passing though the transmission path is relevant.

### 2. No Particularized Testimony and Linking Argument for Claims 13, 14, or 16 of the '850 Patent

Conclusory statements of equivalents, even ones that reference "function," "way," and "result," are not sufficient without viable technical explanations of <u>why</u> such conclusions should be accepted.  *See Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1322-23 (Fed. Cir. 2003) (finding conclusory function, way, result testimony failed to provide particularized testimony and linking argument on a limitation-by-limitation basis, and failed to even address the issue of equivalence of function); *Tex. Instruments*, *Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567-68 (Fed. Cir. 1996) (lack of "how" and "why" testimony deemed fatal to patentee's burden to show infringement under the DOE).

Mr. Brown's testimony at 546:2-548:22 [sic] (claims 13, 14, and 16) of the trial transcript, relied on by ETG at page 18, is nearly identical to that rejected by the Court of Appeals for the Federal Circuit in the above-cited cases as being insufficient as a matter of law.  In particular, for the claim 13, 14, and 16 analysis, there is no discussion, even generally, of "how" the calculation of the correct coefficients is somehow equivalent to the "determining" step of these claims.

### 3. Vitiation of "Determining" Claim Element

All ETG has shown is that the Accused Products generate coefficients that are then inserted into the filter.  But claims 13, 14, and 16 do not simply require the generation of the correct coefficients—they require a "determining" step akin to the measuring of phase and amplitude as a function of frequency, as is disclosed in the Levitt Patents.  ETG would have the

Court ignore this claim term or convert it to one that simply requires the correct coefficient calculation.

####     4.     There Is Insubstantial Evidence of Induced Infringement of Method Claims 13, 14, or 16 of the '850 Patent

If only method claims 13, 14, and 16 remain, the damages period can only begin from when Defendants knew or should have known their actions would induce actual infringement. *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990).

Widex was found to have willfully infringed. For the reason set forth in the Opening Brief in Support of the Widex Defendants' Motion for Judgment as a Matter of Law and Request for New Trial on the Issue of Willful Infringement (D.I. 541), Widex respectfully submits that the required showing of pre-suit knowledge of the Levitt Patents and any appreciation that the Levitt Patents were being infringed is absent from the record.

Demant was not found to have willfully infringed, and ETG has not challenged that finding. The evidence of record also does not support any pre-suit knowledge or implied verdict of induced infringement against Demant. All ETG could show was that Demant owned several patents in which one of the Levitt Patents was cited as prior art, and limited knowledge by HIMPP of either Levitt Patent, with no evidence of any appreciation that the Accused Products may infringe. Contrary to ETG's assertion, the evidence that Defendants knew their Accused Products would be used to cancel acoustic feedback is likewise not relevant to any showing that Defendants knew or should have known that its Accused Products would result in infringement of method claims 13, 14, and 16. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc) ("[I]nducement requires evidence of culpable conduct, directed to encouraging

another's infringement, not merely that the inducer had knowledge of the direct infringer's

activities." (citation omitted)).[11]  ETG presented no such evidence at trial.

### F.    The Asserted Evidence of Infringement of Claim 19 of the '850 Patent Is Illusory and Not Substantial[12]

Dr. Gloster pointed out that for a device to be "programmed," as claim 19 requires of the

"filter," that device must have a memory.  (*See* Gloster, Tr. 684: 9-13 (cross).)  That said, there is

no evidence in the many cites referenced by ETG that the so-called "filter" of the Accused

Products, namely, the delay line absent the circuits associated with the LMS algorithm, itself has

the required memory.  Instead, ETG tries to have it both ways.  When arguing that the filter is

"provided" values according to the Court's Claim Construction Order (D.I. 495), ETG must

necessarily exclude the circuits associated with the LMS algorithm (i.e. the coefficient

generator).  This is so because if these circuits were included as part of the "filter," as

Defendants assert, then there would be no such "providing."  Rather, the complete LMS filter,

which includes the LMS algorithm, self-generates coefficients to adapt to changing acoustic

feedback conditions.  But when discussing the memory, which is associated with the LMS

algorithm, now ETG tries to link that memory to the "filter."  But nowhere does ETG cite

testimony that the delay line itself, which ETG asserts is the "filter" of claim 19, includes a

memory as Dr. Gloster would require for that "filter" to be "programmed."

---

[11] ETG's footnote 10 again turns the issue on its head.  ETG has the burden to show that the Accused Products could not be used without the feedback feature, not vice versa.

[12] Prosecution history estoppel is also applicable to claim 19 of the '850 Patent (*see* Defendants' Opening Br., D.I. 545 at 29-30), especially now that ETG has admitted that claim 19 is "substantively different from the few claims that had been rejected."  (ETG Opp'n Br., D.I. 577 at 25.)  Moreover, for the reasons set out at pages 36-38 of Defendants' Opening Brief, claim 19 cannot be expanded to cover the Accused Products under the DOE in view of Graupe '818 and the Best Invention.

Moreover, the Court construed claim 19 as requiring "a" response. ETG argues that in the Court's construction, the term "a" is open-ended. (ETG Opp'n Br. at 16.) However, the Court did not instruct the jury to construe the claim as ETG proposes. Instead, the Court's claim construction provided the jury with a definition that the jury could understand using plain and ordinary language. The difference is significant. *See Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1228-29 (Fed. Cir. 2004) (affirming JMOL of no literal infringement, where claim required "*a* light spot" and the accused product used a series of laser pulses).[13] The jury gets to interpret this phrase, "a" response, as they would during, for example, a cocktail party, and does not require that they further apply claim construction law as a district court judge would at a *Markman* hearing. In other words, the jury should interpret it the same way as the phrase, "Please get me 'a' drink" (i.e., one drink—not 32,000 drinks)[14]

### 1.    No Particularized Testimony and Linking Argument for Claim 19

ETG cites testimony of Mr. Brown at 548:23-550:6 [sic] (claim 19) at page 18 that parallels that rejected by the Court of Appeals for the Federal Circuit in the above-cited cases (*see* Section E.2) as being insufficient as a matter of law. Specifically, Mr. Brown's analysis for claim 19 does not address at all whether providing coefficients to a memory in a filter, where the coefficients can be stored and memorized for later use by the delay line of that filter as in the

---

[13] Defendants recognized that even given their understanding, the coefficients can change. That is not the point. Rather, there must also be the capacity for "a" response—the capacity for a stable or "programmed" condition, as it exists by way of example in the Levitt Patents, and which everyone acknowledges is not the case with the adaptive LMS filters of the Accused Products, which constantly change as much as 32,000 times a second.

[14] This interpretation of "a" response is entirely consistent with Dr. Gloster's testimony that "programmable" and "programmed" require using memory. This is because memory is necessary in order store the coefficients and maintain "a" response, just as the Levitt Patents describe. (*See* Brown, Tr. 601:7-10 (cross).)

Levitt Patents is equivalent to providing coefficients momentarily to a delay line, which immediately acts on the inputs as in the Accused Products. And there is no discussion of how 16,000 or 32,000 coefficient changes per second are somehow equivalent to "a" response.

> ### 2.    Vitiation of "Programmable" and "Programmed" Claim Element of Claim 19

As to claim 19's "programmable" and "programmed" terms, ETG at page 14 does not direct the Court to the complete question and answer that unmistakably focused on the term "programmable" delay line. (Brown, Tr. 533:16-17 (direct).) And, ETG persistently argues that any filter that cancels feedback is "programmable" or "programmed" because every such filter requires values to function. But ETG is essentially reading out of claim 19 any requirement to provide values to produce "a" response, as the Court's construction of "programmed" requires. (D.I. 495.)

> ### G.    The Asserted Evidence of Infringement of Claims 1 and 2 of the '749 Patent Is Illusory and Not Substantial

> ### 1.    ETG Cannot Now Argue Claims 1 and 2 of the '749 Patent Were Not Amended for Patentability Purposes, Hence DOE Is Precluded

If the file history provides no reasons for an amendment, a court must assume it was made for purposes of patentability. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 33-34 (1997); *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2003) ("The burden is on the patent holder to establish that the reason for the amendment is not one related to patentability. Where no explanation is established, a court should presume that the applicant had a substantial reason related to patentability for the amendment.") (citations omitted). ETG does not dispute that the term "measuring" appears for the first time in a new claim in response to a prior art rejection, as set out in Defendants' Opening Brief at page 30. *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306, 1319-20 (Fed. Cir. 2001) ("We do not

discern any legally significant difference between canceling a claim having a broad limitation and replacing it with a claim having a narrower limitation, and amending a claim to narrow a limitation."). Thus, the presumption of prosecution history estoppel applies, and the admission that the Accused Products do not literally "measure," as these claims require, establishes there is no infringement, either literally or under the DOE.

ETG has not rebutted that presumption. Instead, ETG asserts that the addition of the term "measuring" was not required to avoid any prior art, which is irrelevant as a matter of law. Prosecution history estoppel applies to the full scope of what was surrendered, even if the patentee surrendered more than what was needed to overcome the prior art. *Lucent Techs., Inc. v. Gateway Inc.*, __ F.3d __, __, 2008 WL 1970225, at *15 (Fed. Cir. May 8, 2008) ("It is not relevant to the determination of the scope of the surrender that the applicant did not need to amend the claims to require performance of steps 1-4 during each pulse-forming iteration in order to overcome the prior art." (citation omitted) (affirming summary judgment of no infringement)).

> **2.  There Is No Substantial Evidence that the Accused Products Have Any Structure Equivalent to the Corresponding Structure of Claims 1 and 2 of the '749 Patent**

The supposed supporting evidence cited by ETG is conclusory and again does not give the requisite "why" and "how" explanations. For example, for the first means element of claim 1, ETG relies on 563:12-24 [sic] of the transcript. But this testimony is conclusory only, with no mention of the phase shifter 30 or amplifier 32, which are key elements of the corresponding structure that are used to perform the recited "measuring" function. This testimony does not address how or why their equivalents are supposedly buried in the accused LMS algorithm, which ETG admits does not perform the required "measuring" function.

For the second means element of claim 1, ETG relies on 564:18-565:3 [sic] of the transcript. But again, this testimony is merely conclusory. Here, there is no mention of the analog-to-digital converter element, which is part of the corresponding structure and which ETG has admitted is not present literally or by equivalents. In fact, Mr. Brown admitted there would be no reason to include an analog-to-digital converter element in the Accused Products. (*See* Defendants' Opening Br., D.I. 545 at 39-40.)

ETG's "miniaturization" theory also fails. ETG's assertion that the accused LMS algorithm replaces all the structure required by these claims is nothing more than an attempt to avoid structure and reduce the required means-plus-function analysis to function alone. If there were something truly equivalent in the LMS algorithm to the structure required by these claims, ETG needed to point out the precise LMS steps that corresponded to the phase shifter 30, amplifier 32, and analog-to-digital converter required by these claims, and also how and why such steps were substantially the same to the structure required by the Court's claim construction. There was no such testimony—just reference to function. As Defendants point out in their Opening Brief, proof of function alone, which is the very most that can be said of any of ETG's means-plus-function evidence, is <u>not</u> sufficient. *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1178 (Fed. Cir. 2005) ("[I]t is insufficient for the patent holder to present testimony 'based only on a functional, not a structural, analysis.'").

## III.    CONCLUSION

In view of the foregoing, Defendants' Renewed Motion for Judgment as a Matter of Law and Request for New Trial should be granted, resulting either in judgment that no valid Levitt Patent claim is infringed or, in the alternative, granting a new trial as to the infringement and validity as to the asserted Levitt Patent claims.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Mary B. Graham

_____

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
302.658.9200
mgraham@mnat.com
jparrett@mnat.com
   *Attorneys for William Demant Holding A/S,*
   *WDH Inc., Oticon A/S, Oticon, Inc.,*
   *Bernafon AG, and Bernafon LLC*

OF COUNSEL:

John M. Romary
C. Gregory Gramenopoulos
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Ave., N.W.
Washington, DC  20001-4413
202.408.4000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Donald E. Reid

_____

Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
302.658.9200
dreid@mnat.com
jcincilla@mnat.com
   *Attorneys for Widex A/S and*
   *Widex Hearing Aid Co. Inc.*

OF COUNSEL:

David J. Cushing
William H. Mandir
Carl J. Pellegrini
Brian K. Shelton
SUGHRUE MION, PLLC
2100 Pennsylvania Ave., N.W.
Suite 800
Washington, DC  20037
202.293.7060

Dated:  May 29, 2008
2346484
1598596v4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 29, 2008, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that true and correct copies of the foregoing were caused to be served via electronic mail on May 29, 2008 upon the following parties:

| | |
|---|---|
| REPRESENTING ENERGY TRANSPORTATION GROUP, INC. | Edmond D. Johnson<br>PEPPER HAMILTON LLP<br>**johnsone@pepperlaw.com** |
| | Brian M. Buroker<br>HUNTON & WILLIAMS LLP<br>**etg@hunton.com** |
| REPRESENTING WIDEX A/S AND WIDEX HEARING AID CO. INC. | Donald E. Reid<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>**dreid@mnat.com** |
| | William H. Mandir<br>SUGHRUE MION PLLC<br>**wmandir@sughrue.com** |
| | David J. Cushing<br>SUGHRUE MION PLLC<br>**dcushing@sughrue.com** |
| | Carl J. Pellegrini<br>SUGHRUE MION PLLC<br>**cpellegrini@sughrue.com** |
| | Brian K. Shelton<br>SUGHRUE MION PLLC<br>**bshelton@sughrue.com** |

REPRESENTING WILLIAM DEMANT HOLDING
A/S, WDH, INC., OTICON A/S, OTICON INC.,
BERNAFON AG, AND BERNAFON, LLC

Mary B. Graham
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
**mgraham@mnat.com;**
**mbgeservice@mnat.com**

John M. Romary
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER
**john.romary@finnegan.com**

C. Gregory Gramenopoulos
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER
**c.gregory.gramenopoulos@finnegan.com**

The undersigned also hereby certifies that on May 29, 2008, true and correct copies

of the foregoing were caused to be served by hand upon the following Delaware counsel:

Edmond D. Johnson
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, DE  19899-1709

*/s/ Mary B. Graham*

_____
Mary B. Graham (#2256)

913379